# U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:07-cv-01554-SEB-JMS

ABELMAN et al v. COLGATE-PALMOLIVE COMPANY et al
Assigned to: Judge Sarah Evans Barker
Referred to: Judge Jane Magnus-Stinson
Demand: $
Lead Docket: None
Related Cases: 4:07-cv-00016-SEB-WGH
Case in other court: U.S. District Court, Southern District Of Ohio, 2:07-cv-0793-MHW-NMK
Cause: 29:1001 E.R.I.S.A.: Employee Retirement

Date Filed: 11/30/07
Jury Demand: None
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**
-----------------------

| | | |
|---|---|---|
| **PAUL ABELMAN,** *On behalf of himself and on behalf of all others similarly situated* | represented by | **Eli Gottesdiener**<br>GOTTESDIENER LAW FIRM PLLC<br>498 7th Street<br>Brooklyn, NY 11215<br>(718) 788-1500<br>Fax : (718) 688-1650<br>Email: eli@gottesdienerlaw.com<br>*ATTORNEY TO BE NOTICED*<br><br>**William Henry Blessing**<br>119 East Court Street<br>Suite 500<br>Cincinnati, OH 45202<br>(513) 621-9191<br>Fax : (513) 621-7086<br>*ATTORNEY TO BE NOTICED* |
| **VALERIE R. NUTTER,** *On behalf of herself and on behalf of all others similarly situated* | represented by | **Eli Gottesdiener**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**William Henry Blessing**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **WARREN JEMMOTT** | represented by | **Eli Gottesdiener**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**William Henry Blessing**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**SUSAN BYRD**                           represented by   **Eli Gottesdiener**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **William Henry Blessing**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**ADRIANA VASQUEZ**                      represented by   **Eli Gottesdiener**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **William Henry Blessing**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**CORA NELSON-MANLEY**                   represented by   **Eli Gottesdiener**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **William Henry Blessing**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**
----------------------

**COLGATE-PALMOLIVE COMPANY**            represented by   **Ellen E. Boshkoff**
                                                          BAKER & DANIELS
                                                          300 North Meridian Street
                                                          Suite 2700
                                                          Indianapolis, IN 46204
                                                          (317)237-1266
                                                          Fax : (317)237-1000
                                                          Email: ellen.boshkoff@bakerd.com
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eve Melinda Ellinger**
                                                          SCHOTTENSTEIN ZOX & DUNN
                                                          250 West Street
                                                          Columbus, OH 43215
                                                          (614) 462-5037
                                                          *TERMINATED: 12/06/2007*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Felix Christopher Wade**
                                                          SCHOTTENSTEIN ZOX & DUNN-2
                                                          250 West Street
                                                          Columbus, OH 43215
                                                          (614) 462-2700

*TERMINATED: 12/06/2007*
*ATTORNEY TO BE NOTICED*

**Jeremy P. Blumenfeld**
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5258
Fax : (215) 963-5001
Email: jblumenfeld@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Joseph J. Costello**
MORGAN LEWIS & BOCKIUS LLP
1701 Market St
Philadelphia, PA 19103
(215) 963-5000
Fax : 215-963-5001
Email: jcostello@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip John Gutwein, II**
BAKER & DANIELS
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-8271
Fax : (317) 237-1000
Email: philip.gutwein@bakerd.com
*ATTORNEY TO BE NOTICED*

**Theresa J. Chung**
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5584
Fax : (215) 963-5001
Email: tchung@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN**    represented by    **Ellen E. Boshkoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eve Melinda Ellinger**
(See above for address)
*TERMINATED: 12/06/2007*
*ATTORNEY TO BE NOTICED*

**Felix Christopher Wade**
(See above for address)
*TERMINATED: 12/06/2007*
*ATTORNEY TO BE NOTICED*

**Jeremy P. Blumenfeld**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph J. Costello**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip John Gutwein, II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theresa J. Chung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ERC**                                    represented by **Ellen E. Boshkoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Felix Christopher Wade**
(See above for address)
*TERMINATED: 12/06/2007*
*ATTORNEY TO BE NOTICED*

**Jeremy P. Blumenfeld**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph J. Costello**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip John Gutwein, II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theresa J. Chung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Filing Date | Num# | Docket Text |
|---|---|---|
| 11/30/2007 | 1 | Case transferred in from District of Southern Ohio; Case Number 2:07-cv-0793-MHW-NMK. Copy of transfer order and certified copy of docket sheet received. (Attachments: # 1 transfer letter# 2 docket from transferring court)(DH) [Entry Date 11/30/2007] |
| 11/30/2007 | 2 | Case Docket as transferred from District Court in Southern Ohio. All case documents are attached to this entry in sequence by date filed. Attachments are described according to the document number assigned on the transferring court's docket. (DH) (Additional attachment(s) added on 12/3/2007) Modified on 12/3/2007 (TAA). |
| 12/04/2007 | 3 | NOTICE of Appearance by Philip John Gutwein, II on behalf of Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Gutwein, Philip) [Entry Date 12/04/2007] |
| 12/04/2007 | 4 | NOTICE of Appearance by Ellen E. Boshkoff on behalf of Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Boshkoff, Ellen) [Entry Date 12/04/2007] |
| 12/05/2007 | 5 | MOTION to Withdraw as Attorney, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Gutwein, Philip) [Entry Date 12/05/2007] |
| 12/06/2007 | 6 | NOTICE of Related Action, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC (Gutwein, Philip) [Entry Date 12/06/2007] |
| 12/06/2007 | 7 | ORDER granting 5 Motion to Withdraw as Attorney. Attorney Eve Melinda Ellinger and Felix Christopher Wade withdrawn. Signed by Judge Jane Magnus-Stinson on 12/6/07. (SWM) [Entry Date 12/07/2007] |
| 12/12/2007 | 8 | ANSWER to Complaint (First Amended Class Action), filed by all defendants.(Gutwein, Philip) [Entry Date 12/12/2007] |
| 12/12/2007 | 9 | MOTION to Dismiss (Partial), filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E, # (6) Exhibit F, # (7) Exhibit G, # (8) Exhibit H, # (9) Exhibit I, # (10) Exhibit J, # (11) Text of Proposed Order)(Gutwein, Philip) |

| | | Modified on 12/13/2007 (LSC). |
|---|---|---|
| 12/12/2007 | 10 | BRIEF/MEMORANDUM in Support re 9 MOTION to Dismiss *(Partial)* MOTION to Dismiss *(Partial)*, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Gutwein, Philip) [Entry Date 12/12/2007] |
| 12/13/2007 | 11 | ENTRY regarding CMP and Initial Pretrial Conference. SCHEDULING ORDER:( Initial Pretrial Conference set for 2/1/2008 03:00 PM in room #256 before Judge Jane Magnus-Stinson.) The CMP is due no later than 14 days prior to the iptc (See Entry). Signed by Judge Jane Magnus-Stinson on 12/13/07.(SWM) [Entry Date 12/13/2007] |
| 12/17/2007 | 12 | ENTRY for 12/17/07 - Magistrate Judge Jane Magnus-Stinson: The initial pretrial conference set for 2/1/08 is VACATED.(SWM) [Entry Date 12/17/2007] |
| 12/21/2007 | 13 | MOTION to Appear pro hac vice *for Joseph J. Costello*, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Gutwein, Philip) [Entry Date 12/21/2007] |
| 12/21/2007 | 14 | MOTION to Appear pro hac vice *for Jeremy P. Blumenfeld*, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Gutwein, Philip) [Entry Date 12/21/2007] |
| 12/21/2007 | 15 | MOTION to Appear pro hac vice *for Theresa J. Chung*, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Gutwein, Philip) [Entry Date 12/21/2007] |
| 12/26/2007 | 16 | RECEIPT #IP004922 in the amount of $ 90.00 - attys Costello, Blumenfeld and Chung pro hac vice filing fees. (LSC) [Entry Date 12/26/2007] |
| 12/27/2007 | 17 | NOTICE of Appearance by Eli Gottesdiener on behalf of Plaintiffs SUSAN BYRD, ADRIANA VASQUEZ, CORA NELSON-MANLEY, PAUL ABELMAN, VALERIE R. NUTTER, WARREN JEMMOTT. (Gottesdiener, Eli) [Entry Date 12/27/2007] |
| 12/27/2007 | 18 | ORDER granting 13 Motion to Appear pro hac vice. Attorney Joseph J. Costello for COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES', RETIREMENT INCOME PLAN and ERC added. Signed by Judge Jane Magnus-Stinson on |

| | | |
|---|---|---|
| | | 12/27/2007. (LSC) [Entry Date 12/28/2007] |
| 12/27/2007 | 19 | ORDER granting 15 Motion to Appear pro hac vice. Attorney Theresa J. Chung for COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES', RETIREMENT INCOME PLAN and ERC added. Signed by Judge Jane Magnus-Stinson on 12/27/2007. (LSC) [Entry Date 12/28/2007] |
| 12/27/2007 | 20 | ORDER granting 14 Motion to Appear pro hac vice. Attorney Jeremy P. Blumenfeld for COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES', RETIREMENT INCOME PLAN and ERC added. Signed by Judge Jane Magnus-Stinson on 12/27/2007. (LSC) [Entry Date 12/28/2007] |
| 12/28/2007 | 21 | Joint MOTION for Extension of Time to January 24, 2008 to respond re 9 Motion to Dismiss (Partial); February 20, 2008 to reply re 9 Motion to Dismiss (Partial), filed by Plaintiffs SUSAN BYRD, ADRIANA VASQUEZ, CORA NELSON-MANLEY, PAUL ABELMAN, VALERIE R. NUTTER, WARREN JEMMOTT. (Attachments: # 1 Text of Proposed Order)(Gottesdiener, Eli) Modified on 1/2/2008 (LSC). |
| 01/02/2008 | 22 | ORDER granting parties' 21 Joint Motion for Extension of Time. Pltfs shall file their response to defts' partial motion to dismiss by 1/24/08, and Defts shall file their reply by 2/20/08. Signed by Judge Jane Magnus-Stinson on 1/2/08. (SWM) [Entry Date 01/02/2008] |
| 01/15/2008 | 23 | MOTION to Change Venue *And to Stay Proceedings Pending a Ruling on this Motion*, filed by Plaintiffs SUSAN BYRD, ADRIANA VASQUEZ, CORA NELSON-MANLEY, PAUL ABELMAN, VALERIE R. NUTTER, WARREN JEMMOTT. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Gottesdiener, Eli) [Entry Date 01/15/2008] |
| 01/16/2008 | 24 | Corporate Disclosure Statement by ERC. (Chung, Theresa) [Entry Date 01/16/2008] |
| 02/04/2008 | 25 | RESPONSE in Opposition re 23 MOTION to Change Venue *And to Stay Proceedings Pending a Ruling on this Motion*, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Chung, Theresa) [Entry Date 02/04/2008] |
| 02/19/2008 | 26 | REPLY in Support of Motion re 23 MOTION to Change Venue *And to Stay Proceedings Pending a Ruling on this Motion*, filed by Plaintiffs SUSAN BYRD, ADRIANA VASQUEZ, CORA NELSON-MANLEY, PAUL ABELMAN, VALERIE R. NUTTER, WARREN JEMMOTT. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Gottesdiener, Eli) [Entry Date 02/19/2008] |

| 02/25/2008 | 27 | MOTION for Leave to File *Sur-Reply*, filed by Defendants COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, ERC. (Attachments: # 1 Exhibit A - Proposed Sur-Reply, # 2 Text of Proposed Order)(Chung, Theresa) [Entry Date 02/25/2008] |
| --- | --- | --- |
| 02/29/2008 | 28 | ORDER to Resolve Consolidation and Related Case Issues - The court ORDERS plaintiffs in this Abelman action to file no later than 3/14/2008 in Caufield (4:07-cv-0016-SEB-WGH) a statement of their position on whether this action should be consolidated with Caufield (see Order for further details). Signed by Judge David Frank Hamilton on 2/29/2008.(LSC) (LSC). [Entry Date 02/29/2008] |
| 03/14/2008 | 29 | Statement *in Response to the Court's Order of February 29, 2008 Regarding Consolidation with Caufield* by all plaintiffs. (Attachments: # 1 Exhibit 1)(Gottesdiener, Eli) [Entry Date 03/14/2008] |
| 03/21/2008 | 30 | NOTICE *of Supplemental Authority in Support of Their Motion to Transfer to the S.D.N.Y*, filed by Plaintiffs SUSAN BYRD, ADRIANA VASQUEZ, CORA NELSON-MANLEY, PAUL ABELMAN, VALERIE R. NUTTER, WARREN JEMMOTT, re 23 MOTION to Change Venue *And to Stay Proceedings Pending a Ruling on this Motion*. (Attachments: # 1 Exhibit 1) (Gottesdiener, Eli) [Entry Date 03/21/2008] |
| 03/26/2008 | 31 | ORDER on related case issues and Transferring cases to the Southern District of New York. Cause No. 1:07-cv-1554 shall be reassigned to the Hon. Sarah Evans Barker with the amended cause number as shown as a related action to Cause No. 4:07-cv-16. ORDER granting 23 Motion to Change Venue.. Signed by Judge Sarah Evans Barker on 07-1554. (MAC) [Entry Date 03/27/2008] |
| 03/26/2008 | 33 | **CONTINUATION OF DOCKET ENTRY 31**CLOSED TRANSFER to the Southern District of New York. Signed by Judge Sarah Evans Barker on 3/26/08.(MAC) [Entry Date 03/27/2008] |
| 03/27/2008 | 32 | Reassignment of Case to Judge Sarah Evans Barker. Judge David Frank Hamilton no longer assigned to the case. Please include the new case number, 1:07-cv-1554-SEB-JMS, on all future filings in this matter. (MAC) [Entry Date 03/27/2008] |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, *et al.*,

     Plaintiffs,

vs.

                            Civil Action 2:07-CV-793
                            Judge Watson
                            Magistrate Judge King

COLGATE-PALMOLIVE CO.,
*et al.*,

     Defendants.

### ORDER

Defendants moved to change venue in this action to the United States District Court for the Southern District of Indiana, where a related, and earlier filed, case remains pending. *Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan*, No. 4:07-CV-0016SEB-WGH. In response to the motion, plaintiffs indicated that they "do not oppose a transfer in the event either that the Indiana District Court denies the Defendant Plan's long-pending, fully-briefed motion to dismiss *Caufield* on statute of limitations grounds or grants Defendant's belated motion to stay a ruling on its motion to dismiss...." *Opposition to Defendants' Motion to Transfer*, at 1, Doc. No. 28. The *Caufield* Court has now stayed consideration of the motion to dismiss that action pending resolution of the motion to change venue filed in this action. *Notice*, Doc. No. 34. It therefore appears that defendants' motion to change venue is, under the circumstances, unopposed by plaintiffs.

Accordingly, the motion to change venue, Doc. No. 11, is **GRANTED.** This matter is hereby **ORDERED TRANSFERRED** to the United States District Court for the Southern District of Indiana.

November 28, 2007                        _____s/Norah McCann King_____
                                              Norah M<sup>c</sup>Cann King
                                         United States Magistrate Judge

United States District Court
Southern District of Indiana
105 Birch Bayh Federal Bldg and
46 East Ohio Street
Indianapolis, IN 46204

*ρ̄ h*

*NOV 30 AH 3: 48*

*SOUTHERN DISTRICT*
*OF INDIANA*
*LAURA A. BRIGGS*
*CLERK*

United States District Court
Southern District of Ohio

Joseph P. Kinneary United States Courthouse
85 Marconi Boulevard, Suite 260
Columbus, Ohio 43215

James Bonini
Clerk of Court

Telephone:   614.719.3000
Facsimile:   614.719.3005

United States District Court
Southern District of Indiana
105 Birch Bayh Federal Bldg and
46 East Ohio Street
Indianapolis, IN 46204

**1 : 0 7 -cv- 1 5 5 4 -DFH -JMS**

November 28, 2007

RE: Transfer of 2:07-cv-793

Dear Clerk:

Below you will find instructions for retrieving electronic case documents from our Court's web
page and a certified copy of the docket sheet for the above referenced case number.

Case Caption: .

> **CLICK ON:**
> **-J-NET**
> **-External Court Sites**
> **-Ohio Southern District**
> **-Electronic Case Filing**
> **-(IN RED) BEGIN: Electronic Case Filing**
> **-Electronic Case Filing Log-In**
> **The Next Screen shows** - Welcome to the District CM/ECF LIVE Area
> > - Click on the District Version 1 Live System hyperlink

At login type: *Your Court's Pacer Login*
  Password: *Your Court's Pacer Password*
Skip "Client Code", and click on the NEXT button

Once you are into CM/ECF at the top Click on REPORTS to print the docket sheet:

> **-Reports**
> **-Docket Sheet**

**-Type In (our) Case Number**
**-Run Report**

To print each item on the docket sheet click on the underlined document number and print.

If the document does not have an underlined document number or if it does not have a document number at all, then there will be nothing to print. It will be just what is printed on the docket sheet.

**NOTE:** Once you have retrieved our case information for the transfer case, please e-mail me at Rashan_Spraggins@ohsd.uscourts.gov with your Court's case number. Thank you.

If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

James Bonini, Clerk

By: _____

Rashan Spraggins
Deputy Clerk

# U.S. District Court
## Southern District of Ohio (Columbus)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00793-MHW-NMK
## Internal Use Only

Abelman et al v. Colgate-Palmolive
Company et al
Assigned to: Michael H. Watson
Referred to: Norah McCann King
Cause: 29:1001 E.R.I.S.A.: Employee
Retirement

Date Filed: 08/13/2007
Jury Demand: None
Nature of Suit: 791 Labor:
E.R.I.S.A.
Jurisdiction: Federal Question

### Plaintiff

**Paul Abelman**
*On behalf of himself and on
behalf of all others similarly
situated*

RECEIVED

DJH

NOV 3 0 2007

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

represented by **William Henry Blessing**
119 East Court Street, Ste 500
Cincinnati, OH 45202
513-621-9191
Fax: 513-621-7086
Email:
billblessing@cinci.rr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eli Gottesdiener**
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215
718-788-1500
Fax: 718-688-1650
Email:
eli@gottesdienerlaw.com
*ATTORNEY TO BE NOTICED*

I CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY OF THE
ORIGINAL FILED IN MY OFFICE
ON **11 13 07**
JAMES BONINI, CLERK
BY: _____
Deputy Clerk
DATE: **11 28 07**

### Plaintiff

**Valerie R. Nutter**
*On behalf of herself and on
behalf of all others similarly*

represented by **William Henry Blessing**
(See above for address)
*LEAD ATTORNEY*

*situated*                                          *ATTORNEY TO BE NOTICED*

                                                    **Eli Gottesdiener**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Warren Jemmott**              represented by      **William Henry Blessing**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Eli Gottesdiener**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Susan Byrd**                  represented by      **William Henry Blessing**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Eli Gottesdiener**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Adriana Vasquez**             represented by      **William Henry Blessing**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Eli Gottesdiener**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cora Nelson-Manley**          represented by      **William Henry Blessing**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eli Gottesdiener**
(See above for address)
*ATTORNEY TO BE NOTICED*

## V.

### Defendant

**Colgate-Palmolive
Company**                    represented by **Felix Christopher Wade**
Schottenstein Zox & Dunn - 2
250 West Street
Columbus, OH 43215
614-462-2700
Email: fwade@szd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve Melinda Ellinger**
Schottenstein Zox & Dunn
250 West Street
Columbus, OH 43215
614-462-5037
Email: eellinger@szd.com
*ATTORNEY TO BE NOTICED*

**Jeremy P Blumenfeld**
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215-963-5258
Fax: 877-432-9652
Email:
jblumenfeld@morganlewis.com

*ATTORNEY TO BE NOTICED*

**Joseph J Costello**
Morgan, Lewis & Bockius LLP

1701 Market Street
Philadelphia, PA 19103-2921
215-963-5295
Fax: 877-432-9652
Email:
jcostello@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Theresa J Chung**
Morgan, Lewis & Bockius LLP

1701 Market Street
Philadelphia, PA 19103-2921
215-963-5584
Fax: 877-432-9652
Email:
tchung@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Colgate-Palmolive Company Employees' Retirement Income Plan** | represented by | **Felix Christopher Wade**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Eve Melinda Ellinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeremy P Blumenfeld**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph J Costello**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theresa J Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ERC**                    represented by **Felix Christopher Wade**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/13/2007 | ●1 | COMPLAINT filed by Plaintiffs Paul Abelman and Valerie R. Nutter against Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan.(Filing fee $ 350.) (Attachments: # 1 Civil Cover Sheet # 2 Receipt) (scot1, ) (Entered: 08/13/2007) |
| 08/13/2007 | ● | Filing fee: $ 350, receipt number 435201 (scot1, ) (Entered: 08/13/2007) |
| 08/13/2007 | ●2 | Summons Issued as to Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan. (scot1, ) (Entered: 08/13/2007) |
| 08/15/2007 | ●3 | MOTION for Leave to Appear Pro Hac Vice. Filing fee $ 200. by Plaintiffs Paul Abelman, Valerie R. Nutter. (Blessing, William) (Entered: 08/15/2007) |
| 08/16/2007 | ●4 | ORDER granting # 3 Motion for attorney Eli Gottesdiener to appear pro hac vice on behalf of Plaintiffs conditional on counsel to register for ECF or seek leave from doing so within fourteen (14) days of |

| | | |
|---|---|---|
| | | the date of this order. Signed by Judge Norah McCann King on 8/16/07. (rew ) (Entered: 08/16/2007) |
| 08/16/2007 | ● | Filing fee: $ 200.00, receipt number 257596 for Phv motion for Attorney Eli Gottesdiener. (rew ) (Entered: 08/17/2007) |
| 08/20/2007 | ●5 | SUMMONS Returned Executed: Colgate-Palmolive Company served on 8/14/2007, answer due 9/4/2007. (Gottesdiener, Eli) (Entered: 08/20/2007) |
| 08/20/2007 | ●6 | SUMMONS Returned Executed: Colgate-Palmolive Company Employees' Retirement Income Plan served on 8/14/2007, answer due 9/4/2007. (Gottesdiener, Eli) (Entered: 08/20/2007) |
| 08/29/2007 | ●7 | STIPULATION *for Extension of Time to Move or Plead* by Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Wade, Felix) (Entered: 08/29/2007) |
| 09/18/2007 | ●8 | Corporate Disclosure Statement by Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Ellinger, Eve) (Entered: 09/18/2007) |
| 09/18/2007 | ●9 | MOTION for Leave to Appear Pro Hac Vice. Filing fee $ 200. by Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Attachments: # 1 Good Standing Certificate of Theresa June-kyung Chung) (Ellinger, Eve) (Entered: 09/18/2007) |
| 09/18/2007 | ●10 | MOTION for Leave to Appear Pro Hac Vice *of Joseph J. Costello*. Filing fee $ 200. by Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Attachments: # 1 Good Standing Certificate of Joseph J. Costello) (Ellinger, Eve) (Entered: 09/18/2007) |
| 09/18/2007 | ●11 | MOTION to Change Venue *to Southern District of* |

|  |  | *Indiana* by Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Ellinger, Eve) (Entered: 09/18/2007) |
|---|---|---|
| 09/18/2007 | ❶12 | Memorandum in Support of MOTION to Change Venue to Southern District of Indiana by Defendants Colgate-Palmolive Company & Colgate-Palmolive Company Employees' Retirement Income Plan. (Attachments: # 1 Exhibit A - Caufield Complaint# 2 Affidavit Ex. B - Matthew Faranda Declaration) (Ellinger, Eve) Modified text and event on 9/24/2007 (er ). (Entered: 09/18/2007) |
| 09/18/2007 | ❶ | Filing fee: for pro hac vice motion # 9 and #10 of $ 400.00, receipt number 258014. (rew ) (Entered: 09/19/2007) |
| 09/19/2007 | ❶13 | ORDER granting # 9 Motion for attorney Theresa J Chung to appear pro hac vice; and granting #10 Motion for attorney Joseph J. Costello to appear pro hac vice on behalf of defendants. Signed by Judge Norah McCann King on 9/19/07. (rew ) (Entered: 09/19/2007) |
| 09/19/2007 | ❶ | Order # 13 mailed to attorneys Joseph J Costello and Theresa J. Chung. (rew ) (Entered: 09/20/2007) |
| 09/24/2007 | ❶ | (Court only) ***Motions terminated: 12 MOTION to Change Venue *Memorandum in Support of Motion*; document is a memo in support of motion to doc 11 which is the motion to change venue. (er ) (Entered: 09/24/2007) |
| 09/24/2007 | ❶14 | MOTION to Dismiss *Plaintiffs' Complaint* by Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan.Responses due by 10/18/2007 (Wade, Felix) (Entered: 09/24/2007) |
| 09/24/2007 | ❶15 | Memorandum of Law in Support of 14 Motion to Dismiss by Defendants Colgate-Palmolive Company, |

| | | |
|---|---|---|
| | | Colgate-Palmolive Company Employees' Retirement Income Plan.Responses due by 10/18/2007 (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J# 11 Exhibit K# 12 Exhibit L# 13 Exhibit M# 14 Exhibit N# 15 Exhibit O) (Wade, Felix) Modified text on 11/28/2007 (er ). (Entered: 09/24/2007) |
| 09/25/2007 | ◑16 | NOTICE of Hearing: Pretrial Conference set for 11/28/2007 @ 02:30 PM in chambers before Norah McCann King. (jm1, ) (Entered: 09/25/2007) |
| 10/09/2007 | ◑17 | MOTION to Stay *for 60 days pending a ruling on defendant Plan's motion to dismiss related action in district to which Defendants seek to transfer this action* by Plaintiffs Paul Abelman, Valerie R. Nutter. (Gottesdiener, Eli) (Entered: 10/09/2007) |
| 10/09/2007 | ◑18 | Mail Returned as Undeliverable. (RETURN TO SENDER) Mail sent to Michael J. Rosen PA. Contents include doc 13. (er ) (Entered: 10/10/2007) |
| 10/11/2007 | ◑19 | MOTION for Extension of Time to File Response/Reply New date requested 10/31/2007. by Plaintiffs Paul Abelman, Valerie R. Nutter. (Gottesdiener, Eli) (Entered: 10/11/2007) |
| 10/12/2007 | ◑20 | Supplemental Memorandum Supporting re 17 MOTION to Stay *for 60 days pending a ruling on defendant Plan's motion to dismiss related action in district to which Defendants seek to transfer this action* filed by Plaintiffs Paul Abelman, Valerie R. Nutter. (Attachments: # 1 Exhibit 1) (Gottesdiener, Eli) (Entered: 10/12/2007) |
| 10/19/2007 | ◑21 | RESPONSE in Opposition re 17 MOTION to Stay *for 60 days pending a ruling on defendant Plan's motion to dismiss related action in district to which Defendants seek to transfer this action*, 19 MOTION |

| | | |
|---|---|---|
| | | for Extension of Time to File Response/Reply New date requested 10/31/2007. filed by Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Attachments: # 1 Exhibit A - Email 10/11/07# 2 Exhibit B - Email 10/12/07) (Wade, Felix) (Entered: 10/19/2007) |
| 10/23/2007 | ◑22 | ORDER : If plaintiffs intend to file a reply in support of their motion to stay # 17, and 20 they shall do so by 10/26/07. Signed by Judge Norah McCann King on 10/23/07. (rew ) (Entered: 10/24/2007) |
| 10/26/2007 | ◑23 | REPLY to Response to Motion re 17 MOTION to Stay *for 60 days pending a ruling on defendant Plan's motion to dismiss related action in district to which Defendants seek to transfer this action*, 19 MOTION for Extension of Time to File Response/Reply New date requested 10/31/2007. filed by Plaintiffs Paul Abelman, Valerie R. Nutter. (Gottesdiener, Eli) (Entered: 10/26/2007) |
| 10/29/2007 | ◑24 | ORDER denying 17 Plaintiffs' Motion to Stay Briefing. Plaintiffs' memo contra the motions to change venue and to dismiss are due 11/2/2007. Signed by Judge Norah McCann King on 10/29/07. (er ) (Entered: 10/29/2007) |
| 10/29/2007 | ◑25 | NOTICE of Appearance by Jeremy P Blumenfeld Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan (Blumenfeld, Jeremy) (Entered: 10/29/2007) |
| 10/30/2007 | ◑ | (Court only) Attorney Jeremy P Blumenfeld for Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan added. (rew ) (Entered: 10/30/2007) |
| 11/02/2007 | ◑26 | RESPONSE in Opposition re 11 MOTION to Change Venue *to Southern District of Indiana* filed by |

| | | Plaintiffs Paul Abelman, Valerie R. Nutter. (Attachments: # (1) Exhibit 1) (Gottesdiener, Eli) Modified on 11/5/2007- dkt removed by Clerk, see remark filed 11/5/2007 (er ). (Entered: 11/02/2007) |
|---|---|---|
| 11/02/2007 | ❏27 | AMENDED COMPLAINT against all defendants, filed by all plaintiffs. (Gottesdiener, Eli) (Entered: 11/02/2007) |
| 11/02/2007 | ❏28 | RESPONSE in Opposition re 11 MOTION to Change Venue *to Southern District of Indiana* filed by Plaintiffs Paul Abelman, Valerie R. Nutter. (Attachments: # 1 Exhibit 1) (Gottesdiener, Eli) (Entered: 11/05/2007) |
| 11/05/2007 | ❏ | Remark: Both documents filed under doc 26 consisted of just the exhibit without the main document. Because of this, Doc 26 was refiled under doc 28 by attorney Eli Gottesdiener, thus doc 26 was removed by the Clerk. (er ) (Entered: 11/05/2007) |
| 11/08/2007 | ❏29 | REPLY to 12 Memorandum in Support of 11 Motion to Change Venue filed by Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Wade, Felix) Modified text on 11/13/2007 (er ). (Entered: 11/08/2007) |
| 11/13/2007 | ❏ | (Court only) ***Motions terminated: 19 MOTION for Extension of Time to File Response/Reply New date requested 10/31/2007. filed by Valerie R. Nutter, Paul Abelman. (rew ) (Entered: 11/13/2007) |
| 11/13/2007 | ❏30 | Summons Issued as to ERC. (sr) (Entered: 11/13/2007) |
| 11/16/2007 | ❏31 | Unopposed MOTION for Extension of Time New date requested 00/00/08. *to Move, Plead, or Otherwise Respond to Plaintiffs' Amended Complaint* by Defendants ERC, Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement |

| | | |
|---|---|---|
| | | Income Plan. (Wade, Felix) (Entered: 11/16/2007) |
| 11/19/2007 | ●32 | ORDER granting # 31 Motion for Extension of Time. Defendants will respond to the complaint no later than ten (10) days after a rulilng is made on the pending motion to transfer. Signed by Judge Norah McCann King on 11/19/07. (rew ) (Entered: 11/19/2007) |
| 11/27/2007 | ●33 | RULE 26(f) REPORT *of Parties* by Plaintiffs Warren Jemmott, Susan Byrd, Adriana Vasquez, Cora Nelson-Manley, Paul Abelman, Valerie R. Nutter, Defendants ERC, Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan. (Wade, Felix) (Entered: 11/27/2007) |
| 11/27/2007 | ●34 | NOTICE by Defendants ERC, Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan *of Ruling on Motion to Stay in the Caufield v. Colgate Case Pending Disposition of Defendants' Motion to Transfer this Case to the Southern District of Indiana* (Attachments: # 1 Exhibit Order Granting Defendant's Motion for Stay of Proceedings Pending Disposition of its Motion to Dismiss) (Wade, Felix) (Entered: 11/27/2007) |
| 11/28/2007 | ●35 | ORDER granting #11 Motion to Change Venue. This matter is ordered transferred to the United States District Court for the Southern District of Indiana. Signed by Judge Norah McCann King on 11/28/07. (rew ) (Entered: 11/28/2007) |
| 11/28/2007 | ● | (Court only) ***Motions terminated: 15 MOTION to Dismiss *Memo of Law in Support of Motion to Dismiss*- document is a memo and not motion. (er ) (Entered: 11/28/2007) |

William H. Blessing (#0006848)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| PAUL ABELMAN, and | : | |
| | : | |
| VALERIE R. NUTTER | : | |
| | : | |
| On behalf of themselves and on | : | |
| behalf of all others similarly situated, | : | No. **2 : 07 C V 793** |
| | : | |
| Plaintiffs, | : | |
| | : | **J. WATSON** |
| | : | - M.J. KING |
| v. | : | **CLASS ACTION COMPLAINT** |
| | : | |
| COLGATE-PALMOLIVE COMPANY, | : | |
| and | : | |
| | : | |
| COLGATE-PALMOLIVE COMPANY | : | |
| EMPLOYEES' RETIREMENT | : | |
| INCOME PLAN | : | |
| | : | |
| Defendants. | : | |

### Nature of Action

1.      This is a class action under the Employee Retirement Income Security Act

of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

### Subject Matter Jurisdiction

2.      This Court has subject matter jurisdiction over this action by virtue of 28

U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

Specifically, this action is brought under ERISA § 502(a), 29 U.S.C. § 1132(a).

### Personal Jurisdiction and Venue

3.      This Court has personal jurisdiction over Defendants (defined below) because they transact business in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process. *See* ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

4.      Under ERISA § 502(e), 29 U.S.C. § 1132(e), an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." Venue here is proper for both Defendants on three of the four bases provided by the statute.

5.      First, this is the District where the alleged breaches occurred. Where a participant claims that a violation of ERISA resulted in a failure to pay a benefit due under an ERISA plan, the alleged breach is deemed to have occurred in the place where the participant received or should have received his or her plan benefits. It was in this District, where Plaintiffs currently reside and resided at the relevant time, that the Plan benefits at issue here should have been paid to them.

6.      Second, the Plan and the Company "may be found" in this District in either a general or specific personal jurisdiction sense.

7.      There is general personal jurisdiction over the Plan because many hundreds of residents of this District, as employees of the Company, are currently accruing benefits under the Plan in this District, or, as former employees of the Company, are currently receiving benefits from the Plan in the District. In addition, the Plan comes into this District on a continuous basis to communicate with these District residents regarding their benefits, including through a highly-interactive Plan internet website.

8.      There is general personal jurisdiction over the Company because it has continuous and systematic contacts with this District through its employment of many hundreds of District residents, ownership of property in the District, operation of a manufacturing plant in this District and operation of numerous offices in this District.

9.      There is specific personal jurisdiction over both Defendants insofar as this action arises out of the failures to pay Plaintiffs and other proposed Class members residing in this District pension benefits that should have been paid in this District.

10.     Third, each Defendant "resides" here within the meaning of ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

### The Parties

11.     Plaintiff Paul Abelman, a resident of New Albany, Ohio, is a former employee of the Company or one or more of its affiliates or former affiliates participated in the Plan during his period of employment with the Company. Mr. Abelman remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although he received benefits from the Plan, the Plan owes him additional benefits that it has not yet paid him, as set forth herein.

12.     Plaintiff Valerie R. Nutter, a resident of Zanesville, Ohio, is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company. Ms. Nutter remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

13.     Defendant Colgate-Palmolive Company ("Colgate" or the "Company"), a

3

domestic corporation, is the sponsor of the Plan, the Plan's administrator and a named fiduciary of the Plan, within the meaning of ERISA §§ 3(16)(A)-(B), 402(a), 29 U.S.C. §§ 1002(16)(A)-(B), 1102(a).

14.    Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (EIN: 13-2854931 - Plan No.: 001) (the "Plan") is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).

### Facts

15.    Plaintiff Abelman was employed by the Company or one of its affiliates from 1992 until 2005.

16.    Plaintiff Nutter was employed by the Company or one of its affiliates for approximately 12 years, from 1988 until 2000.

17.    Throughout that time, Plaintiffs accrued pension benefits under the Plan, a defined benefit plan of the "cash balance" variety, in which a hypothetical account, known as a "Personal Retirement Account" (or "PRA"), was established for each of them.

18.    Under the terms of the Plan, Plaintiffs accrued "pay credits" based on a percentage of their pensionable compensation and monthly "interest credits" in an amount, determined quarterly, equal to 1/12 of an effective annual calendar year rate equal to the sum of the average rate of a new 6-month Treasury bill in effect during the quarter, plus 2%.

19.    Under the Plan, participants' right to receive future interest credits on their account balances through normal retirement age (age 65) accrued at the same time as the

4

corresponding pay credits to which the interest credits relate. In technical terms, the Plan was, as a result, a "frontloaded" interest crediting plan within the meaning of the law. *See, e.g.,* IRS Notice 96-8, 1996-1 C.B. 359-61.

20.    After terminating employment, Plaintiffs Abelman and Nutter elected to receive their fully-vested Plan benefits in the form of a lump sum distribution in 2000 and 2006, respectively. Plaintiff Abelman was 43 at the time and Plaintiff Nutter was 36 at the time.

21.    The Plan calculated and paid Plaintiff Nutter a benefit according to the terms of the Plan in October 2000 which the Plan forwarded to her at her home in Zanesville in the form of a check in the amount of $27,258.64. The Plan calculated and paid Plaintiff Abelman a benefit according to the terms of the Plan on or about April 2006 which the Plan forwarded to his home in New Albany in the form of a check in the amount of $60,654.37.

22.    However, these amounts were underpayments and not actuarially equivalent to their accrued benefits because the Plan failed to perform the required "whipsaw" calculation. Had Plaintiffs' hypothetical account balances been projected to normal retirement age at a rate that did not understate the value of the interest credits they had the right to receive through normal retirement age, Plaintiffs' benefits expressed in the form of a lump sum would have exceeded the lump sum amounts that they actually received.

**Exhaustion of the Plan's Claims Process Was Not Required**

23.     Plaintiffs did not exhaust the administrative remedies provided under the terms of the Plan prior to initiating this lawsuit because exhaustion of the Plan's internal claims process was not required and/or should be excused in this case, even assuming the Plan had or has an ERISA-compliant claims process.

24.     First, the exhaustion requirement does not apply because the claims Plaintiffs raise are statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan. Congress intended that statutory questions of this nature be adjudicated by Article III judges, not employers acting as plan administrators.

25.     Second, even if the exhaustion requirement is not categorically inapplicable here, it should be excused as futile. Here, as in *West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007), "a lump-sum distribution is described [under the plan] as a payment equal to the participant's account balance. Had [the plaintiff] submitted a timely claim for the recalculation of his lump-sum benefit, the [plan sponsor] would simply have responded, as it has argued in this appeal, that [the plaintiff] has already received an amount equal to his account balances, which is all that he is entitled to under [the plan sponsor's] interpretation of its Plan." *Id.* at 405.

26.     Futility is also demonstrated by the fact that the legal standard Defendants violated is clear and was well-established long ago – and was confirmed by the IRS as long ago as 1991, *see* "Nondiscrimination Requirements for Qualified Plans," 56 Fed.Reg. 47524, 47528 (1991), years before the Plan's illegal methodology for computing lump sums was adopted and put into effect (in 1994). In the intervening 15

6

years, numerous Courts of Appeals and District Courts have confirmed these requirements. *See, e.g., West, supra*; *Lyons v. Georgia-Pacific Corp.,* 221 F.3d 1235, 1237-38 (11th Cir. 2000); *Esden v. Bank of Boston,* 229 F.3d 154, 164-173 (2d Cir. 2000); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 338 F.3d 755, 758 (7th Cir. 2003). Yet Defendants have failed to conform the Plan or their conduct under it to the requirements of the law, evidencing their belief that the law does not apply to them.

27.     Third, exhaustion was not required for the separate but related reason that the Plan's internal claims process is not designed to address and is not capable of addressing alleged statutory violations.

28.     Finally, exhaustion should be excused because it would serve few if any of the recognized purposes of the exhaustion requirement, as Plaintiffs will demonstrate should Defendants nevertheless seek to compel exhaustion.

### Claim for Relief

29.     Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

30.     ERISA §§ 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g), and Internal Revenue Code § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d), requires any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, to be no less than the present value of the participant's accrued benefit expressed as an annuity commencing at normal retirement age (under the Plan, age 65).

31.     The Plan paid Plaintiffs lump sum benefits that was less than the present value of their respective accrued benefits in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d).

7

32.    The Plan's conduct as described above also resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation § 1.411(a)-4 and 4T, in that the Plan conditioned the right to receive future interest credits on Plaintiffs not taking a distribution prior to normal retirement age.

### Class Action Allegations

33.    Plaintiffs bring suit on behalf of themselves and on behalf of all other participants and beneficiaries similarly situated under the provisions of Rule 23 of the Federal Rules of Civil Procedure with respect to violations alleged herein.

34.    The proposed Class is defined as follows:

All persons who were vested participants in the Colgate-Palmolive Company Employees' Retirement Income Plan who received a distribution in the form of a lump sum prior to August 17, 2006 that equaled the amount of their hypothetical account balance when, at time their lump sums were calculated, the Plan's interest crediting rate exceeded the applicable discount rate; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

35.    The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a)(1) are satisfied in that there are too many Class members for joinder of all of them to be practicable.  There are at least hundreds of members of the proposed Class dispersed among many states.

36.    The claims of the Class members raise numerous common questions of fact and law, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2).  All issues concerning liability are common to all Class members because such issues concern their entitlement to benefits calculated in a manner other than that calculated thus far and their entitlement to relief from harm caused by the violations of law, rather than any action

8

taken by Plaintiffs or any Class member. In addition, all issues concerning relief are also common to the Class.

37.    The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump sum distribution for each member of the Class was calculated in the same manner as described above. Thus, there exist common questions of fact as to each member of the Class. Each Class member's rights will be determined by reference to the same Plan documents and the same provisions of ERISA. Thus, there exist common questions of law as to each Class member, *i.e.,* whether the method of calculating of lump sum distributions violated the law.

38.    Plaintiffs' claims are typical of the claims of Class members, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(3). They do not assert any claims relating to the Plan in addition to or different than those of the Class. Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan document and applicable provisions of ERISA.

39.    Plaintiffs are adequate representatives of the proposed Class, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests are identical to those of the proposed Class. The Plan has no unique defenses against them that would interfere with their representation of the class. Plaintiffs have engaged competent counsel with both ERISA and class action litigation experience.

40.    Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are

9

satisfied in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

41.    All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Class members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants and that the Court award the following relief:

A.    Certification of this action as a class action for all purposes of liability and relief and appointment of undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23.

B.    Judgment for Plaintiffs and the Class against Defendants on all claims expressly asserted and/or within the ambit of this Complaint.

C.    An order awarding, declaring or otherwise providing Plaintiffs and the Class all other such relief to which Plaintiffs and the Class are or may be entitled whether or not specified herein.

D.    An order awarding pre- and post-judgment interest.

E.    An order awarding attorney's fees on the basis of the common fund doctrine (and/or other applicable law, at Plaintiffs' election), along with the reimbursement of the expenses incurred in connection with this action.

10

F.    An order awarding, declaring or otherwise providing Plaintiffs all relief

under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that Plaintiffs

may subsequently specify and/or that the Court may deem appropriate.

Dated:  August 13, 2007                    Respectfully submitted,

*William H. Blessing*

William H. Blessing (#0006848)
The Blessing Law Firm
119 East Court Street, Suite 500
Cincinnati, Ohio 45202
Telephone:  (513) 621-9191
Telecopier:  (513) 621-7086

Of Counsel:

Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
(718) 788-1500

*Counsel for Plaintiffs and the proposed Class*

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

Paul Abelman, et al.,                      :

          Plaintiff,                    :          Case No.          2:07cv793

   -vs-                                      :          District Judge    Watson
                                  Magistrate Judge

Colgate-Palmolive Co., et al.,             :

          Defendant.                    :

## MOTION FOR ADMISSION *PRO HAC VICE*

      Pursuant to S. D. Ohio Civ. R. 83.4(c),  William H. Blessing ,
trial attorney for  Plaintiffs  in the above-captioned action, hereby moves the
court to admit  Eli Gottesdiener  pro hac vice to appear and participate as
counsel or co-counsel in this case for  Plaintiffs .

      Movant represents that  Eli Gottesdiener  is a member in good standing
of the highest court of  New York  as attested by the accompanying certificate from that
court and that  Eli Gottesdiener  is not eligible to become a member of the
permanent bar of this Court.  This Motion is accompanied by the required $200.00 fee.

      Eli Gottesdiener  understands that, unless expressly excused, he or
she must register for electronic filing with this Court promptly upon the granting of this Motion.

      Eli Gottesdiener  's relevant identifying information is as follows:

Business telephone  718-788-1500          Business fax  718-688-1650

Business address  498 7th Street
                  Brooklyn, NY  11215

Business e-mail address      eli@gottesdienerlaw.com

*William H. Blessing*
William H. Blessing

Trial attorney for  Plaintiffs



# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

---

I, *Michael J. Novack*, Clerk of the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, do hereby certify that

## Eli Gottesdiener

having taken and subscribed the Constitutional Oath of Office as prescribed by law, was duly licensed and admitted to practice by this Court as an Attorney and Counselor at Law in all courts of the State of New York on the **19th day of March, 2002**, is currently in good standing and is registered with the Administrative Office of the Courts as required by section four hundred sixty-eight-a of the Judiciary Law.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of said Court, at the City of Albany, this **10th day of August, 2007**.



_____
Clerk

The foregoing statement is made under penalty of perjury and is true and correct to the best of my knowledge and belief.

_____
Eli Gottesdiener

Dated: Brooklyn, New York
       AUGUST 13, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, *et al.*,

        Plaintiffs,

    vs.                           Civil Action 2:07-CV-793
                                     Judge Watson
                                     Magistrate Judge King

COLGATE-PALMOLIVE CO.,
*et al.*,

        Defendants.

<u>ORDER</u>

       Upon motion, Doc. No. 3, Eli Gottesdiener, Esq., is hereby **GRANTED** leave to appear *pro hac vice*, on behalf of plaintiffs, conditional on counsel's registration for electronic filing with this Court,[1] or seeking leave to be excused from doing so, within fourteen days of the date of this Order.

<u>August 16, 2007</u>                      *s/Norah McCann King*
                                      Norah McCann King
                            United States Magistrate Judge

---

[1]Counsel may initiate the registration process at this Court's website, http://www.ohsd.uscourts.gov/cmecf.htm. Problems or questions should be directed to Ms. Lisa Wright, 614.719.3222.

℀AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern  District of  Ohio

Paul Abelman and Valerie R. Nutter

V.

Colgate-Palmolive Company, et al.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:  **2: 07 CV 793**

**J. WATSON**

TO: (Name and address of Defendant)

Colgate-Palmolive Company
300 Park Avenue
New York, NY  10022

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William H. Blessing
The Blessing Law Firm
119 East Court Street, Suite 500,
Cincinnati, Ohio 45202

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk
of this Court within a reasonable period of time after service.

**James Bonini, Clerk**

CLERK

(By) DEPUTY CLERK

DATE     8/13/07

%AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE 8/14/2007 | |
| NAME OF SERVER *(PRINT)* Alejandro E. Rodriguez | TITLE Process server | |

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant. Place where served:

    Defendant Colgate-Palmolive Co. - 300 Park Avenue New York, New York 10022 (service upon authorized representative Betsy Fishbone, Associate General Counsel, Colgate-Palmolive Co.)

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

### DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    8/14/2007
            Date              *Signature of Server*

465-D Eastern Pkwy, Brooklyn, NY 11216
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

✎AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern    District of    Ohio

Paul Abelman and Valerie R. Nutter

V.

**SUMMONS IN A CIVIL CASE**

Colgate-Palmolive Company, et al.

CASE NUMBER:    **2:07 CV 793**

**J. WATSON**

TO: (Name and address of Defendant)

Colgate-Palmolive Company Employees' Retirement Income Plan
300 Park Avenue
New York, NY  10022

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William H. Blessing
The Blessing Law Firm
119 East Court Street, Suite 500,
Cincinnati, Ohio 45202

an answer to the complaint which is served on you with this summons, within     20     days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk
of this Court within a reasonable period of time after service.

**James Bonini, Clerk**                    8/3/07

CLERK                                      DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | 8/14/2007 |
| NAME OF SERVER *(PRINT)* Alejandro E. Rodriguez | TITLE | Process server |

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant. Place where served:

Defendant Colgate-Palmolive Co. Employees' Retirement Plan - 300 Park Avenue NY NY 10022 (service upon authorized representative Betsy Fishbone, Associate General Counsel, Colgate-Palmolive Co.)

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____8/14/2007_____     _Signature of Server_
Date

465-D Eastern Pkwy, Brooklyn, NY 11216
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL ABELMAN, ET AL.,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:07 CV 793 |
| | : | |
| vs. | : | Judge Watson |
| | : | |
| **COLGATE-PALMOLIVE** | : | Magistrate Judge King |
| **COMPANY, ET AL.,** | : | |
| | : | |
| Defendants. | : | |

---

### STIPULATION FOR EXTENSION OF TIME TO MOVE OR PLEAD

---

In accordance with United States District Court for the Southern District of Ohio Local Rule 6.1, it is hereby stipulated and agreed that Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan shall have an extension of time until September 24, 2007, in which to respond, answer, move or otherwise plead to Plaintiffs' Complaint, filed on August 13, 2007. This is a twenty (20) day extension and no prior extensions have been granted to Defendants in this case.

/s/ William H. Blessing
William H. Blessing   (0006848)
THE BLESSING LAW FIRM
119 East Court Street, Suite 500
Cincinnati, Ohio 45202
Telephone: (513) 621-9191
Facsimile: (513) 621-7086
Trial Attorney for Plaintiffs

/s/ Felix C. Wade
Felix C. Wade (0024462)
SCHOTTENSTEIN, ZOX & DUNN CO., LPA
250 West Street, Suite 700
Columbus, Ohio 43215
Telephone: (614) 462-2276
Facsimile: (614) 228-3673
E-mail: fwade@szd.com
Trial Attorney for Defendants

{H1007523.1 }

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on this 29th day of August, 2007, and served upon William H. Blessing, The Blessing Law Firm, 119 East Court Street, Suite 500, Cincinnati, Ohio 45202, Trial Attorney for Plaintiff, and Eli Gottesdiener, Eli Gottesdiener Law Firm, PLLC, 498 7th Street, Brooklyn, New York 11215, via the Court's electronic notification system.

/s/ Felix C. Wade
Felix C. Wade

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**PAUL ABELMAN, ET AL.,**                    :
                                             :
      Plaintiffs,                  :     Case No. 2:07 CV 793
                                             :
vs.                                          :     Judge Watson
                                             :
**COLGATE-PALMOLIVE**                        :     Magistrate Judge King
**COMPANY, ET AL.,**                         :
                                             :
      Defendants.                  :

---

## DEFENDANTS' CORPORATE DISCLOSURE STATEMENT

---

        Pursuant to the Corporate Disclosure Statement provisions in Local Civil Rule 7.1.1: Any non-governmental corporate party to a proceeding must file a Corporate Affiliations/Financial Interest statement identifying all of its parent, subsidiary and other affiliate corporations and listing any publicly held company that "controls, is controlled by, or is under common control with a publicly controlled corporation." A party must file the statement upon filing a complaint, answer, motion, response or other pleadings in this Court, whichever occurs first. The obligation to disclose any changes will be continuing throughout the pendency of this case.

        In compliance with those provisions, this Corporate Disclosure Statement is filed on behalf of:

<u>Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan</u>

1.      Is said party a parent, subsidiary or other affiliate of publicly owned corporation?

    _____    Yes      ___X___    No

    If the answer is Yes, list below the identity of the parent, subsidiary or other affiliate corporation and the relationship between it and the named party:

_____

2.      Is there a publicly owned corporation, not a party to the case, that has a financial interest in the outcome?    _____    Yes     ___X___    No

    If the answer is Yes, list the identity of such corporation and the nature of the financial interest.

_____

Respectfully submitted,

 /s/ Felix C. Wade
Felix C. Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: fwade@szd.com
Trial Attorney for Defendants

OF COUNSEL:

Eve Ellinger (0073742)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: eellinger@szd.com

Theresa J. Chung* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5295/5258/5584
Facsimile: (877) 432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com
Of-Counsel Attorneys for Defendants

*Pending *Pro Hac Vice Admission*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs


/s/ Felix C. Wade
Felix C. Wade

{H0008649 }

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL ABELMAN, ET AL.,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:07 CV 793 |
| | : | |
| vs. | : | Judge Watson |
| | : | |
| **COLGATE-PALMOLIVE** | : | Magistrate Judge King |
| **COMPANY, ET AL.,** | : | |
| | : | |
| Defendants. | : | |

## MOTION FOR ADMISSION *PRO HAC VICE*

Pursuant to S.D. Ohio Civ. R. 83.4(c), Felix Wade, trial attorney for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan in the above-captioned action, hereby moves the Court to admit Theresa J. Chung *pro hac vice* to appear and participate as counsel or co-counsel in this case for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan.

Movant represents that Theresa J. Chung is a member in good standing of the highest court of Pennsylvania as attested by the accompanying certificate from that court and that Theresa J. Chung is not eligible to become a member of the permanent bar of this Court. This Motion is accompanied by the required $200.00 fee.

Theresa J. Chung understands that, unless expressly excused, she must register for electronic filing with this Court promptly upon the granting of this Motion.

Theresa J. Chung's relevant identifying information is as follows:

Theresa J. Chung, Esq. (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Business Telephone: (215) 963-5584
Business Facsimile: (877) 432-9652
Email: tchung@morganlewis.com

Respectfully submitted,

/s/ Felix C. Wade
Felix Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: fwade@szd.com
Trial Attorney for Defendants

OF COUNSEL:

Eve Ellinger (0073742)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5295/5258/5584
Facsimile: (877) 432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com
Of-Counsel Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

*Pending *Pro Hac Vice Admission*

{H0086413}

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/ Felix C. Wade
Felix C. Wade

{H1008641 3 }



Supreme Court of Pennsylvania

## CERTIFICATE OF GOOD STANDING

*Theresa June-kyung Chung, Esq.*

**DATE OF ADMISSION**

*April 22, 2005*

The above named attorney was duly admitted to the bar of the Commonwealth of
Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated:  August 28, 2007**

Patricia A. Johnson
Chief Clerk

### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL ABELMAN, ET AL.,** | : | |
| Plaintiffs, | : | Case No. 2:07 CV 793 |
| | : | |
| vs. | : | Judge Watson |
| | : | |
| **COLGATE-PALMOLIVE** | : | Magistrate Judge King |
| **COMPANY, ET AL.,** | : | |
| | : | |
| Defendants. | : | |

---

## MOTION FOR ADMISSION *PRO HAC VICE*

---

Pursuant to S.D. Ohio Civ. R. 83.4(c), Felix Wade, trial attorney for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan in the above-captioned action, hereby moves the Court to admit Joseph J. Costello *pro hac vice* to appear and participate as counsel or co-counsel in this case for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan.

Movant represents that Joseph J. Costello is a member in good standing of the highest court of Pennsylvania as attested by the accompanying certificate from that court and that Joseph J. Costello is not eligible to become a member of the permanent bar of this Court. This Motion is accompanied by the required $200.00 fee.

Joseph J. Costello understands that, unless expressly excused, he must register for electronic filing with this Court promptly upon the granting of this Motion.

Joseph J. Costello's relevant identifying information is as follows:

Joseph J. Costello, Esq. (Pennsylvania Bar No. 44327)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Business Telephone: (215) 963-5295
Business Facsimile: (877) 432-9652
Email: jcostello@morganlewis.com

                                        Respectfully submitted,

                                        /s/ Felix C. Wade
                                        Felix C. Wade (0024462)
                                        Schottenstein, Zox & Dunn Co., LPA
                                        250 West Street
                                        Columbus, Ohio 43215
                                        Telephone: (614) 462-2700
                                        Facsimile: (614) 462-5135
                                        Email: fwade@szd.com
                                        Trial Attorney for Defendants

OF COUNSEL:

Eve M. Ellinger (0073742)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5295/5258/5584
Facsimile: (877) 432-9652
Email: jcostello@morganlewis.com
       jblumenfeld@morganlewis.com
       tchung@morganlewis.com
Of-Counsel Attorneys for Defendants

*Pending *Pro Hac Vice Admission*

{H10086402 }

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/ Felix C. Wade
Felix C. Wade

{H0086402}



Supreme Court of Pennsylvania

# CERTIFICATE OF GOOD STANDING

## *Joseph John Costello, Esq.*

### DATE OF ADMISSION

*November 12, 1985*

The above named attorney was duly admitted to the bar of the Commonwealth of Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated: August 28, 2007**

Patricia A. Johnson
Chief Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

PAUL ABELMAN, and
VALERIE R. NUTTER,

                                        Plaintiffs,

                vs.

                                                        Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, and            Judge Michael H. Watson
COLGATE-PALMOLIVE COMPANY                  Magistrate Judge Norah McCann King
EMPLOYEES' RETIREMENT INCOME
PLAN,

                                        Defendants.

**DEFENDANTS' MOTION TO TRANSFER VENUE**
**TO THE SOUTHERN DISTRICT OF INDIANA**

    Defendants Colgate-Palmolive Company ("Colgate") and Colgate-Palmolive Company

Employees' Retirement Income Plan ("the Plan") (collectively "Defendants") respectfully

request that the Court transfer this case to the United States District Court for the Southern

District of Indiana for the reasons set forth more fully in Defendants' brief, filed

contemporaneously herewith.

Dated:  September 18, 2007                    Respectfully submitted,

                                             /s/ Felix C. Wade
                                            Felix C. Wade (0024462)
                                            Schottenstein, Zox & Dunn Co., LPA
                                            250 West Street
                                            Columbus, Ohio 43215
                                            Tel:  (614) 462-2700
                                            Fax:  (614) 462-5135
                                            Email:  fwade@szd.com
                                            Trial Attorney for Defendants Colgate-
                                            Palmolive Company and Colgate-Palmolive
                                            Company Employees' Retirement Income
                                            Plan

{H0038835.1}

OF COUNSEL:

Eve M. Ellinger (0073742)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello * (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:   215-963-5295/5258/5584
Fax:   877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com

*Pending *Pro Hac Vice Admission*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

   /s/ Eve M. Ellinger
EVE M. ELLINGER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, and
VALERIE R. NUTTER,

                          Plaintiffs,

        vs.

COLGATE-PALMOLIVE COMPANY, and
COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

                          Defendants.

Case No.  2:07-cv-793

Judge Michael H. Watson
Magistrate Judge Norah McCann King

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO TRANSFER VENUE
TO THE SOUTHERN DISTRICT OF INDIANA**

### I.    INTRODUCTION

Pursuant to the "first-to-file" rule and 28 U.S.C. § 1404(a), Defendants Colgate-Palmolive Company ("Colgate") and Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan") (collectively "Defendants") respectfully request that the Court transfer this case to the United States District Court for the Southern District of Indiana ("the Southern District of Indiana"), where a virtually identical case captioned Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016SEB-WGH, is already pending.  (A copy of the Caufield Complaint is attached as Exhibit A).

Both this lawsuit and the Caufield lawsuit allege that the Plan improperly calculated lump sum benefits under a "whipsaw" theory.  (Compl. ¶¶ 22, 30-31; Caufield Compl. ¶¶ 9-11, 22-23).  Likewise, both lawsuits purport to bring such claims on behalf of a putative nation-wide class of individuals who received lump sum distributions from the Plan.  Indeed, the plaintiffs in this case are members of the putative class in the Caufield case, and Mr. Caufield is a member of the putative class in this case.  To promote judicial efficiency, and to avoid duplication, wasted

resources, the risk of inconsistent decisions and unnecessary expense, and pursuant to the "first-to-file" rule, this case should be transferred to the Southern District of Indiana where, ultimately, the two cases can be consolidated.  In addition, the Court should transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) because such a transfer would promote the interests of justice and judicial economy, and would eliminate the problems associated with simultaneously adjudicating two identical class actions.

Accordingly, Defendants respectfully request that the Court transfer this case to the Southern District of Indiana.

## II.  **RELEVANT FACTUAL BACKGROUND**

### A.  **On February 12, 2007, Caufield Filed Suit Against The Plan In The Southern District Of Indiana, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims.**

On February 12, 2007, Plaintiff Paul Caufield ("Caufield") filed a Complaint against the Plan, alleging that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Caufield Compl. ¶¶ 22-23).  Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance.  (Caufield Compl. ¶¶ 9-11).  He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Caufield Compl. ¶¶ 9-11, 22-23).  Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions from the Plan, all allegedly calculated in the same manner.  (Caufield Compl. ¶¶ 13, 17).  Specifically, he seeks to bring a class action on behalf of:

> All participants in the Colgate-Palmolive Company Employees' Retirement Income Plan who received a lump-sum distribution of their pension benefits from the Plan at any time after February 12, 1997.

(Caufield Compl. ¶ 13).  Both of the plaintiffs in this case – Abelman and Nutter – are members of the putative class in Caufield.

Caufield alleges that class certification is appropriate "because the Plan computed the lump-sum distributions of the Class members in the same contested manner" and "*there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.*"  (Caufield Compl. ¶¶ 14, 15) (emphasis added).[1]

## B.  On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed This Nearly Identical Case Against Colgate And The Plan.

On August 13, 2007, six months after Caufield was first filed in the Southern District of Indiana, Plaintiffs Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") filed suit in the United States District Court of the Southern District of Ohio, alleging that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 30-31).  Specifically, as in Caufield, Abelman and Nutter allege that upon termination of their employment, the Plan paid them lump sum distributions equal to their account balances.  (Compl. ¶¶ 15-16, 20-22).  Also as in Caufield, Plaintiffs here claim that the Plan was required to pay them a higher amount, based on the value of their normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 22, 30-31, 34).  Abelman and Nutter purport to bring their action on behalf of a class of former Plan

---

[1]    On April 16, 2007, the Plan moved to dismiss Caufield's entire Complaint for failure to state a claim because Plaintiff's claims are time barred under the relevant statutes of limitations.  (Caufield, Docket No. 24).  On May 15, 2007, Caufield filed a Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, in which he asserted various legal arguments in response to Defendant's Motion to Dismiss.  (Caufield, Docket No. 34).  That motion is now ripe for the Court's consideration.

participants who received lump sum distributions from the Plan. (Compl. ¶ 34). Mr. Caufield is a putative class member in this case.

Abelman and Nutter allege that certification is appropriate because there are "numerous common questions of fact and law" and "the prosecution of separate actions ... *would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants....*" (Compl. ¶¶ 36, 40) (emphasis added). They further allege that "[a]ll issues concerning liability are common to all Class members because such issues concern their entitlement to benefits calculated in a manner other than that calculated thus far...." (Compl. ¶ 36). In addition, they allege that the "computation of a participant's lump sum distribution and the amount of lump sum distribution is standardized ... [and] was calculated in the same manner...." (Compl. ¶ 37). They further allege that each class member's rights "will be determined by reference to the same Plan documents and the same provisions of ERISA." (Id.).

### III.    ARGUMENT

### A.    Under The "First-To-File" Rule, This Case Should Be Transferred To The Southern District Of Indiana, Where The *Caufield* Case Is Pending.

The "first-to-file" rule is a "well established doctrine that encourages comity among federal courts of equal rank. . . . [W]hen actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" Zide Sport Shop of Ohio v. Ed Tobergate Assocs., Inc., 16 Fed. App'x 433, 437 (6th Cir. 2001); see also Smith v. Sec. and Exchange Comm'n, 129 F.3d 356, 361 (6th Cir. 1997) ("courts often proceed ... under the rule of thumb that the entire action should be decided by the court in which an action was first filed."). The first-to-file rule applies when "two suits involving substantially the same parties and purpose have been filed in a

concurrent jurisdiction." Plating Res., Inc. v. UTI Corp., 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999) (citation omitted).

In the class action context, district courts within the Sixth Circuit routinely follow the first-to-file rule in transferring purported class actions to other districts where related claims already have been filed. See Allen v. Rohm and Haas Co. Ret. Plan, Civ. A. No. 3:06-CV-25-S, 2006 WL 1980174, at *2 (W.D. Ky. July 10, 2006) (transferring ERISA class action challenging calculation of lump sum benefits to Southern District of Indiana, where similar ERISA class action was filed first); City of Columbus v. Hotels.com, No.2:06-cv-677, 2007 WL 2029036, at **3-5 (S.D. Ohio July 10, 2007) (applying "first-to-file" rule and approving transfer of class action suit to Northern District of Ohio, where nearly identical class action was pending); Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 689-90 (E.D. Tenn. 2005) (transferring FLSA collective action to Ohio under "first-to-file" rule).

**1.    All The Relevant Factors Weigh In Favor Of Transfer Of This Case To The Southern District Of Indiana.**

District courts have used three factors to determine whether the first-to-file rule warrants transfer of a case: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. NCR Corp. v. First Fin. Computer Servs., 492 F. Supp. 2d 864 (S.D. Ohio 2007); Strategic Ambulance, Inc. v. Martinez, No. 1:05-CV-598, 2006 WL 462430, at *2 (S.D. Ohio Feb. 24, 2006); Smithers-Oasis Co. v. Clifford Sales & Mktg., 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002). Here, all three factors weigh in favor of transferring this case to the Southern District of Indiana.

**a.    The *Caufield* Action Is The First-Filed Action.**

The Caufield case was filed on February 12, 2007, before this case was filed on August 13, 2007. Thus, the first element, the chronology of the two actions, is met. See NCR Corp.,

492 F. Supp. 2d 864 (granting motion to transfer to Texas where similar complaint was filed in Texas several days before complaint in the Southern District of Ohio); Smithers-Oasis Co., 194 F. Supp. 2d at 686-87 (granting motion to transfer to Missouri where similar complaint was filed in Missouri approximately one week before complaint in the Southern District of Ohio).

> ### b.    The Parties In The Two Actions Substantially Overlap.

A "precise identity of parties is simply not required" for the first-to-file rule to apply. City of Columbus, 2007 WL 2029036, at *7 (emphasis added), citing Plating Resources, 47 F. Supp. 2d at 903. As stated in Fuller, the "parties and issues need not be identical .... [r]ather, the crucial inquiry is whether the parties and issues substantially overlap." Fuller, 370 F. Supp. 2d at 688.

There is no question that the parties in this action "substantially overlap" with the parties in Caufield. Although the named plaintiffs are different individuals, both class actions seek certification of essentially the same class of participants who received lump sum benefits from the Plan. Caufield is a member of the proposed class in this action, and Abelman and Nutter are members of the proposed class in Caufield.[2]  Both actions challenge the same calculation of

---

[2]    The parties in Caufield do not agree as to the applicable statute of limitations for the claims in that action, and the parties to this action also may disagree as to the applicable statute of limitations. However, this should not impact the Court's analysis on this Motion to Transfer. If both actions are permitted to proceed concurrently in different judicial districts, then the same individuals could be subject to different statute of limitations periods in each action. As the Court in Fuller stated, "[t]hat such a confusing result could occur evidences that the collective classes are substantially similar." 370 F. Supp. 2d at 690; Allen, 2006 WL 1980174, at *2, fn.1 (noting that the parties in the Indiana action disagreed as to the applicable statute of limitations and stating that the Court would defer to the Indiana court to address the viability of the claims of the named plaintiff in the Kentucky action).

lump sum benefits under the Plan.[3]  Thus, the parties "substantially overlap" for purposes of the first-to-file rule, and the rule's second element is met.  See Fuller, 370 F. Supp. 2d at 689 (finding substantial overlap between parties in two class actions where the named plaintiffs – although different individuals – were "effectively identical"; both actions sought certification of the same class; and claims were alleged against the same company); City of Columbus, 2007 WL 2029036, at *7 (finding that two class actions involved substantially the same parties where the two cases arose out of the same business practices of the defendant and the putative class in both cases was identical).

<strong>c.  <u>The Issues And The Claims In The Two Actions Are Identical.</u></strong>

Lastly, the issues in the two actions not only "substantially overlap," but they are identical.  Fuller, 370 F. Supp. 2d at 690.  In both Caufield and this case, the plaintiffs challenge the calculation of lump sum pension benefits under ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053 and 1055.  In addition, both cases involve claims that the Plan's conduct "resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation § 1.411(a)-4 and 4T."  (Compl., ¶ 32; Caufield Compl. ¶ 26).

Moreover, allowing both courts to adjudicate the same legal issues in two different forums is inefficient and impractical.  First, the two courts might reach inconsistent results.  Second, the parties could not settle one case while the other case remains pending.  Of course, judicial resources would be wasted in litigating the same case in multiple forums.

---

[3]  The addition of Colgate as a named defendant in this action does not defeat the requirement that parties be substantially similar.  See Plating Res., 47 F. Supp. 2d at 904 (the addition of one defendant does not defeat the "similarity of the parties" requirement because "precise identity of the parties is not required"); see also Silver Knight Sales & Mktg., Ltd. v. Globex Int'l, Inc., No. 2:06-cv-123, 2006 WL 3230770, at *5 (S.D. Ohio Nov. 6, 2006) (parties were substantially similar, even though the defendant corporation was a separate defendant in one case but not the other case; "the first-to-file rule does not require exact identity of the parties").

Confronted with such a possibility of inconsistent results, the Court in <u>Allen v. Rohm and Haas Co. Ret. Plan</u>, Civil Action No. 03:06CV-25-S, 2006 WL 1980174 (W.D. Ky. July 10, 2006) applied the first-to-file rule and granted the motion to transfer. The named plaintiff in <u>Allen</u> filed a class action complaint on behalf of himself and other Plan participants, who had received lump sum pension benefits that did not include the value of a cost-of-living adjustment. <u>Id.</u> at *1. However, a different named plaintiff previously had filed a similar class action complaint in the Southern District of Indiana, also alleging that Rohm and Haas had failed to include an annual cost of living adjustment in lump sum pension benefits. <u>Id.</u> Noting the interest in comity among federal courts, the Court granted the motion to transfer, stating:

> There is no question that the Indiana action is the first-filed action and that comity requires this court to respect the substantial development of the issues which has already taken place in the former case. Allen does not dispute that that he is a member of the class certified by the Indiana court. The issue as to the entitlement of retirees to the value of yearly COLAs is identical in both lawsuits. The action must therefore be transferred to the Southern District of Indiana for all further proceedings.

<u>Id.</u> at *2 (footnote omitted). As in <u>Allen</u>, this Court should grant the Motion to Transfer, and transfer this action to the Southern District of Indiana.

## 2. Applying The "First-to-File" Rule To Transfer And Eventually Consolidate This Case Will Promote Judicial Economy.

The first-to-file rule "has evolved into a mechanism used to promote judicial efficiency," <u>Plating Resources</u>, 47 F. Supp. 2d at 903, and "the rule's importance should not be disregarded lightly." <u>Smithers-Oasis</u>, 194 F. Supp. 2d at 687 (citations and internal quotations omitted).

Here, sound judicial administration warrants a transfer so that the two cases can be consolidated. Both cases involve ERISA claims on behalf of the same group of individuals challenging the calculation of lump sum distributions from Colgate's cash balance plan. Indeed, both cases seek to certify a nationwide class action because "there is a risk that the prosecution

of separate actions would establish incompatible standards of conduct for the administrator of the Plan." (Caufield Compl. ¶ 14; see also Compl. ¶ 40 ("the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications …")). These same arguments require transfer of this case so that the two cases can be consolidated. It would be a waste of judicial and the parties' resources to maintain these two cases in separate district courts when the cases involve overlapping parties, claims, evidence, damages, and classes.[4] See Fuller, 370 F. Supp. 2d at 690 ("Permitting both [collective] actions to proceed to judgment risks the possibility of inconsistent results."); City of Columbus, 2007 WL 2029036, at *5 (stating that "it is a waste of judicial resources to litigate the same dispute in two different forums").[5]

## B. Transfer To The Southern District Of Indiana Is Also Appropriate Under 28 U.S.C. § 1404(a).

Consistent with the first-to-file rule, district courts may transfer cases to districts where related actions are pending under 28 U.S.C. § 1404(a).[6] This action should be transferred to the Southern District of Indiana, where similar claims will be determined by a Court in that district,

---

[4]  Indeed, it does not make sense to require the Plan Administrator and actuaries to testify in both cases regarding the calculation of lump sum benefits under the Plan.

[5]  Fed. R. Civ. P. 42(a) gives district courts broad discretion to consolidate related cases to promote judicial efficiency, eliminate redundancy, and to conserve the parties' and the courts' resources. See Cantrell v. GAF Corp., 999 F.2d 1007, 1010-11 (6th Cir. 1993); BD v. DeBuono, 193 F.R.D. 117, 141 (S.D.N.Y. 2000) (citation omitted). Transferring this action to the Southern District of Indiana would be the first step toward consolidating the two cases for coordinated pre-trial proceedings.

[6]  This section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

and where this action could have been brought.[7]

The ultimate goal of a court in analyzing a motion to transfer venue is to serve both the convenience of the parties and witnesses, as well as the interests of justice. Kay v. Nat'l City Mortgage Co., 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007) (citations omitted). The private interests include ease of access to source of proof; availability of compulsory process for attendance of witnesses; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. at 850 (citations omitted). The public interests include docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, and the court's familiarity with the applicable law. Id. (citations omitted). Courts in the Sixth Circuit have summarized these factors, including: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interests of justice, including such concerns as systemic integrity and fairness. See, e.g., Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991), cert. denied, 502 U.S. 821 (1991); Buckeye Check Cashing of Arizona, Inc., No. 2:06-cv-792, 2007 WL 641824, at *12 (S.D. Ohio Feb. 23, 2007).

---

[7]    An ERISA action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). For ERISA venue purposes, a defendant "resides or may be found" in any district in which its "minimum contacts" would support the exercise of personal jurisdiction. Moore v. Rohm & Haas Co., 446 F.3d 643, 646 (6th Cir. 2006). The minimum contacts standard is satisfied when the "defendant's contacts with the forum state are substantial and continuous and systematic, so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." Id. (citations and internal quotations omitted). Here, it is undisputed that, by operation of its facilities in the Southern District of Indiana, and by virtue of the Plan's contacts with that district, Defendants have minimum contacts with the Southern District of Indiana. (Caufield Compl. ¶ 4; Declaration of Matthew Faranda ("Faranda Decl."), attached as Exhibit B, at 6).

While most of these factors are inapplicable to the case at hand,[8] several key factors weigh heavily in favor of transfer. Specifically, for all of the reasons previously discussed, allowing this case to proceed in two different forums will undermine the interests of justice, waste the resources of the parties and the courts, and potentially result in inconsistent adjudication of the same issues. Allowing transfer to the Southern District of Indiana will avoid these problems and permit this case to be litigated in the most efficient manner.

The existence of an independently-filed putative class action in the Southern District of Indiana makes transfer appropriate. A "strong public policy" favors consolidation of similar class actions in a single district. Firmani v. Clarke, 325 F. Supp. 689, 693 (D. Del. 1971). Where, as here, transfer "will avoid the possibility of overlapping and competing class actions involving the same claims," transfer is favored under the "interests of justice" prong of Section 1404(a). Hall v. Kittay, 396 F. Supp. 261, 264 (D. Del. 1975) (citations omitted); see also U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 937-38 (E.D. Va. 2005) ("The interest of justice weighs heavily in favor of transfer when related actions are pending in the transferee forum. This is particularly so when the two cases are intimately related and hinge upon the same factual nucleus.") (internal quotations omitted). Here, transfer will facilitate the consolidation of the pending class actions while obviating the peril of inconsistent rulings and judgments. See, e.g., Kay v. Nat'l City Mortgage Co., 494 F. Supp. 2d at 854    (stating that under § 1404(a), avoidance of a multiplicity of litigation is an important factor in determining

---

[8]    Virtually all of the documents that are potentially relevant to this action, including Plan documents and Plan records, are maintained in New York. (Faranda Decl., at 5). The only documents that may not be in New York are documents in the possession of each class member, which documents likely are located throughout the country where each participant lives. Thus, relevant documents and other evidence will have to be transferred regardless of which court hears the case. Moreover, any potential witnesses in this matter are similarly located in New York. Those individuals with intimate knowledge of the Plan's administration work at Colgate's headquarters in New York. (Faranda Decl. at 4).

what "the interests of justice" require) (citations omitted); <u>Blake v. Family Dollar Stores, Inc.</u>, Civ.A. 2:07-CV-361, 2007 WL 1795936, at **3-4 (S.D. Ohio June 19, 2007) (granting motion to transfer to North Carolina under § 1404(a), where similar class actions against defendants also had been transferred to North Carolina); <u>DeMoss v. First Artists Prod. Co., Ltd.</u>, 571 F. Supp. 409, 414 (N.D. Ohio 1983) (granting motion to transfer to California, where California court had venue over certain claims, stating "[i]t would make no sense to litigate the claims separately … the most appropriate action is to consolidate all the claims in one action").

Furthermore, litigating both cases before the same tribunal will result in "more efficient conduct of pretrial discovery, saves witness time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest." <u>River Road Int'l v. Josephthal Lyon & Ross Inc.</u>, 871 F. Supp. 210, 214 (S.D.N.Y. 1995) (citations and internal quotation marks omitted); <u>see also</u> <u>Talent Tree Crystal, Inc. v. DRG, Inc.</u>, No. 1:04-CV-875, 2005 WL 3312554, at *5 (W.D. Mich. Dec. 7, 2005) ("Even if the cases are not consolidated, judicial economy is served by placing related claims before the same court."). Accordingly, this case should be transferred to the Southern District of Indiana under 28 U.S.C. § 1404(a).

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully requests this Court transfer this matter to the United States District Court for the Southern District of Indiana.

Dated:  September 18, 2007                          Respectfully submitted,

                                                  /s/ Felix C. Wade
                                                  Felix C. Wade (0024462)
                                                  Schottenstein, Zox & Dunn Co., LPA
                                                  250 West Street
                                                  Columbus, Ohio 43215
                                                  Tel:  (614) 462-2700
                                                  Fax:  (614) 462-5135
                                                  Email:  fwade@szd.com
                                                  Trial Attorney for Defendants Colgate-
                                                  Palmolive Company and Colgate-Palmolive
                                                  Company Employees' Retirement Income
                                                  Plan

OF COUNSEL:

Eve M. Ellinger     (0073742)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:    215-963-5295/5258/5584
Fax:    877-432-9652
Email:  jcostello@morganlewis.com
          jblumenfeld@morganlewis.com
          tchung@morganlewis.com
*Pending *Pro Hac Vice Admission*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

{H0018834 1 }                                -13-

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/ Eve M. Ellinger
EVE M. ELLINGER

Case 1:08-cv-03317-BSJ-KNF     Document 1-18     Filed 04/03/2008     Page 1 of 10

Apr 02 04 02:01p     US DISTRICT COURT NA     812-542-4515        p.3
         Case 4:07-cv-00016-SEB-WGH     Document 4     Filed 02/12/2007    Page 1 of 1

• AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

District of _____

PAUL CAUFIELD, AND ALL OTHERS SIMILARLY
SITUATED

SUMMONS IN A CIVIL CASE

V.

COLGATE-PALMOLIVE COMPANY
EMPLOYEES" RETIREMENT INCOME PLAN

CASE
4:07-CV-0016 SEB-WGH

TO: (Name and address of Defendant)

COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME PLAN

c/o Colgate-Palmolive Company
300 Park Avenue
New York, NY 10022-7402

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

T.J. SMITH, LLC
600 W. MAIN STREET STE 200
LOUISVILLE, KY 40202

DOUGLAS R. SPRONG, ESQ.,
KOREIN TILLERY LLC
505 N. SEVENTH STREET, STE 3600
ST. LOUIS, MO 63101

WILLIAM K. CARR, ESQ.,
LAW OFFICES OF WILLIAM K. CARR
2222 E. TENNESSEE AVENUE
DENVER, CO 80209

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You must also file your answer with the Clerk of this Court, 121 West Spring St,
New Albany, IN 47150 within a reasonable period of time after service.

CLERK

FEB 1 2 2007

DATE

(By) DEPUTY CLERK

Apr 02 04 02:01p    US DISTRICT COURT SB    p.1

4:07-CV-0016 SEB - WGH

JS 44
(Rev. 3/99)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

I. (a) PLAINTIFFS Paul Caulfield, and all Others similarly situated

DEFENDANTS Colgate-Palmolive Company Employees' Retirement Income Plan

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Clark Co.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

FILED
DISTRICT COURT
DIVISION

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
T.J. Smith, LLC
600 W. Main St. Ste 200
Louisville, Ky 40202 (502)589-2560

ATTORNEYS (IF KNOWN)

07 FEB 12 PM 12:57

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS

II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|

V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

ERISA Violation, IRS Code & Treasury regulations resulting in underpayment of retirement benefits

VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint.
JURY DEMAND: ☐ YES ☒ NO

VIII. RELATED CASE(S) (See instructions):
IF ANY
JUDGE
DOCKET NUMBER

DATE 2/12/07

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

FILED
U.S. DISTRICT COURT
... ... VISION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

07 FEB 12 PM 12: 57

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

PAUL CAUFIELD, and all others similarly )
situated, )
)
    Plaintiff, )
)
v. )    Civil No: _____
)
COLGATE-PALMOLIVE COMPANY )
EMPLOYEES' RETIREMENT )    CLASS ACTION
INCOME PLAN, )
)
    Defendant. )
)

4:07-CV-0016 SEB - WGH

## Complaint

Comes now Plaintiff, Paul Caufield, by his attorneys, and for his Complaint against

Defendant states as follows:

### The Parties, Jurisdiction and Venue

1. Plaintiff, Paul Caufield, is an individual residing in Memphis, Indiana.

2. Defendant, Colgate-Palmolive Company Employees' Retirement Income Plan,

sometimes referred to as the "Personal Retirement Account Plan" (the "Plan"), is a "defined

benefit plan" within the meaning of Section 3(35) of the Employee Retirement Income Security

Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002(35).

3. Jurisdiction is proper in this Court under 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1).

4. Venue is proper in this Court under 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2)

and (f), in that the Plan is administered in this judicial district, it can also be found within this

judicial district, and the conduct complained of occurred in this judicial district.

## Background

5. Mr. Caufield was employed by Colgate-Palmolive ("Colgate") from 1977 until February 1999.

6. Mr. Caufield participated in the Plan and accrued benefits under the Plan at all relevant times while employed by Colgate until his employment terminated in 1999.

7. Under the terms of the Plan, a notional cash balance account was established for Mr. Caufield to which the Plan credited monthly, certain pay-based credits (the "pay credits").

8. Under the terms of the Plan, and in addition to the pay credits, Mr. Caufield's notional account was credited with monthly interest, at a rate, adjusted quarterly, equal to 1/12 of an effective annual calendar year rate equal to the sum of the average rate of a new six-month Treasury bill in effect during each quarter, plus 2% per annum (the "interest credit").

9. After terminating employment in 1999, Mr. Caufield elected to receive his Plan benefits paid in the form of a lump sum distribution. The Plan paid Mr. Caufield a lump sum distribution in an amount equal to the balance of his notational account.

10. The amount of Mr. Caufield's notational account balance at distribution, i.e., the amount of his lump sum distribution, was less than the present value of his normal retirement benefit.

11. By failing to properly compute the amount of his lump sum distribution, the Plan failed to provide Mr. Caufield with a lump sum distribution in an amount equal to the present value of his normal retirement benefit as payable at normal retirement age as required by ERISA.

12. Mr. Caufield did not exhaust the administrative remedies provided under the terms of the Plan prior to initiating this lawsuit because his claims are based solely on discrete and non-

2

fact intensive statutory violations of ERISA. Furthermore, exhaustion would be futile in that the

requirements described above have been the subject of numerous, well-publicized court cases

(including from the Seventh Circuit) and agency rulings; as a result, the requirement is well

known to the Plan, its fiduciaries and advisors, yet the Plan failed to comply with the ERISA

when it paid Mr. Caufield's lump-sum distribution and has also failed to correct his lump-sum

distribution. Thus, the Plan and its fiduciaries have already determined that it either complies

with the law and/or that it need not comply with the requirements described above.

### Class Action Allegations

13.  Plaintiff seeks class action certification of the following class:

"All participants in the Colgate-Palmolive Company Employees' Retirement
Income Plan who received a lump-sum distribution of their pension benefits from
the Plan at any time after February 12, 1997."

14. Certification is appropriate under Rule 23(b)(1), Fed. R. Civ. P., because there is a

risk that the prosecution of separate actions would establish incompatible standards of conduct

for the administrator of the Plan.

15.  Certification is also appropriate under Rule 23(b)(2), Fed. R. Civ. P., because the

Plan computed the lump-sum distributions of the Class members in the same contested manner;

therefore, the Plan has acted or refused to act on grounds generally applicable to the Class,

making appropriate final injunctive relief or corresponding declaratory relief with respect to the

class as a whole.

16.  The Class is comprised of several thousand participants who received lump sum

distributions from the Plan, and is so numerous that joinder of all Class members would be

impracticable.

3

17. The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump-sum distribution for each member of the Class was determined in the same manner as described above. Thus, there exist common questions of fact as to each member of the Class.

18. Each Class member's rights will be determined by resort to the same Plan documents and the same provisions of ERISA. Thus, there exist common questions of law as to each Class member, i.e., whether the method of calculating of lump-sum distributions violated the law.

19. Mr. Caufield's claims are typical of the claims of the Class members in that his lump-sum distribution was calculated in the same fashion as the rest of the Class, and his rights, as well as those of the Class as a whole, are similarly provided for under the Plan document and applicable provisions of ERISA.

20. Mr. Caufield will fairly and adequately represent the interests of the members of the Class. His interests are the same, and not in conflict with the other members of the Class. His attorneys are experienced and competent in the prosecution of ERISA class action litigation.

<u>Count I</u>

21. Mr. Caufield incorporates by reference the allegations of all preceding paragraphs as if fully set forth in this Count.

22. ERISA §§203(e)and 205(g), 29 U.S.C. §§1053(e) and 1055(g), and Internal Revenue Code § 417(e), all as implemented by Treasury Regulation §1.417(e)-1(d), require that any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, must have a value no less than the present value of the participant's normal retirement benefit as payable at normal retirement age (under the Plan, age 65).

4

23. The Plan paid Mr. Caufield a lump-sum benefit that was less than the present value of his normal retirement benefit in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation 1.417(e)-1(d).

24. Pursuant to ERISA § 502(a), Mr. Caufield brings this action against the Plan for all of the relief available thereunder.

## Count II

25. Mr. Caufield incorporates by reference the allegations of all preceding paragraphs as if fully set forth in this Count.

26. The Plan's conduct as described above resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation 1.411(a)-4 and 4T.

27. Pursuant to ERISA § 502(a), Mr. Caufield brings this action against the Plan to redress violations of ERISA, to enforce such ERISA provisions, and for all of the relief available.

## Prayer for Relief

WHEREFORE, Plaintiff, Paul Caufield, prays for the following relief:

a)    Certification of this case as a class action;

b)    Judgment against the Plan and in favor of Plaintiff and the Class on all claims herein, including all relief available under ERISA;

c)    A permanent injunction preventing the Plan from calculating future lump-sum distributions in violation of ERISA;

d)    Pre- and post-judgment interest and costs;

e)    Reasonable attorneys' fees pursuant to the common fund doctrine or any other

applicable law; and

f)    Any other relief this Court deems just, proper and equitable.

Respectfully submitted,

T.J. Smith
Law Offices of T.J. Smith
600 W. Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560
(502) 540-1200 (facsimile)
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383
(303) 296-6652 (facsimile)
bill@pension-law.com

Douglas R. Sprong
Diane Moore Heitman
Korein Tillery LLC
505 N. Seventh St., Suite 3600
St. Louis, MO 63101
(314) 241-4844
(314) 588-7036 (facsimile)
dsprong@koreintillery.com

Attorneys for Plaintiff

6

# WAIVER OF SERVICE OF SUMMONS

To: Martin Collins or current Plan Administrator

I acknowledge receipt of your request that I waive service of summons in the action of *Paul Caufield, and all others similarly situated v. Colgate-Palmolive Company Employees' Retirement Income Plan*, which is case number 07–CV-0016, in the United States District Court for the Southern District of Indiana. I have also received a copy of the complaint in this action, two copies of this instrument and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of the service of a summons and an additional copy of the complaint in this lawsuit by not requiring that the entity on whose behalf I am acting be served with judicial process in the manner provided by Rule 4.

The entity on whose behalf I am acting will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of summons.

I understand that a judgment may be entered against the party on whose behalf I am acting if an answer or motion under Rule 12 is not served upon you within sixty (60) days after the date of service.

_____          _____
Date                                   Signature

                                       _____
                                       Printed/typed name

                                       [as _____ ]
                                       [of _____ ]

Duty to avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such services unless good cause be shown for its failure to sign and return the waiver.

# WAIVER OF SERVICE OF SUMMONS

To: Martin Collins or current Plan Administrator

I acknowledge receipt of your request that I waive service of summons in the action of _Paul Caufield, and all others similarly situated v. Colgate-Palmolive Company Employees' Retirement Income Plan_, which is case number 07–CV-0016, in the United States District Court for the Southern District of Indiana. I have also received a copy of the complaint in this action, two copies of this instrument and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of the service of a summons and an additional copy of the complaint in this lawsuit by not requiring that the entity on whose behalf I am acting be served with judicial process in the manner provided by Rule 4.

The entity on whose behalf I am acting will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of summons.

I understand that a judgment may be entered against the party on whose behalf I am acting if an answer or motion under Rule 12 is not served upon you within sixty (60) days after the date of service.

_____          _____
Date                                       Signature

                                           _____
                                           Printed/typed name

                                           [as _____ ]
                                           [of _____ ]

Duty to avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such services unless good cause be shown for its failure to sign and return the waiver.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| PAUL ABELMAN, and VALERIE R. NUTTER,<br><br>                     Plaintiffs,<br><br>     vs.<br><br><br>COLGATE-PALMOLIVE COMPANY, and COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN,<br>                     Defendants. | Case No. 2:07-cv-793<br><br>Judge Michael H. Watson<br>Magistrate Judge Norah McCann King |

**DECLARATION OF MATTHEW FARANDA IN SUPPORT OF
DEFENDANTS' MOTION TO TRANSFER VENUE
TO THE SOUTHERN DISTRICT OF INDIANA**

I, Matthew Faranda, do depose and state of my own personal knowledge as follows:

1.      I am the Benefits Analyst for the Colgate-Palmolive Company ("Colgate"). I have been employed by Colgate since September 20, 2004.

2.      Colgate is headquartered in New York.

3.      Colgate sponsors the Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan"), which is a defined benefit plan. The Plan is administered in New York.

4.      The persons who have knowledge of the operation of the Plan, and the distribution of lump sum benefits, are employed in New York. The Plan's decisions regarding lump sum benefits were made in New York.

5.      All of the Plan's files and records regarding Plan benefits are located and

maintained in New York.

6.    Colgate has a facility located in the Southern District of Indiana, and Plan participants reside in that district.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __12__ day of September, 2007.

Matthew Faranda

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, *et al.*,

       Plaintiffs,

   vs.                       Civil Action 2:07-CV-793
                                 Judge Watson
                                 Magistrate Judge King

COLGATE-PALMOLIVE CO.,
*et al.*,

       Defendants.

<u>ORDER</u>

Upon motions, Doc. Nos. 9,10, Theresa J. Chung, Esq. and Joseph J. Costello, Esq., are hereby **GRANTED** leave to appear *pro hac vice*, on behalf of defendants, conditional on counsels' registration for electronic filing with this Court,[1] or seeking leave to be excused from doing so, within fourteen days of the date of this Order.

September 19, 2007              *s/Norah McCann King*
                                Norah McCann King
                       United States Magistrate Judge

---

[1]Counsel may initiate the registration process at this Court's website, http://www.ohsd.uscourts.gov/cmecf.htm.  Problems or questions should be directed to Ms. Lisa Wright, 614.719.3222.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PAUL ABELMAN, and
VALERIE R. NUTTER,

                   Plaintiffs,

       vs.

                                Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, and      Judge Michael H. Watson
COLGATE-PALMOLIVE COMPANY         Magistrate Judge Norah McCann King
EMPLOYEES' RETIREMENT INCOME
PLAN,

                   Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants Colgate-Palmolive Company ("Colgate") and Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan") (collectively "Defendants") respectfully request that the Court dismiss the Plaintiffs' Complaint, for the reasons set forth more fully in Defendants' brief, filed contemporaneously herewith.

Respectfully submitted,


  /s/ Felix Wade
Felix Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: fwade@szd.com

Trial Attorney for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan

OF COUNSEL:

Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:    215-963-5295/5258/5584
Fax:    877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com

*Admitted *Pro Hac Vice*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2007, I caused the foregoing document, and supporting papers, to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

> William Henry Blessing, Esq.
> 119 East Court Street, Suite 500
> Cincinnati, OH 45202
>
> Eli Gottesdiener, Esq.
> Gottesdiener Law Firm, PLLC
> 498 7th Street
> Brooklyn, NY 11215
>
> Attorneys for Plaintiffs

_/s/ Eve Ellinger_
EVE ELLINGER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, and
VALERIE R. NUTTER,

                                    Plaintiffs,

            vs.
                                                        Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, and                  Judge Michael H. Watson
COLGATE-PALMOLIVE COMPANY                        Magistrate Judge Norah McCann King
EMPLOYEES' RETIREMENT INCOME
PLAN,

                                    Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND ........................................................ 4

    A.    Overview Of Colgate-Palmolive And The Colgate-Palmolive Company Employees' Retirement Income Plan ..................................................... 4

    B.    Nutter Received A Lump Sum Benefit From The Plan In 2000 ........................... 4

    C.    Abelman Signed A Release Of Claims In 2005 ................................................. 5

III.  ARGUMENT ........................................................................................................ 8

    A.    Legal Standard Governing Motions To Dismiss Under Fed. R. Civ. P. 12(b)(6). ................................................................................................. 8

    B.    Nutter's Claims Are Time Barred .................................................................... 9

        1.    Nutter's Claims Are Subject To The Four-Year Catch-All Statute Of Limitations In 28 U.S.C. § 1658. ................................................... 9

        2.    Assuming *Arguendo* That Nutter's Claims Were Not Subject To The Four-Year Federal Catch-All Limitations Period in Section 1658, Her Claims Would Be Subject To New York's Six-Year Statute Of Limitations. .................................................................. 15

        3.    Nutter's Claims Accrued, At The Latest, When She Received Her Lump Sum In 2000 And Consequently Her Claims Are Time Barred. ....................................................................................... 18

    C.    Abelman's Claims Are Barred By The Release Of His Claims ......................... 21

IV.   CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955 (2007)....................................................................................8, 9

Berger v. AXA Network LLC,
459 F.3d 804 (7th Cir. 2006) ................................................2, 9, 12, 15, 16

Cardinal Health, Inc. ERISA Litig.,
424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006) ...............................................7

Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,
201 F.3d 44 (2d Cir. 1999)....................................................17, 18, 19, 20

City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,
399 F.3d 651, cert. denied, 546 U.S. 936 (2005).......................................4, 8

City of Rancho Palos Verdes v. Abrams,
544 U.S. 113 (2005)........................................................................................12

Constantino v. TRW, Inc.,
13 F.3d 969 (6th Cir. 1994) ...........................................................................20

Cooey v. Strickland,
479 F.3d 412 (6th Cir. 2007) ..........................................................................18

Daill v. Sheet Metal Workers' Local 73 Pension Fund,
100 F.3d 62 (7th Cir. 1996) ..............................................................18, 19, 20

Drutis, et al. v Rand McNally & Co., et al.,
--- F.3d ---, No. 06-6380, 2007 WL 2409762, (6th Cir. Aug. 27, 2007) ........................................1

Fallick v. Nationwide Mutual Ins. Co.,
162 F.3d 410 (6th Cir. 1998) ..........................................................................20

Graham County Soil & Water Conservation Dist. v. U.S.,
545 U.S. 409 (2005)..............................................................................18, 20

Halvorson v. Boyscouts of Am.,
NO. 99-5021, 2000 WL 571933 (6th Cir. May 31, 2000 ............................22

Hogan v. Petitpren, Inc.,
92 F. Supp. 2d 612 (E.D. Mich. 2000)...........................................................22

Homenick v. Nat'l Steel Corp.,
No. 95-CV-75310-DT, 1996 WL 426549 (E.D. Mich. Feb. 22, 1996) ........................................6

Jackson v. City of Columbus,
194 F.3d 737 (6th Cir. 1999) ........................................................................................................4

Jones v. R.R. Donnelley & Sons Co.,
541 U.S. 369 (2004)........................................................................................................2, 10, 15

Laurenzano v. Blue Cross and Blue Shield of Mass., Inc.,
134 F. Supp. 2d 189 (D. Mass. 2001) ........................................................................................21

Ledbetter v. Goodyear Tire & Rubber Co., Inc.,
127 S. Ct. 2162 (2007)................................................................................................................20

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
221 F.3d 1235 (11th Cir. 2000) ..................................................................................................14

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
196 F. Supp. 2d 1260 (N.D. Ga. 2002) .......................................................................................15

Meade v. Pension Appeals and Review Comm.,
966 F.2d 190 (6th Cir. 1992) ...............................................................................................3, 9, 10

Meador v. Cabinet for Human Res.,
902 F.2d 474 (6th Cir. 1990) ........................................................................................................9

Michigan Bell Tel. Co. v. Strand,
26 F. Supp. 2d 993 (W.D. Mich. 1998) ........................................................................................6

Miles v. New York State Teamsters Conf. Pension
Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593,
cert. denied, 464 U.S. 829 (1983) ..............................................................................................17

Morgan v. Church's Fried Chicken,
829 F.2d 10 (6th Cir. 1987) ..........................................................................................................9

Morrison v. Marsh & McLennan Co., Inc.,
439 F.3d 295 (6th Cir. 2006) ......................................................................................................19

New England Health Care Employees Pension Fund v. Ernst & Young, LLP,
336 F.3d 495 (6th Cir. 2003), cert. denied, 540 U.S. 1183 (2004)...........................................4, 8

Nietzke v. Williams,
490 U.S. 319 (1989)......................................................................................................................8

Nino v. Haynes Int'l Inc.,
No. 1:05-CV-0602-JDT-TAB, 2005 WL 4889258 (S.D. Ind. Aug. 19, 2005)................11, 12, 15

Ruggles v. Bulkmatic Transport Co.,
No. C2-03-617, 2004 WL 5376213 (S.D. Ohio June 23, 2004) ....................................10

Scheid v. Fanny Farmer Candy Shops, Inc.,
859 F.2d 434 (6th Cir. 1988) .........................................................................9

In re Sofamor Danek Group, Inc.,
123 F.3d 394 (6th Cir. 1997) .........................................................................9

Swierkiewicz v. Sorema N.A.,
534 U.S. 506 (2002)....................................................................................4

Sykes v. First South Utility Construction, Inc.,
No. 3:05-0658, 2006 WL 2792195 (M.D. Tenn. Sept. 25, 2006) ..................................10

Taylor v. Aramark Serv. Corp.,
No. 1:03-CV-337, 2004 WL 1854177 (E.D. Tenn. Mar. 4, 2004) ..................................9

Taylor v. Visteon Corp.,
149 F. App'x 422 (6th Cir. 2005)................................................................6, 21

Torello v. UNUM Life Ins. Co. of Am.,
No. 98-4338, 1999 WL 1204755 (6th Cir. Dec. 3, 1999).......................................22, 23

Wallace v. Kato,
127 S. Ct. 1091 (2007)............................................................................18, 20

West v. AK Steel Corp.,
484 F.3d 395 (6th Cir. 2007) ........................................................................20

Weiner, D.P.M. v. Klais and Co., Inc.,
108 F.3d 86 (6th Cir. 1997) ...........................................................................7

White v. Sun Life Assurance Co. of Canada,
488 F.3d 240 (4th Cir. 2007) ....................................................................18, 19

Wright v. Heyne,
349 F.3d 321 (6th Cir. 2003) ....................................................................21, 23

# STATUTES

28 U.S.C. § 1658 ..................................................................................2, 9, 12, 13, 15, 16

29 U.S.C. § 621, et seq. .......................................................................................................6

29 U.S.C. § 1053(a) ..........................................................................................................15

29 U.S.C. § 1053(e) ....................................................................................1, 2, 13, 14, 15

29 U.S.C. § 1055 ......................................................................................1, 2, 5, 13, 14, 15

29 U.S.C. § 1140 ..............................................................................................13, 15, 16

42 U.S.C. § 1981 ............................................................................................................6, 11

# RULES AND REGULATIONS

58 Fed. Reg. 5128 (Jan. 19, 1993) ...................................................................................14

60 Fed. Reg. 17216-01, 17217 (Apr. 5, 1995) ...............................................................13

# MISCELLANEOUS

Kim Clark, Career Spotlight: Cashing Out Your Pension,
U.S. NEWS & WORLD REPORT, Oct. 24, 2005,
http://www.usnews.com/usnews/biztech/articles/051024/24career.htm ......................13

## I.    **INTRODUCTION**[1]

Plaintiff Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") (collectively "Plaintiffs") are former employees of the Colgate-Palmolive Company ("Colgate" or the "Company"). (Compl. ¶¶ 11-12). Plaintiffs participated in the Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan") during their employment with Colgate. (Id.). The Plan is a cash balance plan under ERISA.[2] (Compl. ¶ 17). In their Complaint, Plaintiffs allege that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 30-31). Specifically, Plaintiffs allege that when they terminated their employment, the Plan paid each of them a lump sum benefit equal to their individual cash balance account balance. (Compl. ¶¶ 21-22, 34). They claim, however, that the Plan was required to pay them a higher amount, based on the value of their normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 22, 30-31). Plaintiffs purport to bring this action on behalf of a class of Plan participants who received lump sum distributions allegedly calculated in the same manner. (Compl. ¶¶ 33-34, 37). Abelman received his lump sum benefit in April 2006, and Nutter received her lump benefit in October 2000. (Compl. ¶ 21).

---

[1]  On September 18, 2007, Defendants moved to transfer this case to the Southern District of Indiana, where a nearly identical class action is pending. (See Docket Nos. 11, 12).

[2]  For an explanation of what cash balance plans are and how they work, see Drutis, et al. v Rand McNally & Co., et al., --- F.3d ---, No. 06-6380, 2007 WL 2409762, (6th Cir. Aug. 27, 2007)(Ex. F).

Putting aside the underlying merits of the Plaintiffs' claims,[3] their claims are barred. Plaintiff Nutter's claims are time barred, and Abelman's claims are barred by a release that he signed, waiving claims arising under ERISA.

Although ERISA contains no specific statute of limitations for Plaintiffs' claims, 28 U.S.C. § 1658(a) establishes a four-year "catch-all" statute of limitations for any federal claims "arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658(a). The Supreme Court held that Section 1658(a) applies where an Act of Congress amended an existing statute after December 1, 1990, if the claim is based on the amended provisions of the statute. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-84 (2004). In this case, the Retirement Protection Act of 1994 materially altered both 29 U.S.C. §§ 1053(e) and 1055(g) – the statutory provisions upon which Plaintiffs rely in their Complaint – to change the method for calculating lump sum present values under ERISA. Thus, Plaintiffs' claims are subject to the federal four-year statute of limitations in 28 U.S.C. § 1658(a). Nutter received her lump sum benefits in 2000, and she did not pursue the Plan's internal appeal procedures because she knew that such appeal would be futile. (Compl. ¶¶ 21, 23, 25-26). Yet Nutter waited almost *seven years* to file this Complaint, and thus, her claims are time barred.

Even if the four-year statute of limitations did not apply, Nutter's claims would still be time barred. The Court of Appeals in Berger v. AXA Network LLC, 459 F.3d 804 (7th Cir. 2006), held that where Section 1658(a) does not apply (because the relevant statutory section of ERISA was <u>not</u> amended after 1990), courts must apply the most analogous statute of limitations of the state "with *the most significant relationship to the parties and the transaction.*" <u>Id.</u> at 808,

---

[3] The Defendants disagree with the Plaintiffs' characterization of the law and their entitlement to any additional benefits under the Plan or ERISA, but do not address the underlying merits of their claims herein.

813; <u>Meade v. Pension Appeals and Review Comm.</u>, 966 F.2d 190, 194-95 (6th Cir. 1992) ("[I]n the absence of a federally mandated statute of limitations, [courts] should apply the most analogous state law statute of limitations."). The court's analysis in <u>AXA Network</u> compels application of New York law in this case. Although Nutter lived in Ohio and was paid her benefit in Ohio, New York's statute of limitations applies because Colgate is based in New York, the Plan was administered in New York, and Nutter alleges that all former Plan participants who elected lump sums, regardless of where they lived or worked, were affected by the Plan's alleged ERISA violation. The statute of limitations under New York law is six years, and her claim accrued when she received her lump sum in 2000. Accordingly, Nutter's claims would still be time barred.

In addition, Abelman's claims are barred for separate reasons. In April 2005, Abelman signed a general release, in which he agreed to release Colgate and any of its affiliates from any claims relating to his employment with Colgate, including any claims – whether "known or unknown" – arising under ERISA. (<u>See</u> Letter of Agreement and General Release, dated March 8, 2005 and signed by Abelman on April 18, 2005 (hereafter "the Release"), attached hereto as Exhibit 1 to Exhibit A). Although Abelman alleges that he received his lump sum benefit *after* he signed the Release, he knew precisely how his benefit would be calculated before he signed the Release. As early as 1994, the Plan informed him that if he elected a lump sum benefit, he would receive a lump sum equal to his account balance. Accordingly, Abelman had ample opportunity to learn of his claims, and he could have sued under ERISA before he signed the Release. Moreover, Abelman alleges that his claims involve "statutory violations" and "not purely plan-based benefit claims." (Compl. ¶ 24). Insofar as his ERISA claims involve

"statutory questions" rather than "interpretation of the Plan" (Compl. ¶ 24), his claims are not within the scope of the exclusions set forth in the Release, and are consequently barred.

Respectfully, the Complaint should be dismissed.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Overview Of Colgate-Palmolive And The Colgate-Palmolive Company Employees' Retirement Income Plan.

Colgate is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world. (See Excerpts from Colgate-Palmolive, SEC Form 10-K filed 2/23/2007, Ex. B at 1).[4] The Company is headquartered in New York and has other facilities and employees located throughout the country. (See Ex. B at 2, 6, 7).

Colgate sponsors the Plan, which is a defined benefit plan. (Compl. ¶ 14). The Plan is administered in New York. (See Excerpt from Colgate-Palmolive Company Employees' Retirement Income Plan, Form 5500 filed Oct. 2005, Ex. C at 1).

### B.     Nutter Received A Lump Sum Benefit From The Plan In 2000.

Nutter was employed by Colgate from 1988 until 2000, and she elected to take her pension benefits in the form of a lump sum.[5] (Compl. ¶¶ 16, 20-21).[6] The lump sum payment to

---

[4]     SEC filings and other public disclosures are appropriately considered under Rule 12(b)(6)  See New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) (courts can take judicial notice of matters of public record on motion to dismiss) (citations omitted), cert. denied, 540 U.S. 1183 (2004); Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (courts may take into consideration public records, matters of which a court may take judicial notice, and letter decisions of government agencies); City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 655, n.1, 2 (taking judicial notice on motion to dismiss under Rule 12(b)(6) of information from the National Association of Securities Dealers website and a publication on international securities), cert. denied, 546 U.S. 936 (2005).

[5]     This was a voluntary election by Nutter. (Compl. ¶ 20). Under ERISA, the default form of payment is an annuity or a joint and survivor annuity for married participants. 29 U.S.C. §§ 1055(b)(1)(C)(ii) and 1055(g)(1) (1999). Participants must make a written election to receive their benefits in any other form, e.g., a lump sum. Id. § 1055(g)(2).

[6]     Paragraph 20 of the Plaintiffs' Complaint mistakenly transposes the years in which Abelman and Nutter elected to receive their lump sum benefits. (Compl. ¶ 20). The rest of the Complaint makes clear that Abelman elected to receive his lump sum in 2006 and Nutter received her lump sum in 2000. (Compl. ¶¶ 15, 16, 21).

Nutter was equal to her cash balance account balance. (Compl. ¶¶ 22, 34). Nutter did not utilize

the Plan's internal appeal process (after her initial benefit election) because:

> "....the claims Plaintiffs raise are statutory claims involving the
> interpretation of ERISA, not purely plan-based benefit claims
> involving an interpretation of the Plan .... [E]ven if the exhaustion
> requirement is not categorically inapplicable here, it should be
> excused as futile.... Futility is also demonstrated by the fact that
> the *legal standard* Defendants violated is clear and was well-
> *established long ago* – and was confirmed by the IRS *as long ago*
> *as 1991, years before the Plan's illegal methodology for*
> *computing lump sums was adopted and put into effect (in 1994).*
> *In the intervening 15 years, numerous Courts of Appeals and*
> *District Courts have confirmed these requirements.* Yet
> Defendants have failed to conform the Plan or their conduct under
> it to requirements of the law, evidencing their belief that the law
> does not apply to them.

(Compl. ¶¶ 24-26) (citations omitted, emphasis added). Nutter does not allege any facts between

the date she received her lump sum in 2000 and the filing of the Complaint on August 13, 2007.

## C.    Abelman Signed A Release Of Claims In 2005.

Abelman was employed by Colgate from 1992 until 2005. (Compl. ¶ 15). In April 2005,

he signed a general release, in which he agreed to release Colgate and any of its affiliates from

any claims, "known or unknown," relating to his employment with Colgate, including any claims

arising under ERISA.[7] (See Letter of Agreement and General Release, dated March 8, 2005 and

signed by Abelman on April 18, 2005 (hereafter "the Release"), attached hereto as Exhibit 1 to

Exhibit A, Section 3(a)). Specifically, the Release stated:

---

[7]    This Court is permitted to consider facts "which are indisputable because they are capable of ready
determination from resources whose accuracy cannot be reasonably questioned." Michigan Bell Tel. Co. v.
Strand, 26 F. Supp. 2d 993, 996 (W.D. Mich. 1998) (citations omitted)(Ex. G). Courts have considered whether
releases bar ERISA claims on motions to dismiss under Rule 12(b)(6). See generally Homenick v. Nat'l Steel
Corp., No. 95-CV-75310-DT, 1996 WL 426549 (E.D. Mich. Feb. 22, 1996) (granting motion to dismiss under
12(b)(6) where release barred ERISA claims)(Ex. H); Taylor v. Visteon Corp., 149 F. App'x 422 (6th Cir. 2005)
(affirming granting of motion to dismiss under 12(b)(6) where release barred ERISA claims).

In consideration of the Severance set forth in Paragraph 2 hereof and the Summary, you waive, release and forever discharge Colgate and each of its past and current parents, subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from *any and all claims, grievances, agency or administrative charges, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, sums of money, attorneys' fees, costs, damages, arbitrations, or demands, whatsoever, known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which you now have, ever have had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to you, from the beginning of time until the effective date of this Agreement*, arising out of or relating in any way to your employment relationship with Colgate or the Colgate Releasees or other associations with Colgate or the Colgate Releasees or any termination thereof. Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right based upon any contract, express or implied, any breach of duty, or arising under federal, state or local fair employment practices, equal opportunity, or wage and hour laws, including, but not limited to, the Age Discrimination in Employment Act (29 U.S.C. Section 621, et seq.) ("ADEA"), the Older Workers' Benefit Protection Act, the Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, 42 U.S.C. Section 1981, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, *the Employee Retirement Income Security Act,* the Americans with Disabilities Act and the Family and Medical Leave Act, including all amendments thereto.

Exhibit 1, Section 3(a) (emphasis added). The Release does not include any "claim or right …

under any qualified pension or retirement plan." (See Exhibit 1, Section 3(c)). In exchange for

this release of claims, Abelman received severance benefits, including severance pay, stock

options, a lump sum payment, and other benefits, from the Company. (See Exhibit 1, Section 2).

Abelman "freely, voluntarily and knowingly entered into this Agreement after due

consideration." (See Exhibit 1, Section 14).

Although Abelman alleges that he received his lump sum benefit *after* he signed the

Release, his claims under ERISA accrued *before* he signed the release. As early as 1994, the

Summary Plan Description for the Plan (in effect from 1994 until December 31, 2004) told

Abelman that if he elected a lump sum benefit, he would receive a lump sum equal to his account balance.[8]  See Summary Plan Description dated November 1994 (hereafter "1994 SPD" or "1994 Summary Plan Description"), p. 9.12 ("***Lump-Sum Option*** – An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA [Personal Retirement Account] balance.") (emphasis in original), attached hereto as Exhibit D.  In addition, the more recent Summary Plan Description for the Plan (in effect as of January 1, 2005 to the present) also informed Abelman of the same fact.  See Summary Plan Description, effective January 1, 2005 (hereafter "2005 SPD" or "2005 Summary Plan Description"), p. 11 ("**Lump-Sum Option** – This option pays the total value of your PRA balance in a single cash payment.") (emphasis in original), attached hereto as Exhibit E.  Accordingly, Abelman had ample opportunity to learn of his claims – and sue to clarify his rights under ERISA – long before he signed the Release in 2005.  Moreover, because Abelman's claim involves "statutory questions" rather than "interpretation of the Plan" (Compl. ¶ 24), his claims are not within the scope of the exclusions set forth in the Release, and are consequently barred.  Like Nutter, Abelman alleges that he did not utilize the Plan's internal appeal process (after his initial benefit election) because his claims are "statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan."  (Compl. ¶ 24).  In addition, Abelman alleges that exhaustion would have been futile.  (Compl. ¶¶ 25-26).  He also alleges that although the Plan's "illegal methodology for computing lump sums was adopted and put into effect (in

---

[8]   Plaintiffs reference the Plan documents throughout their Complaint.  (Compl. ¶¶ 18, 19, 37).  Accordingly, the Plan documents are appropriately considered under Rule 12(b)(6).  See Weiner, D.P.M. v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997) (referencing plan documents and SPDs attached to motion to dismiss under 12(b)(6)); Cardinal Health, Inc. ERISA Litig., 424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006) ("Courts may consider ERISA plan documents not attached to a complaint where a plaintiff's claims are 'based on rights under the plans which are controlled by the plans' provisions as described in the plan documents' and where the documents are 'incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims.'") (citations omitted).

1994) … the legal standards Defendants violated is clear and well-established long ago – and was confirmed by the IRS as long ago as 1991." (Compl. ¶ 26).

Accordingly, Abelman's claims are barred by the Release and must be dismissed.

## III.   ARGUMENT

### A.   Legal Standard Governing Motions To Dismiss Under Fed. R. Civ. P. 12(b)(6).

Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." New England Health Care Employees Pension Fund v. Ernest & Young, LLP, 336 F.3d 495. 501 (6th Cir. 2003) (citations omitted), cert. denied, 540 U.S. 1183 (2004).  In a recent opinion, Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court held that, in order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege sufficient specific facts to state a claim "*that is plausible on its face*," not just one that is "conceivable."   Id. at 1974 (emphasis added). Dismissal of a complaint for failure to state a claim streamlines litigation by "dispensing with needless discovery and factfinding." Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).  As the Supreme Court emphasized, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, *this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court.*" Twombly, 127 S. Ct. at 1966 (emphasis added, citations and quotations omitted; ellipsis in original).

In ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. See Meador v. Cabinet for Human Res., 902 F.2d 474, 475 (6th Cir. 1990), cert. denied, 498 U.S. 867 (1990).  However, although a court reviewing a Rule 12(b)(6) motion to dismiss should construe the plaintiff's complaint liberally, "more than bare assertions of legal

conclusions is ordinarily required to satisfy federal notice pleading requirements." <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988). Rather, a plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." <u>Id.</u> (citations and internal quotations omitted). Accordingly, a district court need not accept as true "the bare assertion of legal conclusions" or "unwarranted factual inferences." <u>In re Sofamor Danek Group, Inc.</u>, 123 F.3d 394, 400 (6th Cir. 1997) (citations omitted); <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987).

**B.    Nutter's Claims Are Time Barred.**

**1.    Nutter's Claims Are Subject To The Four-Year Catch-All Statute Of Limitations In 28 U.S.C. § 1658.**

ERISA itself does not specify a statute of limitations for claims alleging statutory violations. <u>See</u> <u>Meade</u>, 966 F.2d at 194 ("ERISA provides no statute of limitations for section 1132(a)(1)(B) actions"); <u>Taylor v. Aramark Serv. Corp.</u>, No. 1:03-CV-337, 2004 WL 1854177, at *3 (E.D. Tenn. Mar. 4, 2004) (same)(Ex. I). Accordingly, courts have explained that the first step in any statute of limitations analysis under ERISA is to determine whether the federal four-year "catch-all limitations period" in 28 U.S.C. § 1658(a) applies. <u>AXA Network</u>, 459 F.3d at 808 (considering whether Section 1658 applies to ERISA claim; also noting that Section 1658 is a "catch-all limitations period for federal causes of action that do not have their own limitations periods"). <u>See also</u> <u>Meade</u>, 966 F.2d at 194-95 ("[I]n the absence of a federally mandated statute of limitations, the court should apply the most analogous state law statute of limitations."); <u>Ruggles v. Bulkmatic Transport Co.</u>, No. C2-03-617, 2004 WL 5376213, at **3-4 (S.D. Ohio June 23, 2004) (applying the four year limitations period in 28 U.S.C. § 1658(a) to a claim arising under the Interstate Commerce Commission Termination Act)(Ex. J); <u>Sykes v. First</u>

South Utility Construction, Inc., No. 3:05-0658, 2006 WL 2792195, at *6 (M.D. Tenn. Sept. 25, 2006) (applying four-year federal statute of limitations to Section 1981 claims that were "made possible by the Civil Rights Act of 1991")(Ex. K).

> 28 U.S.C. § 1658(a) provides that:

> > Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

Id. Although ERISA was originally enacted in 1974, the Supreme Court in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) held that Section 1658 is not limited to new statutes or new causes of action, but also includes amendments that change the rights or obligations of the parties at issue. Id. at 381 (internal citation omitted). The Supreme Court explained:

> > The House Report accompanying the final bill [enacting Section 1658] confirms that Congress was keenly aware of the problems associated with the practice of borrowing state statutes of limitations, and that a central purpose of § 1658 was to minimize the occasions for that practice.

> > *   *   *

> > Congress routinely creates new rights of action by amending existing statutes, and *"[a]ltering statutory definitions, or adding new definitions of terms previously undefined*, is a common way of amending statutes." Nothing in the text or history of § 1658 supports an interpretation that would limit its reach to entirely new sections of the United States Code. An amendment to an existing statute is no less an "Act of Congress" than a new, stand-alone statute. What matters is the substantive effect of the enactment -- the creation of new rights of action and corresponding liabilities – not the format in which it appears in the Code.

Id. at 380-81 (emphasis added) (citations omitted). The Supreme Court further explained that Section 1658 should be given expansive application "that fills more rather than less of the void" caused by the prior absence of a federal residual statute of limitations. Id. at 380. Thus, the

Supreme Court explained, the central question in determining the applicability of Section 1658 is whether "the plaintiff has alleged a violation of the relevant statute as it stood prior to December 1, 1990, or whether her claims necessarily depend on a subsequent amendment." Id. at 384.

In Jones, for example, the petitioners alleged harassment and wrongful termination claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981. Although the statute had been codified since 1866, the petitioners' particular claims were based on statutory definitions that were amended by Congress in 1991. See Id. at 372. Therefore, the Supreme Court held that the petitioners' claims were governed by the four-year limitations period in Section 1658.

Similarly, in Nino v. Haynes Int'l Inc., No. 1:05-CV-0602-JDT-TAB, 2005 WL 4889258 (S.D. Ind. Aug. 19, 2005)(Ex. L), the court addressed the applicability of Section 1658 to a claim of employment discrimination based on military service. Although the Selective Training and Service Act had been codified since 1940, and replaced by the Veterans' Reemployment Rights Act ("VRRA") in 1974, "Congress replaced the VRRA with USERRA[9] [in 1994] to clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." Id. at *2. The court held that the plaintiff's USERRA claim was subject to the four-year limitations period in Section 1658 because USERRA allowed plaintiffs to recover liquidated damages – damages not previously available under VRRA – thus changing the parties' potential rights and liabilities. The court explained:

---

[9]    USERRA stands for the "Uniformed Services Employment and Reemployment Act of 1994." Nino, 2005 WL 4889258, at *1 (Ex. L).

> *USERRA materially changed the existing VRRA law by allowing liquidated damages, a relief that was not previously available to a plaintiff under VRRA. This change increased the rights available to the plaintiff, and the possible liabilities of the defendant. This important change requires the application of § 1658(a)'s four-year statute of limitations.*
>
> \* \* \*
>
> Perhaps [plaintiff] would have had a claim against [defendant] under the VRRA if the Act was still current law. However, the VRRA has been replaced by USERRA.

Id. at \*2, \*4 (emphasis added). See also City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 124, n.5 (2005) ("Since the claim here rests upon violation of the post-1990 [Telecommunications Act of 1996, which amended pre-existing law], § 1658 would seem to apply" because the "4-year limitations period applies to all claims made possible by a post-1990 congressional enactment.") (internal quotations, citations and brackets omitted).

Consistent with the Supreme Court's holding in Jones and the court's opinion in Nino, ERISA claims that are based on a statutory provision that was amended after 1990 are subject to the four-year limitations period in Section 1658 if the amendment altered the parties' rights and obligations at issue. Thus, when the Seventh Circuit in AXA Network considered the applicability of Section 1658 to an ERISA claim, the court looked to whether the specific substantive provision at issue (29 U.S.C. § 1140) had been amended to alter the parties' rights and obligations. [10] See AXA Network, 459 F.3d at 808 (Section 1658(a) does not apply to claim alleging violation of ERISA Section 510, 29 U.S.C. § 1140, because "§ 510 of ERISA has not been amended since its original enactment in 1974").

---

[10]  To Defendants' knowledge, the Sixth Circuit has not addressed this issue.

Here, Jones, AXA Network, and Nino compel application of the federal four-year limitations period to Nutter's claims. Nutter alleges that the lump sum in her account balance was "less than the present value of [her] respective accrued benefits *in violation of ERISA §§ 203(e) and 205(g).*" (Compl. ¶ 31) (emphasis added). Although these sections were originally codified before 1990, they both were substantially amended in 1994 by the Retirement Protection Act of 1994 ("RPA of 1994"), which is, of course, "an Act of Congress enacted after" 1990. 28 U.S.C. § 1658(a). Moreover, the RPA of 1994 amendments changed the method of calculating lump sum present values under ERISA Sections 203(e) and 205(g)(3) – the very calculation that lies at the crux of Nutter's claims against the Plan.[11]

Specifically, in order to calculate a present value of an annuity benefit, one needs to know the governing mortality assumptions (set forth on a "mortality table") and discount rate.[12] Before the RPA of 1994, 29 U.S.C. §§ 1053(e) and 1055(g)(3) did not prescribe any particular mortality table, but instead permitted plans to make their own mortality assumptions. See Valuation of Plan Distributions, 60 Fed. Reg. 17216-01, 17217 (Apr. 5, 1995) ("Prior to amendments made by RPA '94, section 417(e)(3) restricted the interest rate to be used under a plan to calculate the present value of a participant's benefit, but did not impose any restrictions on the mortality table to be used for that purpose."). In addition, before the RPA of 1994, the Pension Benefit Guarantee Corporation ("PBGC") had discretion to set the "applicable interest

---

[11] To Defendants' knowledge, no court has previously considered whether or not the four-year residual statute of limitations in Section 1658 applies to alleged violations of 29 U.S.C. §§ 1053(e) and 1055(g)(3) as those statutes were amended by the RPA of 1994. This issue is being considered by the court in Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016-SEB-WGH, and Defendants have moved to transfer this case to the district where Caufield is pending.

[12] See, e.g., Kim Clark, Career Spotlight: Cashing Out Your Pension, U.S. NEWS & WORLD REPORT, Oct. 24, 2005, http://www.usnews.com/usnews/biztech/articles/051024/24career.htm (lump sums are based on the average mortality for all men and women combined at each age, and are calculated by adding up all the payments that should be made to a person based on his or her expected life span, then calculating the present value of that stream of income)(Ex. M).

rate" for discounting to present value and calculating lump sums.[13]  29 U.S.C. § 1053(e) (1993 Ed.); 29 U.S.C. § 1055(g)(3) (1993 Ed.).  The RPA of 1994 changed both of these statutory requirements.  First, the RPA of 1994 defined for the first time an "applicable mortality table" and mandated that plans use that table.  29 U.S.C. § 1053(e) (1995 Ed.);[14] 29 U.S.C. § 1055(g)(3) (1995 Ed.).  Thus, pursuant to the RPA of 1994, plans no longer had the right to make their own mortality assumptions.  Second, the RPA of 1994 changed the statutory definition of the "applicable interest rate" to mean the "annual rate of interest on 30-year Treasury securities." 29 U.S.C. § 1053(e) (1995 Ed.); 29 U.S. § 1055(g)(3) (1995 Ed.).  As such, the PBGC no longer had the discretion to set the discount rate for calculating lump sums, but instead the rate was set by the financial markets.

As reflected above, the substantive effect of the RPA of 1994 was to create new rights and corresponding liabilities with regard to the calculation of lump sum benefits by "altering statutory definitions [and] adding new definitions of terms previously undefined."  Jones, 541 U.S. at 381.  See also Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 196 F. Supp. 2d 1260, 1271 (N.D. Ga. 2002) ("Congress passed the Retirement Protection Act in 1994, which *substantially altered* the language of § 203(e) [29 U.S.C. § 1053(e)].") (emphasisadded).[15]

---

[13]  The PBGC apparently set its interest rates for valuation purposes by examining a survey of private sector annuity prices, using those prices as a starting point, and selecting a valuation interest rate (or rates) that when combined with the PBGC mortality table would accurately replicate the price structure of certain private annuity products. See Valuation of Plan Benefits in Single-Employer Plans; Valuation of Plan Benefits and Plan Assets Following Mass Withdrawal, 58 Fed. Reg. 5128 (Jan. 19, 1993).

[14]  29 U.S.C. § 1053(e) was amended to eliminate any substantive provisions regarding rates or mortality assumptions, but instead merely requires that any present value calculations be performed in accordance with the amended provisions of 29 U.S.C. § 1055(g)(3).

[15]  In fact, the Eleventh Circuit in Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235 (11th Cir. 2000), cert. denied, 532 U.S. 967 (2001) held that a plaintiff who received his lump sum distribution from a cash balance plan before the RPA of 1994 could not represent plan participants who received their lump sum benefits after the RPA of 1994, because the law regarding the calculation of lump sum present values – and the rights and obligations of plans and plan participants with respect to lump sum calculations – had been materially altered by the RPA of 1994. Id. at 1253.

Accordingly, and because Nutter's claims are based on "an Act of Congress enacted" after 1990, Nutter's claims are subject to the four-year residual statute of limitations in 28 U.S.C. § 1658(a).[16]  See Jones, 541 U.S. at 381; AXA Network, 459 F.3d at 813; Nino, 2005 WL 4889258, at *2, *4.

> **2.     Assuming *Arguendo* That Nutter's Claims Were Not Subject To The Four-Year Federal Catch-All Limitations Period in Section 1658, Her Claims Would Be Subject To New York's Six-Year Statute Of Limitations.**

As explained above, Nutter's claims are based on statutes that were materially amended by the RPA of 1994, and, therefore, her claims are subject to the federal four-year limitations period in 28 U.S.C. § 1658.  Nevertheless, the Plan anticipates that Nutter will attempt to avoid application of the four-year limitations period to try to save her claims.  Even assuming *arguendo* that Nutter's claims were not subject to the four-year limitations period in Section 1658, however, her claims would be subject to New York's six-year statute of limitations and would be time barred.

The Seventh Circuit's decision in AXA Network addressed this very issue.[17]  AXA Network involved plaintiffs who worked and resided in Illinois who alleged that they were denied certain benefits in Illinois because of a companywide change in benefit policy, in

---

[16]  Although Nutter further alleges the Plan violated ERISA § 203(a), this allegation is premised on the same statutory provisions, 29 U.S.C. §§ 1053(e) and 1055(g)(3).  Nutter alleges that the Plan's conduct "resulted in an impermissible forfeiture of benefits" that is prohibited by ERISA Section 203(a) (29 U.S.C § 1053(a)) and Internal Revenue Code ("IRC") Section 411(a), as implemented by Treasury Regulation 1.411(a)-4 and 4T.  In fact, this allegation incorporates by reference all prior paragraphs of the Complaint.  (Compl. ¶ 32).  Nutter alleges that because 29 U.S.C. §§ 1053(e) and 1055(g)(3) entitled her to certain benefits, the failure to pay those benefits also constituted an impermissible forfeiture under 29 U.S.C. § 1053(a).  Thus, her claim under ERISA § 203(a) necessarily depends on the same statutory provisions (29 U.S.C. §§ 1053(e) and 1055(g)(3)) that were amended by the RPA of 1994, and also is subject to the four-year residual statute of limitations in 28 U.S.C. § 1658(a).

[17]  The Sixth Circuit has not squarely addressed the issue of which state's statute of limitations, if any, should apply to a putative ERISA class action that involves participants who worked, lived, and received their benefits in multiple states.

violation of ERISA Section 510, 29 U.S.C. § 1140.  The court ruled that the plaintiffs' claims were not subject to the residual four-year limitations period in 28 U.S.C. § 1658 because "§ 510 of ERISA has not been amended since its original enactment in 1974."  AXA Network, 459 F.3d at 808.  Accordingly, the Seventh Circuit held that the plaintiffs' claims were subject to the most analogous statute of limitations of the "state *with the most significant relationship to the parties and to the transaction.*"  Id. at 813 (emphasis added).  In determining that New York law – and not Illinois law – controlled, the court held:

> In our view, New York is the state with the most significant relationship to the parties and to the transaction.  The occurrence at issue here was the corporate decision on the part of [defendant] to alter the criterion for determining whether an employee ought to be considered a full-time insurance salesman.  That change was made by [defendant's] management in New York and documented by evidence and by witnesses in New York.  Moreover, the decision was applicable to all [defendant]'s salesmen, not simply to those in Illinois.  Although the named plaintiffs reside in Illinois, other members of the class reside in states other than Illinois.  Thus, Illinois is simply a spoke rather than the hub of this lawsuit.

Id. at 813.  The Seventh Circuit also recognized that were it to reach any other conclusion "this class action would be governed by a 'crazy quilt' of limitations periods and the federal interest in uniformity would be rendered nugatory."  AXA Network, 459 F.3d at 814.  The court concluded that applying New York law better served the federal policies at issue in furthering uniformity of treatment.  Id.

Likewise, in this situation, New York has the "most significant relationship" to the claims alleged.  As in AXA Network, Colgate is headquartered in New York, the Plan Administrator is in New York, and the Plan is administered in New York.  (Ex. B, at 6; Ex. C, at 1).  Nutter also alleges that the same plan terms and plan administration uniformly affected Plan participants throughout the country:

- "The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump sum distribution for each member of the Class was calculated in the same manner as described above." (Compl. ¶ 37).

- "Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan document and applicable provisions of ERISA." (Compl. ¶ 38).

In these circumstances, as in AXA Network, Ohio is "simply a spoke rather than the hub of [the] lawsuit," and New York's statute of limitations controls. Id. at 813. Indeed, New York is the only jurisdiction with which (for purposes of this litigation) all the putative class members have any meaningful contact.

Under New York law, the statute of limitations for ERISA claims seeking benefits (whether based on statute or the terms of a plan) is six years. See, e.g., Miles v. New York State Teamsters Conf. Pension Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983) (New York's six-year limitations period applies to ERISA claims) (citing N.Y.C.P.L.R. § 213), cert. denied, 464 U.S. 829 (1983); Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 46-47 (2d Cir. 1999) (same).

### 3.    Nutter's Claims Accrued, At The Latest, When She Received Her Lump Sum In 2000 And Consequently Her Claims Are Time Barred.

Nutter's claims had accrued at the latest in 2000 when she received her lump sum benefit. Accordingly, her ERISA claims are time barred under the applicable statute of limitations, and must be dismissed.

ERISA does not specifically articulate when a cause of action accrues for statute of limitations purposes. Rather, the accrual of ERISA claims is governed by "federal common law." Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 65 (7th Cir. 1996)

("[W]e look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA."); White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 245 (4th Cir. 2007) (the accrual of ERISA claims is governed by "a uniform federal rule rather than the law of the states."). As the Supreme Court has explained, under federal common law, "[i]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007) (internal quotations and citations omitted); Cooey v. Strickland, 479 F.3d 412, 416 (6th Cir. 2007) ("Cooey II) (citing Wallace). See also Graham County Soil & Water Conservation Dist. v. U.S., 545 U.S. 409, 418 (2005) (recognizing the standard federal rule "that the limitations period commences when the plaintiff has a complete and present cause of action.") (internal quotations omitted).

Application of this principle to ERISA claims generally is straightforward. Participants *generally* cannot file a court complaint under ERISA, i.e., they do not have a "complete and present cause of action," until they have exhausted their administrative remedies, either formally or informally. In such circumstances, because participants cannot file a court complaint until they have exhausted administrative remedies, the limitations period generally does not start running until the participants have exhausted. See Morrison v. Marsh & McLennan Co., Inc., 439 F.3d 295, 301-303 (6th Cir. 2006) (cause of action challenging denial of benefits accrued when plan fiduciary sent letter informing individual that application for coverage was denied, and *not* when putative beneficiary later filed a formal claim for benefits); Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 66 (7th Cir. 1996) (participant's cause of action accrued when fund denied the participant's informal letters requesting benefits, and *not* when he later filed a formal application for benefits) (cited in Morrison, 439 F.3d at 303); Carey v. Int'l

Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999) (cause of action under ERISA accrued when Plan denied the participant's request for benefits, and not when his formal application for benefits was later denied). The Fourth Circuit succinctly explained the principle as follows: "[t]his means that the statute of limitations begins to run *at the moment when the plaintiff may seek judicial review, because ERISA plaintiffs must generally exhaust administrative remedies before seeking judicial relief.*" White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 246 (4th Cir. 2007) (emphasis added).

In this case, Nutter applied for and received her lump sum pension in 2000, and, at that point, she knew that her benefit was equal to her account balance. (Compl. ¶¶ 21-28). The Summary Plan Descriptions even told Nutter that if she elected a lump sum benefit, she would receive a lump sum equal to her account balance. See Exhibit D, p. 9.12; Exhibit E, p. 11. Nutter specifically alleges that she was not required to exhaust her internal administrative remedies under the Plan before seeking relief from this Court *because she knew that to do so would be "futile."* (Compl. ¶¶ 25-26, emphasis added). As the Sixth Circuit has explained:

> [t]he standard for adjudging the futility of resorting to the [Plan's] administrative remedies ... is whether a clear and positive indication of futility can be made. A plaintiff must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.

Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998) (internal quotations and citations omitted). Thus, by alleging futility, Nutter necessarily admits that she knew for "certain" that any appeal she could have filed under the Plan would have been denied. Nutter's futility allegation entitles her to immediately file a court action *without exhausting her administrative remedies.* See Constantino v. TRW, Inc., 13 F.3d 969, 974-75 (6th Cir. 1994) (holding that the participants who were challenging the calculation of their retirement benefits

could immediately file a court action without exhausting their administrative remedies where exhaustion would be futile).[18] This means that Nutter had a "complete and present cause of action" in 2000, even without exhausting her administrative remedies.    Accepting her own allegations as true, therefore, Nutter's claim accrued at the latest when she received her lump sum in 2000, because that is the moment she had a complete and present cause of action and was entitled to file a complaint in court.[19]    See Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007); Graham County Soil & Water, 545 U.S. at 418; Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162, 2171, n.3 (2007) (plaintiff's "cause of action was fully formed and present at the time that the discriminatory employment actions were taken against her, at which point she could have, and should have sued").[20] As one court explained in similar circumstances:

> The lump sum distribution represents the actual injury to each class member and marks the time after which delay in seeking redress would be unreasonable. . . . If a class member did not seek internal remedies, whether intentionally or not, this Court will not extend the statute of limitations by assuming that the class member exhausted his internal remedies some arbitrary number of days after the lump sum distribution. Thus, each class member's cause of action accrued when he received his lump sum distribution unless he sought internal remedies.

---

[18]   That is particularly true here.  Because Nutter alleges statutory violations (see Compl. ¶ 24), many of the policy reasons favoring exhaustion are lacking.   Constantino, 13 F.3d at 975 (determining that the purposes of administrative exhaustion were not met where the plaintiffs challenged the "legality of [the Plan], not ... a mere interpretation of it.... [I]f Plaintiffs were to resort to the administrative process, [the defendant] would merely recalculate their benefits and reach the same result.") (emphasis in original); West v. AK Steel Corp., 484 F.3d 395, 405 (6th Cir. 2007) (holding that the plaintiff was not required to file claims for benefits where he would have been told that he "already received an amount equal to his account balances, which is all he is entitled to under [the Plan's] interpretation of its Plan.").

[19]   Indeed, this is the only accrual date that gives any meaning to statutes of limitations, particularly because Nutter refused to appeal the calculation of her lump sum distribution, and she does not allege a single event that occurred between the date she received her lump sum and the date she filed her Complaint in 2007.  See Daill, 100 F.3d at 67 (rejecting plaintiff's argument that would render the "limitations period . . . meaningless"); Carey, 201 F.3d at 49 (rejecting argument that claim accrued only upon the denial of his formal application for benefits where such a rule would render the "limitation period meaningless" where a plaintiff could sue "long after he initially pursued his claims with the plan" merely by "delaying his formal application for benefits").

[20]   The Supreme Court in Ledbetter held that the plaintiff's cause of action accrued even though she did not know until much later that her male colleagues had received higher raises than she had received.  127 S.Ct. at 2174-77.

Laurenzano v. Blue Cross and Blue Shield of Mass., Inc., 134 F. Supp. 2d 189, 210 (D. Mass. 2001) (emphasis added).[21]

In sum, Nutter waited more than six years after receiving her lump sum to bring this lawsuit. In the interim, she did nothing to pursue any of the Plan's internal appeal procedures because she knew such claim was certain to be denied. If Nutter was not required to exhaust her administrative remedies before filing suit – as she herself alleges – she had a complete and present cause of action when she received her lump sum in 2000 (at the latest), and her claim had accrued as of that time. Her claims are untimely and they should be dismissed.

## C.    Abelman's Claims Are Barred By The Release Of His Claims.

Abelman's claims against the Plan and Colgate similarly fail to state a claim as matter of law.[22] Abelman was employed by Colgate from 1992 until 2005. (Compl. ¶ 15). In April 2005, Abelman signed a general release, in which he agreed to release Colgate and any of its affiliates from any claims, "known or unknown," relating to his employment with Colgate, including any claims arising under ERISA. (See Exhibit 1, Section 3(a)).[23]

---

[21]    That Nutter may claim that she did not know what the law required is irrelevant to the accrual of her claim for limitations purposes. See Wright v. Heyne, 349 F.3d 321, 330-31 (6th Cir. 2003) ("[T]he relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute..... If the requisite 'actual knowledge of the breach or violation' could only be obtained, as the Plaintiffs suggest, when they learned that they had a claim for violation of ERISA after consulting with an attorney even though they had actual knowledge years earlier of all of the facts and alleged misdeeds constituting their claim, [the policies underlying statutes of limitations] would be frustrated.").

[22]    To the extent that Abelman's claims accrued as early as 1994, when he was informed that he would receive a lump sum equal to his account balance, his claims are similarly time barred by the applicable statutes of limitations. See supra Sections III.B.1 and III.B.2.

[23]    Courts in the Sixth Circuit have affirmed employee waivers of ERISA claims. See, e.g., Taylor v. Visteon Corp., 149 F. App'x 422, 426 (6th Cir. 2005) ("Like most legal claims, ERISA claims (including breach-of-fiduciary claims) may be settled."); Halvorson v. Boyscouts of Am., No. 99-5021, 2000 WL 571933, at *3 (6th Cir. May 31, 2000) (release barred ERISA claims)(Ex. N); and Hogan v. Petitpren, Inc., et al., 92 F. Supp. 2d 612, 615 (E.D. Mich. 2000) (same).

It is indisputable that the plain language of the Release bars Abelman's claims. Moreover, courts in the Sixth Circuit have affirmed that Plan documents – such as an SPD – provide Plan participants "with ample opportunity to learn of [their] claim[s]." See Torello v. UNUM Life Ins. Co. of Am., No. 98-4338, 1999 WL 1204755, at *9 (6th Cir. Dec. 3, 1999)(Ex. O). In Torello, the plaintiff suffered a work-related injury, but failed to apply for long-term disability insurance benefits, and was discharged. Id. at *1. The plaintiff and his employer entered into a settlement agreement, by which the plaintiff would be temporarily reinstated, thus allowing him to file for long-term disability benefits. Id. at *2. In exchange, the plaintiff released all claims he had against the Company at the time of the agreement. Id. Upon his reinstatement, he filed an application for benefits (with UNUM), and the claim was denied as untimely because he had failed to provide notice and proof of his claim within the required time periods. Id.

The Sixth Circuit concluded that the plaintiff's ERISA claims (for breach of fiduciary duty and discriminatory discharge) against his former employer were barred by the release because the plaintiff had "full opportunity to learn the fundamental facts underlying his claim before he signed the settlement agreement." Id. at *9. Specifically, the plaintiff "had been given a summary plan description outlining the eligibility requirements for [the benefits in question] …. This information provided the former employee with ample opportunity to learn of his claims against [his former employer]." Id. at *9. Moreover, the Court determined that, although his benefits were not denied until *after* he signed the release, his claims arose *before* he signed the settlement agreement, that is, "on the date when he could no longer file a timely claim for benefits." Id. at *10. The Court rejected the plaintiff's argument that "he may not have realized his claim for benefits was untimely until it was actually denied," noting that the

employee "could have learned his claim was untimely by simply reading the summary plan description in his possession." Id. at *10.

In this case, the SPD gave Abelman "ample opportunity to learn of [his] claims;" it notified Abelman as early as 1994 that if he elected a lump sum benefit, he would receive a lump sum equal to his account balance.  See Exhibit D, p. 9.12 ("*Lump-Sum Option* – An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA [Personal Retirement Account] balance.") (emphasis in original).   Accordingly, Abelman had ample opportunity to learn of his claims long before he signed the Release in 2005, and thus, his claims are barred by the Release.[24]

## IV.   **CONCLUSION**

For each of the foregoing reasons, Plaintiffs' Complaint should be dismissed.

Respectfully submitted,

/s/ Felix Wade
Felix Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: fwade@szd.com

Trial Attorney for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan

---

[24] That Abelman may claim that he did not know what the law required with respect to the calculation of his lump sum benefit is irrelevant to whether his claim is covered by the Release.  See Wright, 349 F.3d at 330-31 ("Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims …. If the statute [of limitations] were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney.").

OF COUNSEL:

Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello * (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:   215-963-5295/5258/5584
Fax:    877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com

*Admitted *Pro Hac Vice*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

### CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/ Eve Ellinger
EVE ELLINGER

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PAUL ABELMAN, and<br>VALERIE R. NUTTER,<br><br>                     Plaintiffs,<br><br>    vs.<br><br>COLGATE-PALMOLIVE COMPANY, and<br>COLGATE-PALMOLIVE COMPANY<br>EMPLOYEES' RETIREMENT INCOME<br>PLAN,<br>                     Defendants. | Case No. 2:07-cv-793<br><br>Judge Michael H. Watson<br>Magistrate Judge Norah McCann King |

**DECLARATION OF Matthew Faranda IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

I, Matthew Faranda, do depose and state of my own personal knowledge as follows:

I am the analyst for the Colgate-Palmolive Company ("Colgate"). I have been employed by Colgate since September 20, 2004. This Declaration is submitted in support of the Defendants' Motion to Dismiss Plaintiffs' Complaint. I have personal knowledge of all facts set forth herein.

1.     Attached hereto as "Exhibit 1" is a true and correct copy of a Letter of Agreement and General Release dated March 8, 2005, and signed by Paul Abelman on April 18, 2005. This document is maintained by Colgate in the ordinary course of business.

2.     I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing information is true and correct based upon my personal knowledge and on information that I have obtained from personnel records and documents that are maintained by Colgate in the ordinary course of business.

Executed on this 24 day of September, 2007. _____

                                                 Matthew Faranda



EXHIBIT
**A**

# EXHIBIT 1 to EXHIBIT A

## Letter of Agreement and General Release dated March 8, 2005 and signed by Plaintiff Abelman on April 18, 2005

 **COLGATE-PALMOLIVE** *COMPANY*
A Delaware Corporation

300 Park Avenue
New York NY 10022-7499
Telephone 212-310-2000
Cable Address PALMOLIVE

March 8, 2005

Paul Abelman
1890 Aspen Drive
Zanesville, OH 43701

Dear Paul:

This letter of agreement and general release ("Agreement") confirms our mutual agreement regarding the terms and conditions of your separation from employment with Colgate-Palmolive Company and each of its subsidiaries and affiliates ("Colgate" or the "Company"). You and Colgate agree as follows:

1.  <u>Employment</u>.  Your last day of active employment with Colgate will be March 15, 2005.

2.  <u>Severance</u>.  Upon execution of this Agreement, the expiration of the seven (7) day revocation period provided for in Paragraph 14, the receipt by Colgate, via first class mail or facsimile, of the letter of acknowledgement and intent not to revoke the Agreement, attached hereto as Exhibit A, and your return of all Company property, the Company will provide you with the severance program and transition arrangements set forth in the Summary of Supplemental Severance, attached hereto as Exhibit B and incorporated herewith (the "Summary").

3.  <u>Release</u>.

    a)      In consideration of the Severance set forth in Paragraph 2 hereof and the Summary, you waive, release and forever discharge Colgate and each of its past and current parents, subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from any and all claims, grievances, agency or administrative charges, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, sums of money, attorneys' fees, costs, damages, arbitrations, or demands, whatsoever, known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which you now have, ever have had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to you, from the beginning of time until the effective date of this Agreement, arising out of or relating in any way to your employment relationship with Colgate or the Colgate Releasees or other associations with Colgate or the Colgate Releasees or any termination thereof. Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right based upon any contract, express or implied, any breach of duty, or arising under federal, state or local fair

1



employment practices, equal opportunity, or wage and hour laws, including, but not limited to, the Age Discrimination in Employment Act (29 U.S.C. Section 621, et seq.) ("ADEA"), the Older Workers' Benefits Protection Act, the Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, 42 U.S.C. Section 1981, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Employee Retirement Income Security Act, the Americans with Disabilities Act and the Family and Medical Leave Act, including all amendments thereto.

b)     This release provision specifically includes, but is not limited to: (i) claims for past or future wages, salary, bonuses or other forms of compensation; and (ii) all claims for attorneys' fees under any laws.

c)     Notwithstanding the generality of the foregoing, nothing herein constitutes a release or waiver by you of: (i) any claim or right you may have under COBRA or under any qualified pension or retirement plan; (ii) any claim or right you may have for unemployment insurance benefits; (iii) any claim or right that may arise after the execution of this Agreement; or (iv) any claim or right you may have under the Agreement.

d)     Nothing in this Agreement is intended to prohibit you from cooperating with any governmental agency, in any action brought by such governmental agency, and/or pursuant to 18 U.S.C. § 1514A, provided that you agree and acknowledge that you are not entitled to and that you will not seek or authorize anyone to seek on your behalf any personal equitable or monetary relief in such action.

4.     No Entitlement to Future Employment. You acknowledge and agree that this Agreement waives and releases any entitlement you may have to apply for or seek future employment with Colgate or the Colgate Releasees. Accordingly, you agree that you will not apply for or seek future employment with Colgate or the Colgate Releasees.

5.     Violations of Any Law or of Colgate's Code of Conduct. You hereby agree, promise and covenant that during your employment with Colgate, you did not violate any federal, state or local law, statute or regulation while acting within the scope of your employment with Colgate, nor did you violate Colgate's Code of Conduct while acting within the scope of your employment with Colgate. You acknowledge and understand that if Colgate should discover any such violation after your execution of this Agreement and your separation from employment with Colgate, it will be considered a material breach of this Agreement, and all of Colgate's obligations to you hereunder will become immediately null and void.

6.     Return of Property. Upon termination of your active employment, you agree to promptly return to Colgate all of its property, including, but not limited to, files, documents, identification cards, credit cards, keys, equipment, software and data, however stored.

7.     Repayment of Loans. You agree that Colgate shall have the right to deduct from the amounts payable pursuant to this Agreement any money owed to Colgate by you for a loan or advance paid to you by Colgate during your employment, when allowable by the loan agreement.

2



8.  <u>Transition</u>. To the extent Colgate deems necessary, you agree that you will assist the Company with the transition of your responsibilities.

9.  <u>Cooperation</u>.   You agree that upon Colgate's reasonable notice to you, you shall cooperate with Colgate and its counsel (including, if necessary, preparation for and appearance at depositions, hearings, trials or other proceedings) with regard to any past, present or future legal or regulatory matters that relate to or arise out of matters you have been involved with during your employment with Colgate.  In the event that such cooperation is required, Colgate will use its best efforts to accommodate your schedule, and you will be reimbursed for reasonable expenses incurred in connection therewith.

10. <u>Confidentiality of the Agreement</u>.   Except to the extent necessary to enforce this Agreement or as required by law, the parties hereto shall not disclose the existence of this Agreement, the terms of this Agreement, or the circumstances or allegations giving rise to this Agreement, to any person other than their respective attorneys, immediate family members, accountants, financial advisors or corporate employees who have a business need to know such terms in order to approve or implement such terms.  Nothing herein, however, shall prohibit any party or his/its attorneys from disclosing the existence of this Agreement, the terms of this Agreement, or the circumstances or allegations giving rise to this Agreement to the extent required by applicable laws or governmental regulations or judicial or regulatory process, provided that the disclosing party gives three business days' prior notice (or such shorter notice if disclosure is required prior to three days) to the other party so as to permit such other party to protect his/its interests *in* confidentiality to the fullest extent possible.

11. <u>Protection of Confidential Information</u>.

    a)   You hereby acknowledge your existing obligation to maintain the confidentiality of Colgate's information as contained in the Company's Code of Conduct.  You affirmed that you read and agreed to be bound by the Code of Conduct when you signed the Code of Conduct – Certificate of Receipt on October 27, 2004 (which is hereby incorporated by this reference);

    b)   Without limiting the generality of the foregoing obligations set forth in Paragraph 11 (a), you agree that you will not at any time, directly or indirectly, disclose any trade secret, confidential or proprietary information you have learned by reason of your association with Colgate (the "Confidential Information") or use any such Confidential Information to the detriment of Colgate or to the benefit of any business or enterprise that competes with any of the oral care, personal care, household surface care or fabric care categories of Colgate, its affiliates or subsidiaries. Confidential Information is deemed to include, but is not limited to, information pertaining to Company advertising and marketing plans, sales plans, formulae, processes, methods, machines, ideas, concepts, new products, improvements, inventions, research programs and associations with other organizations that the Company has not previously made public.  Confidential Information does not include information that can be shown by written evidence

to be in the public domain at the time of disclosure by you or that is publicized or otherwise becomes part of the public domain through no fault of your own.

12. <u>Non-Disparagement</u>.

    a)    You agree that you shall not at any time make any written or verbal comments or statements of a defamatory or disparaging nature regarding Colgate and/or the Colgate Releasees or their personnel or products and you shall not take any action that would cause Colgate and/or the Colgate Releasees or their personnel or products any embarrassment or humiliation or otherwise cause or contribute to their being held in disrepute.

    b)    Colgate agrees that it will use its best efforts to ensure that none of its representatives make any written or verbal comments or statements of a defamatory or disparaging nature regarding you or takes any action that would cause you any embarrassment or humiliation or otherwise cause or contribute to your being held in disrepute while they are employed by Colgate and acting in their capacity as Colgate representatives.

13. <u>Non-Admission</u>. It is understood and agreed that neither the execution of this Agreement nor the terms of the Agreement constitute an admission of liability to you by Colgate or the Colgate Releasees, and such liability is expressly denied. It is further understood and agreed that no person shall use the Agreement or the consideration paid pursuant hereto as evidence of an admission of liability, inasmuch as such liability is expressly denied.

14. <u>Acknowledgments</u>. You hereby acknowledge that:

    a)    You were advised by Colgate to consult with an attorney before signing this Agreement;

    b)    You have obtained independent legal advice from an attorney of your own choice with respect to this Agreement, or you have knowingly and voluntarily chosen not to do so;

    c)    You freely, voluntarily and knowingly entered into this Agreement after due consideration;

    d)    You have had a minimum of twenty-one (21) days to review and consider this Agreement;

    e)    If you knowingly and voluntarily choose to do so, you may accept the terms of this Agreement before the twenty-one (21) day consideration period provided for in Paragraph 14(d) above has expired;

    f)    Changes to Colgate's offer contained in this Agreement that are immaterial will not restart the twenty-one (21) day consideration period provided for in Paragraph 14(d) above;

    g)    You have a right to revoke this Agreement by notifying the undersigned Colgate representative in writing within seven (7) days of your execution of this Agreement;

4



h) In exchange for your waivers, releases and commitments set forth herein, including your waiver and release of all claims arising under the ADEA, the payments, benefits and other considerations that you are receiving pursuant to this Agreement exceed any payment, benefit or other thing of value to which you would otherwise be entitled, and are just and sufficient consideration for the waivers, releases and commitments set forth herein; and

i) No promise or inducement has been offered to you, except as expressly set forth herein, and that you are not relying upon any such promise or inducement in entering into this Agreement.

15. Revocation by Colgate. You agree that if you fail to execute and return this Agreement to Colgate within twenty-one (21) days of your receipt of the Agreement for your review and consideration, the promises and agreements made by Colgate herein will be revoked.

16. Miscellaneous.

a) Entire Agreement. This Agreement sets forth the entire agreement between you and Colgate and replaces any other oral or written agreement between you and Colgate relating to the subject matter of this Agreement, except for your prior obligations of confidentiality as provided for in Paragraph 11 above, which shall continue in full force and effect.

b) Governing Law. This Agreement shall be construed, performed, enforced and in all respects governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of law thereof. Additionally, all disputes arising from or related to this Agreement shall be brought in a state or federal court situated in the State of New York, County of New York, and the parties hereby expressly consent to the jurisdiction of such courts for all purposes related to resolving such disputes.

c) Severability. Should any provision of this Agreement be held to be void or unenforceable, the remaining provisions shall remain in full force and effect, to be read and construed as if the void or unenforceable provisions were originally deleted.

d) Amendments. This Agreement may not be modified or amended, except upon the express written consent of both you and Colgate.

e) Waiver. A waiver by either party hereto of a breach of any term or provision of the Agreement shall not be construed as a waiver of any subsequent breach.

f) Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

g) Effective Date. This Agreement shall become effective upon the expiration of the seven (7) day revocation period provided for in Paragraph 14(g) above and receipt by Colgate of Exhibit A.



If the above accurately states our agreement, including the discharge, waiver and release, kindly sign below and return the original with all attachments to me by no later than March 29, 2005.  I will sign it and return a copy to you.

Sincerely,

COLGATE-PALMOLIVE COMPANY

By: _____

Paul Parker
Vice President, HR US Company

Date: _____

UNDERSTOOD, AGREED TO
AND ACCEPTED WITH THE
INTENTION TO BE LEGALLY BOUND:

_____
Paul Abelman

Date: _____

Enclosure

6

**EXHIBIT A**

Paul Parker
Colgate-Palmolive Company
300 Park Avenue
New York, NY 10022

Dear Paul:

I understand and acknowledge that pursuant to Paragraph 14(g) of the letter agreement and release dated March 8, 2005 ("Agreement"), the terms of which are hereby incorporated by reference as if set forth fully herein, I was provided with a period of seven (7) days after my execution of the Agreement in which to revoke the Agreement if I so chose. This letter serves as an acknowledgement that I understand that the revocation period has expired, and that I did not revoke, nor did I intend to revoke, the Agreement. I have knowingly and voluntarily entered into the Agreement with the understanding that I am contractually bound by its terms and conditions.

Sincerely,

*Paul D. Abelman*

Paul Abelman

Date: _4/18/05_

7

**EXHIBIT B**

**NAME**: Paul Abelman

**SUMMARY OF SUPPLEMENTAL SEVERANCE PROGRAM**

**I.     COLGATE PROVIDES:**

**(1)     SEVERANCE PAY**
You will continue to receive your regular rate of pay through March 15, 2005. Additionally, beginning March 16, 2005 you will receive severance pay at your regular rate of pay on the same frequency as your current checks through September 14, 2005. However, if you were eligible for the 2004 Income Savings Account (ISA) program, when you received your ISA allocation you were scheduled for a salary reduction of $3,000 to occur over a period of 10 months. If your severance date falls prior to the end of this period, your severance pay will continue to be reduced by the balance of the $3,000 – or the maximum permitted by law, if less.

**(2)     STOCK OPTIONS**
As of March 16, 2005, you have 5,174 option shares vested and exercisable. After September 12, 2005, an additional 1,250 option shares will also become vested and exercisable. The exercise period for options which are vested as of the end of your salary continuance is the earlier of 90 days from the end of salary continuance or the expiration date of the option grant. Any options not then exercised will be forfeited.

You will not be eligible for an award in 2005.

Please refer to your most recent Stock Option Guide for further details.

**(3)     RESTRICTED SHARES**
You currently have 126 restricted shares outstanding under the Restricted Share Award Program which will be forfeited at the conclusion of your salary continuance, as they are not vested in accordance with the Plan.

You will not be eligible for any future grants under the Restricted Share Award Program.

Please refer to your Restricted Share Award Program summary for further details.

**(4)     VACATION PAY**
You will receive pay in lieu of any unused vacation for 2005.

**(5)     INCENTIVE COMPENSATION**
You will not receive an EICP bonus

8



(6)     **ABOVE & BEYOND**
You will be eligible for a 2005 Above and Beyond benefit for covered expenses incurred through March 15, 2005.   All requests for reimbursement must be made prior to December 31, 2005.

(7)     **BENEFIT PLANS**
Your benefit coverages are summarized below.  Please note any employee contributions required will be deducted from salary payments.

**Medical Plan**
Coverage will be continued through September 30, 2005.  Upon expiration of this coverage, you will have the option to continue medical coverage on an employee pay all basis plus 2% for administrative expenses.  This period of optional COBRA coverage will be up to 18 months, offset by any period of extended coverage during a severance period.

**Dental Plan**
Coverage will be continued through September 30, 2005.  Upon expiration of this coverage, you will have the option to continue dental coverage on an employee pay all basis plus 2% for administrative expenses. This period of optional COBRA coverage will be up to 18 months, offset by the period of extended coverage outlined above.

**IMPORTANT NOTE:** The extension of medical and/or dental coverage is in compliance with your rights under the Consolidated Omnibus Budget Reconciliation Act (COBRA).

**Group Life, AD&D, Dependent Life & Dependent AD&D Insurance Plans**
Coverage will be continued through September 30, 2005. Normal conversion privileges will be available.

**Short/Long Term Disability and Travel Accident Plans**
All coverage ceases as of March 15, 2005.

**Dependent Care/Health Care Accounts**
Your contributions will cease as of March 15, 2005.  You may submit eligible expenses for claims incurred through March 15, 2005.  You will have until March 31, 2006 claim reimbursement for these expenses.

**Long-Term Care Program**
You and all other enrolled family members will have the opportunity to continue your coverage and option selection on a direct-billing basis.

9



**Savings & Investment Plan**
Your contributions and Company match will continue up through the last day of your salary continuance. You are 100% vested. Your vested account balance as of March 4, 2005 is $254,585. Eligibility for a Success Sharing and Retiree Insurance Account allocation will be governed by normal rules. You will need to make an election on how you wish to receive your distribution of funds.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided at the end of your salary continuation period.

**Pension Plan**
Your estimated vested PRA account balance as of January 31, 2005 is $53,254. Pay-based credits, and interest credits will continue up through the last day of your salary continuance or the date of any lump-sum severance payment.

If you are entitled to receive or have received any other benefit from other Colgate or government sponsored pension plans or staff leave indemnity plans, they may apply as offsets.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided at the end of your salary continuation period.

(8)    **RELOCATION**
The Company will pay you a net lump sum of $35,000 in lieu of relocating you and your family back to South Africa.

II.    **RETURN TO COLGATE:**

1.    You will promptly return to Colgate all of its property including, but not limited to, files, identification cards, credit cards and keys issued, equipment, software, data files, documentation and materials.

2.    Cash or expense advances received by you may exceed your actual expenditures reported to date. Your expenses must be accounted for by March 15, 2005. At that time, you will reimburse Colgate for any excess advances. It is also understood that any outstanding Company credit card balances must be promptly reconciled.

If you have any questions on your Benefit Plans, please call Karyn Festinger at (212) 310-2537 or via e-mail.



# COLGATE PALMOLIVE CO

## FORM 10-K
(Annual Report)

## Filed 2/23/2007 For Period Ending 12/31/2006

| | |
|---|---|
| Address | 300 PARK AVE |
| | NEW YORK, New York 10022 |
| Telephone | 212-310-2000 |
| CIK | 0000021665 |
| Industry | Personal & Household Prods. |
| Sector | Consumer/Non-Cyclical |
| Fiscal Year | 12/31 |

Powered By EDGAR Online

http://www.edgar-online.com/
© Copyright 2006. All Rights Reserved
Distribution and use of this document restricted under EDGAR Onlines Terms of Use.



EXHIBIT

tabbies

B

Table of Contents

# PART I

## ITEM 1.    BUSINESS

### (a) General Development of the Business

Colgate-Palmolive Company (together with its subsidiaries, the "Company" or "Colgate") is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world. Colgate was founded in 1806 and incorporated under the laws of the State of Delaware in 1923.

For recent business developments and other information, refer to the information set forth under the captions "Executive Overview," "Results of Operations," "Restructuring Activities," "Liquidity and Capital Resources" and "Outlook" in Part II, Item 7 of this report.

### (b) Financial Information about Segments

Worldwide net sales and operating profit by business segment and geographic region during the last three years appear under the caption "Results of Operations" in Part II, Item 7 of this report and in Note 14 to the Consolidated Financial Statements.

### (c) Narrative Description of the Business

The Company manages its business in two product segments: Oral, Personal and Home Care; and Pet Nutrition. Colgate is a global leader in Oral Care with the leading toothpaste brand throughout many parts of the world, including the U.S., according to value share data provided by ACNielsen. Colgate's Oral Care products include toothpaste, toothbrushes, mouth rinses, dental floss and pharmaceutical products for dentists and other oral health professionals. Significant recent product launches include Colgate Max Fresh, Colgate Sensitive Multi-Protection, Colgate Sensitive Plus Whitening and Colgate Time Control toothpastes, Colgate 360° manual toothbrushes, Colgate MicroSonic battery-powered toothbrushes, Colgate Smiles line of manual toothbrushes for kids and Plax Overnight mouth rinse.

Colgate is a leader in many product categories of the Personal Care market. The Personal Care market includes shower gels, shampoos, conditioners, and deodorants and antiperspirants, as well as liquid hand soaps in which Colgate is the market leader in the U.S. Significant recent product launches include Irish Spring MoistureBlast, Palmolive Nutri-Milk, Protex Deo 12 bar soap, Softsoap Brand Pure Cashmere moisturizing liquid hand soap and body wash, Palmolive BodYogurt shower gel, Palmolive Naturals shampoo and conditioner and Lady Speed Stick Double Defense deodorant.

As part of its strategy to focus on its higher-margin oral and personal care businesses, the Company purchased Tom's of Maine, Inc. in the second quarter of 2006, allowing the Company to enter the fast growing health and specialty trade channel where Tom's of Maine toothpaste and deodorant are market leaders.

Colgate manufactures and markets a wide array of products for Home Care, including Palmolive and Ajax dishwashing liquids, Fabuloso and Ajax household cleaners and Murphy's Oil Soap. Colgate is a market leader in fabric conditioners, with leading brands including Suavitel in Latin America and Soupline in Europe. Significant recent product launches in Home Care include Palmolive Oxy Plus Odor Eliminator dish liquid, Ajax Professional Degreaser spray cleaner and Ajax Professional Double Power spray cleaner. Consistent with the Company's strategy to prioritize higher margin businesses, in the fourth quarter of 2006 the Company announced its agreement to sell its Latin American and Canadian bleach brands. The transaction closed in Canada during the fourth quarter of 2006 and the Latin American transaction is expected to close during the first half of 2007.

Sales of Oral, Personal and Home Care products accounted for 38%, 23% and 25%, respectively, of total worldwide sales in 2006. Geographically, Oral Care is a significant part of the Company's business in Greater

1

**Table of Contents**

Asia/Africa, comprising approximately 63% of sales in that region for 2006. For more information regarding the Company's worldwide sales by product categories, refer to Notes 1 and 14 to the Consolidated Financial Statements.

Colgate, through its Hill's Pet Nutrition segment, is the world leader in specialty pet nutrition products for dogs and cats with products marketed in over 90 countries around the world. Hill's markets pet foods primarily under two trademarks: Science Diet, which is sold by authorized pet supply retailers, breeders and veterinarians for everyday nutritional needs; and Prescription Diet, a range of therapeutic products sold by veterinarians to help nutritionally manage disease conditions in dogs and cats. Significant recent pet food product launches in this segment include Science Diet Lamb Meal & Rice Recipe Large Breed, Science Diet Lamb Meal & Rice Recipe Small Bites, Science Diet Indoor Cat, Prescription Diet j/d Canine, Prescription Diet Feline Chucks in Gravy pouches and Science Plan Neutered Cat. Sales of Pet Nutrition products accounted for 14% of the Company's total worldwide sales in 2006.

**Research and Development**

Strong research and development capabilities and alliances enable Colgate to support its many brands with technologically sophisticated products to meet consumers' oral, personal and home care and pet nutrition needs. Company spending related to research and development activities was $241.5 million, $238.5 million and $223.4 million during 2006, 2005 and 2004, respectively.

**Distribution; Raw Materials; Competition; Trademarks and Patents**

The Company's products are generally marketed by a direct sales force at each individual operating subsidiary or business unit. In some instances, distributors or brokers are used. No single customer accounts for 10% or more of the Company's sales.

Most raw and packaging materials are purchased from other companies and are available from several sources. For certain materials, however, new suppliers may have to be qualified under industry and government standards, which can require additional investment and take some period of time. Raw and packaging material commodities such as resins, tallow, corn and soybeans are subject to wide price variations. No single raw or packaging material represents a significant portion of the Company's total material requirements.

The Company's products are sold in a highly competitive global marketplace which is experiencing increased trade concentration and the growing presence of large-format retailers and discounters. Products similar to those produced and sold by the Company are available from competitors in the U.S. and overseas. Certain of the Company's competitors are larger and have greater resources than the Company. In addition, private label brands sold by retail trade chains are a source of competition for certain product lines of the Company. Product quality and innovation, brand recognition, marketing capability and acceptance of new products largely determine success in the Company's business segments.

Trademarks are considered to be of material importance to the Company's business. The Company follows a practice of seeking trademark protection by all appropriate means in the U.S. and throughout the world where the Company's products are sold. Principal global and regional trademarks include Colgate, Palmolive, Mennen, Softsoap, Irish Spring, Protex, Sorriso, Kolynos, Elmex, Tom's of Maine, Ajax, Axion, Fabuloso, Soupline, Suavitel, Hill's Science Diet and Hill's Prescription Diet. The Company's rights in these trademarks endure for as long as they are used and registered. Although the Company actively develops and maintains a portfolio of patents, no single patent is considered significant to the business as a whole.

**Employees**

As of December 31, 2006, the Company employed approximately 34,700 employees.

2

Table of Contents

regulatory authority that triclosan should not be used in certain consumer products could have an adverse impact on our business, as could negative reactions to triclosan from consumers, our trade customers or non-governmental organizations.

*Our business is subject to the risks inherent in global manufacturing activities*

As a company engaged in manufacturing on a global scale, we are subject to the risks inherent in such activities, including, but not limited to:

- availability of key raw materials,

- industrial accidents or other occupational health and safety issues,

- environmental events,

- strikes and other labor disputes,

- disruptions in logistics,

- loss or impairment of key manufacturing sites,

- product quality or safety issues,

- licensing requirements and other regulatory issues,

- natural disasters, acts of war or terrorism and other external factors over which we have no control.

While we have business continuity and contingency plans for key manufacturing sites, significant disruption of manufacturing for any of the above reasons could interrupt product supply and, if not remedied, have an adverse impact on our business.

*Acquisitions may not be successful*

From time to time, we make strategic acquisitions. Acquisitions have inherent risks, including, but not limited to, whether we can:

- successfully integrate the acquired business,

- achieve projected synergies and performance targets, and

- retain key personnel.

Depending on the significance of the acquisition, the failure to achieve expected synergies or projections could have an adverse effect on our results.

*The risks described above are not the only ones we face. Additional risks not presently known to us or that we currently deem immaterial may also have an adverse effect on us. If any of the above risks actually occur, our business, results of operations, cash flows or financial condition could suffer, which might cause the value of our securities to decline.*

## ITEM 1B.    UNRESOLVED STAFF COMMENTS

None.

## ITEM 2.    PROPERTIES

The Company owns or leases approximately 330 properties which include manufacturing, distribution, research and office facilities worldwide. Our corporate headquarters is located in leased property at 300 Park Avenue, New York, New York.

Table of Contents

In the U.S., the Company operates approximately 60 properties, of which 16 are owned. Major U.S. manufacturing and warehousing facilities used by the Oral, Personal and Home Care segment are located in Morristown, New Jersey; Jeffersonville, Indiana; and Cambridge, Ohio. The Pet Nutrition segment has major facilities in Bowling Green, Kentucky; Topeka, Kansas; Commerce, California; and Richmond, Indiana. The primary research center for Oral, Personal and Home Care products is located in Piscataway, New Jersey and the primary research center for Pet Nutrition products is located in Topeka, Kansas.

Overseas, the Company operates approximately 270 properties, of which 79 are owned, in over 70 countries. Major overseas facilities used by the Oral, Personal and Home Care segment are located in Australia, Brazil, China, Colombia, France, Italy, Mexico, South Africa, Thailand, the United Kingdom, Venezuela and elsewhere throughout the world.

All of the facilities we operate are well maintained and adequate for the purpose for which they are intended.

We have announced plans to close or phase out production at certain of our facilities under the 2004 Restructuring Program. We also announced plans to build new state-of-the-art plants to produce toothpaste in the U.S. and Poland. For additional information on how the 2004 Restructuring Program will impact our properties, refer to "Restructuring Activities" in Part II, Item 7 of this report.

## ITEM 3.    LEGAL PROCEEDINGS

In 1995, the Company acquired the Kolynos oral care business from Wyeth (formerly American Home Products) (the Seller), as described in the Company's Form 8-K dated January 10, 1995. On September 8, 1998, the Company's Brazilian subsidiary received notice of an administrative proceeding from the Central Bank of Brazil primarily taking issue with certain foreign exchange filings made with the Central Bank in connection with the financing of this strategic transaction, but in no way challenging or seeking to unwind the acquisition. The Central Bank of Brazil in January 2001 notified the Company of its decision in this administrative proceeding to impose a fine, which, at the current exchange rate, approximates $120 million. The Company appealed the imposition of the fine to the Brazilian Monetary System Appeals Council (the Council), and on January 30, 2007, the Council decided the appeal in the Company's favor, dismissing the fine entirely.

In addition, the Brazilian internal revenue authority has disallowed interest deductions and foreign exchange losses taken by the Company's Brazilian subsidiary for certain years in connection with the financing of the Kolynos acquisition. The tax assessments with interest, at the current exchange rate, approximate $100 million. The Company has been disputing the disallowances by appealing the assessments within the internal revenue authority's appellate process, with the following results to date:

- In June 2005, the First Board of Taxpayers ruled in the Company's favor and allowed all of the previously claimed deductions for 1996 through 1998, which represent more than half of the total exposure. The tax authorities have appealed this decision to the next administrative level.

- For the remaining exposure related to subsequent years, the assessment is still outstanding, and the Company is also appealing this assessment to the First Board of Taxpayers.

In the event of an adverse decision within the internal revenue authority's appellate process, further appeals are available within the Brazilian federal courts. Although there can be no assurances, management believes, based on the opinion of its Brazilian legal counsel and other experts, that the disallowances are without merit and that the Company should prevail on appeal either at the administrative level or if necessary, in the Brazilian federal courts. The Company intends to challenge these assessments vigorously.

In addition, Brazilian prosecutors reviewed the foregoing transactions as part of an overall examination of all international transfers of Reais through non-resident current accounts during the 1992 to 1998 time frame, a

7



**Quicklinks**

Back to Company Detail page | New Search
Form 5500 | Schedule A (1) | Schedule A (2) | Schedule B | Schedule C | Schedule D | Schedule H
| Schedule P | Schedule R | Schedule T | Other Documents | SHOW ALL

| | | |
|---|---|---|
| **Form 5500**<br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Pension and Welfare Benefits<br>Administration<br><br>Pension Benefit Guaranty Corporation | **Annual Return/Report of Employee Benefit Plan**<br>This form is required to be filed under sections 104 and 4065 of the Employee<br>Retirement Income Security Act of 1974 (ERISA) and sections 6039D, 6047(e),<br>6057(b), and 6058(a) of the Internal Revenue Code (the Code).<br>Complete all entries in accordance with<br>the instructions to the Form 5500. | Official Use Only<br>OMB Nos. 1210 - 0110<br>1210 - 0089<br><br>**2004**<br>This Form is Open to<br>Public Inspection |

**Part I    Annual Report Identification Information**

For the calendar plan year 2004 or fiscal plan year beginning January 01, 2004, and ending December 31, 2004

A This return/report is for:
- (1) ☐ a multiemployer plan;
- (2) ☒ a single-employer plan (other than a multiple-employer plan);
- (3) ☐ a multiple-employer plan;
- (4) ☐ a DFE (specify)

B This return/report is:
- (1) ☐ the first return/report filed for the plan;
- (2) ☐ the amended return/report;
- (3) ☐ the final return/report filed for the plan;
- (4) ☐ a short plan year return/report (less than 12 months).

C If the plan is a collectively-bargained plan, check here ☐

D If you filed for an extension of time to file, check the box and attach a copy of the extension application ☒

**Part II    Basic Plan Information** -- enter all requested information.

**1a** Name of plan

COLGATE-PALMOLIVE COMPANY EMPLOYEES RETIREMENT INCOME PLAN

**1b** Three-digit plan number (PN)    001

**1c** Effective date of plan (mo., day, yr.)
December 31, 1943

**2a** Plan sponsor's name and address (employer, if for a single-employer plan)
(Address should include room or suite no.)

COLGATE-PALMOLIVE COMPANY
300 PARK AVE
NEW YORK, NY 10022-7402

**2b** Employer Identification Number (EIN)
13-1815595

**2c** Sponsor's telephone number
212-310-2000

**2d** Business code (see instructions)
325600

Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.
Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, and to the best of my knowledge and belief, it is true, correct, and complete.

| | | |
|---|---|---|
| | 10/13/2005 | MARTIN COLLINS |
| Signature of plan administrator | Date | Typed or printed name of individual signing as plan administrator |
| | 10/14/2005 | HECTOR EREZUMA |
| Signature of employer/plan sponsor/DFE | Date | Typed or printed name of individual signing as employer, plan sponsor or DFE as applicable |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.    v2.3    Form **5500** (2004)

**3a** Plan administrator's name and address (if same as plan sponsor, enter "Same")

EMPLOYEE RELATIONS COMMITTEE
300 PARK AVE
NEW YORK, NY 10022-7402

**3b** Administrator's EIN
13-3854931

**3c** Administrator's telephone number
212-310-2000

**4** If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report below:

**b** EIN

**a** Sponsor's name

**c** PN



EXHIBIT
C

**5** Preparer information (optional)    **a** Name (including firm name, if applicable) and address

**b** EIN

**c** Telephone no.

| | | |
|---|---|---|
| **6** Total number of participants at the beginning of the plan year | **6** | 9,816 |
| **7** Number of participants as of the end of the plan year (welfare plans complete only lines **7a**, **7b**, **7c**, and **7d**) | | |
| **a** Active participants | **a** | 4,335 |
| **b** Retired or separated participants receiving benefits | **b** | 3,107 |
| **c** Other retired or separated participants entitled to future benefits | **c** | 1,290 |
| **d** Subtotal. Add lines **7a**, **7b**, and **7c** | **d** | 8,732 |
| **e** Deceased participants whose beneficiaries are receiving or are entitled to receive benefits | **e** | 981 |
| **f** Total. Add lines **7d** and **7e** | **f** | 9,713 |
| **g** Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) | **g** | |
| **h** Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested | **h** | 23 |
| **i** If any participant(s) separated from service with a deferred vested benefit, enter the number of separated participants required to be reported on a Schedule SSA (Form 5500) | **i** | 216 |

**8** Benefits provided under the plan (complete 8a through 8c, as applicable)

**a** ☒ Pension benefits (check this box if the plan provides pension benefits and enter the applicable pension feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

1A  1C  1D  1B  3H

**b** ☐ Welfare benefits (check this box if the plan provides welfare benefits and enter the applicable welfare feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

**9a** Plan funding arrangement (check all that apply)
- **(1)** ☒ Insurance
- **(2)** ☐ Section 412(i) insurance contracts
- **(3)** ☒ Trust
- **(4)** ☐ General assets of the sponsor

**9b** Plan benefit arrangement (check all that apply)
- **(1)** ☒ Insurance
- **(2)** ☐ Section 412(i) insurance contracts
- **(3)** ☒ Trust
- **(4)** ☐ General assets of the sponsor

**10** Schedules attached (Check all applicable boxes and, where indicated, enter the number attached. See instructions.)

**a** Pension Benefit Schedules
- **(1)** ☒ R    (Retirement Plan Information)
- **(2)** ☒ 1 T    (Qualified Pension Plan Coverage Information)

   If a Schedule T is not attached because the plan is relying on coverage testing information for a prior year, enter the year

- **(3)** ☒ B    (Actuarial Information)
- **(4)** ☐ E    (ESOP Annual Information)
- **(5)** ☒ SSA    (Separated Vested participant Information)

**b** Financial Schedules
- **(1)** ☒ H    (Financial Information)
- **(2)** ☐ I    (Financial Information – Small Plan)
- **(3)** ☒ 2 A    (Insurance Information)
- **(4)** ☒ C    (Service Provider Information)
- **(5)** ☒ D    (DFE/Participating Plan Information)
- **(6)** ☐ G    (Financial Transaction Schedules)
- **(7)** ☒ 1 P    (Trust Fiduciary Information)

**Back to Top**

R E T I R E M E N T

## EXHIBIT
**D**

Monthly pension payments are determined by the value of your account balance, interest rates and life expectancy assumptions.

## Payment Options

You can elect an optional payment method instead of the automatic form by notifying your local Human Resources representative prior to your retirement date. If you are married and elect an option that does not provide continuing pension payments to your spouse after your death, the law requires that your spouse provide written consent that is notarized or witnessed by a Plan representative. Written consent must be provided to your local Human Resources representative no earlier than 90 days before payment from the Plan and no later than the benefit commencement date.

*Lump-sum Option* — An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA balance. Keep in mind, if you are married, your spouse must consent in writing to this form of payment.

*Joint Annuitant Option* — Both married and unmarried employees can have their benefits paid according to a joint annuitant option. This option is similar to the qualified joint and survivor annuity for married employees, except that you can choose the percentage (for example, 25%) of your benefit you want to continue to your spouse or other beneficiary after your death. It is important to note that, if you are married and want to name someone other than your spouse as joint annuitant, you must have your spouse's written consent.

Remember, this written consent must be notarized or witnessed by a Plan represe

The following rules apply to electing the annuitant option:

- If you or your beneficiary die before retire, the option is canceled.
- If this option would provide a monthly benefit of less than $50, the Company consent to your election.
- You must be scheduled to receive at l 50% of your earned benefit if you sel option.
- Your beneficiary cannot receive more 100% of your normal retirement benefi

If you select this option, you must furnish of your joint annuitant's age. The amount which your pension is reduced is determine by the percentage of your benefit you con to your joint annuitant, and the difference age between you and your joint annuitant.

*Life Annuity Option* — An option availabl both married and unmarried employees is a annuity option. Under this benefit you wil receive monthly pension payments for life. After your death, all payments stop. Again, you are married, your spouse must consent writing to this form of payment.

In addition, other payment options are availa under this Plan. For more information about these options, contact your local Human Resources representative.

## Changing Your Election

In general, you have the right to change the method of payment you elect up until the time your benefit begins, although you may be

requir
To ch
Huma

## A Fir

If the
the C
paym

*To be
notifi
repre
you l*

## Payi

Excep
own
the P

*If you
be el
treat
treat
recei
Cons
if yo*

How
optic
Indiv
quali
payr
distr
you
finar
choi
the
subi
with

# RETIREMENT INCOME PLAN

In addition, you become fully vested in your Account at age 55 or if you die while in active service. If you are contributing to the Plan based on prior Plan provisions, you are always fully vested in your contributions (and related earnings.) Vesting service is defined on page 10. For purposes of vesting, keep in mind that vesting service is counted in *full years and full months*.

## WHEN YOU CAN RETIRE

Y ou can retire as early as the first day of the month that coincides with or follows your 55th birthday. Your Account continues to earn pay-based credits and interest credits until your actual retirement date. However, if you will attain the age of 70 1/2 on or after January 1, 1999, the Plan requires that you begin receiving your Plan benefit no later than the April 1st following the later of the calendar year in which you reach age 70 1/2 or the calendar year in which you retire.

## HOW YOUR BENEFIT IS PAID

W hen you retire, you can choose to receive your benefit in one of several ways. Regardless of which payment method you choose, your benefit is calculated so that it has an equivalent value.

### Automatic Form of Payment

When you retire, your benefit is automatically paid as follows, unless you choose otherwise:

- **If you are married** when you begin receiving payments, you will receive a **qualified joint and survivor annuity**. This means that you will receive monthly pension payments during your lifetime and, after your death, 50% of your benefit will be paid to your spouse for his or her lifetime. Your monthly benefit is reduced to reflect the fact that benefits are paid over two lifetimes.
- **If you are not married** when you begin receiving your benefit, you will receive **monthly pension payments for your lifetime**. After your death, all payments stop.

### Optional Forms of Payment

You can choose an optional form of payment if you wish. However, if you are married, you must have your spouse's consent to elect an option that does not continue payments to your spouse after your death. The law requires that your spouse provide written notarized consent or written consent witnessed by a Plan representative. Written consent must be provided to the Retirement Processing Center no earlier than 90 days before your payments start and no later than the date your benefit begins.

**Lump-Sum Option** — This option pays the total value of your PRA balance in a single cash payment. Keep in mind that if you are married, your spouse must consent in writing to your choosing this option.

If the total vested value of your PRA is $5,000 or less, the Company will automatically pay you the lump-sum amount.

11



EXHIBIT

E

Westlaw.

--- F.3d ----                                                                    Page 1
--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577
**(Cite as: --- F.3d ----)**

**H**

Drutis v. Rand McNally & Co.
C.A.6 (Ky.),2007.

United States Court of Appeals,Sixth Circuit.
Larry DRUTIS; Harold E. Parker; Joe Tkacz; John
Wayne Simpson, Individually and on behalf of all per-
sons similarly situated, Plaintiffs-Appellants,
v.
RAND McNALLY & CO.; Quebecor World (USA),
Inc., Defendants-Appellees.
**No. 06-6380.**

Submitted: July 20, 2007.
Decided and Filed: Aug. 27, 2007.

**Background:** Retired and current employees brought
action against employer to challenge decision to change
pension plan from defined benefit plan to cash balance
plan as violation of anti-age-discrimination provision of
Employee Retirement Income Security Act (ERISA).
The United States District Court for the Eastern District
of Kentucky, Karl S. Forester, J., 459 F.Supp.2d 580,
entered summary judgment for employer. Employees
appealed.

**Holdings:** The Court of Appeals, Rogers, Circuit Judge,
held that:

(1) two participants lacked standing;

(2) even if anti-age-discrimination provision did not ap-
ply to persons who were under 65, such fact did not de-
prive the other two participants of standing; and

(3) cash balance plan did not violate anti-
age-discrimination provision.

Affirmed.

**[1] Labor and Employment 231H** 0

231H Labor and Employment
ERISA plan participants lacked standing to assert that
acquired corporation's cash balance pension plan, to
which their benefits were transferred upon acquisition,

violated ERISA's anti-age-discrimination provision,
where participants were "grandfathered in" such that
they could have their benefits determined under ac-
quired corporation's plan, and, although participants ar-
gued that they should have been able to choose a ver-
sion of acquiring corporation's plan that would not have
the allegedly discriminatory aspects, such argument was
entirely speculative. 29 U.S.C.A. § 1054(b)(1)(H)(i).

**[2] Labor and Employment 231H** 0

231H Labor and Employment
Even if ERISA's anti-age-discrimination provision did
not apply to persons who were under 65, such fact did
not deprive participants under age 65 from having
standing to challenge cash balance pension plan under
such provision, inasmuch as scope of provision was
question of statutory interpretation, not constitutional
standing. U.S.C.A. Const. Art. 3; 29 U.S.C.A. §
1054(b)(1)(H)(i).

**[3] Federal Civil Procedure 170A** 0

170A Federal Civil Procedure
Article 3 standing ultimately turns on whether a
plaintiff gets something other than moral satisfaction if
the plaintiff wins; it does not depend on whether there is
a disputed statutory impediment to winning, which is an
issue that goes to the merits. U.S.C.A. Const. Art. 3.

**[4] Labor and Employment 231H** 0

231H Labor and Employment
Cash balance pension plans do not discriminate in viola-
tion of ERISA's anti-age-discrimination provision. 29
U.S.C.A. § 1054(b)(1)(H)(i).

**[5] Labor and Employment 231H** 0

231H Labor and Employment
Employer's cash balance pension plan did not violate
ERISA's provision prohibiting plans from reducing "the
rate of an employee's benefit accrual . . . because of the
attainment of any age," inasmuch as "benefit accrual"
referred to employer's contribution to plan, and under
employer's plan, as with cash benefit plans generally,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



--- F.3d ----                                                                  Page 2
--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577
**(Cite as: --- F.3d ----)**

neither contribution rate nor interest rate changed with age. 29 U.S.C.A. § 1054(b)(1)(H)(i).

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington. No. 04-00269-Karl S. Forester, District Judge.

**ON BRIEF:** Charles W. Arnold, Charles W. Arnold, PLC, Lexington, Kentucky, for Appellants. Carol Connor Cohen, Gretchen Ann Dixon, Arent Fox LLP, Washington, DC, for Appellees. Mary Ellen Signorille, American Association of Retired Persons, Washington, DC, Kent A. Mason, Davis & Harman, Washington, DC, for Amici Curiae.

Before MARTIN and ROGERS, Circuit Judges; HOOD, District Judge.[FN*]

ROGERS, Circuit Judge.

**\*1** The question in this case is whether so-called "cash balance" pension plans violate 29 U.S.C. § 1054(b)(1)(H)(i), an anti-age-discrimination provision of the Employee Retirement Income Security Act ("ERISA"). "Cash balance" plans are defined benefit plans that are structured like defined contribution plans. The district court in this case held, among other things, that the cash balance plan adopted by defendants did not violate the anti-age discrimination statute in question. We agree, and therefore affirm.

The facts of this case are not disputed and the following summary is taken largely from the fact section of the district court opinion. *See Drutis v. Quebecor World (USA), Inc.,* 459 F.Supp.2d 580 (E.D.Ky.2006). The four plaintiffs-Larry Drutis, Harold Parker, John Wayne Simpson, and Joseph Tkacz-were all previously employed by Rand McNally Book & Media Services ("Rand McNally Book") and participated in the Rand McNally & Company Pension Plan ("Rand McNally Plan"), a traditional defined benefit plan. On January 17, 1997, World Color Press, Inc. ("World Color") purchased Rand McNally Book, and the plaintiffs became employees of World Color. The employees' pension benefits were transferred from the Rand McNally Plan, which was merged into the World Color Press Cash Balance Plan ("World Color Plan"). Each former Rand McNally Plan participant who participated in the World

Color Plan was credited with a "transition balance" in the new plan that was equal to the amount that the participant would have been paid had the participant taken a lump sum distribution of his Rand McNally Plan benefit on January 16, 1997. This sum was the full actuarial value of the employee's existing accrued benefit. Each month the transition account was credited with interest at the rate payable on one-year U.S. Treasury bills as of December 31 of the preceding year. Additionally, each World Color Plan participant had a "future service account" in which he received monthly credits equal to 4 percent of his monthly compensation plus interest at the one-year Treasury bill rate, with a minimum of 3 percent interest.

The World Color Plan had a "grandfather" provision applicable to those employees who: (1) had an accrued benefit under the Rand McNally Plan on January 16, 1997; (2) were 55 years old on or before that date; and (3) had at least five years of vesting service as of that date. "Grandfathered" participants could choose as a retirement benefit either (a) the benefit they would have received under the Rand McNally Plan had they continued to participate in that plan until their retirement date, or (b) their cash balance under the World Color Plan. Plaintiffs Drutis and Tkacz retired from World Color on December 31, 1998, and took the distribution of their benefits from the World Color Plan at that time. They both met all of the "grandfather" requirements, and they both chose to receive their benefits calculated as if they had continued in the Rand McNally Plan until their retirement dates. They both were also younger than 65 when they retired.

**\*2** In 1999, a subsidiary of Quebecor Printing, Inc. merged with World Color, creating the defendant in this case, Quebecor World (USA), Inc. ("Quebecor").[FN1] In December 2000, the World Color Plan was merged into the Quebecor World Pension Plan, which is not a cash balance plan. After that date, the World Color Plan, which is the subject of this suit, ceased to exist. Accordingly, this case concerns only the World Color Plan in effect from January 17, 1997, through December 31, 2000.

Plaintiff Parker became disabled on August 5, 1996, and retired on disability effective January 31, 1997. He is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                          Page 3
--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577
**(Cite as: --- F.3d ----)**

younger than 65, and has not yet elected to receive his retirement benefits. Plaintiff Simpson is currently an employee of Quebecor and has not received any distribution of his retirement benefits. He is also younger than 65.

The plaintiff-employees and Quebecor filed cross motions for summary judgment in district court. The district court denied the plaintiffs' motion and granted Quebecor summary judgment. The district court held that two of the plaintiffs, Drutis and Tkacz, lacked constitutional standing because they were "grandfathered" into the Rand McNally Plan and therefore suffered no injury as a result of the provisions of the newer plan. *Drutis, 459 F.Supp.2d at 585.* The district court also held that none of the plaintiffs could assert a claim of age discrimination under ERISA because each is under the age of 65. *Id. at 586.* In the alternative, the district court held that the World Color cash balance plan did not violate ERISA's anti-age-discrimination provision. *Id. at 591.* Finally, the district court held that the relief sought by the plaintiffs was unavailable under ERISA. *Id. at 592.*

[1] The district court correctly held that two of the four plaintiffs lacked standing to bring this action because they suffered no injury as a result of the challenged plan. The World Color Plan included a "grandfathering" provision that allowed some employees to have their pension benefits determined under the previous Rand McNally Plan. Plaintiffs Drutis and Tkacz were covered by the grandfathering provision and elected to receive the same retirement benefit they would have received under the Rand McNally Plan. As a result of this election, the benefit received by each of these plaintiffs was unaffected by the conversion of the Rand McNally Plan to the World Color Plan. Because their benefits were not determined by the challenged plan, they suffered no injury as a result of the provisions of that plan.

On appeal, plaintiffs argue that, even though Drutis and Tkacz were not actually subject to the World Color Plan, they still suffered a cognizable injury because "each of them has been damaged by the loss of the difference between what they received [under the Rand McNally Plan] and what they would have received if the

[World Color] plan were re-formed to meet the requirements of ERISA." Appellants' Br. at 27. Thus, the plaintiffs' argument is that, instead of choosing between the Rand McNally Plan and the allegedly discriminatory World Color Plan, they should have been able to choose a third option, namely a version of the World Color Plan absent the allegedly age discriminatory aspects.

*3 The benefit to Drutis and Tkacz of this theoretical third plan, however, is entirely speculative. An alternative World Color plan without the allegedly age discriminatory aspects could offer a lower benefit to all employees. As the Seventh Circuit explained in *Cooper v. IBM Personal Pension Plan, 457 F.3d 636, 642 (7th Cir .2006),* "employers can achieve equality more cheaply by reducing the highest benefits than by increasing the lower ones." Thus, any harm to Drutis and Tkacz is hypothetical at best, and it is well established that part of the "irreducible constitutional minimum of standing" is an injury in fact that is "an invasion of a legally protected interest which is ... actual or imminent, not 'conjectural' or 'hypothetical.' " *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).*

[2][3] The district court also held that plaintiffs Parker and Simpson did not have "standing to assert a claim of age discrimination" because they were both under age 65, and the district court determined that "ERISA's anti-age discrimination provision does not apply to persons who are not already over the normal retirement age of 65 and continuing to work." *Drutis, 459 F.Supp.2d at 585.*[FN2] Regardless of whether the district court's determination as to the scope of § 204(b)(1)(H)(i) is or is not correct, this is not a constitutional standing issue, but rather a question of statutory interpretation. Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) *if the plaintiff wins.* It does not depend on whether or not there is a disputed statutory impediment to winning. Such an issue goes to the merits. In light of our resolution below of the legality of cash balance plans, we need not decide whether the protection of § 204(b)(1)(H)(i) is limited to persons over 65. We assume, without deciding, that ERISA § 204(b)(1)(H)(i) do apply to plaintiffs Parker and Simpson despite the fact that both are under the age of 65, and proceed to the question of whether the World

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                          Page 4
--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577
**(Cite as: --- F.3d ----)**

Color Plan discriminated against Parker and Simpson.

[4] Contrary to the plaintiffs' assertions, cash balance plans do not discriminate based on age in violation of ERISA § 204(b)(1)(H)(i). That statute does not allow a plan provision that reduces "the rate of an employee's benefit accrual ... because of the attainment of any age."29 U.S.C. § 1054(b)(1)(H)(i). The plaintiffs' argument is that "cash balance plans *per se* violate the provisions of ERISA."Appellants' Br. at 7. Accordingly, plaintiffs' claim turns on the nature of cash balance plans in general, and not upon any particular or unique provision of the World Color Plan. The contention that cash balance plans are necessarily age discriminatory under the terms of § 204(b)(1)(H)(i) fails, however, because that provision of ERISA addresses only the employer's contributions to the benefit plan, and any disparity in the benefits that employees of different ages receive from cash balance plans is merely the result of the time value of money.

*4 Resolving the issue in this case requires an understanding of the differences between the two general types of pension plans. As the Third Circuit recently explained,
There are two general types of pension plans: defined contribution plans and defined benefit plans. A defined contribution plan is a pension plan in which an individual account is established for an employee to which his employer (and sometimes the employee too) contributes a specific amount. The employee is entitled "to whatever assets are dedicated to his individual account."The employee bears the investment risks and the employer does not guarantee a retirement benefit to the employee.
A defined benefit plan, on the other hand, is any plan that is not a defined contribution plan. 29 U.S.C. § 1002(35). It is generally a pension plan where the employee is promised a retirement benefit based on a formula the plan sets forth. The plan consists of a "general pool of assets rather than individual dedicated accounts."Participants in a defined benefit plan have no claim to any particular asset that composes a part of the plan's general asset pool, but, instead, receive "an annuity based on the retiree's earnings history, usually the most recent or highest paid years, and the number of

completed years of service to the company."Under a defined benefit plan the entity funding the plan, i.e., the employer, bears the investment risks.

*Register v. PNC Fin. Servs. Group, Inc.,* 477 F.3d 56, 61-62 (3d Cir.2007) (internal citations omitted).

A cash balance plan is, by statutory definition, a defined benefit plan. However, cash benefit plans are structured to function like a defined contribution plan.
A cash balance plan is classified as a defined benefit plan because cash balance plans ... are required to offer payment of an employee's benefit in the form of a series of payments for life.... Nevertheless, a cash balance plan differs from a traditional defined benefit plan in that traditional defined benefit plans define an employee's benefit as a series of monthly payments for life to begin at retirement, but cash balance plans define the benefit in terms of a stated account balance, albeit a "hypothetical" account. Thus, cash balance plans are like defined contribution plans in that both define the employee's benefit in terms of a stated balance.

*Id.* at 62 (internal citations and quotation marks omitted).

A feature of most cash balance plans is that the hypothetical account, which tells the employee how much his retirement benefit is worth, has two parts: "(1) 'pay credits' or 'earnings credits,' which are hypothetical contributions an employer makes usually expressed as a percentage of wages or salary and may vary with employee tenure, and (2) 'interest credits,' which are hypothetical earnings ... on the account balance."*Id.*"Employers design cash balance plans so that when a participant receives a pay or earnings credit for a year of service, he also receives the right to future interest credits projected out until normal retirement age ."*Id.* at 63.Because younger employees necessarily have a longer period of time before they reach age 65, the projected interest credits are necessarily larger because the projection includes a longer period of compound interest.

*5 As the Seventh Circuit, the first court of appeals to address this issue, explained in *Cooper v. IBM Personal Pension Plan,* it is the difference in the value of the projected interest credits attributable to each employee that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

can lead to the mistaken belief that cash balance plans discriminate based on age.

Much of the plaintiffs' argument rests on the idea that the account of a 25-year-old worker does not get 5% plus periodic interest, but instead is immediately credited with 5% of salary plus 40 years' interest. That makes the contributions look discriminatory: the 25-year-old worker's account receives 40 times as much interest credit in the year the contributions accrue as a 65-year-old worker's account.

*Cooper,* 457 F.3d at 640.

The court in *Cooper* went on to explain both the source of this apparently discriminatory feature of cash balance plans and why "this perspective misunderstands both the statute and the time value of money."*Id.*
Nothing in either ERISA or the [cash balance] plan requires 40 years of interest to be credited to the account as soon as the young worker earns wages. What plaintiffs have in mind is the rule that, when any beneficiary (young or old) elects to take a cash distribution or roll the account into an annuity before reaching age 65, the plan must distribute a lump sum calculated to be the "actuarial equivalent" of the annuity that would be available at normal retirement age. ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3). To derive the "actuarial equivalent" of a pension at age 65, a plan must (a) add all interest that would accrue through age 65, then (b) discount the resulting sum to its present value. *Berger v. Xerox Corp. Retirement Income Guarantee Plan,* 338 F.3d 755, 762-63 (7th Cir.2003). Plaintiffs characterize step (a) as extra interest credits for the young, but they ignore step (b). The discount rate may be close to (if it does not exceed) the rate at which interest is imputed, so the amount paid out in cash may be close to if not below the nominal balance in the account.

*Id.*

Essentially the plaintiffs in this case, as in *Cooper,* argue that the cash balance plan discriminated against older workers because younger workers, who received the same 4% "pay credit" and the same interest contribution at the one-year Treasury bill rate, would be entitled to a greater annuity upon the normal retirement age of 65. The plaintiffs argue that this, in effect, is a

relative reduction in older employees' rates of "benefit accrual" in violation of § 204(b)(1)(H)(i).[FN3] To reach this result, the plaintiffs define the term "benefit" in the phrase "rate of benefit accrual" as the overall benefit that the employee is entitled to receive upon retirement at age 65, which ERISA calls the "accrued benefit." 29 U.S.C. § 1054(c)(3) (29 U.S.C. § 1002(23)(A)). When the "rate of benefit accrual" is defined in this way, "because of [the] conversion to an age 65 annuity, younger workers are credited with more years to accumulate interest on their hypothetical accounts. Therefore, as a matter of plain arithmetic, a greater value is added to a younger employee's account than to an older employee's account."*In re Citigroup Pension Plan ERISA Litigation,* 470 F.Supp.2d 323, 344 (S.D.N.Y.2006).

**\*6** While some district courts have adopted the position argued by the plaintiffs, *see Richards v. FleetBoston Financial Corp.,* 427 F.Supp.2d 150, 162-68 (D.Conn.2006); *In Re J.P. Morgan Chase Cash Balance Litigation,* 460 F.Supp.2d 479, 485-89 (S.D.N.Y.2006); *In re Citigroup,* 470 F.Supp.2d 323 (S.D.N.Y.2006), the plaintiffs' position requires courts to equate "the rate of benefit accrual" with the term "accrued benefit," which is defined elsewhere in the statute. *See*29 U.S.C. § 1002(23) (defining "accrued benefit" in defined benefit plans in terms of an "annual benefit commencing at normal retirement age"). However, "Congress used different phrases in 29 U.S.C. § 1002(23) [defining "accrued benefit"] and § 1054(b)(1)(H) [the anti-age-discrimination provision], rather than the same phrase, and thus 'benefit accrual' and 'accrued benefit' should be understood to mean different things."*Finley v. Dun & Bradstreet Corp.,* 471 F.Supp.2d 485, 491(D.N.J.2007).

The better view, which has been adopted by both courts of appeals to have considered this issue, is that the "rate of benefit accrual" refers to the employer's contribution to a plan, and therefore any difference in output as a result of time and compound interest does not violate § 204(b)(1)(H)(i).*See Cooper,* 457 F.3d at 638-39;*Register,* 477 F.3d at 61-70. When read in context, and in comparison to the parallel provision prohibiting age discrimination in defined contribution plans, the Seventh Circuit is correct that, "[t]he phrase 'benefit accrual'

--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577
**(Cite as: --- F.3d ----)**

reads most naturally as a reference to what the employer puts in (either in absolute terms or as a rate of change), while the defined phrase 'accrued benefit' refers to outputs after compounding." *Cooper, 457 F.3d at 639.* As the opinion in *Cooper* explains:

The language on which plaintiffs rely was added to ERISA in 1986; Congress also enacted a parallel provision covering defined-contribution plans. Pub.L. 99-509, 100 Stat. 1874, 1975, 1976 (1986). We set these out alongside to facilitate comparison:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577
**(Cite as: --- F.3d ----)**

| Defined-benefit plans: ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i) | Defined-contribution plans: ERISA § 204(b)(2)(A), 29 U.S.C. § 1054(b)(2)(A) |
|---|---|
| [A] defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age. | A defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age. |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                    Page 8
--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577
**(Cite as: --- F.3d ----)**

These appear to say the same thing, except that the rule for defined-benefit plans tells us what is not allowed, while the rule for defined-contribution plans tells us what works. Either way, the employer can't stop making allocations (or accruals) to the plan or change their rate on account of age. [A cash balance plan] does neither of these things and therefore, one would suppose, complies with the statute. If this were a real, rather than a phantom, defined-contribution plan, that much would be taken for granted. Yet if the 5%- plus-interest formula is non-discriminatory when used in a defined-contribution plan, why should it become unlawful because the account balances are book entries rather than cash?

**\*7** Plaintiffs [argue] that the two subsections are radically different. That difference is attributable to the phrase "benefit accrual," which appears in the subsection for defined-benefit plans but not the one for defined-contribution plans. Neither ERISA nor any regulation defines this phrase.... [A different phrase, "accrued benefit"] is defined in § 3(23)(A), 29 U.S.C. § 1002(23)(A). An "accrued benefit" is an amount "expressed in the form of an annual benefit commencing at normal retirement age."Plug this back into § 204(b)(1)(H)(i), and the rule against discrimination then refers not to what [the employer] puts into the plan, but what the employee takes out on retirement.

....

This approach treats the time value of money as age discrimination. Yet the statute does not require that equation. Interest is not treated as age discrimination for a defined-contribution plan, and the fact that these subsections are so close in both function and expression implies that it should not be treated as discriminatory for a defined-benefit plan either.... As long as we think of "benefit accrual" as referring to what the employer imputes to the account-an understanding reinforced by the use of the word "allocation" in the subsection addressing defined-contribution plans-there is no statutory difference between the treatment of economically equivalent defined-benefit and defined-contribution plans. For defined-benefit plans, where the account is an accounting entry rather than cash, "benefit accrual" matches the money "allocated" to a defined-contribution plan.

*Cooper,* 457 F.3d at 638-39.

[5] We agree that the term "benefit accrual" as used in § 1054(b)(1)(H)(i) refers to the employer's contribution to the defined benefit plan. Accordingly, because under the World Color Plan, as with cash benefit plans generally, "[n]either the contribution rate nor the interest rate change [d] with age," plaintiffs have failed to show that the World Color Plan was age discriminatory. *Id.* at 640.Summary judgment was, therefore, proper in this case, and we need not reach the district court's holding that no form of relief sought by the plaintiff-employees is available under § 502(a)(3) of ERISA.

For the foregoing reasons, the judgment of the district court is affirmed.

> FN* The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

> FN1. Plaintiffs voluntarily dismissed their claims against Rand McNally after discovery, leaving Quebecor World as the sole defendant in this action.

> FN2. As the district court noted, some courts looking at the legislative history of ERISA § 204(b)(1)(H)(i) have determined that the statute was intended to protect only workers who had reached the normal age of retirement, i.e., 65, and have therefore held that the statute is inapplicable to younger employees. *Drutis,* 459 F.Supp.2d at 585 (citing *Laurent v. Price WaterhouseCoopers,* 448 F.Supp.2d 537, 552 (S.D.N.Y.2006) and *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents,* 441 F.Supp.2d 516 (S.D.N.Y.2006)). Other courts, however, have found this limited construction unsupported by the language of the statute, which states that discrimination in the rate of benefit accrual because of the attainment of "any age" is prohibited. *See Sunder v. U.S. Bank Pension Plan,* 2007 WL 541595, \*5

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                          Page 9

--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577

**(Cite as: --- F.3d ----)**

(D.Mo.2007); *In re J.P. Morgan Chase Cash Balance Litigation,* 460 F.Supp.2d 479, 484-85 (S.D.N.Y.2006); *see also In re Citigroup Pension Plan ERISA Litigation,* 470 F.Supp.2d 323, 340-41 (S.D.N.Y.2006); *Richards v. FleetBoston Financial Corp.,* 427 F.Supp.2d 150, 159 (D.Conn.2006).

FN3. The provision states as follows:
Notwithstanding the preceding subparagraphs, a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or *the rate of an employee's benefit accrual* is reduced, because of the attainment of any age.
ERISA § 204(b)(1)(H)(i) (29 U.S.C.A. § 1054(b)(1)(H)(i)) (emphasis added).

C.A.6 (Ky.),2007.
Drutis v. Rand McNally & Co.
--- F.3d ----, 2007 WL 2409762 (C.A.6 (Ky.)), 41 Employee Benefits Cas. 1577

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

26 F.Supp.2d 993                                                      Page 1
26 F.Supp.2d 993
(Cite as: 26 F.Supp.2d 993)

▷

Michigan Bell Telephone Co. v. Strand
W.D.Mich.,1998.

United States District Court, W.D. Michigan,
Southern Division.
MICHIGAN BELL TELEPHONE COMPANY d/
b/a Ameritech Michigan, Plaintiff,
v.
John G. STRAND; John C. Shea; David A. Svanda
all as Commissioners of the Michigan Public Ser-
vice Commission (in their official capacities and
not as individuals); AT & T Communications of
Michigan, Inc.; MCI Telecommunications Corpora-
tion; and MCIMetro Access Transmission Services,
Inc., Defendants.
**No. 5:98-CV-20.**

Nov. 13, 1998.

Incumbent telephone local exchange carrier (LEC)
brought action against competing LECs that ob-
tained interconnection agreements and Commis-
sioners of Michigan Public Service Commission
(MPSC), claiming that MPSC order which determ-
ined rates for incumbent LEC to provide unbundled
network elements including "common transport"
violated Telecommunications Act of 1996 and state
law. On motions to dismiss, the District Court, En-
slen, Chief Judge, held that: (1) district court lacked
jurisdiction to review incumbent LEC's challenge
based on alleged misunderstanding of words
"unbundled network elements" in Act, and (2) re-
quirement of "common transport" in MPSC order
was permissible under Act as a consistent state reg-
ulation.

Motions granted.
West Headnotes
**[1] Federal Civil Procedure 170A ☞1832**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination

170Ak1832 k. Matters Considered
in General. Most Cited Cases
In deciding motion to dismiss for failure to state a
claim, district court may take judicial notice of
facts which are indisputable because they are cap-
able of ready determination from resources whose
accuracy cannot be reasonably questioned.
Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Evidence 157 ☞43(3)**

157 Evidence
    157I Judicial Notice
        157k43 Judicial Proceedings and Records
            157k43(3) k. Records and Decisions in
Other Actions or Proceedings. Most Cited Cases

**Evidence 157 ☞48**

157 Evidence
    157I Judicial Notice
        157k48 k. Official Proceedings and Acts.
Most Cited Cases
Among those matters which may be judicially no-
ticed on motion to dismiss for failure to state a
claim are outcomes of other court proceedings and
administrative agency proceedings which are regu-
larly and officially recorded. Fed.Rules
Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Courts 170B ☞29.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk29 Objections to Jurisdiction, De-
termination and Waiver
                170Bk29.1 k. In General. Most Cited
Cases
Facial attack on subject matter jurisdiction requires
analysis similar to that employed under rule on dis-
missal for failure to state a claim, as to whether
pleadings state claims sufficient for relief.
Fed.Rules Civ.Proc.Rule 12(b)(1, 6), 28 U.S.C.A.

**[4] Federal Courts 170B ☞30**

EXHIBIT
G

26 F.Supp.2d 993                                                                                          Page 2
26 F.Supp.2d 993
(Cite as: 26 F.Supp.2d 993)

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk29 Objections to Jurisdiction, Determination and Waiver
         170Bk30 k. Power and Duty of Court. Most Cited Cases

**Federal Courts 170B ☞34**

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk34 Objections to Jurisdiction, Determination and Waiver
         170Bk34 k. Presumptions and Burden of Proof. Most Cited Cases
When reviewing facial attack on subject matter jurisdiction, district court must assume that all well-pleaded allegations of complaint are true; notwithstanding, court need not accept legal conclusions drawn in complaint. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ☞1829**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
         170Ak1827 Determination
         170Ak1829 k. Construction of Pleadings. Most Cited Cases

**Federal Civil Procedure 170A ☞1835**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
         170Ak1827 Determination
         170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
In considering motion to dismiss for failure to state a claim, district court accepts well-pleaded allegations of complaint as true and construes complaint in light most favorable to plaintiff. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ☞1773**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)3 Pleading, Defects In, in General
         170Ak1773 k. Clear or Certain Nature of Insufficiency. Most Cited Cases
Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ☞1835**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
         170Ak1827 Determination
         170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
In considering motion to dismiss for failure to state a claim, district court need not accept legal conclusions. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[8] Federal Courts 170B ☞191**

170B Federal Courts
   170BIII Federal Question Jurisdiction
      170BIII(C) Cases Arising Under Laws of the United States
         170Bk191 k. In General; What Constitute "Laws of the United States". Most Cited Cases
To establish cause of action in district court under federal question jurisdiction statute, plaintiffs must show that action arises under federal law and that jurisdiction under statute is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere. 28 U.S.C.A. § 1331.

**[9] Telecommunications 372 ☞901(1)**

372 Telecommunications
   372III Telephones

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 F.Supp.2d 993                                    Page 3
26 F.Supp.2d 993
(Cite as: 26 F.Supp.2d 993)

372III(F) Telephone Service
    372k899 Judicial Review or Intervention
      372k901 Jurisdiction
        372k901(1) k. In General. Most
Cited Cases
    (Formerly 372k263)
District court did not have subject matter jurisdiction to review incumbent telephone local exchange carrier's (LEC) claims that common transport/ shared transport requirements of interconnection agreements and Michigan Public Service Commission's (MPSC) order which determined rates for incumbent LEC to provide unbundled network elements including "common transport" violated Telecommunications Act of 1996 by misunderstanding words "unbundled network elements" in Act; claims raised same issues and sought same relief in substance as a challenge to Federal Communications Commission (FCC) regulations as in violation of same section of Act, which challenge was denied by Court of Appeals in prior case. 28 U.S.C.A. § 2342(a); Telecommunications Act of 1996, 47 U.S.C.A. §§ 251(c), 252, 402(a); Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[10] Telecommunications 372 ⟷866**

372 Telecommunications
    372III Telephones
      372III(F) Telephone Service
        372k854 Competition, Agreements and
Connections Between Companies
          372k866 k. Pricing, Rates and Access
Charges. Most Cited Cases
    (Formerly 372k267)
Requirement of "common transport" in Michigan Public Service Commission's (MPSC) order which determined rates for incumbent telephone local exchange carrier (LEC) to provide unbundled network elements including "common transport" was permissible under Telecommunications Act of 1996 as a consistent state regulation; requirement was done under state law precisely to foster and encourage state competition as to telephone services and did not interfere with requirements or implementation of Act. Telecommunications Act of 1996, 47 U.S.C.A. § 251(d)(3); 47 C.F.R. § 51.319(d)(1).

***995** Edward R. Becker,Dickinson Wright P.L.L.C., Lansing, MI, for plaintiff.
David M. Gadaleto, Asst. Atty. General, Don L. Keskey, Asst. Atty. General, David A. Voges, Asst. Atty. Gen., Frank J. Kelley, Attorney General, Public Service Division, Lansing, MI, for defendants John G. Strand, John C. Shea, David A. Svanda.
Arthur J. LeVasseur, Fischer, Franklin & Ford, Detroit, MI, Joan M. Marsh, AT & T Communications of Michigan, Inc., Lansing, MI, for defendant AT & T Communications of Michigan, Inc.
Albert Ernst, Dykema Gossett, Lansing, MI, for defendant MCI Telecommunications Corporation, defendant.
Lori M. Silsbury, Albert Ernst, Dykema Gossett, Lansing, MI, for defendant MCImetro Access Transmission Services, Inc.

ENSLEN, Chief Judge.
This matter is before the Court on the motion of Defendants AT & T Communications of Michigan, Inc. ("AT & T") and MCI Telecommunications Corporation and MCImetro Access Transmission Services, Inc. ("MCI") to dismiss the Third Amended Complaint. The Court also considers the earlier motions of those parties and Commissioners John Strand, John Shea and David Svanda of the Michigan Public Service Commission ("MPSC") to dismiss earlier versions of the Complaint. For the reasons which follow, the motions will be granted and all claims raised in the Third Amended Complaint shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 28 U.S.C. § 1367(c)(3).

### Procedural Background

This lawsuit was filed on February 12, 1998. The filing of the suit soon prompted motions by the Defendants to dismiss the suit due to lack of jurisdiction and due to failure to state cognizable claims. Plaintiff's Amended Complaint was filed on February 27, 1998. Plaintiff moved on May 18, 1998 for permission to file a Second Amended Complaint. Before this motion could be acted upon, Plaintiff moved to file a Third Amended Complaint on August 31, 1998 predicated on the Eighth Circuit

Court of Appeals decision in *Southwestern Bell Telephone Co. v. Federal Communications Commission,* 153 F.3d 597 (8th Cir. Aug.10, 1998). The Court permitted the Third Amended Complaint by Order of September 23, 1998. Subsequent to the filing of Third Amended Complaint, AT & T and MCI have requested dismissal of the Complaint in its entirety based on their earlier filing motions, their Motion to Dismiss Third Amended Complaint and the Eighth Circuit Court of Appeals' decision.

### Allegations of Third Amended Complaint

Plaintiff Michigan Bell Telephone Company d/b/a Ameritech Michigan ("Ameritech") has filed its Third Amended Complaint which makes factual allegations and requests relief in six separate counts. The Third Amended Complaint challenges under federal and state law the MPSC's Order on Rehearing of January 28, 1998. The Order, which is attached to the Third Amended Complaint, determines in pertinent parts the rates for Ameritech to provide unbundled network elements including "common transport." "Common transport" is defined by the Order as synonymous with "shared transport" as defined in the Federal Communications Commission's ("FCC") Third Order on Reconsideration. (Order at 15 n. 5. and 21.)

Plaintiff's Third Amended Complaint cites the federal Telecommunications Act of 1996, 47 U.S.C. § 151*et seq.* Plaintiff alleges that pursuant to the terms of the Telecommunications Act, it entered into negotiations for separate interconnection agreements with competing Local Exchange Carriers (hereafter "LECs"), including AT & T and MCI, during 1996 and 1997. (Complaint at ¶ 17.) Agreements were reached with AT & T and MCI which were then approved by the Michigan Public Service Commission on April 4, 1997 and July 31, 1997, respectively. (Complaint*996 at ¶ 17.) These agreements contained provisions permitting the LECs to purchase unbundled network elements from Ameritech including shared transport facilities. (Complaint at ¶ 18-19.)

Count I of the Third Amended Complaint alleges

that the MPSC Order violates the Telecommunications Act, as codified at 47 U.S.C. § 252, because it modifies, without the appropriate procedures of negotiation and arbitration under federal law, valid interconnection agreements. Count II of the Third Amended Complaint alleges that MPSC Order violates the Telecommunications Act, as codified at 47 U.S.C. § 251(c)(3), because tariffs for "common transport" require the provision of services other than "on an unbundled basis at any technically feasible point." Count III alleges that the Order violates state law including the Michigan Telecommunications Act, Mich.Comp.Laws § 484.2101*et seq.,* because it requires tariffs which are beyond the authority of the MPSC to authorize. Count IV alleges that Order violates the Telecommunications Act, as codified at 47 U.S.C. § 251 and 252, because the MPSC lacks authority under federal law to issue tariffs as to "common transport." Count V alleges that to the extent that state law permits or require the common transport tariffs state law is preempted by the Telecommunications Act, as codified at 47 U.S.C. § 251, which preempts any state law which would erode the distinction under the Telecommunications Act between "unbundled network elements" and resold services. Count VI argues in that alternative that if the previous interconnection agreements require the provision of "common transport," then those agreements are invalid as in violation of the Telecommunications Act, as codified at 47 U.S.C. § 251.

### Judicial Notice of Prior Court and Agency Decisions

[1][2] All parties in their briefs seek to characterize the import of prior court decisions and prior decisions of the MPSC. In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), it is proper for the Court to take judicial notice of facts which are indisputable because they are capable of ready determination from resources whose accuracy cannot be reasonably questioned. *Coupe v. Federal Express Corp.,* 121 F.3d 1022, 1026 (6th Cir.1997); *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 n. 3 (6th Cir.1992); Fed.R. Evidence 201. Among those matters which

may be judicially noticed are the outcomes of other court proceedings and administrative agency proceedings which are regularly and officially recorded. _Rodic v. Thistledown Racing Club, Inc._, 615 F.2d 736, 738 (6th Cir.1980); _Coupe_, 121 F.3d at 1026; _see also Catz v. Chalker_, 142 F.3d 279, 285 (6th Cir.1998). Because the decisions of the Federal Communications Commission, the Michigan Public Service Communications and the Eighth Circuit Court of Appeals are such proceedings, the Court now takes judicial notice of the follow facts:

Upon enactment of Telecommunications Act of 1996, the Federal Communications Commission was under a statutory mandate to establish regulations within six months of enactment. 47 U.S.C. § 251(d)(1). As such, the FCC promptly issued its First Report and Order, _Implementation of the Local Competition Provisions of the Telecommunications Act of 1996_, 11 FCCRcd. 15499 (August 8, 1996). This Order was directly appealed to the Eighth Circuit Court of Appeals pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1) (providing that proceedings to enjoin orders of the FCC be brought directly in the Circuit Courts of Appeals). The Eighth Circuit Court of Appeals issued its decision on the appeal on July 18, 1997 and further amended its decision on October 14, 1997. _Iowa Utilities Board v. Federal Communications Commission_, 120 F.3d 753 (8th Cir.1997). This decision was appealed to the United States Supreme Court, which granted certiorari on January 26, 1998. _AT & T v. Iowa Utilities Board_, 522 U.S. 1089, 118 S.Ct. 879, 139 L.Ed.2d 867 (U.S.1998). To date, the Supreme Court has not issued a decision on the appeal. The decision of the Eighth Circuit Court of Appeals held that several provisions of the First Order and Report exceeded the FCC's authority or were otherwise impermissible but that other provisions of its Order were permissible.

**\*997** Thereafter, the FCC issued its Third Order on Reconsideration and Further Notice of Proposed Rulemaking, _Implementation of the Local Competition Provisions of the Telecommunications Act of 1996_, 12 FCCRcd. 12,460 (August 18, 1997). The FCC summarized its Order as follows:

1. In this Order, we address two petitions for reconsideration and clarification of the Local Competition and Order regarding the obligation of incumbent local exchange carriers (LECs) to provide unbundled access to interoffice transport facilities on a shared basis. We intend to address petitions for reconsideration of other aspects of the Local Competition Order in the future.

2. In the Local Competition Order, which established rules to implement sections 251 and 252 of the Communications Act of 1934 (the Act), as amended by the Telecommunications Act of 1996, the Commission required incumbent LECs "to provide unbundled access to shared transmission facilities between end offices and the tandem switch." In this reconsideration order, we first explain that the Local Competition Order required incumbent LECs to provide requesting carriers with access to the same transport facilities, between the end office switch and the tandem switch, that incumbent LECs use to carry their own traffic. We further explain that, when a requesting carrier takes unbundled local switching, it gains access to the incumbent LEC's routing table, resident in the switch. Second, we reconsider the requirement that incumbent LECs only provide "shared transport" between the end office and tandem. For the reasons discussed below, we conclude that incumbent LECs should be required to provide requesting carriers with access to shared transport for all transmission facilities connecting incumbent LECs' switches-that is, between end office switches, between an end office switch and a tandem switch, and between tandem switches. Third, we conclude that incumbent LECs must permit requesting carriers that purchase unbundled shared transport and unbundled switching to use the same routing table and transport links that the incumbent LEC uses to route and carry its own traffic. By requiring incumbent LECs to provide requesting carriers with access to the incumbent LEC's routing table and to all its interoffice transmission facilities on an unbundled basis, requesting carriers can route calls in the same manner that an incumbent routes its own calls and thus take advantage of the incumbent LEC's economies of scale, scope, and density. Finally, incumbent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LECs must permit requesting carriers to use shared transport as an unbundled element to carry originating access traffic from, and terminating access traffic to, customers to whom the requesting carrier is also providing local exchange service.

3. We also issue a further notice of proposed rulemaking seeking comment on whether requesting carriers may use shared transport facilities in conjunction with unbundled switching, to originate or terminate interexchange traffic to customers to whom the requesting carrier does not provide local exchange service. Moreover, we seek comment on whether requesting carriers may use dedicated transport facilities to originate or terminate interexchange traffic to customers to whom the requesting carrier does not provide local exchange service.

*Third Order, 12 F.C.C.R. 12,460 (Aug. 18, 1997)* (footnotes omitted).

This Third Order was appealed to the Eighth Circuit Court of Appeals. The Eighth Circuit Court of Appeals decided the appeal on August 10, 1998. *Southwestern Bell Telephone Co. v. Federal Communications Commission, 153 F.3d 597 (8th Cir.1998).* In affirming the Third Order the Eighth Circuit observed as follows:

After the FCC issued its First Report & Order, various interested parties filed petitions for reconsideration and clarification with the FCC. Two of these petitions requested clarification regarding what incumbent LECs must do to make shared transmission facilities available to new entrants on an unbundled basis, pursuant to 47 U.S.C.A. § 251(c)(3). On August 18, 1997, the FCC issued its Third Order on Reconsideration, in which it addressed the **\*998** issues presented in these two petitions. The FCC acknowledged that, in its First Report & Order, it had only required incumbent LECs to "provide 'shared transport' between the end office and tandem." Third Order on Reconsideration ¶ 2. Upon reconsideration, the FCC eliminated this limitation, concluding that incumbent LECs "should be required to provide requesting carriers with access to shared transport for all transmission facilities connecting LECs' switches-that is, between end office switches, between an end office switch and a

tandem switch, and between tandem switches." *Id.* ¶ 2; *see also id.*¶¶ 25, 26; *id.* at App. A (47 C.F.R. § 51.319) (d)(1)(ii). Additionally, the FCC clarified that the function of "shared transport" constitutes a single network element, and directed incumbent LECs to make this function available on an unbundled basis. *See id.*¶¶ 25-26, 33, 42-43, 47.

The consolidated petitions seek review of the FCC's Third Order on Reconsideration, arguing that it is contrary to both the Telecommunications Act of 1996 and this court's decision in *Iowa Utilities Board[v. FCC, 120 F.3d 753 (8th Cir.1997)].* We affirm the FCC's order and deny the petitions for review.

*Southwestern Bell, 153 F.3d at 602.*

Prior to the filing of the Complaint in this matter, on March 7, 1997, AT & T filed an interconnection agreement, which called for the provision of "Shared Transport," by Ameritech. This agreement was approved by the MPSC on April 4, 1997. The approval of the agreement was then appealed to the United States District Court for the Eastern District of Michigan, the Honorable Barbara Hackett, on May 5, 1997.

Prior to the filing of the Complaint in this matter, on or about June 17, 1997, MCI filed an interconnection agreement, which called for the provision of "Shared Transport," by Ameritech. This agreement was approved by the MPSC on July 31, 1997. In August 1997, at least two court actions were filed challenging approval of the agreement. These matters were eventually assigned to the Honorable Nancy Edmunds of the United States District Court for the Eastern District of Michigan.

**Dismissal pursuant to *Fed.R. of Civ.Proc. 12(b)(1) and 12(b)(6)***

[3][4] Under the law of the Sixth Circuit Court of Appeals, an attack on the Court's subject matter premised on the face of the pleadings requires an analysis similar to that employed under Rule 12(b)(6) as to whether the pleadings state claims sufficient for relief. *Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990).* In

assessing jurisdiction, the Court must assume that all well-pleaded allegations of the complaint are true. _Gazette v. City of Pontiac,_ 41 F.3d 1061, 1064 (6th Cir.1994). Notwithstanding, the Court need not accept legal conclusions drawn in the complaint. _Lewis v. ACB Business Serv., Inc.,_ 135 F.3d 389, 405 (6th Cir.1998). This is especially important in this suit because each of the counts asserted stem from legal conclusions which the Plaintiff has drawn regarding the effect of prior MPSC' action and prior court decisions (matters as to which the Court has taken judicial notice).

[5][6][7] In considering a Rule 12(b)(6) motion, the Court accepts the well-pleaded allegations of the complaint as true and construes the complaint in the light most favorable to the plaintiff. A complaint should not be dismissed pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." _Conley v. Gibson,_ 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, as under Rule 12(b)(1), the Court need not accept legal conclusions and may draw its own legal conclusions and take judicial notice of readily established facts.

Ordinarily, courts will first assess jurisdiction before deciding Rule 12(b)(6) motions because of the necessity of jurisdiction. _See_ Fed.R.Civ.Proc. 12(h)(3). However, this rule of thumb makes little difference in the context in which Rule 12(b)(1) and Rule 12(b)(6) motions will both permanently preclude the relief sought. _Rogers v. Stratton Industries, Inc.,_ 798 F.2d 913, 917 (6th Cir.1986).

### *999 Subject Matter Jurisdiction

Fundamental to federal court authority is the principle that federal jurisdiction is limited by the restrictions embodied in Article III of the United States Constitution. _Bender v. Williamsport Area Sch. Dist.,_ 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Consequently, whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction over the subject matter, the Court is required to dismiss the action.

Fed.R.Civ.Proc. 12(h)(3). Furthermore, subject matter jurisdiction is presumed lacking until the pleader shows otherwise. Fed.R.Civ.Proc. 8(a)(1).

In this matter, Plaintiff asserts jurisdiction based upon the Telecommunications Act (47 U.S.C. § 252(e)(6)), based on federal question jurisdiction (28 U.S.C. § 1331), based on supplemental jurisdiction (28 U.S.C. § 1367), and based on the federal declaratory judgment statute (28 U.S.C. §§ 2201-2202). The only independent bases for the federal jurisdiction are the Telecommunications Act and federal question jurisdiction (since the latter two statutes do not independently confer federal jurisdiction).

[8][9] "To establish a cause of action in district court under section 1331 [the plaintiffs] must show first that their action ... 'arises under' ... [federal law] and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere." _Connors v. Amax Coal Co.,_ 858 F.2d 1226, 1229-30 (7th Cir.1988). While the nature of the particular claims asserted in this case relate to federal statutes, namely the Telecommunications Act, both the Telecommunications Title, 47 U.S.C. §§ 252 and 402(a), and the Hobbs Act, 28 U.S.C. § 2342(a), limit the jurisdiction of the federal district courts as to telecommunications matters through the specific framework Congress has erected for review of telecommunications matters. Section 252(e)(6) of Title 47 of the United States Code provides in pertinent part:

In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section [Section 252].

Review under this Section, according to the Eighth Circuit Court of Appeals, includes not only the review of approval or rejection decisions by state commissions, but also review of enforcement decisions by state commissions pertaining to intercon-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 F.Supp.2d 993
**(Cite as: 26 F.Supp.2d 993)**

nection agreements to determine violations of Sections 251 and 252. *Iowa Utilities Board v. Federal Communications Commission,* 120 F.3d 753, 804 n. 24 (8th Cir.1997); *see also U.S. West Comm., Inc. v. Hix,* 986 F.Supp. 13, 17 (D.Colo.1997). This understanding flows from the Congressionally assigned role of the district courts in preventing violations of the Telecommunications Act flowing from enforcement decisions or other decisions inconsistent with existing interconnection agreements. With this understanding in mind, the Plaintiff's position, that the Court has subject matter jurisdiction to review alterations and enforcement of the existing interconnection agreements, is generally correct. Nevertheless, in this particular case, such review is outlawed in some respects because it offends the provisions of Title 47 and Title 28 which provide the Circuit Courts of Appeals with exclusive jurisdiction to review orders and decisions of the Federal Communications Commission. The claims made by Plaintiff in Counts II, V and VI of the Third Amended Complaint assert that the common transport/shared transport requirements of the MPSC's Order and of the Agreements violate Section 251(c) by misunderstanding the words "unbundled network elements" in the statute. Such words as "unbundled network elements" are terms of art used by regulators and are best understood in the regulatory framework established. Because those terms were certain to cause dispute, the FCC published its Third Order on Reconsideration, which was upheld by the Eighth Circuit Court of Appeals. The Order as interpreted by the Eighth Circuit establishes that "shared transport" is a single network element which must be provided. While Counts II, V and VI challenge the MPSC's Order and Agreements and not the FCC's Order, the logical consequence of this challenge*1000 is that the FCC's Order is invalid. Because such determination is sought, this Court is barred by the exclusive jurisdiction provisions of the statutes from meddling in the exclusive work of the Circuit Courts of Appeals. As the United States Supreme Court said in *Federal Communications Commission v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984):We consider initially the juris-

diction of the District Court to enjoin FCC action as ultra vires. Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals. 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a). Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order..... Yet that is what respondents have sought to do in this case. In substance, the complaint filed in the District Court raised the same issues and sought to enforce the same restrictions upon agency conduct as did the petition for rulemaking that was denied by the FCC.... The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute.

*ITT World,* 466 U.S. at 468, 104 S.Ct. 1936. In other words, district court jurisdiction is precluded to the extent that "the complaint filed in the district court raise the same issues and seeks the same relief in substance as the declaratory ruling." *Wilson v. A.H. Belo Corp.,* 87 F.3d 393, 399 (9th Cir.1996). In this case, the challenges in Counts II, V and VI of the Third Amended Complaint to the MPSC Order and the Agreements premised on Section 251(c) raise the same issues and seek the same relief *in substance* as a challenge to the FCC regulations as in violation of Section 251(c). This challenge was raised and denied in the *Southwestern Bell* case in that the Eighth Circuit determined that shared transport is a single network element which must be offered unbundled by incumbent LECs.FN1As such, the Court is precluded by statute from entertaining these arguments but not other counts of the Third Amended Complaint which raise separate issues not considered in the *Southwestern Bell* decision.

> FN1. Even were the Court to consider these matters, it would deny relief under Rule 12(b)(6) because the Eighth Circuit's decision makes clear that the MPSC Order and the Agreements are legal and consistent with the requirements of the Telecommunications Act.

### *Amendment of the Interconnect Agreements*

Plaintiff's Count I and Count IV also assert that the NTSC Order in question violated federal telecommunications law. In particular, those Counts assert that Section 252 provides for a means of negotiation, arbitrating and approving interconnect agreements and that this procedure was ignored when the MPSC issued its Order, which, according to Plaintiff, had the effect of replacing the requirements of the agreement-shared transport tariffs-with something different-common transport tariffs. Thus, Plaintiff asks the Court to reject the "new" "interconnect agreements" as inconsistent with Section 252's procedural requirements.

[10] Plaintiff's claims fail to state cognizable legal claims for two separate and independent reasons. First, the Section 252 negotiation procedure is not the sole means for the MPSC under the federal statutes to order and regulate telecommunications. Under Section 261(c), state commissions are explicitly permitted to impose requirements to further competition for intrastate services as long as the requirements are consistent with the Telecommunications Act. Under Section 251(d)(3), the MPSC may enforce its own regulations to the extent they: (a) establish access and interconnection obligations of local exchange carriers; (b) are consistent with Section 251; and (c) do not substantially prevent implementation of the Telecommunications Act. The requirement of "common transport"-to the extent of any minimal difference between it and "shared transport"-represents such a state regulation. It was done under state law precisely to foster and encourage state competition (by AT & T, MCI and other such companies) as to telephone services and does not in any way interfere with the requirements of the Act or *1001 the implementation of the Act. As such, the tariffs are permissible as consistent state regulation. Second, there is no real distinction between the common transport ordered and the shared transport previously agreed as part of the interconnect agreements. "Shared Transport" is defined in the agreements identically to the FCC regulations covering the same. *See* 47 C.F.R. § 51.319(d)(1). This same regulatory language was

upheld by the Eighth Circuit in *Southwestern Bell* and was used by the MPSC in reference to both "shared" and "common" transport in its January Order. (*See* Order at 15 n. 5.) Ameritech's argument, that "common transport" is something different from "shared transport" because it includes an unauthorized combination of transport and switching, squarely ignores the language of the January Order as well as the outcome of the holding in *Southwestern Bell*. Accordingly, the Court determines that Counts I and IV of the Third Amended Complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) due to failure to state a claim for which relief may be granted.

### *Count III-State Law Claim*

Count III, the only remaining count of the Third Amended Complaint, asserts a state law claim premised on the MPSC exceeding the authority granted to it under state law. The basis for this claim is purely supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Since this Court has now dismissed the other counts which provided a basis for federal jurisdiction and because the matter asserted is the type of matter better left to the state courts, the Court declines to exercise jurisdiction over the claim and dismisses the claim pursuant to 28 U.S.C. § 1367(c)(3).

Defendants' several motions to dismiss are granted. Counts II, V and VI of the Third Amended Complaint are dismissed pursuant to Rule 12(b)(1). Counts I and IV are dismissed pursuant to Rule 12(b)(6). Count III is dismissed pursuant to 28 U.S.C. § 1367(c)(3). Judgment shall issue consistent with this Opinion.

In accordance with the Court's Opinion of this date;

**IT IS HEREBY ORDERED** that Defendants' several motions to dismiss (Dkt. Nos. 4, 10, 13, and 72) are **GRANTED.**

**IT IS FURTHER ORDERED** that Counts II, V, and VI of the Third Amended Complaint are **DIS-**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 F.Supp.2d 993
26 F.Supp.2d 993
**(Cite as: 26 F.Supp.2d 993)**

Page 10

**MISSED** pursuant to <u>Federal Rule of Civil Procedure 12(b)(1)</u>.

**IT IS FURTHER ORDERED** that Counts I and IV of the Third Amended Complaint are **DISMISSED** pursuant to <u>Federal Rule of Civil Procedure 12(b)(6)</u>.

**IT IS FURTHER ORDERED** that Count III of the Third Amended Complaint is **DISMISSED** pursuant to <u>28 U.S.C. § 1367(c)(3)</u>.

W.D.Mich.,1998.
Michigan Bell Telephone Co. v. Strand
26 F.Supp.2d 993

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                   Page 1
Not Reported in F.Supp., 1996 WL 426549 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.)

C
Homenick v. National Steel Corp.
E.D.Mich.,1996.
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, South-
ern Division.
John HOMENICK, Plaintiff,
v.
NATIONAL STEEL CORPORATION, Defend-
ants.
No. 95-CV-75310-DT.

Feb. 22, 1996.

Ronald Reosti, Reosti, James, Detroit, MI, for John
Homenick.
Bradley A. Carl, Marsha K. Nettles, Clark Hill, De-
troit, MI, for National Steel Corporation and Great
Lakes Steel Corporation.

*OPINION AND ORDER GRANTING DEFEND-
ANT'S MOTION TO DISMISS*
ZATKOFF, District Judge.
**\*1** This matter is before the Court on defendant's
motion to dismiss pursuant to Fed.R.Civ.P.
12(b)(6). John Homenick ("plaintiff") filed a re-
sponse. This Court finds that the parties have ad-
equately set forth the relevant law and facts and
that oral argument would not aid in the disposition
of the instant motion. *See* E.D.Mich. LR 7.1(e)(2).
For the reasons set forth below, defendant's motion
to dismiss shall be granted.

I. BACKGROUND

Plaintiff was employed by the National Steel Cor-
poration ("defendant" or "National Steel") for over
thirty years. On December 30, 1994, plaintiff went
on salary continuance, a form of medical leave.
Salary continuance is available to defendant's em-
ployees for six months, at which time an employee
becomes eligible to receive benefits under the de-
fendant's Long Term Disability ("LTD") program.

Plaintiff was cleared to return to work in June 1989
by John Kerr, defendant's medical department man-

ager. However, before plaintiff actually returned to
work, defendant notified him that he was being ter-
minated pursuant to the defendant's reduction in
force program. At the time of his termination,
plaintiff was presented materials explaining the re-
duction in force program. Among the materials giv-
en to plaintiff was an offer for enhanced severance
benefits in exchange for a release or waiver of
claims. The waiver permitted plaintiff forty-five
(45) days to consult with legal counsel. The waiver
also permitted a seven (7) day period for revocation
upon execution of waiver agreement. After twenty-
one (21) days, plaintiff executed the agreement.
Plaintiff did not timely revoke his waiver.

Plaintiff filed the instant action under ERISA.
Plaintiff alleges that when defendant terminated
him, defendant wrongly prevented plaintiff from re-
ceiving benefits under defendant's LTD program.

II. OPINION

Defendant argues that plaintiff's claims are barred
pursuant to plaintiff's execution of the "Waiver and
Release of Claims Agreement for Great Lakes Em-
ployee Discharged in Reduction in Force"
("Agreement"). The Agreement provides, in pertin-
ent part:
6. *WAIVER AND RELEASE OF CLAIMS BY EM-
PLOYEE*
(a) In exchange for the Enhanced Severance Bene-
fits and other valuable consideration promised or
provided for by this Agreement, which Enhanced
Severance Benefits and other valuable considera-
tion Employee acknowledges he/she would not
have been entitled to but for this Agreement, Em-
ployee, for him/herself and on behalf of Employee's
heirs, executors and estate, does hereby WAIVE,
RELEASE AND DISCHARGE Releasees (as
defined herein) from, AND PROMISES NOT TO
SUE (as defined herein) Releasees with respect to,
any, past, present or future Claims (as defined
herein) Employee has or may have against Re-
leasees or any of them arising out of, or connected
with, Employee's employment or discharge based

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1996 WL 426549 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

on facts, events, circumstances, acts or omissions existing up to the Effective Date of this Agreement. This waiver, release, discharge and promise not to sue does not extend to claims which cannot by law be waived, released or discharged by private agreement between the parties. This waiver, release, discharge and promise not to Sue does extinguish all Claims and is intended to constitute an ACCORD and SATISFACTION as to all Claims.

**\*2** (b) "Releasees" means National Steel Corporation, its parent corporations, subsidiary corporations, affiliate corporations and their respective past or present directors, officers, agents and employees and the successors or assigns of National Steel Corporation, and as to the Claim at 6(c)(iv), the National Steel Corporation Retirement Program and fiduciaries of the Retirement Program.

(c) "Claims" means claims, demand disputes, differences, liability, suits, cause of action whether at law or equity, including, but not limited to:

"Claims" does not include (i) matters which cannot be waived, released or discharged by private agreement; and (ii) such rights as Employee may have as a discharged rather than laid off employee to retirement benefits as a participant in the National Steel Corporation Retirement Program, to retirement savings as a participant in the National Steel Corporation Retirement Savings Plan (401(k) plan), or to retiree health and life insurance benefits as a retiree participant in the National Steel Corporation Program of Insurance Benefit for salaried employees.

(d) "Sue" means to commence an action in court or to initiate arbitration with respect to a Claim waived, released or discharged by this Agreement.

Plaintiff argues that the Agreement does not bar this action because: (1) it does not waive claims for disability benefits, and (2) it does not identify the LTD program or its fiduciaries as a releasee.

### A. The Law

The defendant relies on the Sixth Circuit's decision in *Adams v. Philip Morris, Inc.*, 67 F.3d 580 (6th Cir.1995). In *Adams*, the Sixth Circuit set forth a five-part test for assessing the validity of a waiver

of claims. A court is to evaluate:

(1) plaintiff's experience, background, and education;

(2) the amount of time plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer;

(3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Adams*, 67 F.3d at 583 (citations omitted).

### B. Plaintiff Waived His Disability Claim

In the instant case, plaintiff has a bachelor of engineering degree and over thirty years experience as a facility engineer for defendant. Plaintiff was given forty-five (45) days in which to consult with an attorney before signing the agreement, and the agreement expressly states that "[e]mployee acknowledges that he/she has been advised to consult with legal counsel before signing this Agreement." Defendant Brief, Exhibit 6 at Para. 13. Plaintiff utilized twenty-one (21) days before signing the agreement. Plaintiff also received substantial consideration for signing the Agreement. As consideration for signing the Agreement, defendant paid plaintiff a lump sum equivalent to one year's salary, plus payment of plaintiff's COBRA continuation coverage for one year. Without signing the Agreement, plaintiff would have received only four (4) weeks pay. Plaintiff does not contest the aforestated facts.

**\*3** Plaintiff accurately argues that the Agreement does not expressly include a waiver of a claim for disability benefits. Plaintiff extends his argument to state that the particular laws set forth in Section 6(c)(i)-(v) of the Agreement "thoroughly define[ ]" the claims an employee waives under the Agreement. Defendant Brief, Exhibit 6. A review of the Agreement dictates that the Court conclude to the contrary.

Section 6(c) states that " 'Claims' means ... cause[s] of action whether at law or equity, *including, but not limited to* " those listed in Section 6(c)(i)-(v) (emphasis added). Thus, the Court finds that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3
Not Reported in F.Supp., 1996 WL 426549 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

specific actions listed in Sections 6(c)(i)-(iv) do not limit the claims that plaintiff gave up by signing the Agreement. Rather, Section 6(c) waives essentially all potential employee claims. Additionally, Section 6(a) specifically provides that an employee waives, releases and discharges defendant from *any* past, present, or future claims "arising out of, or connected with, Employee's employment or discharge."

The Court concludes that the only claims exempt from the waiver are those listed in Section 6(c). As plaintiff's action does not fall within the exemptions listed in Section 6(c), plaintiff has waived his claim to LTD program benefits.

C. Releasees Include the LTD Program and Its Fiduciaries

The plaintiff does not contest that the Agreement lists National Steel as one of the "Releasees." Therefore, the Court concludes plaintiff has waived his claims against National Steel.

Plaintiff argues that because the LTD program and its fiduciaries are not identified as "Releasees" in the Agreement, plaintiff has not waived any claims against them. Although the LTD program and its fiduciaries are not currently parties to this action, plaintiff has filed a motion to amend to add the LTD program and its fiduciaries as defendants. In the interests of judicial economy and efficiency, and to avoid addressing a second motion to dismiss, the Court shall assume that the LTD program and its fiduciaries are defendants for purposes of this motion.

The Court finds that LTD program is merely a division of National Steel, not a separate entity as plaintiff asserts. The LTD program "contract" clearly demonstrates that the LTD program is run and controlled by National Steel and its Board of Directors. *See* Defendant Brief, Exhibit 1. The language of plaintiff's brief also supports this conclusion. *See* Plaintiff Brief, at 3, 4, and 13. Accordingly, the Court holds that plaintiff's disability claim is also waived against the LTD program and its fiduciaries.

III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that defendants' motion to dismiss is GRANTED. IT IS FURTHER ORDERED that plaintiff's motion to amend complaint is hereby DENIED as moot and futile. IT IS FURTHER ORDERED that plaintiff's action be DISMISSED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

*JUDGMENT*

**\*4** IT IS ORDERED AND ADJUDGED that pursuant to this Court's Opinion and Order dated February 22, 1996, plaintiff's action is DISMISSED.

E.D.Mich.,1996.
Homenick v. National Steel Corp.
Not Reported in F.Supp., 1996 WL 426549 (E.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 1
Not Reported in F.Supp.2d, 2004 WL 1854177 (E.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

C

Taylor v. Aramark Services Corp.
E.D.Tenn.,2004.
Only the Westlaw citation is currently available.
    United States District Court,E.D. Tennessee.
David W. TAYLOR, Reg. No. 13549-074, Plaintiff,
                         v.
    ARAMARK SERVICES CORPORATION; Ginny
   Perterni, Human Resources; Jeff Deal, General
   Manager; Jerry Miller, Depot Manager; James
   Pruett, Assistant Manager; and All Others in Bene-
                 fits Department, Defendants.
                    No. 1:03-CV-337.

                    March 4, 2004.

EDGAR, Chief J.
**\*1** Plaintiff David W. Taylor ("Taylor") brings this
action against defendants Aramark Services Cor-
poration, Ginny Perterni, Jeff Deal, Jerry Miller,
and James Pruett. There are two motions before the
Court. First, Taylor moves for summary judgment
pursuant to FED. R. CIV. P. 56. [Court File No.
17]. After reviewing the record, the Court con-
cludes the motion is frivolous and it will be
DENIED. Taylor has not presented any proof under
Rule 56 to support his summary judgment motion.

Second, defendants move pursuant to FED. R. CIV.
P. 12(b)(6) to dismiss the complaint for failure to
state a claim upon which relief can be granted.
[Court File No. 17]. The defendants' motion is well
taken and it will be GRANTED.

                 I. Standard of Review

FED. R. CIV. P. 12(b)(6) provides that a complaint
may be dismissed if it fails to state a claim upon
which relief can be granted. The purpose of Rule
12(b)(6) is to permit a defendant to test whether, as
a matter of law, the plaintiff is entitled to relief
even if everything alleged in the complaint is true.
Nishiyama v. Dickson County, Tennessee, 814 F.2d
277, 279 (6th Cir.1987). A complaint should not be
dismissed for failure to state a claim unless it ap-

pears beyond doubt that the plaintiff can prove no
set of facts in support of the complaint which would
entitle the plaintiff to relief. Haines v. Kerner, 404
U.S. 519 (1972); Conley v. Gibson, 355 U.S. 41,
45-46 (1957); Sagliocolo v. Eagle Ins. Co., 112
F.3d 226, 228 (6th Cir.1997); Columbia Natural
Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th
Cir.1995); Mayer v. Mylod, 988 F.2d 635, 637-38
(6th Cir.1993).

To preclude dismissal under Rule 12(b)(6), a com-
plaint must contain either direct or inferential alleg-
ations which comprise all of the essential, material
elements necessary to sustain a claim for relief un-
der some viable legal theory. Lewis v. ACB Busi-
ness Services, Inc., 135 F.3d 389, 406 (6th
Cir.1998); Columbia Natural Resources, 58 F.3d at
1109;Allard v. Weitzman (In re DeLorean Motor
Co.), 991 F.2d 1236, 1240 (6th Cir.1993); Scheid v.
Fanny Farmer Candy Shops, Inc., 859 F.2d 434,
436 (6th Cir.1988). The Court is required to con-
strue the complaint in the light most favorable to
the plaintiff and to accept all well-pleaded allega-
tions of fact as being true. Scheur v. Rhodes, 416
U.S. 232 (1974); Columbia Natural Resources, 58
F.3d at 1109;Mayer, 988 F.2d at 638;Collins v.
Nagle, 892 F.2d 489, 493 (6th Cir.1989). When a
factual allegation is capable of more than one reas-
onable inference, it must be construed in the
plaintiff's favor. Sagliocolo, 112 F.3d at
228;Columbia Natural Resources, 58 F.3d at 1109.
The Court may not grant a Rule 12(b)(6) motion to
dismiss simply because the Court does not believe
the allegations of fact in the complaint. In re So-
famor Danek Group, Inc., 123 F.3d 394, 400 (6th
Cir.1997); Sagliocolo, 112 F.3d at
228-29;Columbia Natural Resources, 58 F.3d at
1109;Allard, 991 F.2d at 1240. The Court does not,
however, have to accept as true mere legal conclu-
sions and unwarranted inferences of fact. Lewis,
135 F.3d at 405;Grindstaff v. Green, 133 F.3d 416,
421 (6th Cir.1998); Columbia Natural Resources,
58 F.3d at 1109;Morgan v. Church's Fried Chicken,
829 F.2d 10, 12 (6th Cir.1987).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


EXHIBIT
I

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1854177 (E.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

## II. Facts

**\*2** The *pro se* complaint is confusing and difficult to decipher. As the Court reads and understands the complaint, Taylor makes the following allegations. Taylor was employed by Aratex Services from 1984-September 5, 1991. His employment with Aratex Services was terminated on September 5, 1991. It is alleged that Aratex breached a contract of employment it had with Taylor, however, Taylor has not submitted a copy of any such written contract of employment to this Court. It appears that Taylor does not currently have any written contracts in his possession to support his complaint since Taylor asks the Court to order the defendants to produce to him copies of various documents including all employment contracts.

Taylor contends that defendant Aramark Services is the successor-in-interest to his former employer, Aratex Services. It is clear from the face of the complaint that Taylor was never employed by defendant Aramark Services.

At some unspecified point in time, probably 1991, Taylor took medical leave from his job at Aratex Servives. It is alleged some unidentified person at Aratex told Taylor that he "had to sign agreements for the district manager's position when he returned from medical leave."Taylor says he signed the agreements "under duress" and as a result of "undue influence." Taylor does not bother to explain or clarify the terms and nature of these alleged agreements. Taylor's vague, conclusory allegations do not help to illuminate the basis for his complaint. In his response to the defendants' <u>Rule 12(b)(6)</u> motion and in his summary judgment motion [Court File No. 17], Taylor also asserts the reason for termination of his employment was that he sought treatment for a medical condition and Aratex Services wanted to avoid paying the medical expenses.

Taylor is primarily concerned about money he claims is owed to him from the Aratex employees' profit sharing and pension plan. Taylor asserts that he was employed by Aratex for eight years and worked his way up to the position of district manager which he held for three years. Taylor states that he was active in the employee benefit plan for four years. When his term of employment with Aratex was terminated on September 5, 1991, Taylor contends that he was fully (100%) vested in the profit sharing and pension plan but Aratex failed or neglected to include his full benefits for the pay period ending on September 11, 1991.

Taylor seeks to recover the last year of his profit sharing and pension plan benefits which he values as being at least $2,300. In addition, Taylor demands $1,000,000 in other compensatory damages and $1,000,000 in punitive damages for pain and suffering, mental anguish, unlawful discharge, deliberate indifference, and loss of livelihood.

## III. Analysis

The Court concludes that Taylor's complaint must be dismissed pursuant to <u>FED. R. CIV. P. 12(b)(6)</u> because he fails to state a claim upon which relief can be granted. Taylor's breach of contract claim is clearly time barred by the statute of limitations. Any cause of action for breach of an alleged employment contract accrued on September 5, 1991, when Taylor's employment with Aratex Services was terminated. Tennessee law provides that the suit for breach of contract must be commenced by Taylor within six years after the cause of action accrued. <u>TENN.CODE ANN. § 28-3-109</u>(3). Taylor inexplicably delayed filing the instant suit in this Court until October 2, 2003, which is more than twelve years after the cause of action for breach of contract accrued. There is no basis for the Court to apply the doctrine of equitable tolling. Accordingly, the breach of contract claim shall be DISMISSED.

**\*3** To the extent that Taylor's vague allegations regarding his return to employment from medical leave might be liberally construed as an attempt by Taylor to perhaps assert a claim under the Family and Medical Leave Act of 1993, <u>29 U.S.C. §§ 2601</u>*et seq.,* any such claim fails. The Family and Medical Leave Act was enacted by Congress and became effective in 1993. Taylor's allegations con-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

cern events that occurred prior to the enactment of the Family and Medical Leave Act. Defendants cannot possibly have any liability to Taylor under the Family and Medical Leave Act.

Finally, Taylor's claim for employee profit sharing and pension plan benefits is time barred by the statute of limitations. As the defendants correctly explain in their memorandum of law [Court File No. 14], Taylor's complaint may be liberally construed as possibly asserting two different types of claims under the Employee Retirement Income Security Act ("ERISA"). Either Taylor is making a claim to recover ERISA plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), or he is claiming that the termination of his employment interfered with his rights under the ERISA plan pursuant to 29 U.S.C. § 1140. In either case, his claim under ERISA is time barred.

ERISA does not expressly provide a statute of limitations for civil actions brought under 29 U.S.C. § 1132(a)(1)(B). In the absence of a federally mandated statute of limitations, this Court applies the most analogous statute of limitations under Tennessee law. For purposes of determining the most analogous statute of limitations under Tennessee law, the Court considers a 29 U.S.C. § 1132(a)(1)(B) claim as one for breach of contract. Santino v. Provident Life and Acc. Ins. Co., 276 F.3d 772, 776 (6th Cir.2001); Meade v. Pension Appeals and Review Committee, 966 F.2d 190, 194-95 (6th Cir.1992); Kilpatrick v. Intertrade Holdings, Inc., 2003 WL 21938912, *3 (E.D.Tenn. July 7, 2003); Moffitt v. Whittle Communications, L.P., 895 F.Supp. 961, 971 (E.D.Tenn.1995); see also Syed v. Hercules, Inc., 214 F.3d 155, 159 (3rd Cir.2000); Southern Elec. Retirement Fund v. George Arp Elec. Corp., 635 F.Supp. 139 (E.D.Tenn.1986). As discussed supra, the statute of limitations in Tennessee for breach of contract actions is six years under TENN.CODE ANN. § 28-3-109(a)(3). Consequently, any claim brought by Taylor under 29 U.S.C. § 1132(a)(1)(B) seeking to recover ERISA plan benefits is time barred by TENN.CODE ANN. § 28-3-109(a)(3) since Taylor did not commence this lawsuit within six years after the cause of ac-

tion accrued.

The most analogous state statute of limitations for an ERISA claim brought under 29 U.S.C. § 1140 is the Tennessee statute of limitations governing wrongful discharge or retaliatory discharge from employment claims. Leemis v. Medical Services Research Group, Inc., 2003 WL 22220527 (6th Cir. Sept. 24, 2003). Tennessee law provides that retaliatory discharge claims are subject to a one-year statute of limitations. TENN.CODE ANN. § 28-3-104; Weber v. Moses, 938 S.W.2d 387, 393 (Tenn.1996). Any ERISA claim brought by Taylor under 29 U.S.C. § 1140 is time barred by TENN.CODE ANN. § 28-3-104 since Taylor did not commence this lawsuit within one year after the cause of action accrued.

*4 For these reasons, the Court concludes that the defendants' motion to dismiss Taylor's complaint is well taken. A separate judgment will enter DISMISSING plaintiff Taylor's complaint WITH PREJUDICE pursuant to FED. R. CIV. P. 12(b)(6).

In accordance with the accompanying memorandum opinion filed herewith, the motion by plaintiff David W. Taylor for summary judgment [Court File No. 17] is DENIED. The defendants' motion pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the plaintiff's complaint [Court File No. 13] is GRANTED. The plaintiff's complaint is DISMISSED WITH PREJUDICE as to all defendants. This is a FINAL JUDGMENT. The Clerk of Court shall close the record in this case.

SO ORDERED.

E.D.Tenn.,2004.
Taylor v. Aramark Services Corp.
Not Reported in F.Supp.2d, 2004 WL 1854177 (E.D.Tenn.)

END OF DOCUMENT

Westlaw.

Slip Copy
Slip Copy, 2004 WL 5376213 (S.D.Ohio)
(Cite as: Slip Copy)

Page 1

**H**

Ruggles v. Bulkmatic Transport Co.
S.D.Ohio,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. Ohio, Eastern Division.
Herbert RUGGLES, et al., individually and as class representatives, Plaintiffs,
v.
BULKMATIC TRANSPORT CO., Defendant.
No. C2-03-617.

June 23, 2004.

David A. Ferris, Ferris & Ferris LLP, Rex H. Elliott, Columbus, OH, for Plaintiffs.
Daniel R. Barney, Scopelitis Garvin Light & Hanson, Washington, DC, Michael Karl Yarbrough, Jeffrey George Rupert, Frost Brown Todd LLC, Columbus, OH, Robert L. Browning, Scopelitis Garbin Light & Hanson, Indianapolis, IN, Timothy M. Schank, Bruce A. Radke, Joseph A. Strubbe, Vedder Price Kaufman & Kammholz PC, Chicago, IL, for Defendant.

*Memorandum Opinion and Order*
GRAHAM, Chief J.

### I. *Introduction*

**\*1** This matter is before the Court on defendant Bulkmatic Transport, Co.'s ("defendant") motion to dismiss certain claims set forth in the complaint filed by plaintiffs Herbert Ruggles and Kevin L. Roberts (collectively the "plaintiffs"). In this putative class action, [FN1] which was filed on July 9, 2003, plaintiffs assert that defendant breached the lease agreements between the parties (Count I); that in failing to adhere to the lease agreements, defendant violated federal law, including Rule 376.12 (Count II); that defendant has been unjustly enriched at the expense of plaintiffs (Count III); that plaintiffs are entitled to the reasonable value of their services pursuant to the doctrine of quantum meruit (Count IV); and that defendant made false and misleading representations to plaintiffs, upon which plaintiffs relied and which resulted in damage to plaintiffs (Count V).

> FN1. The plaintiffs allege in their complaint that they assert the claims on behalf of themselves and others similarly situated, other "owner operators who had written lease agreements at any time during the past 15 years, which lease agreements are in material respects similar to the lease agreements attached hereto."Complaint, ¶ 19. The purported class consists of owner operators who live in various states and regularly drive their trucks. Complaint, ¶ 20. Plaintiffs believe that defendant "enters into approximately 200 or more lease agreements with individual owner operators at one time and for the past 15 years ... the Defendant has entered into lease agreements with 1,000 similarly situated owner operators."Complaint, ¶ 20.

On December 22, 2003, Judge Kemp's preliminary pretrial order provided that "[b]ecause of the relationship of the motion to dismiss and the class action issues, and because of the issues raised by the filing of a similar class action in the Northern District of Illinois, it was agreed that another pretrial conference should be held following a ruling on the motion to dismiss."As a result, the court will not address whether plaintiffs meet the requirements of a class action in this opinion.

On September 29, 2003, defendants filed this motion to dismiss. Plaintiffs filed their memorandum in opposition to the motion to dismiss on October 16, 2004. Defendant filed its reply brief in support of the motion to dismiss on October 30, 2003. On May 11, 2004, plaintiffs filed a notice of recent supplemental authority regarding defendant's motion to dismiss.

### II. *Factual Background*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Plaintiffs are owner operators of trucks and other equipment. Plaintiffs are in the business of leasing their trucks and other equipment and providing hauling and driving services for others, including the defendant. Complaint, ¶ 6.

Defendant, an Illinois corporation, acts as a motor carrier, transporting goods in interstate commerce. Complaint, ¶ 3. Defendant transports its goods using trailers hauled by equipment leased from independent truck owners, such as plaintiffs. Complaint, ¶ 7.

Plaintiffs allege that they entered into written lease agreements with the defendant to provide for the transport of property for or at the request of the defendant by equipment supplied by plaintiffs. Complaint, ¶ 9, Exhibits A and B. For example, plaintiff Ruggles entered into two lease agreements with defendant. The first agreement between plaintiff Ruggles and defendant, which was executed on July 8, 1997, began on July 14, 1997 and ended on July 14, 2000. The second agreement, which was executed on May 18, 2001, began July 15, 2000 and ended on July 15, 2003. Plaintiff Roberts entered into one lease agreement with defendant, which was executed on September 1, 1999. That lease agreement began on September 1, 1999 and ended on September 1, 2002. All of these lease agreements provided that defendant would pay to plaintiffs a 63-65% percentage of gross revenues for each shipment.

Plaintiffs allege that defendant breached the lease agreements by failing to pay plaintiffs the percentage of gross revenues to which they were entitled under the lease agreements; instead, defendant paid the plaintiffs based on an adjusted gross revenue after making various deductions for expenses. Complaint, ¶ 11.

**\*2** Plaintiffs also allege that defendant breached the leases by failing to provide to plaintiffs documentation at the time compensation was paid so that plaintiffs could confirm that the compensation was correct. Complaint, ¶ 12. Plaintiffs allege that defendant refused to provide copies of this information even after plaintiffs requested the information. Complaint, ¶ 13.

Plaintiffs also allege that the lease agreements required plaintiffs to deposit $1000 in escrow with the defendant. Complaint, ¶ 15. Finally, plaintiffs allege that defendant violated federal law by failing to provide to plaintiffs a monthly accounting of escrowed funds and by failing to pay interest on the funds. Complaint, ¶ 16.

III. *Standard of Review*

This matter is before the court on the defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6)[FN2] for failure to state a claim for which relief may be granted. A complaint may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true.*California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 515-16, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir.1978).

> FN2. Defendant did not specify in its motion or reply brief under which federal rule it was moving to dismiss part of plaintiffs' complaint. The court will assume defendant is moving to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *Weiner v. Klais & Co., Inc.,* 108 F.3d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

86, 88 (6th Cir.1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences. *Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987).*

IV. *Discussion*

A. Count Two-Failure to Adhere to the Lease, Provide Rated Freight Bills or Other Required Documentation, and Properly Compensate, All in Violation of Federal Law

Defendant argues that plaintiffs' claims under Count Two of the complaint regarding violation of federal law that accrued before July 9, 2001[FN3] should be dismissed with prejudice because those claims are time-barred by a two-year statute of limitations. Defendant's Motion, p. 1. Plaintiffs' Count II claim for damages alleges violations of 49 C.F.R. § 376.12.[FN4] The claim falls under Section 14704(a)(2) of the Interstate Commerce Commission Termination Act (the "ICCTA").[FN5]

> FN3. Plaintiffs filed their complaint on July 9, 2003.

> FN4.49 C.F.R. § 376.12, entitled "Written lease agreements," sets forth various provisions that must be included in a lease and requires that the "provisions shall be adhered to and performed by the authorized carrier."

> FN5.49 U.S.C. § 14704(a)(2). This section provides that: "A carrier or broker providing transportation or services subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."

Plaintiffs allege that defendant violated federal law because it "failed to adhere to the required lease provisions by failing to, among other things, compensate the Plaintiff owner operators properly, provide supporting documents for Defendant's compensation calculation and payment to the Plaintiff owner operators, provide monthly accountings for

escrowed funds provided by the Plaintiff owner operators, and pay interest on a minimum quarterly basis for escrowed funds provided by the Plaintiff owner operators."Complaint, ¶ 32.Section 14704(a)(2), under which these claims arise, does not provide a statute of limitations for claims brought pursuant to that section. Therefore, plaintiffs contend, the default four-year statute of limitations in 28 U.S.C. § 1658[FN6] applies. Plaintiffs' Memo. In Opposition, p. 3.

> FN6.Section 1658(a) provides that: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."

*3 Defendant argues, however, that plaintiffs' Count II claims are time-barred because the two-year statute of limitations set forth in 49 U.S.C. § 14705(c)[FN7] governs plaintiff's claims brought under § 14704(a)(2). Defendant admits that § 14705(c) does not refer to claims for damages under § 14704(a)(2). Defendant argues that sufficient evidence demonstrates that a drafting error resulted in § 14705(c) inadvertently referring to § 14704(b)FN8 instead of § 14704(a)(2). To support this theory, defendant cites to the analysis of the statutes in *Fitzpatrick v. Morgan Southern, Inc., 261 F.Supp.2d 978 (W.D.Tenn.2003).* Defendant's Motion, pp. 5-8. *Fitzpatrick* first examined the legislative history of the ICCTA, concluding that based on various revisions of the legislation and the Conference Committee Report, a drafting error occurred and that a two-year statute of limitations should apply to claims under § 14704(a)(2).*Fitzpatrick, 261 F.Supp.2d at 982-85.*

> FN7.Section 14705(c) provides that: "A person must file a complaint with the Board or Secretary, as applicable, to recover damages under section 14704(b) within 2 years after the claim accrues."

> FN8.Section 14704(b) provides that: "A

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

carrier providing transportation or service subject to jurisdiction under Chapter 135 is liable to a person for amounts charged that exceed the applicable rate for transportation or service contained in a tariff in effect under section 13702."

In further support of the opinion that the two-year statute of limitations is the correct statute of limitations to apply, *Fitzpatrick* also refers to an order from the Surface Transportation Board ("the Board").*Id.* at 985-86.In dicta, the Board's order noted "an apparent technical error in the statute."*Id.* The Board is the agency charged with enforcement and regulatory authority under the ICCTA. *Id.* As the agency charged with enforcement, *Fitzpatrick* stated that the Board's opinion "carries significant weight." *Id.* at 986. *Fitzpatrick* concluded that "[i]n the absence of such a mistake, the two-year statute of limitations provided in § 14705(c) would clearly apply to the private right of action in § 14704."*Id.* at 986.

The instant plaintiffs argue, however, that the court should not even look to the legislative history because the language of the statute is not ambiguous. Plaintiffs' Memo. In Opp., p. 2. The plaintiffs further contend that Congress's failure to correct the "drafting error" since the statute was enacted in 1995 signifies that there was no mistake regarding the statute of limitations to correct. Plaintiffs' Memo. In Opposition, pp. 3-4. In response to that argument, the defendant argues that "Congress has not acted because it likely has been unaware of the drafting error" because *Fitzpatrick* was decided recently in April 2003. Defendant's Reply, pp. 3-4.

Defendant also argues that applying a four-year statute of limitations leads to an absurd result. Defendant's Motion, pp. 4,7. Defendant, citing *Fitzpatrick*, states that actions for damages under parallel provisions governing rail and pipe line carriers apply a two-year statute of limitations. Defendant's Motion, p. 7. Defendant argues that the Conference Report's statement that the limitations period was to be "uniform for all types of traffic""compels the conclusion that a two-year

statute was meant to apply to damage claims against motor carriers as well as rail and pipe line carriers."Defendant's Motion, p. 7.

*4 Plaintiffs, however, cite to several cases outside of this jurisdiction that analyze § 14704's statute of limitations and conclude that it is not absurd for a four-year statute of limitations to apply. Plaintiffs' Notice of Recent Supp. Authority, pp. 1-2; *seeOwner-Operator Indep. Driver Ass'n, Inc. v. Bulkmatic Transp. Co.*, No. 03-C-7869, 2004 U.S. Dist. LEXIS 7616 (N.D. Ill. April 29, 2004) (noting that only *Fitzpatrick* applies a two-year statute of limitations and concluding that the statute is not ambiguous and that applying a four-year statute of limitations does not lead to an absurd result); *Owner-Operator Indep. Driver Ass'n, Inc. v. Heartland Express, Inc. of Iowa*, No. 3-01-CV-80179, 2003 U.S. Dist. LEXIS 25284 (S.D.Iowa Feb. 3, 2004) (finding that the statutory language is not ambiguous and that a four-year statute of limitations is not absurd).

The court concludes that a four-year statute of limitations applies to plaintiffs' claims under § 14704(a)(2). The plain language of § 14704(a)(2) is not ambiguous. The provision does not include a statute of limitations; therefore, the default four-year statute of limitations in 28 U.S.C. § 1658 applies. *See, e.g.,Owner-Operator Indep. Driver Ass'n, Inc. v. Ledar Transp.*, No. 00-0258-CV-W-FJG, 2004 U.S. Dist. LEXIS 7869 (W.D.Mo. Jan. 7, 2004) (rejecting *Fitzpatrick* and concluding that the statute is not ambiguous so that the four-year statute of limitations in 28 U.S.C. § 1658 applies). The court finds that applying a four-year statute of limitations does not lead to an absurd result.

Because the court concludes that the statutory language is not ambiguous, there is no need for the court to examine the legislative history. Indeed, it would be inappropriate for the court to turn to the legislative history: "When the words of a statute are unambiguous, ... 'judicial inquiry is complete.' " *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101

S.Ct. 698, 66 L.Ed.2d 633 (1981)).*See also,Cabell Huntington Hosp., Inc. v. Shalala,* 101 F.3d 984, 986 (4th Cir.1996) ("Where the statute speaks clearly to the issue at hand, the inquiry ends."); *Petrulis v. Comm'r,* 938 F.2d 78, 80 (7th Cir.1991) ("If that language is unambiguous, 'our inquiry is at an end; the congressional intent embodied in that plain wording must be enforced.' ") (quoting *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1326 (7th Cir.1990)).

Because the four-year statute of limitations applies to plaintiffs' claims arising under § 14704(a)(2), plaintiffs' claims that accrued two years prior to July 9, 2003 under Count Two are not time-barred. Defendant's motion to dismiss these claims in Count Two is denied.

### B. Counts Three and Four-Unjust Enrichment and Quantum Meruit

Defendant argues that plaintiffs' unjust enrichment (Count Three) and quantum meruit (Count Four) claims should be dismissed. Defendant argues that plaintiffs cannot assert quasi-contractual claims where the subject matter of the claims is already governed by an express contract between the parties. Defendant's Motion, pp. 10-11.

**\*5** Plaintiffs argue, however, that they are permitted to "pursue a claim for unjust enrichment while at the same time pleading a claim for breach of contract."Plaintiffs' Memo. In Opp., pp. 4-5. Defendant acknowledges that an exception exists that permits the plaintiffs to plead its quasi-contractual claims in the alternative *if* the existence of the contract is in dispute. Defendant's Motion, p. 11, n. 4. Defendant argues, however, that the plaintiffs here cannot plead in the alternative because the plaintiffs have already alleged the existence of lease agreements with defendant. Defendant's Motion, pp. 11-12.

Ohio ^FN9 law does not permit recovery under a quasi-contractual theory when there exists an express contract between the parties covering the same subject. *See, e.g.,Resource Title Agency, Inc. V. Morreale Real Estate Serv.,* No. 1:03-CV-2516, 2004 U.S. Dist. LEXIS 7060, at*21 (N.D. Ohio

April 20, 2004) (stating that "Ohio law generally does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject"); *Ankle & Foot Ctrs. v. Infocare Sys., Inc.,* 164 F.Supp.2d 953, 961 (N.D.Ohio 2001) ("A party to a contract cannot seek damages under the equitable theory of unjust enrichment when an express or implied contract covers the subject matter of that claim"); *Daup v. Tower Cellular, Inc.,* 136 Ohio App.3d 555, 569, 737 N.E.2d 128, 138 (Ohio Ct.App.2000) (stating that "unjust enrichment is a quasi-contractual theory that operates in the absence of an express contract or a contract implied in fact") (citations omitted).

> FN9. By the law cited in their briefs, the parties appear to agree that Ohio state law applies to Counts Three, Four, and Five.

When the existence of a contract is in dispute, however, a party may plead quasi-contract claims in the alternative. *See, e.g.,Resource Title Agency, Inc. v. Morreale Real Estate Serv., Inc.,* No. 1:03-CV-2516, 2004 U.S. Dist. LEXIS 7060, at *21 (N.D. Ohio April 20, 2004) (finding that "unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute"); FN10*Teknol, Inc. v. Buechel,* No. C-3-98-416, 1999 U.S. Dist. LEXIS 22017, at *8 (S.D.Ohio Aug. 9, 1999) (concluding that a party may plead quasi-contractual claims in the alternative where there is some dispute to the existence or enforceability of the contract).

> FN10.*Resource Title Agency* further states that unjust enrichment "may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality."*Id.* Plaintiffs do not allege in Counts Three and Four that they can maintain an unjust enrichment claim because of fraud, bad faith, or illegality. Moreover, for the reasons stated in this court's discussion of Count Five, plaintiffs have not alleged a valid fraud claim. Therefore, the court will focus on the exception regarding the disputed existence of a contract.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The court concludes that contracts exist between the parties, which cover the same matter as the claims in Counts Three and Four. First, plaintiffs allege the existence of lease agreements with defendant in paragraphs 9 through 12 of the complaint. Plaintiffs also attach to the complaint three lease agreements that they had with defendant. Complaint, ¶ 9 and Exhibits A and B. Defendant, too, admits in its motion and briefs that there is no dispute regarding the existence or enforceability of the express contracts between the parties. Defendant's Motion, p. 11, n. 4 ("there is no dispute here as to the existence or enforceability of the lease agreements the parties entered into"); Defendant's Reply, p. 6 ("Here, in contrast [to the *Teknol* case where an oral contract was in disputel, there is no dispute as to the existence of the various written lease and escrow agreements entered into between Plaintiffs and Bulkmatic").

**\*6** Second, these lease agreements between the parties govern the same matters on which plaintiffs base their quasi-contractual claims. For example, section D of the contracts between the parties,[FN11] entitled "Compensation," governs defendant's payments to plaintiffs. Section F of the contracts, entitled "Charge-Back Items," details when expenses may be deducted from the amount that defendant pays to plaintiffs. Section H, entitled "Escrow Funds," and its accompanying "Escrow Fund Addendum" related to the escrow account, details the management of the funds, including interest.

> FN11. The three contracts between the parties that plaintiffs attached to the complaint "are the same in all or substantially all material respects."Complaint, ¶ 9.

Similarly, in Count Three of the complaint, plaintiffs allege that defendant "has been unjustly enriched, at the expense of the Plaintiff owner operators, by failing to pay the full compensation Plaintiff owner operators were entitled to and by failing to pay interest on the escrowed funds."Complaint, ¶ 35. In Count Four of the complaint for quantum meruit, plaintiffs allege that they "are entitled to the reasonable value of their ser-

vices for their transporting of property and providing other services to the Defendant pursuant to Defendant's requests."Complaint, ¶ 37. As shown from the contract excerpts regarding compensation, charge-back items, and escrow funds, the lease agreements govern the subject matter of the claims for unjust enrichment and quantum meruit.

Having found that express contracts exist that govern the subject matter of their quasi-contractual claims, plaintiffs cannot pursue their claims for unjust enrichment and quantum meruit. Defendant's motion to dismiss Counts Three and Four is granted.

C. Count Five-Negligent Misrepresentation and Fraud

Defendant argues that Count Five of the complaint should be dismissed because plaintiffs fail to state claims for negligent misrepresentation and fraud. A claim for negligent misrepresentation exists when: One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Hayes v. Computer Assoc. Int'l, Inc.,* No. 3:02CV7452, 2003 U.S. Dist. LEXIS 10712, at *18 (N.D.Ohio June 24, 2003) (citing Ohio law); *see also Flanagan Lieberman Hoffman & Swaim v. Transamerica Life and Annuity Co., 228 F.Supp.2d 830, 851 (S.D.Ohio 2002)* (citing Ohio law and the same standard).

A claim for fraud requires a party to establish:
(1) a representation or, where there is a duty to disclose, a concealment of a fact,
(2) which is material to the transaction at hand,
(3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that such knowledge can be inferred,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*7** (4) with the intent of misleading another into relying upon it,
(5) justifiable reliance upon the representation or concealment, and
(6) a resulting injury proximately caused by the reliance.

*Captiva, Inc. v. Viz Communications, Inc.,* No. 01-4084, 2004 U.S.App. LEXIS 477, at ----9-10 (6th Cir. Jan. 8, 2004); *see also*Cohen v. Lamko, Inc., 10 Ohio St.3d 167, 169, 462 N.E.2d 407, 409 (1984).

Defendant argues, however, that "where the parties' duties are established by a contract, a plaintiff cannot maintain a separate tort claim unless the defendant breaches a duty which it owes to the plaintiff independent of the contract."Defendant's Motion, p. 12. Defendant also argues that "Count Five is merely a rehash of Plaintiffs [sic] breach of contract claim," which refers specifically to the lease agreements. Defendant's Motion, p. 13. Defendant argues further that even if plaintiffs could maintain a tort claim, they failed to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b). Defendant's Motion, p. 14.

Plaintiffs argue, however, that defendant's argument fails because Fed.R.Civ.P. 8 permits plaintiffs to plead in the alternative and that defendant has not established that a contract exists covering each of the duties from which a tort claim can also exist. Plaintiffs' Memo. In Opp., p. 5. Plaintiffs also assert that the defendant owes various duties independent of the contract, including a fiduciary duty, because of the escrow arrangement between the parties. Plaintiffs' Memo in Opp., pp. 5-6. Plaintiffs argue that breach due to defective performance may give rise to a tort claim. Plaintiffs' Memo in Opp., pp. 5-6. Plaintiffs also argue that Ohio's general duty of good faith and fair dealing also provides a separate basis for its claims. Plaintiffs' Memo in Opp., p. 6.

Defendant disputes plaintiffs' argument that a separate fiduciary duty establishes a basis for plaintiffs' tort claims because no fiduciary duty arose from the lease agreements. Defendant's

Reply, p. 7. Moreover, defendant argues that the language from the complaint in this count refers specifically to the lease agreements and does not even mention the parties' escrow agreements. Defendant's Reply, p. 7. Defendant argues that plaintiffs have not alleged any separate legal duty in Count Five, only new acts "freshly crafted out of whole cloth in Plaintiffs' Memorandum for the basis of Plaintiffs' negligent misrepresentation claims."Defendant's Reply, p. 8.

It is true that under Ohio law " 'the existence of a contract action ... [generally] excludes the opportunity to present the same case as a tort claim.'...A tort action will lie only if a party breaches a duty separate and distinct from the duties that arise under the contract."*Ebenisterie Beaubois Ltee. v. Marous Bros. Constr., Inc.,* No. 02 CV 985, 2002 U.S. Dist. LEXIS 26625, at \*29-30 (N.D.Ohio Oct. 17, 2002) (citations omitted). Plaintiffs allege in their Memorandum in Opposition that defendant's breach of fiduciary duty supports their tort action, but plaintiffs never alleged in Count Five of the complaint that a breach of fiduciary duty formed the basis of their tort claim. Instead, plaintiffs merely allege in Count Five that defendant represented that the compensation was properly and accurately calculated, that those representations were false and misleading, and that the plaintiffs relied on defendant's representations. Complaint, ¶¶ 38-41.

**\*8** Plaintiffs' allegations in their Memorandum in Opposition that a fiduciary relationship existed are insufficient to establish a fiduciary duty to support their tort claims in Count Five. The Ohio Supreme Court defines the term "fiduciary relationship" as a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."*In re Termination of Employment of Pratt,* 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974). The dealings of debtor and creditor in a commercial context in which the parties deal at arm's length, each protecting his or her respective interest, is insufficient to create a fiduciary relationship. *Ed Schory &*

_Sons, Inc. v. Soc'y Nat'l Bank,_ 75 Ohio St.3d 433, 443, 662 N.E.2d 1074 (1996). Plaintiffs have not alleged specific facts that demonstrate that the parties here were not at arm's length while bargaining or that each party was not competently protecting its own interest.

Even if plaintiffs had alleged in Count Five of the complaint that a fiduciary relationship existed between the parties and that defendant breached that fiduciary duty, plaintiffs' claims in Count Five would still fail. The "Escrow Fund Addendum" (the "Addendum") to the lease agreements does not expressly establish a fiduciary relationship between the parties. The Addendum provides for the creation of the escrow fund and for deposits to "be held in escrow by LESSEE [defendant] on LESSOR's account for the purpose of being the insurance deductible amount ..."_See, e.g.,_ Lease Agreement between plaintiff Ruggles and defendant dated May 18, 2001, Escrow Fund Addendum, ¶ 2. In similar business relationships where escrow funds were used by one party to pay taxes and insurance, this agreement was insufficient to establish a fiduciary relationship:

There is nothing in the mortgage agreement [pursuant to which the defendant-appellant maintains an escrow account on behalf of the plaintiffs-appellees] which expressly gives rise to a fiduciary relationship between the parties. Furthermore, there is no allegation in the complaint of a _de facto_ fiduciary relationship between the parties. Ohio Savings Bank is required by the terms of the mortgage agreement to disburse funds to pay the appellants' property taxes and their homeowner's insurance; however this does not create a relationship in which 'special confidence and trust is reposed in the integrity and fidelity' of Ohio Savings Bank. Therefore, the trial court appropriately dismissed the appellants' claim for breach of fiduciary duty.

_Cairns v. Ohio Sav. Bank,_ 109 Ohio App.3d 644, 649, 672 N.E.2d 1058, 1062 (Ohio Ct.App.1996); _see also_ _Hoff v. First Fed. Sav. and Loan Ass'n,_ No. 91 C.A. 202, 1992 Ohio App. LEXIS 5669, at *5-6 (Ohio Ct.App. Oct. 28, 1992) (concluding that the parties to the escrow arrangement "engaged in no

more than a normal business relationship" and that no fiduciary relationship existed).

*9 Because no fiduciary relationship exists here, plaintiffs cannot use a breach of fiduciary duty to maintain their fraud and negligent misrepresentation claims in Count Five. _See, e.g.,_ _Cairns,_ 109 Ohio App.3d at 649-60, 672 N.E.2d at 1062 (finding that the trial court properly dismissed claims for fraud and negligent misrepresentation when the appellant based those claims on a breach of fiduciary duty, but failed to establish such a duty existed).

Plaintiffs' Count Five claims also fail because they do not allege damages that arise from a tortious act that is distinct from their breach of contract damages. Plaintiffs allege in Count Five that they "have been damaged by failing to receive the full and proper amount of compensation due to them."Complaint, ¶ 42. This alleged damage appears to be no different than the damage plaintiffs allege in their breach of contract claim wherein plaintiffs allege damages because defendant compensated them "on an adjusted gross revenue or cartage rate basis instead of the gross revenue basis as required ..." Complaint, ¶ 28.

Ohio law requires that the alleged tort damage must be in addition to the alleged damage resulting from the breach of contract. _See, e.g.,_ _Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,_ 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, 1271 (Ohio Ct.App.1996) (finding that "an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are _in addition_ to those attributable to the breach of the contract") (emphasis in the original); _Ebenisterie,_ 2002 U.S. Dist. LEXIS 26625, at *30 ("Thus, to sustain a fraud claim, the plaintiff must allege damages, in addition to those alleged for breach of contract, caused by the alleged fraud"). Here, plaintiffs failed to allege distinct damages resulting from their tort claims in Count Five.

Plaintiffs' argument that a separate and distinct duty

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exists because "Ohio law provides a general duty of good faith and fair dealing with respect to contracts" also fails to establish a basis to assert a separate tort action. Plaintiffs' Memo. In Opp., p. 6. Ohio's general duty of good faith and fair dealing does not create a separate cause of action from a breach of contract claim. *See, e.g.,Highway Equip. Co. v. Caterpillar, Inc.,* 707 F.Supp. 954, 958 (S.D.Ohio 1989) (stating that Ohio does not recognize "a general tort of bad faith" and citing precedent that " 'care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general principle of good faith and fair dealing" ') (citations omitted); Lokota *Local Sch. Dist. Bd. of Educ. v. Brickner,* 108 Ohio App.3d 637, 646, 671 N.E.2d 578, 584 (Ohio Ct.App.1996) (relying on Ohio precedent that recognizes "the fact that 'good faith' is part of a contract claim and does not stand alone").[FN12] Thus, plaintiffs cannot use the general principle of good faith and fair dealing as the basis for their tort claims in Count Five.

> FN12. A cause of action for the tort of bad faith may exist in the insurance context, however, where there is a special relationship between an insured and insurer. *See, e.g.Bullet Trucking, Inc. v. Glen Falls Ins. Co.,* 84 Ohio App.3d 327, 333-34, 616 N.E.2d 1123 (Ohio Ct.App.1992); *Kruse v. Vollmar,* 83 Ohio App.3d 378, 386-87, 614 N.E.2d 1136 (Ohio Ct.App.1992).

**\*10** Finally, plaintiffs' fraud claim under Count Five also fails because plaintiffs do not comply with the stringent requirements of Fed.R.Civ.P. 9(b). Pursuant to Fed.R.Civ.P. 9(b), in any complaint averring fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity.""Even against Rule 8's 'backdrop admonition of simplicity in pleading,'...'allegations of fraudulent misrepresentations must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made.'" *Advocacy Org. For Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.1999) (quoting *Coffey v. Foamex L.P.,* 2

F.3d 157, 161-62 (6th Cir.1993)). Plaintiffs must " 'at a minimum ... allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." ' *Id.* "Failure to plead an essential element of a fraud claim, however, warrants dismissal under Rule 9(b)." *FRC Int'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH,* No. 3:01 CV 7533, 2002 U.S. Dist. LEXIS 17559, at \*30 (N.D.Ohio Sept.4, 2002). Plaintiffs failed to state with particularity the circumstances that constitute their allegation of fraud.

### V. Conclusion

Based on the foregoing analysis, defendant's motion to dismiss on Counts III (unjust enrichment), IV (quantum meruit), and V (negligent misrepresentation and fraud) is GRANTED. Defendant's motion to dismiss on Count II (violation of federal law) is DENIED.

It is so ORDERED.

S.D.Ohio,2004.
Ruggles v. Bulkmatic Transport Co.
Slip Copy, 2004 WL 5376213 (S.D.Ohio)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 2792195 (M.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

C

Sykes v. First South Utility Const., Inc.
M.D.Tenn.,2006.
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee,
Nashville Division.
La'Nita D. SYKES
v.
FIRST SOUTH UTILITY CONSTRUCTION,
INC., et al.
No. 3:05-0658.

Sept. 25, 2006.

Patricia E. Crotwell, Richard James Braun, Braun
& Crotwell, PLLC, Nashville, TN, for Plaintiff.
James Nathan Duggins, III, Thomas E. Noble,
Tuggle, Duggins & Meschan, PA, Greensboro, NC,
William N. Bates, Molly R. Cripps, Farrar & Bates,
George H. Rieger, II, Anthony M. Noel, Leitner,
Williams, Dooley, and Napolitan, Nashville, TN,
for Defendants.

MEMORANDUM
TODD J. CAMPBELL, District Judge.
*1 Pending before the Court is Defendant Star Con-
struction, LLC's Motion for Summary Judgment
(Docket No. 33). Also pending before the Court is
Plaintiff's Motion for Review of the Magistrate
Judge's Order Denying Plaintiff's Motion to Amend
Her Complaint (Docket No. 43).

For the reasons stated herein, Defendant Star Con-
struction, LLC's Motion for Summary Judgment
(Docket No. 33) is GRANTED in part and
DENIED in part. Plaintiff's Motion for Review of
the Magistrate Judge's Order (Docket No. 43) is
GRANTED, and Plaintiff is given leave to amend
her Complaint to add additional factual allegations
relating to her retaliation claim against Defendant
Star Construction, LLC discovered prior to the dis-
covery deadline, and as more particularly set forth
herein. This case is referred to the Magistrate Judge
to determine whether an amended scheduling order,
including new trial date, is necessary in light of the

Court's decision.

FACTS

Plaintiff, La'Nita Sykes, a female resident of David-
son County Tennessee, filed suit against Defend-
ants, First South Utility Construction, Inc. ("First
South") and Star Construction, LLC ("Star Con-
struction") alleging employment discrimination
based upon gender and retaliation in violation of
Title VII of the Civil Rights Act of 1965, 42 U.S.C.
§ 2002e, et seq., 42 U.S.C. § 2002e-2, et seq. and 42
U.S.C. § 2002e-3, et seq. ("Title VII"), the Civil
Rights Act of 1991, 42 U.S.C. § 1981a ("Section
1981"), and the Equal Pay Act, 29 U.S.C. § 206(d)
("Equal Pay Act"). Plaintiff's allegations are a res-
ult of having allegedly been paid less than male em-
ployees performing substantially the same job, and
as a result of having been terminated from employ-
ment in January, 2004 in retaliation for filing a
charge of discrimination with the EEOC. Plaintiff
and First South have subsequently entered into an
Agreed Order of Dismissal (Docket No. 52), and
this case has been dismissed with prejudice as to
First South.

The facts before the Court show that Plaintiff began
working for First South around April, 1995 (Docket
No. 46 at 1). Plaintiff resigned from her employ-
ment with First South in 1996, but reapplied for
employment with First South, and was reinstated, in
May, 1999 (Docket No. 46 at 1). Plaintiff began her
employment with First South as a laborer (Docket
No. 46 at 2). Plaintiff was eventually promoted to
the position of supervisor of First South's Gallatin
District office (Docket No. 46 at 2). After her pro-
motion to supervisor, Plaintiff's pay remained that
of a clerk (Docket No. 54 at 3). Plaintiff com-
plained repeatedly about the disparity of her pay
with that of other supervisors of First South
(Docket No. 54 at 3). In August, 2003, Plaintiff
filed an EEOC charge against First South alleging
that First South discriminated against her in her pay
because of her gender (Docket No. 54 at 5).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


EXHIBIT
K

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 2792195 (M.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

In late 2002, First South made the decision to close its Dickson District office and James Burgess ("Burgess"), the supervisor of the Dickson District office was laid off (Docket No. 54 at 4). In early 2003, business at First South's Clarksville District office became slow and First South made the decision also to close that office (Docket No. 54 at 4). Benny McKimm ("McKimm"), supervisor of the Clarksville District office went back out into the field to work on a crew (Docket No. 54 at 4). Plaintiff assumed some of the supervisory duties for the remaining Dickson and Clarksville operations (Docket No. 54 at 4). In the Fall of 2003, Burgess was called back from his lay off to work part-time for First South and assist Plaintiff with her supervisory responsibilities of the Clarksville and Dickson District offices (Docket No. 54 at 5).

**\*2** In November, 2003, the assets of First South were purchased by Star Construction, and Plaintiff became an employee of Star Construction (Docket No. 46 at 2). Shortly after the acquisition of First South, Star Construction made the decision to reopen its Dickson and Clarksville District offices and have one supervisor supervise these Districts (Docket No. 46 at 2-3). Star Construction also made the decision to have one supervisor supervise its Gallatin and Murfreesboro District offices (Docket No. 46 at 3). At the time the decision was made to combine the two District offices, Plaintiff was supervisor of the Gallatin District Office and Kenneth Potts ("Potts") was supervisor of the Murfreesboro District Office. On January 2, 2004, McKimm was recalled and given the job of supervising the combined Dickson and Clarksville District offices (Docket No. 46 at 5). On January 5, 2004, Potts was given the job of supervising the combined Gallatin and Murfreesboro District offices (Docket No. 46 at 5). Plaintiff's employment with Star Construction was terminated on January 5, 2005 (Docket No. 46 at 4). Bruce Clemment ("Clemment"), Star Construction's vice president, and Glenn Hopkins ("Hopkins"), Star Construction's area manager for Middle Tennessee, made the decision to terminate Plaintiff (Docket No. 54 at 6).

It is undisputed that no employee has ever been hired to replace Plaintiff as supervisor of Star Construction's Gallatin District office (Docket No. 46 at 5). It is also undisputed that McKim has supervised Star Construction's Clarksville and Dickson District offices since January 2, 2004, and Potts has managed Star Constructions' Gallatin and Murfreesboro District offices since January 5, 2004 (Docket No. 46 at 4-5). Furthermore, it is undisputed that both McKimm and Potts have more years of supervisory experience than Plaintiff (Docket No. 46 at 3-4). It is disputed, however, whether McKimm and Potts have broader experience than Plaintiff (Docket No. 46 at 3-4).

Plaintiff filed an EEOC charge against Star Construction on January 6, 2004, the day after she was terminated, alleging that she was terminated in retaliation for filing her previous charge of discrimination (Docket No. 38-6 at 3 and Docket No. 46 at 7). In the course of the EEOC investigation, Star Construction represented to the EEOC that Plaintiff was terminated because of the elimination of her supervisory position and not because of her prior discrimination charge against First South (Docket No. 47-5 at 7-8). Star Construction also represented to the EEOC that it did not have any clerical or general laborer positions in Middle Tennessee, but if a position became available, Plaintiff would be the first offered the position (Docket No. 47-11 at 8).

On August 25, 2006, Plaintiff filed her Complaint in this matter. Initial case management orders were entered on October 12, 2005 (Docket Entry Nos. 14-15) which provided for a January 31, 2006 deadline for filing motions to amend the pleadings, a May 31, 2006 deadline for completion of fact discovery, and a June 30, 2006 deadline for filing dispositive motions. The trial of this matter was, and remains, scheduled to begin on December 19, 2006. By subsequent Order (Docket No. 26), the deadline for filing motions to amend the pleadings was extended to March 10, 2006. By Order entered May 15, 2006 (Docket No. 28), the deadline for completion of fact discovery was extended to June 20, 2006, the deadline for filing discovery motions was extended to July 14, 2006, and the deadline for fil-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 3
Not Reported in F.Supp.2d, 2006 WL 2792195 (M.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

ing any dispositive motion was extended to July 31, 2006.

**\*3** On June 12, 2006, Plaintiff filed a motion to amend the Complaint to add additional factual allegations and a new claim for retaliation under the Tennessee Human Rights Act, Tenn.Code Ann. § 4-21-101, et seq. ("THRA") relating to facts discovered by Plaintiff during depositions taken after the March 10, 2006 deadline for motions to amend the pleadings, but prior to the June 20, 2006 deadline for completion of fact discovery (Docket No. 41). Plaintiff's motion was denied by Order (Docket No. 41) entered by the Magistrate Judge on the basis that the motion was filed after significant discovery had been completed and that only two days were left in the discovery period at the time briefing on Plaintiff's motion was complete. The Magistrate Judge also found that the filing of an amended complaint would require the reopening of discovery and the extension of the deadlines for filing dispositive motions (Docket No. 41). Furthermore, the Magistrate Judge found that it was always the intent of the parties that the deadline for filing motions to amend the pleadings would precede the deadline for completion of fact discovery. Finally, the Magistrate Judge felt compelled to deny Plaintiff's motion because of Plaintiff's delay in filing the motion and prejudice to Defendants if the motion were granted. In response to the Order (Docket No. 41) of the Magistrate Judge, Plaintiff has filed a Motion for Review of the Magistrate Judge's Order (Docket No. 43) requesting that the Court review the Magistrate Judge's denial of her motion to amend the Complaint.

In addition, Star Construction has filed a motion for summary judgment (Docket No. 33) arguing that Plaintiff's Section 1981 claim is barred by the one year statute of limitations period applicable to personal injury actions in Tennessee. Star Construction also argues that Plaintiff's claim of gender discrimination has no merit. In addition, Star Construction asserts that Plaintiff's claim of retaliation should be dismissed because there is no direct evidence of retaliation and that Plaintiff cannot establish the elements necessary to set forth a prima facie case for

retaliation under Title VII. Alternatively, Star Construction argues that Plaintiff cannot prove that its legitimate, non-retaliatory reasons for Plaintiff's termination was a pretext for unlawful retaliation. Star Construction further asserts that it is entitled to the same actor inference on Plaintiff's claims of discrimination and retaliation in that Clemment was the same person who promoted her into the position of supervisor, then subjected her to discrimination and retaliation. Finally, Star Construction asserts that Plaintiff bears a higher burden of persuasion with respect to her claim of retaliation because Plaintiff was removed from her supervisory position because of a reduction in force.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir.2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. Id.;Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir.2002).

**\*4** To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## ANALYSIS

### 1. Motion for Review.

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the Court may reverse or modify the ruling of the Magistrate Judge if it is clearly erroneous

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 2792195 (M.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

or contrary to law. Fed.R.Civ.P. 72(a).Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires. Fed.R.Civ.P. 15(a). In determining whether "justice so requires" the Court to grant a motion for leave to amend, the Court enjoys broad discretion. *Tidik v. Ritsema,* 938 F.Supp. 416, 425-26 (E.D.Mich.1996). The United States Supreme Court has held that leave to amend should be granted unless there is: 1) undue delay; 2) bad faith or dilatory motive on the part of the movant; 3) repeated failure to cure deficiencies by amendments previously allowed; 4) undue prejudice to the opposing party if the amendment were granted; 5) futility of the amendment; or 6) other "declared or apparent reasons." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Similarly, the Sixth Circuit has held that "in deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment."*Perkins v. American Electric Power Fuel Supply, Inc.,* 246 F.3d 593, 605 (6th Cir.2001) (citing *Gen. Elec. Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir.1990)). The Court is not required to grant leave to amend a complaint when permitting such amendment would amount to an exercise in futility and not withstand a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir.2005). Furthermore, when a party seeks to amend in the late stages of a case, the moving party bears "an increased burden to show justification for failing to move earlier."*Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 458-59 (6th Cir.2001).

In the present case, the Court finds that the interests of justice requires the Court to allow Plaintiff to amend her Complaint to add additional factual allegations of retaliation discovered the first week of June, 2006 during discovery depositions and a claim of retaliation pursuant to the THRA. In reaching this conclusion, the Court finds that there is no evidence of undue delay on the part of Plaintiff.

Rather, the record before the Court indicates that Plaintiff filed her Motion to Amend (Docket No. 29) within days of discovery of the additional factual allegations related to Plaintiff's retaliation charge and before the expiration of the June 20, 2006 discovery deadline. The Court also finds, as did the Magistrate Judge, that there is no showing of bad faith or dilatory motive on behalf of Plaintiff. In addition, the Court finds that there is no evidence of repeated failures by Plaintiff to cure deficiencies by amendments previously allowed. Furthermore, there is no element of surprise to Star Construction based upon the availability of the discovered information to Star Construction in its own records. It also should not be a surprise to Star Construction that Plaintiff would seek to amend her Complaint upon discovery of the opening of the Nashville office in light of its earlier representations to the EEOC that Plaintiff would be first in line for any new position in Middle Tennessee. Finally, there is evidence of earlier discovery attempts by Plaintiff to discover information related to Star Construction's hiring in Middle Tennessee which would have put Star Construction on notice of the relevance of the requested information to Plaintiff's claims (Docket Nos. 43-2 at 7 and 47-11 at 8). Any prejudice to Star Construction by allowing the amendment can be cured by amendment of the scheduling order and/or trial date.

**\*5** With respect to the issue of futility, the Court finds that there is no showing of futility. As indicated earlier, futility is measured by whether an amendment would withstand a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), a complaint, construed in the light most favorable to a plaintiff, may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Tennessee Protection and Advocacy v. Bd. of Educ. of Putnam County, Tennessee,* 24 F.Supp.2d 808, 813 (M.D.Tenn.1998). In the present case, Star Construction asserts that futility is shown by Plaintiff's failure to exhaust her administrative remedies. More specifically, Star Construction asserts that Plaintiff has not filed a claim with the EEOC

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 5
Not Reported in F.Supp.2d, 2006 WL 2792195 (M.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

setting forth a retaliation claim for failure to hire and that Plaintiff's EEOC charge does not allege any discrimination or retaliation after January, 2004. In addition, Star Construction argues that Plaintiff has alleged a state law retaliation cause of action for failure to hire, but has at no time sought re-employment with Star Construction since her termination.

The Court finds that retaliation claims based upon conduct that occurred after the EEOC charge was filed are generally excepted from the administrative filing requirement. *Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir.1998). Thus, futility is not found by Plaintiff's failure to amend her EEOC charge to include allegations of retaliation occurring after January, 2004. In addition, the Court is not persuaded that futility is shown with respect to Plaintiff's asserted retaliation claim by Plaintiff's failure to seek re-employment with Star Construction when Star Construction itself has admitted that Plaintiff was not terminated but laid off as a result of lack of work and in line for the first available clerical or laborer position in Middle Tennessee (Docket No. 43-2 at 7 and Docket No. 47-11 at 8).

Finally, the Court finds that Plaintiff has shown justification for her earlier failure to move to amend her Complaint. As indicated earlier, the record before the Court shows that Plaintiff attempted to ascertain the facts upon which her request to amend the Complaint is based at an earlier stage of the case, but that the relevant information was not disclosed until the June, 2006 depositions (Docket Nos. 43-2 at 7 and 47-11 at 8).

Accordingly, Plaintiff's Motion for Review of the Magistrate Judge's Order (Docket No. 43) is GRANTED. Plaintiff is given leave to amend her Complaint to add additional factual allegations of retaliation and to add a claim of retaliation pursuant to the THRA. Such additional allegations and claim of retaliation shall be related to facts discovered by Plaintiff during discovery in June, 2006 that Star Construction had opened a new office in Nashville in the summer of 2005 but did not offer any of the

new employment positions to Plaintiff in direct contradiction to prior representations made to the EEOC. Plaintiff shall file her amended Complaint by October 11, 2006.

2. Section 1981 Statute of Limitations.

**\*6** The Court finds that Plaintiff's Section 1981 claim is governed by the four year federal statute of limitations for actions on statutory remedies created after December 1, 1990. *See, Jones v. R .R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). Congress has enacted a four year statute of limitations for causes of action arising under an Act of Congress enacted after December 1, 1990. *R.R. Donnelley*, 541 U.S. at 369;28 U.S.C. § 1658(a). Plaintiff's discrimination and retaliation claims are made possible by the Civil Rights Act of 1991 which was enacted to prevent discriminatory treatment after the formation of a contractual relationship, including after the formation of the employment relationship. *R.R. Donnelley*, 541 U.S. at 370. "The Act redefined § 1981's key 'make and enforce contract' language to include the 'termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship'" *Id.*(quoting Section 1981(b)). See also, *Anthony v. BTR Automotive Sealing Systems, Inc.*, 339 F.3d 506, 514 (6th Cir.2003); *Miller v. Federal Express Corp.*, 56 F.Supp.2d 955, 965 (W.D.Tenn.1999) ("With the passage of the Civil Rights Act of 1991, Congress created new substantive rights to prevent the discriminatory treatment of a future litigant after the formation of a contract including actions having a direct bearing on a person's terms and conditions of employment.") The Court is not persuaded by Star Construction's argument that Plaintiff's claims under the Civil Rights Act of 1981 are foreclosed because Plaintiff referred to those claims as being brought under 42 U.S.C. § 1981a and not § 1981b. Thus, the Court finds that the four year limitations period of 28 U.S.C. 1658(a) for causes of action arising under an Act of Congress enacted after December 1, 1990 applies to Plaintiff's claim under Section 1981.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Accordingly, Star Construction's Motion for Summary Judgment (Docket No. 33) on Plaintiff's claim under Section 1981 based upon the statute of limitations is DENIED.

### 3. Gender Discrimination.

Plaintiff does not contest the entry of summary judgment on her Title VII claims of gender discrimination in regard to her rate of pay and her claims pursuant to the Equal Pay Act. Accordingly, Star Construction's Motion for Summary Judgment (Docket No. 33) on Plaintiff's claims of gender discrimination under Title VII and the Equal Pay Act is GRANTED and these claims are dismissed.

### 4. Retaliation for Termination.

In order to establish a claim for retaliation under Title VII, Plaintiff must show: 1) that she engaged in a protected activity; 2) that Star Construction had knowledge of her exercise of protected activity; 3) that an adverse employment decision occurred; and 4) that there was a causal connection between the protected act and the adverse decision. *Reed v. Cracker Barrel Old Country Store, Inc.,* 133 F.Supp.2d 1055, 1070 (M.D.Tenn.2000).[FN1] If Plaintiff is able to establish a prima facie claim, then the burden shifts to Star Construction to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* at 1069-1070.If Star Construction is able to carry this burden, then Plaintiff must show that the articulated reasons are mere pretext for retaliation. *Id.* In the present case, there is no real dispute over whether Plaintiff can establish the first three elements of her prima facie case of retaliation. Rather, the focus is on whether Plaintiff can establish a causal connection between the filing of her charge of discrimination with the EEOC against First South in August, 2003 and her termination by Star Construction in January, 2004.

> FN1. Plaintiff's Section 1981 claim also is analyzed in the same manner as her claim under Title VII. *Patterson v. McLean Credit Union,* 491 U.S. 164, 185-88, 109 S.Ct. 2363, 2377-78, 105 L.Ed.2d 132 (1989)*overruling on other grounds recog-*nized in, *Hamilton v. City of Martin,* 129 F.3d 1264 (6th Cir.1997); *Harper v. BP Exploration & Oil Co.,* 896 F.Supp. 743, 747 (M.D.Tenn.1995), *aff'd,*134 F.3d 371 (6th Cir.1998); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 31 (Tenn.1996).

**\*7** The Court finds that Plaintiff has come forth with insufficient evidence to establish a causal connection between the protected activity and her termination other than the proximity in time between Plaintiff's filing of her first EEOC charge and her layoff by Star Construction. The Sixth Circuit has held that temporal proximity alone is insufficient to establish a causal connection for a retaliation claim. See, *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 363 (6th Cir.2001); *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (citing *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997)). Assuming, however, that Plaintiff is able to establish her prima facie case of retaliation, Star Construction has come forward with evidence of a legitimate nondiscriminatory reason for its decision to layoff Plaintiff in January, 2004. More specifically, it is undisputed that at the time of Plaintiff's layoff, Star Construction had made the decision to have one supervisor supervise its Gallatin and Murfreesboro District offices and to reopen its Clarksville and Dickson District offices under one supervisor (Docket No. 46 at 3). It is also undisputed that Potts, the manager of Star Construction's Murfreesboro District was given the job of supervising the combined Murfreesboro and Gallatin District offices and that McKimm was given the job of supervising the combined Clarksville and Dickson District offices (Docket No. 46 at 4-5). In addition, it is undisputed that both McKimm and Potts had more telephone construction/industry experience and more supervisory experience than Plaintiff (Docket No. 46 at 3-4). Furthermore, it is undisputed that no employee has ever been hired to replace Plaintiff as supervisor of Star Construction's Gallatin District (Docket No. 46 at 5). Finally, the Court finds that Plaintiff has failed to come forth with any evidence to show that Star Construction's decision to combine its Gallatin and Murfreesboro District offices and retain Potts over Plaintiff and to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 2792195 (M.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

reopen its Dickson and Clarksville District offices under McKimm was pretext for discrimination.

Accordingly, Star Construction's Motion for Summary Judgment (Docket No. 33) on Plaintiff's retaliation claim under Title VII and Section 1981 related to her termination is GRANTED.

Given the decision of the Court, it is unnecessary to address Star Construction's assertions that it is entitled to the same actor inference with respect to Plaintiff's claims or whether Plaintiff's burden of persuasion with respect to her retaliation claim for termination is higher than usual.

This case shall proceed as to Plaintiff's retaliation claim under Title VII, Section 1981 and the THRA related to her January, 2004 Charge of Discrimination filed with the EEOC against Star Construction based upon allegations regarding Star Construction's post layoff conduct to be filed by Plaintiff in her amended Complaint.

The case currently remains set for a pretrial conference on December 11, 2006 at 1:00 p.m. and a trial on December 19, 2006 at 9:00 a.m.

**\*8** IT IS SO ORDERED.

M.D.Tenn.,2006.
Sykes v. First South Utility Const., Inc.
Not Reported in F.Supp.2d, 2006 WL 2792195 (M.D.Tenn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2005 WL 4889258 (S.D.Ind.)
(Cite as: Slip Copy)

C

Nino v. Haynes Intern., Inc.
S.D.Ind.,2005.
Only the Westlaw citation is currently avail-
able.NOT INTENDED FOR PUBLICATION IN
PRINT
United States District Court,S.D. Indi-
ana,Indianapolis Division.
Luis J. NINO, Plaintiff,
v.
HAYNES INTERNATIONAL, INC., Defendant.
No. 1:05-cv-0602-JDT-TAB.

Aug. 19, 2005.

Jeffrey B. Halbert, Kenneth E. Lauter, Haskin Laut-
er Larue & Gibbons, Indianapolis, IN, for Plaintiff.
Robert P. Lombardi, Stephen L. Scott, The Kull-
man Firm, New Orleans, LA, for Defendant.

## ENTRY ON DEFENDANT'S MOTION TO DIS-
MISS (Docket No. 14) [FN1]

> FN1. This Entry is a matter of public re-
> cord and will be made available on the
> court's web site. However, the discussion
> contained herein is not sufficiently novel
> to justify commercial publication. JOHN
> DANIEL TINDER, District Judge.

*1 Plaintiff Luis J. Nino ("Nino") brings a claim of
discrimination under the Uniformed Services Em-
ployment and Reemployment Act of 1994, 38
U.S.C. §§ 4301-4333 ("USERRA"), against his
former employer, Haynes International, Inc.
("Haynes"), for termination of his employment.
This matter is presently before the court on Defend-
ant's Motion to Dismiss (Docket No. 14) for failure
to state a claim upon which relief can be granted
under Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

Haynes employed Nino from September 14, 1998
until December 10, 1998. (Compl.¶ 9, 21.)
Throughout his employment with Haynes, Nino
was an active member in the United States Marine
Corps Indiana Ready Reserve (IRR) Marines.
(Compl.¶ 11.) On December 10, 1998, Haynes ter-
minated Nino's employment. (Compl.¶ 21.) Nino
alleges that Haynes willfully and intentionally sub-
jected him to unlawful discriminatory treatment by
terminating his employment in violation of
USERRA because of Nino's military commitments
and duties. (Compl.¶ 26.) Nino failed to commence
this action until he filed the complaint on April 25,
2005, nearly six and a half years after the termina-
tion occurred.

## II. DISCUSSION

Haynes contends that Nino's USERRA claim is
subject to a four-year statute of limitations found in
28 U.S.C. § 1658(a) (" § 1658(a)") and Nino's
claim is consequently time-barred because Nino
filed the complaint over six years after the alleged
discriminatory termination occurred. Conversely,
Nino argues that § 1658(a)'s statute of limitations is
inapplicable to civil actions brought under
USERRA. In fact, Nino maintains that no applic-
able statute of limitations applies to USERRA
claims and his claim cannot be time-barred except
through equitable measures such as the doctrine of
laches. Thus, the issue before the court is whether
28 U.S.C. § 1658(a) applies to a cause of action
brought under USERRA. For the reasons set forth
below, this court holds that the four-year statute of
limitations found in 28 U.S.C. § 1658(a) applies to
civil actions brought under USERRA.

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss is
to test the sufficiency of the complaint, not to re-
solve the case on the merits. See5B Charles Alan
Wright & Arthur R. Miller, Federal Practice and
Procedure § 1356 (3d ed.2004). When considering
such motion, the court must accept as true all factu-
al allegations in the complaint and draw all reason-
able inferences in favor of the plaintiff. Cole v. U.S.
Capital, 389 F.3d 719, 724 (7th Cir.2004); Hentosh
v. Herman M. Finch Univ. of Health Sciences/The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



*Chi. Med. Sch.,* 167 F.3d 1170, 1173 (7th Cir.1999). Dismissal is appropriate only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). In this instance, the court will accept as true Nino's factual allegations. Thus, for purposes of ruling on Haynes's motion to dismiss, the court assumes that Haynes terminated Nino on December 10, 1988 because of Nino's military commitments.

### B. Applicable Statute of Limitations

**\*2** A dismissal under Rule 12(b)(6) is appropriate if, on the face of the complaint, a party's claims are barred by the statute of limitations. *Small v. Chao,* 398 F.3d 894, 898 (7th Cir.2005) (citing *Perry v. Sullivan,* 207 F.3d 379, 382 (7th Cir.2000)). Nino asserts a claim under USSERA, a federal statute that unfortunately fails to unambiguously identify a statute of limitations. While USERRA provides that "No State statute of limitations shall apply to any proceeding under this chapter," it neglects to address the possibility of an applicable federal statute of limitations. 38 U.S.C. § 4323(i). Furthermore, Title 28 contains a general four-year statute of limitations that applies to all new civil causes of action "arising under an Act of Congress enacted after" December 1, 1990, unless the new law specifically provides otherwise. 28 U.S.C. § 1658(a). Congress enacted USERRA in 1994. Accordingly, the question remains whether § 1658(a)'s four-year statute of limitations applies to USERRA actions.

#### 1. Reemployment Rights Enacted by Congress

In order to apply § 1658(a)'s four-year statute of limitations, the court must first show how USERRA "aris[es] under an Act of Congress" enacted after 1990. 28 U.S.C. § 1658(a). In order to do so, it is helpful to first provide a brief history of veterans' reemployment rights. USERRA is not Congress's first attempt to protect the employment rights of those who serve our country in the military. In fact, prior to World War II, Congress passed the Select-

ive Training and Service Act of 1940, Chapter 720, 54 Stat. 885, which, among other purposes, insured that persons who left their private employment to serve in the military had the right to reemployment upon their return with comparable position, pay, and status. § 8(b), 54 Stat. at 890. Section 8(e) of the 1940 Act created a federal cause of action permitting military personnel to seek injunctive relief and lost wages against non-complying employers. In 1974, Congress strengthened the rights established under the 1940 Act when it passed the Veterans' Reemployment Rights Act ("VRRA").[FN2] The VRRA prohibited military reservists from being "denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces."38 U.S.C. § 4301(b)(3) (amended 1994 by USERRA). Like the 1940 Act, the VRRA provided only injunctive relief and lost wages and benefits. 38 U.S .C. § 4302 (amended 1994 by USERRA).

> FN2.38 U.S.C. § 2021, *et. seq.* (1991) (recodified at 38 U.S.C. § 4301*et seq.* by Pub.L. No. 102-568, Title V, § 506(a), 106 Stat. 4340 (1992)), *amended by* USERRA, Pub.L. No. 103-353, 108 Stat. 3149 (1994).

In 1994, Congress replaced the VRRA with USERRA to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions."H.R.Rep. No. 103-65, at 18 (1993). As will be explained further below, USERRA materially changed the existing VRRA law by allowing liquidated damages, a relief that was not previously available to a plaintiff under VRRA. This change increased the rights available to the plaintiff, and the possible liabilities of the defendant. This important change requires the application of § 1658(a)'s four-year statute of limitations.

#### 2. The Supreme Court's reasoning in Jones suggests that § 1658(a) applies to USERRA

**\*3** Section 1658(a) mandates the use of the four-

Slip Copy                                                                                    Page 3
Slip Copy, 2005 WL 4889258 (S.D.Ind.)
**(Cite as: Slip Copy)**

year federal statute of limitations for all civil actions "arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658(a). USERRA was enacted after December 1, 1990. Nonetheless, Nino contends that USERRA should be construed as an amendment to the VRRA and that his cause of action arises out of rights that existed prior to 1990 under the VRRA.

The Supreme Court recently addressed the applicability of 28 U.S.C. § 1658(a) to amendments of prior law. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004).*Jones* involved a defendant's motion to dismiss the plaintiff's racial harassment case brought under 42 U.S.C. § 1981. As first enacted in 1866, § 1981 guaranteed all persons the right to make and enforce contracts. In 1989, the Supreme Court clarified that the § 1981 right "to make and enforce contracts" did not protect against harassing conduct that occurred after the formation of the contract. *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989). Accordingly, § 1981 did not protect a plaintiff against discriminatory conduct occurring after the formation of the contract, such as a hostile work environment or a wrongful discharge. In 1991, two years after the *Patterson* decision, Congress overruled *Patterson* by amending § 1981 and adding a new subsection that defines the term "make and enforce contracts" to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," which extended § 1981 protection beyond the mere formation of contracts. 42 U.S.C. § 1981(b). In *Jones,* the plaintiff's racial harassment claim included the type of allegations that would not have violated § 1981 if the claim had been brought prior to the 1991 amendment. The defendant moved to dismiss the claim as barred by the statute of limitations. Prior to the § 1658(a)'s enactment, the statute of limitations for a § 1981 case was borrowed from the applicable state law. The issue before the Supreme Court was whether § 1658(a)'s four-year statute of limitations or the borrowed state two-year statute of limitations should apply. Plaintiffs argued that the 1991 amendment to § 1981 constituted an enactment of Congress that occurred after § 1658's enactment; thus, any case

arising under the amended § 1981 would be subject to § 1658(a)'s four-year statute of limitations.

In considering the matter, the Court found that § 1658(a) was to have a broad reach. *Jones,* 541 U.S. at 380-81. The distinction between an amendment and a completely new statute is not dispositive. Instead, "what matters is the substantive effect of an enactment-the creation of new *rights of action* and corresponding *liabilities*-not the format in which it appears in the Code."*Id.* at 381 (emphasis added). The Court held that "a cause of action 'aris [es] under an Act of Congress enacted' after December 1, 1990-and therefore is governed by § 1658's four-year statute of limitations-if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Id.* at 382.Following the Supreme Court's guidance in *Jones,* the court must determine whether the plaintiff's claim "was made possible by" the enactment of USERRA. *Id.* Or, as *Jones* states, whether the plaintiff's claim contains "new rights of action and corresponding liabilities."*Id.* at 381.

### 3. The liquidated damages provision materially changes the cause of action

**\*4** Perhaps Nino would have had a claim against Haynes under the VRRA if the Act was still current law. However, the VRRA has been replaced by USERRA. Unfortunately for Nino, the nature of the USERRA claim materially differs from a VRRA claim because the USERRA claim contains additional rights and liabilities. USERRA permits the plaintiff to seek liquidated damages, a relief that was not previously available to a plaintiff under the VRRA. 38 U.S.C. § 4323(d)(1)(c)). Because liquidated damages would not have been available to Nino under the VRRA, Nino's cause of action under USERRA, which includes the right to seek liquidated damages, was made possible only through the enactment of USERRA. Thus, § 1658(a) must apply and the cause of action is subject to the four-year statute of limitations.

When Congress included the liquidated damages provision in USERRA, it transformed what was his-

torically a claim for equitable relief into a claim for legal relief. As one district court noted, "the enforcement section of the USERRA relating to private employers, 39 U.S.C. § 4323, is materially different from the enforcement provision of the VRRA because it requires an employer to pay liquidated damages if its violation of the USERRA is found to be willful."*Spratt v. Guardian Auto. Prods., Inc.,* 997 F.Supp. 1138, 1140 (N.D.Ind.1998). This additional right for the plaintiff, and additional liability of the defendant, did not exist prior to USERRA's enactment. The right to liquidated damages effects a material change in the type of claim a plaintiff may bring. Prior to USERRA, actions under the VRRA were considered actions in equity and not entitled to a jury trial. *See* Troy v. Hampton, 756 F.2d 1000, 1003 (4th Cir.1985) (claims under the VRRA are equitable in nature and not entitled to a jury trial); *Novak v. Mackintosh,* 937 F.Supp. 873, 879 (D.S.D.1996) (allowing the doctrine of laches to apply because the VRRA provides an equitable remedy). The Seventh Circuit has ruled that "actions seeking liquidated damages provided by statute are 'suits at common law' for constitutional purposes."*Calderon v. Witvoet,* 999 F.2d 1101, 1109 (7th Cir.1993) (citing *Video Views, Inc. v. Studio 21, Ltd.,* 925 F.2d 1010, 1014-17(7th Cir.1991)). Accordingly, USERRA's additional right to liquidated damages transfers the action from one in equity to one at law, requiring the Seventh Amendment right to a jury.

USERRA's liquidated damages provision is comparable to those reviewed by the Seventh Circuit in *Calderon* (Migrant and Seasonal Agricultural Workers Protection Act of 1983 ("AWPA")) and *Video Views* (Copyright Act of 1976). Like USERRA's provision, both the AWPA and the Copyright Act include provisions allowing liquidated damages after a showing of willful misconduct on the defendant's part. 29 U.S.C. § 1854(c)(1); 17 U.S.C. § 504(c)(2)(2004). A jury must make the requisite willfulness finding. *Calderon,* 999 F.2d at 1109;*Video Views,* 925 F.2d at 1016;*see also Duarte v. Agilent Techs., Inc.,* 366 F.Supp.2d 1036, 1038 (D.Colo.2005) (persuasively comparing

USERRA's liquidated damages provision to ADEA's liquidated damages provision, which was ruled by the Supreme Court to be punitive in nature, entitling the plaintiff to a jury trial); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125 (1985)); *Spratt,* 997 F.Supp. at 1142. Thus, the liquidated damages provision converts a USERRA action into an action at law, not equity. Indeed, Nino's own complaint asks the court to award liquidated damages and attorney fees and is accompanied with a demand for a jury trial. (Compl. at 5-6). The rights to liquidated damages and a jury trial are not only rights not available to Nino prior to USERRA, but likewise the possibility of liquidated damages constitutes additional liability that did not exist to Haynes under the VRRA. Under the *Jones* reasoning, such a claim would not be possible prior to § 1658(a)'s enactment; thus, the statute of limitations must apply.

**\*5** Nino notes that the only other court to address the issue presently before this court, whether § 1658(a) applies to USERRA claims, ruled that "there is no statute of limitations that applies" to a USERRA claim. *Akhdary v. City of Chattanooga,* No. 1:01-CV-106, 2002 WL 32060140, at *6 (E.D.Tenn. May 22, 2002). The *Akhdary* holding is less than persuasive for two reasons. First, the *Akhdary* opinion fails to provide adequate explanation or reasoning for its holding. Instead, it summarily states that "USSERA does not establish a new cause of action; instead, it amends the preexisting law of the VRRA. Thus, there is no statute of limitations that applies."*Id.* Second, the *Akdary* court did not have the guidance subsequently provided by the Supreme Court in *Jones. Akdary* apparently relies on the amendment/new law distinction. *Jones* convincingly dismisses the importance of such distinction: "An amendment to an existing statute is no less an 'Act of Congress' than a new, stand-alone statute. What matters is the substantive effect of an enactment-the creation of new rights of action and corresponding liabilities-not the format in which it appears in the Code."*Jones,* 541 U.S. at 381. As previously noted, the enactment of USERRA created new rights and liabilities that were not available prior to its enactment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In addition, Nino contends that the congressional intent behind USERRA demonstrates that there is to be no statute of limitations.[FN3] This argument is unpersuasive. Aside from the ordinary lack of utility of congressional reports in assessing congressional intent,[FN4] the committee reports quoted by Nino illustrate nothing more than Congress's intent to exclude the borrowing of state statutes of limitations. This court recognizes that both the VRRA and USERRA expressly prohibit the borrowing of state statute of limitations. Likewise, this court admittedly recognizes that there is no case law applying a federal statute of limitations to a VRRA claim. Such a result would be expected, since at the time the VRRA was enacted no general federal statute of limitations act similar to § 1658(a) existed. The same cannot be said of the USERRA. Congress, less than four years prior to passing USERRA, enacted § 1658(a) and established a general federal statute of limitations applicable to all federal civil actions enacted after December 1, 1990. If Congress intended § 1658(a) not to apply to USERRA, then it could have expressly done so. But while Congress took the measure to expressly reject the application of state statutes of limitations, it knew of § 1658(a)'s statute of limitations and chose not to expressly exclude the possible use of such statute of limitations. While Congress's failure to expressly exclude the applicability of § 1658(a) is not, by itself, determinative, it provides sufficient persuasive evidence to dismiss Nino's arguments concerning congressional intent.

> FN3. Nino provided the following two excerpts from the Congressional Committee reviewing the revisions contained in USERRA:
> The Veterans' Reemployment Rights (VRR) provisions of Federal law, which safeguard employment and reemployment rights in civilian employment of members of the uniformed services, have been in effect for over fifty years. Although the law has effectively served the interests of veterans, members of the Reserve Components, the Armed Forces and employers, the current statute is complex and sometimes

ambiguous, thereby allowing for misinterpretation ... Accordingly, the primary goals of the Committee, in undertaking the revision of chapter 43, were to clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions.
> H.R.Rep. No. 103-65(1), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2451.
> Section 4322(d)(7) would reaffirm the 1974 amendment to chapter 43 that no State statute of limitations shall apply to any action under this chapter. It is also intended that state statutes of limitations not be used even by analogy. *See Stevens v. Tennessee Valley Authority,* 712 F.2d 1047, 1057 (6th Cir.1983). Moreover, the Committee reaffirms, as we made clear in the 1974 legislative history, "that the time spent by the government agencies charged with the administration and enforcement of this Act in investigation, negotiation, and preparation for suit shall [not] be charged against the veteran in any consideration of a time-barred defense," i.e., laches, Senate Report No. 93-907, 93rd Cong., 2d Sess. at 111-112 (June 10, 1974).
> *Id.* at 2472.

> FN4. *See, e.g., Conroy v. Aniskoff,* 507 U.S. 511, 519 (1993) (Scalia, J., concurring) ("The greatest defect of legislative history is its illegitimacy. We are governed by laws, not by the intentions of legislators.").

Because the USERRA claim contains additional rights and liabilities that did not exist under the VRRA, this court holds that, for purposes of § 1658(a), USERRA is a "civil action arising under an Act of Congress enacted after" December 1, 1990, and is therefore subject to § 1658(a)'s four-year statute of limitations. Nino alleges that the discriminatory termination occurred on December 10, 1998. Nino filed his complaint with this court well outside the applicable four-year statute of limitations. Accordingly, Haynes's Motion to Dismiss will be **GRANTED**.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 6
Slip Copy, 2005 WL 4889258 (S.D.Ind.)
**(Cite as: Slip Copy)**

### III. Conclusion

**\*6** For all the foregoing reasons, Defendant
Haynes's Motion to Dismiss for failure to state a
cause upon relief can be granted will be **GRAN-
TED.**[FN5]

> [FN5.] The Defendant's Second Motion to
> Dismiss (Docket No. 22) appears to be
> well taken also. However, because of the
> resolution of the instant motion to dismiss,
> the Second Motion does not need to be ad-
> dressed.

S.D.Ind.,2005.
Nino v. Haynes Intern., Inc.
Slip Copy, 2005 WL 4889258 (S.D.Ind.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Monday, September 24, 2007

Nation & World | Health | Money & Business | Education | Opinion | Photos & Video | Rankings |

# Money & Business

## Career Spotlight: Cashing out your pension

*By Kim Clark*
Posted 10/24/05

First, the steelmakers reneged on their pensions. Then the airlines. Now that parts-maker Delphi has entered bankruptcy, many are warning that the automakers will be next to walk away from their promises to pay a monthly stipend to retirees.

No wonder many financial advisers are recommending that workers and retirees grab their pension money and run. Rather than trust an employer to keep sending those monthly pension checks for the next 20 or 30 years, anyone hoping for a comfortable retirement should ask for the value of the lifetime pension in one quick, upfront lump sum, they say. That way, new retirees can invest the money themselves or buy a privately insured annuity (from a reputable company) that will pay off no matter what happens to their old employer.

That sounds tempting. But experts who aren't trying to earn commissions or fees say that only a few kinds of workers should grab the lump sum. Just 34 percent of nonfarm workers are lucky enough to be earning a traditional pension. And most of those enrolled in pension plans don't even have the option of taking a lump sum, including:

**Anyone who is already drawing a pension.** Most plans don't allow retirees to change their minds and later draw a lump sum.

**The 52 percent of private-sector workers vested in plans that don't offer a lump-sum option.** Unfortunately for most auto-industry workers, for example, the United Auto Workers' pacts generally don't allow retirees to take lump sums. Most public-sector workers also aren't given a choice.

Among those who do have a choice, those who would do better financially to stick with their employer's pensions and collect monthly checks include:

EXHIBIT
M

**Women.** Employers hand out lump sums based on the *average* mortality for all men and women combined at each age. Since women generally outlive men, they'll typically receive more money over the long run if they stick with an employer's annuity, says Pat Purcell, an economist and pension specialist for the Congressional Research Service.

**Any private-sector worker who has earned a pension less than the Pension Benefit Guaranty Corp.'s $3,801.14-a-month maximum for 65-year-old retirees.** The federal insurer pays in full the vast majority of the pensions it is handed. But it saves money by capping the amount it will pay any individual.

So who should consider cashing out? Vested workers who:

**Think their pension plan is seriously underfunded and won't recover.** Unfortunately, that's not so easy to predict. It's not enough to look at your employer's financial statements. Many companies having difficulties nevertheless have well-funded pension plans. Generally, the only way to find out about a pension plan's funding status is for a member to formally request the information from the employer.

**Plan on collecting their pension before age 65.** The PBGC severely reduces the monthly payout to anyone who starts getting checks before age 65. If an employer provides any kind of early-retirement subsidy, and will pass that subsidy on to those who take lump sums, it can pay to cash out.

**Have good reason to believe they may die much sooner than the mortality tables indicate.** Lump sums are calculated by adding up all the payments that should be made to a person based on his or her expected life span, then calculating the present value of that stream of income. (The government publishes lifespan estimates here: www.cdc.gov.) Workers who are fairly certain they won't last the average life span might do better to cash out early. That way, they'd either have more to spend on themselves or have something extra to leave to their heirs. Of course, such retirees who end up staying healthy risk outliving their money.

**Expect to receive significantly more than the $3,801.14-a-month PBGC cap on pension payments.** Those employees would lose any payments above the cap if a plan failed.

But even workers in these categories should think twice about cashing out, says Bill Richenstein, professor of investments at Baylor University in Waco, Texas. If a pension plan goes kaput and the PBGC sends out reduced checks, workers may still get more than they would by cashing out and buying an annuity or investing the money. Financial advisers can take a big chunk of lump sums as commissions and fees, which reduce the

monthly checks retirees can collect, he notes. Those who do take lump sums, he says, should protect themselves by investing in mutual funds or annuities from low-cost providers such as Vanguard or TIAA-CREF.

Copyright © 2007 U.S.News & World Report, L.P. All rights reserved.

Westlaw.

215 F.3d 1326                                                                                Page 1
215 F.3d 1326, 2000 WL 571933 (C.A.6 (Tenn.))
**(Cite as: 215 F.3d 1326, 215 F.3d 1326 (Table))**

**C**
Halvorson v. Boy Scouts of America
C.A.6 (Tenn.),2000.
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions" appear-
ing in the Federal Reporter. Use FI CTA6 Rule 28
and FI CTA6 IOP 206 for rules regarding the cita-
tion of unpublished opinions.)
    United States Court of Appeals, Sixth Circuit.
    Charles E. HALVORSON, Plaintiff-Appellant,
                            v.
    BOY SCOUTS OF AMERICA, doing business as
West Tennessee Area Council, Inc., Defendant-Ap-
                        pellee.
                    **No. 99-5021.**

                    May 3, 2000.

On Appeal from the United States District Court for
the Western District of Tennessee.

Before NELSON and DAUGHTREY, Circuit
Judges, and DOWD, District Judge. FN*

    FN* The Honorable David D. Dowd, Jr.,
    United States District Judge for the North-
    ern District of Ohio, sitting by designation.

NELSON, J.
**\*1** This is an appeal from a summary judgment in
favor of the Boy Scouts of America ("BSA") and
an associated entity, the West Tennessee Area
Council ("WTAC"), on a variety of statutory claims
based primarily on allegations of employment dis-
crimination. FN1 The complaint alleged violations of
the Americans with Disabilities Act ("ADA"), 42
U.S.C. §§ 12101 et seq., the Family Medical Leave
Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., the Em-
ployee Retirement Income Security Act ("ERISA"),
29 U.S.C. §§ 1001 et seq., and the Age Discrimina-
tion in Employment Act ("ADEA"), 29 U.S.C. §§
621 et seq. For the reasons stated below we shall af-
firm the judgement entered by the district court.

    FN1. The complaint in this case was cap-

tioned "Charles E. Halvorson v. Boy
Scouts of America, d/b/a/ West Tennessee
Area Council, Inc." The motion for sum-
mary judgment appears to have been filed
by WTAC only ("Defendant, the West
Tennessee Area Council of the Boy Scouts
of America, by and through its attorneys,
hereby files its Motion for Summary Judg-
ment and respectfully requests that Court
to enter Summary Judgment in favor of the
Defendant ....") but the motion argues that
summary judgment should be entered for
both WTAC and BSA. In its opinion, the
district court addressed the motion as
though it were from both defendants. We
shall follow the district court's lead on this
point.

                            I

The plaintiff, Charles E. Halvorson, worked as
senior district executive for WTAC, a local council
chartered to carry out the programs of BSA in West
Tennessee. BSA is a congressionally chartered non-
profit organization headquartered in Irving, Texas.
BSA does not conduct local operational activities
itself, relying instead on local councils such as
WTAC to do so. The local councils are separately
incorporated, financed and managed.

Halvorson resigned from WTAC on January 24,
1997. The events leading up to the resignation may
be summarized as follows.

On January 22, 1997, Halvorson underwent an an-
nual performance review with his supervisor, Field
Director Ed Harvey, and Scout Executive Dan
Johnson, the highest-ranking person in WTAC. In
the course of the meeting Johnson inquired as to
Halvorson's health, knowing that Halvorson suffers
from diabetes. Halvorson assured Johnson that he
was fine, although he seemed upset and emotional.
The upshot of the review was that Halvorson's job
performance was found wanting in six areas. The
three men agreed on a probationary improvement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
N

215 F.3d 1326                                                                    Page 2
215 F.3d 1326, 2000 WL 571933 (C.A.6 (Tenn.))
**(Cite as: 215 F.3d 1326, 215 F.3d 1326 (Table))**

plan.

The following day, January 23rd, Halvorson complained to Harvey of back and neck pain. This was not a new complaint. Halvorson had suffered from a back and neck ailment for quite some time, but it had not recently been a problem. Harvey excused Halvorson from attending a large scout banquet that evening, but Halvorson attended anyway. There is some evidence that on this same day Halvorson told people in the office that he was resigning.

On the morning of January 24, 1997, Halvorson told Harvey that he wanted to take short-term medical leave because of the back and neck pain he was experiencing. There is also some evidence that he felt the pressure of the probationary plan was too much. He informed Harvey that he needed to go to his doctor's office to pick up the paperwork necessary for taking leave. Harvey called Johnson to tell him of Halvorson's situation. According to Harvey, Johnson asked him to keep Halvorson in the office until Johnson could consult with the national BSA office on the matter. Johnson denies this allegation. As it happened there was a good deal of work to be done in the office because of the banquet the night before, and Halvorson had no opportunity to leave.

*2 Around 3 o'clock that afternoon, Halvorson met again with Johnson and Harvey. Johnson apparently refused to consider letting him go on medical leave, saying, "We're not playing that game." Halvorson claims he believed he had to resign or be fired. According to Halvorson, his agitated state led him to agree to resignation without really knowing what was going on. Johnson explains that resignation was presented to Halvorson as an alternative to working under the probationary plan that was causing Halvorson to experience elevated levels of stress. In the end, Halvorson prepared a letter of resignation. Johnson and Halvorson then went to a notary public and executed a "Resignation and General Release Agreement."

Halvorson subsequently brought suit, with the result described above. The district court relied on the following grounds in granting judgment for the de-

fendants. First, the court found that Halvorson was employed by WTAC alone and that BSA was not subject to suit as it was not Halvorson's employer. Second, the court found that Halvorson's ADA, FMLA, and ERISA claims were waived by his knowing and voluntary execution of a release at the time of his resignation. Finally, the court concluded that the ADEA and FMLA claims against WTAC were foreclosed because the Council did not have the statutorily prescribed minimum number of employees.

II

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Rule 56(c), Fed. R. Civ.P. We review a district court's decision to grant summary judgment *de novo.* See *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir.1998). Although the facts and the inferences to be drawn therefrom are viewed in a light most favorable to the non-movant, see *Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir.1999), the non-movant must produce more than "a mere scintilla" of evidence giving rise to a genuine issue of material fact. There must be evidence on which a jury could find for the non-movant. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

BSA argues on appeal that it bears no liability on any of the claims because it was not Halvorson's employer. Rather, it contends, Halvorson was an employee of WTAC, a separate and distinct entity. We find it unnecessary to reach this issue, because we are satisfied that BSA, like WTAC, could not properly be held liable in any event.

*A. Waiver of ADA, FMLA, and ERISA Claims Through the Release*

As part of his resignation agreement, Halvorson signed a release waiving his claims against WTAC. Although BSA was not a party to the agreement, the terms of the release are expansive enough to foreclose these claims against BSA as well.[FN2] If valid, this release waives Halvorson's claims

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

215 F.3d 1326                                                                                     Page 3
215 F.3d 1326, 2000 WL 571933 (C.A.6 (Tenn.))
**(Cite as: 215 F.3d 1326, 215 F.3d 1326 (Table))**

against both organizations under the ADA, FMLA, and ERISA.[FN3]

FN2. The release reads as follows:
"*General Release and Discharge.*Except for those obligations created by or arising out of this Agreement, the Employee ... hereby covenants not to sue and fully releases and discharges the Company, and any parent or subsidiary or affiliates of the Company, past and present, and each of them, as well as its directors, officers, agents, or any other person or firm associated with the Company, and each of them, with respect to and from any and all claims, wages, commissions, benefits, demands, rights, liens, agreements, contracts, covenants, actions, suits and causes of action, costs, expenses, damages, and any and all other liabilities and claims of whatever kind or nature in law or in equity, whether now known or unknown, and whether or not concealed or hidden, which the Employee may now own or hold or have any right to as against the Company, arising out of or in any way connected with the Employee's employment relationship with the Company and the Employee. This General Release is intended to include also a release of all claims arising out of the Employee's voluntary resignation from employment or any other transactions, occurrences, acts or omissions, or any other loss, damage, or injury whatever, now known or unknown, resulting from any alleged act or omission by or on the part of the Company or any other person, firm, or association, related to it, including but not limited to Title 7 of the Civil Rights Act of 1964, including the ADA, FMLA, and/or the Age Discrimination Employment Act, any statutes related to employment in the State of Tennessee, severance pay, sick leave, holiday pay, vacation pay, life or group medical insurance, or any other fringe benefit of the Company."

FN3. The release cannot operate to waive the ADEA claim because it does not meet the strict requirements of 29 U.S.C. § 626(f).

Halvorson contends that the release is in fact invalid. His argument rests on the facts that his head and neck were hurting; that he had not been able to leave work to pick up the paperwork from his doctor to support his request for medical leave; and that he believed he had to sign the agreement or be fired. He was in an agitated and anxious state of mind that caused him to sign the agreement involuntarily, he says, and without understanding its effect.

**\*3** A release is valid if it was knowingly and voluntarily made under circumstances not indicating any overreaching or exploitation. See *Mararri v. WCI Steel, Inc.,* 130 F.3d 1180, 1184 (6th Cir.1997). Halvorson is, and was at the time, a well-educated and experienced individual. Although he emphasizes that he was upset because he was not able to go to his doctor's office that day, he testified that no one told him he was not allowed to go and that the source of his agitation was internal. By his own admission, Halvorson was not told he had to sign the release or be fired. Rather, the agreement was presented as an alternative to working under the probationary performance improvement plan. Halvorson was given a chance to read through the document, and he later remembered asking about a reference to advice of counsel. After reading the agreement, he wrote his own letter of resignation at his own desk. He and Johnson then went to a notary public, where both signed the agreement in the presence of the notary. These circumstances show that the release was signed voluntarily and knowingly.

Any possible question as to the making of the agreement is overcome, moreover, by its subsequent ratification. An agreement that is invalid due to duress or coercion can be ratified by retention of the consideration paid. See *Howlett v. Holiday Inns, Inc.,* 120 F.3d 598 (6th Cir.1997). After signing the agreement at issue here, Halvorson was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

advised by counsel that he might have signed under duress or coercion. He nonetheless retained the extra severance money he had been granted in return for signing the agreement (90 days of pay as opposed to the usual 30 days). The release was thus ratified, and Halvorson's ADA, FMLA, and ERISA claims against both WTAC and BSA are foreclosed.

### B. ADEA Claim

This leaves Halvorson's ADEA claim, which was not effectively waived by the general release. See 29 U.S.C. § 626(f). Although the district court decided among other things that BSA was not liable because it was not Halvorson's employer and WTAC was not liable because it did not have the requisite number of employees, we do not need to reach these issues; we are satisfied that there could be no ADEA liability here in any event.

An age discrimination case based on circumstantial evidence requires a *prima facie* showing that: (1) the plaintiff was between the ages of 40 and 70; (2) the plaintiff was qualified for the particular position; (3) the plaintiff suffered an adverse employment action; and (4) the plaintiff was replaced by a younger individual. See *Barnhart v. Pickrel, Schaeffer & Eberling Co.*, 12 F.3d 1382, 1390 (6th Cir.1993). Once a *prima facie* case has been made, the burden shifts to the defendant to advance a legitimate, nondiscriminatory reason for the challenged employment decision. See *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994) (applying *McDonnell-Douglass* burden-shifting framework to age discrimination). If such a reason is offered, the plaintiff has the burden of offering evidence sufficient to show that the reason given was a mere pretext for age discrimination. See *id.* at 1083, and *Scott*, 160 F.3d at 1126. If the plaintiff fails either to make out a *prima facie* case or to present sufficient evidence of pretext, summary judgment for the defendant is in order.

**\*4** Here, Halvorson has failed to present evidence of pretext. Halvorson was offered resignation as an alternative to improving his performance under the probationary plan, and the choice was clearly his. The record contains no evidence that Johnson wanted to remove Halvorson because of his age.

AFFIRMED.

C.A.6 (Tenn.),2000.
Halvorson v. Boy Scouts of America
215 F.3d 1326, 2000 WL 571933 (C.A.6 (Tenn.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

201 F.3d 441                                                                    Page 1
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

▷
Torello v. UNUM Life Ins. Co. of America
C.A.6 (Ohio),1999.
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in the
Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6
IOP 206 for rules regarding the citation of unpublished
opinions.)
United States Court of Appeals, Sixth Circuit.
Rudy TORELLO, Plaintiff-Appellant,
v.
UNUM LIFE INSURANCE COMPANY OF AMER-
ICA, Defendant-Appellee,
G & J PEPSI-COLA BOTTLERS, INC., Defendant-Ap-
pellee.
**No. 98-4338.**

Dec. 3, 1999.

On Appeal from the United States District Court for the
Southern District of Ohio.

Before KENNEDY and NELSON, Circuit Judges;
GWIN, District Court Judge.[FN1]

> [FN1] The Honorable James S. Gwin, District
> Court Judge for the United States District
> Court for the Northern District of Ohio, sitting
> by designation.

GWIN, District Court Judge.
*1 In this case, Plaintiff-Appellant Rudy Torello ap-
peals the district court's grant of summary judgment to
Defendant-Appellees UNUM Life Insurance Company
of America ("UNUM") and G & J Pepsi-Cola Bottlers,
Inc. ("G & J Bottlers"). Before the district court,
Torello sued after UNUM denied his claim for long-
term disability benefits. Those benefits were available
under an employee welfare plan offered by his former
employer, G & J Bottlers.

On appeal, Torello claims the district court erred in (1)
finding that UNUM properly denied his claim for bene-
fits, (2) finding his ERISA claims against G & J Bot-
tlers were either barred by a settlement agreement with

G & J Bottlers or otherwise precluded as a matter of
law, (3) refusing to allow him to discover information
regarding UNUM's claim review process, and (4) refus-
ing to grant him leave to amend his complaint. Finding
that Torello fails to show the district court erred, We
AFFIRM.

## I. BACKGROUND

G & J Bottlers employed Rudy Torello as an Account
Manager in Hamilton, Ohio. While employed at G & J
Bottlers, Torello participated in an employee welfare
plan governed by the Employee Retirement Income Se-
curity Act ("ERISA"), 29 U.S.C. §§ 1001, et. seq. To
provide benefits to plan participants, G & J Bottlers
purchased a long-term disability insurance policy from
UNUM. UNUM also served as the claims administrator
for the long-term disability benefits portion of the plan.

On November 18, 1994 and while employed by G & J
Bottlers, Torello suffered a work-related injury to his
neck while pulling a skid of soda cans. On January 21,
1995, Torello began a disability leave of absence in or-
der to recuperate from his injury. Though he received
workers' compensation benefits during his leave of ab-
sence, Torello did not apply for long-term disability in-
surance benefits through UNUM.

From January 21, 1995, until October 1995, Torello re-
mained off work because of injuries received in this
November 1994 incident. On October 16, 1995,
Torello's personal physician cleared Torello to return to
work. When presented with this opinion that Torello
could return to work, G & J Bottlers requested that
Torello undergo a medical examination before resuming
his employment. On or about November 1, 1995, before
receiving this second examination, Torello suffered a
second injury unrelated to his duties at G & J Bottlers.

As a result of this second injury, Torello remained on
leave of absence into early 1996. On January 24, 1996,
G & J Bottlers informed Torello that he had used one
full year of leave time-the maximum amount available
under company policy. Because he did not have any re-
maining leave time, G & J Bottlers discharged Torello,
effective January 23, 1996.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
O

201 F.3d 441
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))

Page 2

Soon thereafter, Torello's attorney told G & J Bottlers that Torello would sue, alleging unlawful discharge based on age and disability. Torello's attorney also said Torello might forgo these claims if G & J Bottlers reinstated Torello to allow him to file with UNUM for long-term disability benefits.

**\*2** In August 1996, Torello and G & J Bottlers settled Torello's claim. Under the settlement agreement, G & J Bottlers would temporarily reinstate Torello, thus allowing him to file for long-term disability benefits. In return, Torello released all claims he had against G & J Bottlers at the time of the agreement.

Upon his reinstatement, Torello filed an application for long-term disability benefits. After receiving this application, UNUM denied Torello's claim for benefits as untimely. UNUM reasoned that under the long-term disability insurance policy, Torello was required to provide UNUM with notice of his claim within 30 days of sustaining his disability. Torello also had to provide proof of his claim no later than 1 year and 180 days after sustaining his disability. Because UNUM did not receive Torello's application for benefits until November 6, 1996-nearly two years after he began disability leave in January 1995, it denied Torello's claim as untimely.

Torello administratively appealed the denial of benefits, contending that UNUM should use the date of his second disability in determining the timeliness of his claim. UNUM denied Torello's appeal. UNUM noted, *inter alia,* that Torello's second disability was not compensable under the long-term disability insurance policy as G & J Bottlers did not actively employ Torello when he was injured the second time.

Torello then filed the present action. Torello argued that UNUM improperly denied his claim for benefits. He also claimed that G & J Bottlers (1) discharged him on account of his age and disabled status, (2) violated ERISA by not paying him long-term disability benefits, (3) breached its fiduciary duty under ERISA by misrepresenting his eligibility for benefits, and (4) breached its fiduciary duty of loyalty under ERISA by persuading UNUM to deny his claim for benefits. Claiming mutual mistake, Torello also sought rescission of the release executed in the settlement agreement.

Upon the recommendation of the magistrate judge, the district court granted summary judgment to UNUM. In giving UNUM judgment, the district court rejected Torello's request for additional discovery regarding the process by which UNUM reviews claims for benefits.

The district court also granted G & J Bottlers's motion for summary judgment. In granting this motion, the court denied Torello's request for leave to amend his complaint to add claims against UNUM and add G & J Bottlers's long-term disability benefit plan and its administrator as defendants.

Torello now appeals the district court's rulings. First, Torello says the district court erred in giving UNUM and G & J Bottlers summary judgment. Second, Torello says the district court erred in refusing Torello discovery regarding UNUM's claim review process. Finally, Torello claims the district court erred in denying his request to amend the complaint.

For the reasons set forth below, we affirm each of the district court's rulings.

## II. DISCUSSION

### A. UNUM's Denial of Benefits

**\*3** Torello argues that the district court erred in granting summary judgment to UNUM. The court granted summary judgment after concluding that UNUM properly denied Torello's claim for long-term disability benefits as time-barred.

An employee may challenge a denial of benefits under an ERISA plan. See29 U.S.C. § 1132(a)(1)(B). As to such a challenge, we generally review the plan administrator's denial of benefits *de novo. See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 976-57, 103 L.Ed.2d 80 (1989). Only if the benefit plan clearly grants the administrator discretionary authority to determine eligibility or otherwise construe the terms of the plan will we employ an arbitrary and capricious standard of review. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir.1998).

Here, the UNUM plan does not clearly give UNUM discretion to determine benefits. While the plan requires a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                          Page 3
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

claimant to submit proof of disability to UNUM, this provision is not sufficient to reflect a clear grant of discretion. Though we recognize that a grant of discretion need not contain the word "discretion" or any other "magic word," _Johnson v. Eaton Corp., 970 F.2d 1569, 1572 n. 2 (6th Cir.1992)_, merely subjecting a claim to a requirement of proof does not bestow discretionary authority on an administrator. _See Tiemeyer v. Community Mutual Ins. Co., 8 F.3d 1094, 1099 (6th Cir.1993)_ (finding that right to make coverage determinations is not tantamount to discretionary authority). Accordingly, we review the denial of Torello's benefits _de novo_.

### 1. The First Disability

UNUM denied Torello's claim for benefits because he did not timely give notice or proof of his January 1995 disability. Reviewing this, the magistrate judge found the clear time limits of the long-term disability insurance policy barred Torello's claim. The district court accepted the magistrate judge's finding.

The long-term disability insurance policy under which Torello seeks to recover benefits contains provisions regarding the timing of both notice and proof of claims:

1. Notice
a. Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible. If that is not possible, the Company must be notified as soon as it is reasonably possible to do so.
b. When the Company has the written notice of the claim, the Company will send the insured its claim forms. If the forms are not received within 15 days after written notice of claim is sent, the insured can send the Company written proof of claim without waiting for the form.

2. Proof
a. Proof of claim must be given to the Company. This must be done no later than 90 days after the end of the [90-day] elimination period.
b. If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible. But proof of claim may not be given later than one year after the time proof is otherwise required.

**\*4** Having filed his application for benefits for his Janu-

ary 1995 disability on November 6, 1996, Torello acknowledges that his application runs afoul of the eighteen-month time limit set forth above. Nevertheless, he makes several arguments as to why this time limit should not apply to his claim. We find each argument unavailing.

#### a. Equitable Tolling

First, Torello argues that principles of equitable tolling excuse his delay in applying for benefits. Specifically, he says that G & J Bottlers misrepresented the nature of the application process when it purportedly told him that he could apply for benefits only if reinstated as an employee. This misrepresentation, Torello argues, caused him to delay applying for benefits until after he was reinstated in mid-1996. As a result, Torello claims the time limits should be tolled until he was reinstated in mid-1996.

This court has endorsed the doctrine of equitable tolling, most notably in the Title VII context when an employer causes an employee to delay filing an employment discrimination claim through affirmative misrepresentations or other actions. _See Andrews v. Orr, 851 F.2d 146, 151 (6th Cir.1988)_. Five factors guide the application of the doctrine: (1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement. _See Wright v. State of Tennessee, 628 F.2d 949, 953 (6th Cir.1980)_.

Torello does not show that equitable tolling applies here. G & J Bottlers gave Torello a summary plan description that described the time limits for his claim for benefits. He failed to read the summary plan description until after his claim was denied. He showed a lack of diligence that makes his ignorance of the need to provide notice to UNUM unreasonable. We find no reason to employ equitable principles to save Torello from the consequences of his failure to promptly review the summary plan description.

#### b. _Contra Proferentem_

Torello next seeks to avoid the application of the time

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                        Page 4
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

limits by invoking the doctrine of *contra proferentem.* This rule of contract construction provides that ambiguous provisions in an insurance contract are to be construed in a manner most favorable to the insured. *See Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538-39 (9th Cir.1990).

Torello maintains that the time limits contained in the summary plan description issued in connection with UNUM's long-term disability policy are ambiguous. Torello states this ambiguity should be resolved in his favor by allowing him to pursue his claim despite the expiration of the policy's time limits.

The doctrine of *contra proferentem* is of no benefit to Torello. Contrary to Torello's suggestion, the summary plan description is not ambiguous with regard to the time limits applicable to his claim. The time limits at issue are not susceptible to more than one meaning. Indeed, Torello fails to offer an alternative interpretation of these time limits that would render his claim timely.

c. Statement Regarding Loss of Benefits

**\*5** Torello also argues that the summary plan description does not clearly state that noncompliance with the time limits will forfeit benefits. He suggests that the lack of such a statement violates ERISA's requirement that an summary plan description contain "a statement clearly identifying circumstances which may result in ... loss, forfeiture, or suspension of any benefits that a participant might otherwise reasonably expect the plan to provide on the basis of the [summary plan description's] description of benefits...." 29 U.S.C. 1022(b).

We find that the summary plan description adequately explains the consequences of a failure to comply with the applicable time limits. The summary plan description states (1) that a proof of claim cannot be made until written notice of a disability is provided, (2) that proof of a claim must be given no later than 1 year and 180 days after a disability begins, and (3) that a claim will not be paid until proof is received. Read together, these provisions clearly inform plan participants that failure to comply with the time limits will result in a loss of benefits.

d. Notice to G & J Bottlers

Next, Torello maintains that he gave timely notice and proof of his claim to G & J Bottlers. He argues that G & J Bottlers served as an agent of UNUM for purposes of plan administration. He argues that notice to G & J Bottlers was effective against UNUM because under Ohio law the actions of an insurance agent may bind the insurer.

We find that G & J Bottlers did not serve as an agent for UNUM. The long-term disability insurance policy contains a provision that explicitly states G & J Bottlers is not UNUM's agent. Even if Ohio law provided otherwise, a state law that purports to make a policyholder-employer an agent of an insurer is preempted by ERISA. *See UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 1391-92, 143 L.Ed.2d 462 (1999). In the absence of an agency relationship between G & J Bottlers and UNUM, any notice Torello may have provided to G & J Bottlers is of no moment.

e. Lack of Prejudice

Lastly, Torello argues that Ohio law precludes UNUM from enforcing the policy's time limits. According to Torello, Ohio law requires that an insurer suffer prejudice before denying a claim as untimely. He argues that because UNUM has suffered no prejudice as a result of his delay in providing notice and proof of claim, Ohio's "notice-prejudice rule" prevents UNUM from relying upon his delay as grounds for denying his claim.

The parties dispute both whether ERISA preempts Ohio's notice-prejudice rule and whether UNUM has been prejudiced by Torello's delay. Because we find that Ohio law does not preclude UNUM from enforcing the policy's time limits, we need not address either issue.

This court has found that the Ohio Supreme Court considers prejudice relevant only when an insurance policy calls for "prompt" or "immediate" notice:
(1) Where the conditions set forth in an insurance policy call for "prompt" or "immediate" notice of the occurrence of an accident, or of the making of a claim or the service of legal papers, the insured must act within a reasonable time;
**\*6** (2) What is "reasonable," in a given case, must be determined in light of all of the surrounding facts and

201 F.3d 441                                                                                      Page 5
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

circumstances;

(3) One of the facts and circumstances to be considered is any prejudice that may have resulted from delay on the part of the insured-and "unreasonable" delay can give rise to a rebuttable presumption of prejudice....

_American Employers Ins. Co. v. Metro Regional Transit Auth., 12 F.3d 591, 597 (6th Cir.1993)._[FN2] Thus, prejudice is merely a factor in determining whether notice was "prompt" or "immediate." Ohio law, as construed by this court, does not suggest that prejudice has any significance as to whether an insurer may enforce a specific time limit set forth in an insurance policy.

> FN2. The court in _American Employers_ did note that some disagreement exists among Ohio courts with regard to the relationship between notice and prejudice. Nevertheless, the court gave "appropriate weight" to the decisions of the Ohio Supreme Court and concluded that prejudice plays a limited role with regard the enforcement of insurance policy time limits. _Id._

Here, the long-term disability insurance policy set forth a specific time limit for proving a disability claim. Torello failed to comply with that time limit. Ohio law provides no refuge from the consequences the policy explicitly imposes under such circumstances.

Having found Torello's arguments lack merit, we affirm the district court's finding that UNUM properly denied Torello's application for long-term disability benefits based on his first disability.

### 2. The Second Disability

Torello claims he became disabled a second time in November 1995. UNUM denied this because Torello was not an active employee at the time he incurred this second disability. The magistrate judge agreed, and further found that even if Torello was an active employee at the time of his second disability, his claim would nevertheless be time-barred because he failed to give notice within thirty days of incurring the disability. The district court accepted these findings.

In this appeal, Torello contends that UNUM incorrectly determined that his coverage terminated upon cessation

of his active employment with G & J Bottlers. Using many of the same arguments discussed with reference to his first disability, he argues that his failure to notify UNUM of his disability in a timely manner is excused under the circumstances.

The long-term disability insurance policy provides that coverage terminates upon the cessation of "active employment." An active employee is defined as a paid, full-time employee working no fewer than thirty hours per week. At the time of his second disability in November 1995, Torello was not in active employment working at least thirty hours per week. Torello took disability leave of absence from January 1995 until his termination the following year. He was not in active employment when he incurred his second disability in November 1995.

However, coverage under the long-term disability insurance policy continues despite the cessation of active employment under certain circumstances:

5. The date employment terminates. Cessation of active employment will be deemed termination of employment, except:

a. the insurance will be continued for a disabled employee during:

i. the elimination period; and

*7 ii. the period during which premium is being waived.

b. the employer may continue the employee's insurance by paying the required premiums, subject to the following:

i. Insurance [sic] may be continued for the time shown in the policy specifications for an employee:

a) temporarily laid off; or

b) given leave of absence.

Torello claims that his coverage continued while he was on leave of absence. He maintains that either G & J Bottlers continued to pay his premiums while on he was on leave, or his premiums were waived on account of his disability.

Regardless of whether his premiums were waived or paid, Torello was not covered by the long-term disability insurance policy when he incurred his second disability. First, Torello argues that he remained covered because G & J Bottlers continued to pay his premiums

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                                    Page 6
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

while he was on leave of absence. But this argument is
of no avail. The policy expressly limits the time an em-
ployer can continue to provide coverage to employees
under such circumstances:

Continuation of Employee Insurance During Absences

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                                Page 7
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

| Type of Absence | Time Limit |
|---|---|
| Temporary Layoff or | To the end of the policy month |
| Leave of Absence | following the policy month in which |
| | the layoff or leave of absence begins. |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                          Page 8
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

The policy month in which Torello began his leave was January 1995. Under the provision quoted above, G & J Bottlers could continue to insure Torello through February 1995. By November 1995, the date of his second disability, Torello was no longer covered under the policy even if G & J Bottlers continued to pay his premiums.

Second, Torello cannot successfully claim he was covered by the insurance policy because his premiums were waived. Only disabled employees can receive continued insurance coverage through the waiver of premiums. Torello was not disabled at the time he incurred his second disability. His personal physician had cleared him to return to work. Indeed, in arguing that the onset of his second disability governs the time limits for notice and proof of claim, Torello in effect argues that his first disability ceased by the time he incurred his second disability. He cannot have it both ways: he cannot argue that he was disabled at the time he incurred his second disability so as to remain covered under the insurance policy, and at the same time contend that he was no longer under a disability so that his second disability triggered new time limits for notice and proof of his claim.

Thus, we find that Torello was not covered under the long-term disability insurance policy at the time of his second disability. We therefore need not consider Torello's justifications for his delay in notifying UNUM of his claim.

Because Torello did not comply with applicable time limits in seeking to recover for his first disability and was not covered by the long-term disability insurance policy when he incurred his second disability, we find that UNUM properly denied his claim for benefits. However, whether the district court properly granted summary judgment to UNUM depends on the resolution of Torello's objection to the timing of the court's decision in light of his request for additional discovery. We address this objection below.

### B. Request for Discovery

**\*8** Torello contends that the district court erred in granting summary judgment to UNUM without allowing him to discover information regarding UNUM's claim review process. The magistrate judge determined that such discovery was irrelevant to the ultimate issue as to whether Torello timely filed his claim for benefits. The district court accepted the magistrate judge's finding. We review the district court's decision regarding discovery matters for an abuse of discretion. *See Sierra Club v. Slater,* 120 F.3d 623, 638 (6th Cir.1997).

In asserting his right to additional discovery, Torello relies on Rule 56(f), which states in pertinent part:
Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

According to Torello, the district court could not properly rule on UNUM's motion for summary judgment without first allowing him to discover information about the process by which UNUM reviewed his claim. In particular, Torello seeks information regarding the role G & J Bottlers played in UNUM's decision to deny him benefits. Torello argues that such information is relevant to whether G & J Bottlers and UNUM colluded to prevent him from obtaining benefits.

The district court did not abuse its discretion in denying Torello's Rule 56(f) request for additional discovery. As the magistrate judge observed, the information Torello seeks does not even tangentially relate to the timeliness of his claim for benefits. Yet only the issue of timeliness was before the district court when it considered UNUM's motion for summary judgment.[FN3] We thus find no reason why the district court should have delayed its judgment to allow the discovery of irrelevant information.

> FN3. Torello suggests that information regarding possible collusion is relevant to whether UNUM breached its fiduciary duty under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                                    Page 9
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))

ERISA. However, the district court refused to grant Torello leave to add a breach of fiduciary duty claim against UNUM. As discussed in Part II .D, we find the district court properly denied Torello's request for leave to add such a claim. Torello cannot support a Rule 56(f) request for additional discovery by asserting the need for information relating to a nonexistent claim.

As discussed, the district court correctly determined that UNUM properly denied Torello's claim for benefits. The court made this determination upon review of all relevant information contained in the complete administrative record. We therefore affirm the district court's grant of summary judgment to UNUM.

### C. Claims Against G & J Bottlers

Torello says the district court erred in granting summary judgment to G & J Bottlers. In giving G & J Bottlers judgment, the district court found that Torello's claims against G & J Bottlers were either barred by the release included in his settlement agreement with G & J Bottlers or otherwise precluded as a matter of law. Torello argues the district court misconstrued the scope of the release and erroneously failed to rescind the release on grounds of mutual mistake.

We review a district court's grant of summary judgment de novo. See *Terry Barr Sales Agency, Inc. v. All-Lock Co., 96 F.3d 174, 178 (6th Cir.1996)*. Summary judgment under Rule 56 is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)*. In determining whether summary judgment is warranted, we must examine the evidence presented to the district court in a light most favorable to the nonmoving party. See *United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)*.

### 1. Scope of the Release

**\*9** The district court found that the release Torello executed in August 1996 stopped Torello's claims for breach of fiduciary duty and discriminatory discharge against G & J Bottlers. This release provided:

Torello, by executing this Agreement waives and releases, for himself and his personal representatives and heirs, any and all rights or claims he has as of the date he executes this Agreement against G & J Bottlers, its affiliated companies, or any of their respective officers, directors, agents, employees, successors, or assigns. The rights and claims Torello is waiving and releasing include, but will not be limited to, those arising under state or federal statute, common law, or any law relating to sex, age, race, religious, handicap or national origin discrimination, including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, O.R.C. § 4112, et. seq., and any other statutes of similar purpose.

Torello admits that his state law discriminatory discharge claims existed on the date of the settlement agreement, but he insists that his breach of fiduciary duty claim arose after he signed the agreement. With his breach of fiduciary duty claim, Torello claims G & J Bottlers misrepresented that Torello needed to be reinstated to employment before he could apply for long-term disability benefits. He contends that this misrepresentation caused him to delay filing a claim for benefits, which resulted in the denial of his claim.

Torello acknowledges that this alleged misrepresentation was made before the date he executed the release. Torello makes two arguments why the claim nonetheless did not exist when he signed the settlement agreement.

First, Torello argues that he had no knowledge of this claim when he executed the release. He says a release cannot bar a claim that the waiving party had no knowledge of when signing the release. To make this argument, Torello must argue that he could not have knowledge of the breach of fiduciary duty until he suffered injury as a result of G & J Bottlers's misrepresentation, *i.e.*, when he was denied benefits.

We find this argument unavailing. Assuming that a release will not bar unknown claims, Torello erroneously concludes that he could not have known of his claim until he was denied benefits. As the district court found, Torello had full opportunity to learn the fundamental facts underlying his claim before he signed the settle-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                     Page 10
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

ment agreement. He knew that G & J Bottlers had informed him that he could not file for benefits until he was reinstated as an employee. He also had been given a summary plan description outlining the eligibility requirements for long-term disability benefits, which he could have used to evaluate the accuracy of G & J Bottlers's representation. This information provided Torello with ample opportunity to learn of his claim against G & J Bottlers. More important, Torello makes no claim that G & J Bottlers represented that the time limits described in the summary plan description would not apply.

**\*10** Citing cases relating to statutes of limitation, Torello next argues that a tort claim does not accrue until a plaintiff actually suffers an injury. Again claiming that he did not suffer injury from G & J Bottlers's misrepresentation until he was denied benefits, Torello insists his claim did not exist when he signed the settlement agreement three months earlier.

We find no merit to Torello's argument. We find that Torello was first injured by G & J Bottler's alleged misrepresentation before he signed the settlement agreement. Specifically, Torello incurred an injury on the date when he could no longer file a timely claim for benefits, *i.e.* 1 year and 180 days after sustaining his first disability. Torello's claim for benefits became untimely on July 20, 1996. Thus, his breach of fiduciary claim arose, at the latest, one month before he signed the settlement agreement.

The fact that Torello may have not realized his claim for benefits was untimely until it was actually denied is of no moment. Under Ohio law, a cause of action generally accrues when a plaintiff exercising reasonable care and diligence *should have discovered* the injury. *See Oliver v. Kaiser Community Health Foundation,* 5 Ohio St.3d 111, 117-18, 449 N.E.2d 438, 443-44 (1983) (establishing "discovery rule" for purposes of medical malpractice actions). Here, as discussed in the preceeding section, Torello could have learned his claim was untimely by simply reading the summary plan description in his possession. This lack of reasonable care prevents Torello from successfully arguing that his breach of fiduciary duty claim did not accrue until his claim for benefits was denied by UNUM.

Based on the above, we find that the district court properly concluded that the release covered Torello's breach of fiduciary duty claim.

### 2. Validity of the Release

Torello next argues that even if the district court properly found that his breach of fiduciary claim fell within the scope of the release, the district court erred in enforcing the release. According to Torello, the release should be rescinded on account of mutual mistake.

Under Ohio law, a mutual mistake will generally support recission of a contract when the mistake relates to a material term of the contract. *See Reilley v. Richards,* 69 Ohio St.3d 352, 352-53, 632 N.E.2d 507, 509 (1994). However, a party cannot successfully seek recission when it negligently failed to discover the material mistake. *See id.*

Here, Torello states that both parties to the settlement agreement assumed that UNUM would review his claim for long-term disability benefits on its merits. He believes that this assumption was central to the settlement, because he would not have waived his discrimination claims had he known his application for long-term disability benefits was time-barred. Torello insists that whether he acted negligently in failing to discover his claim was untimely is a disputed fact issue. If disputed, Torello says summary judgment based upon the release was inappropriate.

**\*11** We find no genuine issue of material fact with respect to Torello's negligence in failing to discover that the time limits applicable to his claim for long-term disability benefits had expired. As noted, Torello was given a summary plan description outlining the time limits governing his claim for benefits. Yet, neither Torello nor his counsel reviewed this portion of the summary plan description. Indeed, Torello's counsel acknowledges that he did no more than glance at the summary plan description. Torello does not dispute that, despite having the opportunity to do so, he failed to assess the basic viability of his claim.

In light of the undisputed showing of Torello's negligence, we find that the district court correctly denied his request for recission. We therefore affirm the district

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                                Page 11
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

court's grant of summary judgment to G & J Bottlers on Torello's discriminatory discharge and breach of fiduciary duty claims.

### 3. Remaining Claims

Beyond the claims barred by the release, Torello asserted ERISA claims against G & J Bottlers based on (1) its failure to pay him long-term disability benefits and (2) its attempt to persuade UNUM to deny his claim for benefits, in violation of its fiduciary duty of loyalty. The district court found that though the release did not bar these claims, they were nevertheless precluded as a matter of law.

Specifically, the district court held that its earlier finding that UNUM properly denied Torello's claim for benefits prevented him from asserting his remaining claims. Torello could not, the court found, complain of G & J Bottlers's failure to pay him benefits because he was not entitled to any benefits. Likewise, the court noted that Torello could not claim that G & J Bottlers unlawfully interfered with his right to receive benefits by persuading UNUM to deny his claim because he had no such right.

Torello challenges the district court's holding by arguing that it erred in finding UNUM properly denied his claim for benefits. However, we have already affirmed the district court's finding in that regard. Because we agree with the district court's conclusion that the proper denial of Torello's application for benefits bars his remaining claims, we affirm the court's grant of summary judgment.

### D. Amendment of the Complaint

### 1. Additional Parties

Torello sought to amend his complaint to add as defendants both G & J Bottlers's long-term disability benefit plan and Daniel Sweeney, who Torello named as the plan's administrator. The district court denied Torello's motion to amend the complaint. We review the district court's denial of a motion for leave to amend a complaint for abuse of discretion. See *LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1104 (6th Cir.1995).

In his motion to amend the complaint, Torello argued that the addition of the plan and its administrator would merely ensure the proper parties were named as defendants. The district court did not disagree with this position, but instead denied Torello's motion as futile. The court reasoned that because it had already granted summary judgment to G & J Bottlers, these additional parties, both directly affiliated with G & J Bottlers, would also be entitled to summary judgment.

**\*12** We find that the district court did not abuse its discretion in refusing Torello's request to add the plan and its administrator as defendants. Torello has not disputed the district court's conclusion that its grant of summary judgment to G & J Bottlers would have similar effect with respect to the proposed defendants. Having affirmed the district court's grant of summary judgment to G & J Bottlers, we likewise affirm the court's refusal to grant Torello leave to add parties directly associated with G & J Bottlers.

### 2. Additional Claims

Torello also sought to add two new claims against UNUM, alleging that (1) UNUM failed to adequately investigate his claim for benefits and (2) UNUM failed to remedy G & J Bottlers's breach of its fiduciary duty, which he claims UNUM had a duty to do under ERISA. The district court denied Torello's request to add these claims. Again, we review the district court's refusal to grant leave to amend a complaint for abuse of discretion. *See id.*

The district court offered several reasons for its denial of Torello's motion for leave to add claims against UNUM. The court noted, *inter alia,* that Torello's delay in seeking to add claims against UNUM gave the appearance of a dilatory motive and would result in undue prejudice to UNUM. The court also found that because it had already determined that UNUM properly denied Torello's claim for benefits, the addition of the proposed claims against UNUM would be futile.

We find no abuse of discretion in the district court's denial of Torello's request to add claims against UNUM. The district court properly found that Torello's unexcused delay in asserting these additional claims would unduly prejudice UNUM and reflected a general

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 441                                                                                                    Page 12
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))
**(Cite as: 201 F.3d 441, 201 F.3d 441 (Table))**

lack of good faith. Torello has failed to address the district court's findings in this regard. We therefore affirm the district court's refusal to allow the addition of claims against UNUM.

### III. CONCLUSION

For the reasons set forth above, we affirm the district court's judgment.

C.A.6 (Ohio),1999.
Torello v. UNUM Life Ins. Co. of America
201 F.3d 441, 1999 WL 1204755 (C.A.6 (Ohio))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Paul Abelman, et al

                     Plaintiff(s)

                       **CASE NO.** 2:07-cv- 793

        vs.                      District Judge Watson

                       Magistrate Judge King

Colgate-Palmolive Company, et al

                     Defendant(s)

# <u>NOTICE</u>

**PROCEEDING:**      **PRELIMINARY PRETRIAL CONFERENCE**

**PLACE:**              **ROOM 235**
Kinneary U.S. Courthouse
85 Marconi Blvd., R-235
Columbus, OH 43215

**DATE/TIME:**       November 28, 2007 @ 2:30 p.m.

**PLEASE NOTE:**

    1. The report required by Rule 26(f) of the Federal Rules of Civil Procedure must be filed no fewer than seven (7) days prior to the pretrial conference. The required form can be found on the Court's website, www.ohsd.uscourts.gov  Click on "Forms" and then select "Rule 26(f) Report of the Parties (Eastern Division Only)."

    2. The Eastern Division General Order on Pretrial Conference can also be found on the Court's website.

    3. Any party may request that the conference be held by telephone. The requesting party must initiate the conference call to 614-719-3390. All parties must be given the opportunity to participate by telephone.

    4. Parties or principals are welcome, but not required, to attend the conference.

**DATE**: September 25, 2007          *s/John D. Miller*
                                  John D. Miller, Courtroom Deputy
                                  To Magistrate Judge King

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|                                    |   |                                        |
|------------------------------------|---|----------------------------------------|
|                                    | : |                                        |
| **PAUL ABELMAN, and**              | : |                                        |
|                                    | : |                                        |
| **VALERIE R. NUTTER**              | : |                                        |
|                                    | : |                                        |
|                                    | : |                                        |
| **Plaintiffs,**                    | : | **Case No. 2:07-cv-793**               |
|                                    | : |                                        |
|                                    | : | **Judge Michael H. Watson**            |
| **v.**                             | : |                                        |
|                                    | : | **Magistrate Judge Norah McCann King** |
| **COLGATE-PALMOLIVE COMPANY,**     | : |                                        |
| **and**                            | : |                                        |
|                                    | : |                                        |
| **COLGATE-PALMOLIVE COMPANY**      | : |                                        |
| **EMPLOYEES' RETIREMENT**          | : |                                        |
| **INCOME PLAN**                    | : |                                        |
|                                    | : |                                        |
| **Defendants.**                    | : |                                        |
|                                    | : |                                        |

## MOTION FOR A 60 DAY STAY

### Introduction

Plaintiffs Paul Abelman and Valerie Nutter, through undersigned counsel, respectfully move the Court for a temporary, 60 day stay of these proceedings. In particular, Plaintiffs seek a stay of further briefing and consideration of defendants' motion to dismiss (Docs. 14-15) and motion to transfer this case to the United States District Court for Southern District of Indiana (Doc. 12). The reason for Plaintiffs' request is that Defendants seek to transfer this case to Indiana because there is now pending there an earlier filed, related action, *Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan,* No. 4:07-CV-0016SEB-WGH (S.D. Ind.), but one of the two defendants in this action (Defendant Colgate-Palmolive Company Employees'

Retirement Income Plan (the "Plan")) has moved to have *Caufield* dismissed on statute of limitations grounds. The Plan's motion to dismiss *Caufield* is fully briefed and the District Court in Indiana is expected to rule by the end of October. *See Caufield* Doc. 46, Magistrate Judge's Order on Telephonic Status Conference at 2. A stay for 60 days until the *Caufield* court has rendered its decision should further "the just, speedy and inexpensive determination of [this] action," Fed. R. Civ. P. 1, for the reasons explained more fully below.

### Background

In its motion to dismiss in *Caufield*, the Plan argues that the claim of the sole plaintiff in that action, Paul Caufield, an Indiana resident, is time-barred based on the fact that Mr. Caufield received his distribution from the Plan in 1999, more than four or six years before filing suit. *See Caufield* Docs. 24-25, 42 (Plan's motion to dismiss and reply brief in support of motion to dismiss, arguing for application of a four or six year limitations period instead of the analogous Indiana 10-year limitations period applicable to contract actions). As noted, that motion is fully briefed and a decision on the motion is expected as early as the end of October. *See Caufield* Doc. 46 at 2.

In this case, the Plan (and its sponsor, Colgate-Palmolive Company, a defendant here but not in *Caufield*), have also filed a motion to dismiss. Docs. 14-15. But the Plan does not seriously raise a limitations defense as to one of the two plaintiffs in this action, Paul Abelman of New Albany, who received a distribution in 2006.[1] Instead, the Plan

---

[1] In a footnote at the very end of its brief, the Plan argues that Mr. Abelman's claim **could** be deemed time-barred "[t]o the extent that Abelman's claims accrued as early as 1994, when he was informed that he would receive a lump sum equal to his account balance." Def. Mem. (Doc. 15) at 21 n.22. This contention is not pursued for good reason, as will be explained at the appropriate time.

argues that Mr. Abelman's claim is barred because he signed a release agreement in 2005 (before his allegedly illegally calculated lump sum was actually calculated), Def. Mem (Doc. 15) at 3-4, 5-8, 21-23 – a release which, the Plan fails to point out, does not even run in favor of the Plan (which is just one of several defects with this defense, as will also be addressed more fully at the appropriate time).[2]

As to the second plaintiff here, Valerie Nutter of Zaneville who received a distribution in 2000, Defendants argue that her claim is time-barred for much same reasons that the Plan says that Mr. Caufield's claim is time-barred. Def. Mem. at 4-5, 9-21.

Defendants, through counsel, have declined to consent to the brief stay sought by this motion. Hence, the need for this filing.

### Discussion

A court has inherent power to stay proceedings in the exercise of sound discretion in the interests of justice, economy and efficiency. *Landis v. North American Co.,* 299 U.S. 248, 254-255 (1936). Here, it should conserve this Court's resources and the resources of the parties, without prejudicing any of them, were the Court to grant a 60 day stay of briefing and consideration of the Plan's motion to dismiss and motion to transfer until a ruling on the Plan's motion to dismiss *Caufield* can be rendered.

The sole premise of the Plan's motion to transfer this action to the Southern District of Indiana is that there is a case there with which this case "can be consolidated."

---

[2] It should be noted now, however, that in breach of its promise to keep the terms of its release agreement with Mr. Abelman strictly confidential "[e]xcept to the extent necessary to enforce [it]," Doc. 15-2, p. 5 of 12, ¶ 10, Colgate uploaded into the public record pages of strictly confidential and personal information concerning Mr. Abelman and his family, having nothing to do with Defendants' claim that the agreement waived Mr. Abelman's right to receive a lawfully calculated pension benefit. *Id.,* pp. 10-12. This material breach of the agreement should bar Colgate, without more, from interposing the agreement as a defense to Mr. Abelman's claim.

Def. Mem. (Doc. 12) at 2; *see also id.* at 8 (arguing that "sound judicial administration warrants a transfer so that the two cases can be consolidated"). Yet at any moment that premise might evaporate precisely because, at the Plan's request, the District Court in Indiana is currently weighing whether to dismiss *Caufield* and might do exactly as the Plan asks. (The Plan's motion to transfer, in 12 pages of exposition, avoids directly acknowledging this key point even in the one footnote that references the possibility. *See* Doc. 12 at 3 n.1.[3])

It would be one thing if the Plan had asked the District Court in Indiana to stay its consideration of the Plan's motion to dismiss until this action can be transferred there, consolidated with it, and the motion to dismiss against Mr. Abelman and Ms. Nutter fully briefed and considered along with the fully briefed motion requesting dismissal of Mr. Caufield's action. But the Plan has not done so.

The brief stay Plaintiffs request is necessary for the parties and the Court to avoid needless expenditure of effort and resources and the risk of even longer delays. Defendants cannot credibly claim that they would be prejudiced by a brief stay whereas this Court would be prejudiced if no stay were entered and it is forced to consider one or more motions which may soon be moot. So too Plaintiffs should not have to spend the time and effort involved in responding to motions that in fact may never need be answered.

Take the motion to transfer first. The "fact" that this case can be consolidated with *Caufield* is the sole basis for the request that this action be transferred to Indiana.

---

[3] *See also id.* at 4 n.2 (Defendants assert that "disagree[ments]" "as to the applicable statute of limitations" "should not impact the Court's analysis on this Motion to Transfer" but this admittedly assumes that the Plan's motion to dismiss *Caufield* will be **denied**; Defendants never address the possibility that the Plan's motion will be granted).

Neither the Plan nor its sponsor are headquartered in Indiana.  If *Caufield* is dismissed as the Plan requests, the time this Court will have spent considering the Plan's motion to transfer, and the time Plaintiffs will have spent responding to it, will have been wasted.  The same is true of the motion to dismiss.  The Plan wants the case adjudicated in Indiana, not Ohio.  If it succeeds in getting the case transferred, the time the Court spends considering the motion to dismiss and the time Plaintiffs will have spent responding to it based on prevailing Sixth Circuit precedent will also have been wasted.

By contrast, the Plan and its sponsor are not cognizably prejudiced if further briefing and consideration of their motions are temporarily delayed.  Defendants themselves requested and obtained an extension of time within which to file their motion to dismiss, *see* Doc. 7, and did not file their motion to transfer until some five (5) weeks after being served with the Complaint.  There was no urgency then and there is no urgency now to have one or both of Defendants' motions here decided.

On the other hand, in the absence of the requested stay, Plaintiffs, both long-time Ohioans (in the case of Ms. Nutter, a life-time Ohioan), could be unfairly deprived of their choice of forum or at least put through considerable unnecessary burden and expense if, for example, just after this Court grants the motion to transfer, it turns out that the District Court in Indiana does indeed grant the Plan's motion to dismiss *Caufield*.   In that case, Defendants may then still try to have the case decided in Indiana or perhaps transferred to New York, where the Plan is chiefly administered and Colgate-Palmolive is headquartered instead of returned here.  Even if ultimately returned here, the initial transfer to Indiana alone would likely require Plaintiffs to immediately look for Indiana local counsel and for counsel to get up to speed on local practice, procedure and

precedent.  There also may be weeks of delay and expense involved just in getting the

case returned here.  Before the parties and the Court get any closer to risking such an

unnecessary round-trip or similar inefficiencies, further proceedings in this case should

be stayed until the District Court in Indiana issues its ruling on the Plan's motion to

dismiss.

Dated:  October 9, 2007                    Respectfully submitted,


                                           /s/William H. Blessing
                                           William H. Blessing (#0006848)
                                           The Blessing Law Firm
                                           119 East Court Street, Suite 500
                                           Cincinnati, Ohio 45202
                                           Telephone:  (513) 621-9191
                                           Telecopier:  (513) 621-7086

                                           Eli Gottesdiener (admitted *pro hac vice*)
                                           Gottesdiener Law Firm, PLLC
                                           498 7th Street
                                           Brooklyn, New York 11215
                                           (718) 788-1500

                                           *Counsel for Plaintiffs and the proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2007, I caused the foregoing motion to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via

U.S. First Class mail upon Defendants via their counsel as follows:

> Felix Wade
> Eve Ellinger
> Schottenstein, Zox & Dunn Co., LPA
> 250 West Street
> Columbus, Ohio 43215
>
> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103

<u>/s/Eli Gottesdiener</u>
Eli Gottesdiener

016H26506996

$ 00.410
09/21/2007
Mailed From 43215
US POSTAGE

Hasler

NIXIE    331    CE 1    07    10/05/07

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

*1546-02907-21-36

BC: 43215

33133+3772

RETURN TO SENDER

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS, OHIO 43215

OFFICIAL BUSINESS

Michael J Rosen PA
Grove Forest Plaza
2937 Southwest 27th Avenue
Suite 101
Miami, Florida 33133

FILED
JAMES BONINI
CLERK

2007 OCT -9 P 2:46

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
EAST DIV COLUMBUS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **PAUL ABELMAN, and** | : |
| | : |
| **VALERIE R. NUTTER** | : |
| | : |
| | : |
| **Plaintiffs,** | : **Case No. 2:07-cv-793** |
| | : |
| | : **Judge Michael H. Watson** |
| **v.** | : |
| | : **Magistrate Judge Norah McCann King** |
| **COLGATE-PALMOLIVE COMPANY,** | : |
| **and** | : |
| | : |
| **COLGATE-PALMOLIVE COMPANY** | : |
| **EMPLOYEES' RETIREMENT** | : |
| **INCOME PLAN** | : |
| | : |
| **Defendants.** | : |
| | : |

**MOTION FOR EXTENSIONS OF TIME**
**WITHIN WHICH TO RESPOND**
**TO PENDING DEFENSE MOTIONS**

Plaintiffs Paul Abelman and Valerie Nutter, through undersigned counsel,

respectfully move the Court for extensions of time within which to respond to two

pending defense motions (to transfer, and to dismiss).  The extensions of time are sought

for the purpose of preserving the status quo until such time as the Court can rule on

Plaintiffs' motion for a 60 day stay, filed on October 9, 2007 (Doc. 17).

Plaintiffs originally envisioned requesting extensions of 21 days following the

Court's ruling on the motion to stay but when Plaintiffs in accordance with Local Rule

7.3(a) solicited Defendants' consent to those proposed extensions, Defendants declined,

based on their belief that the requested extensions were sought for "tactical" advantage.

Because the extensions are sought, to the contrary, to preserve the status quo until such time as the Court can rule on Plaintiffs' motion to stay, Plaintiffs requested Defendants consent to more limited extensions, namely, extensions equal in time to the number of days Plaintiffs have remaining to respond to each motion (one day, in the case of the motion to transfer, and seven days, in the case of the motion to dismiss), following a ruling by the Court on the motion to stay.  Plaintiffs also offered to file their reply (if any) to Defendants' anticipated opposition to Plaintiffs' motion to stay within one day, but as of the filing of this motion, Defendants have not stated whether they are opposed or unopposed to Plaintiffs' more limited request.[1]

In view of the fact that Plaintiffs' response to the motion to transfer is due tomorrow, Friday, October 12, 2007, Plaintiffs believe they must file the instant motion now, without awaiting definitive word from Defendants as to their position.  Plaintiffs so move with respect to their response to the motion to transfer but also their response to the motion to dismiss (otherwise due Thursday, October 18, 2007) to simplify matters.

For scheduling purposes, it is preferable for Plaintiffs' counsel if the Court were to grant extensions of time of at least one week following the Court's ruling on the motion to stay.  However, if need be, Plaintiffs can file responses to both motions as soon after the Court rules on the motion to stay as the Court believes appropriate.

Should the Court wish to convene a hearing to discuss these matters, undersigned counsel can be available on short notice and would welcome the opportunity to discuss their motion to stay or any other matters the Court sees fit to address at that time.

---

[1] Defendants did ask if Plaintiffs' counsel were available for "a call with the Judge Monday afternoon [October 15, 2007] (any time after 1pm), . . . [t]he purpose of the call would be to discuss scheduling issues, including [Plaintiffs'] stay motion."  Defense counsel asked for a response "as soon as possible, as we need to let the Judge know."

2

Dated:  October 11, 2007          Respectfully submitted,


/s/William H. Blessing
William H. Blessing (#0006848)
The Blessing Law Firm
119 East Court Street, Suite 500
Cincinnati, Ohio 45202
Telephone:  (513) 621-9191
Telecopier:  (513) 621-7086

Eli Gottesdiener (admitted *pro hac vice*)
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
(718) 788-1500

*Counsel for Plaintiffs and the proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2007, I caused the foregoing motion to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via

U.S. First Class mail upon Defendants via their counsel as follows:

> Felix Wade
> Eve Ellinger
> Schottenstein, Zox & Dunn Co., LPA
> 250 West Street
> Columbus, Ohio 43215
>
> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103

<u>/s/Eli Gottesdiener</u>
Eli Gottesdiener

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| **PAUL ABELMAN, and** | : |
| **VALERIE R. NUTTER** | : |
|  | : |
| **Plaintiffs,** | : **Case No. 2:07-cv-793** |
|  | : |
|  | : **Judge Michael H. Watson** |
| **v.** | : |
|  | : **Magistrate Judge Norah McCann King** |
| **COLGATE-PALMOLIVE COMPANY, and** | : |
|  | : |
| **COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN** | : |
|  | : |
| **Defendants.** | : |

## <u>SUPPLEMENT TO MOTION FOR A 60 DAY STAY</u>

On October 9, 2007, Plaintiffs filed this motion to stay for 60 days briefing on

Defendants' motion for a transfer and to dismiss pending a ruling on Defendant Plan's

fully-briefed motion to dismiss in the related action (Caufield) pending in the United

States District Court for Southern District of Indiana.

On October 11, 2007, Defendant Plan asked the District Court in Indiana to stay a

decision on the Plan's motion to dismiss until such time as this action can be transferred

to Indiana.  See Ex. 1, Caufield Docs. 48-49.  This was apparently in response to

Plaintiffs' motion which says:

> It would be one thing if the Plan had asked the District Court in Indiana to stay its
> consideration of the Plan's motion to dismiss until this action can be transferred
> there, consolidated with it, and the motion to dismiss against Mr. Abelman and

Ms. Nutter fully briefed and considered along with the fully briefed motion requesting dismissal of Mr. Caufield's action.  But the Plan has not done so.

Doc. 17, Mtn. at 4.

The fact that the Plan has now moved the Indiana court to stay a decision on the Plan's motion to dismiss concedes Plaintiffs' original point, i.e., that the Plan's positions here and in Indiana regarding venue were fundamentally inconsistent, requiring a stay until the Indiana court's ruling reconciled them.  But the problem has not been cured by the Plan's filing in Indiana unless and until the Indiana court issues such a stay.  That cannot be taken for granted.  Mr. Caufield's counsel advises undersigned counsel that Mr. Caufield will oppose the Plan's motion, noting that the Plan's Indiana motion to stay does not explain why the Plan waited until the middle of October, two months after being served with the Complaint in this case, to make its request to stay a decision on its motion pending a transfer of this action to Indiana even though the Magistrate Judge in Indiana specifically informed the parties that "it is anticipated that Judge Barker will have ruled on the currently pending Motion to Dismiss" by October 31.  See Caufield Doc. 46 at 2.  Judge Barker may well be ready to rule soon on the Plan's motion and may take note of the fact that the Plan itself concedes it has not moved to dismiss Mr. Abelman's claim on statute of limitations grounds, only Ms. Nutter's.  See Ex. 1, Caufield Doc. 49 at 4.

Defendants' apparent failure to think things through two months ago has needlessly complicated and delayed what could and should have been a relatively simple matter.  Defendants' latest action – a motion to stay in response to Plaintiffs' motion to stay – does not undo the damage, it just confirms the need for the stay Plaintiffs have requested.  It just means that now the case here should be stayed pending Judge Barker's ruling on **one or two** defense motions rather than just one.

Dated:  October 12, 2007                    Respectfully submitted,


                                            /s/William H. Blessing
                                            William H. Blessing (#0006848)
                                            The Blessing Law Firm
                                            119 East Court Street, Suite 500
                                            Cincinnati, Ohio 45202
                                            Telephone:  (513) 621-9191
                                            Telecopier:  (513) 621-7086

                                            Eli Gottesdiener (admitted *pro hac vice*)
                                            Gottesdiener Law Firm, PLLC
                                            498 7th Street
                                            Brooklyn, New York 11215
                                            (718) 788-1500

                                            *Counsel for Plaintiffs and the proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2007, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via

U.S. First Class mail upon Defendants via their counsel as follows:

> Felix Wade
> Eve Ellinger
> Schottenstein, Zox & Dunn Co., LPA
> 250 West Street
> Columbus, Ohio 43215
>
> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103

> <u>/s/Eli Gottesdiener</u>
> Eli Gottesdiener

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR STAY OF CONSIDERATION OF ITS MOTION TO DISMISS PENDING DISPOSITION OF THE MOTION TO TRANSFER

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan" or "Defendant"), by and through its attorneys, respectfully moves to stay consideration of its Motion to Dismiss Plaintiff's Complaint pending disposition of a Motion to Transfer filed in a related case pending in the United States District Court for the Southern District of Ohio.  In support of this Motion, Defendant states the following:

1.    This Court should stay consideration of the Plan's Motion to Dismiss pending disposition of a Motion to Transfer filed in a related case for the reasons set forth in the Defendant's Memorandum Of Law In Support Of Defendant's Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer

2.    In support of this Motion, Defendant submits the following exhibits: Exhibit A to this Motion is a true and correct copy of the Complaint filed in Abelman; Exhibit B to this Motion is a true and correct copy of the Memorandum of Law In Support Of The Motion To Dismiss, without exhibits, in Abelman; and Exhibit C to this Motion is a true and correct

copy of the Memorandum of Law In Support Of The Motion To Transfer, without exhibits, in

Abelman. Defendant can provide the Court with copies of the exhibits upon request.


Respectfully submitted,

Dated:  October 11, 2007                    MORGAN, LEWIS & BOCKIUS LLP


By:    /s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584
Fax:  (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com


Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendant
Colgate-Palmolive Company Employees'
Retirement Income Plan

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

   I hereby certify that on October 11, 2007, a copy of the foregoing Defendant's Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, and papers in support thereof, was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street, Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

   I hereby certify that on October 11, 2007, a copy of the foregoing Defendant's Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, and papers in support thereof, was mailed, by first class U.S. mail, postage prepaid, and properly addressed to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5584
Fax:  (215) 963-5001
tchung@morganlewis.com

*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PAUL CAUFIELD,<br><br>                 Plaintiff,<br><br>vs.<br><br>COLGATE-PALMOLIVE COMPANY<br>EMPLOYEES' RETIREMENT INCOME<br>PLAN,<br>               Defendant. | Cause No.  4:07-cv-00016-SEB-WGH |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
STAY OF CONSIDERATION OF ITS MOTION TO DISMISS PENDING DISPOSITION
OF THE MOTION TO TRANSFER**

## I.    INTRODUCTION

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan"
or "Defendant") seeks a stay of consideration on the Plan's Motion to Dismiss Plaintiff Paul
Caufield's ("Plaintiff" or "Caufield") Complaint pending disposition of a Motion to Transfer
filed in a related case pending in the United States District Court for the Southern District of
Ohio.  The Motion to Transfer in Paul Abelman and Valerie R. Nutter v. Colgate-Palmolive
Company and Colgate-Palmolive Company Employees' Retirement Income Plan, Case No. 2:07-
cv-793, seeks to transfer a virtually identical putative class action from the Southern District of
Ohio to this district.  A stay of consideration of the Plan's Motion to Dismiss pending the ruling
on the Motion to Transfer would promote judicial efficiency, and will avoid duplication, wasted
resources, and the risk of inconsistent decisions and unnecessary expense.

Accordingly, Defendant respectfully requests that the Court stay consideration on the
Motion to Dismiss pending a ruling on the Motion to Transfer.

## II.   **RELEVANT FACTUAL BACKGROUND**

### A.   **On February 12, 2007, Caufield Filed Suit Against The Plan, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims.**

On February 12, 2007, Caufield filed a Complaint against the Plan, alleging that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 22-23). Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance. (Compl. ¶¶ 9-11). He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 9-11, 22-23). Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions from the Plan, all allegedly calculated in the same manner. (Compl. ¶¶ 13, 17). Specifically, he seeks to bring a class action on behalf of:

> All participants in the Colgate-Palmolive Company Employees' Retirement Income Plan who received a lump-sum distribution of their pension benefits from the Plan at any time after February 12, 1997.

(Compl. ¶ 13). Caufield alleges that class certification is appropriate "because the Plan computed the lump-sum distributions of the Class members in the same contested manner" and "*there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.*" (Compl. ¶¶ 14, 15) (emphasis added).

On April 16, 2007, the Plan moved to dismiss Caufield's entire Complaint for failure to state a claim because Plaintiff's claims are time barred under the relevant statutes of limitations. (Docket No. 24). On May 15, 2007, Caufield filed a Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, in which he asserted various legal arguments in

response to Defendant's Motion to Dismiss. (Docket No. 34). The Plan submitted a Reply brief on June 5, 2007. (Docket No. 42). As explained below, this Court should stay consideration of that Motion pending a ruling on the Motion to Transfer.

    **B.**    **On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed A Nearly Identical Case Against Colgate And The Plan In The Southern District Of Ohio.**

On August 13, 2007, six months after <u>Caufield</u> was first filed in the Southern District of Indiana, Plaintiffs Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") filed suit against Colgate-Palmolive Company ("Colgate") and the Plan in the United States District Court of the Southern District of Ohio, alleging that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (<u>Abelman</u> Compl. ¶¶ 30-31).[1] Specifically, as in this case, Abelman and Nutter allege that the Plan paid them lump sum distributions equal to their account balances. (<u>Abelman</u> Compl. ¶¶ 15-16, 20-22). Also as in this case, Plaintiffs claim that the Plan was required to pay them a higher amount, based on the value of their normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g). (<u>Abelman</u> Compl. ¶¶ 22, 30-31, 34). Abelman and Nutter purport to bring their action on behalf of a class of former Plan participants who received lump sum distributions from the Plan. (<u>Abelman</u> Compl. ¶ 34). Mr. Caufield is a putative class member in this <u>Abelman</u>. Likewise, both of the named plaintiffs in <u>Abelman</u> – Abelman and Nutter – are members of the putative class in this case.

Abelman and Nutter allege that certification is appropriate because there are "numerous common questions of fact and law" and "the prosecution of separate actions … *would create a*

---

[1]   The Complaint in <u>Abelman</u> is attached to the Motion as Exhibit A.

*risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants ...."* (Abelman Compl. ¶¶ 36, 40) (emphasis added).

On September 24, 2007, Colgate and the Plan moved to dismiss Abelman and Nutter's entire Complaint because: (1) Plaintiff Nutter's claims are barred by the applicable statute of limitations based on the same arguments at issue in Caufield; and (2) Plaintiff Abelman's claims are barred by a release that he signed, waiving claims arising under ERISA. (Abelman Docket Nos. 14 and 15).[2] As of October 11, 2007, Plaintiffs have not submitted any brief in opposition to this Motion.

### C.    On September 18, 2007, Colgate And The Plan Moved To Transfer *Abelman* To The Southern District Of Indiana.

On September 18, 2007, Defendants Colgate-Palmolive Company ("Colgate") and the Plan filed a Motion to Transfer Abelman to this district. (The Memorandum Of Law In Support Of The Motion To Transfer, without exhibits, in Abelman is attached to the Motion as Exhibit C). Defendants moved to transfer Abelman because both the Abelman and Caufield lawsuits allege that the Plan improperly calculated lump sum benefits under a "whipsaw" theory. (Abelman Compl. ¶¶ 22, 30-31; Compl. ¶¶ 9-11, 22-23). Likewise, both lawsuits purport to bring such claims on behalf of a putative nation-wide class of individuals who received lump sum distributions from the Plan. Indeed, the plaintiffs in Abelman are members of the putative class in Caufield, and Mr. Caufield is a member of the putative class in Abelman. Defendants moved to transfer to promote judicial efficiency, and to avoid duplication, wasted resources, the risk of inconsistent decisions and unnecessary expense, and pursuant to the "first-to-file" rule. In addition, Defendants moved to transfer Abelman pursuant to 28 U.S.C. § 1404(a) because such a

---

[2]    The Memorandum of Law In Support Of The Motion To Dismiss, without exhibits, in Abelman is attached to the Motion as Exhibit B. Defendant is happy to provide the Court with copies of the exhibits to the Abelman Motion to Dismiss and the Motion to Transfer upon request.

transfer would promote the interests of justice and judicial economy, and would eliminate the problems associated with simultaneously adjudicating two identical class actions.[3]

For reasons of judicial economy, this Court should stay consideration of the Caufield Motion to Dismiss pending a ruling on the Motion to Transfer.

### III.    ARGUMENT

### A.    Good Cause Exists To Stay Discovery And Other Proceedings Pending Resolution Of The Plan's Motion To Dismiss.

Federal courts have authority to stay proceedings and to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Azar v. Merck & Co., No. 3:06-cv-0579 AS, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006) (internal citation omitted). In this case, a stay of consideration of the Motion to Dismiss pending a ruling on the Motion to Transfer is necessary to preserve judicial resources and to promote judicial efficiency. Such stay would result in no real prejudice to the Plaintiff.

There is no question that the parties in this action substantially overlap with the parties in Abelman. Although the named plaintiffs are different individuals, both class actions seek certification of essentially the same class of participants who received lump sum benefits from the Plan. Caufield is a member of the proposed class in this action, and Abelman and Nutter are members of the proposed class in Caufield. Both actions challenge the same calculation of lump sum benefits under the Plan. In addition, the issues in the two actions are identical. In both Ableman and this case, the plaintiffs challenge the calculation of lump sum pension benefits under ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). In addition, the same limitations issues are presented in both cases.

---

[3]    On October 9, 2007, Plaintiffs filed a Motion For A 60 Day Stay of all proceedings in Abelman pending a ruling by this Court on the Motion to Dismiss in Caufield. (Abelman Docket No. 17). Defendants intend to oppose that Motion because a stay of proceedings in Abelman would not lead to judicial efficiency but would run contrary to it.

Here, sound administration warrants a stay of the Motion to Dismiss pending a ruling on the Motion to Transfer in <u>Abelman</u>. Allowing two separate courts in this district to adjudicate the same legal issues is inefficient and impractical. The two courts might reach inconsistent results, and in addition, the parties could not settle one class action while the other case remains pending. Of course, judicial resources would be wasted in litigating the same case in two separate courts and in having two different judges rule on the same issues – including the pending motions to dismiss on statute of limitations grounds.

Finally, Plaintiff will not suffer any prejudice should the Court stay ruling on its Motion to Dismiss pending a resolution of the Motion to Transfer in <u>Abelman</u>. Under these circumstances, the interest in judicial economy would not be served by requiring this Court to expend resources on proceedings that can be easily stayed for a limited period of time by this Court's Order.

## IV.     <u>CONCLUSION</u>

For the reasons set forth herein and in its Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, Defendant respectfully requests that the Court issue an order staying consideration on the Motion to Dismiss until such time as the <u>Abelman</u> Court rules on the Motion to Transfer.

Respectfully submitted,

Dated:  October 11, 2007

MORGAN, LEWIS & BOCKIUS LLP

By:      /s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584

Fax: (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendant
Colgate-Palmolive Company Employees'
Retirement Income Plan

*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2007, a copy of the foregoing Memorandum Of Law In Support Of Defendant's Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, and papers in support thereof, was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street, Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

I hereby certify that on October 11, 2007, a copy of the foregoing Memorandum Of Law In Support Of Defendant's Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, and papers in support thereof, was mailed, by first class U.S. mail, postage prepaid, and properly addressed to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5584
Fax: (215) 963-5001
tchung@morganlewis.com

*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

PAUL CAUFIELD,

                              Plaintiff,

                vs.

                                                 Cause No.  4:07-cv-00016-SEB-WGH

COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

                              Defendant.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR STAY OF PROCEEDINGS**
**PENDING DISPOSITION OF ITS MOTION TO DISMISS**

This Court, having considered Defendant Colgate-Palmolive Company

Employees' Retirement Income Plan's Motion For Stay Of Consideration Of Its Motion To

Dismiss Pending Disposition Of The Motion To Transfer, and being duly advised of its premises,

now finds that the motion should be and is hereby **GRANTED**.

IT IS HEREBY ORDERED that consideration of the Defendant's Motion To

Dismiss Plaintiff's Complaint will be stayed pending a ruling on the Motion to Transfer in Paul

Abelman and Valerie R. Nutter v. Colgate-Palmolive Company and Colgate-Palmolive Company

Employees' Retirement Income Plan, Case No. 2:07-cv-793, in the United States District Court

for the Southern District of Ohio.

Dated:_____              _____

                                       JUDGE
                                       United States District Court
                                       Southern District of Indiana
                                       New Albany Division

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II

BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Douglas R. Sprong
Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

PAUL ABELMAN, and
VALERIE R. NUTTER,

                Plaintiffs,

    vs.

COLGATE-PALMOLIVE COMPANY,
and
COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

                Defendants.

Case No. 2:07-cv-793

Judge Michael H. Watson

Magistrate Judge Norah McCann King

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A 60 DAY STAY AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXTENSIONS OF TIME WITHIN WHICH TO RESPOND TO PENDING DEFENSE MOTIONS

### I.    INTRODUCTION

Defendants Colgate-Palmolive Company ("Colgate") and Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan") (collectively "Defendants") respectfully submit this opposition to Plaintiff Paul Abelman and Valerie R. Nutter's ("Plaintiffs") Motion For A 60 Day Stay ("Motion For Stay") and Plaintiffs' Motions For Extensions Of Time Within Which To Respond To Pending Defense Motions ("Motion For Extensions"). A stay of the proceedings in this matter would lead to duplication of efforts and wasted resources, would increase the risk of inconsistent decisions and unnecessary expense, and would likely prejudice the parties in this case and the related Caufield case. Moreover, Plaintiffs' request for an indefinite extension of time to respond to the Motion to Transfer or Motion to Dismiss – and their decision not to timely submit any opposition briefs to Defendants' Motions to Transfer and To Dismiss – is merely an attempt by Plaintiffs to delay this case by unilaterally taking the very stay that they request and that they know Defendants oppose. Such gamesmanship should not be

{H1039284.1 }

countenanced.  Accordingly, Defendants respectfully request that this Court (1) deny Plaintiffs'

motion to stay and for an extension of time, and (2) either require Plaintiffs to file any

oppositions to Defendants' pending motions immediately or grant Defendants' pending motion

as unopposed pursuant to Local Rule 7.2(a)(2).

## II.    RELEVANT FACTUAL BACKGROUND

### A.    On February 12, 2007, Caufield Filed Suit Against The Plan In The Southern District Of Indiana, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims.

On February 12, 2007, Plaintiff Paul Caufield ("Caufield") filed a Complaint against the

Plan, alleging that the manner in which his lump sum pension benefit was calculated violated

ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Caufield Compl. ¶¶ 22-

23).  Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a

lump sum benefit equal to his cash balance account balance.  (Caufield Compl. ¶¶ 9-11).  He

claims, however, that the Plan was required to pay him a higher amount, based on the value of

his normal retirement benefit discounted to present value using the statutory interest rate and

mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Caufield Compl.

¶¶ 9-11, 22-23).  Caufield purports to bring this action on behalf of a class of former Plan

participants who received lump sum distributions from the Plan, all allegedly calculated in the

same manner.  (Caufield Compl. ¶¶ 13, 17).  Specifically, he seeks to bring a class action on

behalf of:

> All participants in the Colgate-Palmolive Company Employees' Retirement
> Income Plan who received a lump-sum distribution of their pension benefits from
> the Plan at any time after February 12, 1997.

(Caufield Compl. ¶ 13).  Both of the plaintiffs in this case – Abelman and Nutter – are members

of the putative class in Caufield.  Caufield alleges that class certification is appropriate "because

the Plan computed the lump-sum distributions of the Class members in the same contested

manner" and "*there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.*" (Caufield Compl. ¶¶ 14, 15) (emphasis added).

On April 16, 2007, the Plan moved to dismiss Caufield's entire Complaint for failure to state a claim because Plaintiff's claims are time barred under the relevant statutes of limitations. (Caufield Docket No. 24). The grounds for this Motion would apply equally to all members of the putative class who received lump sums before February 12, 2003, including Plaintiff Nutter in this case. On May 15, 2007, Caufield filed a Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, in which he asserted various legal arguments in response to Defendant's Motion to Dismiss. (Caufield Docket No. 34). The Plan submitted a Reply brief on June 5, 2007. (Caufield Docket No. 42).[1]

## B.   On August 13, 2007, Plaintiffs Paul Abelman And Valerie Nutter Filed This Nearly Identical Case Against Colgate And The Plan.

On August 13, 2007, six months after Caufield was first filed in the Southern District of Indiana, Plaintiffs Paul Abelman ("Abelman") and Valerie Nutter ("Nutter") filed suit in the United States District Court of the Southern District of Ohio, alleging the same claims alleged in Caufield, i.e., that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 30-31). Specifically, as in Caufield, Abelman and Nutter allege that upon termination of their employment, the Plan paid them lump sum distributions equal to their account balances. (Compl. ¶¶ 15-16, 20-22). Also as in Caufield, Plaintiffs here claim that the Plan was required to pay them a higher amount, based on the value of their normal retirement benefit discounted to

---

[1]   On July 20, 2007, the Magistrate Judge indicated that "it is anticipated that Judge Barker will have ruled on the … Motion to Dismiss" in Caufield on or around October 31, 2007. (Caufield Docket No. 46).

present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 22, 30-31, 34).  Abelman and Nutter purport to bring their action on behalf of a class of former Plan participants who received lump sum distributions from the Plan.  (Compl. ¶ 34).  Mr. Caufield is a putative class member in the Abelman case.

Abelman and Nutter allege in this Complaint that class certification is appropriate because there are "numerous common questions of fact and law" and "the prosecution of separate actions … *would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants….* "  (Compl. ¶¶ 36, 40) (emphasis added).  They further allege that "[a]ll issues concerning liability are common to all Class members because such issues concern their entitlement to benefits calculated in a manner other than that calculated thus far…." (Compl.¶ 36).

### C.    Colgate And The Plan Moved To Transfer *Abelman* To The Southern District Of Indiana And Moved To Dismiss The *Abelman* Case.

On September 18, 2007, Defendants Colgate-Palmolive Company ("Colgate") and the Plan filed a Motion to Transfer Abelman to the Southern District of Indiana.  (Docket Nos. 11 and 12).  Defendants moved to transfer Abelman because both the Abelman and Caufield lawsuits allege the same claims on behalf of the same class members.  Indeed, the plaintiffs in Abelman are members of the putative class in Caufield, and Mr. Caufield is a member of the putative class in Abelman.  Defendants moved to transfer to promote judicial efficiency, and to avoid duplication, wasted resources, the risk of inconsistent decisions and unnecessary expense, and pursuant to the "first-to-file" rule.  In addition, Defendants moved to transfer Abelman pursuant to 28 U.S.C. § 1404(a) because such a transfer would promote the interests of justice and judicial economy, and would eliminate the problems associated with simultaneously

adjudicating two identical class actions. Plaintiffs have not filed an opposition brief to the Motion to Transfer, and such opposition was due on October 12, 2007. On September 24, 2007, Colgate and the Plan moved to dismiss Abelman and Nutter's entire Complaint because: (1) Plaintiff Nutter's claims are barred by the applicable statute of limitations based on the same arguments at issue in Caufield; and (2) Plaintiff Abelman's claims are barred by a release that he signed, waiving claims arising under ERISA. (Docket Nos. 14 and 15). Plaintiffs have not submitted any brief in opposition to this Motion either.

On October 9, 2007, Plaintiffs filed a Motion For A 60 Day Stay of all proceedings in Abelman pending a ruling by this Court on the Motion to Dismiss in Caufield. (Docket No. 17). Defendants hereby oppose that Motion because a stay of proceedings in Abelman would not lead to judicial efficiency but would run contrary to it.[2]   On October 11, 2007, Plaintiffs filed an indefinite motion for extension of time to respond to Defendants' Motion to Transfer and Motion to Dismiss in Abelman. Plaintiffs have not claimed that they need the additional time for scheduling or personal reasons.[3]   In response to Plaintiffs' motion, Defendant contacted Plaintiffs' counsel, Eli Gottesdiener, via e-mail and telephone, to check on his availability for a telephone conference with the Court to discuss Plaintiffs' pending motions. (See E-mail Correspondence, from Theresa Chung, Esquire, to Eli Gottesdiener, Esquire, dated October 12, 2007, 9:42 AM, attached hereto as Exhibit B). Plaintiffs' counsel has not returned the phone calls or e-mail messages. Accordingly, Defendants hereby submit this written response.

---

[2]   On October 11, 2007, the Plan moved to stay consideration of its Motion to Dismiss in Caufield pending a rule by this Court on the Motion to Transfer in Abelman. (Caufield Docket Nos. 48 and 49).

[3]   Nevertheless, in discussions and e-mail exchanges with Plaintiffs' counsel, Defendants' counsel indicated that although the indefinite extension requested by Plaintiffs was unacceptable, Defendants would be willing to grant Plaintiffs a short extension as a courtesy to Plaintiffs' counsel's schedule. (See E-mail Correspondence from Jeremy Blumenfeld, Esquire, to Eli Gottesdiener, Esquire, dated October 11, 2007, 11:19 AM, attached hereto as Exhibit A).

As explained below, for reasons of judicial economy, this Court should deny Plaintiffs' Motion For Stay and Plaintiffs' Motion For Extension, and should proceed to rule on the Motion to Transfer.

### III.    ARGUMENT

#### A.    A Stay Of The Proceedings In This Case Would Run Contrary To Judicial Efficiency And Would Prejudice The Defendants.

There is no question that federal courts have authority to stay proceedings. However, before doing so, the movant seeking a stay must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." Landis v. North American Co., 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need."); Ohio Environmental Council v. U.S. District Court, Southern District of Ohio, Eastern Div., 565 F.2d 393, 396 (6th Cir. 1977) ("the burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order"). In this case, Plaintiffs have not met their burden of demonstrating "a clear case of hardship or inequity in being required to go forward." In fact, such a stay would run contrary to judicial efficiency and would likely prejudice Defendants.

Plaintiffs have not met their burden of demonstrating that a stay of proceedings will promote judicial efficiency. Rather, Plaintiffs have it backwards. The only efficient use of the Court's and the parties' resources in this case is to transfer this case to Indiana without delay so that the court in the first-filed action can decide the merits of this case, with the benefit of briefing from all parties. Plaintiffs' fears of "needless expenditure[s] of effort and resources" are unfounded. (Plaintiffs' Motion for Stay, at 4). The only needless expenditure of effort and resources was caused by Plaintiffs' delay tactics and motions for stay and indefinite extensions

of time. Instead of wasting resources filing these motions, Plaintiffs could have filed substantive responses to Defendants' motions. Defendants' motions could be fully briefed and ripe for disposition, but for Plaintiffs' delay tactics. Thus, Plaintiffs do not want to avoid delay and wasted resources; instead, they are the cause of it.

Moreover, Plaintiffs assume that if the Motion to Dismiss in Caufield is granted, then the Motion to Dismiss and the Motion to Transfer pending in this Court will be "moot." (Plaintiffs' Motion for Stay, at 4). In fact, however, if the Complaint in Caufield is dismissed, this Court will still need to adjudicate both the Motion to Transfer and Motion to Dismiss. First, there is no reason to stay briefing on the Motion to Dismiss – either this Court or the Caufield court will have to rule on that motion eventually. Moreover, even if Caufield is dismissed by the District Court, Defendants would still move to transfer Abelman to that judicial district so that any determination by the Court of Appeals of the Seventh Circuit in Caufield would apply to Abelman. In essence, the same reasons that compel transfer of Abelman to the Southern District of Indiana apply, regardless of the disposition of the Motion to Dismiss in Caufield. Accordingly, a stay of these proceedings in Abelman pending the disposition of Caufield is not warranted.

Moreover, a stay of the proceedings in Abelman would not further judicial economy, but would run contrary to it. Allowing two separate courts to adjudicate the same legal issues on behalf of the same putative class is inefficient, impractical, and, in this case, wholly avoidable and unnecessary. Although there is no precise rule that, as between federal district courts, one court should defer to the other, "the general principle is to avoid duplicative litigation … [as] [t]he waste of judicial resources due to duplicative proceedings is plain[.]" In re American Medical Systems, Inc., 75 F.3d 1069, 1088 (6th Cir. 1996) (internal citations omitted). There is

no question that the parties in this action substantially overlap with the parties in Caufield. Although the named plaintiffs are different individuals, both class actions seek certification of essentially the same class of participants who received lump sum benefits from the Plan. Caufield is a member of the proposed class in Abelman, and Abelman and Nutter are members of the proposed class in Caufield. Both actions challenge the same calculation of lump sum benefits under the Plan. In addition, the same limitations issues are presented by Defendants' Motion to Dismiss in both cases.

Finally, Plaintiffs will not suffer any prejudice should the Court deny their request for a stay. Plaintiffs would not require a significant amount of time to prepare their responses to the Motions in Abelman; Plaintiffs admit in their Motion for Extension of Time that they can "file responses to both motion as soon after the Court rules on the motion to stay as the Court believes appropriate." (Plaintiffs' Motion for Extensions of Time, at 2).

Under these circumstances, the interest in judicial economy would not be served by staying proceedings pending a ruling on the Motion to Dismiss in Caufield. A stay of the proceedings in this matter would lead to duplication of efforts and wasted resources, and would increase the risk of inconsistent decisions and unnecessary expense. Accordingly, Defendants respectfully submit that Plaintiffs' Motion should be denied.

**B.    Plaintiffs' Motion For Extensions Of Time Within Which To Respond To Pending Defense Motions Should Be Denied.**

In addition, Plaintiffs' Motion For Extensions Of Time Within Which To Respond To Pending Defense Motions should be denied. In their Motion, which was filed one day before their response to the Motion to Transfer was due, Plaintiffs request a stay in order to "preserv[e] the status quo until such time as the Court can rule on Plaintiffs' motion for a  60 day stay[.]" (Plaintiffs' Motion for Extensions of Time, at 1-2). Defendants typically would not oppose

extensions of time to accommodate the parties' schedules. Indeed, Defendants offered exactly such a reasonable extension in this case. (See E-mail Correspondence from Jeremy Blumenfeld, Esquire, to Eli Gottesdiener, Esquire, dated October 11, 2007, attached hereto as Exhibit A). But Plaintiffs' request for an extension of time to respond to the Motions in Abelman is not because of work conflicts or other scheduling issues; rather it is a tactical maneuver to unilaterally get the very stay that Plaintiffs request from this Court in the Motion for Stay. By filing their motion for an indefinite extension, and not filing their oppositions in accordance with the deadlines in this Court's Local Rules, Plaintiffs are hoping that the 60 day stay period they requested passes before they are required to submit the oppositions to Defendants' Motions to Dismiss and to Transfer.[4]  Plaintiffs are merely trying to delay the Court's determination on the Motion To Transfer. Plaintiffs would not be prejudiced by the denial of this request, as their response suggests that they have already prepared responses to the Abelman motions, or that they can readily prepare such responses on short notice. See Plaintiffs' Motion for Extensions of Time, at 2 (stating that Plaintiffs can "file responses to both motion as soon after the Court rules on the motion to stay as the Court believes appropriate.").

Under these circumstances, the interest in judicial economy would not be served by granting Plaintiffs an indefinite extension of time to respond to the Motion to Transfer or the Motion to Dismiss in Abelman, and accordingly, this request should be denied.

---

[4]    Plaintiffs' response to the Motion to Transfer was due on October 12, 2007, and Plaintiffs' response to the Motion to Dismiss is due on October 18, 2007. Under the Local Civil Rules for the U.S. District Court of the Southern District of Ohio, this Court may proceed to grant either motion because of Plaintiffs' failure to timely file a memorandum in opposition to the motion. See L.R. 7.2(a)(2).

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiffs' Motion For A 60 Day Stay and Plaintiffs' Motion For Extensions Of Time, and proceed to rule on the Motion to Transfer.

Dated: October 19, 2007

Respectfully submitted,

<u>/s/ Felix C. Wade</u>
Felix C. Wade (0024462)
SCHOTTENSTEIN, ZOX & DUNN CO., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: fwade@szd.com
Trial Attorney for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan

OF COUNSEL:
Eve M. Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:   215-963-5295/5258/5584
Fax:    877-432-9652
Email: jcostello@morganlewis.com
         jblumenfeld@morganlewis.com
         tchung@morganlewis.com
*Admitted *Pro Hac Vice Admission*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/ Eve M. Ellinger
EVE M. ELLINGER

Jeremy P.
Blumenfeld/PH/MLBLaw
10/11/07 11:19 AM

cc

bcc

Subject    Abelman v. Colgate

Eli,

I have spoken with my client about your request yesterday for an extension of time to respond to the pending motions.

You previously filed a motion to stay this case for 60 days while the Caufield court considers Defendant's motion to dismiss in that case. When you first asked me about your requested stay, I told you that we would oppose any stay motion and do not believe it makes sense to stay the Abelman case. To the contrary, we believe that this case should be transferred to the Caufield court before the Caufield court rules on the motion to dismiss, particularly because the motions to dismiss in both case involve the same statute of limitations issues and the same claims, and because both cases are brought on behalf of the same putative class.

Yesterday, you asked for an extension of the deadline to respond to our motion to transfer and motion to dismiss for 21 days (1) after the court rules on your motion to stay, if the motion to stay is denied or (2) after the stay period expires, if the court grants the stay.

Although we generally are fine with extensions of time to accommodate the parties' schedules (and will generally grant such extensions in this case), we cannot agree to this request. Your request for an "extension" appears just to be a tactical effort to effectively get the very stay you had asked the court for, and that we previously told you we would not agree to. If we agreed to your requested extension, then by the time you file your opposition to the motion to transfer and motion to dismiss, and the court rules on those motions, the 60 day stay period will have passed.

As I mentioned during our call yesterday, if you need a short extension of the deadline because of your own scheduling issues, we are willing to grant such a
request. Please call me if you would like to discuss.

Jeremy

Jeremy P. Blumenfeld
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5258
(215) 963-5001 (fax)
jblumenfeld@morganlewis.com


IRS Circular 230 Disclosure

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein. For information about why we are required to include this legend in emails, please see http://www.morganlewis.com/circular230.



EXHIBIT
A



Theresa V.
Chung/PH/MLBLaw
10/12/07 09:42 AM

To "Eli Gottesdiener" <eli@gottesdienerlaw.com>

cc "Jeremy Blumenfeld" <jblumenfeld@morganlewis.com>,
"Felix C. Wade" <fwade@szd.com>

bcc

Subject Abelman matter

Eli,

I am following up on my message this morning and Jeremy's e-mail to you yesterday.  Please confirm that
you are available for the call with the Magistrate Judge on Monday, sometime after 1 pm.
We would like to follow-up with her as soon as possible today.

Regards,
Theresa Chung

--------------------------------
Theresa J. Chung
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5584 (direct)
215.963.5001 (fax)
tchung@morganlewis.com



EXHIBIT
B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, *et al.*,

       Plaintiffs,

    vs.                     Civil Action 2:07-CV-793
                                Judge Watson
                                Magistrate Judge King

COLGATE-PALMOLIVE CO.,
*et al.*,

       Defendants.

<u>ORDER</u>

       If plaintiffs intend to file a reply in support of their motion to stay, Doc. Nos. 17, 20, they shall do so no later than October 26, 2007.

<u>October 23, 2007</u>               *s/Norah McCann King*
                              Norah M^cCann King
                 United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PAUL ABELMAN, and | : | |
| | : | |
| VALERIE R. NUTTER | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:07-cv-793 |
| | : | |
| | : | Judge Michael H. Watson |
| v. | : | |
| | : | Magistrate Judge Norah McCann King |
| COLGATE-PALMOLIVE COMPANY, | : | |
| and | : | |
| | : | |
| COLGATE-PALMOLIVE COMPANY | : | |
| EMPLOYEES' RETIREMENT | : | |
| INCOME PLAN | : | |
| | : | |
| Defendants. | : | |
| | : | |

PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR A 60 DAY STAY
AND FOR EXTENSION OF TIME TO RESPOND
TO DEFENDANTS' MOTIONS PENDING A RULING
ON THE MOTION FOR A 60 DAY STAY

### Introduction

Plaintiffs request a 60 day stay to permit the *Caufield* court to decide the

Defendant Plan's fully-briefed motion to dismiss Mr. Caufield's claim as time-barred.[1]

That motion was fully-briefed in June and is expected to be ruled upon by late October,

according to the Indiana Magistrate Judge. *See Caufield* Doc. 46 at 2. The continued

pendency of the first-filed *Caufield* action is the sole premise for Defendants' motion to

---

[1] The Plan is a defendant here and in *Caufield*. The Company, the Plan sponsor, is a defendant
here as well.

transfer this action (Doc. 8), an action which Plaintiffs, both Ohioans, filed on August 13, 2007 and served on Defendants on August 14, 2007. (At the time of filing, Plaintiffs and their counsel were unaware of the existence of *Caufield* and remained unaware of it until defense counsel contacted Plaintiffs' counsel shortly after this action was commenced to discuss this action).

Defendants filed their motion to transfer on September 18 and a motion to dismiss (Docs. 14-15) on September 24. The motion to dismiss argues that Plaintiff Abelman's claim should be dismissed because of a release he signed and that Ms. Nutter's claim should be dismissed as time-barred.

As noted in their October 9 motion for a stay (Doc. 17), before filing the motion Plaintiffs asked Defendants for consent to a stay of further briefing and consideration by the Court of their motions to transfer and to dismiss in light of the fact that they were pursuing dismissal of the case the pendency of which in Indiana was the sole basis for their motion to transfer. Defendants did not consent.

Plaintiffs' October 9 motion pointed out, among other things, that the Plan's choice to continue to pursue dismissal of *Caufield* – instead of informing the Indiana court of the existence of this case in mid-August, of the fact that Defendants would be seeking its transfer to Indiana and asking the court to stay further consideration of the Plan's motion to dismiss – made the stay requested here appropriate. Plaintiffs explained that Defendants' motion to transfer rested upon a factual premise that the Plan was actively seeking to have erased and that the Court and parties here would save time and expense by awaiting the Indiana court's decision on the Plan's request. Similarly, Plaintiffs argued, if the motion to dismiss *Caufield* is denied and this case transferred to

Indiana, the motion to dismiss this action would have to be re-briefed under Seventh Circuit law at least to some degree (for example, at least as to the defense that Mr. Abelman's claim is subject to the release he signed), making further briefing pending a decision from the Indiana court unnecessary and wasteful if Defendants' change of venue request is granted.

Acknowledging that Plaintiffs had a good point when they noted that the transfer motion was premature in light of the Plan's active pursuit of a dismissal of *Caufield,* Defendants immediately tried to reverse field and undo the election they made in mid-August to not inform the Indiana court of existence of this action (in which Defendants have no argument that one of its two plaintiffs is time-barred, having received his benefit in 2006) and not request a stay of a decision on the Plan's motion to dismiss.  Within 2 days of Plaintiffs' filing, on October 11, the Plan responded by filing a motion to stay with the Indiana court.  *See Caufield* Doc. 48 (copy attached to Plaintiffs' October 12 supplement in support of their motion for a 60 day stay).

But as Plaintiffs explained the next day, in their October 12 supplement to their motion for a 60 day stay (Doc. 20):

> [T]he problem has not been cured by the Plan's filing in Indiana unless and until the Indiana court issues such a stay.  That cannot be taken for granted.  Mr. Caufield's counsel advises undersigned counsel that Mr. Caufield will oppose the Plan's motion, noting that the Plan's Indiana motion to stay does not explain why the Plan waited until the middle of October, two months after being served with the Complaint in this case, to make its request to stay a decision on its motion pending a transfer of this action to Indiana even though the Magistrate Judge in Indiana specifically informed the parties that "it is anticipated that Judge Barker will have ruled on the currently pending Motion to Dismiss" by October 31.  See Caufield Doc. 46 at 2.  Judge Barker may well be ready to rule soon on the Plan's motion and may take note of the fact that the Plan itself concedes it has not moved to dismiss Mr. Abelman's claim on statute of limitations grounds, only Ms. Nutter's.  See Ex. 1, Caufield Doc. 49 at 4.

Defendants' apparent failure to think things through two months ago has needlessly complicated and delayed what could and should have been a relatively simple matter.  Defendants' latest action – a motion to stay in response to Plaintiffs' motion to stay – does not undo the damage, it just confirms the need for the stay Plaintiffs have requested.  It just means that now the case here should be stayed pending Judge Barker's ruling on **one or two** defense motions rather than just one.

Doc. 20 at 2.

Defendants' 10-page opposition to Plaintiffs' motion for a 60 day stay is unresponsive to these points and the undisputed facts underlying them.  Defendants still fail to explain why when served with this Complaint in mid-August, knowing its motion to dismiss had been fully-brief since June and was expected to be ruled upon by late October, the Plan did not promptly inform the Indiana District Judge of its existence, that the Plan would seek a transfer and requested a stay of further consideration of the Plan's motion to dismiss.  Instead, Defendants content themselves with long repetitive passages about how similar the two cases are to one another or and accusations that Plaintiffs are engaged in "gamesmanship" and "delay tactics."  Def. Opp. at 1-2, 7, 9.  The contention lacks merit.  The Court should grant Plaintiffs' motion for a 60 day stay, and related motion for an extension of time to respond to Defendants' motions pending a ruling on the motion to stay.

**Discussion**

Simply put, further briefing and consideration of Defendants' motions to transfer and dismiss are premature unless and until the Indiana court either rules on Defendants' fully-briefed motion to dismiss *Caufield* or agrees to hold such a ruling in abeyance until the motion to transfer is decided here.  Without an order from the Indiana court on a least one of Defendants' two motions, Plaintiffs cannot intelligently respond to the motion to

transfer, nor can this Court intelligently rule on that motion.

Briefing and consideration of Defendants' motion to dismiss should also be held in abeyance before the parties and the Court know if this case will be staying here or going to Indiana. Defendants' position that this Court should now order the parties to go full-steam ahead briefing and perhaps argument on the motion to dismiss is irreconcilable with Defendants' position that nothing of substance should ever be decided here.

If the Indiana court does agree to stay consideration of the Plan's motion to dismiss the Indiana action or stays on course and denies the motion to dismiss, Plaintiffs will likely have little basis for opposing transfer. Conversely, Defendants will have little or no basis for forcing Plaintiffs to go to Indiana if the Indiana court does not stay its ruling and decides the motion to dismiss in the Plan's favor.

In the event the latter happens, for several reasons, Defendants would have no grounds to complain that Plaintiffs might achieve an outcome on the motion to dismiss filed here different that the one which would have occurred in Indiana.

First, the Plan chose to move to dismiss the Indiana action without awaiting the class certification that Mr. Caufield sought. The Plan must accept the no-*res judicata* consequences of its actions.

Second, Defendants concede they have no limitations defense against Mr. Abelman, so it is completely consistent with a ruling favorable to the Plan in Indiana that Mr. Abelman would be able to go forward with his action here.

Third, because even as to Ms. Nutter, the choice of law questions involved in the adjudication of the limitations issue differs as between the Sixth or Seventh Circuits, there may be no inconsistency between a ruling adverse to Mr. Caufield but favorable to

Ms. Nutter here, other than that which exists independent of these lawsuits.

Finally, any inconsistency or duplication of effort involved in the scenario just described would have to be laid entirely at Defendants' door, for it would have been avoided had the Plan not waited 2 months to do what it now by conduct admits it should have done in August:  stay a ruling on its motion to dismiss the Indiana action.

The notion that Plaintiffs' motion is designed for the purposes of delay is wrong. Instead, it is designed to avoid the expenditure of time and effort at titling at windmills, *i.e.,* briefing motions that Defendants ask never be decided here or are moving targets before the Indiana court rules.

Moreover, contrary to Defendants' suggestion, it is Plaintiffs not Defendants who are prejudiced by delay:  the longer away a decision on the merits is, the longer Plaintiffs have to await receipt of payments they contend they were owed long ago.  Plaintiffs' contingency-fee based counsel have the identical interests as Plaintiffs in this regard. Defendants' suggestion that Plaintiffs seek delay is, if anything, backwards:  neither here nor in *Caufield* do Defendants even hint what possible defense they have to liability on the merits.  *Compare West v. AK Steel Corp.,* 484 F.3d 395 (6th Cir. 2007); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 338 F.3d 755, 758 (7th Cir. 2003).

Dated:  October 26, 2007                  Respectfully submitted,

                                          /s/William H. Blessing
                                          William H. Blessing (#0006848)
                                          The Blessing Law Firm
                                          119 East Court Street, Suite 500
                                          Cincinnati, Ohio 45202
                                          Telephone:  (513) 621-9191
                                          Telecopier:  (513) 621-7086

Eli Gottesdiener (admitted *pro hac vice*)
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
(718) 788-1500

*Counsel for Plaintiffs and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail upon Defendants via their counsel as follows:

Felix Wade
Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

/s/Eli Gottesdiener
Eli Gottesdiener

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


PAUL ABELMAN, *et al.*,

       Plaintiffs,

    vs.                      Civil Action 2:07-CV-793
                                  Judge Watson
                                  Magistrate Judge King


COLGATE-PALMOLIVE CO.,
*et al.*,

       Defendants.


<u>ORDER</u>


      Plaintiffs' motion to stay briefing, Doc. No. 17, is **DENIED.**
Plaintiffs' memoranda *contra* the motions to change venue and to dismiss
are due November 2, 2007.



<u>October 29, 2007</u>          <u>  *s/Norah McCann King*  </u>
                              Norah M$^c$Cann King
                   United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

PAUL ABELMAN, and
VALERIE R. NUTTER,

               Plaintiffs,

     vs.

                            Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, and     Judge Michael H. Watson
COLGATE-PALMOLIVE COMPANY          Magistrate Judge Norah McCann King
EMPLOYEES' RETIREMENT INCOME
PLAN,

               Defendants.

## NOTICE OF APPEARANCE OF CO-COUNSEL

Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees'

Retirement Income Plan serves notice that Jeremy P. Blumenfeld will serve as co-counsel for

Defendants in this matter.

                              /s/ *Jeremy P. Blumenfeld*
                              Jeremy P. Blumenfeld      (0068858)
                              Morgan, Lewis & Bockius LLP
                              1701 Market Street
                              Philadelphia, PA 19103
                              Tel.:   215-963-5258
                              Fax:   877-432-9652
                              Email: jblumenfeld@morganlewis.com

                              /s/ *Felix C. Wade*
                              Felix C. Wade          (0024462)
                              Schottenstein, Zox & Dunn Co., LPA
                              250 West Street
                              Columbus, Ohio 43215
                              Tel: (614) 462-2700
                              Fax: (614) 462-5135
                              Email: fwade@szd.com
                              Trial Attorney for Defendants Colgate-Palmolive
                              Company and Colgate-Palmolive Company
                              Employees' Retirement Income Plan

OF COUNSEL:

Eve M. Ellinger    (0073742)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:    215-963-5295/5258/5584
Fax:    877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system and served electronically upon the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

_/s/ Felix C. Wade_____
Felix C. Wade            (0024462)

{H1045432.1}

William H. Blessing (#0006848)
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **PAUL ABELMAN,** *et al.,* | : | **Case No. 2:07-cv-793** |
|  | : | **Judge Michael H. Watson** |
| **Plaintiffs,** | : | **Magistrate Judge Norah McCann King** |
|  | : |  |
| **v.** | : |  |
|  | : | **FIRST AMENDED** |
| **COLGATE-PALMOLIVE CO.** *et al.,* | : | **CLASS ACTION COMPLAINT** |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

### Nature of Action

1.      This is a class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

### Subject Matter Jurisdiction

2.      This Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under ERISA § 502, 29 U.S.C. § 1132.

### Personal Jurisdiction and Venue

3.      This Court has personal jurisdiction over Defendants (defined below) because they transact business in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process.  *See* ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

4.      Under ERISA § 502(e), 29 U.S.C. § 1132(e), an action "may be brought in the district where the plan is administered, where the breach took place, or where a

defendant resides or may be found." Venue here is proper for Defendants on three of the four bases provided by the statute.

5.      First, this is the District where, among other places, the alleged breaches occurred. Where a participant claims that a violation of ERISA resulted in a failure to pay a benefit due under an ERISA plan, either under the express terms of the plan or terms implied by law, the alleged breach is deemed to have occurred in the place where the participant received or should have received his or her plan benefits. It was in this District, where some of the Plaintiffs currently reside and resided at the relevant time, that the Plan benefits at issue here should have been paid to them.

6.      Second, the Plan, the Plan administrator and the Company "may be found" in this District in either a general or specific personal jurisdiction sense.

7.      There is general personal jurisdiction over the Plan and Plan administrator because many hundreds of residents of this District, as employees of the Company, are currently accruing benefits under the Plan in this District, or, as former employees of the Company, are currently receiving benefits from the Plan in the District. In addition, the Plan and Plan administrator come into this District on a continuous basis to communicate with these District residents regarding their benefits, including through a highly-interactive Plan internet website.

8.      There is general personal jurisdiction over the Company because it has continuous and systematic contacts with this District through its employment of many hundreds of District residents, ownership of property in the District, operation of a manufacturing plant in this District and operation of numerous offices in this District.

9.      There is specific personal jurisdiction over all Defendants insofar as this

action arises out of the failures to pay Plaintiffs Abelman and Nutter and other proposed Class members residing in this District pension benefits that should have been paid in this District.

10.    Third, each Defendant "resides" here within the meaning of ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## The Parties

11.    Plaintiff Paul Abelman, a resident of New Albany, Ohio, is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during his period of employment with the Company.  Mr. Abelman remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although he received benefits from the Plan, the Plan owes him additional benefits that it has not yet paid him, as set forth herein.

12.    Plaintiff Valerie R. Nutter, a resident of Zanesville, Ohio, is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company.  Ms. Nutter remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

13.    Plaintiff Warren Jemmott is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during his period of employment with the Company.  Mr. Jemmott remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because, among other things, he has not received any portion of his vested accrued benefit from the Plan.

14.    Plaintiff Susan Byrd is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company.  Ms. Byrd remains a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

15.    Plaintiff Adriana Vasquez is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company.  Ms. Vasquez remains a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

16.    Plaintiff Cora Nelson-Manley is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company.  Ms. Nelson-Manley remains a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

17.    Defendant Colgate-Palmolive Company ("Colgate" or the "Company"), a domestic corporation, is the sponsor of the Plan and subject to applicable law, has the power and duty to amend the Plan or otherwise take action, including retroactively, in order to meet the tax qualification requirements of the Internal Revenue Code (the "Code").

18.    Colgate, acting through its Board of Directors, is also a fiduciary with respect to the Plan insofar as it controls the Plan administrator, Defendant Employee

Relations Committee ("ERC" or the "Committee").  Colgate possesses and exercises the power to appoint, remove, approve and monitor the performance of the ERC's individual members all of whom are Company employees.  In these and related ways, it exercises discretionary authority or discretionary control respecting management of the Plan and has discretionary authority or discretionary responsibility in the administration of the Plans.

19.     Colgate is also fiduciary because it, directly and indirectly (such as through the ERC and others), communicates with Plan participants with respect to the Plan.

20.     Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (EIN: 13-2854931 - Plan No.: 001) (the "Plan") is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).

21.     Defendant ERC is the Plan's administrator and a named fiduciary under the Plan within the meaning of ERISA.  ERISA §§ 3(16)(A), 402(a), 29 U.S.C. §§ 1002(16)(A), 1102(a).

**Additional Allegations**

22.     Plaintiff Abelman was employed by the Company or one of its affiliates for approximately 12 years, from 1992 until 2005.  Mr. Abelman is 100% vested in his accrued benefit under the Plan, according to the Plan's vesting schedule.

23.     Plaintiff Nutter was employed by the Company or one of its affiliates for approximately 12 years, from 1988 until 2000.   Ms. Nutter is 100% vested in her accrued benefit.

24.     Plaintiff Jemmott was employed by the Company or one of its affiliates for more than three years, from 2002 to 2006.  Mr. Jemmott is 50% vested in his accrued benefit.

25.     Plaintiff Byrd was employed by the Company or one of its affiliates for approximately 5 years, from 1991 to 1996.  Ms. Byrd is 75% vested in her accrued benefit.

26.     Plaintiff Vasquez was employed by the Company or one of its affiliates for approximately 16 years, from 1989 to 2005.  Ms. Vasquez is 100% vested in her accrued benefit.

27.     Plaintiff Nelson-Manley was employed by the Company or one of its affiliates for approximately 6 years, from 1998 to 2006.  Ms. Nelson-Manley is 100% vested in her accrued benefit.

28.     Throughout that time, Plaintiffs accrued pension benefits under the Plan, a defined benefit plan of the "cash balance" variety, in which a hypothetical account, known as a "Personal Retirement Account" ("PRA" or "Account"), was established for each of them.

29.     Under the terms of the Plan, Plaintiffs accrued, among other things, "pay credits" based on a percentage of their pensionable compensation and monthly "interest credits" in an amount, determined quarterly, equal to 1/12 of an effective annual calendar year rate equal to the sum of the average rate of a new 6-month Treasury bill in effect during the quarter, plus 2%.

30.     Pay credits were allocated to Plaintiffs' accounts according to the following schedule:

| YEARS OF SERVICE | UP TO ¼ OF SSWB[1] | OVER ¼ OF SSWB |
|---|---|---|
| 0-9 | 2.50% of pay | 3.75% of pay |
| 10 -14 | 3.00% of pay | 4.50% of pay |
| 15-19 | 4.00% of pay | 6.00% of pay |
| 20-24 | 5.35% of pay | 8.00% of pay |
| 25 or more | 7.50% of pay | 11.25% of pay |

31.    Under the Plan, participants' right to receive future interest credits on their account balances through normal retirement age (age 65) accrued at the same time as the corresponding pay credits to which the interest credits relate.  In technical terms, the Plan was and is, as a result, a "frontloaded" interest crediting plan within the meaning of the law.  *See, e.g.,* IRS Notice 96-8, 1996-1 C.B. 359-61.

32.    After terminating employment, Plaintiffs Abelman and Nutter filed written applications for benefits with the ERC and elected to receive their fully-vested Plan benefits in the form of a lump sum distribution in 2006 and 2000, respectively.  Plaintiff Abelman was 43 at the time and Plaintiff Nutter was 36 at the time.

33.    The Plan calculated and paid Plaintiff Nutter a benefit according to the terms of the Plan in October 2000 which the Plan forwarded to her at her home in Zanesville in the form of a check in the amount of $27,258.64.  The Plan calculated and paid Plaintiff Abelman a benefit according to the terms of the Plan on or about April 2006 which the Plan forwarded to his home in New Albany in the form of a check in the amount of $60,654.37.

34.    Similarly, in the case of Plaintiffs Byrd, Vasquez and Nelson-Manley,

---

[1] Social Security Wage Base.

after they terminated employment, they filed their written application for benefits with the ERC and also elected to receive their fully-vested Plan benefits in the form of a lump sum distribution in 1996, 2005 and 2006, respectively.  They too had not yet attained normal retirement age under the Plan at the time.

35.     However, the amounts the Plan paid these Plaintiffs were underpayments, less than the actuarial equivalents of their accrued benefits, and/or otherwise insufficient as a matter of law.  Similarly, in the case of Plaintiff Jemmott who has not yet requested his benefit, it too would be legally insufficient.

36.     The two basic reasons for this are:

(1)   Since the Plan's adoption of a cash balance formula in 1989, the Plan has failed to perform the calculation, often referred to as the "whipsaw" calculation, required to ensure that participants requesting their accrued benefit in the form of lump sum prior to normal retirement age are paid an amount actuarially equivalent to the annuity promised under the Plan commencing at age 65.

(2)   Also since inception, the Plan's basic formula has been impermissibly backloaded, violating the anti-backloading provisions of ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), due to its accelerating pay-based crediting schedule and the absence of a minimum interest crediting rate.  (The anti-backloading rules prevent a plan from weighing the accrual of benefits heavily in favor of long-term employees at the expense of short-term employees.  The only one of the three backloading tests that the Colgate Plan could satisfy is that set forth in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), *i.e.* the 133 and 1/3% rule under which no later rate of accrual is more than one third greater than any earlier rate.)  The Plan fails, by design and in operation, the 133

and 1/3% rule.

37.    Among the ways, as a result, that the Plan incorrectly calculated, calculates and, without court intervention, will in the future incorrectly calculate the accrued benefits of Plaintiffs and members of the proposed Class, are as follows:[2]

38.    **First,** the Plan failed to project the account balances of Plaintiffs and members of the relevant Subclass (Subclass A, defined more fully below) to normal retirement age at the Plan's crediting rate or a rate that did not understate the value of the interest credits they had the right to receive through that age.

39.    **Second**, as to Plaintiffs and members of Proposed Subclass B, the Plan failed to project to normal retirement age the pay credits that they had earned prior to January 1, 2000, according to the rate set forth in the Plan for this purpose, *see* Plan, Art. 1, § 1.3, first para., p.3.

40.    **Third**, as to Plaintiffs and members of Proposed Subclass C, the Plan failed to annuitize the portion of their pay credits (projected to normal retirement age) earned prior to January 1, 2000, using the Plan's annuity conversion factors, *see* Plan, Art. 1, § 1.3, first para., p.3.

41.    **Fourth,** Defendants failed to correct the Plan's impermissibly backloaded formula by providing for (i) minimum pay credits regardless of a participant's years of service, (ii) a minimum interest credit to be applied to all accounts for all periods, or (iii) some combination of both.  Because by far the least costly solution to the Plan's excessively accelerating pay-based crediting schedule would have been and is to credit all participants for all periods a minimum interest credit of **5.89%,** it is to that solution that

---

[2] Use of the past tense is solely for purposes of avoid awkward sentence construction.  All of the alleged violations are, to varying degrees, still ongoing.

Plaintiffs confine their attention.  As to Plaintiffs and the member of proposed Subclass D, that 5.89% minimum interest credit should have been applied to all participants' accounts for all periods that the then-current crediting rate fell below 5.89%.  As to Plaintiffs and the member of proposed Subclass E, the 5.89% minimum should also have been used to project their account balances to normal retirement age whenever it would have yielded a higher lump sum than another otherwise applicable rate would have.

### Claims

42.     ERISA §§ 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g), and Internal Revenue Code § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d), requires any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, to be no less than the present value of the participant's accrued benefit expressed as an annuity commencing at normal retirement age (under the Plan, age 65).

43.     The Plan paid Plaintiffs lump sum benefits that were less than the present value of their respective accrued benefits in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d).

44.     The Plan's conduct as described above also resulted in an impermissible forfeiture of  benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation § 1.411(a)-4 and 4T, in that the Plan conditioned the right to receive future interest credits on Plaintiffs not taking a distribution prior to normal retirement age.

45.     The Plan's failure to credit participant accounts and failure to perform actuarial equivalent calculations using the 5.89% minimum interest crediting rate discussed above caused the Plan to violate ERISA's service-based accrual rules.  *See*

10

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).

46.     The Plan's operational noncompliance with the backloading rules became chronic and especially acute in 2002 due to falling interest rates.  Minutes of ERC meetings reflect that Defendants knew of the problem and made efforts to address it.  But in so doing Defendants made the backloading worse, not better.

47.     Instead of doing what they had to do, *i.e.,* declare a minimum interest credit of 5.89% for all participants for all periods, Defendants enacted an amendment that:  (1) only applied to participants who complete 25 years of service by the end of the 2002 plan year; (2) guaranteed a rate of only 5.5%; and (3) at least on its face, indicated that the rate was to be applied for that year only (2002).  Defendants enacted the identical amendment each year since 2002:  2003, 2004, 2005 and 2006.

48.     Even putting aside that 5.5% is markedly below the required 5.89% minimum, Defendants' actions designed "to ensure compliance with IRS backloading rules," the increase to 5.5% was focused, literally, on the wrong group of participants.

49.      The participants most directly and adversely affected by the Plan's illegally backloaded formula is everyone who has **not** completed 25 years of service, indeed, the fewer years of service the worse the personal impact of the backloading.  For sake of argument, if any group of participants could be ignored for purposes of fixing the deficiencies with the formula (and Plaintiffs do not believe anyone could be) it was the participants who had already completed 25 years of service:  they had already endured the excessively backloaded formula and come out on the other side, after reaching the plateau of 7.50% of pay, a crediting rate which thereafter never increases.

50.     Granting an increase to 5.5% for just that cohort, in fact, made the Plan's

backloading problem worse, not better, because the 5.5% is itself a **backloaded** interest credit.[3]

51.    On its face, the 5.5% rate is not guaranteed but dependent on the participant continuing to work to the point that he or she actually completes 25 years of service.  It is, in other words, a "backloaded interest credit" instead of "frontloaded" interest credit.  As the IRS explained in IRS Notice 96-8, backloaded interest credit plans "typically will not satisfy any of the accrual rules in section 411(b)(1)(A), (B) or (C)," *i.e.,* ERISA and the Code's "anti-backloading" strictures.  While the Colgate Plan is designed as a frontloaded interest credit plan, without a plan-wide, permanent 5.89% minimum interest guarantee, the Plan fails the backloading test.  It thus cannot tolerate any **additional** backloading.

52.    The easiest solution in such circumstance would be to remove the condition imposed delaying the accrual of the benefit, *i.e.,* to make it frontloaded, such that anyone entering service for Colgate prior to age 65, such that they **could** complete 25 years of service, would be deemed to immediately accrue (in 2002 or no later than 2005) the right to a guaranteed 5.5% crediting rate at the time in the future when they would or could have completed 25 years of service.

53.    The resultant 5.5% minimum guarantee in turn forms the basis for

---

[3] Any suggestion that the 5.5% amendments were merely *ad hoc,* 1-year amendments and that the 5.5% guarantee did not become a permanent feature of the Plan would be unavailing.  The sponsor's explicitly stated purpose in adopting the amendments were to fix the Plan's acknowledged backloading problem.  As a matter of law, the increase would have to be permanent in order to have the intended ameliorative effect.  In any event, no later than 2005, the 5.5% minimum became a permanent, nonforfeitable feature of the Plan under the pattern of repeated plan amendments doctrine.  *See* 26 C.F.R. § 1.411(d)-4, Q & A-1(c)(1), Rev. Rul. 92-66, 1992-2 C.B. 93.

additional violations and request relief[4] on behalf of Plaintiffs and proposed Subclass F.

because Defendants failed, as required: (a) to apply the 5.5% minimum to participant

accounts from 2002 going forward during any period when the crediting rate is below

5.5%; and (b) also failed to use that 5.5% in performing the calculation required for the

accumulation phase of the required whipsaw calculations for the period between the time

the participant could have completed 25 years of service and normal retirement age. For

those years, affected participants' account balances have to be projected at least at 5.5%

before determining which of the several methods that must be used for calculating

participants' lump sums yields the greatest amount.[5]

### Class Allegations

54.     Plaintiffs bring suit on behalf of themselves and on behalf of all other

participants and beneficiaries similarly situated under the provisions of Rule 23 of the

Federal Rules of Civil Procedure with respect to violations alleged herein. Plaintiffs

propose a Class and several Subclasses.[6]

55.     The proposed Class is defined as follows:

---

[4] Direct harm (as opposed to the violation) may be cured to a degree if a 5.89% minimum interest credit is imposed to cure the Plan's more serious and systematic backloading violations.

[5] By way of illustration, all five Plaintiffs taking distributions were less than 40 years old when joining the Company, although two of them (Ms. Nutter and Ms. Byrd) took their distribution before the effective date of the amendment. Thus, three of the five Plaintiffs (Abelman, Vasquez, Nelson-Manley) should have their whipsaw calculations performed using the 5.5% rate for the years following the time they could have completed 25 years of service and normal retirement age. Similarly, Plaintiff Jemmott, who also entered into service prior to age 40 (at age 27 in September 2002), should he choose to keep his benefit in the Plan, he should be entitled to a guaranteed 5.5% minimum crediting rate starting at approximately age 52, when he could have completed 25 years of service. By the same token, should he now elect a lump sum, one way in which his benefit should be calculated is to use the minimum 5.5% crediting rate for the accumulation phase of the whipsaw calculation for the approximately 13 years between age 52 and age 65, normal retirement age.

[6] Plaintiffs do not imply that certification of some or all claims would be inappropriate without the formation of one or more subclasses.

All persons who have accrued or are accruing benefits under the Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan") and as to whom an Account was or has been established and maintained as defined in Plan, Art. 1 § 1.1, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass A is defined as follows:

All Class members who received a distribution from the Plan in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when, at time their lump sums were calculated, the Plan's interest crediting rate exceeded the applicable discount rate and/or when the lump sum would have exceeded the Account balance had it been projected to normal retirement age at a rate that did not understate the value of the interest credits these Plan participants had the right to receive through that age, before being converted to an annuity and discounted to a present value at the statutory interest rates then in effect, *i.e.,* had a "whipsaw" calculation as described in IRS Notice 96-8 been performed; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass B is defined as follows:

All Class members who accrued benefits under the Plan prior to January 1, 2000 and received a distribution in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when a greater lump sum would have resulted from a whipsaw calculation using the Plan's stated projection rate in effect prior to January 1, 2000 as to benefits accrued prior to that; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass C defined as follows:

All Class members who accrued benefits under the Plan prior to January 1, 2000 and received a distribution in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when a greater lump sum would have resulted from a whipsaw calculation that applied the Plan's annuity conversion factors in effect prior to January 1, 2000 to the pre-January 1, 2000 accrued portion of the member's Account balance, regardless of how the accumulation phase of the calculation is performed or whether it independently would result in a whipsaw; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass D is defined as follows:

All Class members who received a distribution in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when a greater lump

sum would have resulted from a whipsaw calculation using the minimum interest rate (5.89%) required to prevent the Plan from failing the backloading test described in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B); and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass E is defined as follows:

All Class members who accrued benefits under the Plan during any period for which the Plan's crediting rate was less than the minimum interest rate (5.89%) required to prevent the Plan from failing the backloading test described in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B); and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass F is defined as follows:

All Class members who entered into service for Colgate prior to the age of 40 and who accrued benefits under the Plan during any period for which the Plan's crediting rate was less than 5.5% and/or received a distribution in the form of a lump sum prior to August 17, 2006; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass G is defined as follows:

All Class members persons who received a distribution from the Plan in the form of a lump sum after August 17, 2006 that equaled the balance of their Account where such distribution was not preceded by an ERISA § 204(h) notice as described in IRS Notice 2007-6, or all such persons who can in the future receive such a distribution; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

56.    The requirements for maintaining this action as a class action under Fed.

R. Civ. P. 23(a)(1) are satisfied in that there are too many Class and Subclass members

for joinder of all of them to be practicable.  There are at least hundreds of members of the

proposed Class and Subclasses dispersed among many states.

57.    The claims of the Class and Subclass members raise numerous common

questions of fact and law, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2).

58.    All issues concerning liability are common to all Class and Subclass

members because such issues concern their entitlement to benefits calculated in a manner

other than that calculated thus far and their entitlement to relief from harm caused by the

violations of law, rather than any action taken by Plaintiffs or any Class member.  In

addition, all issues concerning relief are also common to the Class.  The computation of a

participant's lump sum distribution and/or his or her current or then-current account

balance, and his or her account is standardized in that the amount of the lump sum

distribution and the amount of the account balance for each member of the Class and

Subclasses was calculated in the same manner as described above.  Thus, there exist

common questions of fact as to each member of the Class or particular Subclass in

question.  Each Class member's rights will be determined by reference to the same Plan

documents and the same provisions of ERISA.  Thus, there exist common questions of

law as to each Class member, *i.e.,* whether the method of calculating of lump sum

distributions or account balances violated the law.

59.    Plaintiffs' claims are typical of the claims of Class members, and therefore

satisfy the requirements of Fed. R. Civ. P. 23(a)(3).  They do not assert any claims

relating to the Plan in addition to or different than those of the Class.  Plaintiffs' claims

are typical of the claims of the Class members in that their respective lump sum

distributions were calculated in the same fashion as the rest of the Class, and their rights,

as well as those of the Class as a whole, are similarly provided for under the plan

document and applicable provisions of ERISA.

60.    Plaintiffs are adequate representatives of the proposed Class, and therefore

satisfy the requirements of Fed. R. Civ. P. 23(a)(4).  Plaintiffs' interests are identical to

those of the proposed Class and applicable Subclasses.  The Plan has no unique defenses

against them that would interfere with their representation of the Class or applicable

Subclasses.  Plaintiffs have engaged competent counsel with both ERISA and class action litigation experience.

61.    Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are satisfied in that the prosecution of separate actions by individual members of the proposed Class and applicable Subclasses would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

62.    All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Class and Subclass members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class and Subclasses as a whole.

**Additional Allegations Re the Accrual of the Applicable Limitations Period**

63.    Defendants and their agents intentionally and/or negligently concealed from Plaintiffs and the proposed Class the foregoing violations and facts underlying them in an effort to avoid liability and possible threatened plan disqualification by the IRS. Defendants did so through misleading statements and omissions made to participants in a variety of contexts including in the Plan's Summary Plan Description; in periodic account statements; on the website dedicated to the Plan; and in connection Plaintiffs' written applications for benefits.

64.    Prior to 2007, Defendants had not denied any portion of any Plaintiff's or proposed Class member's application for benefits seeking payment of the legally required payments at issue here.  Nor in any other way had Defendants repudiated or clearly

repudiated any Plaintiff's or any of Class member's application for benefits seeking payment of the legally required payments at issue here.

65.    As a result of Defendants' failures to disclose and misleading statements and omissions, Plaintiffs only recently learned that they have not received the benefits to which they are lawfully entitled sought here.

### Absence of Exhaustion Requirement

66.    Upon recently learning that they are due additional benefits, Plaintiffs did not exhaust the administrative remedies provided under the terms of the Plan once learning of the violations prior to initiating this lawsuit because exhaustion of the Plan's internal claims process was not required and/or should be excused in this case, for a variety of reasons.

67.    First, the exhaustion requirement does not apply because the claims Plaintiffs raise are statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan. Congress intended that statutory questions of this nature be adjudicated by Article III judges, not employers acting as plan administrators.

68.    Second, even if the exhaustion requirement is not categorically inapplicable here, it should be excused as futile. Here, as in *West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007), "a lump-sum distribution is described [under the plan] as a payment equal to the participant's account balance. Had [the plaintiff] submitted a timely claim for the recalculation of his lump-sum benefit, the [plan sponsor] would simply have responded, as it has argued in this appeal, that [the plaintiff] has already received an amount equal to his account balances, which is all that he is entitled to under

[the plan sponsor's] interpretation of its Plan." *Id.* at 405.

69.     Futility is also demonstrated by the fact that the legal standards Defendants violated are well-established yet Defendants have failed to conform the Plan or their conduct under it to the requirements of the law, evidencing their belief that the law does not apply to them.

70.     Fourth, exhaustion was not required for the separate but related reason that the Plan's internal claims process, such as it is, is not designed to address and is not capable of addressing alleged statutory violations.

71.     Fifth, the Plan lacks an ERISA-compliant claims process.

72.     Finally, exhaustion should be excused because it would serve few if any of the recognized purposes of the exhaustion requirement, as Plaintiffs will demonstrate should Defendants nevertheless seek to compel exhaustion.

### Plaintiff Jemmott's ERISA §§ 104(b), 105(a) Claim

73.     On July 13, 2007, by registered mail, Mr. Jemmott, a current inactive Plan participant, sent the Plan administrator a request for copies of all documents available to him under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), relating to the Plan, and a statement of his Plan benefit under ERISA § 105(a), 29 U.S.C. § 1025(a).

74.     The Plan administrator failed to comply with any portion of Mr. Jemmott's ERISA § 104(b) request within the required timeframe.

75.     Moreover, nearly four months later, the Plan administrator has yet to provide Mr. Jemmott with any ERISA § 105(a) statement.

76.     In the Plan administrator's belated response to Mr. Jemmott's ERISA § 104(b) request (sent to Mr. Jemmott by and in the name of Colgate and not the Plan or

Plan administrator), Mr. Jemmott was refused copies of documents to which he is entitled as a matter of law. Among those are documents that Mr. Jemmott explicitly requested – such as a copy of the Plan's most recent actuarial valuation and a copy of all administrative manuals, guidelines, or similar administrative documents used by the Plan administrator to calculate his benefit. In denying Mr. Jemmott access to anything other than the three documents that were provided, Colgate provided no explanation whatsoever as to why the specifically requested materials could be withheld and did not even acknowledge that a list of specifically identified documents had in fact been requested access to which had been refused.

## Prayer for Relief

WHEREFORE, as to Mr. Jemmott's individual claims, he prays that judgment be entered against the Plan administrator and all available relief awarded.

As to all other claims, all Plaintiffs pray that judgment be entered against Defendants and that the Court award the following relief:

A.    Certification of this action as a class action for all purposes of liability and relief and appointment of undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23.

B.    Judgment for Plaintiffs and the Class and Subclasses against Defendants on all claims expressly asserted and/or within the ambit of this Complaint.

C.    An order awarding, declaring or otherwise providing Plaintiffs and the Class all other such relief to which Plaintiffs and the Class and Subclasses are or may be entitled whether or not specified herein.

D.    An order awarding pre- and post-judgment interest.

E.     An order awarding attorney's fees on the basis of the common fund

doctrine (and/or other applicable law, at Plaintiffs' election), along with the

reimbursement of the expenses incurred in connection with this action.

F.     An order awarding, declaring or otherwise providing Plaintiffs all relief

under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that Plaintiffs

may subsequently specify and/or that the Court may deem appropriate.

Dated:  November 2, 2007               Respectfully submitted,


                                       /s/William H. Blessing
                                       William H. Blessing (#0006848)
                                       The Blessing Law Firm
                                       119 East Court Street, Suite 500
                                       Cincinnati, Ohio 45202
                                       Telephone:  (513) 621-9191
                                       Telecopier:  (513) 621-7086

                                       Eli Gottesdiener (admitted *pro hac vice*)
                                       Gottesdiener Law Firm, PLLC
                                       498 7th Street
                                       Brooklyn, New York 11215
                                       (718) 788-1500

                                       *Counsel for Plaintiffs and the proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail upon Defendants via their counsel as follows:

> Felix Wade
> Eve Ellinger
> Schottenstein, Zox & Dunn Co., LPA
> 250 West Street
> Columbus, Ohio 43215
>
> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103

> /s/Eli Gottesdiener
> Eli Gottesdiener

William H. Blessing (#0006848)
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **PAUL ABELMAN,** *et al.,* | **:** |
|  | **:** **Case No. 2:07-cv-793** |
| **Plaintiffs,** | **:** **Judge Michael H. Watson** |
|  | **:** **Magistrate Judge Norah McCann King** |
|  | **:** |
| **v.** | **:** |
|  | **:** **OPPOSITION TO DEFENDANTS'** |
|  | **:** **MOTION TO TRANSFER** |
|  | **:** |
| **COLGATE-PALMOLIVE CO.** *et al,* | **:** |
|  | **:** |
| **Defendants.** | **:** |
|  | **:** |

Plaintiffs do not necessarily oppose transfer of this action to the Southern District of Indiana for consolidation with an earlier filed, related action, *Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan,* No. 4:07-CV-0016SEB-WGH (S.D. Ind.). Specifically, Plaintiffs do not oppose a transfer in the event either that the Indiana District Court denies the Defendant Plan's long-pending, fully-briefed motion to dismiss *Caufield* on statute of limitations grounds or grants Defendant's belated motion to stay a ruling on its motion to dismiss (which the plaintiff has opposed, *see* Ex. 1 (*Caufield* Doc. 50).

But unless and until either of those things happen, Plaintiffs do oppose transfer and ask that their choice of forum be respected at least temporarily by denial of Defendants' motion to transfer without prejudice, until such time as the Court can determine whether the predicate that forms the basis for Defendants' motion is real, *i.e.,* whether there will indeed be a related case with which this case can or will be

consolidated if it is transferred to the Southern District of Indiana.

To do as Defendants ask, *i.e.,* transfer this case to Indiana now, without awaiting word from the Indiana court on how it intends to rule on either of Defendants' motions, makes no sense.  If the Court were to transfer this action now, there is a reasonable chance that while this case were still en route to Indiana or before even being scheduled for a status hearing that *Caufield* will be dismissed.  In that case, the parties will be sent back here.  There is nothing to be gained by risking such a wasteful roundtrip. Defendants do not dispute that if this case were in fact transferred now, nothing would actually get accomplished in the case pending a ruling on at least one of the Defendant Plan's two pending motions in *Caufield*.

Despite the Defendant Plan's request that the Indiana court not rule on its pending motion to dismiss, there is a real chance that the *Caufield* court will nevertheless do so, for one or more of the reasons set forth in Mr. Caufield's opposition to the Plan's motion to stay.  Ex. 1.  There is thus still every reason at this point to think that the Defendant Plan's motion to dismiss will be granted and *Caufield* dismissed, as the Defendant Plan argues it *should* be.

Under the circumstances, and especially given that Plaintiffs will not oppose transfer if, after the *Caufield* court rules, there is still a case with which this case can indeed be consolidated, the motion to transfer should be denied without prejudice at this time.

Dated:  November 2, 2007                    Respectfully submitted,


                                           /s/William H. Blessing
                                           William H. Blessing (#0006848)
                                           The Blessing Law Firm
                                           119 East Court Street, Suite 500
                                           Cincinnati, Ohio 45202
                                           Telephone:  (513) 621-9191
                                           Telecopier:  (513) 621-7086


                                           Eli Gottesdiener (admitted *pro hac vice*)
                                           Gottesdiener Law Firm, PLLC
                                           498 7th Street
                                           Brooklyn, New York 11215
                                           (718) 788-1500

                                           *Counsel for Plaintiffs and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2007, I caused the foregoing opposition to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail upon Defendants via their counsel as follows:

        Felix Wade
        Eve Ellinger
        Schottenstein, Zox & Dunn Co., LPA
        250 West Street
        Columbus, Ohio 43215

        Joseph J. Costello
        Jeremy P. Blumenfeld
        Theresa J. Chung
        Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA  19103


                                   /s/Eli Gottesdiener
                                      Eli Gottesdiener

# **Exhibit 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

PAUL CAUFIELD,                                 )
                                               )
                    Plaintiff,                 )
                                               )        Cause No.  4:07-cv-00016-SEB-WGH
        vs.                                    )
                                               )
COLGATE-PALMOLIVE COMPANY                      )
EMPLOYEES' RETIREMENT INCOME                   )
PLAN,                                          )
                                               )
                    Defendant.                 )


**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR STAY OF CONSIDERATION OF ITS**
**MOTION TO DISMISS PENDING DISPOSITION OF THE MOTION TO TRANSFER**

### I.  Introduction

Colgate-Palmolive Company Employees' Retirement Income Plan ("Defendant") asks

this Court to stay consideration of its Motion to Dismiss pending a ruling on a Motion to

Transfer it filed in a case in the U.S. District Court for the Southern District of Ohio – Abelman

and Nutter v. Colgate-Palmolive Co. and Colgate-Palmolive Company Employees' Retirement

Income Plan, Case No. 2:07-cv-793 (S.D. Ohio) ("Abelman").  The Motion comes four moths

after briefing on the Motion to Dismiss filed here was complete and two months after the

Abelman filing.  The Court should deny Defendant's Motion for Stay for the following reasons.

First, granting the Motion could result in neither case moving forward for several months.

Competing motions to stay were filed in both cases, and this case is in essence already stayed

pending resolution of Defendant's Motion to Dismiss.  Second, Defendant has moved to dismiss

Abelman arguing that one of the plaintiff's claims is barred by the statute of limitations and one

by a general release.  Thus, there is no certainty that the Southern District of Ohio will decide the

transfer motion – it could simply dismiss Abelman on the merits. Third, if *this* case is (erroneously) dismissed, there would be no reason to transfer the Ohio residents in Abelman here, because there would be no case with which Abelman could be consolidated. Fourth, it is not in the interests of justice to transfer a case to a forum where a party's claim would be time-barred; thus, the Southern District of Ohio should know this Court's decision on Defendant's Motion to Dismiss prior to considering transfer. Finally, it makes no sense to force Paul Caufield to wait for a decision on his claim when the two cases present different issues with respect to the statute of limitations, and resolution of the Motion to Dismiss filed in this case will not affect the claim of one of the Abelman plaintiffs, because he received his lump sum distribution in 2006.

## II.  Discussion

The Abelman plaintiffs have moved the Southern District of Ohio to stay Abelman for 60 days pending resolution of the Motion to Dismiss filed here. *See* "Motion for a 60 Day Stay" filed in Abelman (Doc. 17), attached as Exhibit 1.[1] This case is effectively "stayed" pending this Court's resolution of Defendant's Motion to Dismiss. If the Southern District of Ohio stays Abelman waiting for this Court to resolve the Motion to Dismiss before it, and this Court stays consideration of the Motion to Dismiss waiting for the Southern District of Ohio to resolve either the Motion to Dismiss or the Motion to Transfer filed in Abelman, both cases will be mired in judicial purgatory for months.

Further, after filing the Motion to Transfer Abelman, defendants moved to dismiss Abelman under Fed. R. Civ. P. 12(b)(6). *See* Abelman "Memorandum of Law in Support of

---

[1] Defendant failed to attach the Motion to Stay filed in Abelman to its Motion to Stay in this case.

Defendants' Motion to Dismiss Plaintiff's (sic) Complaint."[2]  The <u>Abelman</u> defendants argue

that the claim of one of the named plaintiffs is barred by either the 4-year limitations period in §

1658 or by New York's 6-year period for breach of contract actions.  <u>Id.</u>  They also argue that the

other named plaintiff's claim is barred by a "general release" he signed upon termination of his

employment with Colgate.  <u>Id.</u>  The <u>Abelman</u> defendants have refused to withdraw their Ohio

Motion to Dismiss or even to consent to a stay of its briefing.  Thus, the Southern District of

Ohio could pass on the Motion to Transfer and simply dismiss <u>Abelman</u> on the merits, in which

event this case will have been needlessly delayed.

 Next, as the <u>Abelman</u> plaintiffs argued in their Motion for a 60 Day Stay, this Court's

resolution of Defendant's Motion to Dismiss could moot the Motion to Transfer.  Defendant

raised one argument in its Motion to Dismiss here:  that Plaintiff's claim is time-barred.  If the

Court erroneously agrees, it will dismiss this case.  The <u>Abelman</u> defendants raised only one

argument in their Motion to Transfer:  that <u>Abelman</u> should be transferred to be consolidated

with this case.  *See* <u>Abelman</u> Memorandum of Law In Support of Defendants' Motion to Transfer

Venue to the Southern District of Indiana.[3]  But if the Court dismisses Mr. Caufield's claim as

untimely, there will be no reason to transfer the claims of two Ohio residents to Indiana and no

case with which <u>Abelman</u> could be consolidated.

 In addition, the Court's resolution of the issues presented in Defendant's Motion to

Dismiss (when Plaintiff's claim accrued and the appropriate limitations period) will affect how

the Southern District of Ohio should handle the Motion to Transfer in <u>Abelman</u>.  The claims of

---

[2]  Attached as Exhibit B to Defendant's Motion for Stay.

[3]  Attached as Exhibit C to Defendant's Motion for Stay.

Valerie Nutter, one of the named plaintiffs in Abelman, could be time-barred if the Court accepts

Defendant's erroneous arguments as to claim accrual and the four-year limitations period,

because she received her lump sum in 2000. *See* Abelman Complaint ¶20.[4]  It is not in the

interests of justice to transfer a case to a forum where the action would be time-barred. *E.g.,*

Phillips v. Illinois Cent. Gulf R.R., 874 F.2d 984, 989-90 (5th Cir. 1989) (Politz, J., dissenting)

("I am convinced beyond peradventure that it cannot be in the interest of justice to transfer a

timely-filed case to a district where the merits will never be considered because the case will

meet a certain procedural death due to the statute of limitations applicable in the transferee

court.").  Therefore, courts have conditioned transfer on the requirement that the defendant not be

allowed to argue that the new forum's statute of limitations bars plaintiff's action. *E.g.,*

Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 524 (D. N.Y. 1964);

Crawford v. The SS Shirley Lykes, 148 F.Supp. 958, 959 (D. N.Y. 1957).  The Southern District

of Ohio must know this fact before deciding the motion to transfer in Abelman.

　　　Further, the Court's resolution of the Motion to Dismiss Plaintiff's claims here will not

dispose of the claims in Abelman.  Paul Abelman received his lump sum distribution in 2006.

*See* Abelman Complaint, ¶20.  Thus, Mr. Abelman's claim is not barred under any statute of

limitation.  Moreover, the two cases are not necessarily governed by the same law.  The Abelman

plaintiffs will undoubtedly argue that Sixth Circuit/Ohio law applies to their claims for the

reasons explained above.  If Abelman is transferred, the Court will have to allow the Abelman

---

[4]  Attached as Exhibit A to Defendant's Motion for Stay.

plaintiffs the opportunity to brief their claims further delaying this matter.[5]  It is unfair to force Mr. Caufield to await a decision on his claim while the Southern District of Ohio considers the Motions to Transfer/Dismiss in Abelman and, if Abelman is transferred, while the Abelman Motion to Dismiss is briefed here, when the cases involve different issues and resolution of the Motion to Dismiss here will not dispose of Abelman in any event.

Defendant's Motion to Dismiss was fully briefed and has been under submission since June 5, 2007.  Defendant was served with the Abelman Complaint on August 14, 2007.  See Abelman Docket Report, Doc. 5 (Summons returned executed on August 14, 2007).  Thus, it appears Defendant is guilty of gamesmanship in waiting two months to ask this Court to stay consideration of a fully-briefed Motion to Dismiss.  In addition, it is ridiculous for the Defendant to insist that the Court's schedule should operate to serve Defendant's whims, or that it is equitable to ask Mr. Caufield to 1) wait for the Southern District of Ohio to resolve a transfer motion that has yet to be fully briefed in a case that was filed after his own, and 2) then wait for the Abelman plaintiffs to brief their case here.  As Plaintiff observed in opposition to Defendant's first Motion to Stay, "justice delayed is justice denied."  OMG Fidelity, Inc. v. Sirius Technologies, Inc., 239 F.R.D. 300, 306 (N.D. N.Y. 2006).  Accordingly, courts have the responsibility to "minimize delay."  Baron Fin. Corp. v. Natanzon, 240 F.R.D. 200, 203 (D. Md. 2006).  The Court should minimize delay here by denying Defendant's Motion and proceeding with consideration of the Motion to Dismiss.

---

[5]  Unless the Court holds, as it should, that Defendant's limitations arguments with respect to Mr. Caufield are incorrect.

## III. Conclusion

For the reasons stated, granting Defendant's Motion will delay this case for no purpose.

The Court should therefore deny the Motion to Stay.

Respectfully submitted,

/s/ Douglas R. Sprong
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

6

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was e-mailed on October 26, 2007 per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PAUL ABELMAN, and
VALERIE R. NUTTER,

                Plaintiffs,

    vs.

COLGATE-PALMOLIVE COMPANY, and
COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

                Defendants.

Case No.  2:07-cv-793

Judge Michael H. Watson
Magistrate Judge Norah McCann King

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO TRANSFER VENUE
## TO THE SOUTHERN DISTRICT OF INDIANA

In Plaintiffs' "Opposition to Defendants' Motion to Transfer" ("Opp. Mem."), Plaintiffs *consent to transfer* of this case if <u>Caufield</u> is stayed (however briefly) while this motion to transfer is considered.  Plaintiffs also consent to transfer in the event the <u>Caufield</u> Motion to Dismiss is denied.  In addition, Plaintiffs do not dispute *any* of the Defendants' key arguments in support of transfer of this case to the Southern District of Indiana: specifically, that under the first-to-file rule, this case should be transferred because <u>Caufield</u> is the first-filed action, the parties in the two actions "substantially overlap," and the issues and the claims in the two actions are identical.  Nor do Plaintiffs dispute the Defendants' fundamental argument that transfer is warranted under 28 U.S.C. § 1404(a).

Instead, Plaintiffs explain that they oppose transfer "temporarily" only because they do not want their case to be transferred by this Court, and then have the <u>Caufield</u> court rule on the Motion to Dismiss before the transfer becomes effective.  (Opp. Mem. at 1-2).  In light of the compelling reasons in support of transfer, Plaintiffs' concern simply is *not* a basis for denying

the Defendants' request for a transfer.  Indeed, had Plaintiffs just consented to transfer at the

outset, instead of engaging in delaying tactics, the case could already have been transferred and

consolidated with the <u>Caufield</u> case.[1]

Transfer of this case to the Southern District of Indiana would further "the general

principle [of] avoid[ing] duplicative litigation … [as] [t]he waste of judicial resources due to

duplicative proceedings is plain[.]"  <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1088 (6th Cir.

1996) (internal citations omitted).  Accordingly, Defendants respectfully request that their

Motion to Transfer be granted.


Dated:  November 8, 2007                              Respectfully submitted,


                                                     /s/ Felix Wade_____
                                                     Felix Wade (0024462)
                                                     Schottenstein, Zox & Dunn Co., LPA
                                                     250 West Street
                                                     Columbus, Ohio 43215
                                                     Tel:  (614) 462-2700
                                                     Fax:  (614) 462-5135
                                                     Email: fwade@szd.com
                                                     Trial Attorney for Defendants Colgate-
                                                     Palmolive Company and Colgate-Palmolive
                                                     Company Employees' Retirement Income
                                                     Plan

OF COUNSEL:

Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com


---

[1]  Defendants have filed a motion to stay in the <u>Caufield</u> case pending the transfer of this case to that
Court.  <u>See</u> <u>Caufield</u> Docket No. 48.  That motion to stay is now fully briefed.

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:   215-963-5295/5258/5584
Fax:    877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com
*Admitted *Pro Hac Vice*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2007, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S.

First Class mail to the following counsel and parties:

>William Henry Blessing, Esq.
>119 East Court Street, Suite 500
>Cincinnati, OH 45202
>
>Eli Gottesdiener, Esq.
>Gottesdiener Law Firm, PLLC
>498 7th Street
>Brooklyn, NY 11215
>
>Attorneys for Plaintiffs

>/s/ Eve Ellinger
>EVE ELLINGER

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

|  Southern | District of | Ohio |

| Paul Abelman and Valerie R. Nutter |

V.

**SUMMONS IN A CIVIL CASE**

| Colgate-Palmolive Company, et al. |

CASE NUMBER:   07-cv-793

TO: (Name and address of Defendant)

Employee Relations Committee
Colgate-Palmolive Company
300 Park Avenue
New York, NY  10022

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William H. Blessing
The Blessing Law Firm
119 East Court Street, Suite 500,
Cincinnati, Ohio 45202

an answer to the complaint which is served on you with this summons, within   20   days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**James Bonini, Clerk**

CLERK

_Susan Racalitto_
(By) DEPUTY CLERK

DATE   11/13/07

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                    Date                              *Signature of Server*


                                        _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PAUL ABELMAN, et al.

                       Plaintiffs,

         vs.

                               Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, et al.,

                        Judge Michael H. Watson
                        Magistrate Judge Norah McCann King

                             Defendants.

## DEFENDANTS' UNOPPOSED MOTION FOR AN EXTENSION OF TIME TO MOVE, PLEAD OR OTHERWISE RESPOND TO PLAINTIFFS' AMENDED COMPLAINT

Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee (collectively "Defendants") respectfully move the Court for an Order allowing Defendants to submit their response to Plaintiffs' Amended Complaint within ten (10) business days after this Court issues a determination on the Motion to Transfer, in the event that the Motion to Transfer is denied. Counsel for Plaintiffs has agreed to this request.  In the event the Motion to Transfer is granted, Defendants request permission to file their response to the Amended Complaint within ten (10) business days after the case is transferred and has been docketed.  The basis for this motion is set forth in the accompanying memorandum.

Dated: November 16, 2007

Respectfully submitted,

/s/ Felix Wade
Felix Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: fwade@szd.com
Trial Attorney for Defendants Colgate-
Palmolive Company, Colgate-Palmolive
Company Employees' Retirement Income
Plan, and the Employee Relations
Committee

OF COUNSEL:
Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2700
Fax: (614) 462-5135
Email: eellinger@szd.com


Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: 215-963-5295/5258/5584
Fax: 877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com
*Admitted *Pro Hac Vice*

Attorneys for Defendants Colgate-Palmolive Company,
Colgate-Palmolive Company Employees' Retirement Income Plan,
and the Employee Relations Committee

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

PAUL ABELMAN, et al.

                Plaintiffs,

    vs.

                         Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, et al.,              Judge Michael H. Watson
                              Magistrate Judge Norah McCann King

                    Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED**
**MOTION FOR AN EXTENSION OF TIME TO MOVE, PLEAD, OR**
**OTHERWISE RESPOND TO PLAINTIFFS' COMPLAINT**

Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee (collectively "Defendants") respectfully move the Court for an Order allowing Defendants to submit their response to Plaintiffs' Amended Complaint within ten (10) business days after this Court issues a determination on the Motion to Transfer, in the event that the Motion to Transfer is denied. Counsel for Plaintiffs has agreed to this request.

Plaintiffs Paul Abelman, Valerie Nutter, Warren Jemmott, Susan Byrd, Adriana Vasquez and Cora Nelson-Manley (collectively "Plaintiffs") filed their First Amended Class Action Complaint ("Amended Complaint") on November 2, 2007. (See Docket No. 27). The current deadline for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan to respond, move, or otherwise plead in response to the Amended Complaint is November 19, 2007. Summons was issued on November 13, 2007, but the Employee Relations Committee has not been served yet. (See Docket No. 30). Plaintiffs' counsel has agreed to permit Defendants to respond to the Amended Complaint after the Motion

to Transfer is determined.   The Amended Complaint contains additional allegations, four additional named plaintiffs, and claims against one additional defendant.   Defendants respectfully submit that an extension of time is necessary in order to adequately address the new allegations in the Amended Complaint.

In addition, the Motion to Transfer submitted by Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan on September 18, 2007, is fully briefed and ripe for disposition.   Critically, Plaintiffs *consent to transfer* of this case to the Southern District of Indiana if the case pending there is stayed.   (See Plaintiffs' Opposition to Motion to Transfer, at 1-2).   Plaintiffs also consent to transfer in the event the Motion to Dismiss pending in that district is denied.   (Id.).   Now that Plaintiffs have essentially given consent to transfer of this case to the Southern District of Indiana (except in limited circumstances), Defendants submit that extending the time for them to respond to the Amended Complaint until *after* the Motion to Transfer is determined by this Court will promote judicial efficiency and will avoid duplication, wasted resources, and the risk of unnecessary expense.   In the event that the Motion to Transfer is granted, Defendants will seek consolidation and hope to respond, on behalf of all Defendants, to a consolidated complaint.

Accordingly, Defendants respectfully ask the Court for an extension until ten (10) business days after the Motion to Transfer is adjudicated, in the event that the Motion is denied, to move, plead, or otherwise respond to Plaintiffs' Amended Complaint.

Dated:  November 16, 2007

Respectfully submitted,

/s/ Felix Wade
Felix Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email:  fwade@szd.com
Trial Attorney for Defendants Colgate-
Palmolive Company, Colgate-Palmolive
Company Employees' Retirement Income
Plan, and the Employee Relations
Committee

OF COUNSEL:
Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:   215-963-5295/5258/5584
Fax:   877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com
*Admitted *Pro Hac Vice*

Attorneys for Defendants Colgate-Palmolive Company,
Colgate-Palmolive Company Employees' Retirement Income Plan,
and the Employee Relations Committee

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

>William Henry Blessing, Esq.
>119 East Court Street, Suite 500
>Cincinnati, OH 45202
>
>Eli Gottesdiener, Esq.
>Gottesdiener Law Firm, PLLC
>498 7th Street
>Brooklyn, NY 11215
>
>Attorneys for Plaintiffs

/s/ Eve M. Ellinger
EVE M. ELLINGER

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, *et al.*,

        Plaintiffs,

    vs.                  Civil Action 2:07-CV-793
                            Judge Watson
                            Magistrate Judge King

COLGATE-PALMOLIVE CO.,
*et al.*,

        Defendants.

## ORDER

        Defendants' unopposed motion for leave to move, plead or otherwise respond to the complaint, Doc. No. 31, is **GRANTED.** Defendants will move, plead or otherwise respond to the complaint no later than ten (10) days after a ruling is made on the pending motion to transfer, Doc. No. 11.

November 19, 2007               *s/Norah McCann King*
                                Norah McCann King
                     United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

Paul Abelman, et al.

          Plaintiffs,

   v.

Colgate-Palmolive Co., et al.

          Defendant.

Case No. 2:07-cv-793

District Judge Michael H. Watson

**RULE 26(f)
REPORT OF PARTIES**

     Pursuant to Fed. R. Civ. P. 26(f), the parties conferred on November 26, 2007. The following counsel participated:

Eli Gottesdiener_____, counsel for plaintiff(s) Paul Abelman, et al._____

_____, counsel for plaintiff(s)_____

_____, counsel for plaintiff(s)_____

Jeremy Blumenfeld_____, counsel for defendant(s) Colgate-Palmolive Co., et al.___

Theresa Chung_____, counsel for defendant(s) Colgate-Palmolive Co., et al.___

Felix Wade_____, counsel for defendant(s) Colgate-Palmolive Co., et al.___

    **1.**    **Magistrate Jurisdiction.** The parties ____ do _X_ do not consent to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

    **2.**    **Pre-Discovery Disclosures.** The parties:

    ____ have exchanged the pre-discovery disclosures required by Rule 26(a)(1).

    ___ will exchange such disclosures by (See Section 5.E. below)._____

    ____ exempt from disclosure under Rule 26(a)(1)(E).

    ____ have agreed to waive initial disclosures.

    **3.**    **Discovery Subjects and Dates.** The parties jointly propose the following:

        **A.**    **Subjects.** Discovery will be necessary on the following subjects:

(See Section 5.E. below).

_____

**B.      Phases of Discovery.**

  N/A   Discovery should be bifurcated between liability and damages.

  N/A   Discovery should be bifurcated between expert and non-expert.

  N/A   Discovery should be limited or focused upon particular issues related

         to

N/A____  Discovery need not be bifurcated or limited.

**C.      Dates.**

Date for disclosure and report of Plaintiff(s) expert(s):  ____N/A_____

Date for disclosure and report of Defendant(s) expert(s):  _____ N/A _____

Date for disclosure and report of rebuttal expert(s):  _____ N/A _____

Date for disclosure of non-expert witnesses:  _____ N/A _____

Discovery Cutoff Date:  _____ N/A _____

    **4.     Discovery Limitations.**  The parties jointly propose the following changes to
limitations under the Federal Rules of Civil Procedure:

         ____ The maximum number of interrogatories by each party to any other party

         shall be _____.

_____ The maximum number of requests for admission by each party to any

other party shall be _____.

_____ The maximum number of depositions taken by plaintiff(s) and

by defendant(s) shall be _____, each limited to a maximum of

_____ hours unless extended by agreement of parties.

_X_ No changes to limitations under Fed. R. Civ. P.

5.   **Other Matters:**

A.   **Protective Order.** The parties _____ do _X_ do not anticipate the need for a

protective order.

B.   **Settlement**. A settlement demand _____ has _X_ has not been made. A

response _____ has _____ has not been made.

Date by which a demand can be made: _____

Date by which a response cam be made: _____

C.   **Motion Deadlines.**

Deadline to amend the pleadings and/or add parties: ___ N/A _____

Deadline for motions relative to the pleadings: ___ N/A _____

Deadline for dispositive motions: ___ N/A _____

D.   **Pretrial Conference Dates.**

Recommended date for status conference (if any): n/a

Recommended date for final pretrial conference: ___ N/A _____

E.   **Other matters pertinent to management of this litigation:** Defendants

moved to transfer this case to the Southern District of Indiana, where a

closely-related class action was first-filed.  Plaintiffs stated in response that they

did not oppose transfer if the Southern District of Indiana granted Defendant

Plan's motion to stay consideration of its motion to dismiss that action. That motion to stay was recently granted by the Indiana court on November 21, 2007. The motion to transfer this action is therefore now unopposed. The parties propose that all discovery and further proceedings here be held in abeyance pending disposition of the unopposed motion to transfer.

Signatures:
Attorney(s) for Plaintiff(s):                    Attorney(s) for Defendant(s):


William H. Blessing _____            Felix C. Wade _____
Bar # 0006848                                      Bar # 0024462
Trial Attorney for                                 Trial Attorney for
Plaintiffs                                         Defendants

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PAUL ABELMAN, et al.

                    Plaintiffs,

        vs.

                                Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, et          Judge Michael H. Watson
al.,                                    Magistrate Judge Norah McCann King
                    Defendants.

## DEFENDANTS' NOTICE OF RULING ON MOTION TO STAY IN THE *CAUFIELD V. COLGATE* CASE PENDING DISPOSITION OF DEFENDANTS' MOTION TO TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF INDIANA

Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee (collectively "Defendants") respectfully submit this Notice of Ruling in the matter of Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016SEB-WGH.  Specifically, the Caufield court granted a Motion To Stay Consideration of A Motion To Dismiss Pending Disposition Of The Abelman Motion to Transfer.  See Caufield Order of November 21, 2007, attached hereto as Exhibit A.  Pursuant to Plaintiffs' "Opposition," Docket No. 28, Defendants' Motion to Transfer this matter to the Southern District of Indiana is unopposed because the Court granted the Motion to Stay.

Accordingly, Defendants respectfully request this Court transfer this matter to the United States District Court for the Southern District of Indiana.

Dated:  November 27, 2007

Respectfully submitted,

/s/ Felix Wade
_____
Felix Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: fwade@szd.com
Trial Attorney for Defendants Colgate-
Palmolive Company, Colgate-Palmolive
Company Employees' Retirement Income
Plan, and the Employee Relations
Committee

OF COUNSEL:
Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:   215-963-5295/5258/5584
Fax:   877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com
*Admitted *Pro Hac Vice*

Attorneys for Defendants Colgate-Palmolive Company,
Colgate-Palmolive Company Employees' Retirement Income Plan,
and the Employee Relations Committee

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

> William Henry Blessing, Esq.
> 119 East Court Street, Suite 500
> Cincinnati, OH 45202
>
> Eli Gottesdiener, Esq.
> Gottesdiener Law Firm, PLLC
> 498 7th Street
> Brooklyn, NY 11215
>
> Attorneys for Plaintiffs

/s/ Eve Ellinger
EVE ELLINGER

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

PAUL CAUFIELD,

                    Plaintiff,

     vs.

COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

                    Defendant.

Cause No. 4:07-cv-00016-SEB-WGH

### ORDER GRANTING DEFENDANT'S
### MOTION FOR STAY OF PROCEEDINGS
### <u>PENDING DISPOSITION OF ITS MOTION TO DISMISS</u>

This Court, having considered Defendant Colgate-Palmolive Company

Employees' Retirement Income Plan's Motion For Stay Of Consideration Of Its Motion To

Dismiss Pending Disposition Of The Motion To Transfer, and being duly advised of its premises,

now finds that the motion should be and is hereby **GRANTED**.

IT IS HEREBY ORDERED that consideration of the Defendant's Motion To

Dismiss Plaintiff's Complaint will be stayed pending a ruling on the Motion to Transfer in <u>Paul

Abelman and Valerie R. Nutter v. Colgate-Palmolive Company and Colgate-Palmolive Company

Employees' Retirement Income Plan</u>, Case No. 2:07-cv-793, in the United States District Court

for the Southern District of Ohio.

Dated:   <u>11/21/2007</u>

                                _Sarah Evans Barker_

                                SARAH EVANS BARKER, JUDGE
                                United States District Court
                                Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II



BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Douglas R. Sprong
Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


PAUL ABELMAN, *et al.*,

   Plaintiffs,

  vs.        Civil Action 2:07-CV-793
           Judge Watson
           Magistrate Judge King

COLGATE-PALMOLIVE CO.,
*et al.*,

   Defendants.


<u>ORDER</u>


   Defendants moved to change venue in this action to the United States District Court for the Southern District of Indiana, where a related, and earlier filed, case remains pending. *Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan,* No. 4:07-CV-0016SEB-WGH. In response to the motion, plaintiffs indicated that they "do not oppose a transfer in the event either that the Indiana District Court denies the Defendant Plan's long-pending, fully-briefed motion to dismiss *Caufield* on statute of limitations grounds or grants Defendant's belated motion to stay a ruling on its motion to dismiss...." *Opposition to Defendants' Motion to Transfer,* at 1, Doc. No. 28. The *Caufield* Court has now stayed consideration of the motion to dismiss that action pending resolution of the motion to change venue filed in this action. *Notice,* Doc. No. 34. It therefore appears that defendants' motion to change venue is, under the circumstances, unopposed by plaintiffs.


   Accordingly, the motion to change venue, Doc. No. 11, is **GRANTED.** This matter is hereby **ORDERED TRANSFERRED** to the United States District Court for the Southern District of Indiana.

November 28, 2007                    s/Norah McCann King
                                   Norah M<sup>c</sup>Cann King
                         United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, and                         )
VALERIE R. NUTTER, et al.                 )
                                          )
            Plaintiffs,                   )
                                          )
     vs.                                  )          Cause No. 1:07-cv-01554-DFH-JMS
                                          )
COLGATE-PALMOLIVE COMPANY, and)
COLGATE-PALMOLIVE COMPANY                  )
EMPLOYEES' RETIREMENT INCOME              )
PLAN, et al.,                             )
                                          )
            Defendants.                   )

## **APPEARANCE**

Ellen E. Boshkoff and Philip J. Gutwein II of the law firm of Baker & Daniels LLP

hereby enter their Appearances for Defendants Colgate-Palmolive Company, Colgate-Palmolive

Company Employees' Retirement Income Plan and the Employee Relations Committee.

BAKER & DANIELS LLP


By  /s/ Ellen E. Boshkoff
        Ellen E. Boshkoff (#16365-49)
        300 North Meridian Street, Suite 2700
        Indianapolis, Indiana  46204
        Phone:  (317) 237-0300
        Fax:  (317) 237-1000
        Email:  ellen.boshkoff@bakerd.com

        /s/ Philip J. Gutwein II
        Philip J. Gutwein II (#22986-53)
        300 North Meridian Street, Suite 2700
        Indianapolis, Indiana 46204
        Phone:  (317) 237-0300
        Fax:  (317) 237-1000
        Email:  philip.gutwein@bakerd.com

        Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Jeremy P. Blumenfeld
> Joseph J. Costello
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 4, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid::

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215
>
> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202
>
> Felix Wade
> Eve Melinda Ellinger
> SCHOTTENSTEIN ZOX & DUNN
> 250 West Street
> Columbus, Ohio  43215

/s/ Philip J. Gutwein II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, and | ) | |
| VALERIE R. NUTTER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:07-cv-01554-DFH-JMS |
| | ) | |
| COLGATE-PALMOLIVE COMPANY, and | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>APPEARANCE</u>**

Ellen E. Boshkoff and Philip J. Gutwein II of the law firm of Baker & Daniels LLP

hereby enter their Appearances for Defendants Colgate-Palmolive Company, Colgate-Palmolive

Company Employees' Retirement Income Plan and the Employee Relations Committee.

BAKER & DANIELS LLP


By  /s/ Ellen E. Boshkoff
     Ellen E. Boshkoff (#16365-49)
     300 North Meridian Street, Suite 2700
     Indianapolis, Indiana  46204
     Phone:  (317) 237-0300
     Fax:  (317) 237-1000
     Email:  ellen.boshkoff@bakerd.com

     /s/ Philip J. Gutwein II
     Philip J. Gutwein II (#22986-53)
     300 North Meridian Street, Suite 2700
     Indianapolis, Indiana 46204
     Phone:  (317) 237-0300
     Fax:  (317) 237-1000
     Email:  philip.gutwein@bakerd.com

     Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Jeremy P. Blumenfeld
> Joseph J. Costello
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103


I hereby certify that on December 4, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid::

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215
>
> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202
>
> Felix Wade
> Eve Melinda Ellinger
> SCHOTTENSTEIN ZOX & DUNN
> 250 West Street
> Columbus, Ohio  43215


/s/ Philip J. Gutwein II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, and | ) | |
| VALERIE R. NUTTER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:07-cv-01554-DFH-JMS |
| | ) | |
| COLGATE-PALMOLIVE COMPANY, and | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MOTION TO WITHDRAW APPEARANCE</u>

Pursuant to Local Rule 83.7(b) and (c), Felix Wade and Eve Melinda Ellinger of

the law firm of Schottenstein Zox & Dunn, hereby respectfully move the Court for leave to

withdraw their appearances in this action on behalf of Defendants Colgate-Palmolive Company,

Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations

Committee, for the reason that the case has been transferred and Ellen E. Boshkoff and Philip J.

Gutwein II, of the law firm of Baker & Daniels LLP, have assumed the defense of the

Defendants.

SCHOTTENSTEIN ZOX & DUNN

By: _____
Eve Melinda Ellinger

By: _____
Felix Wade
250 West Street
Columbus, Ohio 43215
Phone: (614) 462-2700
Fax: (614) 462-5135

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, and        )
VALERIE R. NUTTER, et al.,    )
                              )
        Plaintiffs,      )
                              )
    vs.               )     Cause No. 1:07-cv-01554-DFH-JMS
                              )
COLGATE-PALMOLIVE COMPANY, and)
COLGATE-PALMOLIVE COMPANY   )
EMPLOYEES' RETIREMENT INCOME )
PLAN, et al.,            )
                              )
        Defendants.     )

## MOTION TO WITHDRAW APPEARANCE

Pursuant to Local Rule 83.7(b) and (c), Felix Wade and Eve Melinda Ellinger of the law firm of Schottenstein Zox & Dunn, hereby respectfully move the Court for leave to withdraw their appearances in this action on behalf of Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee, for the reason that the case has been transferred and Ellen E. Boshkoff and Philip J. Gutwein II, of the law firm of Baker & Daniels LLP, have assumed the defense of the Defendants. Attached as Exhibit A is a copy of this motion signed by Felix Wade and Eve Melinda Ellinger.

BAKER & DANIELS LLP

By: /s/ Philip J. Gutwein II
      Ellen E. Boshkoff (#16365-49)
      Philip J. Gutwein II (#22986-53)
      300 North Meridian Street, Suite 2700
      Indianapolis, Indiana  46204
      Phone:  (317) 237-0300
      Fax:  (317) 237-1000
      Email:  ellen.boshkoff@bakerd.com
      Email:  philip.gutwein@bakerd.com

      Attorneys for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 5, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 5, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid::

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215
>
> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202
>
> Felix Wade
> Eve Melinda Ellinger
> SCHOTTENSTEIN ZOX & DUNN
> 250 West Street
> Columbus, Ohio  43215

/s/ Philip J. Gutwein II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, and | ) | |
| VALERIE R. NUTTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:07-cv-01554-DFH-JMS |
| | ) | |
| COLGATE-PALMOLIVE COMPANY, and | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF RELATED ACTION

Pursuant to S.D. Ind. L.R. 40.1(d), Defendants Colgate-Palmolive Company, the

Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations

Committee hereby notify this Court that this case is related to Caufield v. Colgate-Palmolive

Company Employees' Retirement Income Plan, No. 4:07-cv-0016-SEB-WGH, presently pending

before Judge Sarah Evans Barker.

The Caufield action was filed on February 12, 2007.  (See Caufield Docket

No. 1).  Both this lawsuit and the Caufield lawsuit arise out of the same transactions or

occurrences.  Both lawsuits allege that the Colgate-Palmolive Company Employees' Retirement

Income Plan ("Plan") improperly calculated lump sum benefits under a "whipsaw" theory.  (Am.

Compl. ¶¶ 32-36, 38, 42-43; Caufield Compl. ¶¶ 9-11, 22-23).  Likewise, both lawsuits purport

to bring such claims on behalf of a putative nation-wide class of individuals who received lump

sum distributions from the Plan.  Indeed, the plaintiffs in this case are members of the putative

class in the Caufield case, and Mr. Caufield is a member of the putative class in this case.

This action was originally filed in the United States District Court for the Southern District of Ohio.  Defendants moved to transfer this case to this District pursuant to the "first-to-file" rule and 28 U.S.C. § 1404(a).  That motion was granted and, on November 8, 2007, this case was transferred to this District.  (See Docket Nos. 1 and 2).

For the reasons described above, Defendants submit that judicial economy would be served by placing this related case before the same court before which Caufield is pending. Accordingly, Defendants request that this case be transferred to Judge Barker pursuant to S.D. Ind. L.R. 40.1(f).

BAKER & DANIELS LLP

Dated:  December 6, 2007

By:  /s/ Philip J. Gutwein II
    Ellen E. Boshkoff (#16365-49)
    Philip J. Gutwein II (#22986-53)
    300 North Meridian Street, Suite 2700
    Indianapolis, Indiana  46204
    Phone:  (317) 237-0300
    Fax:  (317) 237-1000
    Email:  ellen.boshkoff@bakerd.com
    Email:  philip.gutwein@bakerd.com

    Attorneys for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 6, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 6, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215
>
> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202
>
> Felix Wade
> Eve Melinda Ellinger
> SCHOTTENSTEIN ZOX & DUNN
> 250 West Street
> Columbus, Ohio  43215

/s/ Philip J. Gutwein II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, and | ) | |
| VALERIE R. NUTTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:07-cv-01554-DFH-JMS |
| | ) | |
| COLGATE-PALMOLIVE COMPANY, and | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO WITHDRAW APPEARANCE

The Court, having reviewed the motion of Felix Wade and Eve Melinda Ellinger, of the law firm of Schottenstein Zox & Dunn, for leave to withdraw their appearances on behalf of Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee, finds that the motion should be GRANTED.

IT IS, THEREFORE, ORDERED that the appearances of Felix Wade and Eve Melinda Ellinger, of the law firm of Schottenstein Zox & Dunn, on behalf of the Defendants are hereby withdrawn.

SO ORDERED

12/06/2007

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Email:  ellen.boshkoff@bakerd.com
Email:  philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103
Email:  jcostello@morganlewis.com
Email:  jblumenfeld@morganlewis.com
Email:  tchung@morganlewis.com

Felix Wade
Eve Melinda Ellinger
SCHOTTENSTEIN ZOX & DUNN
250 West Street
Columbus, Ohio  43215

Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 Seventh Street
Brooklyn, New York  11215

William Henry Blessing
119 East Court Street, Suite 500
Cincinnati, Ohio  45202

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, et al.

                          Plaintiffs,

          vs.

                                        Case No.  1:07-cv-01554-DFH-JMS

COLGATE-PALMOLIVE COMPANY, et          Judge David Frank Hamilton
al.,                                   Magistrate Judge Jane Magnus-Stinson
                          Defendants.

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Defendants Colgate-Palmolive Company ("Colgate"), Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan"), and the Employee Relations Committee (the "Committee") (collectively "Defendants"), by and through their attorneys, hereby respond to the numbered paragraphs in the Plaintiffs' First Amended Class Action Complaint ("Complaint") as follows:

### Nature of Action

1.      Defendants admit that the Complaint purports to assert claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

### Subject Matter Jurisdiction

2.      Paragraph 2 states conclusions of law to which no responsive pleading is required.

### Personal Jurisdiction and Venue

3.      Paragraph 3 states conclusions of law to which no responsive pleading is required.

4.      Paragraph 4 states conclusions of law to which no responsive pleading is required.

5.      Defendants are without knowledge or information sufficient to form a belief as to the truth of where Plaintiffs currently reside and therefore deny the same. Defendants deny that any of the Plaintiffs resided in this District when their lump sums were paid.  The remaining allegations of Paragraph 5 state conclusions of law to which no responsive pleading is required.

6.      Paragraph 6 states conclusions of law to which no responsive pleading is required.

7.      Paragraph 7 states conclusions of law to which no responsive pleading is required.

8.      Paragraph 8 states conclusions of law to which no responsive pleading is required.

9.      Paragraph 9 states conclusions of law to which no responsive pleading is required.

10.     Paragraph 10 states conclusions of law to which no responsive pleading is required.

**The Parties**

11.     Defendants admit that Plaintiff Paul Abelman ("Abelman") is a former employee of Colgate or one of its affiliates or former affiliates.  Defendants further admit that Abelman participated in the Plan during his employment.  Defendants are without knowledge or information sufficient to form a belief as to the truth of whether Abelman is a resident of New Albany, Ohio.  Defendants deny that the Plan owes Abelman any additional benefits that it has

not yet paid him.  The remaining allegations of Paragraph 11 are conclusions of law for which no responsive pleading is required.

12.     Defendants admit that Plaintiff Valerie R. Nutter ("Nutter") is a former employee of Colgate or one of its affiliates or former affiliates.  Defendants further admit that Nutter participated in the Plan during her employment.  Defendants are without knowledge or information sufficient to form a belief as to the truth of whether Nutter is a resident of Zanesville, Ohio.  Defendants deny that the Plan owes Nutter any additional benefits that it has not yet paid her.  The remaining allegations of Paragraph 12 are conclusions of law for which no responsive pleading is required.

13.     Defendants admit that Plaintiff Warren Jemmott ("Jemmott") is a former employee of Colgate or one of its affiliates or former affiliates.  Defendants further admit that Jemmott participated in the Plan during his employment, and that he is a participant in the Plan.  The remaining allegations of Paragraph 13 are conclusions of law for which no responsive pleading is required.

14.     Defendants admit that Plaintiff Susan Byrd ("Byrd") is a former employee of Colgate or one of its affiliates or former affiliates.  Defendants further admit that Byrd participated in the Plan during her employment.  Defendants deny that the Plan owes Byrd any additional benefits that it has not yet paid her.  The remaining allegations of Paragraph 14 are conclusions of law for which no responsive pleading is required.

15.     Insofar as the allegations in Paragraph 15 are intended to refer to Adriana Vazquez, Defendants admit that Plaintiff Adriana Vazquez ("Vazquez") is a former employee of Colgate or one of its affiliates or former affiliates.  Defendants further admit that Vazquez participated in the Plan during her employment.  Defendants deny that the Plan owes Vazquez

any additional benefits that it has not yet paid her. The remaining allegations of Paragraph 15 are conclusions of law for which no responsive pleading is required.

16.    Defendants admit that Plaintiff Cora Nelson-Manley ("Nelson-Manley") is a former employee of Colgate or one of its affiliates or former affiliates. Defendants further admit that Nelson-Manley participated in the Plan during her employment. Defendants deny that the Plan owes Nelson-Manley any additional benefits that it has not yet paid her. The remaining allegations of Paragraph 16 are conclusions of law for which no responsive pleading is required.

17.    Defendants admit that Colgate functions as the plan sponsor for the Plan. The remaining allegations of Paragraph 17 are conclusions of law for which no responsive pleading is required.

18.    Defendants admit that the Employee Relations Committee ("Committee") is the plan administrator of the Plan. The remaining allegations of Paragraph 18 are conclusions of law for which no responsive pleading is required.

19.    Paragraph 19 states conclusions of law for which no responsive pleading is required.

20.    Paragraph 20 states conclusions of law for which no responsive pleading is required.

21.    Defendants admit that the Employee Relations Committee ("Committee") is the plan administrator and a named fiduciary of the Plan. The remaining allegations of Paragraph 21 state conclusions of law for which no responsive pleading is required.

## The Parties

22.    Defendants admit that Abelman was employed by Colgate or one of its affiliates from approximately 1992 until approximately 2005 and was fully vested in his benefit under the Plan. Defendants deny the remaining allegations of Paragraph 22.

23.     Defendants admit that Nutter was employed by Colgate or one of its affiliates from approximately 1988 until 2000 and was fully vested in her benefit under the Plan. Defendants deny the remaining allegations of Paragraph 23.

24.     Defendants admit that Jemmott was employed by Colgate or one of its affiliates from 2002 to 2006. Defendants further admit that Jemmott is 50% vested in his benefit under the Plan. Defendants deny the remaining allegations of Paragraph 24.

25.     Defendants admit that Byrd was employed by Colgate or one of its affiliates from approximately 1991 to 1996, and that she was 75% in her benefit under the Plan. Defendants deny the remaining allegations of Paragraph 25.

26.     Insofar as the allegations in Paragraph 26 refer to Adriana Vazquez, Defendants admit that Vazquez was employed by Colgate or one of its affiliates from 1989 to 2005. Defendants further admit that Vazquez is 100% vested in her benefit under the Plan. Defendants deny the remaining allegations of Paragraph 26.

27.     Defendants deny that Nelson-Manley was employed by Colgate or one of its affiliates from 1998 to 2006. Defendants admit that Nelson-Manley is 100% vested in her benefit under the Plan. Defendants deny the remaining allegations of Paragraph 27.

28.     Defendants deny the allegations of Paragraph 28; such allegations purport to characterize the contents of the Plan documents, which documents contain numerous provisions and speak for themselves. To the extent a responsive pleading is required, Defendants admit only that Plan provisions on accounts are included in Article 3 of the Plan, which is subject to, and must be interpreted together with, other Plan provisions.

29.     Defendants deny the allegations of Paragraph 29; such allegations purport to characterize the contents of the Plan documents, which documents contain numerous provisions and speak for themselves. To the extent a responsive pleading is required, Defendants

admit only that Plan pay credits are described in Article 3.2 of the Plan, which is subject to, and must be interpreted together with, other Plan provisions.

30.     Defendants deny the allegations of Paragraph 30; such allegations purport to characterize the contents of the Plan documents, which documents contain numerous provisions and speak for themselves.  To the extent a responsive pleading is required, Defendants admit only that Plan pay credits are described in Article 3.2 of the Plan, which is subject to, and must be interpreted together with, other Plan provisions.

31.     Defendants deny the allegations of Paragraph 31; such allegations purport to characterize the contents of the Plan documents, which documents contain numerous provisions and speak for themselves.  To the extent a responsive pleading is required, Defendants admit only that interest credits are described in Article 3.4 of the Plan, which is subject to, and must be interpreted together with, other Plan provisions.

32.     Defendants admit that as of 2006, Abelman was approximately 43 years of age, and that as of 2000, Nutter was approximately 36 years of age.  Defendants further admit that Abelman and Nutter elected to receive their benefit in the form of a lump sum in 2006 and 2000 respectively.  Defendants deny the remaining allegations of Paragraph 32; such allegations purport to characterize the contents of Abelman's and Nutter's written applications for benefits, which documents speak for themselves.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of whether the benefits to Abelman and Nutter were sent to their home addresses.  Defendants admit the remaining allegations of Paragraph 33.

34.     Defendants admit that Byrd elected to receive Plan benefits in 1996, that Vazquez elected to receive Plan benefits in 2005, and that Nelson-Manley elected to receive Plan benefits in 2006.  Defendants further admit the aforementioned Plaintiffs' written applications for

their lump sum benefits were filed after they terminated employment with Colgate.  Defendants

deny the remaining allegations of Paragraph 34; such allegations purport to characterize the

contents of the Plan documents, which contain numerous provisions and which documents speak

for themselves.  To the extent a responsive pleading is required, Defendants admit only that

"Normal Retirement Age" is defined in Article 1.27 of the Plan, which is subject to, and must be

interpreted together with, other Plan provisions.

35.     Paragraph 35 states conclusions of law for which no responsive pleading

is required.  To the extent a responsive pleading is required, Defendants deny the allegations of

Paragraph 35.

36.     To the extent Paragraph 36, and its subsections, state conclusions of law,

no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 36.

37.     Paragraph 37 states conclusions of law for which no responsive pleading

is required.  To the extent a responsive pleading is required, Defendants deny the allegations of

Paragraph 37.

38.     To the extent Paragraph 38, and its subsections, state conclusions of law,

no responsive pleading is required.  To the extent Paragraph 38 purports to characterize the

contents of the Plan documents, the allegations are denied in favor of the actual written

documents, which contain numerous provisions and whose terms speak for themselves.

Defendants deny the remaining allegations of Paragraph 38.

39.     To the extent Paragraph 39, and its subsections, state conclusions of law,

no responsive pleading is required.  To the extent Paragraph 39 purports to characterize the

contents of the Plan documents, the allegations are denied in favor of the actual written

documents, which contain numerous provisions and whose terms speak for themselves.

Defendants deny the remaining allegations of Paragraph 39.  To the extent a responsive pleading

is required, Defendants admit only that the Plan pay credits are described in Article 3.2 of the Plan, which is subject to, and must be interpreted together with, other Plan provisions.

40.    To the extent Paragraph 40, and its subsections, state conclusions of law, no responsive pleading is required.  To the extent Paragraph 40 purports to characterize the contents of the Plan documents, the allegations are denied in favor of the actual written documents, whose terms speak for themselves.  Defendants deny the remaining allegations of Paragraph 40.  To the extent any further responsive pleading is required, Defendants deny the allegations of Paragraph 40.

41.    To the extent Paragraph 41, and its subsections, state conclusions of law, no responsive pleading is required.  To the extent Paragraph 41 purports to characterize the contents of the Plan documents, the allegations are denied in favor of the actual written documents, which contain numerous provisions and whose terms speak for themselves. Defendants deny the remaining allegations of Paragraph 41.  To the extent any further responsive pleading is required, Defendants deny the allegations of Paragraph 41.

### Claims

42.    Defendants have concurrently filed a motion to dismiss the claim set forth in Paragraph 42; therefore, no responsive pleading is required.

43.    Defendants have concurrently filed a motion to dismiss the claim set forth in Paragraph 43; therefore, no responsive pleading is required.

44.    Defendants have concurrently filed a motion to dismiss the claim set forth in Paragraph 44; therefore, no responsive pleading is required.

45.    To the extent that Paragraph 45 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 45.

46.      To the extent that Paragraph 46 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 46.

47.      To the extent that Paragraph 47 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 47; such allegations purport to characterize the contents of the Plan documents, which documents contain numerous provisions and amendments, and which speak for themselves.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 47.

48.      To the extent that Paragraph 48 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 48.

49.      Denied.

50.      To the extent that Paragraph 50 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 50.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 50.

51.      To the extent that Paragraph 51 states conclusions of law, no responsive pleading is required.  To the extent Paragraph 51 purports to characterize the contents of IRS Notice 96-8, the allegations are denied in favor of the actual IRS Notice, whose terms speak for themselves.  Defendants admit that the Plan is a frontloaded Plan.  Defendants deny the remaining allegations of Paragraph 51.

52.      To the extent that Paragraph 52 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 52.

53.      To the extent that Paragraph 53 states conclusions of law, no responsive pleading is required.  Defendants deny the remaining allegations of Paragraph 53.

## **Class Allegations**

54.    Paragraph 54 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 54.

55.    Paragraph 55 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 55.

56.    Paragraph 56 states conclusions of law for which no responsive pleading is required.  Moreover, Defendants deny the allegations in Paragraph 56 insofar as no class and/or subclass has been certified.  To the extent a responsive pleading is required, Defendants admit only that the proposed Class, as defined in the Complaint, potentially includes numerous individuals.

57.    Paragraph 57 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 57 insofar as no class and/or subclass has been certified.

58.    Paragraph 58 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 58 insofar as no class and/or subclass has been certified.

59.    Paragraph 59 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 59 insofar as no class and/or subclass has been certified.

60.    Paragraph 60 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 60 insofar as no class and/or subclass has been certified.

61.    Paragraph 61 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 61 insofar as no class and/or subclass has been certified.

62.    Paragraph 62 states conclusions of law for which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants deny the allegations of Paragraph 62.

### Additional Allegations Re the Accrual of the Applicable Limitations Period

63.    Denied.

64.    Denied.

65.    Denied.

### Absence of Exhaustion Requirement

66.    Defendants admit that Plaintiffs have not filed any formal claims for benefits challenging the specific legal issues alleged in the Complaint.  Defendants deny that Plaintiffs recently learned that they are due additional benefits.  The remaining allegations of Paragraph 66 state conclusions of law for which no responsive pleading is required.

67.    Paragraph 67 states conclusions of law for which no responsive pleading is required.

68.    Paragraph 68 states conclusions of law for which no responsive pleading is required.

69.    Paragraph 69 states conclusions of law for which no responsive pleading is required.

70.    Paragraph 70 states conclusions of law for which no responsive pleading is required.  To the extent Paragraph 70 purports to characterize the terms of the Plan, the allegations are denied in favor of the actual Plan documents, which contain numerous provisions

11

and whose terms speak for themselves.  Defendants deny the remaining allegations of

Paragraph 70.

71.    To the extent Paragraph 71 states conclusions of law, no responsive

pleading is required.  Defendants deny the remaining allegations of Paragraph 71.

72.    Paragraph 72 states conclusions of law for which no responsive pleading

is required.

### Plaintiff Jemmott's ERISA §§ 104(b), 105(a) Claim

73.    Defendants have concurrently filed a motion to dismiss the claim set forth

in Paragraph 73; therefore, no responsive pleading is required.

74.    Defendants have concurrently filed a motion to dismiss the claim set forth

in Paragraph 74; therefore, no responsive pleading is required.

75.    Defendants have concurrently filed a motion to dismiss the claim set forth

in Paragraph 75; therefore, no responsive pleading is required.

1.    Defendants have concurrently filed a motion to dismiss the claim set forth

in Paragraph 76; therefore, no responsive pleading is required.

### Prayer for Relief

Defendants deny that Plaintiffs are entitled to any relief or damages, including the

relief described in the "WHEREFORE" paragraph and its subsections (A) through (F).

WHEREFORE, Defendants respectfully request that the First Amended Class

Action Complaint be dismissed with prejudice, that judgment be entered in Defendants' favor,

and that Defendants be awarded the costs of this action, attorneys' fees, and such other relief as

this Court deems appropriate.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted, as explained in Defendants' Motion to Dismiss, filed concurrently herewith.

### SECOND DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations and/or the doctrines of waiver and/or laches.

### THIRD DEFENSE

The Plan Administrator's interpretation of the Plan is entitled to deference.

### FOURTH DEFENSE

Defendants are not liable for any of the harm alleged by Plaintiffs.

### FIFTH DEFENSE

The claims of Plaintiffs Abelman, Vazquez, and Jemmott are barred by the defenses of release and/or waiver pursuant to the Releases they executed.

### SIXTH DEFENSE

Plaintiffs' claims are barred to the extent they filed suit against a party from whom they may not obtain relief.

### SEVENTH DEFENSE

At all events, and in all instances, Defendants acted in good faith.

### EIGHTH DEFENSE

To the extent Plaintiffs seek relief under ERISA section 502(a)(3), they are entitled to only appropriate equitable remedies.

**NINTH DEFENSE**

To the extent Plaintiffs seek relief under ERISA section 502(a)(1)(B), they are

entitled to only relief under the terms of their Plan.

**TENTH DEFENSE**

Defendants reserve the right to assert additional affirmative defenses that may

appear and prove applicable during the course of litigation.

BAKER & DANIELS LLP


Dated:  December 12, 2007          By:  /s/ Philip J. Gutwein II
                                                Ellen E. Boshkoff (#16365-49)
                                                Philip J. Gutwein II (#22986-53)
                                                300 North Meridian Street, Suite 2700
                                                Indianapolis, Indiana  46204
                                                Phone:  (317) 237-0300
                                                Fax:  (317) 237-1000
                                                Email:  ellen.boshkoff@bakerd.com
                                                Email:  philip.gutwein@bakerd.com

                                                Attorneys for Defendants Colgate-Palmolive
                                                Company, Colgate-Palmolive Company
                                                Employees' Retirement Income Plan, and the
                                                Employee Relations Committee

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103

I hereby certify that on December 12, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 Seventh Street
Brooklyn, New York  11215

William Henry Blessing
119 East Court Street, Suite 500
Cincinnati, Ohio  45202

/s/ Philip J. Gutwein II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, et al.

                                    Plaintiffs,

              vs.

                                                  Case No.  1:07-cv-01554-DFH-JMS

COLGATE-PALMOLIVE COMPANY, et          Judge David Frank Hamilton
al.,                                   Magistrate Judge Jane Magnus-Stinson
                                    Defendants.

## DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Colgate-Palmolive Company

("Colgate"), Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan"), and

the Employee Relations Committee (the "Committee") (collectively "Defendants"), by and

through their attorneys, respectfully move to dismiss claims in the First Amended Class Action

Complaint ("Amended Complaint"), filed by Plaintiffs Paul Abelman, Valerie Nutter, Warren

Jemmott, Susan Byrd, Adriana Vazquez, and Cora Nelson-Manley ("Plaintiffs"), for the reasons

set forth in the accompanying Memorandum of Law, contemporaneously filed herewith.  In

support of this Motion, Defendants state the following:

1.    The claims of Valerie Nutter and Susan Byrd fail as a matter of law

because they are time barred.

2.    The backloading and lump sum claims of Paul Abelman, Adriana

Vazquez, and Warren Jemmott are barred by the release they executed at the time of their

departure from Colgate.

3.    Cora Nelson-Manley's claim for lump sum benefits is barred because she

elected to receive her benefits after the effective date of the Pension Protection Act of 2006,

Pub. L. No. 109-280, 120 Stat. 780 (2006).

4.      Warren Jemmott's individual claims for Plan information and Plan documents are barred because he was provided all of the documents to which he was entitled as a matter of law.

5.      In support of its Partial Motion to Dismiss, Defendants submit the following exhibits:

Exhibit A:    Declaration of Mathew Faranda, dated December 11, 2007, and Exhibits 1 through 7, attached therein;

Exhibit B:    Excerpts from the Colgate-Palmolive Company, Form 10-K filed with the Securities and Exchange Commission ("SEC") on February 23, 2007;

Exhibit C:    Excerpts from the Plan's Form 5500 filed with the Department of Treasury, Internal Revenue Service, in October 2005;

Exhibit D:    Excerpts from the Colgate-Palmolive Company Employees' Retirement Income Plan, Totally Restated through December 31, 1994;

Exhibit E:    Excerpts from the Colgate-Palmolive Company Employees' Retirement Income Plan, as Amended and Restated effective January 1, 2000;

Exhibit F:    Summary Plan Description for the Colgate-Palmolive Employees' Retirement Income Plan, dated November 1994;

Exhibit G:    Summary Plan Description for the Colgate-Palmolive Employees' Retirement Income Plan, effective January 1, 2005;

Exhibit H:    General Information Section of the Summary Plan Description, effective November 1994 thorough January 2006;

Exhibit I:    General Information Section of the Summary Plan Description, effective January 2006; and

Exhibit J:    Declaration of Susan Long, dated December 11, 2007, and Exhibits 1 and 2, attached therein.

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law in Support of Defendants' Partial Motion to Dismiss, this Court should dismiss the claims in Plaintiffs' Amended Complaint, with the exception of the backloading claim of Cora Nelson-Manley, with prejudice.

BAKER & DANIELS LLP

Dated:  December 12, 2007                   By:  /s/ Philip J. Gutwein II
                                                        Ellen E. Boshkoff (#16365-49)
                                                        Philip J. Gutwein II (#22986-53)
                                                        300 North Meridian Street, Suite 2700
                                                        Indianapolis, Indiana  46204
                                                        Phone:  (317) 237-0300
                                                        Fax:  (317) 237-1000
                                                        Email:  ellen.boshkoff@bakerd.com
                                                        Email:  philip.gutwein@bakerd.com

                                                        Attorneys for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 12, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215

> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202

> /s/ Philip J. Gutwein II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, et al.

                          Plaintiffs,
            vs.

                                        Case No.  1:07-cv-01554-DFH-JMS

COLGATE-PALMOLIVE COMPANY, et          Judge David Frank Hamilton
al.,                                    Magistrate Judge Jane Magnus-Stinson
                          Defendants.

**ORDER GRANTING DEFENDANTS'**
**PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

        This Court, having considered the Partial Motion To Dismiss of Defendants

Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan,

and the Employee Relations Committee, and being duly advised of its premises, now finds that

the motion should be and is hereby GRANTED.

        IT IS HEREBY ORDERED that the claims in the Amended Complaint for the

above-captioned case, with the exception of the backloading claim of Plaintiff Nelson-Manley,

be dismissed with prejudice.

_____
Judge/Magistrate Judge
United States District Court
Southern District Of Indiana, Indianapolis Division

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Email:  ellen.boshkoff@bakerd.com
Email:  philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103
Email:  jcostello@morganlewis.com
Email:  jblumenfeld@morganlewis.com
Email:  tchung@morganlewis.com

Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 Seventh Street
Brooklyn, New York  11215

William Henry Blessing
119 East Court Street, Suite 500
Cincinnati, Ohio  45202

**EXHIBIT A**
**Declaration of Matthew Faranda,**
**with attached Exhibits 1 - 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL ABELMAN, et al. | |
| Plaintiffs, | |
| vs. | Case No. 07-cv-01554-DFH-JMS |
| COLGATE-PALMOLIVE COMPANY, et al., | Judge David Frank Hamilton |
| Defendants. | Magistrate Judge Jane Magnus-Stinson |

DECLARATION OF MATTHEW FARANDA IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION COMPLAINT

I, Matthew Faranda, do depose and state of my own personal knowledge as follows:

1.      I am the Benefits Analyst for the Colgate-Palmolive Company ("Colgate"). I have been employed by Colgate since September 2004. This Declaration is submitted in support of the Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Class Action Complaint. I have personal knowledge of all facts set forth below.

2.      Attached hereto as "Exhibit 1" is a true and correct copy of a Pension Benefit Election Form, which indicates that Plaintiff Susan Byrd lived in New York and elected to receive her lump sum benefit in New York.

3.      Based on the information in his personnel file, I can attest that during his employment with Colgate, Warren Jemmott lived and worked in the state of New York.

4.      Based on the information in her personnel file, I can attest that during her employment with Colgate, Adriana Vazquez lived and worked in the state of New York.

5.      Based on the information in his personnel file, I can attest that during his employment with Colgate, Paul Abelman lived and worked in New York and Ohio, as well as in

South Africa and Hong Kong.

6.      Attached hereto as "Exhibit 2" is a true and correct copy of a Lump Sum Distribution Form, and related documents, signed by Cora Nelson-Manley on September 30, 2006, which indicate that on September 30, 2006, Nelson-Manley elected to receive her Plan benefits in the form of a lump sum distribution. The documents also indicate that Nelson-Manley lived in New York and elected to receive her lump sum benefit in New York.

7.      Attached hereto as "Exhibit 3" is a true and correct copy of a Letter of Agreement and General Release, dated June 21, 2006, and signed by Warren Jemmott on June 26, 2006. This document is maintained in the ordinary course of business.

8.      Attached hereto as "Exhibit 4" is a true and correct copy of a Letter of Agreement and General Release, dated November 2, 2004 and signed by Adriana Vazquez on November 15, 2004. This document is maintained in the ordinary course of business.

9.      Attached hereto as "Exhibit 5" is a true and correct copy of a Letter of Agreement and General Release, dated March 8, 2005 and signed by Paul Abelman on April 18, 2005. This document is maintained in the ordinary course of business.

10.     Attached hereto as "Exhibit 6" is a true and correct copy of an undated letter from Warren Jemmott that the Employee Relations Committee received on or around August 14, 2007. This document is maintained in the ordinary course of business.

11.     Attached hereto as "Exhibit 7" is a true and correct copy unsigned copy of a letter that I sent to Warren Jemmott on September 14, 2007. This document is maintained in the ordinary course of business.

12.    I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing information is true and correct based upon my personal knowledge and on information that I have obtained from personnel records and documents that are maintained in the ordinary course of business.

Executed on this 11th day of December, 2007.

MATTHEW FARANDA

# EXHIBIT 1

```
Date: 01/30/96          Colgate-Palmolive    User ID: 0007
AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAA
* CHARGE EE User Defined Data  [22] * Unit: PK-NANYC        Plan: CP61 *
AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAC Stat: ACT/AQ/R  Effective: 06/10/1991 *
* Name: SE BYRD                    * SSN:                                  *
AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAC
* 1260: PBA Balance Date 12/01/1995 * 1274: Contrib Stop Dt             *
* 1261: ER Balance - Cap    9516.00 * 1275: Contrib Stop Bft     0.00   *
* 1262: ER Balance          9516.00 *                                   *
* 1263: Init PBA Bal-Cap       0.00 * 1277: PBA Balance -Cap    9516.00 *
* 1264: Init PBA Balance       0.00 * 1278: PBA Balance         9516.00 *
* 1265: PA 7/89 Bnft-Cap       0.00 *                                   *
* 1266: PA 7/89 Benefit        0.00 *                                   *
* 1267: Contribute (T/N)            *                                   *
* 1268: Contrib Bal Date            *                                   *
* 1269: EE Cont w/o int        0.00 *                                   *
* 1270: ER Cont w/ int         0.00 *                                   *
* 1271: EE Cont mid-term       0.00 *                                   *
* 1272: Phant & Cont w/o       0.00 *                                   *
* 1273: Phant & Cont w/        0.00 *                                   *
AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAA

AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAA
n7 Keys: F10 Exit    F5 Update    F2 Prior screen    F1 Next screen  0_
```

### Colgate-Palmolive Company Employees Retirement Income Plan
### Pension Benefit Election Form
### Prepared as of 01/30/1996

------------------------BASIC EMPLOYEE INFORMATION------------------------
Please indicate any corrections directly on this form.

Employee: SUSAN E BYRD
Social Security No:
Date of Birth:

Beneficiary:
Social Security No:
Date of Birth:
Relationship:

Mailing Address:
P. O. BOX 021347
BROOKLYN        NY        11202

------------------------RETIREMENT ELECTION SECTION------------------------
I elect to retire from Colgate-Palmolive Company as of 01/31/1996.
My benefits will begin as of 03/01/2026.

☐  Please INITIAL the box at left to indicate your desire
   to retire and election of benefit payment form.

------------------------MONTHLY BENEFIT PAYMENT ELECTION------------------------
Please INITIAL the box next to the payment form desired:

|  | | Qualified | Non-Qualified |
|---|---|---|---|
| ☐ | Life Annuity with Survivor's Benefit | | |
| | To Employee ...................$ | 0.00 | $ 0.00 |
| | To Spouse, upon employee's death | | |
| | Spouse's Benefit..........$ | 0.00 | $ 0.00 |
| | EICP 25% Death Benefit (No Lump Sum available)...$ | | |
| ☐ | Life with Survivor's Benefit and Constant Total Income | | |
| | To Employee until       .....$ | 0.00 | $ 0.00 |
| | Beginning 03/01/2026 .....$ | 0.00 | $ 0.00 |
| | To Spouse, upon employee's death | | |
| | Spouse's Benefit..........$ | 0.00 | $ 0.00 |
| | EICP 25% Death Benefit (No Lump Sum available)...$ | | |

**REDACTED**

Pre-Social Security Supplement (in addition to the Life Annuity)
To Employee until                 .................$     0.00  $       0.00

| | Life Annuity with Survivor's Benefit as above, with Non-Qualified
| | Lump Sum Distribution as of 02/01/1996 .............$       0.00

GUARANTEED BENEFIT:  In no event will the total of the benefit
payments to me and my beneficiary be less than $0.00, which
is the total of my contributions to the plan, plus interest of
$0.00, for a total of $0.00.
-----------------------------SIGNATURE-------------------------------

Date            Employee Signature

Date            Local Human Resources Representative

-E5-

# EXHIBIT 2

**Retirement Processing Center**
P.O. Box 1008
Totowa, NJ 07511-1008

 **COLGATE-PALMOLIVE COMPANY**

0000160
CORA NELSON-MANLEY
140-22D CARVER LOOP
BRONX NY 10475

**Pension Election Form**

Date Produced: August 21, 2006
Colgate Retirement Plans Online:
https://www.benefitsweb.com/colgate.html
1-888-982-7227

**Instructions:** Use this form to make your pension election and commence your benefit payment. Mail this completed *Pension Election Form*, along with your required supporting documentation to the Retirement Processing Center in the enclosed courtesy reply envelope at least one month prior to your Benefit Commencement Date. It is important that you review the enclosed information and evaluate your options carefully. You may wish to consult a financial advisor.

## What You Need To Do

The following sections must be completed: **Retirement Election, Payment Option Election, Waiver of 30-Day Decision Period,** and **Participant Signature and Acknowledgement.**

If you elect a Joint and Survivor Annuity payment option, you must complete the **Joint Annuitant Designation** section.

If you are married and do not elect the Normal Form of payment with your spouse as the joint annuitant, the **Spousal Consent** section must be completed.



**REDACTED**

(UM1) 05/06 0000160

RECEIVED 10/03/2006

**Retirement Election:** *(Choose One)*

☐  I elect to commence my benefits as of October 1, 2006, my Benefit Commencement Date.

☐  I elect to defer receipt of my benefits to a later date, but no later than my Normal Retirement Date.
   *(Note: No further elections are required at this time. Sign and date the form.)*

**Method of Payment Election:** *(Choose One)*
Having received and read the *Explanation of Retirement and Payment Options* and *Retirement Benefit Statement* showing all payment options available to me, I request that my benefit be paid as follows:

**Your Colgate-Palmolive Company Employees' Retirement Income Plan Benefit Payment Option Election**

**Normal Form**

☐  50% Joint and Survivor Annuity

**Optional Form(s)**

☐  Single Life Annuity

☑  Lump Sum

# REDACTED

(UM1) 05/06  0000160

RECEIVED 10/03/2006

**Retirement Processing Center**
P.O. Box 1008
Totowa, NJ 07511-1008

**CP** COLGATE-PALMOLIVE COMPANY

**Lump Sum Distribution Form**

0000160
CORA NELSON-MANLEY
140-22D CARVER LOOP
BRONX NY 10475

Date Produced: August 21, 2006
Colgate Retirement Plans Online:
https://www.benefitsweb.com/colgate.html
1-888-982-7227

---

**Section 1 — Election**

I have received and read the *Special Tax Notice Regarding Plan Payments*, outlining the tax implications of a lump sum payment from the Plan and I elect the following:

☐ Directly roll over my entire lump sum distribution to the IRA or another employer's retirement plan specified in Section 2 below. I understand that no taxes will be withheld from this distribution.

☐ Directly roll over _____% (multiples of 1%) of my lump sum distribution to the IRA or another employer's retirement plan specified in Section 2 below and send the remaining percentage to me. I understand that the percentage of my distribution that is paid directly to me will be reduced by the applicable 20% federal income tax withholding.

☑ Send my entire lump sum distribution to me. I understand that my distribution will be reduced by the automatic 20% federal income tax withholding before it is paid to me. Please proceed to Section 3.

---

**Section 2 — Rollover Destination Information**
*(Note: If you have elected to have your entire lump sum distributed directly to you, please proceed to Section 3.)*

In accordance with my rollover election above, I authorize the Plan to directly roll over all or a percentage (multiples of 1%) of my lump sum distribution to the following IRA or another employer's retirement plan. I also understand that if I elect a rollover, I must contact the financial institution or plan sponsor to obtain the appropriate information to facilitate the rollover.

_____
Financial Institution/Retirement Plan Name

_____
IRA Account Number (if applicable)

_____
Address of Financial Institution

# REDACTED

(UL1) 05/06  0000160

RECEIVED 10/03/2006

## Section 3 — Waiver of 30-Day Decision Period

☑ I understand that I have the right to at least 30 days, following receipt of this package, to decide the form of payment under which I am to receive my benefit and if applicable, to consider whether to commence my benefit before my Normal Retirement Date. If my Benefit Commencement Date falls within the 30-day period, I hereby waive the 30-day election period. However, I understand that I may revoke this waiver and make a new election at any time before payment(s) commence.

## Section 4 — Participant Authorization

I authorize distribution of my lump sum retirement benefit under the Colgate-Palmolive Company Employees' Retirement Income Plan in accordance with the elections I have made above.

_Cora Nelson Manley_                              _9/30/06_
Your Signature                                          Date

_____
Your Social Security Number

## If You Have Questions

You can access the Retirement Processing Center 24 hours a day, seven days a week by visiting Colgate Retirement Plans Online at https://www.benefitsweb.com/colgate.html. You can also speak with a Benefit Center Representative at 1-888-982-7227 (or 1-201-363-2456 if you are calling from outside the US), Monday through Friday, 8:30 a.m. to 4:30 p.m. Eastern Time, except on holidays.

**Authorization**
Please note: Whenever you access Colgate Retirement Plans Online, a Benefit Center Representative, or the voice response system to initiate a transaction, you are authorizing the Plan Administrator to execute each transaction as if you had given written, signed authorization to do so. While we attempt to make Colgate Retirement Plans Online and the voice response system available 24 hours a day, occasionally one or both may be unavailable or it may not be possible to execute transactions for other reasons. The Company and its agents will not be responsible for transactions that cannot be initiated or executed. You should refer to the Summary Plan Description for a more detailed explanation of Plan provisions and procedures.

# REDACTED

RECEIVED 10/03/2006

**Retirement Processing Center**
P.O. Box 1008
Totowa, NJ 07511-1008

**CP  COLGATE-PALMOLIVE COMPANY**

0000160
CORA NELSON-MANLEY
140-22D CARVER LOOP
BRONX NY 10475

**Direct Deposit Authorization Form**

Date Produced: August 21, 2006
Colgate Retirement Plans Online:
https://www.benefitsweb.com/colgate.html
1-888-982-7227

---

In order to set up a direct deposit for your monthly benefit payments or lump sum payment, or redirect your payment(s) to a different account, you must complete this form. This authorization will be acted upon as quickly as administratively feasible. If this form is incomplete, your direct deposit authorization will be delayed.

**Note:** Direct Deposit is *preferred* for monthly benefit payments.

**Set up or Change Direct Deposit Option**

I authorize the Colgate-Palmolive Company benefits to deposit my monthly payments or lump sum payment directly into the account named below. This authorization will remain in effect until I have requested that it be changed, or until I have been notified that this method of deposit has been terminated. I understand that I must give adequate notice to allow reasonable time to act on my instructions. If ever an incorrect amount should be entered into my account, I authorize the Colgate-Palmolive Company benefits payer to direct my bank to make the appropriate credit or debit adjustment.

Signature: _Cora Nelson-Manley_     Date: _9/30/06_

Social Security Number: _____ (Required)

Additional Signature: _____     Date: _____
(A joint account requires signatures from both account holders.)

**Financial Institution Information**

NOTE: A VOIDED CHECK OR A PERSONALIZED DEPOSIT SLIP <u>MUST</u> BE ATTACHED TO THIS FORM.

Name of Bank or Financial Institution: _Washington Mutual_

Branch Address: _Wamu. com- New York (online acct) 1-800-788-7000_

City: _____     State: _____     Zip: _____

Bank Phone Number: ( 800 ) _788-7000_

Type of Account (check one):     ☑ Checking     ☐ Savings

# REDACTED

(UF4) 04/06  0000160

RECEIVED 10/03/2006

Please verify all numbers provided below with your bank to avoid errors that may result in delays in receiving your benefit payments.

Account Number:

Bank Routing Number (nine digits)*

†If Electronic Funds Transfer is not available from your bank or credit union, you will not be able to use direct deposit and your checks will be mailed to your home.

PLEASE STAPLE A VOIDED CHECK OR PERSONALIZED DEPOSIT SLIP HERE

## If You Have Questions

You can access the Retirement Processing Center 24 hours a day, seven days a week by visiting Colgate Retirement Plans Online at https://www.benefitsweb.com/colgate.html. You can also speak with a Benefit Center Representative at 1-888-982-7227 (or 1-201-363-2456 if you are calling from outside the US), Monday through Friday, 8:30 a.m. to 4:30 p.m. Eastern Time, except on holidays.

**Authorization**
Please note: Whenever you access Colgate Retirement Plans Online, a Benefit Center Representative, or the voice response system to initiate a transaction, you are authorizing the Plan Administrator to execute each transaction as if you had given written, signed authorization to do so. While we attempt to make Colgate Retirement Plans Online and the voice response system available 24 hours a day, occasionally one or both may be unavailable or it may not be possible to execute transactions for other reasons. The Company and its agents will not be responsible for transactions that cannot be initiated or executed. You should refer to the Summary Plan Description for a more detailed explanation of Plan provisions and procedures.



**REDACTED**

(UF4)  04/06  0000160

RECEIVED 10/03/2006

**Joint Annuitant Designation:**

Complete this section only if you elected a Joint and Survivor Annuity payment option.

I designate the following person as my Joint Annuitant. I understand I may not change my Joint Annuitant designation once payments commence and that my Joint Annuitant will receive monthly payments only if he or she survives me.

_____          _____
Joint Annuitant's Full Name                 Joint Annuitant's Social Security Number

_____  _____  _____
Relationship to You                 Gender    Joint Annuitant's Date of Birth

_____
Joint Annuitant's Home Address

_____  _____  _____
City                        State       Zip Code

(_____)_____
Joint Annuitant's Home Phone Number

**Spousal Consent:**
If you are married, you will need your spouse's signed, notarized consent to elect any form of payment other than the Normal Form of payment, with your spouse as the Joint Annuitant.
**This consent is only valid if it is notarized by a notary public.**

I consent to the distribution option and Joint Annuitant designation elected by my spouse. I understand my spouse is entitled to a Joint and Survivor method of payment under the provisions of the Colgate-Palmolive Company Employees' Retirement Income Plan unless my spouse elects to waive this type of Annuity and I consent to such waiver.

I have read and irrevocably consent to the above election executed by my spouse above, including my spouse's designation of a Joint Annuitant (if applicable). I understand that upon my spouse's death I will not be entitled to receive any benefits from the Plan(s) (except to the extent provided under the payment method(s) elected by my spouse if my spouse has designated me as Joint Annuitant or beneficiary).

_Reginald M. Marley_____          _9/30/06_____
Spouse's Signature (invalid if not signed and notarized)     Date (invalid if not completed)

**Notarization**                                    Notary Seal

State of _New York_____, County of _New York_____

On the __30th__ day of _September_, 20 _06_ before me personally came
_____ known to be the individual described in and who executed
before me the foregoing instrument, and who acknowledged that (s)he executed the same of his (her) own free will.

_Debra D. Murphy_____          My commission expires on: _11/18/09_
Notary Public Signature

DEBRA D. MURPHY
Notary Public, State of New York
No. 41-4704816
Qualified in Dutchess County
Certificate filed in New York County
Commission Expires_11/18/09_

**NOTARIZED**

**REDACTED**

(UM1) 05/06 0000160

RECEIVED 10/03/2006

**Waiver of 30-Day Decision Period:**

☑ I understand that I have the right to at least 30 days, following receipt of this *Benefit Commencement Package*, to decide the form of payment under which I am to receive my benefit and if applicable, to consider whether to commence receiving my benefit before my Normal Retirement Date. If my Benefit Commencement Date falls within the 30-day period, I hereby waive the 30-day election period. However, I understand that I may revoke this waiver and make a new election at any time before payment(s) commence.

**Participant Signature and Acknowledgement:**

I have read the information included in this *Benefit Commencement Package*, which was provided to me and I hereby make application for retirement and apply for payment of my benefit under the Colgate-Palmolive Company Employees' Retirement Income Plan.

To the best of my knowledge, the information submitted above is complete and accurate. I understand that I can revoke my waiver of the Normal Form of payment at any time before my Benefit Commencement Date. I understand that I cannot change my form of payment election once payment of my benefit commencement begins.

| | |
|---|---|
| _Your Signature_ | _Date_  9/30/04 |
| _Your Social Security Number_ | _Home Phone Number_ |

**If You Have Questions**

You can access the Retirement Processing Center 24 hours a day, seven days a week by visiting Colgate Retirement Plans Online at https://www.benefitsweb.com/colgate.html. You can also speak with a Benefit Center Representative at 1-888-982-7227 (or 1-201-363-2456 if you are calling from outside the US), Monday through Friday, 8:30 a.m. to 4:30 p.m. Eastern Time, except on holidays.

> **Authorization**
> Please note: Whenever you access Colgate Retirement Plans Online, a Benefit Center Representative, or the voice response system to initiate a transaction, you are authorizing the Plan Administrator to execute each transaction as if you had given written, signed authorization to do so. While we attempt to make Colgate Retirement Plans Online and the voice response system available 24 hours a day, occasionally one or both may be unavailable or it may not be possible to execute transactions for other reasons. The Company and its agents will not be responsible for transactions that cannot be initiated or executed. You should refer to the Summary Plan Description for a more detailed explanation of Plan provisions and procedures.

# REDACTED

(UM1)  05/06  0000160

RECEIVED 10/03/2006

# EXHIBIT 3

June 21, 2006

*6/27/06 – Processed termination & Lump Sum amt.*

Warren Jemmott
547 Nostrand Avenue
Brooklyn, NY 11216

Dear Warren:

This letter of agreement and general release ("Agreement") confirms our mutual agreement regarding the terms and conditions of your separation from employment with Colgate-Palmolive Company and each of its subsidiaries and affiliates ("Colgate" or the "Company"). You and Colgate agree as follows:

1.  <u>Employment</u>. Your last day of employment with Colgate will be June 30, 2006.

2.  <u>Severance</u>. Upon execution of this Agreement (which cannot be executed before your last day of employment), your return of all Company property, and provided you remain an employee in good standing and continue to satisfactorily perform your duties and responsibilities through June 30, 2006, the Company will provide you with the severance program and transition arrangements set forth in the Summary of Supplemental Severance, attached hereto as Exhibit A and incorporated herewith (the "Summary").

3.  <u>Release</u>.

    a)  In consideration of (i) the Severance set forth in Paragraph 2 hereof and the Summary, and (ii) your eligibility to receive that Severance by working through June 30, 2006, to the fullest extent permitted by law you waive, release and forever discharge and covenant not to sue Colgate and each of its past and current subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from any and all legally waiveable claims, grievances, agency or administrative charges, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, sums of money, attorneys' fees, costs, damages, arbitrations, or demands, whatsoever, known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which you now have, ever have had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to you, from the beginning of time until the date of the execution of this Agreement, arising out of or relating in any way to your employment relationship with Colgate or the Colgate Releasees or other associations with Colgate or the Colgate Releasees or any termination thereof. Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right based upon any contract, express or implied, any breach of duty, or arising under federal, state or local fair employment practices, equal opportunity, or wage and hour laws, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Worker

1

Adjustment and Retraining Notification Act, 42 U.S.C. Section 1981, the Equal Pay Act, and the Employee Retirement Income Security Act, including all amendments thereto.

b)   This release provision specifically includes, but is not limited to: (i) claims for past or future wages, salary, bonuses or other forms of compensation; and (ii) all claims for attorneys' fees under any laws.

c)   Notwithstanding the generality of the foregoing, nothing herein constitutes a release or waiver by you of: (i) any claim or right you may have under COBRA or under any qualified pension or retirement plan; (ii) any claim or right you may have for unemployment insurance benefits; (iii) any claim or right that may arise after the execution of this Agreement; or (iv) any claim or right you may have under the Agreement.

4.   <u>Covenant Not to Sue</u>. Pursuant to Paragraph 3, you further agree, promise and covenant that you shall not institute a claim, suit or action of any kind relating to your employment with Colgate or termination thereof, including, but not limited to, claims for past or future wages, salary, bonuses, benefits or other forms of compensation, or any other claim specifically set forth in Paragraph 3 (a) and (b).  If you violate this Agreement by suing Colgate or any of the Colgate Releasees, you agree that you will pay all costs and expenses incurred by Colgate or the Colgate Releasees in defending against the suit and in connection with any related collection action against you, including reasonable attorneys' fees and all further costs and fees, whether or not you are the prevailing party.

5.   <s>No Entitlement to Future Employment</s>. You acknowledge and agree that this Agreement waives and releases any entitlement you may have to apply for or seek future employment with Colgate or the Colgate Releasees. Accordingly, you agree that you will not apply for or seek future employment with Colgate or the Colgate Releasees.

6.   <u>Violations of Any Law or of Colgate's Code of Conduct</u>. You hereby agree, promise and covenant that during your employment with Colgate, you did not violate any federal, state or local law, statute or regulation while acting within the scope of your employment with Colgate, nor did you violate Colgate's Code of Conduct while acting within the scope of your employment with Colgate.  You acknowledge and understand that if Colgate should discover any such violation after your execution of this Agreement and your separation from employment with Colgate, it will be considered a material breach of this Agreement, and all of Colgate's obligations to you hereunder will become immediately null and void.

7.   <u>Return of Property</u>. Upon termination of your employment, you agree to promptly return to Colgate all of its property, including, but not limited to, files, documents, identification cards, credit cards, keys, equipment, software and data, however stored.

8.   <u>Repayment of Loans</u>.  You agree that Colgate shall have the right to deduct from the amounts payable pursuant to this Agreement any money owed to Colgate by you for a loan or advance paid to you by Colgate during your employment, when allowable by the loan agreement and applicable law.

9.   <u>Transition</u>. To the extent Colgate deems necessary, you agree that you will assist the Company with the transition of your responsibilities.

10.    Cooperation. You agree that upon Colgate's reasonable notice to you, you shall cooperate with Colgate and its counsel (including, if necessary, preparation for and appearance at depositions, hearings, trials or other proceedings) with regard to any past, present or future legal or regulatory matters that relate to or arise out of matters you have been involved with during your employment with Colgate. In the event that such cooperation is required, you will be reimbursed for reasonable expenses incurred in connection therewith.

11.    Confidentiality of the Agreement.    Except to the extent necessary to enforce this Agreement or as required by law, the parties hereto shall not disclose the existence of this Agreement, the terms of this Agreement, or the circumstances or allegations giving rise to this Agreement, to any person other than their respective attorneys, immediate family members, accountants, financial advisors or corporate employees who have a business need to know such terms in order to approve or implement such terms. Nothing in this Agreement herein however, shall prohibit or restrict any party or such party's attorneys from: (i) making any disclosure of information or documents required by law or legal process; or (ii) cooperating, participating or assisting in any investigation, action or proceeding brought by any governmental agency or legislative body, any self-regulatory organization, or Colgate's Legal Department, and/or pursuant to 18 U.S.C. § 1514A; provided that, to the extent permitted by law, upon receipt of any subpoena, court order or other legal process compelling the disclosure of any such information or documents the disclosing party gives prompt written notice to the other party so as to permit such other party to protect such party's interests in confidentiality to the fullest extent possible. You agree and acknowledge that you are not entitled to and that you will not seek or authorize anyone to seek on your behalf any personal equitable or monetary relief in any above-described investigation, action or proceeding.

12.    Protection of Confidential Information.

a)    You hereby acknowledge your existing obligation to maintain the confidentiality of Colgate's information as contained in the Company's Code of Conduct (which is hereby incorporated by this reference);

b)    Without limiting the generality of the foregoing obligations set forth in Paragraph 12 (a), you agree that you will not at any time, directly or indirectly, disclose any trade secret, confidential or proprietary information you have learned by reason of your association with Colgate (the "Confidential Information") or use any such Confidential Information to the detriment of Colgate, its affiliates or subsidiaries, or to the benefit of any business or enterprise that competes with any of the oral care, personal care, household surface care or fabric care categories of Colgate, its affiliates or subsidiaries. Confidential Information is deemed to include, but is not limited to, information pertaining to Company advertising and marketing plans, sales plans, formulae, processes, methods, machines, ideas, concepts, new products, improvements, inventions, research programs and associations with other organizations that the Company has not previously made public. Confidential Information does not include information that can be shown by written evidence to be in the public domain at the time of disclosure by you or that is publicized or otherwise becomes part of the public domain through no fault of your own.

3

13. <u>Non-Disparagement</u>.

  a)   You agree that you shall not at any time make any written or verbal comments or statements of a defamatory or disparaging nature regarding Colgate and/or the Colgate Releasees or their personnel or products and you shall not take any action that would cause Colgate and/or the Colgate Releasees or their personnel or products any embarrassment or humiliation or otherwise cause or contribute to their being held in disrepute.

  b)   Colgate agrees that it will use its best efforts to ensure that none of its representatives make any written or verbal comments or statements of a defamatory or disparaging nature regarding you or takes any action that would cause you any embarrassment or humiliation or otherwise cause or contribute to your being held in disrepute while they are employed by Colgate and acting in their capacity as Colgate representatives.

14. <u>Non-Admission</u>. It is understood and agreed that neither the execution of this Agreement nor the terms of the Agreement constitute an admission of liability to you by Colgate or the Colgate Releasees, and such liability is expressly denied. It is further understood and agreed that no person shall use the Agreement or the consideration paid pursuant thereto as evidence of an admission of liability, inasmuch as such liability is expressly denied.

15. <u>Acknowledgments</u>. You hereby acknowledge that:

  a)   The Company advises you to consult with an attorney before signing this Agreement;

  b)   You have obtained independent legal advice from an attorney of your own choice with respect to this Agreement and Exhibit A, or you have knowingly and voluntarily chosen not to do so;

  c)   You have had a reasonable period of time in which to consider this Agreement and Exhibit A;

  d)   You freely, voluntarily and knowingly entered into this Agreement after due consideration;

  e)   In exchange for your waivers, releases and commitments set forth herein, the payments, benefits and other considerations that you are receiving pursuant to this Agreement and Exhibit A exceed any payment, benefit or other thing of value to which you would otherwise be entitled, and are just and sufficient consideration for the waivers, releases and commitments set forth herein; and

  f)   No promise or inducement has been offered to you, except as expressly set forth herein, and that you are not relying upon any such promise or inducement in entering into this Agreement. Your employment remains at-will and this Agreement does not confer upon you any right or obligation to continue in the employ of Colgate for any period of time.

16. <u>Revocation by Colgate</u>. You agree that if you fail to execute and return this Agreement to Colgate within the time specified herein for your review and consideration, the promises and agreements made by Colgate herein will be revoked.

17. <u>Miscellaneous</u>.

---

---

a)   <u>Entire Agreement</u>. This Agreement, including Exhibit A, sets forth the entire agreement between you and Colgate and replaces any other oral or written agreement between you and Colgate relating to the subject matter of this Agreement, except for your prior obligations of confidentiality as provided for in Paragraph 12 above, which shall continue in full force and effect.

b)   <u>Governing Law</u>. This Agreement shall be construed, performed, enforced and in all respects governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of law thereof. Additionally, all disputes arising from or related to this Agreement shall be brought in a state or federal court situated in the State of New York, County of New York, and the parties hereby expressly consent to the jurisdiction of such courts for all purposes related to resolving such disputes.

c)   <u>Severability</u>. Should any provision of this Agreement, including Exhibit A, be held to be void or unenforceable, the remaining provisions shall remain in full force and effect, to be read and construed as if the void or unenforceable provisions were originally deleted; <u>provided however</u>, that upon a finding by a court of competent jurisdiction that the release set forth in Paragraph 3 is illegal and/or unenforceable, Colgate shall be released from any payment obligations under Paragraph 2.

d)   <u>Amendments</u>. This Agreement may not be modified or amended except upon the express written consent of both you and Colgate.

e)   <u>Breach</u>. You acknowledge that if you breach your commitments to the Company agreed upon in Paragraphs 4, 6, 7, 8, 9, 10, 11, 12 and/or 13, you will forfeit the severance provided under Paragraph 2 and be subject to suit by the Company for damages and equitable relief relating to such breach.

f)   <u>Waiver</u>. A waiver by either party hereto of a breach of any term or provision of the Agreement shall not be construed as a waiver of any subsequent breach.

g)   <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

h)   <u>Effective Date</u>. This Agreement shall become effective upon its execution by the parties hereto.

If the above accurately states our agreement, including the separation, waiver and release, kindly sign below and return this Agreement to me no later than June 30, 2006. I will sign it and return a copy to you.

Sincerely,

COLGATE-PALMOLIVE COMPANY

By: *Kathy Weida*

Kathy Weida
Vice President, HR Legal

Date: 6/26/06

UNDERSTOOD, AGREED TO
AND ACCEPTED WITH THE
INTENTION TO BE LEGALLY BOUND:

Warren Jemmott

Date: 6/26/06

Enclosure

6

**EXHIBIT A**

**NAME: Warren Jemmott**

## SUMMARY OF SUPPLEMENTAL SEVERANCE PROGRAM

**I.    COLGATE/HILL'S PROVIDES:**

**(1)    SEVERANCE PAY**
You will receive your regular rate of pay through your last day of employment with the Company as set forth in Paragraph 1 of the Agreement. Following your last day of employment with the Company, and as soon as practicable following the effective date of your Agreement including all exhibits thereto, you will receive a lump sum severance payment in the amount of $18,531, which is equivalent to 22 weeks of your regular rate of pay. If you do not execute and return the Agreement prior to your last day of employment, your severance pay will be reduced by the amount paid between your last day of employment and the date you signed the Agreement.

**(3)    VACATION PAY**
You will receive pay in lieu of any unused vacation for 2006.

**(4)    INCENTIVE COMPENSATION**
Upon the effective date of your Agreement, you will eligible to receive a prorated Annual Teampower award payable in March 2007.

**(5)    OUTPLACEMENT**
You will receive outplacement assistance.

**(6)    BENEFIT PLANS**
Your benefit coverages are summarized below. Please note that the full terms and conditions of your benefits coverages can only be determined by reviewing the applicable plan documents, which shall control in all cases. Any benefits in excess of those to which you are already entitled shall only be provided upon the effective date of your Agreement.

**Medical Plan**
Your medical coverage will continue through November 30, 2006. Upon expiration of this coverage, you will have the option to continue medical coverage on an employee pay all basis plus 2% for administrative expenses. This period of optional COBRA coverage will be up to 18 months, offset by any period of extended coverage outlined above.

**IMPORTANT NOTE:** The extension of coverage is in compliance with your rights under the Consolidated Omnibus Budget Reconciliation Act (COBRA).

**Dental Plan**
Your dental coverage will continue through November 30, 2006. Upon expiration of this coverage, you will have the option to continue dental coverage on an employee pay

all basis plus 2% for administrative expenses. This period of optional COBRA coverage will be up to 18 months, offset by the period of extended coverage outlined above.

**IMPORTANT NOTE:** The extension of coverage is in compliance with your rights under the Consolidated Omnibus Budget Reconciliation Act (COBRA).

## Group Life

Basic Life Insurance coverage will be provided at no cost to you through November 30, 2006. Conversion privileges will be available for basic life insurance through Aetna Life Insurance Company at 1-800-523-5065 for further details.

Contributory Life Insurance is portable within 31 days of your last day worked. Please contact Aetna Life Insurance Company at 1-800-826-7448 for further details.

## AD&D, Dependent Life & Dependent AD&D Insurance Plans

Coverage will cease as of your last day of employment.

Contributory Dependent Life Insurance is portable within 31 days of your last day of employment. Please contact Aetna Life Insurance Company at 1-800-826-7448 for further details.

## Vision Plan

You do not participate in this plan.

## Short/Long Term Disability and Travel Accident Plans

All coverage ceases as of your last day of employment.

## Dependent Care/Health Care Accounts

You do not participate in these plans.

## Long-Term Care Program

You and all other enrolled family members will have the opportunity to continue your coverage and option selection on a direct-billing basis.

## Savings & Investment Plan

Your contributions and Company match will continue up through your last day of employment. You will be 100% vested in all the accounts. Your vested account balance as of June 19, 2006 is $6,453.

Eligibility for a Success Sharing and Retiree Insurance Account allocation will be governed by normal rules. You will need to make an election on how you wish to receive your distribution of funds.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided by our record keeper.

## Pension Plan

Your estimated vested PRA account balance as of April 30, 2006 is $2,200. Pay-based credits, and interest credits will continue up through your last day of employment.

If you are entitled to receive or have received any other benefit from other Colgate/Hill's or government sponsored pension plans or staff leave indemnity plans, they may apply as offsets.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided by our record keeper.

## II.   RETURN TO COLGATE/HILL'S:

(1)   You will promptly return to Colgate/Hill's all of its property including, but not limited to, files, identification cards, credit cards and keys issued, equipment, software, data files, documentation, and materials.

(2)   Cash or expense advances received by you may exceed your actual expenditures reported to date. Your expenses must be accounted for by your last day of employment. At that time, you will reimburse Colgate/Hill's for any excess advances. It is also understood that any outstanding Company credit card balances must be promptly reconciled.

Please note that you shall only be entitled to the supplemental benefits enumerated herein upon the effective date of your Agreement and only if you remain employed with Colgate/Hill's through your last day of employment. You shall not be eligible for these benefits if you are terminated prior to your scheduled last day of employment for cause (as determined by Colgate/Hill's in its sole discretion) or you voluntarily resign without Colgate's/Hill's prior written approval.

If you have any questions on your Benefit Plans, please call Karyn Festinger at (212) 310-2537or via e-mail at Karyn_Festinger@colpal.com.

# EXHIBIT 4

November 2, 2004

Adriana Vazquez
1660 Jarvis Avenue
Bronx, NY 10461

Dear Adriana:

This letter of agreement and general release ("Agreement") confirms our mutual agreement regarding the terms and conditions of your separation from employment with Colgate-Palmolive Company and each of its subsidiaries and affiliates ("Colgate" or the "Company"). You and Colgate agree as follows:

1.   <u>Employment</u>.  Your last day of active employment with Colgate will be November 2, 2004.

2.   <u>Transition</u>.  Upon execution of this Agreement, the expiration of the seven (7) day revocation period provided for in Paragraph 14, the receipt by Colgate, via first class mail or facsimile, of the letter of acknowledgement and intent not to revoke the Agreement, attached hereto as Exhibit A, and your return of all Company property, the Company will provide you with the transition arrangements set forth in the Summary of Transition, attached hereto as Exhibit B and incorporated herewith (the "Summary").

3.   <u>Release</u>.

   a)   In consideration of the transition arrangements set forth in Paragraph 2 hereof and the Summary, you waive, release and forever discharge Colgate and each of its past and current parents, subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from any and all claims, grievances, agency or administrative charges, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, sums of money, attorneys' fees, costs, damages, arbitrations, or demands, whatsoever, known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which you now have, ever have had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to you, from the beginning of time until the effective date of this Agreement, arising out of or relating in any way to your employment relationship with Colgate or the Colgate Releasees or other associations with Colgate or the Colgate Releasees or any termination thereof. Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right based upon any contract, express or implied, any breach of duty, or arising under federal, state or local fair employment practices, equal opportunity, or wage and hour laws,

1

including, but not limited to, the Age Discrimination in Employment Act (29 U.S.C. Section 621, et seq.) ("ADEA"), the Older Workers' Benefits Protection Act, the Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, 42 U.S.C. Section 1981, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Employee Retirement Income Security Act, the Americans with Disabilities Act and the Family and Medical Leave Act, including all amendments thereto.

b)    This release provision specifically includes, but is not limited to: (i) claims for past or future wages, salary, bonuses or other forms of compensation; and (ii) all claims for attorneys' fees under any laws.

c)    Notwithstanding the generality of the foregoing, nothing herein constitutes a release or waiver by you of: (i) any claim or right you may have under COBRA or under any qualified pension or retirement plan; (ii) any claim or right you may have for unemployment insurance benefits; (iii) any claim or right that may arise after the execution of this Agreement; or (iv) any claim or right you may have under the Agreement.

d)    Nothing in this Agreement is intended to prohibit you from cooperating with any governmental agency, in any action brought by such governmental agency, and/or pursuant to 18 U.S.C. § 1514A, provided that you agree and acknowledge that you are not entitled to and that you will not seek or authorize anyone to seek on your behalf any personal equitable or monetary relief in such action.

4.    No Entitlement to Future Employment. You acknowledge and agree that this Agreement waives and releases any entitlement you may have to apply for or seek future employment with Colgate or the Colgate Releasees. Accordingly, you agree that you will not apply for or seek future employment with Colgate or the Colgate Releasees.

5.    Violations of Any Law or of Colgate's Code of Conduct. You hereby agree, promise and covenant that during your employment with Colgate, you did not violate any federal, state or local law, statute or regulation while acting within the scope of your employment with Colgate, nor did you violate Colgate's Code of Conduct while acting within the scope of your employment with Colgate. You acknowledge and understand that if Colgate should discover any such violation after your execution of this Agreement and your separation from employment with Colgate, it will be considered a material breach of this Agreement, and all of Colgate's obligations to you hereunder will become immediately null and void.

6.    Return of Property. Upon termination of your active employment, you agree to promptly return to Colgate all of its property, including, but not limited to, files, documents, identification cards, credit cards, keys, equipment, software and data, however stored.

7.    Repayment of Loans. You agree that Colgate shall have the right to deduct from the amounts payable pursuant to this Agreement any money owed to Colgate by you for a loan or advance paid to you by Colgate during your employment, when allowable by the loan agreement.

8.   Transition. To the extent Colgate deems necessary, you agree that you will assist the Company with the transition of your responsibilities.

9.   Cooperation.   You agree that upon Colgate's reasonable notice to you, you shall cooperate with Colgate and its counsel (including, if necessary, preparation for and appearance at depositions, hearings, trials or other proceedings) with regard to any past, present or future legal or regulatory matters that relate to or arise out of matters you have been involved with during your employment with Colgate.   In the event that such cooperation is required, you will be reimbursed for reasonable expenses incurred in connection therewith.

10.  Confidentiality of the Agreement.   Except to the extent necessary to enforce this Agreement or as required by law, the parties hereto shall not disclose the existence of this Agreement, the terms of this Agreement, or the circumstances or allegations giving rise to this Agreement, to any person other than their respective attorneys, immediate family members, accountants, financial advisors or corporate employees who have a business need to know such terms in order to approve or implement such terms.  Nothing herein, however, shall prohibit any party or his/its attorneys from disclosing the existence of this Agreement, the terms of this Agreement, or the circumstances or allegations giving rise to this Agreement to the extent required by applicable laws or governmental regulations or judicial or regulatory process, provided that the disclosing party gives three business days' prior notice (or such shorter notice if disclosure is required prior to three days) to the other party so as to permit such other party to protect his/its interests in confidentiality to the fullest extent possible.

11.  Protection of Confidential Information.

   a)   You hereby acknowledge the existing obligations contained in the Non-disclosure Agreement, dated January 30, 1989, executed by you (the "Non-disclosure Agreement"), which is hereby incorporated by this reference and agree to be bound by the Non-disclosure Agreement on an ongoing basis;

   b)   In addition, you hereby acknowledge your existing obligation to maintain the confidentiality of Colgate's information as contained in the Company's Code of Conduct.   You affirmed that you read and agreed to be bound by the Code of Conduct when you signed the Code of Conduct – Certificate of Receipt in 2004 (which is hereby incorporated by this reference);

   c)   Without limiting the generality of the foregoing obligations set forth in Paragraph 11 (a) and (b), you agree that you will not at any time, directly or indirectly, disclose any trade secret, confidential or proprietary information you have learned by reason of your association with Colgate (the "Confidential Information") or use any such Confidential Information to the detriment of Colgate or to the benefit of any business or enterprise that competes with any of the oral care, personal care, household surface care or fabric care categories of Colgate, its affiliates or subsidiaries. Confidential Information is deemed to include, but is not limited to, information pertaining to Company advertising and marketing plans, sales plans,

3

formulae, processes, methods, machines, ideas, concepts, new products, improvements, inventions, research programs and associations with other organizations that the Company has not previously made public. Confidential Information does not include information that can be shown by written evidence to be in the public domain at the time of disclosure by you or that is publicized or otherwise becomes part of the public domain through no fault of your own.

12. **Non-Disparagement.**

    a)    You agree that you shall not at any time make any written or verbal comments or statements of a defamatory or disparaging nature regarding Colgate and/or the Colgate Releasees or their personnel or products and you shall not take any action that would cause Colgate and/or the Colgate Releasees or their personnel or products any embarrassment or humiliation or otherwise cause or contribute to their being held in disrepute.

    b)    Colgate agrees that it will use its best efforts to ensure that none of its representatives make any written or verbal comments or statements of a defamatory or disparaging nature regarding you or takes any action that would cause you any embarrassment or humiliation or otherwise cause or contribute to your being held in disrepute while they are employed by Colgate and acting in their capacity as Colgate representatives.

13. **Non-Retaliation/Harassment.** You agree that you shall not at any time attempt to retaliate against or harass anyone who you believe might have been involved in any way in the events leading up to the separation of your employment from Colgate. You acknowledge and understand that if Colgate should discover any such attempted or successful retaliation or harassment before the agreement becomes effective, the offer contained herein will be considered withdrawn. You further acknowledge and understand that if Colgate should discover any such attempted or successful retaliation or harassment after your execution of this Agreement and your separation from employment with Colgate, it will be considered a material breach of this Agreement, and all of Colgate's obligations to you hereunder will become immediately null and void.

14. **Non-Admission.** It is understood and agreed that neither the execution of this Agreement nor the terms of the Agreement constitute an admission of liability to you by Colgate or the Colgate Releasees, and such liability is expressly denied. It is further understood and agreed that no person shall use the Agreement or the consideration paid pursuant hereto as evidence of an admission of liability, inasmuch as such liability is expressly denied.

15. **Acknowledgments.** You hereby acknowledge that:

    a)    You were advised by Colgate to consult with an attorney before signing this Agreement;

    b)    You have obtained independent legal advice from an attorney of your own choice with respect to this Agreement, or you have knowingly and voluntarily chosen not to do so;

c)    You freely, voluntarily and knowingly entered into this Agreement after due consideration;

d)    You have had a minimum of twenty-one (21) days to review and consider this Agreement;

e)    If you knowingly and voluntarily choose to do so, you may accept the terms of this Agreement before the twenty-one (21) day consideration period provided for in Paragraph 15(d) above has expired;

f)    Changes to Colgate's offer contained in this Agreement that are immaterial will not restart the twenty-one (21) day consideration period provided for in Paragraph 15(d) above;

g)    You have a right to revoke this Agreement by notifying the undersigned Colgate representative in writing within seven (7) days of your execution of this Agreement;

h)    In exchange for your waivers, releases and commitments set forth herein, including your waiver and release of all claims arising under the ADEA, the payments, benefits and other considerations that you are receiving pursuant to this Agreement exceed any payment, benefit or other thing of value to which you would otherwise be entitled, and are just and sufficient consideration for the waivers, releases and commitments set forth herein; and

i)    No promise or inducement has been offered to you, except as expressly set forth herein, and that you are not relying upon any such promise or inducement in entering into this Agreement.

16.    <u>Revocation by Colgate</u>.  You agree that if you fail to execute and return this Agreement to Colgate within twenty-one (21) days of your receipt of the Agreement for your review and consideration, the promises and agreements made by Colgate herein will be revoked.

17.    <u>Miscellaneous</u>.

a)    <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement between you and Colgate and replaces any other oral or written agreement between you and Colgate relating to the subject matter of this Agreement, except for your prior obligations of confidentiality as provided for in Paragraph 11 above, which shall continue in full force and effect.

b)    <u>Governing Law</u>.  This Agreement shall be construed, performed, enforced and in all respects governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.  Additionally, all disputes arising from or related to this Agreement shall be brought in a state or federal court situated in the State of New York, County of New York, and the parties hereby expressly consent to the jurisdiction of such courts for all purposes related to resolving such disputes.

c)  <u>Severability</u>.  Should any provision of this Agreement be held to be void or unenforceable, the remaining provisions shall remain in full force and effect, to be read and construed as if the void or unenforceable provisions were originally deleted.

d)  <u>Amendments</u>.  This Agreement may not be modified or amended, except upon the express written consent of both you and Colgate.

e)  <u>Waiver</u>.  A waiver by either party hereto of a breach of any term or provision of the Agreement shall not be construed as a waiver of any subsequent breach.

f)  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

g)  <u>Effective Date</u>.  This Agreement shall become effective upon the expiration of the seven (7) day revocation period provided for in Paragraph 15(g) above and receipt by Colgate of Exhibit A.

If the above accurately states our agreement, including the discharge, waiver and release, kindly sign below and return the original with all attachments to me by no later than November 23, 2004.  I will sign it and return a copy to you.

Sincerely,

COLGATE-PALMOLIVE COMPANY

By: _____

Robert J. Joy
Senior Vice President, Global HR

Date: ____11/22/04____

UNDERSTOOD, AGREED TO
AND ACCEPTED WITH THE
INTENTION TO BE LEGALLY BOUND:

_____
Adriana Vazquez

Date: ____11/15/04____

Enclosure

6

**EXHIBIT A**

Robert J. Joy
Colgate-Palmolive Company
300 Park Avenue
New York, NY 10022

Dear Bob:

I understand and acknowledge that pursuant to Paragraph 15(g) of the letter agreement and release dated November 2, 2004 ("Agreement"), the terms of which are hereby incorporated by reference as if set forth fully herein, I was provided with a period of seven (7) days after my execution of the Agreement in which to revoke the Agreement if I so chose. This letter serves as an acknowledgement that I understand that the revocation period has expired, and that I did not revoke, nor did I intend to revoke, the Agreement. I have knowingly and voluntarily entered into the Agreement with the understanding that I am contractually bound by its terms and conditions.

Sincerely,

Adriana Vazquez

Date: 11/15/04

**EXHIBIT B**

Name: Adriana Vazquez

## SUMMARY OF TRANSITION PROGRAM

### I.     COLGATE PROVIDES:

**(1)     TRANSITION PAY**

Your last day of active employment will be November 2, 2004. However, you will continue to receive your regular rate of pay on the same frequency as your current checks through April 5, 2005. If you were eligible for the 2004 Income Savings Account (ISA) program, when you received your ISA allocation you were scheduled for a salary reduction of $3,000 to occur over a period of 10 months. If your last day of work falls prior to the end of this period, your transition pay will continue to be reduced by the balance of the $3,000 – or the maximum permitted by law, if less.

**(2)     VACATION PAY**

You will receive pay in lieu of any unused vacation for 2004. However, if the entire ISA salary reduction of $3,000 was not taken prior to your separation from service or from your transition pay, your vacation pay will be reduced by the remaining amount. You will not be eligible for vacation in 2005.

**(3)     INCENTIVE COMPENSATION**

You will not be entitled to a bonus for 2004 or 2005.

**(4)     BENEFIT PLANS**

Your benefit coverages are summarized below. Please note any employee contributions required will be deducted from salary payments.

**Medical Plan**

Coverage will be continued through April 5, 2005. Upon expiration of this coverage, you will have the option to continue medical coverage on an employee pay all basis plus 2% for administrative expenses. This period of optional COBRA coverage will be up to 18 months, offset by any period of extended coverage during the transition period.

**Dental Plan**

Coverage will be continued through April 5, 2005. Upon expiration of this coverage, you will have the option to continue dental coverage on an employee pay all basis plus 2% for administrative expenses. This period of optional COBRA coverage will be up to 18 months, offset by the period of extended coverage outlined above.

IMPORTANT NOTE: The extension of medical and/or dental coverage is in compliance with your rights under the Consolidated Omnibus Budget Reconciliation Act (COBRA).

Group Life, AD&D, Dependent Life & Dependent AD&D Insurance Plans
Coverage will be continued through April 5, 2005. Normal conversion privileges will be available.

Short/Long Term Disability and Travel Accident Plans
All coverage ceases as of November 2, 2004.

Dependent Care/Health Care Accounts
You do not participate in these plans.

Long-Term Care Program
You and all other enrolled family members will have the opportunity to continue your coverage and option selection on a direct-billing basis.

Savings & Investment Plan
Your contributions and Company match will continue up through the last day of your pay on April 5, 2005. You are 100% vested. Your vested account balance as of October 27, 2004 is $151,756. Eligibility for a Success Sharing and Retiree Insurance Account allocation will be governed by normal rules. You will need to make an election on how you wish to receive your distribution of funds.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided at the end of your transition period.

Pension Plan
Your estimated vested PRA account balance as of September 30, 2004 is $31,613. Pay-based credits, and interest credits will continue up through the last day of your pay on April 5, 2005.

If you are entitled to receive or have received any other benefit from other Colgate or government sponsored pension plans or staff leave indemnity plans, they may apply as offsets.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided at the end of your pay on April 5, 2005.

## II.    RETURN TO COLGATE:

1.    You will promptly return to Colgate all of its property including, but not limited to, files, identification cards, credit cards and keys issued, equipment, software, data files, documentation and materials.

2.    Cash or expense advances received by you may exceed your actual expenditures reported to date. Your expenses must be accounted for by November 2, 2004. At that time, you will reimburse Colgate for any excess advances. It is also understood that any outstanding Company credit card balances must be promptly reconciled.

If you have any questions on your Benefit Plans, please call Karyn Festinger at (212) 310-2537.

# EXHIBIT 5



**COLGATE·PALMOLIVE** COMPANY
A Delaware Corporation

300 Park Avenue
New York, NY 10022-7499
Telephone 212-310-2000
Cable Address PALMOLIVE

March 8, 2005

Paul Abelman
1890 Aspen Drive
Zanesville, OH 43701

Dear Paul:

This letter of agreement and general release ("Agreement") confirms our mutual agreement regarding the terms and conditions of your separation from employment with Colgate-Palmolive Company and each of its subsidiaries and affiliates ("Colgate" or the "Company"). You and Colgate agree as follows:

1.    <u>Employment</u>. Your last day of active employment with Colgate will be March 15, 2005.

2.    <u>Severance</u>. Upon execution of this Agreement, the expiration of the seven (7) day revocation period provided for in Paragraph 14, the receipt by Colgate, via first class mail or facsimile, of the letter of acknowledgement and intent not to revoke the Agreement, attached hereto as Exhibit A, and your return of all Company property, the Company will provide you with the severance program and transition arrangements set forth in the Summary of Supplemental Severance, attached hereto as Exhibit B and incorporated herewith (the "Summary").

3.    <u>Release</u>.

     a)    In consideration of the Severance set forth in Paragraph 2 hereof and the Summary, you waive, release and forever discharge Colgate and each of its past and current parents, subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from any and all claims, grievances, agency or administrative charges, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, sums of money, attorneys' fees, costs, damages, arbitrations, or demands, whatsoever, known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which you now have, ever have had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to you, from the beginning of time until the effective date of this Agreement, arising out of or relating in any way to your employment relationship with Colgate or the Colgate Releasees or other associations with Colgate or the Colgate Releasees or any termination thereof. Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right based upon any contract, express or implied, any breach of duty, or arising under federal, state or local fair

1

employment practices, equal opportunity, or wage and hour laws, including, but not limited to, the Age Discrimination in Employment Act (29 U.S.C. Section 621, et seq.) ("ADEA"), the Older Workers' Benefits Protection Act, the Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, 42 U.S.C. Section 1981, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Employee Retirement Income Security Act, the Americans with Disabilities Act and the Family and Medical Leave Act, including all amendments thereto.

b)  This release provision specifically includes, but is not limited to: (i) claims for past or future wages, salary, bonuses or other forms of compensation; and (ii) all claims for attorneys' fees under any laws.

c)  Notwithstanding the generality of the foregoing, nothing herein constitutes a release or waiver by you of: (i) any claim or right you may have under COBRA or under any qualified pension or retirement plan; (ii) any claim or right you may have for unemployment insurance benefits; (iii) any claim or right that may arise after the execution of this Agreement; or (iv) any claim or right you may have under the Agreement.

d)  Nothing in this Agreement is intended to prohibit you from cooperating with any governmental agency, in any action brought by such governmental agency, and/or pursuant to 18 U.S.C. § 1514A, provided that you agree and acknowledge that you are not entitled to and that you will not seek or authorize anyone to seek on your behalf any personal equitable or monetary relief in such action.

4.  No Entitlement to Future Employment. You acknowledge and agree that this Agreement waives and releases any entitlement you may have to apply for or seek future employment with Colgate or the Colgate Releasees. Accordingly, you agree that you will not apply for or seek future employment with Colgate or the Colgate Releasees.

5.  Violations of Any Law or of Colgate's Code of Conduct. You hereby agree, promise and covenant that during your employment with Colgate, you did not violate any federal, state or local law, statute or regulation while acting within the scope of your employment with Colgate, nor did you violate Colgate's Code of Conduct while acting within the scope of your employment with Colgate. You acknowledge and understand that if Colgate should discover any such violation after your execution of this Agreement and your separation from employment with Colgate, it will be considered a material breach of this Agreement, and all of Colgate's obligations to you hereunder will become immediately null and void.

6.  Return of Property. Upon termination of your active employment, you agree to promptly return to Colgate all of its property, including, but not limited to, files, documents, identification cards, credit cards, keys, equipment, software and data, however stored.

7.  Repayment of Loans. You agree that Colgate shall have the right to deduct from the amounts payable pursuant to this Agreement any money owed to Colgate by you for a loan or advance paid to you by Colgate during your employment, when allowable by the loan agreement.

2



8.    <u>Transition</u>. To the extent Colgate deems necessary, you agree that you will assist the Company with the transition of your responsibilities.

9.    <u>Cooperation</u>.    You agree that upon Colgate's reasonable notice to you, you shall cooperate with Colgate and its counsel (including, if necessary, preparation for and appearance at depositions, hearings, trials or other proceedings) with regard to any past, present or future legal or regulatory matters that relate to or arise out of matters you have been involved with during your employment with Colgate.  In the event that such cooperation is required, Colgate will use its best efforts to accommodate your schedule, and you will be reimbursed for reasonable expenses incurred in connection therewith.

10.    <u>Confidentiality of the Agreement</u>.    Except to the extent necessary to enforce this Agreement or as required by law, the parties hereto shall not disclose the existence of this Agreement, the terms of this Agreement, or the circumstances or allegations giving rise to this Agreement, to any person other than their respective attorneys, immediate family members, accountants, financial advisors or corporate employees who have a business need to know such terms in order to approve or implement such terms.  Nothing herein, however, shall prohibit any party or his/its attorneys from disclosing the existence of this Agreement, the terms of this Agreement, or the circumstances or allegations giving rise to this Agreement to the extent required by applicable laws or governmental regulations or judicial or regulatory process, provided that the disclosing party gives three business days' prior notice (or such shorter notice if disclosure is required prior to three days) to the other party so as to permit such other party to protect his/its interests in confidentiality to the fullest extent possible.

11.    <u>Protection of Confidential Information</u>.

   a)    You hereby acknowledge your existing obligation to maintain the confidentiality of Colgate's information as contained in the Company's Code of Conduct.  You affirmed that you read and agreed to be bound by the Code of Conduct when you signed the Code of Conduct – Certificate of Receipt on October 27, 2004 (which is hereby incorporated by this reference);

   b)    Without limiting the generality of the foregoing obligations set forth in Paragraph 11 (a), you agree that you will not at any time, directly or indirectly, disclose any trade secret, confidential or proprietary information you have learned by reason of your association with Colgate (the "Confidential Information") or use any such Confidential Information to the detriment of Colgate or to the benefit of any business or enterprise that competes with any of the oral care, personal care, household surface care or fabric care categories of Colgate, its affiliates or subsidiaries.  Confidential Information is deemed to include, but is not limited to, information pertaining to Company advertising and marketing plans, sales plans, formulae, processes, methods, machines, ideas, concepts, new products, improvements, inventions, research programs and associations with other organizations that the Company has not previously made public.  Confidential Information does not include information that can be shown by written evidence

3

to be in the public domain at the time of disclosure by you or that is publicized or otherwise becomes part of the public domain through no fault of your own.

12. <u>Non-Disparagement.</u>

    a) You agree that you shall not at any time make any written or verbal comments or statements of a defamatory or disparaging nature regarding Colgate and/or the Colgate Releasees or their personnel or products and you shall not take any action that would cause Colgate and/or the Colgate Releasees or their personnel or products any embarrassment or humiliation or otherwise cause or contribute to their being held in disrepute.

    b) Colgate agrees that it will use its best efforts to ensure that none of its representatives make any written or verbal comments or statements of a defamatory or disparaging nature regarding you or takes any action that would cause you any embarrassment or humiliation or otherwise cause or contribute to your being held in disrepute while they are employed by Colgate and acting in their capacity as Colgate representatives.

13. <u>Non-Admission.</u> It is understood and agreed that neither the execution of this Agreement nor the terms of the Agreement constitute an admission of liability to you by Colgate or the Colgate Releasees, and such liability is expressly denied. It is further understood and agreed that no person shall use the Agreement or the consideration paid pursuant hereto as evidence of an admission of liability, inasmuch as such liability is expressly denied.

14. <u>Acknowledgments.</u> You hereby acknowledge that:

    a) You were advised by Colgate to consult with an attorney before signing this Agreement;

    b) You have obtained independent legal advice from an attorney of your own choice with respect to this Agreement, or you have knowingly and voluntarily chosen not to do so;

    c) You freely, voluntarily and knowingly entered into this Agreement after due consideration;

    d) You have had a minimum of twenty-one (21) days to review and consider this Agreement;

    e) If you knowingly and voluntarily choose to do so, you may accept the terms of this Agreement before the twenty-one (21) day consideration period provided for in Paragraph 14(d) above has expired;

    f) Changes to Colgate's offer contained in this Agreement that are immaterial will not restart the twenty-one (21) day consideration period provided for in Paragraph 14(d) above;

    g) You have a right to revoke this Agreement by notifying the undersigned Colgate representative in writing within seven (7) days of your execution of this Agreement;

4

h)   In exchange for your waivers, releases and commitments set forth herein, including your waiver and release of all claims arising under the ADEA, the payments, benefits and other considerations that you are receiving pursuant to this Agreement exceed any payment, benefit or other thing of value to which you would otherwise be entitled, and are just and sufficient consideration for the waivers, releases and commitments set forth herein; and

i)   No promise or inducement has been offered to you, except as expressly set forth herein, and that you are not relying upon any such promise or inducement in entering into this Agreement.

15.   Revocation by Colgate.  You agree that if you fail to execute and return this Agreement to Colgate within twenty-one (21) days of your receipt of the Agreement for your review and consideration, the promises and agreements made by Colgate herein will be revoked.

16.   Miscellaneous.

a)   Entire Agreement.  This Agreement sets forth the entire agreement between you and Colgate and replaces any other oral or written agreement between you and Colgate relating to the subject matter of this Agreement, except for your prior obligations of confidentiality as provided for in Paragraph 11 above, which shall continue in full force and effect.

b)   Governing Law.  This Agreement shall be construed, performed, enforced and in all respects governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of law thereof. Additionally, all disputes arising from or related to this Agreement shall be brought in a state or federal court situated in the State of New York, County of New York, and the parties hereby expressly consent to the jurisdiction of such courts for all purposes related to resolving such disputes.

c)   Severability.  Should any provision of this Agreement be held to be void or unenforceable, the remaining provisions shall remain in full force and effect, to be read and construed as if the void or unenforceable provisions were originally deleted.

d)   Amendments.  This Agreement may not be modified or amended, except upon the express written consent of both you and Colgate.

e)   Waiver.  A waiver by either party hereto of a breach of any term or provision of the Agreement shall not be construed as a waiver of any subsequent breach.

f)   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

g)   Effective Date.  This Agreement shall become effective upon the expiration of the seven (7) day revocation period provided for in Paragraph 14(g) above and receipt by Colgate of Exhibit A.

5



If the above accurately states our agreement, including the discharge, waiver and release, kindly sign below and return the original with all attachments to me by no later than March 29, 2005. I will sign it and return a copy to you.

Sincerely,

COLGATE-PALMOLIVE COMPANY

By: _Paul T. Parker_

Paul Parker

Vice President, HR US Company

Date: _19 APR '05_

UNDERSTOOD, AGREED TO
AND ACCEPTED WITH THE
INTENTION TO BE LEGALLY BOUND:

_Paul D. Abelman_

Paul Abelman

Date: _4/18/05_

Enclosure

6

**EXHIBIT A**

Paul Parker
Colgate-Palmolive Company
300 Park Avenue
New York, NY 10022

Dear Paul:

I understand and acknowledge that pursuant to Paragraph 14(g) of the letter agreement and release dated March 8, 2005 ("Agreement"), the terms of which are hereby incorporated by reference as if set forth fully herein, I was provided with a period of seven (7) days after my execution of the Agreement in which to revoke the Agreement if I so chose. This letter serves as an acknowledgement that I understand that the revocation period has expired, and that I did not revoke, nor did I intend to revoke, the Agreement. I have knowingly and voluntarily entered into the Agreement with the understanding that I am contractually bound by its terms and conditions.

Sincerely,

*Paul D. Abelman*

Paul Abelman

Date: 4/18/05

7

**EXHIBIT B**

NAME: Paul Abelman

**SUMMARY OF SUPPLEMENTAL SEVERANCE PROGRAM**

**I.    COLGATE PROVIDES:**

**(1)    SEVERANCE PAY**
You will continue to receive your regular rate of pay through March 15, 2005. Additionally, beginning March 16, 2005 you will receive severance pay at your regular rate of pay on the same frequency as your current checks through September 14, 2005. However, if you were eligible for the 2004 Income Savings Account (ISA) program, when you received your ISA allocation you were scheduled for a salary reduction of $3,000 to occur over a period of 10 months. If your severance date falls prior to the end of this period, your severance pay will continue to be reduced by the balance of the $3,000 – or the maximum permitted by law, if less.

**(2)    STOCK OPTIONS**
As of March 16, 2005, you have 5,174 option shares vested and exercisable. After September 12, 2005, an additional 1,250 option shares will also become vested and exercisable. The exercise period for options which are vested as of the end of your salary continuance is the earlier of 90 days from the end of salary continuance or the expiration date of the option grant. Any options not then exercised will be forfeited.

You will not be eligible for an award in 2005.

Please refer to your most recent Stock Option Guide for further details.

**(3)    RESTRICTED SHARES**
You currently have 126 restricted shares outstanding under the Restricted Share Award Program which will be forfeited at the conclusion of your salary continuance, as they are not vested in accordance with the Plan.

You will not be eligible for any future grants under the Restricted Share Award Program.

Please refer to your Restricted Share Award Program summary for further details.

**(4)    VACATION PAY**
You will receive pay in lieu of any unused vacation for 2005.

**(5)    INCENTIVE COMPENSATION**
You will not receive an EICP bonus

(6)    **ABOVE & BEYOND**
You will be eligible for a 2005 Above and Beyond benefit for covered expenses incurred through March 15, 2005. All requests for reimbursement must be made prior to December 31, 2005.

(7)    **BENEFIT PLANS**
Your benefit coverages are summarized below. Please note any employee contributions required will be deducted from salary payments.

**Medical Plan**
Coverage will be continued through September 30, 2005. Upon expiration of this coverage, you will have the option to continue medical coverage on an employee pay all basis plus 2% for administrative expenses. This period of optional COBRA coverage will be up to 18 months, offset by any period of extended coverage during a severance period.

**Dental Plan**
Coverage will be continued through September 30, 2005. Upon expiration of this coverage, you will have the option to continue dental coverage on an employee pay all basis plus 2% for administrative expenses. This period of optional COBRA coverage will be up to 18 months, offset by the period of extended coverage outlined above.

**IMPORTANT NOTE:** The extension of medical and/or dental coverage is in compliance with your rights under the Consolidated Omnibus Budget Reconciliation Act (COBRA).

**Group Life, AD&D, Dependent Life & Dependent AD&D Insurance Plans**
Coverage will be continued through September 30, 2005. Normal conversion privileges will be available.

**Short/Long Term Disability and Travel Accident Plans**
All coverage ceases as of March 15, 2005.

**Dependent Care/Health Care Accounts**
Your contributions will cease as of March 15, 2005. You may submit eligible expenses for claims incurred through March 15, 2005. You will have until March 31, 2006 claim reimbursement for these expenses.

**Long-Term Care Program**
You and all other enrolled family members will have the opportunity to continue your coverage and option selection on a direct-billing basis.

9



### Savings & Investment Plan

Your contributions and Company match will continue up through the last day of your salary continuance. You are 100% vested. Your vested account balance as of March 4, 2005 is $254,585. Eligibility for a Success Sharing and Retiree Insurance Account allocation will be governed by normal rules. You will need to make an election on how you wish to receive your distribution of funds.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided at the end of your salary continuation period.

### Pension Plan

Your estimated vested PRA account balance as of January 31, 2005 is $53,254. Pay-based credits, and interest credits will continue up through the last day of your salary continuance or the date of any lump-sum severance payment.

If you are entitled to receive or have received any other benefit from other Colgate or government sponsored pension plans or staff leave indemnity plans, they may apply as offsets.

The above estimate is for illustrative purposes only. Specific details regarding your benefit amounts and options will be provided at the end of your salary continuation period.

(8)  **RELOCATION**
The Company will pay you a net lump sum of $35,000 in lieu of relocating you and your family back to South Africa.

## II.    RETURN TO COLGATE:

1.   You will promptly return to Colgate all of its property including, but not limited to, files, identification cards, credit cards and keys issued, equipment, software, data files, documentation and materials.

2.   Cash or expense advances received by you may exceed your actual expenditures reported to date. Your expenses must be accounted for by March 15, 2005. At that time, you will reimburse Colgate for any excess advances. It is also understood that any outstanding Company credit card balances must be promptly reconciled.

If you have any questions on your Benefit Plans, please call Karyn Festinger at (212) 310-2537 or via e-mail.



# EXHIBIT 6

Warren Jemmott
547 Nostrand Ave.
Brooklyn, NY 11216

**By registered mail**

Colgate-Palmolive Company
Employee Relations Committee
300 Park Ave.
New York, NY 10022-7402

    Re:   Request for documents re: my retirement benefits

To whom it may concern:

    I worked at Colgate-Palmolive from 2002 until 2006 and was a participant in the Colgate-Palmolive Company Employees' Retirement Income Plan. I would like copies of all Plan documents that are legally available to me. Please send me everything below within 30 days. I agree to pay reasonable charges for copies.

    First, I'd like copies of the most recent SPDs, plan documents, annual reports and actuarial valuations of the Plan.

    I'd also like a copy of any administrative manuals, guidelines, or similar administrative documents you used to figure out my benefit under the Plan. Also, send me the Plan application for approval with the IRS and all responses received from the IRS.

    Last, I'd like a statement of my benefit under the Plan. This would show my lump sum under the Plan if I commence benefits on September 1, 2007. Also show how much my monthly benefit would be worth if I wait until 65 to start. Please show calculations that show how you determined my benefit so I can check they are calculated correctly.

    Thank you for taking care of this quickly.

Yours truly,

Warren Jemmott

# EXHIBIT 7

Warren Jemmott
547 Nostrand Avenue
Brooklyn, NY 11216

Re: Request for plan documents

Dear Mr. Jemmott:

In response to your letter received on August 14, 2007, please find enclosed copies of the
documents required to be provided to you under Section 104(b)(4) of ERISA as follows:

-The Colgate-Palmolive Company Employees' Retirement Income Plan
-The Colgate-Palmolive Company Employees' Retirement Income Plan Summary Plan
Description
-The most recently filed annual report.

Also, in response to your request, you will receive separately from ACS, our plan
recordkeeper, an estimate of your benefit under the plan.  The estimate will also include
an estimate of your benefit at age 65.

Thank you,


Matt Faranda
Global Benefits

# EXHIBIT B

## Excerpts from the Colgate-Palmolive Company SEC Form 10-K, Filed 2/23/2007

# COLGATE PALMOLIVE CO

## FORM 10-K
(Annual Report)

## Filed 2/23/2007 For Period Ending 12/31/2006

| Address | 300 PARK AVE |
| | NEW YORK, New York 10022 |
| Telephone | 212-310-2000 |
| CIK | 0000021665 |
| Industry | Personal & Household Prods. |
| Sector | Consumer/Non-Cyclical |
| Fiscal Year | 12/31 |

Powered By EDGAR Online

http://www.edgar-online.com/
© Copyright 2006. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Onlines Terms of Use.

Table of Contents

# PART I

## ITEM 1.    BUSINESS

### (a) General Development of the Business

Colgate-Palmolive Company (together with its subsidiaries, the "Company" or "Colgate") is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world. Colgate was founded in 1806 and incorporated under the laws of the State of Delaware in 1923.

For recent business developments and other information, refer to the information set forth under the captions "Executive Overview," "Results of Operations," "Restructuring Activities," "Liquidity and Capital Resources" and "Outlook" in Part II, Item 7 of this report.

### (b) Financial Information about Segments

Worldwide net sales and operating profit by business segment and geographic region during the last three years appear under the caption "Results of Operations" in Part II, Item 7 of this report and in Note 14 to the Consolidated Financial Statements.

### (c) Narrative Description of the Business

The Company manages its business in two product segments: Oral, Personal and Home Care; and Pet Nutrition. Colgate is a global leader in Oral Care with the leading toothpaste brand throughout many parts of the world, including the U.S., according to value share data provided by ACNielsen. Colgate's Oral Care products include toothpaste, toothbrushes, mouth rinses, dental floss and pharmaceutical products for dentists and other oral health professionals. Significant recent product launches include Colgate Max Fresh, Colgate Sensitive Multi-Protection, Colgate Sensitive Plus Whitening and Colgate Time Control toothpastes, Colgate 360° manual toothbrushes, Colgate MicroSonic battery-powered toothbrushes, Colgate Smiles line of manual toothbrushes for kids and Plax Overnight mouth rinse.

Colgate is a leader in many product categories of the Personal Care market. The Personal Care market includes shower gels, shampoos, conditioners, and deodorants and antiperspirants, as well as liquid hand soaps in which Colgate is the market leader in the U.S. Significant recent product launches include Irish Spring MoistureBlast, Palmolive Nutri-Milk, Protex Deo 12 bar soap, Softsoap Brand Pure Cashmere moisturizing liquid hand soap and body wash, Palmolive BodYogurt shower gel, Palmolive Naturals shampoo and conditioner and Lady Speed Stick Double Defense deodorant.

As part of its strategy to focus on its higher-margin oral and personal care businesses, the Company purchased Tom's of Maine, Inc. in the second quarter of 2006, allowing the Company to enter the fast growing health and specialty trade channel where Tom's of Maine toothpaste and deodorant are market leaders.

Colgate manufactures and markets a wide array of products for Home Care, including Palmolive and Ajax dishwashing liquids, Fabuloso and Ajax household cleaners and Murphy's Oil Soap. Colgate is a market leader in fabric conditioners, with leading brands including Suavitel in Latin America and Soupline in Europe. Significant recent product launches in Home Care include Palmolive Oxy Plus Odor Eliminator dish liquid, Ajax Professional Degreaser spray cleaner and Ajax Professional Double Power spray cleaner. Consistent with the Company's strategy to prioritize higher margin businesses, in the fourth quarter of 2006 the Company announced its agreement to sell its Latin American and Canadian bleach brands. The transaction closed in Canada during the fourth quarter of 2006 and the Latin American transaction is expected to close during the first half of 2007.

Sales of Oral, Personal and Home Care products accounted for 38%, 23% and 25%, respectively, of total worldwide sales in 2006. Geographically, Oral Care is a significant part of the Company's business in Greater

Table of Contents

Asia/Africa, comprising approximately 63% of sales in that region for 2006. For more information regarding the Company's worldwide sales by product categories, refer to Notes 1 and 14 to the Consolidated Financial Statements.

Colgate, through its Hill's Pet Nutrition segment, is the world leader in specialty pet nutrition products for dogs and cats with products marketed in over 90 countries around the world. Hill's markets pet foods primarily under two trademarks: Science Diet, which is sold by authorized pet supply retailers, breeders and veterinarians for everyday nutritional needs; and Prescription Diet, a range of therapeutic products sold by veterinarians to help nutritionally manage disease conditions in dogs and cats. Significant recent pet food product launches in this segment include Science Diet Lamb Meal & Rice Recipe Large Breed, Science Diet Lamb Meal & Rice Recipe Small Bites, Science Diet Indoor Cat, Prescription Diet j/d Canine, Prescription Diet Feline Chucks in Gravy pouches and Science Plan Neutered Cat. Sales of Pet Nutrition products accounted for 14% of the Company's total worldwide sales in 2006.

**Research and Development**

Strong research and development capabilities and alliances enable Colgate to support its many brands with technologically sophisticated products to meet consumers' oral, personal and home care and pet nutrition needs. Company spending related to research and development activities was $241.5 million, $238.5 million and $223.4 million during 2006, 2005 and 2004, respectively.

**Distribution; Raw Materials; Competition; Trademarks and Patents**

The Company's products are generally marketed by a direct sales force at each individual operating subsidiary or business unit. In some instances, distributors or brokers are used. No single customer accounts for 10% or more of the Company's sales.

Most raw and packaging materials are purchased from other companies and are available from several sources. For certain materials, however, new suppliers may have to be qualified under industry and government standards, which can require additional investment and take some period of time. Raw and packaging material commodities such as resins, tallow, corn and soybeans are subject to wide price variations. No single raw or packaging material represents a significant portion of the Company's total material requirements.

The Company's products are sold in a highly competitive global marketplace which is experiencing increased trade concentration and the growing presence of large-format retailers and discounters. Products similar to those produced and sold by the Company are available from competitors in the U.S. and overseas. Certain of the Company's competitors are larger and have greater resources than the Company. In addition, private label brands sold by retail trade chains are a source of competition for certain product lines of the Company. Product quality and innovation, brand recognition, marketing capability and acceptance of new products largely determine success in the Company's business segments.

Trademarks are considered to be of material importance to the Company's business. The Company follows a practice of seeking trademark protection by all appropriate means in the U.S. and throughout the world where the Company's products are sold. Principal global and regional trademarks include Colgate, Palmolive, Mennen, Softsoap, Irish Spring, Protex, Sorriso, Kolynos, Elmex, Tom's of Maine, Ajax, Axion, Fabuloso, Soupline, Suavitel, Hill's Science Diet and Hill's Prescription Diet. The Company's rights in these trademarks endure for as long as they are used and registered. Although the Company actively develops and maintains a portfolio of patents, no single patent is considered significant to the business as a whole.

**Employees**

As of December 31, 2006, the Company employed approximately 34,700 employees.

2

Table of Contents

regulatory authority that triclosan should not be used in certain consumer products could have an adverse impact on our business, as could negative reactions to triclosan from consumers, our trade customers or non-governmental organizations.

*Our business is subject to the risks inherent in global manufacturing activities*

As a company engaged in manufacturing on a global scale, we are subject to the risks inherent in such activities, including, but not limited to:

- availability of key raw materials,
- industrial accidents or other occupational health and safety issues,
- environmental events,
- strikes and other labor disputes,
- disruptions in logistics,
- loss or impairment of key manufacturing sites,
- product quality or safety issues,
- licensing requirements and other regulatory issues,
- natural disasters, acts of war or terrorism and other external factors over which we have no control.

While we have business continuity and contingency plans for key manufacturing sites, significant disruption of manufacturing for any of the above reasons could interrupt product supply and, if not remedied, have an adverse impact on our business.

*Acquisitions may not be successful*

From time to time, we make strategic acquisitions. Acquisitions have inherent risks, including, but not limited to, whether we can:

- successfully integrate the acquired business,
- achieve projected synergies and performance targets, and
- retain key personnel.

Depending on the significance of the acquisition, the failure to achieve expected synergies or projections could have an adverse effect on our results.

*The risks described above are not the only ones we face. Additional risks not presently known to us or that we currently deem immaterial may also have an adverse effect on us. If any of the above risks actually occur, our business, results of operations, cash flows or financial condition could suffer, which might cause the value of our securities to decline.*

## ITEM 1B.    UNRESOLVED  STAFF COMMENTS

None.

## ITEM 2.    PROPERTIES

The Company owns or leases approximately 330 properties which include manufacturing, distribution, research and office facilities worldwide. Our corporate headquarters is located in leased property at 300 Park Avenue, New York, New York.

Table of Contents

In the U.S., the Company operates approximately 60 properties, of which 16 are owned. Major U.S. manufacturing and warehousing facilities used by the Oral, Personal and Home Care segment are located in Morristown, New Jersey; Jeffersonville, Indiana; and Cambridge, Ohio. The Pet Nutrition segment has major facilities in Bowling Green, Kentucky; Topeka, Kansas; Commerce, California; and Richmond, Indiana. The primary research center for Oral, Personal and Home Care products is located in Piscataway, New Jersey and the primary research center for Pet Nutrition products is located in Topeka, Kansas.

Overseas, the Company operates approximately 270 properties, of which 79 are owned, in over 70 countries. Major overseas facilities used by the Oral, Personal and Home Care segment are located in Australia, Brazil, China, Colombia, France, Italy, Mexico, South Africa, Thailand, the United Kingdom, Venezuela and elsewhere throughout the world.

All of the facilities we operate are well maintained and adequate for the purpose for which they are intended.

We have announced plans to close or phase out production at certain of our facilities under the 2004 Restructuring Program. We also announced plans to build new state-of-the-art plants to produce toothpaste in the U.S. and Poland. For additional information on how the 2004 Restructuring Program will impact our properties, refer to "Restructuring Activities" in Part II, Item 7 of this report.

## ITEM 3.    LEGAL PROCEEDINGS

In 1995, the Company acquired the Kolynos oral care business from Wyeth (formerly American Home Products) (the Seller), as described in the Company's Form 8-K dated January 10, 1995. On September 8, 1998, the Company's Brazilian subsidiary received notice of an administrative proceeding from the Central Bank of Brazil primarily taking issue with certain foreign exchange filings made with the Central Bank in connection with the financing of this strategic transaction, but in no way challenging or seeking to unwind the acquisition. The Central Bank of Brazil in January 2001 notified the Company of its decision in this administrative proceeding to impose a fine, which, at the current exchange rate, approximates $120 million. The Company appealed the imposition of the fine to the Brazilian Monetary System Appeals Council (the Council), and on January 30, 2007, the Council decided the appeal in the Company's favor, dismissing the fine entirely.

In addition, the Brazilian internal revenue authority has disallowed interest deductions and foreign exchange losses taken by the Company's Brazilian subsidiary for certain years in connection with the financing of the Kolynos acquisition. The tax assessments with interest, at the current exchange rate, approximate $100 million. The Company has been disputing the disallowances by appealing the assessments within the internal revenue authority's appellate process, with the following results to date:

- In June 2005, the First Board of Taxpayers ruled in the Company's favor and allowed all of the previously claimed deductions for 1996 through 1998, which represent more than half of the total exposure. The tax authorities have appealed this decision to the next administrative level.

- For the remaining exposure related to subsequent years, the assessment is still outstanding, and the Company is also appealing this assessment to the First Board of Taxpayers.

In the event of an adverse decision within the internal revenue authority's appellate process, further appeals are available within the Brazilian federal courts. Although there can be no assurances, management believes, based on the opinion of its Brazilian legal counsel and other experts, that the disallowances are without merit and that the Company should prevail on appeal either at the administrative level or if necessary, in the Brazilian federal courts. The Company intends to challenge these assessments vigorously.

In addition, Brazilian prosecutors reviewed the foregoing transactions as part of an overall examination of all international transfers of Reais through non-resident current accounts during the 1992 to 1998 time frame, a

7

# EXHIBIT C

# Excerpt from the Form 5500 for the Colgate-Palmolive Company Employees' Retirement Income Plan, Filed October 2005



**Quicklinks**

Back to Company Detail page | New Search
Form 5500 | Schedule A (1) | Schedule A (2) | Schedule B | Schedule C | Schedule D | Schedule H
| Schedule P | Schedule R | Schedule T | Other Documents | SHOW ALL

| Form **5500** | **Annual Return/Report of Employee Benefit Plan** | Official Use Only |
|---|---|---|
| Department of the Treasury Internal Revenue Service | This form is required to be filed under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6039D, 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code (the Code). Complete all entries in accordance with the instructions to the Form 5500. | OMB Nos. 1210-0110 1210-0089 |
| Department of Labor Pension and Welfare Benefits Administration | | **2004** |
| Pension Benefit Guaranty Corporation | | This Form is Open to Public Inspection |

**Part I    Annual Report Identification Information**

For the calendar plan year 2004 or fiscal plan year beginning January 01, 2004, and ending December 31, 2004

**A** This return/report is for:
(1) ☐ a multiemployer plan;
(2) ☒ a single-employer plan (other than a multiple-employer plan);
(3) ☐ a multiple-employer plan;
(4) ☐ a DFE (specify)

**B** This return/report is:
(1) ☐ the first return/report filed for the plan;
(2) ☐ the amended return/report;
(3) ☐ the final return/report filed for the plan;
(4) ☐ a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here ☐

**D** If you filed for an extension of time to file, check the box and attach a copy of the extension application ☒

**Part II    Basic Plan Information** -- enter all requested information.

**1a** Name of plan

COLGATE-PALMOLIVE COMPANY EMPLOYEES RETIREMENT INCOME PLAN

**1b** Three-digit plan number (PN)    001

**1c** Effective date of plan (mo., day, yr.)
December 31, 1943

**2a** Plan sponsor's name and address (employer, if for a single-employer plan) (Address should include room or suite no.)

COLGATE-PALMOLIVE COMPANY
300 PARK AVE
NEW YORK, NY 10022-7402

**2b** Employer Identification Number (EIN)
13-1815595

**2c** Sponsor's telephone number
212-310-2000

**2d** Business code (see instructions)
325600

Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, and to the best of my knowledge and belief, it is true, correct, and complete.

| | 10/13/2005 | MARTIN COLLINS |
|---|---|---|
| Signature of plan administrator | Date | Typed or printed name of individual signing as plan administrator |
| | 10/14/2005 | HECTOR EREZUMA |
| Signature of employer/plan sponsor/DFE | Date | Typed or printed name of individual signing as employer, plan sponsor or DFE as applicable |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.    v2.3    Form **5500** (2004)

**3a** Plan administrator's name and address (if same as plan sponsor, enter "Same")

EMPLOYEE RELATIONS COMMITTEE
300 PARK AVE
NEW YORK, NY 10022-7402

**3b** Administrator's EIN
13-2854931

**3c** Administrator's telephone number
212-310-2000

**4** If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report below:

**a** Sponsor's name

**b** EIN

**c** PN

**5** Preparer information (optional)    **a** Name (including firm name, if applicable) and address

**b** EIN

**c** Telephone no.

| | | | |
|---|---|---|---|
| **6** | Total number of participants at the beginning of the plan year | **6** | 9,816 |
| **7** | Number of participants as of the end of the plan year (welfare plans complete only lines **7a, 7b, 7c,** and **7d**) | | |
| **a** | Active participants | **a** | 4,335 |
| **b** | Retired or separated participants receiving benefits | **b** | 3,107 |
| **c** | Other retired or separated participants entitled to future benefits | **c** | 1,290 |
| **d** | Subtotal. Add lines **7a, 7b,** and **7c** | **d** | 8,732 |
| **e** | Deceased participants whose beneficiaries are receiving or are entitled to receive benefits | **e** | 981 |
| **f** | Total. Add lines **7d** and **7e** | **f** | 9,713 |
| **g** | Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) | **g** | |
| **h** | Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested | **h** | 23 |
| **i** | If any participant(s) separated from service with a deferred vested benefit, enter the number of separated participants required to be reported on a Schedule SSA (Form 5500) | **i** | 216 |

**8** Benefits provided under the plan (complete 8a through 8c, as applicable)

**a** ☒ Pension benefits (check this box if the plan provides pension benefits and enter the applicable pension feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

1A  1C  1G  1B  3H

**b** ☐ Welfare benefits (check this box if the plan provides welfare benefits and enter the applicable welfare feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

**9a** Plan funding arrangement (check all that apply)
- **(1)** ☒ Insurance
- **(2)** ☐ Section 412(i) insurance contracts
- **(3)** ☒ Trust
- **(4)** ☐ General assets of the sponsor

**9b** Plan benefit arrangement (check all that apply)
- **(1)** ☒ Insurance
- **(2)** ☐ Section 412(i) insurance contracts
- **(3)** ☒ Trust
- **(4)** ☐ General assets of the sponsor

**10** Schedules attached (Check all applicable boxes and, where indicated, enter the number attached. See instructions.)

**a** **Pension Benefit Schedules**
- **(1)** ☒ **R** (Retirement Plan Information)
- **(2)** ☒ ¹ **T** (Qualified Pension Plan Coverage Information)

  If a Schedule T is not attached because the plan is relying on coverage testing information for a prior year, enter the year
- **(3)** ☒ **B** (Actuarial Information)
- **(4)** ☐ **E** (ESOP Annual Information)
- **(5)** ☒ **SSA** (Separated Vested participant Information)

**b** **Financial Schedules**
- **(1)** ☒ **H** (Financial Information)
- **(2)** ☐ **I** (Financial Information – Small Plan)
- **(3)** ☒ ² **A** (Insurance Information)
- **(4)** ☒ **C** (Service Provider Information)
- **(5)** ☒ **D** (DFE/Participating Plan Information)
- **(6)** ☐ **G** (Financial Transaction Schedules)
- **(7)** ☒ ¹ **P** (Trust Fiduciary Information)

**Back to Top**

**EXHIBIT D**
**Excerpts from Colgate-Palmolive Company Employees'**
**Retirement Income Plan (Totally Restated through**
**December 31, 1994)**

# COLGATE-PALMOLIVE COMPANY

# EMPLOYEES' RETIREMENT INCOME PLAN

**(Totally Restated through December 31, 1994)**

## ARTICLE 3

### Accounts and Credits to Accounts

3.1    Accounts

Subject to the provisions of Article 2 (Membership), and effective as of the Applicable Date, an Account shall be established with respect to each Member. The Account shall consist of (i) an Opening Account as described in Section 3.3 (Establishment of Opening Account) and (ii) a Current Account. The Opening Account shall be credited with Interest Credits pursuant to Section 3.4 (Interest Credits). The Current Account shall be credited with Pay-based Credits and Interest Credits pursuant to Sections 3.2 (Pay-based Credits to Current Account) and 3.4 (Interest Credits).

Accounts shall be bookkeeping accounts, and neither the maintenance of, nor the crediting of amounts to, such Accounts shall be treated as (i) the allocation of assets of the Plan to, or a segregation of such assets in, any such Account or (ii) as otherwise creating a right in any person to receive specific assets of the Plan. Benefits provided under the Plan shall be paid from the Trust Fund in the amounts, in the forms and at the times provided under the terms of the Plan.

3.2    Pay-based Credits to Current Account

(a)    Subject to the requirements of Sections 2.4 (Reemployment) and 3.5 (Other Special Rules), as of the last day of each calendar month beginning on or after July 1, 1989, there shall be credited to the Current Account of each Member who is an Eligible Employee for such month Pay-based Credits in an amount equal to a percentage of the Member's Recognized Earnings for the month, determined as follows:

| Full Years of Vesting Service | Percent of Recognized Earnings per month up to and including 1/48 of the Social Security Wage Base | Percent of Recognized Earnings per month above 1/48 of the Social Security Wage Base |
|---|---|---|
| 0 through 9 | 2.50% | 3.75% |
| 10 through 14 | 3.00% | 4.50% |
| 15 through 19 | 4.00% | 6.00% |
| 20 through 24 | 5.35% | 8.00% |
| 25 and over | 7.50% | 11.25% |

19

The amount of the Pay-based Credit for the month shall be based upon the Member's "full years of Vesting Service" (as described in Section 3.2(b) below) as of the end of the calendar year in which such month occurs.

(b)     For purposes of this Section 3.2, a Member's "full years of Vesting Service" shall be determined by aggregating all of the Member's years and months of Vesting Service from his first employment commencement date to the end of the calendar year in which the determination of full years of Vesting Service is being made. Pay-based Credit for a full month of Vesting Service shall be given for the month in which a Member separates from employment.

3.3     <u>Establishment of Opening Account</u>

Effective as of the Applicable Date, and, subject to the provisions of Article 2 (Membership), an Opening Account, determined under Appendix E (Establishment of Opening Account Under Section 3.3), shall be established for each Member to reflect the value of benefits accrued under the Plan through such applicable date.

3.4     <u>Interest Credits</u>

Subject to the requirements of Sections 2.4 (Reemployment) and 3.5 (Other Special Rules), as of the end of each calendar month beginning on or after the Applicable Date, a Member's Opening Account and Current Account, as adjusted for Pay-based Credits under Section 3.2 (Pay-based Credits to Current Account) (and determined as of the beginning of each calendar month for which a credit under this Section 3.4 is to be made) shall each be automatically increased by an Interest Credit. Such Interest Credit shall be determined quarterly and shall be one-twelfth (1/12th) of an effective annual calendar year rate equal to the average six-month Treasury bill rate in effect during each quarter, determined from the second to last weekly auction of the prior calendar quarter, increased by two percent (2%) per annum. Such Interest Credits shall continue after a Member ceases to be an Employee, provided, however, that (a) no such adjustment shall be made with respect to a Member's Account for any month beginning on or after the Benefit Commencement Date of benefits attributable to such Account, payable in the form of an annuity, and (b) no such adjustment shall be made with respect to a Member's Account for any month beginning with the month in which benefits attributable to such Account are paid in the form of a single lump sum payment.

3.5     <u>Other Special Rules</u>

(a)     Except as provided in paragraph (b) below, in the case of a Member who is laid off or on a Company-approved leave of absence or any other absence without pay, Pay-based Credits pursuant to Section 3.2 (Pay-based Credits to Current Account) shall

**EXHIBIT E**
**Excerpts from Colgate-Palmolive Company Employees'**
**Retirement Income Plan As Amended and Restated,**
**Effective January 1, 2000**

**COLGATE-PALMOLIVE COMPANY**

**EMPLOYEES' RETIREMENT INCOME PLAN**

As Amended and Restated

Effective as of January 1, 2000

(Except where otherwise provided herein)

·As approved by IRS determination letter dated March 20, 2003

# Article 3 - Accounts and Credits to Accounts

### 3.1    Accounts

Subject to the provisions of Article 2 (Membership), and effective as of the Applicable Date, an Account shall be established with respect to each Member. The Account shall consist of (i) an Opening Account as described in Section 3.3 (Establishment of Opening Account) and (ii) a Current Account. The Opening Account shall be credited with Interest Credits pursuant to Section 3.4 (Interest Credits). The Current Account shall be credited with Pay-based Credits and Interest Credits pursuant to Sections 3.2 (Pay-based Credits to Current Account) and 3.4 (Interest Credits).

Accounts shall be bookkeeping accounts, and neither the maintenance of, nor the crediting of amounts to, such Accounts shall be treated as (i) the allocation of assets of the Plan to, or a segregation of such assets in, any such Account or (ii) as otherwise creating a right in any person to receive specific assets of the Plan. Benefits provided under the Plan shall be paid from the Trust Fund in the amounts, in the forms and at the times provided under the terms of the Plan.

### 3.2    Pay-based Credits to Current Account

(a)    Subject to the requirements of Sections 2.4 (Reemployment) and 3.5 (Other Special Rules), as of the last day of each calendar month beginning on or after July 1, 1989, there shall be credited to the Current Account of each Member who is an Eligible Employee for such month Pay-based Credits in an amount equal to a percentage of the Member's Recognized Earnings for the month, determined as follows:

| Full Years of Vesting Service | Percent of Recognized Earnings per month up to and including 1/48 of the Social Security Wage Base | Percent of Recognized Earnings per month above 1/48 of the Social Security Wage Base |
|---|---|---|
| 0 through 9 | 2.50% | 3.75% |
| 10 through 14 | 3.00% | 4.50% |
| 15 through 19 | 4.00% | 6.00% |
| 20 through 24 | 5.35% | 8.00% |
| 25 and over | 7.50% | 11.25% |

The amount of the Pay-based Credit for the month shall be based upon the Member's "full years of Vesting Service" (as described in Section 3.2(b) below) as of the end of the calendar year in which such month occurs.

(b)    For purposes of this Section 3.2, a Member's "full years of Vesting Service" shall be determined by aggregating all of the Member's years and months of Vesting Service from his first employment commencement date to the end of the calendar year in

19

which the determination of full years of Vesting Service is being made. Pay-based Credit for a full month of Vesting Service shall be given for the month in which a Member separates from employment.

### 3.3 Establishment of Opening Account

Effective as of the Applicable Date, and, subject to the provisions of Article 2 (Membership), an Opening Account, determined under Appendix E (Establishment of Opening Account Under Section 3.3), shall be established for each Member to reflect the value of benefits accrued under the Plan through such Applicable Date.

### 3.4 Interest Credits

Subject to the requirements of Sections 2.4 (Reemployment) and 3.5 (Other Special Rules), as of the end of each calendar month beginning on or after the Applicable Date, a Member's Opening Account and Current Account, as adjusted for Pay-based Credits under Section 3.2 (Pay-based Credits to Current Account) (and determined as of the beginning of each calendar month for which a credit under this Section 3.4 is to be made) shall each be automatically increased by an Interest Credit. Such Interest Credit shall be determined quarterly and shall be one-twelfth $(1/12^{th})$ of an effective annual calendar year rate equal to the average six-month Treasury bill rate in effect during each quarter, determined from the second to last weekly auction of the prior calendar quarter, increased by two percent (2%) per annum. Such Interest Credits shall continue after a Member ceases to be an Employee, provided, however, that (a) no such adjustment shall be made with respect to a Member's Account for any month beginning on or after the Benefit Commencement Date of benefits attributable to such Account, payable in the form of an annuity, and (b) no such adjustment shall be made with respect to a Member's Account for any month beginning with the month in which benefits attributable to such Account are paid in the form of a single lump sum payment. Notwithstanding the foregoing, Interest Credits for the 2002 Plan Year shall be at the rate of 5.5% for Members who will have completed 25 Years of Service with the Company by the last day of the Plan Year.

### 3.5 Other Special Rules

(a)  Except as provided in paragraph (b) below, in the case of a Member who is laid off or on a Company-approved leave of absence or any other absence without pay, Pay-based Credits pursuant to Section 3.2 (Pay-based Credits to Current Account) shall be suspended during such lay-off or leave of absence, but Interest Credits pursuant to Section 3.4 (Interest Credits) shall continue.

(b)  In the case of a Disabled Member, Pay-based Credits for any year pursuant to Section 3.2 (Pay-based Credits to Current Account), based on such Disabled Member's Recognized Earnings during the year in which his disability occurred, and Interest Credits pursuant to Section 3.4 (Interest Credits), shall continue until the earlier of his Benefit Commencement Date or the date he ceases to be a Disabled Member.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, et al.

Plaintiffs,

vs.

COLGATE-PALMOLIVE COMPANY, et al.,

Defendants.

Case No.  1:07-cv-01554-DFH-JMS

Judge David Frank Hamilton
Magistrate Judge Jane Magnus-Stinson

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION  COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    RELEVANT FACTUAL BACKGROUND ....................................................... 2

    A.    Overview Of Colgate-Palmolive And The Colgate-Palmolive Company Employees' Retirement Income Plan. ....................................................... 2

    B.    Plaintiff Byrd Received A Lump Sum Benefit From The Plan In 1996, And Plaintiff Nutter Received A Lump Sum Benefit From The Plan In 2000 ...................................................................................................... 4

    C.    Plaintiffs Jemmott, Vazquez, and Abelman Signed Releases Of Claims ............. 5

        1.    Plaintiff Jemmott Signed A Release Of Claims In June 2006 .................. 5

        2.    Plaintiff Vazquez Signed A Release Of Claims In November 2004 ........ 7

        3.    Plaintiff Abelman Signed A Release Of Claims In April 2005 ................ 8

    D.    Plaintiff Nelson-Manley Elected To Receive Her Lump Sum Benefit In September 2006. ....................................................................................... 9

    E.    Plaintiff Jemmott Received All The Plan Documents He Was Entitled To Receive Under ERISA. ......................................................................... 10

III.    ARGUMENT ..................................................................................................... 10

    A.    Legal Standard Governing Motions To Dismiss Under Federal Rule of Civil Procedure 12(b)(6). ........................................................................ 10

    B.    Byrd's and Nutter's Claims Are Time Barred ..................................... 11

        1.    Byrd's and Nutter's Lump Sum Claims Are Subject To The Four-Year Catch-All Statute Of Limitations In 28 U.S.C. § 1658. .................. 11

        2.    Byrd's and Nutter's Backloading Claims Are Subject To New York's Six-Year Statute Of Limitations. .................................. 17

        3.    The Claims of Byrd and Nutter Accrued, At The Latest, When They Received Their Lump Sums In 1996 and 2000, And Consequently Their Claims Are Time Barred. ........................... 19

        4.    The Doctrine Of Equitable Estoppel Cannot Salvage The Time-Barred Claims. .................................................................. 24

    C.    The Claims of Abelman, Vazquez, and Jemmott Are Barred By A Release ....... 26

    D.    Plaintiff Nelson-Manley's Lump Sum Claim Fails Because She Received The Lump Sum Distribution Of Her Plan Benefits After The Effective Date Of The Pension Protection Act Of 2006. .................................. 29

    E.    Plaintiff Jemmott Received All The Information He Was Entitled To Receive Under ERISA. ......................................................................... 30

1.    Jemmott Received All Documents To Which He Was Entitled To
      Receive Under 29 U.S.C. § 1024(b)(4)...................................................... 30

2.    Jemmott Received All The Information He Is Entitled To Receive
      Under 29 U.S.C. § 1025(a). .................................................................... 33

IV.   CONCLUSION................................................................................................ 35

# TABLE OF AUTHORITIES
## CASES

188 LLC v. Trinity Indus., Inc., 300 F.3d 730 (7th Cir. 2002).....................................34

Am. Nurses Ass'n v. State of Ill., 783 F.2d 716 (7th Cir. 1986)...................................11

Ames v. Am. Nat'l Can Co., 170 F.3d 751 (7th Cir. 1999) ....................................31, 32

Anderson v. Flexel, Inc., 47 F.3d 243 (7th Cir. 1995)..................................................33

Barnett v. Int'l Bus. Machines Corp., 885 F. Supp. 581 (S.D.N.Y. 1995)....................21

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)..............................................10

Berger v. AXA Network LLC, 459 F.3d 804 (7th Cir. 2006) ....................12, 14, 17, 18

In re: Brightpoint Inc. Sec. Litig., No. IP99-0870-C-H/G, 2001 WL 395752
    (S.D. Ind. Mar. 29, 2001).........................................................................................3

CWA/ITU Negotiations Pension Plan Board of Trustees, 107 F.3d at 130 (2d Cir. 1997)...........31

Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990) .............................24, 25

Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,
    201 F.3d 44 (2d Cir. 1999).........................................................................19, 20, 22

City of Rancho Palos Verdes, California v. Abrams, 544 U.S. 113 (2005) ..................14

Clark v. NBD Bank, N.A., 3 Fed. Appx. 500 (6th Cir. 2001) .......................................25

Clark v. Hewitt Assocs., LLC, No. 03-C-3114, 2004 WL 2584813 (N.D. Ill. Nov. 12, 2004).....33

Coker v. Trans World Airlines, Inc., 165 F.3d 579 (7th Cir. 1999) ..............................26

Cooper v. IBM Personal Pension Plan, 457 F.3d 636 (7th Cir. 2006); cert denied,
    127 S. Ct. 1143 (2007)..............................................................................................1

County of McHenry v. Ins. Co. of the West, 438 F.3d 813 (7th Cir. 2006) ..................11

Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62 (7th Cir. 1996)........20, 21, 22

Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869 (7th Cir. 1997) .........11

Doherty v. City of Chicago, 75 F.3d 318 (7th Cir. 1996)................................................3

Fair v. Int'l Flavors & Fragrances, Inc., 905 F.2d 1114 (7th Cir. 1990) ........................................27

Faircloth v. Lundy Packing Co., 91 F.3d 648 (4th Cir. 1996) ......................................................32

Fallin v. Commonwealth Industries, Inc. Cash Balance Plan, Civil Action
    No. 3:07-cv-00196-JGH, 2007 WL 3401833 (W.D. Ky. Nov. 9, 2007) ...........................23, 24

Feigl v. Ecolab, Inc., 280 F. Supp. 2d 846 (N.D. Ill. 2003) ...........................................................4

Ferree v. Life Ins. Co. of N. Am., No. 1:05-cv-2266-WSD, 2006 WL 2025012
    (N.D. Ga. July 17, 2006) ....................................................................................................32

Fields v. Wilber Law Firm, No. 03-1079, 2003 WL 23094867 (C.D. Ill. July 22, 2003) .............34

Gaines v. Guidant Corp., No. 1:03CV00892-SEB-WTL, 2004 WL 2538374
    (S.D. Ind. Nov. 8, 2004) ........................................................................................................3

Gieringer v. Silverman, 731 F.2d 1272 (7th Cir. 1984) ................................................................23

Glaze v. Sysco Corp., No. 1:05-cv-1546-DFH-WTL, 2007 WL 1701931
    (S.D. Ind. June 11, 2007) ....................................................................................................33

Graham County Soil & Water Conservation Dist. v. United States, 545 U.S. 409 (2005) .....20, 22

Halvorson v. Boy Scouts of Am., 215 F.3d 1326 (6th Cir. 2000) .................................................27

Hecker v. Deere & Co., 496 F. Supp. 2d 967 (W.D. Wis. 2007) ....................................................4

Hightshue v. AIG Life Ins. Co., 135 F.3d 1144 (7th Cir. 1998) ....................................................30

Homenick v. Nat'l Steel Corp., No. 95-CV-75310-DT, 1996 WL 426549
    (E.D. Mich. Feb. 22, 1996) ....................................................................................................6

Howell v. Motorola, No. 03-C 5044, 2005 WL 2420410 (N.D. Ill. Sept. 30, 2005)...............26, 27

Janowski v. Int'l Bhd. of Teamsters Local No. 710 Pension Fund,
    673 F.2d 931 (7th Cir. 1982) ..............................................................................................22

Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan, 713 F.2d 247 (7th Cir. 1983)...........11

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) ....................................................13, 16

Klosterman v. Western Gen. Mgmt., Inc., 32 F.3d 1119 (7th Cir. 1994) ......................................30

Kreutzer v. A.O. Smith Corp., 951 F.2d 739 (7th Cir. 1991) ........................................................33

Lachmund v. ADM Investor Servs., Inc., 191 F.3d 777 (7th Cir. 1999)......................................25

Laurenzano v. Blue Cross and Blue Shield of Mass., Inc.,
    134 F. Supp. 2d 189 (D. Mass. 2001) ......................................................................................23

Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162 (2007) ....................................22

Lefebvre v. Ivex Packaging Corp., No. 97-C 4411, 1998 WL 325258
    (N.D. Ill. June 11, 1998) ..........................................................................................................27

Lekas v. Briley, 405 F.3d 602 (7th Cir. 2005)..............................................................................11

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
    221 F.3d 1235 (11th Cir. 2000) ...............................................................................................17

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
    196 F. Supp. 2d 1260 (N.D. Ga. 2002).....................................................................................16

McDonald v. Pension Plan of the NYSA-ILA, 153 F. Supp. 2d 268 (S.D.N.Y. 2001) ...............32

McDonald v. Pension Plan of NYSA-ILA, 320 F.3d 151 (2d Cir. 2003) ....................................32

McGinty v. United States Dep't of Army, 900 F.2d 1114 (7th Cir. 1990) ...................................11

Michigan Bell Tele. Co. v. Strand, 26 F. Supp. 2d 993 (W.D. Mich. 1998) ..............................5, 6

Miles v. New York State Teamsters Conf. Pension Ret. Fund Employee Pension
    Benefit Plan, 698 F.2d 593 (2d Cir.), cert. denied, 464 U.S. 829 (1983) ...............................19

Nino v. Haynes Int'l Inc., No. 1:05-CV-0602-JDT-TAB,
    2005 WL 4889258 (S.D. Ind. Aug. 19, 2005) ....................................................................13, 17

Perry v. Sullivan, 207 F.3d 379 (7th Cir. 2000) ..........................................................................10

Rylewicz v. Beaton Servs., Ltd., 698 F. Supp. 1391 (N.D. Ill. 1988),
    aff'd, 888 F.2d 1175 (7th Cir. 1989) ........................................................................................11

Sahlie v. Nolen, 984 F. Supp. 1389 (M.D. Ala. 1997) ................................................................32

Schanzer v. Rutgers University, 934 F. Supp. 669 (D.N.J. 1996) ..................................................6

Small v. Chao, 398 F.3d 894 (7th Cir. 2005)................................................................................10

Smith v. City of Chicago Heights, 951 F.2d 834 (7th Cir. 1992)............................................24, 26

Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547 (7th Cir. 1996),
    cert. denied, 519 U.S. 1093 (1997) ......................................................................23

Taylor v. Visteon Corp., 149 Fed. Appx. 422 (6th Cir. 2005).................................6, 27

Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix,
    283 F.3d 877 (7th Cir. 2002) ..............................................................................26

Tolle v. Carroll Touch, Inc., 977 F.2d 1129 (7th Cir. 1992) .......................................14

United States v. Wood, 925 F.2d 1580 (7th Cir. 1991) ..................................................3

Union Pac. R.R. v. Beckham, 138 F.3d 325 (8th Cir. 1998),
    cert. denied, 525 U.S. 817 (1998) .......................................................................21

Van Hoey v. Baxter Int'l, Inc., No. 96-C-6231, 1997 WL 665855 (N.D. Ill. Oct. 21, 1997)........30

Yablon v. Stroock & Stroock & Lavan Ret. Plan and Trust,
    98 Fed. Appx. 55, 57 (2d Cir. 2004)....................................................................27

Wallace v. Kato, 127 S. Ct. 1091 (2007) ..............................................................20, 21

West v. AK Steel Corp., 484 F.3d 395 (6th Cir. 2007) .................................................30

Wheeler v. Pension Value Plan for Employees of Boeing, Inc., No. 06-cv-500-DRH,
    2007 WL 781908 (S.D. Ill. Mar. 13, 2007) ...........................................................4

White v. Sun Life Assurance Co. of Canada, 488 F.3d 240 (4th Cir. 2007) ..........20, 21

Wilczynski v. Lumbermens Mut. Casualty Co., 93 F.3d 397 (7th Cir. 1996).............21

Wright v. Assoc. Ins. Cos. Inc., 29 F.3d 1244 (7th Cir. 1994) .....................................31

Wright v. Heyne, 349 F.3d 321 (6th Cir. 2003)...........................................................23

Wroblewski v. City of Washburn, 965 F.2d 452 (7th Cir. 1992) ..................................11

## STATUTES

28 U.S.C. § 1658.........................................................................................................17

28 U.S.C. § 1658(a) ...............................................................................11, 12, 15, 17

29 U.S.C. § 1024(b)(4) .........................................................................................2, 30

29 U.S.C. § 1025(a) ..............................................................................................2, 33

29 U.S.C. § 1025(b) ................................................................................34

29 U.S.C. § 1053(a) ................................................................................17

29 U.S.C. § 1053(e) .......................................................................1, 15, 16

29 U.S.C. § 1053(f) ................................................................................30

29 U.S.C. § 1054(b)(1)(B) .................................................................1, 17

29 U.S.C. § 1055(g)(3) ...............................................................15, 16, 17

29 U.S.C. § 1140 ..............................................................................14, 18

29 U.S.C. § 1132 ................................................................................14

42 U.S.C. § 1981 ................................................................................13

## RULES AND REGULATIONS

58 Fed. Reg. 5128 ................................................................................16

60 Fed. Reg. 17216-01, 17217 ...............................................................15

Fed. R. Civ. P. 9 ................................................................................25

Fed. R. Civ. P. 12(b) ................................................................................34

Pub. L. No. 109-280, 120 Stat. 780 (2006)................................................2

## I.    <u>INTRODUCTION</u>

Plaintiffs Paul Abelman ("Abelman"), Valerie R. Nutter ("Nutter"), Warren Jemmott ("Jemmott"), Susan Byrd ("Byrd"), Adriana Vazquez ("Vazquez"), and Cora Nelson-Manley ("Nelson-Manley") (collectively, "Plaintiffs") are former employees of the Colgate-Palmolive Company ("Colgate" or the "Company").  (Am. Compl. ¶¶ 11-16).  Nearly all of the Plaintiffs were employed by Colgate in New York, as explained in more detail below.  Plaintiffs also participated in the Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan"), a cash balance plan under ERISA.[1]  (<u>Id.</u>, ¶ 28).

In this action, Plaintiffs assert three claims under ERISA against Colgate, the Plan, and the Employee Relations Committee (the "Committee").  <u>First</u>, Plaintiffs allege that the manner in which their lump sum pension benefits were calculated under the Plan violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (<u>Id.</u>, ¶¶ 32-36, 55 (Proposed Subclass A)).  Specifically, Plaintiffs claim that the Plan's terms only entitle them to their account balances, but that ERISA requires that they be paid a higher amount.  (<u>Id.</u>, ¶¶ 32-35, 38).  Plaintiffs purport to bring this claim on behalf of a class of Plan participants who received lump sum distributions allegedly calculated in the same manner.  (<u>Id.</u>, ¶¶ 55, 58-59).

<u>Second</u>, Plaintiffs allege that since the Plan's inception in 1989, "the Plan's basic formula" has violated the "anti-backloading" provisions of ERISA Section 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).  (<u>Id.</u>, ¶¶ 36(2), 45-53).  This claim too is brought on behalf of a class of Plan participants who accrued benefits when the Plan allegedly violated the anti-backloading rules, 29 U.S.C. § 1054(b)(1)(B).  (<u>Id.</u>, ¶¶ 55).

---

[1]    For an explanation of what cash balance plans are and how they work, <u>see</u> <u>Cooper v. IBM Personal Pension Plan</u>, 457 F.3d 636 (7th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1143 (2007).

<u>Third</u>, Plaintiff Jemmott asserts an individual claim, alleging that the Plan administrator failed to provide him with certain Plan information, in violation of ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4).  (<u>Id.</u>, ¶¶ 73-76).  He further alleges that the Plan administrator failed to provide him with a statement of his Plan benefit under ERISA Section 105(a), 29 U.S.C. § 1025(a).  (<u>Id.</u>)

Plaintiffs' claims fail as a matter of law for several reasons:

- Nutter's and Byrd's backloading and lump sum claims are time-barred because their claims accrued, at the latest, when they received their lump sum benefits in 2000 and 1996, respectively.

- The backloading and lump sum claims brought by Abelman, Vazquez, and Jemmott are barred by the release they executed at the time of their departure from Colgate, waiving statutory claims under ERISA.

- Nelson-Manley's lump sum claim is barred by the Pension Protection Act of 2006 ("PPA of 2006"), Pub. L. No. 109-280, 120 Stat. 780 (2006), because she elected to receive her benefits *after* the effective date of the PPA of 2006.[2]

- Jemmott's individual claims fail because he was provided all of the documents to which he was entitled as a matter of law.

These shortcomings are fatal to the claims of all Plaintiffs, with the exception of Nelson-Manley's backloading claim, which Defendants are not seeking to dismiss at this juncture.  The Amended Complaint should otherwise be dismissed with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Overview Of Colgate-Palmolive And The Colgate-Palmolive Company Employees' Retirement Income Plan.

Colgate is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world.  (<u>See</u> Excerpts from Colgate, SEC Form 10-K

---

[2]    Jemmott's lump sum claim is barred for this reason as well.

filed Feb. 23, 2007, Motion, Ex. B at 1).[3]  The Company is headquartered in New York and has

other facilities and employees located throughout the country.  (See Motion, Ex. B at 2, 6, 7).

Colgate sponsors the Plan, which is a defined benefit plan.  (Am. Compl. ¶¶ 17, 20).  The

Plan is administered in New York.  (See Excerpt from Plan's Form 5500 filed Oct. 2005, Motion,

Ex. C at 1).  The Committee is the Plan Administrator for the Plan.  (Id.).

Plaintiffs allege that the Plan's basic formula has violated the backloading and lump sum

provisions of ERISA since the Plan's inception in 1989.  (Am. Compl. ¶ 36(1)-36(2)).  The Plan's

basic formula (described in the Complaint) is set forth in the Plan and the Summary Plan

Description ("SPD") for the Plan.  (See Colgate-Palmolive Company Employees' Retirement

Income Plan, restated Through December 31, 1994, Sections 3.2(a) and 3.4, Motion, Ex. D;

Colgate-Palmolive Company Employees' Retirement Income Plan, effective January 1, 2000,

Sections 3.2(a) and 3.4, Motion, Ex. E; SPD dated November 1994 ("1994 SPD"), Motion,

Ex. F, pp. 9.9-9.10, 9.12; SPD, effective January 1, 2005 ("2005 SPD"), Motion, Ex. G, pp. 8-9).

Moreover, the SPD also notified participants that all lump sum payments would be equal to each

---

[3]     SEC filings and other public disclosures are appropriately considered under Rule 12(b)(6).  See
Doherty v. City of Chicago, 75 F.3d 318, 325 n.4 (7th Cir. 1996) (courts can take judicial notice of
matters of public record on motion to dismiss) (citation omitted); United States v. Wood, 925 F.2d
1580, 1582 (7th Cir. 1991) (courts may take into consideration documents incorporated by reference to
the pleadings and matters of public record); Gaines v. Guidant Corp., No. 1:03CV00892-SEB-WTL,
2004 WL 2538374, at *9 n.20 (S.D. Ind. Nov. 8, 2004) (taking judicial notice on motion to dismiss
under Rule 12(b)(6) of Medical Device Reports filed with the FDA); In re: Brightpoint Inc. Sec. Litig.,
No. IP99-0870-C-H/G, 2001 WL 395752, at *15 n.6 (S.D. Ind. Mar. 29, 2001) (courts may properly
consider the content of public documents filed with the SEC without converting a motion to dismiss to
a motion for summary judgment).

participant's account balance.[4]  (See 1994 SPD, p. 9.12 ("*Lump-Sum Option* – An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA [Personal Retirement Account] balance.") (emphasis in original), Motion, Ex. F; 2005 SPD, p. 11 ("**Lump-Sum Option** – This option pays the total value of your PRA balance in a single cash payment.") (emphasis in original), Motion, Ex. G.).

> **B.**  **Plaintiff Byrd Received A Lump Sum Benefit From The Plan In 1996, And Plaintiff Nutter Received A Lump Sum Benefit From The Plan In 2000.**

Byrd was employed by Colgate or one of its affiliates from 1991 to 1996, and she elected to take her benefits in the form of a lump sum.  (Am. Compl. ¶¶ 25, 34).  Nutter also was employed by Colgate or one of its affiliates from 1988 until 2000, and she also elected to take her pension benefits in the form of a lump sum.  (Id., ¶¶ 23, 32-33).  The lump sum payments to Byrd and Nutter were equal to their respective cash balance account balances.  (Id., ¶¶ 33-34, 55, 68).  Neither Plaintiff utilized the Plan's internal appeal process (after her initial benefit election) because:

> "the claims Plaintiffs raise are *statutory claims* involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan. . . . [E]ven if the exhaustion requirement is not categorically inapplicable here, it should be excused as futile. . . . . Futility is also demonstrated by the fact that the *legal standards* Defendants violated are *well-established.*

(Id., ¶¶ 67-69) (citations omitted, emphasis added).  They further allege that the Plan has violated these ERISA provisions since 1989.  (Id., ¶ 36(1) ("Since the Plan's adoption of a cash balance

---

[4]  Plaintiffs reference the Plan documents throughout their Complaint.  (Am. Compl. ¶¶ 29, 31, 63). Accordingly, the Plan documents are appropriately considered under Rule 12(b)(6).  See Hecker v. Deere & Co., 496 F. Supp. 2d 967, 972 (W.D. Wis. 2007) (considering plan documents and SPDs, where documents were "central to the claim"); Feigl v. Ecolab, Inc., 280 F. Supp. 2d 846, 849 n.2 (N.D. Ill. 2003) (considering SPD on motion to dismiss where SPD was referred to in the complaint and central to the claims); Wheeler v. Pension Value Plan for Employees of Boeing, Inc., No. 06-cv-500-DRH, 2007 WL 781908, at *1 n.1 (S.D. Ill. Mar. 13, 2007) (considering plan document on motion to dismiss).

formula in 1989, the Plan has failed to perform the ['whipsaw'] calculation …."))  Neither Byrd nor Nutter alleges any specific facts between the date they received their lump sums in 1996 and 2000, respectively, and the filing of the original Complaint on August 13, 2007.

At the time she elected to receive her lump sum benefit, Byrd lived in New York and elected to receive her benefit in New York.[5]  (See Declaration of Matthew Faranda ("Faranda Decl."), Motion, Ex. A, ¶ 2).  Nutter lived and worked in Ohio.  (See Am. Compl. ¶¶ 12, 33).

## C.    **Plaintiffs Jemmott, Vazquez, and Abelman Signed Releases Of Claims.**

Plaintiffs Vazquez, Abelman, and Jemmott each signed releases, waiving claims under ERISA.

### 1.    **Plaintiff Jemmott Signed A Release Of Claims In June 2006.**

Jemmott was employed by Colgate or one of its affiliates from 2002 to 2006.  (Am. Compl. ¶ 24).  Like several of the other Plaintiffs, during his employment with Colgate, Jemmott lived and worked in New York.  (See Faranda Decl., ¶ 3).  In June 2006, he signed a general release, in which he agreed to release Colgate and any of its affiliates from any claims, "known or unknown," relating to his employment with Colgate, including any claims arising under

---

[5]  Although Plaintiffs allege that Nutter and Abelman lived and worked in Ohio, they do not specifically allege where Byrd, Jemmott, Vazquez, or Nelson-Manley lived or worked, presumably because they did not want to admit that these four individuals lived and worked in New York.  This is relevant for reasons explained *infra* at Section III.B.2.  Although not specifically alleged in the Amended Complaint, this Court can consider these basic undisputed facts when considering Defendants' Motion to Dismiss.  See, e.g., Michigan Bell Tel. Co. v. Strand, 26 F. Supp. 2d 993, 996 (W.D. Mich. 1998) (court can consider facts "which are indisputable because they are capable of ready determination from resources whose accuracy cannot be reasonably questioned.") (citations omitted).

ERISA.[6]  (See Letter of Agreement and General Release, dated June 21, 2006, and signed by

Warren Jemmott on June 26, 2006 ("the Jemmott Release" or "the Release"), attached as Ex. 3 to

the Faranda Decl., Section 3(a)).  Specifically, the Jemmott Release stated:

> In consideration of (i) the Severance set forth in Paragraph 2 hereof and
> the Summary, and (ii) your eligibility to receive that Severance by
> working through June 30, 2006, to the fullest extent permitted by law you
> waive, release and forever discharge and covenant not to sue Colgate and
> each of its past and current subsidiaries, affiliates and each of its and their
> respective past and current directors, officers, trustees, employees,
> representatives and agents, and each of its and their respective successors
> and assigns (the "Colgate Releasees") from *any and all legally waiveable*
> *claims, grievances, agency or administrative charges, injuries,*
> *controversies, agreements, covenants, promises, debts, accounts, actions,*
> *causes of action, suits, sums of money, attorneys' fees, costs, damages,*
> *arbitrations, or demands, whatsoever, known or unknown, in law or in*
> *equity, by contract, tort or pursuant to federal, state or local statute,*
> *regulation, ordinance or common law, which you now have, ever have*
> *had, or may hereafter have, based upon or arising from any fact or set of*
> *facts, whether known or unknown to you, from the beginning of time until*
> *the date of the execution of this Agreement*, arising out of or relating in
> any way to your employment relationship with Colgate or the Colgate
> Releasees or other associations with Colgate or the Colgate Releasees or
> any termination thereof.  Without limiting the generality of the foregoing,
> this waiver, release, and discharge includes any claim or right based upon .
> . . *the Employee Retirement Income Security Act*, including all
> amendments thereto.

(Ex. 3, Section 3(a) (emphasis added)).  The Jemmott Release does not include any "claim or

right. . . . under any qualified pension or retirement plan."  (Ex. 3, Section 3(c)).  In exchange for

---

[6]   Courts have considered whether releases bar ERISA claims on motions to dismiss under Rule
12(b)(6).  See generally Homenick v. Nat'l Steel Corp., No. 95-CV-75310-DT, 1996 WL 426549 (E.D.
Mich. Feb. 22, 1996) (granting motion to dismiss  under 12(b)(6) where release barred ERISA claims);
Taylor v. Visteon Corp., 149 Fed. Appx. 422 (6th Cir. 2005) (affirming granting of motion to dismiss
under Rule 12(b)(6) where release barred ERISA claims).  Although the Release is not referenced in
the underlying complaint, this court can consider the unambiguous, undisputed terms of the Release on
the Defendants' Motion to Dismiss.  See, e.g., Michigan Bell Tel. Co., 26 F. Supp. 2d at 996 (court can
consider facts "which are indisputable because they are capable of ready determination from resources
whose accuracy cannot be reasonably questioned.") (citations omitted); Schanzer v. Rutgers
University, 934 F. Supp. 669, 671 n.1 (D.N.J. 1996) ("court may also consider . . . documents that are
indisputably authentic and attached to the papers of either party.") (citations omitted).

this release of claims, Jemmott received severance benefits, including severance pay, vacation pay, and other benefits, from the Company.  (See Ex. 3, Section 2).  Jemmott "freely, voluntarily and knowingly entered into this Agreement after due consideration."  (Ex. 3, Section 15(d)).  In addition, he promised that he would not "institute a claim, suit or action of any kind relating to [his] employment with Colgate. . . including, but not limited to, claims for past or future wages, salary, bonuses, benefits, or other forms of compensation, or any other claim specifically set forth in [the Release]."  (Ex. 3, Section 4).  He agreed that if he violated this Agreement, he would pay "all costs and expenses incurred by Colgate . . . in defending against the suit . . . including reasonable attorneys' fees and all further costs and fees."  (Ex. 3, Section 4).  Further, if he breached the Release, he would "forfeit the severance … and be subject to suit by the Company for damages and equitable relief relating to such breach."  (Ex. 3, Section 17(e)).

## 2.    Plaintiff Vazquez Signed A Release Of Claims In November 2004.

Vazquez was employed by Colgate or one of its affiliates from 1989 to 2005.  (Am. Compl. ¶ 26).  During her employment with Colgate, Vazquez lived and worked in New York.  (See Faranda Decl., ¶ 4).  In November 2004, she signed a general release, in which she agreed to release Colgate and its affiliates from any claims, "known or unknown," relating to her employment with Colgate, including any claims arising under ERISA.  (See Letter of Agreement and General Release, dated Nov. 2, 2004, and signed by Vazquez on Nov. 15, 2004 ("Vazquez Release" or "the Release"), attached as Ex. 4 to the Faranda Decl., Section 3(a)).  Her release is similar, but not identical, to the Jemmott Release.  Specifically, the Vazquez Release stated:

> In consideration of the transition arrangements set forth in Paragraph 2 hereof and the Summary, you waive, release and forever discharge Colgate and each of its past and current parents, subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from *any and all claims,*

> *grievances, agency or administrative charges, injuries, controversies,*
> *agreements, covenants, promises, debts, accounts, actions, causes of*
> *action, suits, sums of money, attorneys' fees, costs, damages, arbitrations,*
> *or demands, whatsoever, known or unknown, in law or in equity, by*
> *contract, tort or pursuant to federal, state or local statute, regulation,*
> *ordinance or common law, which you now have, ever have had, or may*
> *hereafter have, based upon or arising from any fact or set of facts,*
> *whether known or unknown to you, from the beginning of time until the*
> *effective date of this Agreement,* arising out of or relating in any way to
> your employment relationship with Colgate or the Colgate Releasees or
> other associations with Colgate or the Colgate Releasees or any
> termination thereof.  Without limiting the generality of the foregoing, this
> waiver, release, and discharge includes any claim or right based upon . . .
> *the Employee Retirement Income Security Act,* the Americans with
> Disabilities Act and the Family and Medical Leave Act, including all
> amendments thereto.

(Ex. 4, Section 3(a) (emphasis added)).  The Release does not include any "claim or right …

under any qualified pension or retirement plan."  (Ex. 4, Section 3(c)).  In exchange for this

release of claims, Vazquez received severance benefits, including transition pay, vacation pay,

and other benefits, from the Company.  (See Ex. 4, Section 2).  Vazquez "freely, voluntarily and

knowingly entered into this Agreement after due consideration."  (Ex. 4, Section 15(c)).

### 3.     Plaintiff Abelman Signed A Release Of Claims In April 2005.

Abelman was employed by Colgate or one of its affiliates from 1992 until 2005.  (Am.

Compl. ¶ 22).  During his employment with Colgate, Abelman lived and worked in New York

and Ohio, as well as in South Africa and Hong Kong.  (Faranda Decl., ¶ 5).  In April 2005, he

signed a general release, in which he agreed to release Colgate and any of its affiliates from any

claims, "known or unknown," relating to his employment with Colgate, including any claims

arising under ERISA.  (Letter of Agreement and General Release, dated March 8, 2005, and

signed by Abelman on April 18, 2005 ("Abelman Release" or "the Release"), attached as Ex. 5 to

the Faranda Decl., Section 3(a)).  Specifically, the Release stated:

> In consideration of the Severance set forth in Paragraph 2 hereof and the Summary, you waive, release and forever discharge Colgate and each of its past and current parents, subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from *any and all claims, grievances, agency or administrative charges, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, sums of money, attorneys' fees, costs, damages, arbitrations, or demands, whatsoever, known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which you now have, ever have had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to you, from the beginning of time until the effective date of this Agreement*, arising out of or relating in any way to your employment relationship with Colgate or the Colgate Releasees or other associations with Colgate or the Colgate Releasees or any termination thereof.  Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right based upon . . . *the Employee Retirement Income Security Act*.

(Ex. 5, Section 3(a) (emphasis added)).  The Release does not include any "claim or right … under any qualified pension or retirement plan."  (Ex. 5, Section 3(c)).  In exchange for this release of claims, Abelman received severance benefits, including severance pay, stock options, a lump sum payment, and other benefits, from the Company.  (See Ex. 5, Section 2).  Abelman "freely, voluntarily and knowingly entered into this Agreement after due consideration."  (Ex. 5, Section 14).

### D.    Plaintiff Nelson-Manley Elected To Receive Her Lump Sum Benefit In September 2006.

Nelson-Manley alleges that she was employed by Colgate from 1998 to 2006.  (Am. Compl. ¶ 27).  During her employment with Colgate, Nelson-Manley lived and worked in New York.  (See Faranda Decl. at ¶ 6).  On September 30, 2006, she elected to receive her Plan benefits in the form of a lump sum distribution.  (Am. Compl. ¶ 34; see also Lump Sum

Distribution Form Signed by Cora Nelson-Manley on Sep. 30, 2006, attached as Ex. 2 to the Faranda Decl.).

**E.    Plaintiff Jemmott Received All The Plan Documents He Was Entitled To Receive Under ERISA.**

On July 13, 2007, Jemmott sent the Plan Administrator a request for copies of certain documents relating to the Plan and a statement of his Plan benefit.  (Am. Compl. ¶ 73).  Jemmott alleges that he has not received a copy of the Plan's actuarial valuation report and "administrative manuals, guidelines, or similar administrative documents used by the Plan administrator to calculate his benefits," and that in response to his request, he was not provided with a statement of his Plan benefits.  (Id., ¶¶ 75-76).  As explained below, Jemmott was not entitled to any of these documents in response to his request.  Moreover, Jemmott does not allege that he suffered any prejudice as a result of the alleged failure to timely produce these documents, nor does he allege that Defendants' conduct was willful.

**III.    ARGUMENT**

**A.    Legal Standard Governing Motions To Dismiss Under Federal Rule of Civil Procedure 12(b)(6).**

A dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if, on the face of the complaint, a party's claims are barred by the statute of limitations.  Small v. Chao, 398 F.3d 894, 898 (7th Cir. 2005) (citing Perry v. Sullivan, 207 F.3d 379, 382 (7th Cir. 2000)).  In a recent opinion, Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court held that in order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must allege sufficient specific facts to state a claim "*that is plausible on its face*," not just one that is "conceivable."  Id. at 1974 (emphasis added).  As the Supreme Court emphasized, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, *this*

*basic deficiency should. . . be exposed at the point of minimum expenditure of time and money by*

*the parties and the court.*" Twombly, 127 S. Ct. at 1966 (emphasis added, citations and

quotations omitted, ellipsis in original).

In ruling on a motion to dismiss, a court must accept the complaint's factual allegations as

true. See County of McHenry v. Ins. Co. of the West, 438 F.3d 813, 817 (7th Cir. 2006).

Importantly, however, a plaintiff "may plead himself out of court by including factual allegations

which if true show his legal rights were not invaded." Lekas v. Briley, 405 F.3d 602, 613-14

(7th Cir. 2005) (quoting Am. Nurses Ass'n v. State of Illinois, 783 F.2d 716, 725 (7th Cir.

1986)); see also Wroblewski v. City of Washburn, 965 F.2d 452, 459 (7th Cir. 1992) ("We are

not required to ignore facts alleged in the complaint that undermine the plaintiff's claim.")

(citation omitted).  When the plaintiff's complaint demonstrates that it is untimely on its face, the

plaintiff must plead in the complaint facts demonstrating that the failure to timely file the claim

should be excused. McGinty v. United States Dept. of Army, 900 F.2d 1114, 1118 (7th Cir.

1990); Rylewicz v. Beaton Servs., Ltd., 698 F. Supp. 1391, 1398 (N.D. Ill. 1988), aff'd, 888 F.2d

1175 (7th Cir. 1989).

## B.    Byrd's and Nutter's Claims Are Time Barred.

### 1.    Byrd's and Nutter's Lump Sum Claims Are Subject To The Four-Year Catch-All Statute Of Limitations In 28 U.S.C. § 1658.

ERISA itself does not specify a statute of limitations for claims alleging statutory

violations.  See Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 873 (7th Cir.

1997) ("ERISA does not contain a statute of limitations for suits to recover benefits."); Jenkins v.

Local 705 Int'l Bhd. of Teamsters Pension Plan, 713 F.2d 247, 251 (7th Cir. 1983) (ERISA "does

not contain a statute of limitations for the bringing of civil actions.").  Accordingly, the Seventh

Circuit has explained that the first step in any statute of limitations analysis under ERISA is to

determine whether the federal four-year "catch-all limitations period" in 28 U.S.C. § 1658(a)

applies.  Berger v. AXA Network LLC, 459 F.3d 804, 808 (7th Cir. 2006) (considering whether

Section 1658 applies to ERISA claim; also noting that Section 1658 is a "catch-all limitations

period for federal causes of action that do not have their own limitations periods").

> Section 1658(a) provides that:

> > Except as otherwise provided by law, a civil action arising under an Act of
> > Congress enacted after the date of the enactment of this section [December
> > 1, 1990] may not be commenced later than 4 years after the cause of
> > action accrues.

28 U.S.C. § 1658(a).  Although ERISA was originally enacted in 1974, the Supreme Court in

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004), held that Section 1658 is not limited

to new statutes or new causes of action, but also includes amendments that change the rights or

obligations of the parties at issue.  Id. at 381.  The Supreme Court explained:

> > The House Report accompanying the final bill [enacting Section 1658]
> > confirms that Congress was keenly aware of the problems associated with
> > the practice of borrowing state statutes of limitations, and that a central
> > purpose of § 1658 was to minimize the occasions for that practice.

> > \* \* \*

> > Congress routinely creates new rights of action by amending existing
> > statutes, and "*[a]ltering statutory definitions, or adding new definitions of
> > terms previously undefined*, is a common way of amending statutes."
> > Nothing in the text or history of § 1658 supports an interpretation that
> > would limit its reach to entirely new sections of the United States Code.
> > An amendment to an existing statute is no less an "Act of Congress" than a
> > new, stand-alone statute.  What matters is the substantive effect of the
> > enactment – the creation of new rights of action and corresponding
> > liabilities – not the format in which it appears in the Code.

Id. at 380-81 (emphasis added) (citations omitted).  Section 1658 should be given expansive

application "that fills more rather than less of the void" caused by the prior absence of a federal

residual statute of limitations.  Id. at 380.  Thus, the central question in determining the

applicability of Section 1658 is whether "the plaintiff has alleged a violation of the relevant statute as it stood prior to December 1, 1990, or whether her claims necessarily depend on a subsequent amendment." Id. at 384.

In Jones, for example, the petitioners alleged harassment and wrongful termination claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981. Although the statute had been codified since 1866, the petitioners' particular claims were based on statutory definitions that Congress amended in 1991. See id. at 372. Therefore, the Supreme Court held that the petitioners' claims were governed by the four-year limitations period in Section 1658.

Similarly, in Nino v. Haynes Int'l Inc., No. 1:05-CV-0602-JDT-TAB, 2005 WL 4889258 (S.D. Ind. Aug. 19, 2005), this Court, per Judge Tinder, addressed the applicability of Section 1658 to a claim of employment discrimination based on military service. Although the Selective Training and Service Act had been codified since 1940, and replaced by the Veterans' Reemployment Rights Act ("VRRA") in 1974, "Congress replaced the VRRA with USERRA[7] [in 1994] to clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." Id. at *2. The Court held that the plaintiff's USERRA claim was subject to the four-year limitations period in Section 1658 because USERRA allowed plaintiffs to recover liquidated damages – damages not previously available under VRRA – thus changing the parties' potential rights and liabilities. The Court explained:

> USERRA materially changed the existing VRRA law by allowing liquidated damages, a relief that was not previously available to a plaintiff under VRRA. This change increased the rights available to the plaintiff, and the possible liabilities of the defendant. This important change requires the application of § 1658(a)'s four-year statute of limitations.

---

[7]  USERRA stands for the "Uniformed Services Employment and Reemployment Act of 1994." Nino, 2005 WL 4889258, at *1.

\* \* \*

> Perhaps [plaintiff] would have had a claim against [defendant] under the VRRA if the Act was still current law. However, the VRRA has been replaced by USERRA.

Id. at \*2, \*4 (emphasis added). See also City of Rancho Palos Verdes, California v. Abrams, 544 U.S. 113, 124 n.5 (2005) ("Since the claim here rests upon violation of the post-1990 [Telecommunications Act of 1996, which amended pre-existing law], § 1658 would seem to apply" because the "4-year limitations period applies to all claims made possible by a post-1990 congressional enactment.") (internal quotations, citations and brackets omitted).

Consistent with the Supreme Court's holding in Jones and this Court's opinion in Nino, ERISA claims that are based on a statutory provision that was amended after 1990 are subject to the four-year limitations period in Section 1658 if the amendment altered the parties' rights and obligations at issue. Thus, when the Seventh Circuit in AXA Network considered the applicability of Section 1658 to an ERISA claim, the court looked to whether the specific substantive provision at issue (29 U.S.C. § 1140) had been amended to alter the parties' rights and obligations.[8] See AXA Network, 459 F.3d at 808 (Section 1658(a) does not apply to claim alleging violation of ERISA Section 510, 29 U.S.C. § 1140, because "§ 510 of ERISA has not been amended since its original enactment in 1974").

Here, Jones, AXA Network, and Nino compel application of the federal four-year limitations period to the claims of Byrd and Nutter regarding their lump sum benefits. They

---

[8]   Claims alleging violations of 29 U.S.C. § 1140 (the provision at issue in AXA Network) – like the claims at issue in this case and all other ERISA claims – are enforced through ERISA's carefully crafted enforcement mechanism set forth in ERISA Section 502, 29 U.S.C. § 1132. See Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1133 (7th Cir. 1992) ("A Section 510 claim is made enforceable through Section 502(a)(3) and (e) of ERISA."). Of note, the Seventh Circuit in AXA Network looked to whether the substantive provision of ERISA at issue had been amended, not whether ERISA's enforcement provisions had been amended. See 459 F.3d at 808.

-14-

allege that the lump sums in their account balances were "less than the present value of their

respective accrued benefits *in violation of ERISA §§ 203(e) and 205(g)*."  (Am. Compl. ¶ 43)

(emphasis added).  Although these sections were originally codified before 1990, they both were

substantially amended in 1994 by the Retirement Protection Act of 1994 ("RPA of 1994"), which

is, of course, "an Act of Congress enacted after" 1990.  28 U.S.C. § 1658(a).  Moreover, the RPA

of 1994 amendments changed the method of calculating lump sum present values under ERISA

Sections 203(e) and 205(g)(3) – the very calculation that lies at the crux of Plaintiffs' claims

against the Plan.[9]

Specifically, in order to calculate a present value of an annuity benefit, one needs to

know the governing mortality assumptions (set forth on a "mortality table") and discount rate.[10]

Before the RPA of 1994, 29 U.S.C. §§ 1053(e) and 1055(g)(3) did not prescribe any particular

mortality table, but instead permitted plans to make their own mortality assumptions.  See

Valuation of Plan Distributions, 60 Fed. Reg. 17216-01, 17217 (Apr. 5, 1995) ("Prior to

amendments made by RPA '94, section 417(e)(3) restricted the interest rate to be used under a

plan to calculate the present value of a participant's benefit, but did not impose any restrictions

on the mortality table to be used for that purpose.").  In addition, before the RPA of 1994, the

Pension Benefit Guarantee Corporation ("PBGC") had discretion to set the "applicable interest

---

[9]   To Defendants' knowledge, no court has previously considered whether the four-year residual statute
of limitations in Section 1658 applies to alleged violations of 29 U.S.C. §§ 1053(e) and 1055(g)(3) as
those statutes were amended by the RPA of 1994.

[10]  See, e.g., Kim Clark, Career Spotlight: Cashing Out Your Pension, U.S. NEWS & WORLD REPORT,
Oct. 24, 2005, http://www.usnews.com/usnews/biztech/articles/051024/24career.htm (lump sums are
based on the average mortality for all men and women combined at each age, and are calculated by
adding up all the payments that should be made to a person based on his or her expected life span, then
calculating the present value of that stream of income).

rate" for discounting to present value and calculating lump sums.[11]  29 U.S.C. §§ 1053(e), 1055(g)(3) (1993 Ed.).  The RPA of 1994 changed both of these statutory requirements.  First, the RPA of 1994 defined for the first time an "applicable mortality table" and mandated that plans use that table.  29 U.S.C. §§ 1053(e), 1055(g)(3) (1995 Ed.).[12]  Thus, pursuant to the RPA of 1994, plans no longer had the right to make their own mortality assumptions.  Second, the RPA of 1994 changed the statutory definition of the "applicable interest rate" to mean the "annual rate of interest on 30-year Treasury securities."  29 U.S.C. §§ 1053(e), 1055(g)(3) (1995 Ed.).  As such, the PBGC no longer had the discretion to set the discount rate for calculating lump sums; but instead, the rate was set by the financial markets.

As reflected above, the substantive effect of the RPA of 1994 was to create new rights and corresponding liabilities with regard to the calculation of lump sum benefits by "altering statutory definitions [and] adding new definitions of terms previously undefined."  Jones, 541 U.S. at 381.  See also Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 196 F. Supp. 2d 1260, 1271 (N.D. Ga. 2002) ("Congress passed the Retirement Protection Act in 1994, which *substantially altered* the language of § 203(e) [29 U.S.C. § 1053(e)].") (emphasis

---

[11]  The PBGC apparently set its interest rates for valuation purposes by examining a survey of private sector annuity prices, using those prices as a starting point, and selecting a valuation interest rate (or rates) that when combined with the PBGC mortality table would accurately replicate the price structure of certain private annuity products.  See Valuation of Plan Benefits in Single-Employer Plans; Valuation of Plan Benefits and Plan Assets Following Mass Withdrawal, 58 Fed. Reg. 5128 (Jan. 19, 1993).

[12]  Section 1053(e) was amended to eliminate any substantive provisions regarding rates or mortality assumptions, but instead merely requires that any present value calculations be performed in accordance with the amended provisions of 29 U.S.C. § 1055(g)(3).

added).[13]  Accordingly, and because the claims of Byrd and Nutter are based on "an Act of

Congress enacted" after 1990, their claims with respect to their lump sum pension benefits are

subject to the four-year residual statute of limitations in 28 U.S.C. § 1658(a).[14]  See Jones, 541

U.S. at 381; AXA Network, 459 F.3d at 813; Nino, 2005 WL 4889258, at *2, *4.

> ### 2.    Byrd's and Nutter's Backloading Claims Are Subject To New York's Six-Year Statute Of Limitations.[15]

Byrd's and Nutter's backloading claims are based on 29 U.S.C. § 1054(b)(1)(B), which

has not been amended since 1990.  Accordingly, those claims are not subject to the federal four-

year residual statute of limitations in 28 U.S.C. § 1658.  Under these circumstances, the Seventh

Circuit's decision in AXA Network provides the governing rule.

---

[13]  In fact, the Eleventh Circuit in Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235 (11th Cir. 2000), cert. denied, 532 U.S. 967 (2001), held that a plaintiff who received his lump sum distribution from a cash balance plan before the RPA of 1994 could not represent plan participants who received their lump sum benefits after the RPA of 1994 because the law regarding the calculation of lump sum present values – and the rights and obligations of plans and plan participants with respect to lump sum calculations – had been materially altered by the RPA of 1994.  Id. at 1253.

[14]  Although Byrd and Nutter further allege the Plan violated ERISA § 203(a), this allegation is premised on the same statutory provisions, 29 U.S.C. §§ 1053(e) and 1055(g)(3).  They allege that the Plan's conduct "resulted in an impermissible forfeiture of benefits" that is prohibited by ERISA Section 203(a) (29 U.S.C § 1053(a)) and Internal Revenue Code ("IRC") Section 411(a), as implemented by Treasury Regulation § 1.411(a)-4 and 4T.  In fact, this allegation incorporates by reference all prior paragraphs of the Complaint.  (Am. Compl. ¶ 44).  They allege that because 29 U.S.C. §§ 1053(e) and 1055(g)(3) entitled them to certain benefits, the failure to pay those benefits also constituted an impermissible forfeiture under 29 U.S.C. § 1053(a).  Thus, their claim under ERISA Section 203(a) necessarily depends on the same statutory provisions (29 U.S.C. §§ 1053(e) and 1055(g)(3)) that were amended by the RPA of 1994, and also is subject to the four-year residual statute of limitations in 28 U.S.C. § 1658(a).

[15]  As explained above, the claims of Byrd and Nutter with respect to their lump sum pension benefits are based on statutes that were materially amended by the RPA of 1994, and, therefore, these claims are subject to the federal four-year limitations period in 28 U.S.C. § 1658.  Nevertheless, Defendants anticipate that Byrd and Nutter will attempt to avoid application of the four-year limitations period to try to save their claims.  Even assuming arguendo that their claims were not subject to the four-year limitations period in Section 1658, however, their lump sum claims would be barred by New York's six-year limitations period for the reasons described herein.

AXA Network involved plaintiffs who worked and resided in Illinois who alleged that they were denied certain benefits in Illinois because of a companywide change in benefit policy, in violation of ERISA Section 510, 29 U.S.C. § 1140. The court ruled that the plaintiffs' claims were not subject to the residual four-year limitations period in 28 U.S.C. § 1658 because "§ 510 of ERISA has not been amended since its original enactment in 1974." 459 F.3d at 808. Accordingly, the Seventh Circuit held that the plaintiffs' claims were subject to the most analogous statute of limitations of the "state *with the most significant relationship to the parties and to the transaction*." Id. at 813 (emphasis added). In determining that New York law – and not Illinois law – controlled, the court held:

> In our view, New York is the state with the most significant relationship to the parties and to the transaction. The occurrence at issue here was the corporate decision on the part of [defendant] to alter the criterion for determining whether an employee ought to be considered a full-time insurance salesman. That change was made by [defendant's] management in New York and documented by evidence and by witnesses in New York. Moreover, the decision was applicable to all [defendant]'s salesmen, not simply to those in Illinois. Although the named plaintiffs reside in Illinois, other members of the class reside in states other than Illinois. Thus, Illinois is simply a spoke rather than the hub of this lawsuit.

Id. The Seventh Circuit also recognized that were it to reach any other conclusion "this class action would be governed by a 'crazy quilt' of limitations periods and the federal interest in uniformity would be rendered nugatory." Id. at 814. The court concluded that applying New York law better served the federal policies at issue in furthering uniformity of treatment. Id.

Likewise, in this situation, New York has the "most significant relationship" to the claims alleged. As in AXA Network, Colgate is headquartered in New York, the Plan administrator is in New York, and the Plan is administered in New York. (Motion, Ex. B, at 6; Motion, Ex. C, at 1). Furthermore, most of the named Plaintiffs lived and worked in New York. (See Faranda

Decl., Motion, Ex. A, at ¶¶ 2-6).  Plaintiffs also allege that the same Plan terms and Plan

administration uniformly affected Plan participants throughout the country:

- "The computation of a participant's lump sum distribution and/or his or her current or then-current account balance, and his or her account is standardized in that the amount of the lump sum distribution and the amount of the account balance for each member of the Class and Subclasses was calculated in the same manner as described above."  (Am. Compl. ¶ 58).

- "Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan document and applicable provisions of ERISA."  (Id., ¶ 59).

Given these circumstances, as in <u>AXA Network</u>, Indiana (and Ohio, where this case was

originally filed) is "simply a spoke rather than the hub of [the] lawsuit," and New York's statute

of limitations controls.  459 F.3d at 813.  Indeed, New York is the only jurisdiction with which

(for purposes of this litigation) all the putative class members have any meaningful contact.

Under New York law, the statute of limitations for statutory ERISA claims is six years.  <u>See,</u>

<u>e.g.</u>, <u>Miles v. New York State Teamsters Conf. Pension Ret. Fund Employee Pension Benefit</u>

<u>Plan</u>, 698 F.2d 593, 598 (2d Cir.) (New York's six-year limitations period applies to ERISA

claims) (citing N.Y.C.P.L.R. § 213), <u>cert. denied</u>, 464 U.S. 829 (1983); <u>Carey v. Int'l Bhd. of</u>

<u>Elec. Workers Local 363 Pension Plan</u>, 201 F.3d 44, 46-47 (2d Cir. 1999) (same).

### 3.    The Claims of Byrd and Nutter Accrued, At The Latest, When They Received Their Lump Sums In 1996 and 2000, And Consequently Their Claims Are Time Barred.

The claims of Byrd and Nutter accrued at the latest in 1996 and 2000, respectively, when

they each received their lump sum benefit.  Accordingly, their ERISA claims are time barred

under the applicable statute of limitations, and must be dismissed.

-19-

ERISA does not specifically articulate when a cause of action accrues for statute of limitations purposes.  Rather, the accrual of ERISA claims is governed by "federal common law."  Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 65 (7th Cir. 1996) ("[W]e look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA."); White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 245 (4th Cir. 2007) (the accrual of ERISA claims is governed by "a uniform federal rule rather than the law of the states.").  As the Supreme Court has explained, under federal common law, "[i]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007) (internal quotations and citations omitted); Graham County Soil & Water Conservation Dist. v. United States, 545 U.S. 409, 418 (2005) (recognizing the standard federal rule "that the limitations period commences when the plaintiff has a complete and present cause of action") (internal quotations omitted).

Application of this principle to ERISA claims generally is straightforward.  Participants *generally* cannot file a court complaint under ERISA, i.e., they do not have a "complete and present cause of action," until they have exhausted their administrative remedies, either formally or informally.  In such circumstances, because participants cannot file a court complaint until they have exhausted their administrative remedies, the limitations period generally does not start running until the participants have exhausted.  See Daill, 100 F.3d at 66 (participant's cause of action accrued when fund denied participant's informal letters requesting benefits, and *not* when he later filed a formal application for benefits); Carey, 201 F.3d at 49 (cause of action under ERISA accrued when plan denied the participant's request for benefits, and not when his formal application for benefits was later denied).  The Fourth Circuit succinctly explained the principle:

-20-

"This means that the statute of limitations begins to run *at the moment when the plaintiff may seek judicial review, because ERISA plaintiffs must generally exhaust administrative remedies before seeking judicial relief*." White, 488 F.3d at 246 (emphasis added).

In this case, Byrd and Nutter allege that they were not required to exhaust their administrative remedies before they could "file suit and obtain relief." Wallace, 127 S. Ct. at 1095 (internal quotations and citations omitted). Specifically, Byrd and Nutter allege that they were *not* required to exhaust their internal administrative remedies under the Plan before seeking relief from this Court *because they allege statutory claims and they knew that exhaustion would be "futile*." (Am. Compl. ¶¶ 66-68 (emphasis added)). As the Seventh Circuit has explained, "In order to come under the futility exception to the exhaustion requirement, a plaintiff must show *that it is certain that [his] claim will be denied on appeal*, not merely that [he] doubts that an appeal will result in a different decision." Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 404 (7th Cir. 1996) (internal quotations and citations omitted, emphasis added). Thus, by alleging futility, Nutter and Byrd necessarily admit that they knew for "certain" that any appeal they could have filed under the Plan would have been denied. This is sufficient to start the running of the limitations period. See Daill, 100 F.3d at 66 (plaintiff's ERISA claim accrued when he knew that his claim was denied, even though formal application seeking pension benefits was filed years later). Their futility allegations entitle them to immediately file a court action *without exhausting their administrative remedies*. See Wilczynski, 93 F.3d at 404 (if exhaustion would be futile, participant has right to immediately file court action without exhausting administrative remedies); Barnett v. Int'l Bus. Machs. Corp., 885 F. Supp. 581, 591 (S.D.N.Y. 1995) (ERISA claim "accrues at the time at which it became futile to apply for benefits, because . . . at that time there was a *de facto* denial of [the beneficiary's] claim."); Union

-21-

Pac. R.R. v. Beckham, 138 F.3d 325, 332, n.4 (8th Cir. 1998) (claim accrues at the point at which exhaustion of remedies is claimed to have been futile), cert. denied, 525 U.S. 817 (1998).[16] Accordingly, Nutter and Byrd had a "complete and present cause of action," i.e., they were able to file suit in court, when they received their lump sums in 2000 and 1996, respectively, and their claims accrued, at the latest, at that time.[17] See Wallace, 127 S. Ct. at 1095; Graham County Soil & Water, 545 U.S. at 418; Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162, 2171 n.3 (2007) (plaintiff's "cause of action was fully formed and present at the time that the discriminatory employment actions were taken against her, at which point she could have, and should have sued").[18]

Under these circumstances, courts have held that plaintiffs' claims for lump sum benefits accrued when they received the lump sum distributions. As one court explained:

> *The lump sum distribution represents the actual injury to each class member and marks the time after which delay in seeking redress would be unreasonable*. . . . If a class member did not seek internal remedies, whether intentionally or not, this Court will *not* extend the statute of limitations by assuming that the class member exhausted his internal remedies some arbitrary number of days after the lump sum distribution.

---

[16] That is particularly true here. Because Plaintiffs allege statutory violations (see Am. Compl. ¶ 67), many of the policy reasons favoring exhaustion are lacking. Janowski v. Int'l Bhd. of Teamsters Local No. 710 Pension Fund, 673 F.2d 931, 935 (7th Cir. 1982), vacated on other grounds, 463 U.S. 1222 (1983).

[17] This is the only accrual date that gives any meaning to statutes of limitations, particularly because Plaintiffs refused to appeal the calculation of their lump sum distributions, and they do not allege a single concrete event that occurred between the date they received their lump sums and the date the Complaint was filed in 2007. See Daill, 100 F.3d at 67 (rejecting plaintiff's argument that would render the "limitations period . . . meaningless"); Carey, 201 F.3d at 49 (rejecting argument that claim accrued only upon the denial of his formal application for benefits where such a rule would render the "limitation period meaningless" because a plaintiff could sue "long after he initially pursued his claims with the plan" merely by "delaying his formal application for benefits").

[18] The Supreme Court in Ledbetter held that the plaintiff's cause of action accrued even though she did not know until much later that her male colleagues had received higher raises than she had received. 127 S.Ct. at 2174-77.

> Thus, *each class member's cause of action accrued when he received his lump sum distribution unless he sought internal remedies.*

Laurenzano v. Blue Cross and Blue Shield of Mass., Inc., 134 F. Supp. 2d 189, 210 (D. Mass. 2001) (emphasis added). Similarly, in Fallin v. Commonwealth Industries, Inc. Cash Balance Plan, Civil Action No. 3:07-cv-00196-JGH, 2007 WL 3401833 (W.D. Ky. Nov. 9, 2007), the court held that the plaintiffs' claims accrued when they received their lump sum distributions:

> Here, there can be no question that Plaintiffs received "clear and unequivocal" notice of the amount of benefits they would be receiving no later than when they received their lump-sum distributions. Any expectation of a sum greater than what was received was "repudiated" at that time, and could not reasonably have been maintained beyond that point. Plaintiffs received no further payments or identification that further payments would be forthcoming during the years between the lump-sum payments and the filing of this action. This Court finds it difficult to imagine how such a set of facts could constitute anything other than a "clear and unequivocal repudiation" of the "benefits" Plaintiffs now claim. Therefore, the Court finds that Plaintiffs' claims accrued at the time when each Plaintiff received his or her lump-sum payment.

2007 WL 3401833, at *3.[19]

The same is true here. Nutter applied for and received her lump sum benefit in 2000, and, at that point, she knew that her benefit was equal to her account balance. (Am. Compl. ¶¶ 32-33, 55, 68). Similarly, Byrd applied for and received her lump sum benefit in 1996. (Id., ¶ 34). Any expectation "of a sum greater than what was received was 'repudiated' at that time,

---

[19]   That Nutter or Byrd may claim that she did not know what the law required is irrelevant to the accrual of their claims for limitations purposes. See Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 551 (7th Cir. 1996) ("[D]iscovery of the original act of [the alleged wrongdoing], *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run.") (emphasis in original, citations omitted); cert. denied, 519 U.S. 1093 (1997); Gieringer v. Silverman, 731 F.2d 1272, 1277 (7th Cir. 1984) ("That the plaintiffs now claim that they did not discover the 'full enormity' of the alleged [wrongdoing] until later does not delay the beginning of the [statute of] limitations period.") (citations omitted); Wright v. Heyne, 349 F.3d 321, 330-31 (6th Cir. 2003) ("Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims . . . . If the statute [of limitations] were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney.").

and could not reasonably have been maintained beyond that point." <u>Fallin</u>, 2007 WL 3401833, at *3. Indeed, Nutter and Byrd allege that they never filed a claim because they knew that to do so would be futile, and the SPDs even informed Nutter and Byrd that if they elected a lump sum benefit, they would receive lump sums equal to their account balance. (<u>See</u> Ann. Compl. ¶ 68; 1994 SPD, Motion, Ex. F, p. 9.12; 2005 SPD, Motion, Ex. G, p. 11). Nevertheless, Byrd waited more than ten years after receiving her lump sum to bring this lawsuit; Nutter waited more than six years. Byrd and Nutter had a complete and present cause of action, at the latest, when they received their lump sums in 1996 and 2000, so their claims had accrued as of that time. Their claims are untimely and they should be dismissed.

### 4. The Doctrine Of Equitable Estoppel Cannot Salvage The Time-Barred Claims.

Plaintiffs make conclusory allegations of "misleading statements and omissions" in an apparent effort to equitably estop Defendants from making their statute of limitations defense. These vague allegations fail as a matter of law and cannot save their claims.

The doctrine of equitable estoppel comes into play "if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 451 (7th Cir. 1990) (citations omitted). Equitable estoppel is available under only "limited circumstances," and requires a "showing of the plaintiff's *actual and reasonable reliance* on the defendant's conduct or representations" and "evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct." <u>Smith v. City of Chicago Heights</u>, 951 F.2d 834, 840-41 (7th Cir. 1992) (emphasis added).

Here, Plaintiffs do not allege a single actual misleading statement in the Plan or the SPD (or any other communication) *about the limitations period for their claims*.[20]  Moreover, the Plan and SPD were readily available to Byrd and Nutter, and informed them of *every fact* regarding the Plan alleged in the Amended Complaint.  The SPD describes the benefit formula set forth in the Amended Complaint and notifies participants that lump sums will be equal to a participant's account balance.  (See Am. Compl. ¶¶ 29-30; 1994 SPD, Motion, Ex. F, pp. 9.9-9.10, 9.12; 2005 SPD, Motion, Ex. G, pp. 8-9, 11).  The SPD also notifies participants that they can obtain a copy of the Plan upon request, just as Jemmott did.  (See General Information section of SPD (effective November 1994 until January 2006), Motion, Exh. H, at 11.9; General Information section of SPD (effective January 2006), Motion, Exh. I, at 15).[21]  In other words, every fact pleaded in the Amended Complaint was known or available to Byrd and Nutter when they received their allegedly insufficient lump sum distributions in 1996 and 2000, respectively.  As such, there is no basis for excusing Nutter or Byrd from the limitations period.  See, e.g., Clark v. NBD Bank, N.A., 3 Fed. Appx. 500 (6th Cir. 2001) (rejecting efforts to toll the limitations period where plaintiff had "constructive notice" of the key plan terms because she was informed that she could "obtain copies of [the] plan at any time").

---

[20]  These allegations should be dismissed because they fail to plead fraud with particularity under Federal Rule of Civil Procedure 9.  See Fed. R. Civ. P. 9 ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge . . . may be averred generally."); Lachmund v. ADM Investor Servs., Inc., 191 F.3d 777, 782 (7th Cir. 1999) ("In order to survive dismissal on a Rule 12(b)(6) motion, the complaint must plead the who, what, when, and where of the alleged fraud.") (quotations and citations omitted).

[21]  Importantly, the "fraudulent concealment" required for equitable estoppel to toll the limitations period "denotes efforts by the defendant – above and beyond the wrongdoing upon which the plaintiff's claim is founded – to prevent the plaintiff from suing in time."  Cada, 920 F.2d at 451.  Indeed, the Court in Cada cautioned against "merg[ing] the substantive wrong with the tolling doctrine . . . [which] implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, 'We're firing you because of your age.'"  Id.

Moreover, Nutter's and Byrd's attempt to circumvent the statute of limitations fails because the Amended Complaint does not allege "actual and reasonable reliance" by Nutter or Byrd, as required to toll the limitations period. City of Chicago Heights, 951 F.2d at 840-41. As such, their claims are time barred and should be dismissed. See Coker v. Trans World Airlines, Inc., 165 F.3d 579, 586 (7th Cir. 1999) (holding that plaintiff's estoppel claim failed for lack of reasonable reliance where plaintiff could "not have reasonably relied on mailings from [the Defendant] in light of [the plaintiff's] easy access to convenient ways of ascertaining the true facts about her [benefits], [including copies of the SPD]"); Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix, 283 F.3d 877, 881-85 (7th Cir. 2002) (defense of equitable estoppel failed where defendant had not done "something that made the plaintiff reasonably believe that [it] had more time to sue").

### C.    The Claims of Abelman, Vazquez, and Jemmott Are Barred By A Release.

The ERISA claims of Abelman, Vazquez, and Jemmott should be dismissed. All three of these Plaintiffs signed releases, in which each agreed to release Colgate and any of its affiliates from any claims relating to their employment with Colgate, including any claims – whether "known or unknown" – arising under ERISA.[22] (See Ex. 3, Section 3(a); Ex. 4, Section 3(a); Ex. 5, Section 3(a)). In addition, Jemmott agreed that he would not "institute a claim, suit or action of any kind relating to [his] employment with Colgate . . . including, but not limited to, claims for past or future wages, salary, bonuses, benefits, or other forms of compensation, or any other

---

[22] To the extent that the claims of Abelman and Vezquez accrued as early as 1994, when they were informed that they would receive lump sums equal to their account balance, their claims are similarly time barred by the applicable statutes of limitations. See supra, Sections III.B.1 through III.B.4. Jemmott's claims are similarly time barred by the four-year limitations period. See supra, Section III.B.1.

claim specifically set forth in Paragraphs 3(a) and (b)."  (See Ex. 3, Section 4).  Accordingly, the claims against Colgate, the Plan, and the Committee should be dismissed.[23]

Importantly, the Releases bar Plaintiffs' claims against the Plan and the Committee even though they are not identified by name as released parties.  Abelman, Vazquez, and Jemmott each released claims against Colgate's "affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns."  See supra, at II.C.  In Howell, 2005 WL 2420410 at *6, the court held that a broad release that applies to a company and its affiliates bars claims against the plan sponsor, the company, members of the board of directors, and the committee that administered the plan.  The court reasoned:

> [n]owhere does ERISA mandate that the Plan be specifically named in an exculpatory agreement.  In this case, the broad language of the Release included all affiliates of [the company.]  [The plaintiff] would be hard-pressed to argue that any of the Defendants he named in this lawsuit were not affiliates, including the [committee which administered the Plan].

Id. at *7.  See also Fair v. Int'l Flavors & Fragrances, Inc., 905 F.2d 1114, 1115 (7th Cir. 1990) (rejecting plaintiff's argument that release applies only to company in its capacity as "employer" and not as "plan administrator"; court held that "the only reasonable construction of the Settlement Agreement . . . is that [the plaintiff] cannot bring legal action (relating to her employment relationship) against [the company] in any of its capacities"); Yablon v. Stroock & Stroock & Lavan Ret. Plan and Trust, 98 Fed. Appx. 55, 57 (2d Cir. 2004) (release of claims

---

[23]  Courts have recognized the validity of employee waivers of ERISA claims.  See, e.g., Taylor, 149 Fed. Appx. at 426 ("Like most legal claims, ERISA claims (including breach-of-fiduciary claims) may be settled."); Halvorson v. Boy Scouts of Am., 215 F.3d 1326 (6th Cir. 2000) (release barred ERISA claims); Howell v. Motorola, Inc., No. 03 C 5044, 2005 WL 2420410, at *3 (N.D. Ill. Sept. 30, 2005) ("[T]his Circuit's opinions weigh in favor of promoting settlement rights, even when that results in the waiver of ERISA claims.") (citations omitted); and Lefebvre v. Ivex Packaging Corp., No. 97 C 4411, 1998 WL 325258, at *5 (N.D. Ill. June 11, 1998) (dismissing ERISA claim for disability benefits where release specifically excluded such a claim).

against plan administrator also released claims against ERISA plan).  The same is true here; therefore, the Releases bar all of these Plaintiffs' claims.

Moreover, Jemmott separately agreed not to institute any lawsuit – without any limitation as to the defendant – "relating to [his] employment with Colgate  . . . [which] specifically includes, but is not limited to (i) claims for past or future wages, salary, bonuses, *benefits, or other forms of compensation*."  (See Ex. 3, Section 3(b) (emphasis added)).  This lawsuit – which seeks "benefits, or other forms of compensation" – falls squarely within the terms of his release and consequently should be dismissed.

Nor are Plaintiffs' claims subject to the Releases' exclusion for benefits "under any qualified pension or retirement plan."  (See Ex. 3, Section 3(c); Ex. 4, Section 3(c); Ex. 5, Section 3(c)).  As Plaintiffs readily admit in the Amended Complaint, their claims involve "statutory questions" rather than "interpretation of the Plan" because, they claim, the Plan violates various provisions of ERISA.  (Am. Compl. ¶ 67).  Plaintiffs allege that they did not utilize the Plan's internal appeal process because their claims are "statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan."  (Am. Compl. ¶ 67).  Plaintiffs even admit that they received all the benefits they were due under the Plan.  (Id., ¶¶ 64, 68, 69).  In addition, they allege that exhaustion would have been futile.  (Id., ¶¶ 66-68).  They further allege that "the legal standards Defendants violated are well-established yet Defendants have failed to conform the Plan or their conduct under it to the requirements of the law."  (Id., ¶ 69; see also id., ¶ 36(1) ("Since the Plan's adoption of a cash balance formula in 1989, the Plan has failed to perform the . . . 'whipsaw' calculation.")).

Defendants anticipate that Jemmott, Vazquez, and Abelman will argue that the Release does not bar their claims because they received their lump sum benefit *after* they signed the

Releases (or, in Jemmott's case, he has yet to elect to receive this benefit).  These arguments are unavailing.  With respect to Jemmott, his backloading claim necessarily challenges the benefits he earned during his employment with Colgate.  (See Am. Compl. ¶¶ 35-36(2)).  Although Jemmott has not yet elected to receive his lump sum benefits from the Plan, he claims that he has the right to challenge the legality of the Plan's lump sum provisions.  Whatever legal claim Jemmott has *now* to challenge the Plan's lump sum provisions is the same claim that Jemmott had *before* he executed the release of claims.  In addition, although Vazquez and Abelman allege that they received their lump sum benefit *after* they signed the Releases, their claims under ERISA accrued *before* they signed the Releases.  Abelman and Vazquez were notified of the Plan's lump sum provisions in the SPDs, and they – as Jemmott is doing now – could have sued to challenge the Plan's lump sum provisions before they executed the Releases.  Their backloading claims are barred by the Release because these alleged violations occurred during their employment, while they were accruing benefits, and before they signed the Releases.  (See Am. Compl. ¶ 36(2) ("Also since inception, the Plan's basic formula has been impermissibly backloaded."); ¶ 46 ("The Plan's operational noncompliance with the backloading rules became chronic and especially acute in 2002 due to falling interest rates.")).

According, the claims of Vazquez, Abelman, and Jemmott are barred and should be dismissed.

### D.    Plaintiff Nelson-Manley's Lump Sum Claim Fails Because She Received The Lump Sum Distribution Of Her Plan Benefits After The Effective Date Of The Pension Protection Act Of 2006.

Nelson-Manley elected to receive her Plan benefits in the form of a lump sum distribution on September 30, 2006.  (Am. Compl. ¶ 34; see also Lump Sum Distribution Form Signed by Cora Nelson-Manley on September 30, 2006, Faranda Decl., Ex. 2).  Critically, this was after the

effective date of the PPA of 2006, which amended ERISA to clarify that cash balance plans are legally permitted to pay the account balance.  See PPA § 701(a)(2), 29 U.S.C. § 1053(f).  As the Sixth Circuit explained in West v. AK Steel Corp., the PPA "resolves the whipsaw [lump sum] controversy for the future by amending ERISA and the IRC *to explicitly state that cash balance plans are not required to employ the whipsaw calculation when figuring lump-sum distributions*."  484 F.3d 395, 411 (6th Cir. 2007) (emphasis added).  Pursuant to the PPA of 2006, Nelson-Manley's lump sum claim fails as a matter of law.[24]

### E. Plaintiff Jemmott Received All The Information He Was Entitled To Receive Under ERISA.

Jemmott asserts an individual, non-class claim alleging that the Committee failed to provide him with certain Plan documents and information, in violation of 29 U.S.C. §§ 1024(b)(4) and 1025(a).[25]  (Am. Compl. ¶¶ 73-76).  This claim fails because Jemmott received all of the information he was entitled to receive under ERISA.

#### 1. Jemmott Received All Documents To Which He Was Entitled To Receive Under 29 U.S.C. § 1024(b)(4).

Under ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), the plan administrator is required to provide a participant, upon request, a copy of "the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  (emphasis added).  Importantly, the Seventh Circuit has adopted a narrow reading of the phrase

---

[24]  Jemmott also did not elect to receive his distribution before the effective date of the PPA.  Accordingly, his lump sum claim fails for this additional reason as well.

[25]  Jemmott's claims are vaguely worded; however, these claims lie only against the Plan administrator.  See Klosterman v. Western Gen. Mgmt., Inc., 32 F.3d 1119, 1122 (7th Cir. 1994) (a cause of action for violations of ERISA's disclosure requirements is proper only against the plan administrator); Van Hoey v. Baxter Int'l, Inc., No. 96 C 6231, 1997 WL 665855, at *7 (N.D. Ill. Oct. 21, 1997) (same); Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1149 (7th Cir. 1998) (claims administrator not proper party to sue for failure to provide SPD).

"other instruments under which the plan is established or operated."  In <u>Ames v. Am. Nat'l Can Co.</u>, 170 F.3d 751, 758-59 (7th Cir. 1999), the court rejected an interpretation of the catch-all provision as conferring "a right to disclosure of all documents that provide information about a plan and its benefits."  Rather, the catch-all provision includes only "formal legal documents governing a plan" or "those under which a plan is established or operated."  <u>Id.</u> (quotations and internal citations omitted).

In this case, Jemmott received the Plan, the SPD, and the latest annual report.  (<u>See</u> Faranda Decl, ¶ 11, and Ex. 7 attached thereto).  Jemmott also requested: (1) "actuarial valuations for the Plan"; (2) "a copy of any administrative manuals, guidelines, or similar administrative documents [that were] used to figure out [Jemmott's] benefit under the Plan"; and (3) "the Plan application for approval with the IRS and all responses received from the IRS."[26] (<u>See</u> Faranda Decl., at ¶ 10, and Ex. 6 attached thereto; Am. Compl. ¶ 68).  As a matter of law, however, Jemmott was not entitled to these documents.

First, Jemmott was not entitled to receive the actuarial valuations for the Plan under ERISA Section 104(b)(4).[27]  <u>See</u> <u>CWA/ITU Negotiations Pension Plan Bd. of Trs</u>, 107 F.3d at 144-46 ("Since actuarial valuation reports are not mentioned in § 104(b)(4), are not required to be produced within any of the documents [in §104(b)(4)], are not sources of data that plan administrators are required to use, and are not sources of the rights or obligations . . . we

---

[26]  Jemmott's letter to the Plan administrator, and the response to his letter, can be considered on this Motion to Dismiss because they were referenced in the Amended Complaint and are central to his claim.  <u>See</u> <u>Wright v. Associated Ins. Companies Inc.</u>, 29 F.3d 1244, 1248 (7th Cir. 1994) (holding that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim).

[27]  As described in <u>CWA/ITU Negotiations Pension Plan Bd. of Trs. v. Weinstein</u>, actuarial valuation reports "are more akin to status reports or advisory opinions than to the formal instruments governing a plan's operations."  107 F.3d 139, 145 (2d Cir. 1997).

conclude that actuarial valuation reports are not within the scope of § 104(b)(4)."); <u>Faircloth v. Lundy Packing Co.</u>, 91 F.3d 648, 655 (4th Cir. 1996) (administrator is not required to provide participants with copies of actuarial valuation reports under Section 104(b)(4)).

Second, Jemmott was not entitled to receive the Plan's application for approval with the IRS and all responses received from the IRS.  <u>See</u> <u>Faircloth</u>, 91 F.3d at 654 (IRS determination letters are not within the scope of Section 104(b)(4)); <u>McDonald v. Pension Plan of the NYSA-ILA</u>, 153 F. Supp. 2d 268, 289 (S.D.N.Y. 2001) ("IRS determination letters are not formal documents under which a plan is set up or managed" and are thus not within the scope of Section 104(b)(4)), <u>overruled on other grounds in</u> <u>McDonald v. Pension Plan of NYSA-ILA</u>, 320 F.3d 151 (2d. Cir. 2003); <u>Sahlie v. Nolen</u>, 984 F. Supp. 1389, 1402 (M.D. Ala. 1997) (Section 104(b)(4) cannot "reasonably be read to encompass" correspondence between the plan administrator and the Department of Labor and the IRS concerning the plan).

Third, the informal guidelines and other informal documents used to calculate his benefits (aside from the SPD and the Plan documents) that Jemmott requested are not "formal legal documents governing a plan."  <u>Ames</u>, 170 F.3d at 758-59; <u>Ferree v. Life Ins. Co. of N. Am.</u>, No. 1:05-cv-2266-WSD, 2006 WL 2025012, at *4 (N.D. Ga. July 17, 2006) (dismissing plaintiff's Section 104 claim and rejecting the plaintiff's implicit argument that "if a document is

ever used in connection with the adjudication of claims or a decision on claims for benefits, it is an instrument under which the plan is established or operated") (internal quotations omitted).[28]

Lastly, although Jemmott alleges that he received the Plan, SPD, and annual report approximately one month late, he does not allege that the Committee's failure to provide this information to him earlier was willful, nor does he allege any prejudice as a result of the one-month delay. Accordingly, Jemmott's ERISA Section 104 claim must be dismissed as a matter of law.[29]

### 2. Jemmott Received All The Information He Is Entitled To Receive Under 29 U.S.C. § 1025(a).

Jemmott further asserts that the Plan administrator failed to provide him with "a statement of his Plan benefit" under ERISA Section 105(a), 29 U.S.C. § 1025(a). (Am. Compl. ¶ 73). This claim must be dismissed because Jemmott received the requisite statements that he was entitled to receive.

Under 29 U.S.C. § 1025(a)(2)(A), Jemmott was entitled to a pension benefit statement indicating "the total benefits accrued, and . . . the nonforfeitable pension benefits, if any, which

---

[28]  Moreover, in order to trigger the statutory obligation to respond, a participant's request "must give the administrator clear notice of exactly what information is being sought." See Glaze v. Sysco Corp., No. 1:05-cv-1546-DFH-WTL, 2007 WL 1701931, at *6 (S.D. Ind. June 11, 2007) (citations omitted); Anderson v. Flexel, Inc., 47 F.3d 243, 248 (7th Cir. 1995) ("A request for documents under § 104(b)(4) necessitates a response from the plan administrator when it gives the administrator *clear notice* of what information the beneficiary desires.") (emphasis added). In this case, Jemmott's overbroad request for "any administrative manuals, guidelines, or similar administrative documents [that were] used to figure out [Jemmott's] benefit under the Plan" failed to give clear notice of exactly what documents he sought. Accordingly, his document request claim fails for this reason as well.

[29]  The Seventh Circuit has affirmed that procedural violations of ERISA entitle plaintiff to monetary relief "only in exceptional cases," where the employer acted in bad faith, concealed the benefit plan, or induced the employees to rely on a faulty plan summary. Kreutzer v. A.O. Smith Corp., 951 F. 2d 739, 743 (7th Cir. 1991) (citations omitted); Clark v. Hewitt Assocs., LLC, No. 03 C 3114, 2004 WL 2584813, at *2 (N.D. Ill. Nov. 12, 2004) ("Even if plaintiff could prove that defendants violated ERISA by failing to furnish a summary plan description . . . plaintiff would not be entitled to [relief]" where plaintiff failed to allege bad faith or concealment.).

have accrued, or the earliest date on which benefits will become nonforfeitable." However, 29 U.S.C. § 1025(b) provides that: "[i]n no case shall a participant or beneficiary of a plan be entitled to more than 1 statement . . . in any 12-month period." (emphasis added).

In this case, the Plan provided Jemmott with a pension benefit statement in September 2006 – ten months before he made his document request in July 2007. [30] (See Declaration of Susan Long, Motion, Ex. J, ¶ 3). Thus, at the time he made his document request, he was not entitled to another statement of his Plan benefits. Moreover, the Plan provided Jemmott another statement of his Plan benefits in September 2007. (Id., ¶ 4). Under a plain reading of the statute, Jemmott was entitled to nothing more, so his Section 105 claim for a statement of his Plan benefits fails as a matter of law.

---

[30] Although Jemmott alleges that he did not receive such a statement, this Court can consider the attached documents which are clear and indisputable, on this Motion to Dismiss. Jemmott should not be allowed to survive this motion through "artful pleading or by failing to attach relevant documents." 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002); Fields v. Wilber Law Firm, No. 03-1079, 2003 WL 23094867, at *3 (C.D. Ill. July 22, 2003) ("[T]his Court may consider relevant documents included in a motion to dismiss if it determines that those documents were strategically omitted from a plaintiff's complaint."). Nevertheless, Defendants acknowledge that this Court may convert this portion of Defendants' Motion into a motion for summary judgment under Fed. R. Civ. P. 12(b), and Defendants would not oppose such conversion.

IV.  **CONCLUSION**

For each of the foregoing reasons, all of the claims in the Plaintiffs' Amended Complaint, with the exception of the backloading claim of Cora Nelson-Manley, should be dismissed with prejudice.

BAKER & DANIELS LLP


Dated:  December 12, 2007              By:  /s/ Philip J. Gutwein II
                                           Ellen E. Boshkoff (#16365-49)
                                           Philip J. Gutwein II (#22986-53)
                                           300 North Meridian Street, Suite 2700
                                           Indianapolis, Indiana  46204
                                           Phone:  (317) 237-0300
                                           Fax:  (317) 237-1000
                                           Email:  ellen.boshkoff@bakerd.com
                                           Email:  philip.gutwein@bakerd.com

                                           Attorneys for Defendants Colgate-Palmolive
                                           Company, Colgate-Palmolive Company
                                           Employees' Retirement Income Plan, and the
                                           Employee Relations Committee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 12, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215
>
> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202

/s/ Philip J. Gutwein II

BDDB01 5023393v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, et. al., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1554- DFH-JMS |
| | ) | |
| COLGATE-PALMOLIVE COMPANY, et. al., | ) | |
| Defendant. | ) | |

### ENTRY REGARDING CASE MANAGEMENT PLAN AND
### INITIAL PRETRIAL CONFERENCE

This cause is set for an initial pretrial conference before Magistrate Judge Jane Magnus-Stinson in Room 256, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana, on **February 1, 2008 at 3:00 P.M.**, in order to discuss means to expedite the resolution of this dispute (including settlement).  Clients are not required to attend this conference.  This conference will **not** be vacated upon the approval of a case management plan in this case.

Due to the brevity of these initial pretrial conferences, counsel who reside outside of the Indianapolis area may participate by telephone.  If you wish to participate telephonically, please call (317) 229-3672 to so notify the magistrate judge's staff.  **In order to facilitate the pretrial conference, counsel carrying cellular phones and pda's  with photo abilities should be allowed to bring their phones to chambers.   Please bring this order with you to present at the security checkpoint, if necessary.**

Pursuant to Local Rule 16.1(a), the parties are hereby **ORDERED** to confer with one another at least 21 days prior to the initial pretrial conference and to prepare and jointly submit a case management plan no later than 14 days prior to the initial pretrial conference.  Pursuant to Local Rule 16.1(b), the case management plan shall comply with the instructions and form found on the Court's website at http://www.insd.uscourts.gov/Judges/CMP_info.htm.   The parties also

should be sure to include the Case Management Plan Summary, the instructions for which also may be accessed via the same web address.

Dated this __13th__ day of December 2007.

/s/    **Jane Magnus-Stinson**

JANE MAGNUS-STINSON, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

Copies to:[1]

William Henry Blessing
119 East Court Street
Suite 500
Cincinnati, OH 45202

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Eli  Gottesdiener
GOTTESDIENER LAW FIRM PLLC
498 7th Street
Brooklyn, NY 11215

---

[1]Please note that as of September 1, 2004, the failure to register for the court's electronic filing system constitutes a violation of Local Rule 5.7(b).  It is the responsibility of all counsel to comply with the local rule and register to use the court's electronic filing system so that they may receive notice of future entries from the court by email.  Information on how to register may be found on the court's website at http://www.insd.uscourts.gov/ecf_info.htm.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, et. al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1554- DFH-JMS |
| | ) | |
| COLGATE-PALMOLIVE COMPANY, et. al., | ) | |
| Defendants. | ) | |

**ENTRY FOR DECEMBER 17, 2007**
**MAGISTRATE JUDGE JANE MAGNUS-STINSON**

The initial pretrial conference set for February 1, 2008 is **VACATED**.

Copies to:

William Henry Blessing
119 East Court Street
Suite 500
Cincinnati, OH 45202

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Eli  Gottesdiener
GOTTESDIENER LAW FIRM PLLC
498 7th Street
Brooklyn, NY 11215

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL ABELMAN, et al.<br><br>               Plaintiffs,<br>     vs.<br><br><br>COLGATE-PALMOLIVE COMPANY, et al.,<br>               Defendants. | Case No.  1:07-cv-01554-DFH-JMS |

## MOTION FOR LEAVE TO APPEAR *PRO HAC VICE*

Pursuant to Local Rule 83.5(c) of the Rules of the United States District Court for the Southern District of Indiana, Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee ("Defendants") respectfully move the Court to grant Joseph J. Costello leave to appear for Defendants as co-counsel *pro hac vice* in this action, and in support of this motion state:

1.      Joseph J. Costello is an attorney with the law firm of Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, telephone (215) 963-5250, facsimile (215) 963-5001.

2.      Mr. Costello received his J.D. degree from Stanford Law School.

3.      Mr. Costello is licensed to practice in Pennsylvania.  Mr. Costello is admitted to practice before the United States Courts of Appeals for the Third Circuit.  Mr. Costello is also admitted to practice before the Eastern District of Pennsylvania. Mr. Costello is not currently under suspension or other disciplinary action with respect to the practice of law.

4.      Mr. Costello certifies that he will abide by the Seventh Circuit Standards of Professional Conduct and that a check will be submitted in payment of the administrative fees required to process this motion for admission *pro hac vice*.

WHEREFORE, Defendants respectfully request that the Court grant Joseph Costello leave to appear as co-counsel *pro hac vice* in this action on its behalf.

BAKER & DANIELS LLP


By:  /s/ Philip J. Gutwein II
     Ellen E. Boshkoff (#16365-49)
     Philip J. Gutwein II (#22986-53)
     300 North Meridian Street, Suite 2700
     Indianapolis, Indiana  46204
     Phone:  (317) 237-0300
     Fax:  (317) 237-1000
     Email:  ellen.boshkoff@bakerd.com
     Email:  philip.gutwein@bakerd.com

     Attorneys for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 21, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215

> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202

/s/ Philip J. Gutwein II

# CERTIFICATE OF GOOD STANDING

UNITED STATES OF AMERICA

EASTERN DISTRICT OF PENNSYLVANIA $\Big\}$

     I, Michael E. Kunz, Clerk of the United States District Court for the Eastern District of Pennsylvania,

     DO HEREBY CERTIFY That Joseph J. Costello , Bar # 44327, was duly admitted to practice in said Court on November 21, 1985, and is in good standing as a member of the bar of said Court.

DATED at Philadelphia, Pennsylvania

MICHAEL E. KUNZ
                Clerk of Court

on November 29, 2007.

             BY _____
     Aida Ayala,    Deputy Clerk



## Supreme Court of Pennsylvania

## CERTIFICATE OF GOOD STANDING

### *Joseph John Costello, Esq.*

#### DATE OF ADMISSION

#### *November 12, 1985*

The above named attorney was duly admitted to the bar of the Commonwealth of
Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated:  December 3, 2007**

Patricia A. Johnson
Chief Clerk

# *UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT CERTIFICATE OF GOOD STANDING*

I, MARCIA M. WALDRON, Clerk of the United States Court of

Appeals for the Third Circuit, DO HEREBY CERTIFY THAT

**Joseph J. Costello** was admitted to practice before this Court as an

attorney and counselor on **January 27, 1986** that he or she has

never been suspended nor disbarred, and is presently a member of

the bar of this Court in good standing.

I DO FURTHER CERTIFY that there are no grievances or

complaints pending before the Disciplinary Committee of this Court

against said attorney and counselor.

IN TESTIMONY WHEREOF, I have hereunto
subscribed my name and affixed the seal
of the said Court, at Philadelphia,
this 29th day of November 2007.

MARCIA M. WALDRON, Clerk
United States Court of Appeals
For the Third Circuit

By:  _____
Patricia S. Dodszuweit,
Chief Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL ABELMAN, et al. <br><br>                 Plaintiffs, <br> vs. <br><br> COLGATE-PALMOLIVE COMPANY, et al., <br>                 Defendants. | Case No.  1:07-cv-01554-DFH-JMS |

## MOTION FOR LEAVE TO APPEAR *PRO HAC VICE*

Pursuant to Local Rule 83.5(c) of the Rules of the United States District Court for the Southern District of Indiana, Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee ("Defendants") respectfully move the Court to grant Jeremy P. Blumenfeld leave to appear for Defendants as co-counsel *pro hac vice* in this action, and in support of this motion state:

1.      Jeremy P. Blumenfeld is an attorney with the law firm of Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, telephone (215) 963-5258, facsimile (215) 963-5001.

2.      Mr. Blumenfeld received his J.D. degree from University of Pennsylvania Law School in 1997.

3.      Mr. Blumenfeld is licensed to practice in Ohio and Pennsylvania. Mr. Blumenfeld is admitted to practice before the United States Courts of Appeals for the Third, Sixth and Seventh Circuits.  Mr. Blumenfeld is also admitted to practice before the United States District Courts for the Southern and Northern Districts of Ohio, the Eastern District of Michigan, the Eastern District of Pennsylvania, the Northern District of Illinois, the District of New Jersey,

and the District of Colorado.  Mr. Blumenfeld is not currently under suspension or other

disciplinary action with respect to the practice of law.

    4.  Mr. Blumenfeld certifies that he will abide by the Seventh Circuit

Standards of Professional Conduct and that a check will be submitted in payment of the

administrative fees required to process this motion for admission *pro hac vice*.

    WHEREFORE, Defendants respectfully request that the Court grant Jeremy P.

Blumenfeld leave to appear as co-counsel *pro hac vice* in this action on its behalf.

       BAKER & DANIELS LLP


      By: /s/ Philip J. Gutwein II
        Ellen E. Boshkoff (#16365-49)
        Philip J. Gutwein II (#22986-53)
        300 North Meridian Street, Suite 2700
        Indianapolis, Indiana  46204
        Phone:  (317) 237-0300
        Fax:  (317) 237-1000
        Email:  ellen.boshkoff@bakerd.com
        Email:  philip.gutwein@bakerd.com

        Attorneys for Defendants Colgate-Palmolive
        Company, Colgate-Palmolive Company
        Employees' Retirement Income Plan, and the
        Employee Relations Committee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 21, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215

> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202

/s/ Philip J. Gutwein II

# CERTIFICATE OF GOOD STANDING

UNITED STATES OF AMERICA

EASTERN DISTRICT OF PENNSYLVANIA }

 I, Michael E. Kunz, Clerk of the United States District Court for the Eastern District of Pennsylvania,

 DO HEREBY CERTIFY That Jeremy P. Blumenfeld , Bar # 85955, was duly admitted to practice in said Court on December 14, 2000, and is in good standing as a member of the bar of said Court.

DATED at Philadelphia, Pennsylvania

<u>MICHAEL E. KUNZ</u>
                                       Clerk of Court

on December 14, 2007.

BY _____

Aida Ayala,        Deputy Clerk



### Supreme Court of Pennsylvania

## CERTIFICATE OF GOOD STANDING

### *Jeremy P. Blumenfeld, Esq.*

#### DATE OF ADMISSION

#### *October 27, 2000*

The above named attorney was duly admitted to the bar of the Commonwealth of Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated:  November 19, 2007**

Patricia A. Johnson
Chief Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, et al.

                          Plaintiffs,
          vs.
                                              Case No.  1:07-cv-01554-DFH-JMS

COLGATE-PALMOLIVE COMPANY, et
al.,
                          Defendants.

## MOTION FOR LEAVE TO APPEAR *PRO HAC VICE*

          Pursuant to Local Rule 83.5(c) of the Rules of the United States District Court for

the Southern District of Indiana, Defendants Colgate-Palmolive Company, Colgate-Palmolive

Company Employees' Retirement Income Plan, and the Employee Relations Committee

("Defendants") respectfully move the Court to grant Theresa J. Chung leave to appear for

Defendants as co-counsel *pro hac vice* in this action, and in support of this motion state:

          1.     Theresa J. Chung is an attorney with the law firm of Morgan, Lewis &

Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, telephone (215) 963-5584,

facsimile (215) 963-5001.

          2.     Ms. Chung received her J.D. degree from Harvard Law School in 2002.

          3.     Ms. Chung is licensed to practice in the States of New Jersey,

Pennsylvania, California, and New York.  Ms. Chung also is admitted to practice before the

United States District Courts for the District of New Jersey and the Eastern District of

Pennsylvania.  Ms. Chung is not currently under suspension or other disciplinary action with

respect to the practice of law.

4.      Ms. Chung certifies that she will abide by the Seventh Circuit Standards of Professional Conduct and that a check will be submitted in payment of the administrative fees required to process this motion for admission *pro hac vice*.

WHEREFORE, Defendants respectfully request that the Court grant Theresa J. Chung leave to appear as co-counsel *pro hac vice* in this action on its behalf.

BAKER & DANIELS LLP

By:  /s/ Philip J. Gutwein II
     Ellen E. Boshkoff (#16365-49)
     Philip J. Gutwein II (#22986-53)
     300 North Meridian Street, Suite 2700
     Indianapolis, Indiana  46204
     Phone:  (317) 237-0300
     Fax:  (317) 237-1000
     Email:  ellen.boshkoff@bakerd.com
     Email:  philip.gutwein@bakerd.com

     Attorneys for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103

I hereby certify that on December 21, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 Seventh Street
Brooklyn, New York  11215

William Henry Blessing
119 East Court Street, Suite 500
Cincinnati, Ohio  45202

/s/ Philip J. Gutwein II

# CERTIFICATE OF GOOD STANDING

UNITED  STATES  OF  AMERICA

EASTERN  DISTRICT  OF  PENNSYLVANIA **}**

I, Michael E. Kunz, Clerk of the United States District Court for the Eastern District of Pennsylvania,

DO HEREBY CERTIFY That  Theresa J. Chung, Bar # 94681, was duly admitted to practice in said Court on  June 15, 2005, and is in good standing as a member of the bar of said Court.

DATED at Philadelphia, Pennsylvania

MICHAEL E. KUNZ
Clerk of Court

on  December 19, 2007.

BY _____

Aida Ayala,        Deputy Clerk



## Supreme Court of Pennsylvania

# CERTIFICATE OF GOOD STANDING

## *Theresa June-kyung Chung, Esq.*

### DATE OF ADMISSION

### *April 22, 2005*

The above named attorney was duly admitted to the bar of the Commonwealth of
Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated:  December 19, 2007**

Patricia A. Johnson
Chief Clerk

```
Court Name: Southern District of Indiana
Division: 1
Receipt Number: IP004922
Cashier ID: tanderso
Transaction Date: 12/26/2007
Payer Name: BAKER AND DANIELS
------------------------------------------
PRO HAC VICE
  For: BAKER AND DANIELS
  Case/Party: D-INS-1-07-LB-000001-001
  Amount:        $30.00
PRO HAC VICE
  For: BAKER AND DANIELS
  Case/Party: D-INS-1-07-LB-000001-001
  Amount:        $30.00
PRO HAC VICE
  For: BAKER AND DANIELS
  Case/Party: D-INS-1-07-LB-000001-001
  Amount:        $30.00
------------------------------------------
CHECK
  Check/Money Order Num: 404114
  Amt Tendered:  $90.00
------------------------------------------
Total Due:       $90.00
Total Tendered:  $90.00
Change Amt:      $0.00

BAKER & DANIELS

300 N. Meridian St., Suite 2700

Indianapolis, IN  46204


Pro Hac Vice fees for

Joseph J. Costello

Jeremy P. Blumenfeld and

Theresa J. Chung

1:07-cv-1554-DFH-JMS


"Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A $45.00 fee
will be charged for a returned
check."
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **PAUL ABELMAN**, *et al.* | ) |
| | ) |
| **On behalf of themselves and** | ) |
| **all others similarly situated** | ) |
| | ) |
| **Plaintiffs,** | )    **Cause No. 1:07-cv-01554-DFH-JMS** |
| | ) |
| **v.** | ) |
| | ) |
| **COLGATE-PALMOLIVE CO.**, *et al.* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**APPEARANCE**

Eli Gottesdiener of Gottesdiener Law Firm, PLLC hereby enters his appearance

for Plaintiffs Paul Abelman, Valerie R. Nutter, Warren Jemmott, Susan Byrd, Adriana

Vasquez, and Cora Nelson-Manley.

Respectfully submitted,

_____/s *Eli Gottesdiener*
Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
Phone:  (718) 788-1500
Fax:      (718) 788-1650
Email:    eli@gottesdienerlaw.com

*Counsel for Plaintiffs and the proposed Class*

### CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2007, I caused a copy of the foregoing to be

electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this

filing will be sent to Defendants, through below listed counsel, by operation of the

Court's electronic filing system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103
>
> Ellen E. Boshkoff
> Philip J. Gutwein II
> Baker & Daniels LLP
> 300 North Meridian Street, Suite 2700
> Indianapolis, Indiana  46204

> /s/*Eli Gottesdiener*
> Eli Gottesdiener

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, et al.

                                    Plaintiffs,

              vs.

                                                    Case No.  1:07-cv-01554-DFH-JMS

COLGATE-PALMOLIVE COMPANY, et
al.,
                                    Defendants.

### ORDER GRANTING MOTION TO APPEAR *PRO HAC VICE*

This cause has come before the Court upon the motion of Joseph J. Costello,

counsel for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees'

Retirement Income Plan, and the Employee Relations Committee, for permission to appear and

participate *pro hac vice* in the above-styled cause only.  Being fully advised, it is now

ORDERED that the motion be, and hereby is, GRANTED.

12/27/2007

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Email: ellen.boshkoff@bakerd.com
Email: philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Email: jcostello@morganlewis.com
Email: jblumenfeld@morganlewis.com
Email: tchung@morganlewis.com

Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 Seventh Street
Brooklyn, New York 11215

William Henry Blessing
119 East Court Street, Suite 500
Cincinnati, Ohio 45202

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL ABELMAN, et al.<br><br>                              Plaintiffs,<br><br>          vs.<br><br>COLGATE-PALMOLIVE COMPANY, et al.,<br><br>                              Defendants. | Case No.  1:07-cv-01554-DFH-JMS |

## <u>ORDER GRANTING MOTION TO APPEAR *PRO HAC VICE*</u>

This cause has come before the Court upon the motion of Theresa J. Chung, counsel for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee, for permission to appear and participate *pro hac vice* in the above-styled cause only.  Being fully advised, it is now ORDERED that the motion be, and hereby is, GRANTED.

12/27/2007

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Email: ellen.boshkoff@bakerd.com
Email: philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Email: jcostello@morganlewis.com
Email: jblumenfeld@morganlewis.com
Email: tchung@morganlewis.com

Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 Seventh Street
Brooklyn, New York 11215

William Henry Blessing
119 East Court Street, Suite 500
Cincinnati, Ohio 45202

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL ABELMAN, et al.

                          Plaintiffs,

          vs.

                                                    Case No.  1:07-cv-01554-DFH-JMS

COLGATE-PALMOLIVE COMPANY, et
al.,

                          Defendants.


## ORDER GRANTING MOTION TO APPEAR *PRO HAC VICE*

This cause has come before the Court upon the motion of Jeremy P. Blumenfeld,

counsel for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees'

Retirement Income Plan, and the Employee Relations Committee, for permission to appear and

participate *pro hac vice* in the above-styled cause only.  Being fully advised, it is now

ORDERED that the motion be, and hereby is, GRANTED.


12/27/2007

                                                    Jane Magnus-Stinson
                                                    United States Magistrate Judge
                                                    Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Email: ellen.boshkoff@bakerd.com
Email: philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Email: jcostello@morganlewis.com
Email: jblumenfeld@morganlewis.com
Email: tchung@morganlewis.com

Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 Seventh Street
Brooklyn, New York 11215

William Henry Blessing
119 East Court Street, Suite 500
Cincinnati, Ohio 45202

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **PAUL ABELMAN***, et al.* )| |
| ) | |
| **On behalf of themselves and** ) | |
| **All others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | **Cause No. 1:07-cv-01554-DFH-JMS** |
| ) | |
| **v.** ) | |
| ) | |
| **COLGATE-PALMOLIVE CO., et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ——————————————— ) | |

**JOINT MOTION FOR EXTENSION OF TIME**

Plaintiffs Paul Abelman, Valerie R. Nutter, Warren Jemmott, Susan Byrd,

Adriana Vasquez and Cora Nelson-Manley, and Defendants Colgate-Palmolive

Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and

Employee Relations Committee, by and through their respective counsel, move this Court

for the following:

1.     Plaintiffs hereby request an extension of time, to and including January

24, 2008, to respond to Defendants' Partial Motion to Dismiss.  Plaintiffs' Response is

currently due on December 31, 2007.  Defendants consent.

2.     Defendants hereby request an extension of time, to and including February

20, 2008, to reply to Plaintiffs' Response.  Plaintiffs consent.

WHEREFORE, Plaintiffs and Defendants request that the Court extend the

deadlines within which to file their respective responses to January 24, 2008 and

February 20, 2008.

Respectfully submitted,


/s/ Philip J. Gutwein II
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
BAKER & DANIELS LLP
300 N. Meridian Street Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215-963-5295/5258/5584
Facsimile: 877-432-9652
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com


*Admitted *Pro Hac Vice*

Attorneys for Defendants
Colgate-Palmolive Company, Colgate-Palmolive
Company Employees' Retirement Income Plan,
and the Employee Relations Committee

 /s/Eli Gottesdiener
Eli Gottesdiener
GOTTESDIENER LAW FIRM, PLLC
498 7th Street
Brooklyn, NY  11215-3613
Phone:  (718) 788-1500
Fax:    (718) 788-1650
Email:  eli@gottesdienerlaw.com

Attorney for Plaintiffs
and the Proposed Classes

2

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2007, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to Defendants, through below listed counsel, by operation of the Court's electronic filing system.

        Ellen E. Boshkoff
        Philip J. Gutwein II
        Baker & Daniels LLP
        300 North Meridian Street, Suite 2700
        Indianapolis, Indiana  46204

        Joseph J. Costello
        Jeremy P. Blumenfeld
        Theresa J. Chung
        Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA  19103

                /s/*Eli Gottesdiener*
                Eli Gottesdiener

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **PAUL ABELMAN**, *et al.* | ) |
| | ) |
| **On behalf of themselves and** | ) |
| **All others similarly situated,** | ) |
| | ) |
| **Plaintiffs,** | ) **Cause No. 1:07-cv-01554-DFH-JMS** |
| | ) |
| **v.** | ) |
| | ) |
| **COLGATE-PALMOLIVE CO., et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**ORDER**

Upon consideration of the parties' Joint Motion for Extension of Time and the entire record herein, it is hereby ORDERED that the Joint Motion is GRANTED.

It is further ORDERED that

Plaintiffs shall file their Response to Defendants' Partial Motion to Dismiss by January 24, 2008, and Defendants shall file their Reply by February 20, 2008.

01/02/2008

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

Copies to:  all counsel electronically registrered

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **PAUL ABELMAN**, *et al.* ) | |
| ) | |
| **On behalf of themselves and** ) | |
| **All others similarly situated** ) | |
| ) | |
| **Plaintiffs,** ) | **Cause No. 1:07-cv-01554-DFH-JMS** |
| ) | |
| **v.** ) | |
| ) | |
| **COLGATE-PALMOLIVE CO.**, *et al.* ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' MOTION TO TRANSFER VENUE AND TO STAY
PROCEEDINGS PENDING A RULING ON THIS MOTION**

On November 28, 2007, this putative ERISA class action (*Abelman*), originally

filed in the Southern District of Ohio in August 2007, was transferred here on

Defendants' motion brought under 28 U.S.C. § 1404(a) and the first-to-file rule.  *See*

Docs. 8, 35, *Abelman, et al.  v. Colgate-Palmolive Co., et. al.,* 2:07-cv-00793-MHW-

NMK (S.D. Ohio).  The ostensible reason for the transfer was so this case could be

consolidated with an earlier-filed, related case, *Caufield v. Colgate-Palmolive Company*

*Employees' Retirement Income Plan,* No. 4:07-CV-0016SEB-WGH (S.D. Ind) where a

fully-briefed motion to dismiss on statute of limitations grounds was (and is currently)

pending before Judge Barker, *see* Docs. 24-25, *Caufield*.  To the Ohio District Court,

Defendant Colgate-Palmolive Company ("Colgate") and Defendant Colgate-Palmolive

Company Employees' Retirement Income Plan (the "Plan") argued that *Abelman's*

transfer here was required "[t]o promote judicial efficiency, and to avoid duplication,

wasted resources, the risk of inconsistent decisions and unnecessary expense." Doc. 12 at 1-2, *Abelman* S.D. Ohio.

Yet once this case arrived in this District, the Plan (one of the two defendants here but the sole defendant in *Caufield*) seemed to forget all about that, telling Judge Barker in December that she should go ahead and rule on the Plan's limitations arguments, *see Caufield* Doc. 57 at 1, without awaiting the consolidation of this case with *Caufield,* even though Defendants have repeated in their motion to partially dismiss *Abelman* (Docs. 9-10) the exact limitations arguments asserted in *Caufield.*[1]

Proceeding in this fashion runs directly contrary to the purposes Defendants said they sought to promote by dislodging *Abelman* from Ohio in the first place. Defendants specifically argued that "allowing [*Abelman*] case to proceed in two different forums will undermine the interests of justice, waste the resources of the parties and the courts, and potentially result in inconsistent ad.judication of the same issues. **Allowing transfer to the Southern District of Indiana will avoid these problems** and permit this case to be litigated in the most efficient manner." Doc. 12 at 1-2, *Abelman* S.D. Ohio (emphasis added). But in urging a separate ruling by a separate judge on a separate motion to dismiss, Defendants risk re-creating the identical problems they said required *Abelman*'s transfer. Indeed, should Judge Barker happen to endorse one or more of the Plan's asserted grounds for having Mr. Caufield's case dismissed as time-barred, some of the *Abelman* Plaintiffs may find themselves time-barred, practically speaking, without ever being given the opportunity to be heard, something which Defendants promised the Ohio court would *not* happen if *Abelman* were transferred here. Doc. 21, *Abelman* S.D. Ohio

---

[1] In this case, Defendants have not moved to dismiss an anti-backloading claim raised by the *Abelman* plaintiffs that is not contained in the *Caufield* complaint. *See* Docs. 9-10, and Doc. 8 (Answer).

at 6 ("The only efficient use of the Court's and the parties' resources in this case is to transfer this case to Indiana without delay so that the court in the first-filed action can decide the merits of this case, with the benefit of briefing from **all** parties") (emphasis added).[2]

Plaintiffs were about to send this Court a Local Rule 16.2 statement of the action which they considered appropriate that this Court take in light of all this, when, because of a mailing Defendants misdirected to undersigned counsel, they learned that there is in fact a ***third*** related case, the existence of which the Plan failed to disclose to this Court in its Notice of Related Action (Doc. 6, referencing only *Caufield*) and failed to disclose to Judge Barker in re-urging her to issue dispositive rulings in *Caufield* alone.  This third related case *Proesel v. Colgate-Palmolive Company Employees' Retirement Income Plan, et al.,* 1:07-cv-09515-BSJ (S.D.N.Y.), was filed in the Southern District of New York and served on Defendants in late October 2007, and counsel for Defendants here and the Plan in *Caufield* entered their appearances in that case in **early November**.  *See* Ex. 1, *Proesel* Docket entries.  Rather than alert Judge Barker to the existence of the New York action and file a simple transfer motion modeled on the one they had filed in *Abelman,* Defendants sought and obtained an extension of time until **late January** to respond to the *Proesel* complaint.  *See* Doc. 7, *Proesel*.  Confronted last week with their failure to disclose the existence of the New York action to, in particular, Judge Barker, Defendants said they intend to move to transfer the New York case to Indiana but would not and/or could not explain why as of last week, two months after they entered their appearance in

---

[2] Filing a Notice of Related Action in this case (Doc. 6) and noting that for Judge Barker (Doc. 57, *Caufield*) does not change the fact that Defendants are currently seeking separate rulings by separate judges on identical issues in putative class actions with overlapping classes.

that action, they had not done so.[3]

"For the convenience of the parties and witnesses, and in the interest of justice," 28 U.S.C. § 1404(a), this case, and *Caufield,* should be consolidated with the New York action in New York. Colgate-Palmolive Co. is a New York corporation, headquartered in New York. Doc. 10 at 18, *Abelman* S.D. Ind. The Colgate Plan is administered in New York and the Plan Administrator located in New York. *Id.* The *Abelman* Plaintiffs did not want to be transferred from Ohio but now that they have been and it turns out there is a third case in New York, they submit New York is clearly the most convenient for consolidation of the three actions. As Defendants themselves pointed out:

> Virtually all of the documents that are potentially relevant to this action, including Plan documents and Plan records, are maintained in New York. The only documents that may not be in New York are documents in the possession of each class member, which documents likely are located throughout the country where each participant lives. Thus, relevant documents and other evidence will have to be transferred regardless of which court hears the case. Moreover, any potential witnesses in this matter are similarly located in New York. Those individuals with intimate knowledge of the Plan's administration work at Colgate's headquarters in New York.

Doc. at 11 n.8 (citations to supporting declaration omitted).[4]

In addition, Defendants are arguing in both *Caufield* and *Abelman* that New York law should be applied in determining whether many of the claims asserted should even be permitted to go forward in light of statute of limitations concerns because "New York has

---

[3] Defendants filed their transfer motion in *Abelman* in Ohio within a month of service of the complaint. An hour or two's word processing work, in essence, is all it would have taken to have transformed the *Abelman* motion to transfer into a *Proesel* motion to transfer which still has not been filed.

[4] Venue is clearly proper in the Southern District of New York, indeed for each of the four alternative bases for venue provided by ERISA. ERISA § 502(e), 29 U.S.C. 1132(e) ("may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found").

the 'most significant relationship' to the claims alleged."  Doc. 25 at 13, *Caufield*

(citation omitted); *see also id.* ("New York is the only jurisdiction with which (for

purposes of this litigation) all the putative class members have any meaningful contact");

Doc. 10 at 19, *Abelman,* S.D. Ind.  According to what Defendants themselves find

relevant, it is a mystery that Defendants themselves have not initiated transfer of *Abelman*

and *Caufield* to New York.[5]

Be that as it may, Defendants, through counsel, were unable and/or unwilling to

explain why, for well over 2 months, they failed to disclose the existence of the New

York action to this Court (Defendants omitted mention of this fact in their Notice of

Related Action, Doc. 6, a full month after filing their appearance in *Proesel*), and to

Judge Barker (in urging her to reach the merits of *Caufield* knowing there were two

overlapping cases then pending before two different judges and that Judge Barker would

otherwise have no way of knowing that).  The only thing Defendants could or would say

by way of explanation was that they did not disclose the existence of the New York

action is that they did not believe they had an affirmative ethical obligation to do so and

that they believe consolidation in Indiana is appropriate forum under the first-to-file rule.

Defendants' first-to-file contention lacks merit.  The fact that *Caufield* was filed

here first is irrelevant at this point or at least cannot overcome all of the compelling

§ 1404(a) reasons Defendants themselves placed into the record indicating consolidation

the three cases in New York is the best solution.  Indeed, many of the concerns reflected

in the first-filed rule center on the first-filing **plaintiff**, not defendants, and in this case,

Mr. Caufield, through counsel, has informed undersigned counsel that he would not

---

[5] Plaintiffs, who last week invited Defendants to file a transfer motion, are only filing the instant
motion because it appears that Defendants will not do so.

oppose consolidation of the three cases in New York.[6] Nor would a transfer of *Caufield* to New York risk any meaningful loss of judicial economy or efficiency because nothing of substance has yet happened in *Caufield*. The parties may have briefed the limitations issue but there is no indication that Judge Barker has set to work on resolving it. The parties certainly have not appeared before her for oral argument (or otherwise) and the backloading claims raised in *Abelman* which Defendants have not moved to dismiss are not even presented in *Caufield* though they are in the New York action.

### Conclusion

This action should be transferred to the Southern District of New York. Pending a ruling on this instant motion, the consolidation of all three cases and the filing of one consolidated and amended complaint, further proceedings on Defendants' motion for partial dismissal the *Abelman* complaint be stayed.[7]

---

[6] The same is true, not surprisingly, in the case of the plaintiff in *Proesel*: her counsel have informed undersigned counsel that they are not opposed to *Abelman* and *Caufield* being consolidated with their case in New York.

[7] Since Wednesday, January 9, 2008, when Plaintiffs first apprised Defendants of Plaintiffs' discovery of the existence of *Proesel*, Plaintiffs have been trying to ascertain Defendants' position as to whether they would oppose a brief stay of proceedings until the venue question is sorted out. Despite a reiterated request during a second lengthy telephone conversation on Friday, January 11, 2009, Plaintiffs have received no answer as of noon today, Tuesday, January 15, 2009. *Compare* Doc. 21 at 7, *Abelman* S.D. Ohio (Defendants arguing that "[a]llowing two separate courts to adjudicate the same legal issues on behalf of the same putative class is inefficient, impractical, and, in this case, wholly avoidable and unnecessary").

Dated:  January 15, 2008                    Respectfully submitted,


                                                 _____/s *Eli Gottesdiener*
                                                 Eli Gottesdiener
                                                 Gottesdiener Law Firm, PLLC
                                                 498 7th Street
                                                 Brooklyn, New York 11215
                                                 Phone:  (718) 788-1500
                                                 Fax:      (718) 788-1650
                                                 Email:   eli@gottesdienerlaw.com

                                                 *Counsel for Plaintiffs and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2008, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to Defendants, through below listed counsel, by operation of the Court's electronic filing system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103
>
> Ellen E. Boshkoff
> Philip J. Gutwein II
> Baker & Daniels LLP
> 300 North Meridian Street, Suite 2700
> Indianapolis, Indiana  46204

> /s/*Eli Gottesdiener*
> Eli Gottesdiener

**1:07-cv-09515-BSJ-KNF** Proesel et al v. Colgate-Palmolive Company Employee Retirement Income Plan et al
Barbara S. Jones, presiding
Kevin Nathaniel Fox, referral
**Date filed:** 10/24/2007
**Date of last filing:** 01/11/2008

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| -- | *Filed:*<br>*Entered:* | 10/24/2007<br>10/26/2007 | Summons Issued |
| | *Docket Text:* SUMMONS ISSUED as to Colgate-Palmolive Company Employee Retirement Income Plan, Colgate-Palmolive Company. (mbe) | | |
| -- | *Filed:*<br>*Entered:* | 10/24/2007<br>10/26/2007 | Case Designation |
| | *Docket Text:* Magistrate Judge Kevin N. Fox is so designated. (mbe) | | |
| -- | *Filed:*<br>*Entered:* | 10/24/2007<br>10/26/2007 | Case Designated ECF. |
| | *Docket Text:* Case Designated ECF. (mbe) | | |
| 1 | *Filed:*<br>*Entered:* | 10/24/2007<br>10/26/2007 | Complaint |
| | *Docket Text:* COMPLAINT against Colgate-Palmolive Company Employee Retirement Income Plan, Colgate-Palmolive Company. (Filing Fee $ 350.00, Receipt Number 631083)Document filed by Shari Proesel(individually), Shari Proesel(on behalf of all others similarly situated), Pamela Hosie(individually), Pamela Hosie(on behalf of all others similarly situated).(mbe) | | |
| 2 | *Filed & Entered:* | 11/05/2007 | Affidavit of Service Complaints |
| | *Docket Text:* AFFIDAVIT OF SERVICE. Colgate-Palmolive Company Employee Retirement Income Plan served on 10/31/2007, answer due 11/20/2007; Colgate-Palmolive Company served on 10/31/2007, answer due 11/20/2007. Service was accepted by Mr. Robert Martin, Executive Director. Document filed by Shari Proesel(individually); Shari Proesel(on behalf of all others similarly situated); Pamela Hosie(individually); Pamela Hosie(on behalf of all others similarly situated). (Pauk, Edgar) | | |
| 3 | *Filed & Entered:* | 11/08/2007 | Notice of Appearance |
| | *Docket Text:* NOTICE OF APPEARANCE by Theresa J. Chung on behalf of Colgate-Palmolive Company Employee Retirement Income Plan, Colgate-Palmolive Company (Chung, Theresa) | | |
| 4 | *Filed & Entered:* | 11/12/2007 | Notice (Other) |
| | *Docket Text:* NOTICE of Joint Stipulation Extending Defendants' Time To Answer, Move Or Otherwise Respond. Document filed by Colgate-Palmolive Company Employee Retirement Income Plan, Colgate-Palmolive Company. (Chung, Theresa) | | |
| | *Filed:* | 11/15/2007 | Note Regarding Deleted Document |

| | | | |
|---|---|---|---|
| | *Entered:* | 11/26/2007 | |
| -- | *Docket Text:* ***DELETED DOCUMENT. Deleted document number [5] STIPULATION. The document was incorrectly filed in this case. (dle) | | |
| | *Filed:* | 11/15/2007 | Stipulation and Order |
| | *Entered:* | 11/29/2007 | |
| 7 | *Docket Text:* JOINT STIPULATION AND ORDER EXTENDING DEFENDANTS' TIME TO ANSWER, MOVE OR OTHERWISE RESPOND this November 12, 2007, by and between the parties in this matter, that the time for Defendants to answer, move, or otherwise respond to the Plaintiffs' Complaint is extended 60 days, until Monday, January 21, 2008, in order to accommodate holiday schedules, as well as to allow for discussions by the parties about the issues in dispute. The original date to answer, move, or otherwise respond to the Plaintiffs' Complaint was November 20, 2007. The parties state that no prior extensions of time have been sought or granted. SO ORDERED. (Signed by Judge Barbara S. Jones on 11/28/2007) (jmi) | | |
| | *Filed & Entered:* | 11/16/2007 | Order Referring Case to Magistrate Judge |
| 6 | *Docket Text:* ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dipositive pretrial motions, and settlement). Referred to Magistrate Judge Kevin Nathaniel Fox. (Signed by Judge Barbara S. Jones on 11/13/07) (kco) | | |
| | *Filed:* | 12/27/2007 | Motion to Appear Pro Hac Vice |
| | *Entered:* | 01/08/2008 | |
| 9 | *Terminated:* | 01/11/2008 | |
| | *Docket Text:* MOTION for Joseph J. Costello to Appear Pro Hac Vice for defendants. Document filed by Colgate-Palmolive Company Employee Retirement Income Plan, Colgate-Palmolive Company.(db) | | |
| | *Filed:* | 12/27/2007 | Motion to Appear Pro Hac Vice |
| | *Entered:* | 01/08/2008 | |
| 10 | *Terminated:* | 01/11/2008 | |
| | *Docket Text:* MOTION for Jeremy P. Blumenfeld to Appear Pro Hac Vice for defendants. Document filed by Colgate-Palmolive Company Employee Retirement Income Plan, Colgate-Palmolive Company.(db) | | |
| | *Filed & Entered:* | 01/03/2008 | Notice (Other) |
| 8 | *Docket Text:* NOTICE of Notice of Dismissal Of Plaintiff Proesel. Document filed by Shari Proesel(individually), Shari Proesel(on behalf of all others similarly situated), Pamela Hosie (individually), Pamela Hosie(on behalf of all others similarly situated). (Pauk, Edgar) | | |
| | *Filed & Entered:* | 01/10/2008 | Cashiers Remark |
| -- | *Docket Text:* CASHIERS OFFICE REMARK on [9] Motion to Appear Pro Hac Vice, [10] Motion to Appear Pro Hac Vice in the amount of $50.00, paid on 12/27/2007, Receipt Number 636905. (jd) | | |
| | *Filed:* | 01/11/2008 | Transmission to Attorney Admissions Clerk |
| | *Entered:* | 01/14/2008 | |
| -- | *Docket Text:* Transmission to Attorney Admissions Clerk. Transmitted re: [12] Order on Motion to Appear Pro Hac Vice, [11] Order on Motion to Appear Pro Hac Vice, to the Attorney Admissions Clerk for updating of Attorney Information. (tro) | | |
| | *Filed:* | 01/11/2008 | Order on Motion to Appear Pro Hac Vice |
| | *Entered:* | 01/14/2008 | |

| | |
|---|---|
| 11 | *Docket Text:* ORDER GRANTING ADMISSION TO PRACTICE PRO HAC VICE [9] Motion for Joseph J. Costello to Appear Pro Hac Vice. Joseph J. Costello is admitted to practice pro hac vice as counsel for Colgate-Palmolive Employees' Retirement Income Plan and Colgate-Palmolive Company in the above captioned case. (Signed by Judge Barbara S. Jones on 1/11/08) (tro) |

| | | |
|---|---|---|
| *Filed:* | 01/11/2008 | Order on Motion to Appear Pro Hac Vice |
| *Entered:* | 01/14/2008 | |

| | |
|---|---|
| 12 | *Docket Text:* ORDER GRANTING ADMISSION TO PRACTICE PRO HAC VICE [10] Motion for Jeremy P. Blumenfeld to Appear Pro Hac Vice. Jeremy P. Blumenfeld is admitted to practice pro hac vice as counsel for Colgate-Palmolive Employees' Retirement Income PLan and Colgate-Palmolive Company in the above captioned case. (Signed by Judge Barbara S. Jones on 1/11/08) (tro) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/15/2008 11:12:44 | | |
| **PACER Login:** | go0074 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:07-cv-09515-BSJ-KNF |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

PAUL ABELMAN, et al.

                            Plaintiffs,

          vs.

COLGATE-PALMOLIVE COMPANY, et al.,

                         Defendants.

Case No.  07-cv-01554-DFH-JMS

Judge David Frank Hamilton
Magistrate Judge Jane Magnus-Stinson

## DEFENDANT'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1(a) and Local Rule 7.2, Defendant

Employee Relations Committee certifies that it has no parent corporations and that no publicly-

held company or investment fund holds a 10% or more ownership interest in the Employee

Relations Committee.

                                 Respectfully submitted,

Dated:  January 16, 2008          MORGAN, LEWIS & BOCKIUS LLP

                                 By:    /s/ Theresa J. Chung
                                 Joseph J. Costello*
                                 Jeremy P. Blumenfeld*
                                 Theresa J. Chung*
                                 1701 Market Street
                               Philadelphia, PA 19103
                               Telephone:  (215) 963-5295/5258/5584
                               Fax:  (215) 963-5001
                               jcostello@morganlewis.com
                               jblumenfeld@morganlewis.com
                               tchung@morganlewis.com

                               Baker & Daniels LLP
                               Ellen E. Boshkoff (#16365-49)
                               Philip J. Gutwein II (#22986-53)
                               300 N. Meridian Street
                               Suite 2700

Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendant Colgate-Palmolive
Company, Colgate-Palmolive Company
Employees' Retirement Income Plan, and the
Employee Relations Committee

*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2008, a copy of the foregoing Corporate Disclosure Statement was filed electronically and can be accessed through the Court's electronic filing system. Notice of this filing also will be sent to the following parties by first class U.S. mail, postage prepaid, and properly addressed to:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs


/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5584
Fax: (215) 963-5001
tchung@morganlewis.com
*Admitted Pro Hac Vice*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, and | ) | |
| VALERIE R. NUTTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:07-cv-01554-DFH-JMS |
| | ) | |
| COLGATE-PALMOLIVE COMPANY, and | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF RELATED ACTION</u>

Pursuant to S.D. Ind. L.R. 40.1(d), Defendants Colgate-Palmolive Company, the

Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations

Committee hereby notify this Court that this case is related to <u>Caufield v. Colgate-Palmolive</u>

<u>Company Employees' Retirement Income Plan</u>, No. 4:07-cv-0016-SEB-WGH, presently pending

before Judge Sarah Evans Barker.

The <u>Caufield</u> action was filed on February 12, 2007.  (See <u>Caufield</u> Docket

No. 1).  Both this lawsuit and the <u>Caufield</u> lawsuit arise out of the same transactions or

occurrences.  Both lawsuits allege that the Colgate-Palmolive Company Employees' Retirement

Income Plan ("Plan") improperly calculated lump sum benefits under a "whipsaw" theory.  (Am.

Compl. ¶¶ 32-36, 38, 42-43; <u>Caufield</u> Compl. ¶¶ 9-11, 22-23).  Likewise, both lawsuits purport

to bring such claims on behalf of a putative nation-wide class of individuals who received lump

sum distributions from the Plan.  Indeed, the plaintiffs in this case are members of the putative

class in the <u>Caufield</u> case, and Mr. Caufield is a member of the putative class in this case.

This action was originally filed in the United States District Court for the Southern District of Ohio.  Defendants moved to transfer this case to this District pursuant to the "first-to-file" rule and 28 U.S.C. § 1404(a).  That motion was granted and, on November 8, 2007, this case was transferred to this District.  (See Docket Nos. 1 and 2).

For the reasons described above, Defendants submit that judicial economy would be served by placing this related case before the same court before which Caufield is pending.  Accordingly, Defendants request that this case be transferred to Judge Barker pursuant to S.D. Ind. L.R. 40.1(f).

BAKER & DANIELS LLP

Dated:  December 6, 2007

By: /s/ Philip J. Gutwein II
    Ellen E. Boshkoff (#16365-49)
    Philip J. Gutwein II (#22986-53)
    300 North Meridian Street, Suite 2700
    Indianapolis, Indiana  46204
    Phone:  (317) 237-0300
    Fax:  (317) 237-1000
    Email:  ellen.boshkoff@bakerd.com
    Email:  philip.gutwein@bakerd.com

    Attorneys for Defendants Colgate-Palmolive
    Company, Colgate-Palmolive Company
    Employees' Retirement Income Plan, and the
    Employee Relations Committee

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2007, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> MORGAN LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103

I hereby certify that on December 6, 2007, a copy of the foregoing was served

upon the following, by first-class United States mail, postage prepaid:

> Eli Gottesdiener
> GOTTESDIENER LAW FIRM, PLLC
> 498 Seventh Street
> Brooklyn, New York  11215

> William Henry Blessing
> 119 East Court Street, Suite 500
> Cincinnati, Ohio  45202

> Felix Wade
> Eve Melinda Ellinger
> SCHOTTENSTEIN ZOX & DUNN
> 250 West Street
> Columbus, Ohio  43215

> /s/ Philip J. Gutwein II

# EXHIBIT B

**IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARI PROESEL AND PAMELA HOSIE, et al. | |
| Plaintiffs, | |
| vs. | Case No.  07-CIV-9515-BSJ-KNF |
| COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, COLGATE-PALMOLIVE COMPANY, as Plan Administrator, | Judge Barbara S. Jones Magistrate Judge Kevin N. Fox |
| Defendants. | |

**DEFENDANTS' NOTICE OF MOTION AND MOTION
FOR TRANSFER OF VENUE TO THE SOUTHERN DISTRICT OF INDIANA**

PLEASE TAKE NOTICE that Defendants Colgate-Palmolive Company Employees'

Retirement Income Plan ("the Plan") and Colgate-Palmolive Company ("Colgate") (collectively

"Defendants"), upon the accompanying Memorandum of Law in Support of Defendants' Motion

for Transfer of Venue, will move this Court, before the Honorable Barbara S. Jones, in the

United States District Court, at the Daniel Patrick Moynihan Courthouse, 500 Pearl St.,

Courtroom 18B, New York, NY 10007, on a date and at a time to be designated by the Court, for

an Order granting Defendants' Motion for Transfer of Venue to the United States District Court

for the Southern District of Indiana.

**MOTION**

Defendants respectfully request that the Court transfer this case to the United States

District Court for the Southern District of Indiana for the reasons set forth in Defendants'

memorandum of law, filed contemporaneously herewith.


Dated:  January 15, 2008                    /s/Theresa J. Chung_____
                                            Joseph J. Costello*
                                            Jeremy P. Blumenfeld*
                                            Theresa J. Chung (TC3200)
                                            MORGAN, LEWIS & BOCKIUS LLP
                                            101 Park Avenue
                                            New York, New York 10178-0060
                                            (212) 309-6000
                                            (212) 309-6001 (fax)

                                            Attorneys for Defendants Colgate-Palmolive
                                            Company Employees' Retirement Income Plan and
                                            Colgate-Palmolive Company

                                            * Admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2008, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S.

First Class mail to the following counsel and parties:

Edgar Pauk (EP 1039)
144 East 44th Street, Suite 600
New York, New York 10017

Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

*Attorneys for Plaintiff Pamela Hosie*

/s/Theresa J. Chung
Theresa J. Chung (TC3200)

**IN THE UNITED STATES DISTRICT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARI PROESEL AND PAMELA HOSIE, et al. <br><br> Plaintiffs, <br><br> vs. <br><br><br> COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, COLGATE-PALMOLIVE COMPANY, as Plan Administrator, <br><br> Defendants. | Case No.  07-CIV-9515-BSJ-KNF <br><br><br> Judge Barbara S. Jones <br> Magistrate Judge Kevin N. Fox |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR**
**TRANSFER OF VENUE TO THE SOUTHERN DISTRICT OF INDIANA**

Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung (TC3200)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Attorneys for Defendants Colgate-Palmolive
Company Employees' Retirement Income Plan and
Colgate-Palmolive Company

*Admitted *pro hac vice*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................... 1

II.    RELEVANT FACTUAL BACKGROUND.................................................. 2

    A.    On February 12, 2007, Caufield Filed Suit Against The Plan In The Southern District Of Indiana, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims. ............................................... 2

    B.    On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed A Nearly Identical Case to *Caufield*, And That Case Is Now Pending in the Southern District of Indiana. .......................................................... 3

    C.    On October 24, 2007, Plaintiffs Shari Proesel And Pamela Hosie Filed This Action Against Colgate And The Plan. ......................................... 4

III.    PURSUANT TO THE "FIRST-TO-FILE" RULE, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF INDIANA, WHERE THE *CAUFIELD* AND *ABELMAN* CASES ARE PENDING......................... 5

    A.    Courts In The Second Circuit Consistently Apply The "First-To-File" Rule In Similar Circumstances. .................................................. 5

    B.    The "First-to-File" Factors Weigh In Favor Of Transfer Of This Case To The Southern District Of Indiana.......................................................... 7

        1.    *Caufield* And *Abelman* Were Filed Before This Action .......................... 7

        2.    The Parties In The Three Actions Are Substantially The Same ............... 8

        3.    The Issues And The Claims In The Two Actions Are Nearly Identical............................................................................... 8

        4.    In Addition, Applying The "First-to-File" Rule To Transfer And Eventually Consolidate This Case Will Promote Judicial Economy....... 10

IV.    CONCLUSION.............................................................................. 11

i

## TABLE OF AUTHORITIES
### CASES

Alden Corp. v. Eazypower Corp.,
294 F. Supp. 2d 233 (D. Conn. 2003) ..........................................................................11

Allen v. Rohm and Haas Co. Ret. Plan,
Civ. A. No. 3:06-CV-25-S, 2006 WL 1980174 (W.D. Ky. July 10, 2006) ..........................7, 9, 10

Cali v. East Coast Aviation Servs., Ltd.,
178 F. Supp. 2d 276 (E.D.N.Y. 2001) ..........................................................................8

City of Columbus v. Hotels.com,
No.2:06-cv-677, 2007 WL 2029036 (S.D. Ohio July 10, 2007) ................................................7, 11

Fuller v. Abercrombie & Fitch Stores, Inc.,
370 F. Supp. 2d 686 (E.D. Tenn. 2005) ..........................................................................7, 11

GMT Corp. v. Quiksilver,
No. 02 Civ. 2229 (GBD), 2002 WL 1788016 (S.D.N.Y. Aug. 1, 2002) ........................................7

MasterCard Int'l Inc. v. Lexcel Solutions, Inc.,
No. 03-cv-7157, 2004 WL 1368299 (S.D.N.Y. June 16, 2004) ................................................7

McCain v. Rahal Letterman Racing, LLC,
No. 07-cv-5729 (JSR),  2007 WL 2435170 (S.D.N.Y. Aug. 27, 2007) ..........................5, 7, 8, 10

Mfgs. Hanover Trust Co. v. Palmer Corp.,
798 F. Supp. 161 (S.D.N.Y. 1992) ..........................................................................6

Shenker v. Murasky,
No. 95-CV-4739 (NG), 1996 WL 650974 (E.D.N.Y. Nov. 6, 1996) ........................................6, 8

Spotless Enters. Inc. v. The Accessory Corp.,
415 F. Supp. 2d 203 (E.D.N.Y. 2006) ..........................................................................6, 7, 8, 10

Vangarelli v. Witco Corp.,
No. 90-cv-6794, 1991 WL 19992 (S.D.N.Y. Feb. 13, 1991) ..................................................6, 7

### STATUTES

28 U.S.C. § 1404(a) ..........................................................................1

29 U.S.C. § 1024(b)(4) ..........................................................................3

29 U.S.C. § 1054(b)(1)(B) ..........................................................................1, 3, 4, 9

29 U.S.C. § 1054(b)(1)(H) ................................................................................1, 5, 9

29 U.S.C. §§ 1053(e) ........................................................................................2, 3, 9

## I.    **INTRODUCTION**

Pursuant to the first-to-file rule and 28 U.S.C. § 1404(a), Defendants Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan") and Colgate-Palmolive Company ("Colgate") (collectively "Defendants") respectfully request that the Court transfer this case to the United States District Court for the Southern District of Indiana ("the Southern District of Indiana"), where two putative class actions involving virtually the same claims and class members, captioned Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016-SEB-WGH, and Paul Abelman, et al. v. Colgate-Palmolive Co., et al.; No. 07:cv-01554-DFH-JMS, are already pending.  (Copies of the Caufield Complaint and the Abelman Amended Complaint are attached as Exhibits A and B, respectively).

This lawsuit, the Caufield lawsuit, and the Abelman lawsuit all challenge the same Plan provisions as violating various ERISA sections, on behalf of effectively the same putative class. All three cases allege that the Plan improperly calculated lump sum benefits under a "whipsaw" theory.  (Compl. ¶ 36; Caufield Compl. ¶¶ 9-11, 22-23; Abelman Am. Compl. ¶ 36(1)).  This lawsuit and the Abelman lawsuit also allege that the Plan was impermissibly "backloaded" in violation of ERISA's 133 1/3% rule, 29 U.S.C. § 1054(b)(1)(B).[1]  (Compl. ¶¶ 26-30, 48-51; Abelman Am. Compl. ¶ 36(2)).  Indeed, the Plaintiff in this case, Pamela Hosie[2] ("Hosie" or "Plaintiff"), is a member of the putative class in Caufield and Abelman, and Mr. Caufield and the named Plaintiffs in Abelman are members of the putative class in this case.

To promote judicial efficiency, and to avoid duplicative litigation, wasted resources, the risk of inconsistent decisions and unnecessary expense, this case should be transferred to the

---

[1]  In this case, Plaintiff also alleges the Plan violates ERISA's age discrimination provisions, 29 U.S.C. § 1054(b)(1)(H).  (Compl., ¶¶ 57-59).

[2]  On January 3, 2008, the claims of Plaintiff Shari Proesel were dismissed.  (See Docket No. 8). Accordingly, Hosie is the only named Plaintiff in this case.

Southern District of Indiana where, ultimately, these three cases can be consolidated.  Indeed, the Abelman case was transferred from the Southern District of Ohio to the Southern District of Indiana.  Accordingly, Defendants respectfully request that the Court transfer this case to the Southern District of Indiana, where two related actions are pending.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    On February 12, 2007, Caufield Filed Suit Against The Plan In The Southern District Of Indiana, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims.

On February 12, 2007, Plaintiff Paul Caufield ("Caufield") filed a Complaint against the Plan, alleging that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Caufield Compl. ¶¶ 22-23).  Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance.  (Id., ¶¶ 9-11).  He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Id., ¶¶ 9-11, 22-23).  This claim is sometimes referred to as  a "whipsaw" claim.  Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions from the Plan, all allegedly calculated in the same manner.  (Id., ¶¶ 13, 17).  Hosie, the Plaintiff in this case, is a member of the putative class in Caufield.  Caufield alleges that class certification is appropriate "because the Plan computed the lump-sum distributions of the Class members in the same contested manner" and "*there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.*"  (Id., ¶¶ 14, 15) (emphasis

added).[3]

**B.    On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed A Nearly Identical Case to *Caufield*, And That Case Is Now Pending in the Southern District of Indiana.**

On August 13, 2007, six months after Caufield was first filed in the Southern District of Indiana, Plaintiffs Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") filed suit in the United States District Court of the Southern District of Ohio, alleging the same whipsaw claim alleged in Caufield, i.e., that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Abelman Compl. ¶¶ 30-31).

On November 2, 2007, Plaintiffs filed an Amended Complaint adding four additional named Plaintiffs[4] and two additional claims: (1) violations of ERISA's "anti-backloading" 133 1/3% rule, 29 U.S.C. § 1054 (b)(1)(B); and (2) an individual claim by Plaintiff Warren Jemmott for failure to provide Plan documents under 29 U.S.C. §§ 1024(b)(4) and 1025(a). (Id., ¶¶ 36(2), 73-76).

The Plaintiffs in Abelman purport to bring their whipsaw and backloading claims on behalf of a class of all Plan participants.[5]  Four of the named Plaintiffs in Abelman are members

---

[3]    On April 16, 2007, the Plan moved to dismiss Caufield's entire Complaint for failure to state a claim because Caufield's claims are time barred under the relevant statutes of limitations.  (Caufield Docket Nos. 24-25).  That motion is fully briefed and ripe for consideration.  (Caufield Docket Nos. 24-25, 34, 42, 47, 53, 58).

[4]    The additional named Plaintiffs are Adriana Vasquez, Cora Nelson-Manley, Susan Byrd, and Warren Jemmott.  (Id., ¶¶ 13-16).

[5]    The Amended Complaint includes one proposed Class and seven proposed Subclasses, which together potentially encompass all participants in the Plan since the Plan's inception in 1989.  (See Abelman Am. Compl. ¶ 55).  The proposed Class is defined as: "All persons who have accrued or are accruing benefits under the Colgate-Palmolive Company Employees' Retirement Income Plan (the 'Plan') and as to whom an Account was or has been established and maintained as defined in Plan, Art. 1 § 1.1, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order."  (Id., ¶ 55; see also Proposed Subclasses A through G, defined therein).

of the putative class in <u>Caufield</u>.[6]  (<u>Id.</u>, ¶¶ 32-34).  Likewise, the Plaintiff in <u>Caufield</u> is a member of the putative class in <u>Abelman</u>.  (<u>Caufield</u> Compl. ¶¶ 6-9).

The <u>Abelman</u> Plaintiffs allege that certification is appropriate because there are "numerous common questions of fact and law" and the "prosecution of separate actions … *would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants ….*"  (<u>Id.</u>, ¶¶ 57, 61) (emphasis added).  They further allege that "computation of a participant's lump sum distribution and/or … account balance … is standardized … [and] was calculated in the same manner…."  (<u>Id.</u>, ¶ 58).

Defendants moved to transfer the <u>Abelman</u> case to the Southern District of Indiana in order to promote judicial efficiency and avoid duplicative litigation.  (<u>See</u> <u>Abelman</u> Motion to Transfer and supporting Memorandum of Law,[7] attached hereto as Exhibit C).  On November 28, 2007, Defendants' motion was granted and <u>Abelman</u> was transferred to the Southern District of Indiana.  (<u>Abelman</u> Docket No. 1).

### C.    On October 24, 2007, Plaintiffs Shari Proesel And Pamela Hosie Filed This Action Against Colgate And The Plan.

On October 24, 2007, eight months after <u>Caufield</u> was filed, Proesel and Hosie filed this action against Colgate and the Plan.[8]  As in <u>Caufield</u> and <u>Abelman</u>, Hosie alleges a whipsaw claim because the Plan paid her a lump sum that was equal to her account balance but was required to pay her a higher amount.  (Compl., ¶¶ 21-25, 35-36, 40, 53-55).  In addition to the "whipsaw" claim, Hosie's Complaint, similar to the <u>Abelman</u> Amended Complaint, alleges that the Plan violates the anti-backloading provisions of ERISA's 133 1/3% rule, 29 U.S.C. §

---

[6]    Plaintiff Byrd is not a member of the putative class in Caufield because she received her lump sum benefit in 1996.  (<u>Abelman</u> Am. Compl. ¶ 34).  Plaintiff Jemmott has not yet elected his lump sum, and is not currently a member of the putative class in <u>Caufield</u>.  (<u>Id.</u>, ¶ 35).

[7]    Defendants can provide the Court with copies of the Exhibits to the Memorandum of Law if needed.

[8]    As stated above, on January 3, 2008, the claims of Shari Proesel were dismissed.  (<u>See</u> Docket No. 8).

1054(b)(1)(B).  (<u>Id.</u>, ¶¶ 26-30, 48-51).  Hosie also alleges that the Plan violates ERISA's age

discrimination provisions, 29 U.S.C. § 1054(b)(1)(H).  (<u>Id.</u>, ¶¶ 57-59).  Hosie alleges that she

resides in Pennsylvania.  (<u>Id.</u>, ¶ 9).

Hosie purports to bring this action on behalf of:

> All individuals, their beneficiaries and estates, who have
> participated in the Colgate-Palmolive Employees' Retirement
> Income Plan at any time on or after July 1, 1989 whose accrued or
> pension benefits have been based, in whole or in part, on the Plan's
> Cash Balance Formula (the "Class")[.]

(<u>Id.</u>, ¶ 40).  Hosie claims that class-wide treatment is appropriate because "separate actions by

individual members of the classes would create the risk of *inconsistent or varying adjudications*

*establishing incompatible standards of conduct for Defendants* and a risk of adjudications which

as a practical matter would be dispositive of the interests of other members of the classes who

were not parties."  (<u>Id.</u>, ¶ 46) (emphasis added).  Hosie further alleges that Defendants "have

acted and/or refused to act … on grounds generally applicable to the classes."  (<u>Id.</u>, ¶ 47).  Hosie

is a member of the putative class in <u>Caufield</u> and <u>Abelman</u>.  (<u>Id.</u>, ¶¶ 9, 36).  Caufield and the

named Plaintiffs in <u>Abelman</u> are members of the purported class described in this action.  (<u>Id.</u>, ¶

40).

## III.    PURSUANT TO THE "FIRST-TO-FILE" RULE, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF INDIANA, WHERE THE *CAUFIELD* AND *ABELMAN* CASES ARE PENDING.

### A.    Courts In The Second Circuit Consistently Apply The "First-To-File" Rule In Similar Circumstances.

The first-to-file rule is a well-settled principle in the Second Circuit, and provides that

"when two district courts concurrently have before them actions involving substantially or

effectively the same parties and issues, there is a strong presumption in favor of transfer to the

forum of the first-filed suit."  <u>McCain v. Rahal Letterman Racing, LLC</u>, No. 07-cv-5729 (JSR),

2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007) (granting motion to transfer); Spotless

Enters. Inc. v. The Accessory Corp., 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) ("where there

are two competing lawsuits, the first suit should have priority, absent the showing of balance of

convenience of special circumstances giving priority to the second.") (citations and quotations

omitted); Mfgs. Hanover Trust Co. v. Palmer Corp., 798 F. Supp. 161, 166 (S.D.N.Y. 1992)

("While it may be clear that one forum is better than two, which of the two fora is better follows

from another principle: the 'first-filed rule.'").  The rule "avoids duplicative litigation by

adhering to the inherently fair concept that the party who commenced the first suit should

generally be the party to attain its choice of venue."  Spotless Enters. Inc., 415 F. Supp. 2d at 205

(quotations and citations omitted).  "Under the first-to-file rule, a second-filed action should be

transferred "to the forum of the first-filed suit unless either the balance of convenience or any

other 'special circumstances' clearly favor the latter-filed action."  McCain, 2007 WL 2435170

at *2.  The underlying policy of the first-to-file rule is to promote "interests of efficiency and

judicial economy," BBC Int'l Ltd. v. Lumino Designs, Inc., 441 F. Supp. 2d 438, 442 (E.D.N.Y.

2006), and to further "judicial administration and the conservation of resources."  GT Plus, Ltd.

v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998) (quotations and citations omitted).

     In the class action context, district courts within the Second Circuit routinely transfer

purported class actions to other districts where related claims already have been filed.  See

Shenker v. Murasky, No. 95-CV-4739 (NG)(RML), 1996 WL 650974, at *2 (E.D.N.Y. Nov. 6,

1996) (transferring a class action under the Securities and Exchange Act of 1934 to district

where four similar actions were pending); Vangarelli v. Witco Corp., No. 90-cv-6794, 1991 WL

19992, at *1, *3 (S.D.N.Y. Feb. 13, 1991) (transferring Sherman Act class action to district

where two related cases involving the same documents).[9]

**B.     The "First-to-File" Factors Weigh In Favor Of Transfer Of This Case To The Southern District Of Indiana.**

In determining if the "first-to-file" rule applies, a court must consider whether the suits are duplicative.  Spotless Enters. Inc., 415 F. Supp. 2d at 205 (quotations and citations omitted). In general, courts examine: (1) the chronology of concurrently pending actions; (2) the similarity of the parties in each action; and (3) the similarity of the issues presented in each action.  See, e.g., McCain, 2007 WL 2435170, at *2 (examining the similarity of the parties and issues); see also GMT Corp. v. Quiksilver, No. 02 Civ. 2229 (GBD), 2002 WL 1788016, at *1 (S.D.N.Y. Aug. 1, 2002) ("The 'first to file' rule generally applies where the two actions involve the same parties and embrace the same issues, but one was filed first.") (citations omitted).  Under these factors, this action should be transferred to the Southern District of Indiana.

**1.     *Caufield* And *Abelman* Were Filed Before This Action.**

The Caufield case was filed on February 12, 2007, eight months before this case was filed on October 24, 2007.  The original complaint in Abelman was filed on August 13, 2007. Thus, Caufield and Abelman were filed before this matter.  See, e.g., Vangarelli, 1991 WL 19992, at **2, 3 (granting motion to transfer to the District of New Jersey where a related complaint was previously filed); MasterCard Int'l Inc. v. Lexcel Solutions, Inc., No. 03-cv-7157, 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004) (same).

---

9    Other courts also routinely transfer class actions to districts where related actions are pending.  See, e.g., Allen v. Rohm and Haas Co. Ret. Plan, Civ. A. No. 3:06-CV-25-S, 2006 WL 1980174, at *2 (W.D. Ky. July 10, 2006) (transferring ERISA class action challenging calculation of lump sum benefits to Southern District of Indiana, where similar ERISA class action was filed first); City of Columbus v. Hotels.com, No.2:06-cv-677, 2007 WL 2029036, at *3-5 (S.D. Ohio July 10, 2007) (applying first-to-file rule and approving transfer of class action suit to Northern District of Ohio, where nearly identical class action was pending); and Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 689-90 (E.D. Tenn. 2005) (transferring FLSA collective action to Ohio under first-to-file rule).

### 2.    The Parties In The Three Actions Are Substantially The Same.

A court can transfer a case pursuant to the first-to-file rule where the parties involved are substantially the same; a precise identity of parties is not required.  See Shenker, 1996 WL 650974, at *3 (transferring class action where parties were "substantially the same"); Cali v. East Coast Aviation Servs., Ltd., 178 F. Supp. 2d 276, 293 (E.D.N.Y. 2001) (holding that the presence of the same plaintiffs in related cases is not a prerequisite for the application of the first-to-file rule); Spotless Enters. Inc. v. The Accessory Corp., 415 F. Supp. 2d 203, 206 (E.D.N.Y. 2006) (holding that the first-to-file rule does not require identical parties, but only requires that there be "substantial overlap" among the parties) (citations and internal references omitted).

The parties in this action "substantially overlap" with the parties in Caufield and Abelman.  Although the named Plaintiffs are different individuals, all three class actions seek certification of essentially the same class of participants who participated in the Plan and a subclass of participants who received lump sum benefits from the Plan.  Hosie is a member of the proposed classes in Caufield and Abelman, and Caufield and the named Plaintiffs in Abelman are members of the proposed class in this action.  Likewise, the same Colgate Plan is a defendant in all three cases.[10]  Accordingly, the parties "substantially overlap" for purposes of the first-to-file rule.

### 3.    The Issues And The Claims In The Two Actions Are Nearly Identical.

The issues in the three actions not only "substantially overlap," but they are nearly

---

[10]    The fact that Colgate is a named defendant in this action (but not in Caufield) and the fact that the Committee is a defendant in Abelman do not defeat the requirement that the parties be substantially similar.  See McCain, 2007 WL 2435170 at *2 (holding that actions may be duplicative where the parties, although not identical, represent the same interests) (citations and internal references omitted); Spotless Enters. Inc., 415 F. Supp. at 206 (granting motion to transfer where there was sufficient similarity between defendant and its "grandparent" company, although the subsidiary was not a named party in one action).

identical.  In all three cases, the plaintiffs challenge the calculation of lump sum pension benefits under ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 36, 53-55; Caufield Compl. ¶¶ 9-11, 22-23; Abelman Am. Compl. ¶¶ 36(1), 42-43, 55).  All three cases involve claims that the Plan's conduct resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a).  (Compl., ¶ 54; Caufield Compl. ¶ 26; Abelman Am. Compl. ¶ 44).  In addition, both this action and Abelman involve "backloading" claims under ERISA Section 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).  (Compl., ¶¶ 26-30, 48-51; Abelman Am. Compl. ¶¶ 36(2), 45-53).  In this action, Plaintiff also alleges that the Plan reduces the rate of benefit accrual because of age, in violation 29 U.S.C. § 1054(b)(1)(H).  (Compl., ¶¶ 57-59).

Allowing both courts to adjudicate the same legal issues in two different forums is inefficient and impractical.  First, the two courts might reach inconsistent results.  Second, the parties could not settle one case while the other two remain pending.  Of course, judicial resources would be wasted in litigating the same case in multiple forums.

Confronted with such a possibility of inconsistent results, the court in Allen v. Rohm and Haas Co. Ret. Plan, Civil Action No. 03:06CV-25-S, 2006 WL 1980174 (W.D. Ky. July 10, 2006) applied the first-to-file rule and granted the motion to transfer.  The named plaintiff in Allen filed a class action complaint on behalf of himself and other plan participants, who had received lump sum pension benefits that did not include the value of a cost-of-living adjustment. Id. at *1.  However, a different named plaintiff previously had filed a similar class action complaint in the Southern District of Indiana, also alleging that Rohm and Haas had failed to include an annual cost of living adjustment in lump sum pension benefits.  Id.  Noting the interest in comity among federal courts, the court granted the motion to transfer, stating:

> There is no question that the Indiana action is the first-filed action and that comity requires this court to respect the substantial development of the issues which has already taken place in the former case. Allen does not dispute that that he is a member of the class certified by the Indiana court. The issue as to the entitlement of retirees to the value of yearly COLAs is identical in both lawsuits. The action must therefore be transferred to the Southern District of Indiana for all further proceedings.

Id. at *2 (footnote omitted). As in Allen, this Court should grant the Motion to Transfer, and

transfer this action to the Southern District of Indiana. See also McCain v. Rahal Letterman

Racing, LLC, 2007 WL 2435170 at *3 (transferring case under the first-to-file rule where each

action involved the "same key issues"); Spotless Enterprises Inc., 415 F. Supp. 2d at 206

(transferring case to district of previously filed action where both actions involved the same legal

issues).

### 4.  In Addition, Applying The "First-to-File" Rule To Transfer And Eventually Consolidate This Case Will Promote Judicial Economy.

Here, sound judicial administration and principles of judicial economy warrant a transfer.

These three cases involve ERISA claims on behalf of essentially the same group of individuals

challenging the calculation of lump sum distributions from Colgate's cash balance plan. Indeed,

all three cases seek to certify a nationwide class action because there is a risk that the

"prosecution of separate actions" would establish "incompatible standards of conduct" related to

the administration of the Plan. (Compl. ¶ 46; Caufield Compl. ¶ 14; Abelson Am. Compl. ¶ 61).

These same arguments require transfer of this case so that the three cases can be consolidated. It

would be a waste of judicial and the parties' resources to maintain these three cases in separate

district courts where the cases involve the same claims and virtually the same classes.[11] Spotless

Enterprises Inc., 415 F. Supp. 2d at 205 (the first-filed rule furthers "wise judicial administration,

---

[11]  For example, it does not make sense to require the Plan Administrator and actuaries to testify separately in this case regarding the calculation of lump sum benefits and the rates of benefit accrual under the Plan.

giving regard to conservation of judicial resources and comprehensive disposition of litigation"

and "avoids duplicative litigation") (citations and quotations omitted); <u>City of Columbus</u>, 2007

WL 2029036, at *5 (stating that "it is a waste of judicial resources to litigate the same dispute in

two different forums").  Moreover, allowing the case to proceed separately may result in

inconsistent results involving the same exact parties, class members, and the same legal issues.

<u>See</u> <u>Fuller</u>, 370 F. Supp. 2d at 690 ("Permitting both [collective] actions to proceed to judgment

risks the possibility of inconsistent results."); <u>Alden Corp. v. Eazypower Corp.</u>, 294 F. Supp. 2d

233, 238 (D. Conn. 2003) ("Transfer of an action to a district where a related case is pending

enables more efficient conduct of pretrial discovery, saves witnesses times and money … and

avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to

the parties while at the same time serving the public interest.") (citations and quotations omitted).

There is no need for such a waste of resources and the risk of inconsistent rulings, and no reason

to depart from applying the "first-to-file" rule.  Respectfully, this case should be transferred.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request this Court transfer this matter

to the United States District Court for the Southern District of Indiana.

Dated:  January 15, 2008                            Respectfully submitted,

/s/Theresa J. Chung_____
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung (TC3200)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000 (phone)/(212) 309-6001 (fax)

Attorneys for Defendants Colgate-Palmolive
Company Employees' Retirement Income Plan and
Colgate-Palmolive Company
            * Admitted *pro hac vice*

-11-

### CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2008, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S.

First Class mail to the following counsel and parties:

Edgar Pauk (EP 1039)
144 East 44th Street, Suite 600
New York, New York 10017

Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

*Attorneys for Plaintiff Pamela Hosie*

/s/Theresa J. Chung
Theresa J. Chung (TC3200)

-12-

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| PAUL CAUFIELD,                  ) | |
|                            ) | |
|          Plaintiff,        ) | |
|                            ) | Cause No.  4:07-cv-00016-SEB-WGH |
|     vs.                     ) | |
|                            ) | |
| COLGATE-PALMOLIVE COMPANY   ) | |
| EMPLOYEES' RETIREMENT INCOME   ) | |
| PLAN,                          ) | |
|                            ) | |
|         Defendant.      ) | |

## PLAINTIFF'S SUPPLEMENTAL RESPONSE TO
## ORDER TO SHOW CAUSE WHY STAY SHOULD NOT BE LIFTED

Plaintiff files this supplemental response to inform the Court of proceedings in related case Abelman v. Colgate-Palmolive Co., et al., Case No. 1:07-cv-01554-DFH-JMS ("Abelman") and a *third* related action pending in the Southern District of New York of which the Court may not be aware – Proesel v. Colgate-Palmolive Co. Employees' Ret. Income Plan, et al., Case No. 1:07-cv-09515-BSJ ("Proesel").

Defendant successfully sought to have Abelman transferred from the Southern District of Ohio to this District to be consolidated with this case.  Abelman is currently assigned to Judge Hamilton, but defendant asked that Abelman be transferred to your Honor under S.D. Ind. L.R. 40.1(f) in its Notice of Related Action (Abelman Doc. 6).

On January 15, 2008, the Abelman plaintiffs moved to transfer Abelman to the Southern District of New York to be consolidated with Proesel.  *See* "Plaintiffs' Motion to Transfer Venue and to Stay Proceedings Pending a Ruling on this Motion," attached as Exhibit 1.  Although Proesel was filed in October 2007, Defendant has inexplicably failed to make this Court or Judge Hamilton aware of Proesel.  Further, the defendant in Proesel recently moved to transfer Proesel

to this district to be consolidated with this case and <u>Abelman</u>.  *See* "Memorandum of Law in Support of Motion for Transfer of Venue to the Southern District of Indiana," attached as Exhibit 2.

In an attempt to help the Court resolve the convoluted situation created by the competing transfer motions filed regarding the three lawsuits, Plaintiff hereby advises the Court that he does not object to his case being consolidated with <u>Abelman</u> or to both cases being transferred to the Southern District of New York under 28 U.S.C. § 1404(a) to be consolidated with <u>Proesel</u>, if the Court determines that to be the appropriate course of action.  Indeed, while Plaintiff is content litigating before this Court, the addition of the <u>Proesel</u> case suggests that New York may be the most convenient forum for all parties.

Venue is clearly proper in the Southern District of New York under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), in that it is the district "where the plan is administered," and "where a defendant resides or may be found."  Defendant can have no objection to this case being transferred to the Southern District of New York along with <u>Abelman</u>.  In its Motion to Dismiss, Defendant averred that New York is where Colgate-Palmolive's headquarters are located, where the Plan administrator is located and where the Plan is administered.  *See* "Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint" (Doc. 25) at page 18.  In its motion to transfer <u>Abelman</u> to this District, defendant also asserted:

> Virtually all of the documents that are potentially relevant to this action, including Plan documents and Plan records, are maintained in New York.  The only documents that may not be in New York are documents in the possession of each class member, which documents likely are located throughout the country where each participant lives.  Thus, relevant documents and other evidence will have to be transferred regardless of which court hears the case.  Moreover, any potential witnesses in this matter are similarly located in New York.  Those individuals

2

with intimate knowledge of the Plan's administration work at Colgate's headquarters in New York.

*See* "Memorandum of Law in Support of Defendants' Motion to Transfer Venue to the Southern District of Indiana" at p.11, n.8 (internal citations omitted), attached as Exhibit 3.  Further, this case has been stayed at Defendant's request for most of its life, so a transfer to New York would not appear to result in wasted judicial time or resources.

/s/ Douglas R. Sprong
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

3

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was e-mailed on February 13, 2008, per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
btjohnson@morganlewis.com

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

4

**4:07-cv-00016-SEB-WGH** CAUFIELD v. COLGATE-PALMOLIVE COMPANY EMPLOYEES'
RETIREMENT INCOME PLAN
Sarah Evans Barker, presiding
William G. Hussmann, Jr, referral
**Date filed:** 02/12/2007
**Date of last update:** 02/13/2008

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | *Filed & Entered:*                02/12/2007 | Complaint |
|  | *Docket Text:* COMPLAINT against COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN filed by PAUL CAUFIELD.(JLM) | |
| 2 | *Filed & Entered:*                02/12/2007 | Civil Cover Sheet |
|  | *Docket Text:* CIVIL COVER SHEET filed by Plaintiff PAUL CAUFIELD. (JLM) | |
| 3 | *Filed & Entered:*                02/12/2007 | Receipt |
|  | *Docket Text:* RECEIPT #NA000003 in the amount of $ 350.00 for filing fee. (JLM) | |
| 4 | *Filed & Entered:*                02/12/2007 | Summons Issued |
|  | *Docket Text:* Summons Issued as to COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (JLM) | |
| 5 | *Filed & Entered:*                02/12/2007 | Magistrate Judge's Notice of Availability to Exercise Jurisdiction |
|  | *Docket Text:* MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (JLM) | |
| 6 | *Filed & Entered:*                02/12/2007 | Instruction |
|  | *Docket Text:* INSTRUCTIONS FOR PREPARING CASE MANAGEMENT PLAN (JLM) | |
| 7 | *Filed & Entered:*                03/02/2007 | Notice of Appearance |
|  | *Docket Text:* NOTICE of Appearance by Ellen E. Boshkoff on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Boshkoff, Ellen) | |
| 8 | *Filed & Entered:*                03/02/2007 | Notice of Appearance |
|  | *Docket Text:* NOTICE of Appearance by Philip John Gutwein, II on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Gutwein, Philip) | |
| 9 | *Filed & Entered:*                03/09/2007<br>*Terminated:*                03/13/2007 | Motion to Appear pro hac vice |
|  | *Docket Text:* MOTION to Appear pro hac vice *(Brandi T. Johnson)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # (1) Text of Proposed Order)(Gutwein, Philip) | |
| 10 | *Filed & Entered:*                03/09/2007<br>*Terminated:*                03/13/2007 | Motion to Appear pro hac vice |
|  | *Docket Text:* MOTION to Appear pro hac vice *(Joseph J. Costello)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # (1) Text of Proposed Order)(Gutwein, Philip) | |
| 11 | *Filed & Entered:*                03/09/2007<br>*Terminated:*                03/13/2007 | Motion to Appear pro hac vice |
|  | *Docket Text:* MOTION to Appear pro hac vice *(Theresa J. Chung)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # (1) Text | |

| | | |
|---|---|---|
| **12** | *Filed & Entered:* | 03/09/2007 | Motion to Appear pro hac vice |
| | *Terminated:* | 03/13/2007 | |
| | *Docket Text:* MOTION to Appear pro hac vice *(Jeremy P. Blumenfeld)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # (1) Text of Proposed Order)(Gutwein, Philip) | | |
| **13** | *Filed & Entered:* | 03/09/2007 | Corporate Disclosure Statement |
| | *Docket Text:* CORPORATE DISCLOSURE STATEMENT, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, identifying None as Corporate Parent. (Gutwein, Philip) | | |
| **14** | *Filed & Entered:* | 03/12/2007 | Receipt |
| | *Docket Text:* RECEIPT #NA000032 in the amount of $ 120.00, PHV fee - Brandi T Johnson, Joseph J. Costello, Theresa L. Chung and Jeremy Blumenfeld (KTK) | | |
| **15** | *Filed & Entered:* | 03/13/2007 | Order on Motion to Appear pro hac vice |
| | *Docket Text:* ORDER granting [9] Motion to Appear pro hac vice. Attorney Brandi T. Johnson for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) | | |
| **16** | *Filed & Entered:* | 03/13/2007 | Order on Motion to Appear pro hac vice |
| | *Docket Text:* ORDER granting [10] Motion to Appear pro hac vice. Attorney Joseph J. Costello for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) | | |
| **17** | *Filed & Entered:* | 03/13/2007 | Order on Motion to Appear pro hac vice |
| | *Docket Text:* ORDER granting [11] Motion to Appear pro hac vice. Attorney Theresa J. Chung for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) | | |
| **18** | *Filed & Entered:* | 03/13/2007 | Order on Motion to Appear pro hac vice |
| | *Docket Text:* ORDER granting [12] Motion to Appear pro hac vice. Attorney Jeremy P. Blumenfeld for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) | | |
| **19** | *Filed:* | 03/16/2007 | Waiver of Service Executed |
| | *Entered:* | 03/21/2007 | |
| | *Docket Text:* WAIVER OF SERVICE Returned Executed, filed by PAUL CAUFIELD. COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN waiver sent on 2/13/2007. (JLM) | | |
| **20** | *Filed & Entered:* | 03/21/2007 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Brandi T. Johnson on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) | | |
| **21** | *Filed & Entered:* | 03/21/2007 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Jeremy P. Blumenfeld on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) | | |
| **22** | *Filed & Entered:* | 03/21/2007 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Theresa J. Chung on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) | | |
| **23** | *Filed & Entered:* | 03/21/2007 | Notice of Appearance |
| | *Docket Text:* NOTICE of Appearance by Joseph J. Costello on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) | | |
| **24** | *Filed & Entered:* | 04/16/2007 | Motion to Dismiss |
| | *Docket Text:* MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE | | |

Exhibit B# (3) Exhibit C# (4) Text of Proposed Order)(Gutwein, Philip)

| | | |
|---|---|---|
| **25** | *Filed & Entered:* 04/16/2007 | Brief/Memorandum in Support of Motion |
| | *Docket Text:* BRIEF/MEMORANDUM in Support re [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Gutwein, Philip) | |
| **26** | *Filed & Entered:* 04/26/2007<br>*Terminated:* 04/30/2007 | Motion for Extension of Time to File Response |
| | *Docket Text:* MOTION for Extension of Time to May 15, 2007 to file response to [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD, Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Smith, T.) | |
| **27** | *Filed & Entered:* 04/26/2007<br>*Terminated:* 04/30/2007 | Motion for Extension of Time to File Response |
| | *Docket Text:* MOTION for Extension of Time to to file response to [26] MOTION for Extension of Time to May 15, 2007 to file response to [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD, Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Smith, T.) | |
| **28** | *Filed & Entered:* 04/26/2007<br>*Terminated:* 04/27/2007 | Motion to Appear pro hac vice |
| | *Docket Text:* MOTION to Appear pro hac vice *of Douglas R. Sprong*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Text of Proposed Order)(Sprong, Douglas) | |
| **29** | *Filed & Entered:* 04/27/2007 | Receipt |
| | *Docket Text:* RECEIPT #NA000073 in the amount of $ 30.00, PHV fee, Douglas R. Sprong. (KTK) | |
| **30** | *Filed & Entered:* 04/27/2007 | Order on Motion to Appear pro hac vice |
| | *Docket Text:* ORDER granting [28] Motion to Appear pro hac vice. Attorney Douglas R. Sprong for PAUL CAUFIELD added. Signed by Judge Sarah Evans Barker on 4/27/2007. (KTK) | |
| **31** | *Filed & Entered:* 04/30/2007 | Order on Motion for Extension of Time to File Response |
| | *Docket Text:* ORDER granting [26] Motion for Extension of Time re [24] MOTION to Dismiss *Plaintiff's Complaint* Plaintiff's Response due by 5/15/2007. Defendant's Reply is due 6/5/2007. Signed by Judge William G. Hussmann Jr. on 4/30/2007. (KTK) | |
| **32** | *Filed & Entered:* 05/14/2007<br>*Terminated:* 05/16/2007 | Motion to Appear pro hac vice |
| | *Docket Text:* MOTION for William K. Carr to Appear pro hac vice, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Text of Proposed Order)(Sprong, Douglas) Modified on 5/15/2007 (KTK). | |
| **33** | *Filed & Entered:* 05/15/2007 | Receipt |
| | *Docket Text:* RECEIPT #NA 000089 in the amount of $ 30.00, pro hac vice fee, William Carr. (KTK) | |
| **34** | *Filed & Entered:* 05/15/2007 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Exhibit 1 Entry Denying Defendant's Motion# (2) Exhibit 2 Affidavit of Paul Caufield)(Sprong, Douglas) | |
| **35** | *Filed:* 05/16/2007<br>*Entered:* 05/17/2007 | Order on Motion to Appear pro hac vice |
| | *Docket Text:* ORDER granting [32] Motion to Appear pro hac vice. Attorney William K. Carr for PAUL CAUFIELD added. Signed by Judge Sarah Evans Barker on 5/16/2007. (KTK) | |
| **36** | *Filed & Entered:* 05/23/2007<br>*Terminated:* 05/24/2007 | Motion to Appear pro hac vice |
| | *Docket Text:* MOTION to Appear pro hac vice *Diane Moore Heitman*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Text of Proposed Order)(Sprong, Douglas) | |

| | |
|---|---|
| [37](#) | *Docket Text:* RECEIPT #NA000097 in the amount of $ 30.00 for PHV Fee for Diane Moore Heitman. (JLM) |

| | | | |
|---|---|---|---|
| [38](#) | *Filed:* | 05/24/2007 | Order on Motion to Appear pro hac vice |
| | *Entered:* | 05/25/2007 | |
| | *Docket Text:* ORDER granting [36] Motion to Appear pro hac vice. Attorney Diane Moore Heitman for PAUL CAUFIELD added. Signed by Judge Sarah Evans Barker on 5/24/2007. (KTK) | | |

| | | | |
|---|---|---|---|
| [39](#) | *Filed & Entered:* | 06/04/2007 | Case Management Plan Tendered by |
| | *Docket Text:* CASE MANAGEMENT PLAN TENDERED, filed by Plaintiff PAUL CAUFIELD, Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # (1) Magistrate Judge's Summary of Case Management Plan)(Chung, Theresa) | | |

| | | | |
|---|---|---|---|
| [40](#) | *Filed & Entered:* | 06/05/2007 | Motion to Stay |
| | *Terminated:* | 07/06/2007 | |
| | *Docket Text:* MOTION to Stay, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN., (Attachments: # (1) Text of Proposed Order # (2) Defendant's Statement in Compliance with Local Rule 37.1)(Chung, Theresa) Modified on 6/6/2007 (JLM). | | |

| | | | |
|---|---|---|---|
| [41](#) | *Filed & Entered:* | 06/05/2007 | Brief/Memorandum in Support of Motion |
| | *Docket Text:* BRIEF/MEMORANDUM in Support re [40] MOTION to Stay, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Chung, Theresa) | | |

| | | | |
|---|---|---|---|
| [42](#) | *Filed & Entered:* | 06/05/2007 | Reply in Support of Motion |
| | *Docket Text:* REPLY in Support of Motion re [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # (1) Exhibit A# (2) Exhibit B)(Chung, Theresa) | | |

| | | | |
|---|---|---|---|
| [43](#) | *Filed & Entered:* | 06/12/2007 | Order: Case Management |
| | *Docket Text:* ORDER: CASE MANAGEMENT Plan NOT APPROVED as submitted. A scheduling order will issue in place at the TelephonicStatus Conference set for 7/16/2007 05:00 PM, New Albany time, before Magistrate Judge William G. Hussmann Jr. Signed by Judge William G. Hussmann Jr. on 6/12/2007. (KTK) | | |

| | | | |
|---|---|---|---|
| [44](#) | *Filed & Entered:* | 06/25/2007 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [40] MOTION to Stay *of Proceedings Pending Disposition of Its Motion to Dismiss*, filed by Plaintiff PAUL CAUFIELD. (Sprong, Douglas) | | |

| | | | |
|---|---|---|---|
| [45](#) | *Filed & Entered:* | 07/06/2007 | Order on Motion to Stay |
| | *Docket Text:* ORDER granting in part [40] Motion to Stay. Parties to comply with FRCP 26(a)(1), and defendant shall respond to interrogatories or requests for production addressed to the identity of plan documents at issue over the six years prior to the filing of the Complaint. All other discovery is stayed, at least until the 7/16/2007 conference. Signed by Judge William G. Hussmann Jr. on 7/6/07. (JLM) | | |

| | | | |
|---|---|---|---|
| -- | *Filed & Entered:* | 07/20/2007 | Scheduling Order |
| | *Docket Text:* (continuation of # 46) SCHEDULING ORDER:Telephonic Status Conference set for 10/31/2007 09:15 AM, New Albany time, before Magistrate Judge William G. Hussmann Jr. Signed by Judge William G. Hussmann Jr. on 7/20/2007. (KTK) | | |

| | | | |
|---|---|---|---|
| [46](#) | *Filed & Entered:* | 07/20/2007 | Status Conference |
| | *Docket Text:* Minute Entry for proceedings held before Judge William G. Hussmann Jr.: Status Conference held on 7/16/2007. See Entry for particulars. (KTK) | | |

| | | | |
|---|---|---|---|
| [47](#) | *Filed & Entered:* | 10/01/2007 | Response in Opposition to Motion |
| | *Docket Text:* RESPONSE in Opposition re [24] MOTION to Dismiss *Plaintiff's Complaint Citation to Supplemental Authority*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Exhibit 1 Humphrey v. United Way)(Sprong, Douglas) | | |

| | | | |
|---|---|---|---|
| | *Filed Entered:<br>Terminated:* | | 11/21/2007 |
| **48** | *Docket Text:* MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN., (Attachments: # (1) Exhibit A# (2) Exhibit B# (3) Exhibit C# (4) Text of Proposed Order)(Chung, Theresa) | | |
| | *Filed & Entered:* | 10/11/2007 | Brief/Memorandum in Support of Motion |
| **49** | *Docket Text:* BRIEF/MEMORANDUM in Support re [48] MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint* , filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Chung, Theresa) Modified on 10/12/2007 (JLM). | | |
| | *Filed & Entered:* | 10/26/2007 | Response in Opposition to Motion |
| **50** | *Docket Text:* RESPONSE in Opposition re [48] MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint* MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Exhibit 1 - Abelman Motion for 60 Day Stay)(Sprong, Douglas) | | |
| | *Filed & Entered:* | 11/05/2007 | Reply in Support of Motion |
| **51** | *Docket Text:* REPLY in Support of Motion re [48] MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint* MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # (1) Exhibit A# (2) Exhibit B)(Chung, Theresa) | | |
| | *Filed:<br>Entered:* | 11/06/2007<br>11/07/2007 | Scheduling Order |
| -- | *Docket Text:* (continuation of # 52) SCHEDULING ORDER:Telephonic Status Conference set for 12/5/2007 10:00 AM, New Albany time, before Magistrate Judge William G. Hussmann Jr. Signed by Judge William G. Hussmann Jr. on 11/06/2007. (KTK) | | |
| | *Filed:<br>Entered:* | 11/06/2007<br>11/07/2007 | Status Conference |
| **52** | *Docket Text:* Minute Entry for proceedings held before Judge William G. Hussmann Jr.: Telephonic Status Conference held on 10/31/2007. See Entry for particulars. (KTK) | | |
| | *Filed & Entered:* | 11/16/2007 | Notice (Other) |
| **53** | *Docket Text:* NOTICE *of Supplemental Authority in Support of [24] Defendant's Motion to Dismiss Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN (Attachments: # (1) Exhibit 1; # (2) Exhibit 2) (Chung, Theresa) Modified on 11/19/2007 (KTK). | | |
| | *Filed & Entered:* | 11/19/2007 | Response to Motion (Unopposed) |
| **54** | *Docket Text:* RESPONSE to Motion re [48] MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint* MOTION to Stay re [24] MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD. (Sprong, Douglas) | | |
| | *Filed & Entered:* | 11/21/2007 | Order on Motion to Stay |
| **55** | *Docket Text:* ORDER granting [48] Motion to Stay Proceedings pending disposition of [24] Motion to Dismiss. Signed by Judge Sarah Evans Barker on 11/21/2007. (KTK) | | |
| | *Filed & Entered:* | 12/05/2007 | Order to Show Cause |
| **56** | *Docket Text:* ORDER TO SHOW CAUSE - We stayed consideration of Defendant's Motion to Dismiss [24] pending a decision by the United States District Court for the Southern District of Ohio. The Ohio court has ruled. Accordingly, Defendant is ordered to show cause why the stay should not now be lifted. Defendant shall have through and including 12/14/2007, to comply with this order. Plaintiff's response, if any, shall be filed on or before 12/21/2007. Signed by Judge Sarah Evans Barker on 12/5/07.(JLM) | | |
| | *Filed & Entered:* | 12/06/2007 | Return to Order to Show Cause |
| **57** | *Docket Text:* RETURN TO ORDER TO SHOW CAUSE by COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Gutwein, Philip) | | |

| 58 | *Filed & Entered:* | | |
| --- | --- | --- | --- |
| | *Docket Text:* RESPONSE in Opposition re [24] MOTION to Dismiss *Plaintiff's Complaint Response to Notice of Supplemental Authority*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Exhibit 1 Employees' Retirement Income Plan pages 22 & 45, # (2) Exhibit 2 Entry Denying Defendant's Motion - Williams v. Rohm & Haas, # (3) Exhibit 3 Richardson v. Fairchild Memorandum)(Sprong, Douglas) | | |
| -- | *Filed & Entered:* | 12/19/2007 | Scheduling Order |
| | *Docket Text:* (continuation of # #59) SCHEDULING ORDER:Telephonic Status Conference set for 2/27/2008 09:15 AM, New Albany time, before Magistrate Judge William G. Hussmann Jr. By copy of this entry, Plaintiff's counsel in Cause No. 1:07-cv-1554-DFH-JMS is DIRECTED to participate in this conference call by calling the court's bridge line. Signed by Magistrate Judge William G. Hussmann, Jr on 12/19/2007.(KTK) | | |
| 59 | *Filed & Entered:* | 12/19/2007 | Status Conference |
| | *Docket Text:* Minute Entry for proceedings held before Magistrate Judge William G. Hussmann, Jr: Status Conference held on 12/05/2007. The parties should proced to complete briefing on the currently pending Motion to Dismiss. Any response to the supplemental briefing provided by the Defendant shall be concluded by the Plaintiff on or before 12/14/2007. Any final reply to the Plaintiffs' response shall be filed on or before 12/21/2007. (KTK) | | |
| 60 | *Filed & Entered:* | 12/21/2007 | Response |
| | *Docket Text:* RESPONSE re [56] Order to Show Cause *Why Stay Should Not Be Lifted*, filed by Plaintiff PAUL CAUFIELD. (Sprong, Douglas) | | |
| 61 | *Filed & Entered:* | 02/13/2008 | Response |
| | *Docket Text:* RESPONSE re [56] Order to Show Cause *Why Stay Should Not Be Lifted - Supplemental*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # (1) Exhibit 1 Abelman v. Colgate Motion to Transfer Venue and Stay Proceedings, # (2) Exhibit 2 Proesel v. Colgate Memorandum of Law in Support of Defendants' Motion for Transfer Venue, # (3) Exhibit 3 Abelman v. Colgate Memorandum of Law in Support of Defendants' Motion to Transfer Venue)(Sprong, Douglas) | | |

## PACER Service Center

### Transaction Receipt

02/16/2008 13:38:36

| **PACER Login:** | go0074 | **Client Code:** | |
| --- | --- | --- | --- |
| **Description:** | History/Documents | **Search Criteria:** | 4:07-cv-00016-SEB-WGH |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **PAUL ABELMAN**, *et al.* | ) | |
| | ) | |
| **On behalf of themselves and** | ) | |
| **All others similarly situated** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Cause No. 1:07-cv-01554-DFH-JMS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COLGATE-PALMOLIVE CO.,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**THEIR MOTION TO TRANSFER VENUE**
**AND TO STAY PROCEEDINGS**
**PENDING A RULING ON THIS MOTION**

**Introduction**

Not until pages 9 and 10 of their opposition do Defendants purport to address their failure for a period of months to disclose to this Court, Judge Barker and Magistrate Judge Hussman, and to the judges assigned to this case in the Southern District of Ohio before it was transferred here in November 2007, the pendency of the third, New York action, *Proesel,* filed in October 2007.  What Defendants say is either inaccurate or non-responsive to the legitimate questions raised by their conduct, which caused everyone concerned, except them, to proceed as if there was no such third case pending in their home forum.

The fact is that nothing of any moment has occurred in any of these three cases, including *Caufield,* that should give the pendency of that first-filed case here any weight under a traditional 28 U.S.C. § 1404(a) analysis.  Indeed, Plaintiffs noted in their opening

brief, *see* Pl. Mtn (Doc. 23) at 5-6, and Mr. Caufield has confirmed in a filing dated February 13, 2008 (*see* Ex. 1 hereto), that he does not oppose his case being transferred to New York for consolidation there with *Proesel* and this action.  *See* Ex. 1, *Caufield* Doc. 61 at 1-3.  Mr. Caufield's residency and alleged underpayment here alone are the reasons why his case was even filed here in the first place.  As Mr. Caufield notes, *id*. at 3, and the docket confirms, Ex. 2, his action has been stayed by the Defendant Plan for much of its existence, belying Defendants' suggestion that a transfer to New York would result in wasted judicial time or resources.

As for this action, *Abelman,* it is only here because Defendants concealed *Proesel*'s existence and thus deprived Plaintiffs, two-thirds of whom live or lived in New York while working for Colgate, of the opportunity last November to argue that *Abelman* should be sent to New York and consolidated with *Proesel* (and *Caufield*), instead of Indiana, an inconvenient location for a nationwide class action against a New York corporation headquartered in New York and its pension plan which is administered in New York as well.  Defendants' contention that it would serve no purpose now that *Abelman* has been transferred here to transfer it again is mere rhetoric, seeking to capitalize on an order of transfer obtained under dubious pretenses.[1]

---

[1] Defendants also incorrectly imply that they moved to transfer *Proesel* of their own volition and in timely fashion when the facts are directly to the contrary:  Defendants moved to transfer *Proesel* on January 15 only after the *Abelman* plaintiffs filed the instant motion and only after Defendants heard a week earlier from undersigned counsel that their efforts to keep the case under wraps had come to naught.  If Defendants truly believed what they now say in their opposition to Plaintiffs' motion to transfer about this venue being the most convenient, they would have moved to transfer *Proesel* in early November instead of waiting until their hand was forced in mid-January.  *Proesel*'s existence might still be unknown to the courts in this District and the plaintiffs in *Abelman* and *Caufield* but for the fortuity that defense counsel's paralegal sent undersigned counsel a copy of a motion intended for the *Proesel* plaintiffs' lawyers' eyes only.

In sum, the fact that this case, not even consolidated yet with *Caufield,* is here now should be given no weight as the Court decides where it is most conveniently adjudicated.

## Discussion

### I.    The Southern District of New York is Clearly the Most Convenient Forum.

Defendants pin most of their argument on a talismanic invocation of the "first-to-file" rule.  Opp. at 5-10.  But, as this Court has recently had occasion to note, "[t]he Seventh Circuit "does not rigidly adhere to a 'first-to-file' rule.'"  *CMG Worldwide, Inc. v. Bradford Licensing Associates*, No. 1:05-cv-0423-DFH-TAB, 2006 WL 3248423, *3-6 (S.D. Ind. Mar. 23, 2006) (Hamilton, J.) (*citing Trippe Mfg. Co. v. American Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir.1995); *Tempco Electric Heater Corp. v. Omega Engineering Inc.,* 819 F.2d 746, 750 (7th Cir.1987)).  *Accord Thomson, Inc. v. Parental Guide of Texas, Inc*., No. 1:03-CV-0072-DFH, 2003 WL 21078118, *3 (S.D. Ind. May 12, 2003) (Hamilton, J.) ("the Seventh Circuit has long rejected a rigid 'first to file' rule"); *HAS, Inc. v. Bridgton, Inc.*, No. IP 98-0167-C H/G, 1998 WL 1548038, *1 (S.D. Ind., June 11, 1998) (Hamilton, J.) (same).[2]

Instead, in a case like this, the issue of where the case should end up should be decided by reference to the traditional 28 U.S.C. § 1404(a) factors.  *E.g., CMG Worldwide,* 2006 WL 3248423 at *3-6 (finding regardless of who filed first venue should be determined by an evaluation of the relevant § 1404(a) private and public interest factors).  A review of those factors shows New York is clearly more convenient than this

---

[2] Defendants cite the Court to its decision in *Buztronics, Inc. v. Theory3, Inc.,* No. 1:04CV1485-DFH-VSS, 2005 WL 1113873 (S.D. Ind. May 9, 2005) (Hamilton, J.), but the Court made explicit there that it was **not** applying Seventh Circuit first-to-file law.  *Id.* at *3.

District for the litigation of these cases which Defendants themselves recognize should be consolidated:  New York is where Defendants are headquartered, where the Plan is administered, where the majority of the events relevant to the suit occurred, where all the relevant documents and all or most of the important witnesses are located.  And those are just the facts that *Defendants* placed into the record.

### 1.    The Private Interest Factors.

The relevant private interest factors are the familiar ones:  (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums.  *Id.*  They all weigh heavily in favor of transfer to New York of this action, and *Caufield,* for consolidation there with *Proesel.*

First, the *Abelman* Plaintiffs' choice of forum is New York, which is also the preferred or accepted forum for the plaintiffs in the other two cases.[3]  The original two lead plaintiffs in *Abelman* live in Ohio so they filed in Ohio.  The amended *Abelman* complaint, filed while the case was still in Ohio, added four more plaintiffs (Byrd, Jemmott, Vazquez, or Nelson-Manley), all of whom lived and/or live and worked for Colgate in New York.  Defs. Mem. in Support of Mtn. to Dismiss (Doc. 10) at 5 n.5. Displaced from their originally chosen forum by Defendants and deprived (by Defendants) of the knowledge that there was a third action already pending in New York which Plaintiffs could have chosen to avoid transfer here in the first place, Plaintiffs should be entitled to express their forum preference anew.  That preference is New York.

---

[3] The plaintiff in *Proesel*, who filed her case in New York, prefers New York.  Mr. Caufield accepts New York in place of his original forum choice.

Where plaintiffs or most of them reside in their preferred forum, that forum is entitled to deference "[u]nless it is clearly outweighed by other factors." *Trustees of the Hotel Employees and Restaurant Employees Int'l. Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1182 (N.D. Ill. 1990). That is no less true in the case of a proposed class action. Indeed, the fact that the case is pled as a class action only heightens the deference that should be accorded Plaintiffs' preference because much of the rest of the proposed Class lived, worked, earned their pension benefits and were allegedly underpaid in New York. *See In re Warrick,* 70 F.3d 736, 741 & n.7 (2d Cir. 1995) (plaintiff's choice of forum in proposed ERISA class action entitled to "substantial deference" where sponsor was headquartered and plan administered and where it was "thus reasonable to assume that a disproportionate share of the putative class members reside").[4]

Examination of the second factor, the situs of material events, confirms substantial deference should be given to Plaintiffs' preference for New York. The Plan was designed and is administered in New York, and Colgate, a New York corporation, is headquartered there. Moreover, most of the Plaintiffs lived, worked, earned their pension benefits and were allegedly underpaid in New York as well, making venue proper in New

---

[4] *See also Fox v. Massey-Ferguson, Inc.*, No. 93-74615, 1995 WL 307485, *2-5 (E.D. Mich., March 14, 1994) (transferring case to district where plan was administered and a large number of proposed class members resided); *cf. Byerson* v. *Equifax Information Services, LLC,* 467 F.Supp.2d 627, 633 (E.D.Va. 2006) ("plaintiff's choice of forum is entitled to significant weight that is not materially diminished merely because the case is a class action" where the forum choice "is amenable to inexpensive discovery and trial because the forum is home both to the Plaintiffs and to key non-party witnesses").

York on all four bases under which cases can be properly venued under the statute.[5]

According to Defendants, "New York has the 'most significant relationship' to the claims

alleged." *Caufield,* Doc. 25 at 13 (citation omitted); *see also id.* ("New York is the only

jurisdiction with which (for purposes of this litigation) all the putative class members

have any meaningful contact").

The third factor, the relative ease of access to sources of proof, also favors New

York. As Defendants themselves said:

> Virtually all of the documents that are potentially relevant to this action,
> including Plan documents and Plan records, are maintained in New York.
> The only documents that may not be in New York are documents in the
> possession of each class member, which documents likely are located
> throughout the country where each participant lives. Thus, relevant
> documents and other evidence will have to be transferred regardless of
> which court hears the case. Moreover, any potential witnesses in this
> matter are similarly located in New York. Those individuals with intimate
> knowledge of the Plan's administration work at Colgate's headquarters in
> New York.

*Abelman* S.D. Ohio. Doc. 10 at 11 n.8 (citations to supporting declaration omitted).

While modernity makes the third factor less compelling than it once was in years past as

to documentary proof, Defendants do not deny that access to such proof is going to be far

easier in New York than in Indiana.

---

[5] Under ERISA § 502(e)(2), an action "may be brought in the district [1] where the plan is
administered, [2] where the breach took place, or [3] where a defendant resides or [4] may be
found." 29 U.S.C. § 1132(e)(2). That Defendants reside and may be found in New York should
be clear. Regarding where the breaches occurred, where alleged breaches arise out of failures to
pay plan benefits, they are deemed to occur for ERISA venue purposes where the plaintiff is to
receive his or her benefits based on a contracts law analysis which looks to place of performance
to identify where the breach took place. *E.g., Ingalls Mem'l Hosp. v. N. East. Ctr., Inc.*, No. 90 C
3283, 1991 WL 24505, *2 (N.D. Ill. Feb. 20, 1991) (breach took place in the location where the
hospital is located and denied ERISA payments); *Foster G. McGaw Hosp. v. Pension Trust Dist.
#9 Welfare Trust*, No. 92 C 4361, 1992 WL 309571, *2 (N.D. Ill 1992) (same). For most of the
Plaintiffs and much of the proposed Class, that place is New York.

As for access to witnesses, the Court must be concerned with availability of non-party witnesses needed for trial who are outside of the forum's subpoena power.[6] Plaintiffs have not yet obtained discovery and so as of yet do not have a witness list to present to the Court but they may seek to present the testimony of former Colgate employees regarding the design and administration of the Plan (the plan dates from 1989) who are outside the subpoena power of this Court but not outside the subpoena power of the Southern District of New York.  By contrast, Defendants, who have superior knowledge and access to proof regarding the Plan, have not even implied there could be persons in Indiana whose presence at a live hearing or trial would be necessary or useful to them but potentially unavailable if this case were transferred to New York.

The fourth factor, the convenience of the witnesses, also favors transfer to New York.  If there are to be evidentiary hearings or a trial, non-party witnesses are more likely to find New York far more convenient than Indiana.

The fifth factor, the convenience to the parties of litigating in the respective forums, also strongly favors transfer to New York.  All of the parties either reside in New York, favor transfer to New York or do not oppose transfer to New York.  If there are to be depositions of the plaintiffs, in *Abelman* or all three cases, most of the plaintiffs are located in or closer to New York than Indiana.  It will also be far easier for plaintiffs and other class members to attend court hearings in New York.  It will obviously be far more convenient to Colgate to litigate in New York than in Indiana.

---

[6] That Defendants have answered the complaint in *Abelman* and not moved to dismiss all of plaintiffs' claims confirms that the Court needs to consider that, however unlikely, this case might not be entirely resolved on cross-motions for summary judgment.

2.    **The Public Interest Factors.**

The public interest factors also strongly favor transfer to New York. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986) (public interest factors "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result"). "In determining whom this factor favors, the court will commonly look to (1) the congestion and likely speed to trial in the transferee forum; (2) courts' relative familiarity with the relevant law; (3) the courts' efficiency interest in avoiding duplicative litigation; and (4) the relation of each community to the controversy at issue." *CMG Worldwide,* 2006 WL 3248423 at *5.

Regarding docket congestion and speed to trial, as the Court recently noted in *CMG Worldwide*, "the Southern District of New York is substantially less congested and provides greater speed to trial than the Southern District of Indiana." *Id.* at *6.

Regarding the relative familiarity with the relevant law, this too favors transfer to New York given that Defendants seek application of New York law for purposes of their statute of limitations argument as an alternative means for resolving one or more claims or reducing their exposure to the proposed Class.

In their opening brief, Plaintiffs did not argue, as Defendants suggest, that this "mandate[s] transfer." Opp. at 8. To the contrary, Plaintiffs merely pointed out that the application of New York (versus Indiana or Ohio) law that Defendants seek, premised on *Berger v. AXA Network LLC,* 459 F.3d 804 (7th Cir. 2006), was based on their assertions that "New York has the 'most significant relationship' to the claims alleged." Pl. Mtn. at 4-5. Plaintiffs agree that this Court is perfectly capable of applying whatever law needs to be applied but that does not change the public interest factors that the Court is to weigh

or make Plaintiffs "disingenuous," Opp. at 7, for (now) noting that relative familiarity

with the applicable law is one of those factors and here favors transfer.

The third public interest factor, interest in avoiding duplicative litigation, is

neutral. Apart from *Abelman,* there is currently one case pending where Defendants want

to be (Indiana, *Caufield*), and one case pending in the forum Plaintiffs prefer (New York,

*Proesel*).

The fourth factor, the relation of each community to the controversy at issue, also

favors New York. The legality of ERISA pension plans is an interest all communities

share, but the connection between Indiana and the controversy at issue is "certainly much

weaker than the relation between the conflict and the Southern District of New York."

*CMG Worldwide,* 2006 WL 3248423 at *5.

**II.    The Motion to Stay Should Be Granted.**

Defendants argue that the motion to stay aspect of the instant motion should not

be granted because Plaintiffs seek an "indefinite" extension of time. Opp. at 11.

Defendants confuse the concepts of indefinite and <u>indeterminate</u>: Plaintiffs' requested

stay is of a definite but indeterminate length (due to circumstances beyond Plaintiffs'

control). In any event, Defendants do not assert or begin to suggest how they would be

prejudiced by the requested stay at least until (1) the motion they filed to have *Proesel*

transferred and (2) the notice of related case filed in this case are acted upon.

Defendants also assert "Plaintiffs are merely trying to delay the Court's

determination on the Motion to Dismiss because they have no meaningful response to

Defendants' motion." Opp. at 10. Whether Plaintiffs' response is meaningful is for the

court selected to render such a judgment to decide. That is precisely the problem,

however.  Until there is some level of certainty where this action is going to end up, it would be wasteful of Plaintiffs' limited resources and frankly pointless to make Plaintiffs brief their response to a partial motion to dismiss when in all likelihood wherever the three cases are ultimately consolidated, the presiding judge is going to require the plaintiffs to file a single, consolidated and amended complaint before deciding any partial motion to dismiss Defendants may thereafter wish to file.  That Defendants keep insisting on the filing of a merits brief in this unconsolidated action seems to prove they are either not serious about consolidation (which was the only legitimate basis upon which this case was displaced from Ohio in the first place and the asserted premise upon which they are trying to move *Proesel* out of New York) or they seek to drain Plaintiffs' resources for perceived tactical advantage, or both.

## Conclusion

This action should be transferred to the Southern District of New York.  Pending a ruling on this instant motion, the consolidation of all three cases and the filing of one consolidated and amended complaint, further proceedings on Defendants' motion for partial dismissal the *Abelman* complaint should be stayed.

10

Dated:  February 19, 2008                      Respectfully submitted,


                                               ____ /s *Eli Gottesdiener*
                                               Eli Gottesdiener
                                               Gottesdiener Law Firm, PLLC
                                               498 7th Street
                                               Brooklyn, New York 11215
                                               Phone:  (718) 788-1500
                                               Fax:      (718) 788-1650
                                               Email:    eli@gottesdienerlaw.com

                                               *Counsel for Plaintiffs and the proposed Class*


## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2008, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to Defendants, through below listed counsel, by operation of the Court's electronic filing system.

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

Ellen E. Boshkoff
Philip J. Gutwein II
Baker & Daniels LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204


                              /s/*Eli Gottesdiener*
                                 Eli Gottesdiener

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| PAUL ABELMAN, et al. | |
| Plaintiffs, | |
| vs. | Case No.  07-cv-01554-DFH-JMS |
| COLGATE-PALMOLIVE COMPANY, et al., | Judge David Frank Hamilton |
| Defendants. | Magistrate Judge Jane Magnus-Stinson |

**SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER**
**AND IN OPPOSITION TO MOTION TO STAY PROCEEDINGS**

### I.    INTRODUCTION

Defendants Colgate-Palmolive Company ("Colgate"), Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan"), and the Employee Relations Committee (the "Committee") (collectively "Defendants") submit this brief sur-reply in opposition to Plaintiffs' (1) Motion to Transfer Venue and (2) Motion to Stay Proceedings Pending a Ruling on the Motion to Transfer.  Although Defendants have already addressed most of Plaintiffs' arguments in Defendants' Opposition to Plaintiffs' Motion, this sur-reply is necessary to address certain misstatements in Plaintiffs' Reply brief (hereafter "Plaintiffs' Reply").

As this Court well knows, Defendants Colgate and the Plan moved to transfer a latter-filed New York action, captioned Shari Proesel, et al. v. Colgate-Palmolive Co., et al., Civil Action No. 07 CIV 9515-BSJ-KNF (S.D.N.Y.), to this Court.  Nevertheless, in Plaintiffs' Reply, Plaintiffs suggest that this case should be transferred to New York because Defendants' motion to transfer Proesel was not "of [Defendants'] own volition and in [a] timely fashion," and that Colgate and the Plan moved to transfer that case "only after the Abelman plaintiffs filed the instant motion [to transfer to New York]."  (Plaintiffs' Reply at 2, n.1).  This is false.  In fact,

1

when Defendants' counsel spoke with Plaintiffs' counsel regarding the <u>Proesel</u> case *before* the motion to transfer this case to New York was filed, Defendants' counsel specifically informed Plaintiffs' counsel that they intended to seek transfer of <u>Proesel</u> to this Court, and that they were in the process of preparing their motion.  Shortly thereafter, Colgate and the Plan filed their Motion to Transfer <u>Proesel</u> on January 15, 2008, just as they had represented they would be doing.  Notably, that was *the same day* that Plaintiffs in <u>Abelman</u> moved to transfer the case to New York (which would be the third forum for that case).  Plaintiffs' related argument that Colgate and the Plan failed to move to transfer <u>Proesel</u> in a "timely fashion" is belied by the fact that Colgate and the Plan moved to transfer <u>Proesel</u> *before* any responsive pleading was due in that case (January 21, 2008).  Thus, Plaintiffs' suggestion that Defendants' motion to transfer the <u>Proesel</u> case is untimely is disingenuous.

In addition, none of Plaintiffs' other arguments demonstrate that the Southern District of New York is a "clearly more convenient" forum than the current one.  Clearly, the <u>Abelman</u> Plaintiffs were amenable to litigating their case in Ohio and in Indiana, and they could have initiated their action in New York if they wanted to be in New York.  Accordingly, Plaintiffs' request to "express their forum preference anew" (Plaintiffs' Reply at 4) should be rejected, and the Plaintiffs' Motion to Transfer should be denied.

Respectfully submitted,

Dated: February 25, 2008      MORGAN, LEWIS & BOCKIUS LLP

By:     <u>/s/ Theresa J. Chung</u>
Joseph J. Costello, admitted *pro hac vice*
Jeremy P. Blumenfeld, admitted *pro hac vice*
Theresa J. Chung, admitted *pro hac vice*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584

-2-

Fax:  (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendants Colgate-Palmolive
Company, Colgate-Palmolive Company
Employees' Retirement Income Plan, and the
Employee Relations Committee

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2008, a copy of the foregoing document was filed electronically and can be accessed through the Court's electronic filing system.  Notice of this filing also will be sent to the following parties by first class U.S. mail, postage prepaid, and properly addressed to:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5584
Fax:  (215) 963-5001
tchung@morganlewis.com
*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| PAUL ABELMAN, et al. | |
| Plaintiffs, | |
| vs. | Case No.  07-cv-01554-DFH-JMS |
| COLGATE-PALMOLIVE COMPANY, et al., | Judge David Frank Hamilton |
| Defendants. | Magistrate Judge Jane Magnus-Stinson |

**DEFENDANTS' MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION TO TRANSFER
AND IN OPPOSITION TO MOTION TO STAY PROCEEDINGS**

Defendants Colgate-Palmolive Company ("Colgate"), Colgate-Palmolive Company

Employees' Retirement Income Plan ("the Plan"), and the Employee Relations Committee (the

"Committee") (collectively "Defendants"), by and through their attorneys, move for leave from

this Court to file a Sur-Reply in opposition to Plaintiffs' (1) Motion to Transfer Venue and (2)

Motion to Stay Proceedings Pending a Ruling on the Motion to Transfer, and in support thereof,

state:

1.    Plaintiffs filed a Motion to Transfer Venue and Motion to Stay Proceedings

Pending a Ruling on the Motion to Transfer on January 15, 2008.

2.    Defendants timely filed a Memorandum of Law in Opposition to Defendant's

Motion to Transfer and in Opposition to Motion to Stay Proceedings Pending a Ruling on the

Motion to Transfer on February 4, 2008.

3.    Plaintiffs filed a Reply brief in support of the Motion to Transfer and Motion to

Stay Proceedings Pending a Ruling on the Motion to Transfer on February 19, 2008.  After

reviewing Plaintiff's Reply, Defendants submit that a concise sur-reply will aid the Court in

reaching its determination with respect to the Motion to Transfer and Motion to Stay Proceedings Pending a Ruling on the Motion to Transfer.  Moreover, a brief sur-reply is necessary to address certain mischaracterizations in Plaintiff's Reply.

    4.    Defendants now request leave to file a sur-reply in opposition to Plaintiffs' Motion to Transfer Venue and Motion to Stay Proceedings Pending a Ruling on the Motion to Transfer, attached hereto as Exhibit A.

    WHEREFORE, Defendants respectfully request that this Court grant their Motion for Leave to File a Sur-reply.

Respectfully submitted,

Dated: February 25, 2008        MORGAN, LEWIS & BOCKIUS LLP

By:   /s/ Theresa J. Chung
Joseph J. Costello, admitted *pro hac vice*
Jeremy P. Blumenfeld, admitted *pro hac vice*
Theresa J. Chung, admitted *pro hac vice*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584
Fax:  (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendants Colgate-Palmolive Company, Colgate-Palmolive Company Employees' Retirement Income Plan, and the Employee Relations Committee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2008, a copy of the foregoing document was filed electronically and can be accessed through the Court's electronic filing system.  Notice of this filing also will be sent to the following parties by first class U.S. mail, postage prepaid, and properly addressed to:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs


/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5584
Fax:  (215) 963-5001
tchung@morganlewis.com
*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

PAUL ABELMAN, et al.

                                    Plaintiffs,

            vs.

                                                    Case No.  07-cv-01554-DFH-JMS

COLGATE-PALMOLIVE COMPANY, et al.,              Judge David Frank Hamilton
                                                Magistrate Judge Jane Magnus-Stinson

                                    Defendants.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR LEAVE TO FILE A SUR-REPLY**

            This Court, having considered Defendants' Motion for Leave to File a Sur-reply,

and being duly advised of its premises, now finds that the motion should be and is hereby

**GRANTED**.  The Clerk is directed to file Defendants' Sur-reply in further opposition to

Plaintiffs' Motion to Transfer Venue and Motion to Stay Proceedings Pending a Ruling on the

Motion to Transfer.


Dated:_____                    _____
                                                JUDGE
                                                United States District Court
                                                Southern District of Indiana
                                                Indianapolis Division

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

1

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215
eli@gottesdienerlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL ABELMAN, on behalf of himself and all others similarly situated, VALERIE R. NUTTER, WARREN JEMMOTT, SUSAN BYRD, ADRIANA VASQUEZ and CORA NELSON-MANLEY, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:07-cv-1554-DFH-JMS |
| COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, and ERC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER TO RESOLVE CONSOLIDATION AND RELATED CASE ISSUES

Defendants filed on December 6, 2007 a notice of related action asserting that this action should be consolidated with *Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan*, No. 4:07-cv-0016-SEB-WGH, pending before Judge Barker. The court is aware that informal discussions led by Magistrate Judge Hussmann have not resolved the issue. Pursuant to this court's Local Rule 42.2, the proper way to address the issue is through a motion filed in the earlier-filed case. There is no pending motion in the *Caufield* case, but Judge Barker can take judicial notice of the defendants' December 6, 2007 filing in this case and can treat that filing as a motion under Local Rule 42.2. Accordingly, the court hereby ORDERS plaintiffs in this *Abelman* action to file **no later than March 14, 2008**

in *Caufield* a statement of their position on whether this action should be consolidated with *Caufield.*

    So ordered.

Date:  February 29, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Hon. Sarah Evans Barker
210 Birch Bayh U.S. Courthouse
46 East Ohio Street
Indianapolis, Indiana  46204

William Henry Blessing
119 East Court Street
Suite 500
Cincinnati, OH 45202

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Eli Gottesdiener
GOTTESDIENER LAW FIRM PLLC
eli@gottesdienerlaw.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **PAUL ABELMAN**, *et al.* | ) |
| | ) |
| **On behalf of themselves and** | ) |
| **All others similarly situated** | ) |
| | ) |
| **Plaintiffs,** | ) **Cause No. 1:07-cv-01554-DFH-JMS** |
| | ) |
| **v.** | ) |
| | ) |
| **COLGATE-PALMOLIVE CO.**, *et al.* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

PLAINTIFFS' STATEMENT IN RESPONSE TO
THE COURT'S ORDER OF FEBRUARY 29, 2008 REGARDING
CONSOLIDATION OF THIS ACTION WITH *CAUFIELD*

The *Abelman* Plaintiffs do not oppose consolidation of this action with *Caufield*

for purposes of resolving the venue question posed by the pendency of three related

cases, *i.e.*, *Abelman* (filed in the S.D. Ohio)*, Caufield* (filed in this District) and *Proesel*

(filed in the S.D.N.Y.)*.

This is without prejudice to Plaintiffs' position that no weight should be given to

the fact that *Abelman* is currently pending in this District and might be consolidated with

*Caufield.  Abelman* was properly filed in the Southern District of Ohio; *Abelman* contains

claims that *Caufield* does not; *Abelman* seeks to represent all current and former Plan

participants whereas *Caufield* seeks only to represent former Plan participants; and

*Abelman* would never have been transferred here had Defendants not misled all

concerned (except themselves) to proceed as if there was no such third case (*Proesel*)

pending in their home forum.  New York is where Colgate is incorporated and

headquartered and where the Plan is administered.  It is the state whose law applies, based on Colgate's choice, whenever federal law does not.  While the most convenient, New York is also, from Defendants' "forum-shopping" perspective, the worst place to have the legality of their ERISA plan's benefit accrual and distribution methodologies adjudicated.  Despite the unattractive label applied to the practice, there is nothing wrong with "forum-shopping" whichever side is doing the shopping:  it is a legitimate, expressly authorized action when more than one forum satisfies the requisite legal criteria.  Plaintiffs do not begrudge Defendants the right to have tried to seek a venue outcome consistent with their aversion to New York and/or strong preference for Indiana (and/or Judge Barker).  Plaintiffs' objection is that the ends did not justify the means:  what Defendants had no right to do, and should not be rewarded for having done, is to have misled several different judicial officers to accomplish their forum-shopping objectives.[1]

Accordingly, Plaintiffs submit that upon consolidation of this case with *Caufield,*

---

[1] Not only is Plaintiffs' detailed showing of Defendants' materially misleading statements and omissions in this regard (*see* Docs. 23, 26), entirely unrebutted (*see* Defense filings, Docs. 25, 27), but Colgate continues to mislead and to seek to profit from the fact that it had *Abelman* transferred here under false pretenses in statements it is now making in *Proesel.  Just yesterday,* Defendants told Judge Jones she should transfer *Proesel* here because this District is "where two putative class actions involving virtually the same claims and class members, captioned Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016-SEB-WGH, and Paul Abelman, et al. v. Colgate-Palmolive Co., et al.; No. 1:07-cv-01554-DFH-JMS, were previously **filed.**"  Ex. 1, *Proesel* Doc. 19 at 1 (emphasis added).  That is not true:  *Abelman* was filed in Ohio, not Indiana.  Defendants are no more candid when they later say:  "Although the plaintiffs in the second case, Abelman, have moved to transfer to New York, that is only after they previously **consented** to the transfer of their case from Ohio to Indiana. (Abelman S.D. Ohio Docket No. 28)."  Ex. 1 at 2 (emphasis added).  That too is misleading, and designed solely to advance the illegitimate (and wholly rhetorical) "argument" that "[a] **second** transfer of Abelman would serve no purpose."  Ex. 1 at 2 (emphasis added).  The *Abelman* Plaintiffs explained clearly that they **opposed** transfer in *four* separate filings in Ohio, *see Abelman* S.D. Ohio Docs. 17, 20, 23, 28, including Doc. 28 ( "*Opposition* to Defendants' Motion to Transfer").  They said their "consent" would come if and only if Judge Barker issued rulings that left them with "little basis for opposing transfer," *Abelman* S.D. Ohio Doc. 23 at 5, which is obviously not the "consent" Defendants imply.

Plaintiffs' pending 28 U.S.C. § 1404(a) motion seeking transfer to New York for

consolidation with *Proesel* should be deemed to encompass both *Abelman* and *Caufield*

(in which plaintiff Caufield has already consented to transfer to New York, *Caufield* Doc.

61).  In deciding that motion, no weight should be given to the fact that *Abelman* was

transferred here.  Both cases should be transferred to the Southern District of New York

for consolidation with *Proesel*.


Dated:  March 14, 2008                    Respectfully submitted,


                                          _____/s *Eli Gottesdiener*
                                          Eli Gottesdiener
                                          Gottesdiener Law Firm, PLLC
                                          498 7th Street
                                          Brooklyn, New York 11215
                                          Phone:   (718) 788-1500
                                          Fax:       (718) 788-1650
                                          Email:    eli@gottesdienerlaw.com

                                          *Counsel for Plaintiffs and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2008, I caused a copy of the foregoing to be

electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this

filing will be sent to Defendants, through below listed counsel, by operation of the

Court's electronic filing system.

       Joseph J. Costello
       Jeremy P. Blumenfeld
       Theresa J. Chung
       Morgan, Lewis & Bockius LLP
       1701 Market Street
       Philadelphia, PA  19103

       Ellen E. Boshkoff
       Philip J. Gutwein II
       Baker & Daniels LLP
       300 North Meridian Street, Suite 2700
       Indianapolis, Indiana  46204

           /s/*Eli Gottesdiener*
           Eli Gottesdiener

# Exhibit 1

**IN THE UNITED STATES DISTRICT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARI PROESEL AND PAMELA HOSIE, et al. | |
| Plaintiffs, | |
| vs. | Case No.  07-CIV-9515-BSJ-KNF |
| COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, COLGATE-PALMOLIVE COMPANY, as Plan Administrator, | Judge Barbara S. Jones<br>Magistrate Judge Kevin N. Fox |
| Defendants. | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO TRANSFER VENUE**
**TO THE SOUTHERN DISTRICT OF INDIANA**

## I.    INTRODUCTION

In the opening memorandum filed by Defendants Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan") and Colgate-Palmolive Company ("Colgate") (collectively "Defendants"), Defendants articulated the straight-forward reasons for transferring this case to the Southern District of Indiana, where two putative class actions involving virtually the same claims and class members, captioned Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016-SEB-WGH, and Paul Abelman, et al. v. Colgate-Palmolive Co., et al.; No. 1:07-cv-01554-DFH-JMS, were previously filed and are pending.  Notwithstanding the arguments in Plaintiff Pamela Hosie's ("Plaintiff" or "Hosie") Memorandum in Opposition to Defendants' Motion for Transfer of Venue to the Southern District of Indiana ("Opp. Mem."), the balance of convenience does *not* justify a divergence from the "first-to-file" rule, and accordingly, the Court should follow the "strong presumption in favor of transfer to the forum of the first-filed suit."  See McCain v. Rahal Letterman Racing, LLC, No. 07-cv-5729 (JSR), 2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007).

Moreover, Hosie concedes that this case should be heard in the same district as the Caufield and Abelman cases. (Opp. Mem. at 1-2). The three cases basically challenge the same Plan provisions on behalf of essentially the same nationwide putative class of Plan participants. As a practical matter, this means that there are two options: (1) either this case needs to be transferred to Indiana, *or* (2) the two class action cases pending in Indiana before different judges need to be transferred to this district. Defendants submit that the first course of action is the more practicable and efficient course of action.

Allowing this case to remain in the Southern District of New York would require the transfer of two-related putative class action cases to this district for consolidation and coordination. Plaintiff is incorrect in asserting that both the Caufield and Abelman plaintiffs are "petitioning their respective courts to transfer their respective cases to New York." (Opp. Mem. at 9). In fact, the plaintiff in Caufield is "content [to remain] litigating before [the Indiana court]" and has *not* moved to transfer his case to this District. (Caufield Docket No. 61). Although the plaintiffs in the second case, Abelman, have moved to transfer to New York, that is only after they previously consented to the transfer of their case from Ohio to Indiana. (Abelman S.D. Ohio Docket No. 28). A second transfer of Abelman would serve no purpose, and would only further delay these proceedings. Accordingly, the Court should adhere to the "first-to-file rule" because the balance of convenience weighs in favor of – and not against – transfer to the Southern District of Indiana.

### A.     The Two Related Cases Pending In Indiana Were Filed Before This Action And Have Progressed Further Than This Case.

Plaintiff mischaracterizes the two Indiana cases as being at a "nascent stage with no substantive rulings … or substantive briefing." (Opp. Memo. at 2). In fact, both Indiana cases, which were filed before this action, have proceeded further than this action, and the Indiana

courts are more familiar with the issues involved in these cases. (See Caufield and Abelman dockets, attached hereto as Exhibits A and B, respectively; see also Abelman S.D. Ohio Docket, attached hereto as Exhibit C). The parties in Caufield and Abelman already have taken steps to litigate several of the issues that Plaintiff seeks to have adjudicated in this action. (See Caufield Docket Nos. 24, 25, 34, 39-54, 59-62; Abelman Docket Nos. 9-10). Indeed, Motions to Dismiss have been filed in both Abelman and Caufield on issues that will arise – but have not yet arisen in this case.[1] In Caufield, the legal issues in the Motion to Dismiss have been the subject of numerous briefs, including extensive supplemental briefing, and the Motion to Dismiss in Caufield is fully briefed and ripe for consideration before Judge Sarah Evans Barker.[2] In Abelman, Colgate, the Plan, and the Employee Relations Committee ("the Committee") have moved to dismiss several of the claims, and the plaintiffs have requested a stay of briefing on this motion pending a determination on their motion to transfer. (Abelman Docket Nos. 9-10, 23). The Abelman plaintiffs have already had one opportunity to amend their Complaint, adding several named plaintiffs and substantive claims. (Abelman S.D. Ohio Docket No. 27). In addition, the parties in Caufield have engaged in limited discovery, including briefing and a ruling on whether discovery should be stayed pending a ruling on the Plan's Motion to Dismiss. (Caufield Docket No. 40-41, 44, and 45). The parties in Caufield also have participated in

---

[1]   For example, Defendants have raised issues relating to the statute of limitations and released claims that will affect the claims of thousands of putative class members in this case. See Caufield Docket No. 25 (Defendant's Memorandum In Support of Motion to Dismiss; No. 34 (Plaintiff's Response in Opposition to Motion to Dismiss); No. 42 (Defendant's Reply in Support of Motion to Dismiss); No. 47 (Plaintiff's Citation to Supplemental Authority in Opposition to Motion to Dismiss); No. 53 (Defendant's Notice of Supplemental Authority in Support of Motion to Dismiss); No. 58 (Plaintiff's Response to Defendant's Notice of Supplemental Authority); Abelman Docket Nos. 9-10.

[2]   See Caufield Docket No. 25 (Defendant's Memorandum In Support of Motion to Dismiss; No. 34 (Plaintiff's Response in Opposition to Motion to Dismiss); No. 42 (Defendant's Reply in Support of Motion to Dismiss); No. 47 (Plaintiff's Citation to Supplemental Authority in Opposition to Motion to Dismiss); No. 53 (Defendant's Notice of Supplemental Authority in Support of Motion to Dismiss); No. 58 (Plaintiff's Response to Defendant's Notice of Supplemental Authority).

several status conferences before Magistrate Judge William G. Hussmann, Jr., regarding the

claim at issue, a Case Management Plan, the scope of discovery, the potential for consolidation,

and other matters.  (Id., Nos. 43, 45, 46, 52, 59, 62).  By contrast, in this case, Defendants have

answered the Complaint and moved to transfer to Indiana; the parties have submitted no other

motions, and no conferences with the Court have been held.

       Because the Indiana courts are more familiar with the issues raised in those cases, a

transfer of this case to Indiana would further judicial economy.  See S & H Uniform Corp. v. V-

Tex, Inc., No. 03-cv-4939 (JSR), 2003 WL 22439644, at *2 (S.D.N.Y. Oct. 24, 2003)

(transferring action to district where a related case was in a more advanced posture, noting that

"it makes no sense for both lawsuits to proceed in separate fora when they are mirror images of

each other").  Indeed, the "first-to-file" captures the principle that where the court of the earlier-

filed action "has already spent considerable time and effort dealing with the exact *same* case,"

the second suit should give priority to the first.  See City of New York v. Exxon Corp., 932 F.2d

1020, 1025-1026 (2d Cir. 1991) (emphasis in original); see id. at 1026 (the interest in judicial

economy argues that "two courts should not expend their energies on [the same] matter …. given

[the first court's] considerable expenditure of time and effort on this case, there is no sound

reason why [the first judge's] work should be duplicated in [a latter] proceeding.").  Allowing

this case to proceed will ultimately require the transfer of Caufield and Abelman to this District,

thus forcing the parties and the Court to duplicate proceedings that have already occurred in

those cases.  This outcome easily could be avoided by simply transferring this case to the

Southern District of Indiana.

    **B.**    **The Parties And Courts In The Two Indiana Cases Have Taken Preliminary**
          **Steps To Coordinate Their Cases.**

       In addition, the parties (and judges) in Caufield and Abelman have already taken

preliminary steps to coordinate their cases.  The Magistrate Judge in <u>Caufield</u> directed plaintiffs'

counsel in <u>Abelman</u> to participate in the most recent status conference call in <u>Caufield</u>, held on

February 27, 2008.  (<u>Caufield</u> Docket Nos. 59 and 62).  Magistrate Judge Hussmann indicated

that he would apprise both Judge Barker (in <u>Caufield</u>) and Judge David Frank Hamilton (in

<u>Abelman</u>) of the pending issues, and another conference is scheduled for April.  (<u>Caufield</u>

Docket No. 62).  Also, the Indiana courts will soon determine whether to coordinate and

consolidate the two related cases pending in that district before different judges.[3]  Accordingly,

because the Indiana courts already have taken steps to coordinate their efforts in the Colgate

cases, a transfer of this case to Indiana would further the interests of judicial economy.

**C.    The Balance Of Convenience Does Not Justify A Departure From The "First-To-File" Rule.**

The balance of convenience does not justify a departure from the "first-to-file" rule.

Plaintiff has failed to overcome the "strong presumption" in favor of the forum of the first-filed

suit, particularly in a putative nationwide class action where the Plan participants are located

throughout the country.  Given the totality of the circumstances, New York is not a more

convenient forum to the parties in this case, nor would it further judicial efficiency or the

interests of justice to allow this case to proceed in this district.  None of Plaintiff's arguments

---

[3]    On December 6, 2007, Colgate, the Plan, and the Committee filed a Notice of Related Action in <u>Abelman</u>, informing the court that a related, first-filed case was pending, and that <u>Abelman</u> should be transferred to Judge Barker.  (<u>Abelman</u>, Docket No. 6).  The court in <u>Abelman</u> has required the plaintiffs to respond to the Notice of Related Action by March 14, 2008.  (<u>Abelman</u>, Docket No. 28).

demonstrate that the Southern District of New York is a more convenient forum than Indiana.[4]

Plaintiff Pamela Hosie, the only named plaintiff in this action, resides in Milfay, Pennsylvania

(and not New York), and will have to travel whether or not this action is transferred. (Compl. ¶

9). Plaintiff's allegation that "most of the Plaintiffs lived, worked, earned their pension benefits

and were allegedly underpaid in violation of ERISA in New York" is without foundation. (Opp.

Mem. at 7). As Colgate SEC's filings make clear, the Company has major facilities and

employees located throughout the country. (See Excerpts from Colgate-Palmolive, SEC Form

10-K filed 2/28/2008, attached hereto as Exhibit D, at 6-7). Thus, putative class members

(current and former Colgate employees who participated in the Plan) likely will have to travel

whether or not this action is transferred.[5] Defendants can and will produce their documents

(many of which may be in an electronic format) anywhere. To the extent the plaintiffs intend to

depose any of Defendants' witnesses, Defendants will make their witnesses available at a

---

[4]  Many of the cases cited by Plaintiff actually involve a straight-forward application of the "first-to-file" rule in favor of the first-filed action. See, e.g., Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 60 (S.D.N.Y. 2001) (applying the first-filed rule); Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 560-563 (S.D.N.Y. 2000) (holding that balance of convenience did not justify departure from the first-to-file rule); S-Fer Int'l, Inc. v. Paladion Partners, Ltd., 906 F. Supp. 211, 217 (S.D.N.Y. 1995) (applying first-filed rule based on the "nature of the claims and counterclaims and on the balance of convenience and absence of any indication of forum shopping or other special circumstances."); Ivy-Mar Co., Inc. v. Weber-Stephen Prods. Co., No. 93 Civ. 5973 (PKL), 1993 WL 535166, at *2 (S.D.N.Y. Dec. 22, 1993) (applying the "general rule that the first-filed suit should be given priority"). Furthermore, several of the cases cited by Plaintiff are distinguishable because they involve facts and circumstances that are not at issue here. See, e.g., Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978) (district court did not abuse its discretion by allowing later-filed infringement action to proceed in New York where, among other reasons, the defendant filed a declaratory judgment action in apparent anticipation of the plaintiff's New York suit). In this case, Defendants have not engaged in any forum shopping in anticipation of a lawsuit filed by Plaintiffs: the three lawsuits have been filed by different sets of counsel against Defendants in three separate tribunals.

[5]  For purposes of the motion to transfer analysis, the Court need not consider the convenience of the potential witnesses who are located outside both the current and transferee forum because they will have to travel whether or not the case is transferred. See Weschler v. Macke Int'l Trade, Inc., No. 99 CIV 5725 (AGS), 1999 WL 1261251, at *6 (S.D.N.Y. Dec. 27, 1999) ("[T]he Court dismisses from consideration the convenience of witnesses who are located outside both the current and transferee forums.").

mutually convenient location, regardless of where the case is pending.  See, e.g., Coker v. Bank
of Am., 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("[i]n today's era of photocopying, fax machines
and Federal Express, [the defendant's] documents easily could be sent…").  Hosie's contention
that "non-party witnesses possibly needed for trial would likely be within [the S.D.N.Y.'s]
subpoena power" is purely speculative: Hosie has not identified any former Colgate employees
with relevant knowledge who reside in the New York area.  (Opp. Mem. at 7).  Moreover, in the
event the cases are allowed to proceed in their current venues, Colgate, the Plan, and the
Employee Relations Committee will need to be in Indiana to defend Caufield (for which none of
the parties have sought transfer) and Abelman, and the same sources of proof used in Caufield
and Abelman (in Indiana) likely will be used for this action.  Thus, the balance of convenience
weighs in favor of transfer of this case to New York.[6]

In addition, Plaintiff's choice of forum should be accorded less deference because she
seeks to certify a nationwide class of former and current Colgate employees and because Hosie is
not a resident of the forum district.  It is well-established that Hosie's choice of forum is entitled
to less deference because she asserts claims on behalf of a nationwide class action.  See
Vangarelli v. Witco Corp., No. 90-cv-6794, 1991 WL 19992, at *1 (S.D.N.Y. Feb. 11, 1991)
(stating that a plaintiff's choice of forum is given "substantially less weight" in the class action
context); Connors v. Lexington Ins. Co., 666 F. Supp. 434, 454 (E.D.N.Y. 1987) ("Even the
plaintiff's choice of forum, which is generally given great deference, carries less weight in certain

---

[6]    See Alden Corp. v. Eazypower Corp., 294 F. Supp. 2d 233, 238 (D. Conn. 2003) (determining that
       availability of witnesses and documents were not compelling factors where witnesses and documents
       could be available in either location); Cali v. E. Coast Aviation Servs., Ltd., 178 F. Supp. 2d 276, 293-
       294 (E.D.N.Y. 2001) (holding that the convenience of parties factor weighed in favor of transfer where
       plaintiffs did not reside in New York and the defendant, located in New York, was defending related
       litigation in transferee district); SEC v. Captain Crab, Inc., 655 F. Supp. 615, 617-619 (S.D.N.Y. 1986)
       (granting motion to transfer to Florida where three related class action lawsuits were pending and
       noting that the same parties, non-party witnesses, and documents were involved in all four actions).

situations such as when a plaintiff seeks to represent a widely dispersed class."). This is because "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim." Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 232 (S.D.N.Y. 2003) (citations and quotations omitted). Here, moreover, the pendency of other related, earlier-filed actions further undercuts any claimed preference for Hosie's chosen forum.[7] Indeed, Hosie is a putative class member in both the Caufield and Abelman cases.

The interests of justice and judicial efficiency based on the totality of the circumstances substantially weigh in favor of transferring this action to the Southern District of Indiana, where both other related class actions are pending. Litigating all three cases before the same tribunal will result in more efficient pretrial discovery, avoid duplicitous litigation, save time and expense for both parties and witnesses, and will avoid the risk of inconsistent results. Goggins, 279 F. Supp. 2d at 234; Cali, 178 F. Supp. 2d at 295 ("litigation of related claims in the same tribunal is strongly favored because it facilities efficient, economical, and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results."); SEC v. Captain Crab, 655 F. Supp. 615, 617-619 (S.D.N.Y. 1986) (granting motion to transfer to district where three related class action lawsuits were pending and stating that "[a]lso to be weighed in the interest of convenience and judicial economy is the existence of related actions in the transferee district."). Accordingly, Plaintiff has failed to overcome the "strong presumption" in favor of the forum of the first-filed suit, and this case should be transferred to the Southern District of Indiana without further delay.

---

[7]    Moreover, when a court examines a plaintiff's choice of forum "in reference to the first-filed rule, and not merely a transfer, there is a strong presumption in favor of the forum chosen by the original plaintiff, [Caufield]." GT Plus, Limited v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 425 (S.D.N.Y. 1998) (citations omitted).

## II.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request this Court transfer this matter to the United States District Court for the Southern District of Indiana.

Dated:  March 13, 2008                    Respectfully submitted,


                                          /s/Theresa J. Chung_____
                                          Joseph J. Costello*
                                          Jeremy P. Blumenfeld*
                                          Theresa J. Chung (TC3200)
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          101 Park Avenue
                                          New York, New York 10178-0060
                                          (212) 309-6000 (phone)
                                          212) 309-6001 (fax)

                                          Attorneys for Defendants Colgate-Palmolive
                                          Company Employees' Retirement Income Plan and
                                          Colgate-Palmolive Company

                                          * Admitted *pro hac vice*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 13, 2008, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S.

First Class mail to the following counsel and parties:

Edgar Pauk (EP 1039)
144 East 44th Street, Suite 600
New York, New York 10017

Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

*Attorneys for Plaintiff Pamela Hosie*

/s/Theresa J. Chung
Theresa J. Chung (TC3200)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **PAUL ABELMAN**, *et al.* | ) | |
| | ) | |
| **On behalf of themselves and** | ) | |
| **All others similarly situated** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Cause No. 1:07-cv-01554-DFH-JMS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COLGATE-PALMOLIVE CO.**, *et al*. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**
**IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE**

In further support of their motion to transfer this action to the Southern District of New York, Plaintiffs respectfully refer the Court to the ruling dated March 19, 2008 by Judge Barbara S. Jones in *Proesel v. Colgate-Palmolive Co. Employee Retirement Income Plan,* 07 Civ. 9515 (BSJ) (KNF), *see* Ex. 1, in which she denies the Colgate Defendants' motion to transfer *Proesel* to this district, finding that the balance of convenience favors litigating all three actions – *Proesel, Abelman* and *Caufield* – in the Southern District of New York.

Dated:  March 21, 2008                    Respectfully submitted,


                                          ____/s *Eli Gottesdiener*
                                          Eli Gottesdiener
                                          Gottesdiener Law Firm, PLLC
                                          498 7th Street
                                          Brooklyn, New York 11215
                                          Phone:  (718) 788-1500
                                          Fax:      (718) 788-1650
                                          Email:    eli@gottesdienerlaw.com

                                          *Counsel for Plaintiffs and the proposed Class*


## CERTIFICATE OF SERVICE

         I hereby certify that on March 21, 2008, I caused a copy of the foregoing to be

electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this

filing will be sent to Defendants, through below listed counsel, by operation of the

Court's electronic filing system.

              Joseph J. Costello
              Jeremy P. Blumenfeld
              Theresa J. Chung
              Morgan, Lewis & Bockius LLP
              1701 Market Street
              Philadelphia, PA  19103

              Ellen E. Boshkoff
              Philip J. Gutwein II
              Baker & Daniels LLP
              300 North Meridian Street, Suite 2700
              Indianapolis, Indiana  46204


                        /s/*Eli Gottesdiener*
                          Eli Gottesdiener

**Exhibit 1**

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
SHARI PROESEL and PAMELA HOSIE,    :
individually and on behalf of all  :
others similarly situated,         :
                                   :
                       Plaintiffs, :
                                   :    07 Civ. 9515 (BSJ)(KNF)
              v.                   :
                                   :          Order
COLGATE-PALMOLIVE COMPANY          :
EMPLOYEE RETIREMENT INCOME PLAN,   :
COLGATE-PALMOLIVE COMPANY,         :
as Plan Administrator,             :
                                   :
                       Defendants. :
-----------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff, Pamela Hosie ("Plaintiff"),[1] brings this action on her own behalf and on behalf of others similarly situated against defendants, Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan") and Colgate-Palmolive Company ("Colgate") (collectively "Defendants"), pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Presently before the Court is Defendants' Motion for Transfer of Venue to the United States District Court of the Southern District of Indiana. For the following reasons, this motion is DENIED.

## STATEMENT OF FACTS

Plaintiff, a participant in the Plan, alleges that when the Plan made lump sum distributions to participants prior to

---

[1] On January 3, 2008, Shari Proesel filed a voluntary notice of dismissal of claims against Defendants.

August 17, 2006, when the relevant Plan provisions were amended pursuant to the Pension Protection Act of 2006, it violated the present value calculation rules of ERISA, resulting in unlawful forfeiture of accrued benefits.  Further Plaintiff claims that the Plan violated ERISA by failing to comply with any of the Act's minimum accrual requirements.

There are presently three actions pending nationwide, including the instant case, which allege similar claims against overlapping defendants.  The first two filed cases, *Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan*, No. 4:07-cv-0016-EB-WGH (*Caufield*") and *Abelman v. Colgate Palmolive Co.*, No. 1:07-cv-01554-DFH-JMS ("*Abelman*") (collectively the "Indiana Actions"), are now pending in the Southern District of Indiana.[2]  The Complaint in this action was filed in this Court on October 24, 2007, roughly eight months after *Caufield* was filed.

## II. DISCUSSION

Defendants argue that pursuant to the first-to-file doctrine, this case should be transferred to the Southern District of Indiana where the *Caufield* and *Abelman* suits are currently pending.  Plaintiff opposes the transfer motion on the grounds that New York is the most convenient forum for all

---

[2] Plaintiff Paul Caufield filed a Complaint against the Plan on February 12, 2007.  The *Abelman* complaint was filed on August 13, 2007 in the Southern District of Ohio.  Defendants' motion to transfer the *Abelman* action to the Southern District of Indiana was granted on November 28, 2007.

parties.  Plaintiff notes that all plaintiffs are in agreement
that the three matters should be litigated in the Southern
District of New York. The plaintiffs in *Abelman* have moved to
have their case transferred to the Southern District of New York
and the plaintiffs in *Caufield* have indicated in a filing with
the court that New York is the most convenient forum for all
parties. (*See* Pl.'s Ex. A; Pl.'s Ex. B).

The first-to-file doctrine is well established in the
Second Circuit and provides that where two actions involving
substantially or effectively the same parties and issues are
pending concurrently in different federal courts, there is a
strong presumption in favor of transfer to the forum of the
first-filed suit. *Citigroup Inc. v. City Holding Co.*, 97
F.Supp.2d 549, 555 (S.D.N.Y. 2000).  However, this presumption
is not be applied mechanically and "may be rebutted by proof of
the desirability of proceeding in the forum of the second filed
action.'"  *Hanson PLC v. Metro-Goldwyn-Mayer Inc.,* 932 F.Supp.
104, 106 (S.D.N.Y. 1996).  Thus, courts "may depart from the
rule if the balance of convenience warrants transfer of the case
to the forum where the second suit was filed." *Reliance Ins. Co.
v. Six Star, Inc.*, 155 F.Supp.2d 49, 55-56 (S.D.N.Y. 2000).  The
party seeking to depart from the first-filed rule bears the
burden of demonstrating the existence of circumstances which

justify such a departure. *See Citigroup Inc.*, 97 F.Supp.2d at 556.

In considering a departure from the first-filed rule based on a balances of conveniences, a court evaluates the same factors considered on a motion to transfer pursuant to 28 U.S.C. § 1404(a). These are: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witness; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 133-134 (S.D.N.Y. 1994). As demonstrated below, an evaluation of these factors favors venue in the Southern District of New York.

**A. Convenience of Witnesses; Location of Relevant Documents; and Convenience of the Parties**

The Court is persuaded that the first three factors favor venue in New York because relevant documents and witnesses will likely be located there. Although Defendants argue that Colgate has facilities and employees located throughout the country, it is undisputed that the individuals with the most intimate knowledge of the Plan's administration work at Colgate's

4

headquarters in New York. (*See* Pl.'s Ex. C).  Likewise, most if
not all of the relevant documents are located in New York where
the Plan was administered and Colgate is headquartered.  As
Defendants themselves stated, in an earlier filing to transfer
the *Abelman* case from the Southern District of Ohio to the
Southern District of Indiana, "[v]irtually all of the documents
that are potentially relevant to this action, including Plan
documents and Plan records, are located in New
York...[m]oreover, any potential witnesses in this matter are
located in New York." (Pl.'s Ex. C).

Additionally, convenience of the parties favors a New York
Venue.  As already stated, Defendants are headquartered in New
York and Plaintiffs in all three actions either reside in New
York, favor transfer to New York or do not oppose transfer to
New York.

**B. Locus of Operative Facts**

As stated above, the Plan was designed and is administered
in New York.  Accordingly, this factor weighs in favor of venue
in New York.

**C. Availability of Process to Compel Attendance**

As it is undisputed that most if not all relevant witnesses
are located in New York, it is likely that non-party witnesses
possibly needed for trial would be outside the scope of the

Southern District of Indiana's subpoena power but not outside the subpoena power of New York.

**D. Relative Means of the Parties**

This factor does not weigh in favor or against transfer, as the parties have not alleged any significant disparity in means which would impact their ability to litigate in either forum.

**E. A Forum's Familiarity With Governing Law**

This case presents only questions of federal law. Therefore, neither federal forum is in a better position than the other to adjudicate those issues.

**F. Weight Accorded to Plaintiff's Choice of Forum**

As plaintiffs in all three actions, at least now, indicate that their choice of forum is New York, this factor weighs against transferring the case to Indiana.

**G. Trial Efficiency and Interests of Justice**

Obviously with most relevant evidence and witnesses residing in New York, it will clearly be more efficient to conduct a trial in New York. Defendants argue that the more advanced posture of the Indiana Actions favors transfer. However, while the Indiana Actions have proceeded further than this action, both *Abelman* and *Caufield* are still at a nascent stage and there have not been any substantive rulings in either case. While it is clear that judicial economy is best served by proceeding in a single forum, as plaintiffs in both the *Abelman*

and *Caufield* favor transfer to New York, there is no reason why all three actions cannot ultimately be consolidated in this district.

### CONCLUSION

For the aforementioned reasons, the balance of conveniences favors litigating this action in New York. Accordingly, Defendants' Motion to Transfer Venue to the Southern District of Indiana is DENIED.

**SO ORDERED:**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          March 19, 2008

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| PAUL CAUFIELD, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | 4:07-cv-16-SEB-WGH |
| vs. | ) ) | |
| COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| PAUL ABELMAN, on behalf of himself and all others similarly situated, VALERIE R. NUTTER, WARREN JEMMOTT, SUSAN BYRD, ADRIANA VASQUEZA, and CORA NELSON-MANLEY, | ) ) ) ) ) ) | |
| Plaintiffs,. | ) ) | |
| vs. | ) ) | 1:07-cv-1554-SEB-JMS |
| COLGATE-PALMOLIVE COMPANY, COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, and ERC, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER ON RELATED CASE ISSUES AND TRANSFERRING CASES TO THE SOUTHERN DISTRICT OF NEW YORK

Plaintiffs Paul Caufield et. al filed an action against the Colgate-Palmolive Company Employees' Retirement Income Plan in our New Albany Division on February 12, 2007. *Caufield v. Colgate Palmolive Company Employees' Retirement Plan*, Cause No. 4:07-cv-16-SEB-WGH.

1

An action raising virtually identical issues brought by Plaintiffs Paul Ableman et. al  was filed originally in the Southern District of Ohio and thereafter transferred to our Indianapolis Division on November 30, 2007.  <u>Paul Ableman, et. al, v. Colgate-Palmolive Company, et. al</u>, Cause Number 1:07-cv-1554-DFH-JMS.

On December 6, 2007, the defendants in <u>Ableman</u> filed a Notice of Related Action, pursuant to Ind. S.D. Local Rule 40.1(d) and (f), requesting that <u>Ableman</u> be transferred from the docket of the Honorable David F. Hamilton to the docket of the undersigned judge before whom <u>Caufield</u> was pending.  (<u>Ableman</u>, Docket No. 6.)  Thereafter, counsel in both <u>Ableman</u> and <u>Caufield</u> discussed with Magistrate Judge Hussmann the possibility and desirability of consolidating the two cases into a single action.  And, on February 29, 2008, Judge Hamilton issued an Order to Resolve Consolidation and Related Case Issues in <u>Ableman</u>, observing that the undersigned judge could take judicial notice of the filings in <u>Ableman</u>.  (<u>Ableman</u>, Docket No.  28).  In response to Judge Hamilton's Order, the <u>Ableman</u> Plaintiffs acceded to Defendants' request that <u>Ableman</u> be related to the <u>Caufield</u> case for venue purposes.  (<u>Ableman</u>, Docket No. 29).

Having  taken judicial notice of the filings in <u>Ableman</u>, the undersigned judge now finds, pursuant to Ind. S.D. Local Rule 40.1(d), that <u>Caufield</u> and <u>Ableman</u> should be related such that <u>Ableman</u> shall be transferred to the undersigned's docket pursuant to Ind. S.D. Local Rule 40.1(f). Accordingly, the Clerk is directed to reassign <u>Ableman</u> to the docket of the Honorable Sarah Evans Barker with the amended cause number reflected above.

In addition, the Court takes judicial notice of the March 19, 2008, ruling in <u>Proesel and Rosie et. al v. Colgate-Palmolive Company Employee Retirement Income Plan, et. al</u>, Cause Number 07 Civ. 9515 (BSJ)(KNF), another litigation related to <u>Ableman</u> and <u>Caufield</u> currently pending in the

Southern District of New York, in which Defendants' motion to transfer <u>Proesel</u> to the Southern District of Indiana was denied. In that ruling, the Honorable Barbara Jones found in relevant part that: "[M]ost relevant evidence and witnesses [reside] in New York, [making] it . . . clearly . . . more efficient to conduct a trial in New York." (<u>Proesel</u> Order, page 6.) Judge Jones also ruled: "[T]here is no reason why all three actions cannot ultimately be consolidated in this district." (<u>Proesel</u> Order, page 7.)

This undersigned judge accepts and adopts the findings and conclusions entered by the Court in <u>Proesel</u> with regard to the choice of venue, and includes them in this order as if fully set out, on the basis of which Plaintiffs' motion to transfer venue (<u>Ableman</u> Docket No. 23) is GRANTED. As Plaintiffs' motion (<u>Ableman</u>, Docket No. 23) has pointed out, Defendants' headquarters are in New York and virtually all of the documents that are potentially relevant to this action, including Plan documents and Plan records, are maintained in New York. Additionally, those individuals with intimate knowledge of the Plan's administration work at Colgate-Palmolive's headquarters in New York. Under 29 U.S.C. § 1132(e)(2), an action under ERISA "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found . . . ." Judge Jones's thorough and well-reasoned opinion in <u>Proesel</u> concludes that an evaluation of the appropriate factors concerning venue favors resolution in the Southern District of New York. This Court concurs with Judge Jones's opinion.

Therefore, based on the convenience of the parties and witnesses, the interest of justice, and the parties' requests and/or consent, the <u>Ableman</u> and <u>Caufield</u> causes of action shall each be transferred, pursuant to 28 U.S.C. §1404(a), to the Southern District of New York as related matters to the <u>Proesel</u> cause of action.

3

IT IS SO ORDERED.


Date: _____03/26/2008_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

William K. Carr
LAW OFFICE OF WILLIAM K. CARR
bill@pension-law.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Diane Moore Heitman
KOREIN TILLERY LLC
dheitman@koreintillery.com

Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
btjohnson@morganlewis.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

William Henry Blessing
119 East Court Street
Suite 500
Cincinnati, OH 45202

Eli  Gottesdiener
GOTTESDIENER LAW FIRM PLLC
eli@gottesdienerlaw.com

4

# UNITED STATES DISTRICT COURT

## Southern District of Indiana

### Laura Briggs

### Clerk of the Court

46 East Ohio Street, Room 105
Indianapolis, Indiana
46204

210 Federal Building
Terre Haute, Indiana
47808

101 Northwest MLK Boulevard
Evansville, Indiana
47708

121 West Spring Street
New Albany, Indiana
47150

March 27, 2008

Re: ABELMAN et al v.
COLGATE–PALMOLIVE COMPANY et
al
Cause Number: 1:07–cv–01554–SEB–JMS

TO ALL COUNSEL OF RECORD:

Pursuant to Local Rule 40.1, the above matter was reassigned from the docket of Judge David Frank Hamilton to the docket of Judge Sarah Evans Barker on March 27, 2008. The cause number above has been changed to reflect the initials of the newly assigned district and/or magistrate judge. **Please note that cause number 1:07–cv–01554–SEB–JMS should be used on all future filings.**

Sincerely,

Laura Briggs

By:  s/ Melanie Carmichael
Melanie Carmichael, Deputy Clerk

Copies to: The Honorable Judge Sarah Evans Barker